Usama Kahf (SBN 266443)
E-Mail: ukahf@fisherphillips.com
David M. Shannon (SBN 342187)
E-Mail: dshannon@fisherphillips.com
**FISHER & PHILLIPS LLP**
2050 Main Street, Suite 1000
Irvine, California 92614
Telephone: (949) 851-2424
Facsimile: (949) 851-0152

Danielle Kays (*pro hac vice forthcoming*)
E-Mail: dkays@fisherphillips.com
**FISHER & PHILLIPS LLP**
10 South Wacker Drive, Suite 3450
Chicago, IL 60606
Telephone: (312) 260-4751

Catherine M. Contino (*pro hac vice forthcoming*)
E-Mail: ccontino@fisherphillips.com
**FISHER & PHILLIPS LLP**
Two Logan Square, 12th Floor
100 N. 18th Street
Philadelphia, PA 19103
Telephone: (610) 230-2150
Facsimile: (610) 230-2151

Attorneys for Defendant
POLITICO LLC

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

SABER KHAMOOSHI, RYAN WU, and BRIAN CAROLUS, individually and on behalf of a class of similarly situated individuals,

Plaintiffs,

v.

POLITICO LLC, and DOES 1 through 100, inclusive,

Defendants.

Case No:

*(Removed from San Francisco Superior Court, Case No. CGC-24-618459)*

**DECLARATION OF USAMA KAHF IN SUPPORT OF DEFENDANT POLITICO LLC'S NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. §§ 1332, 1441, 1446, AND 1453**

Action Filed: September 26, 2024
Trial Date: None set

**DECLARATION OF USAMA KAHF**

I, Usama Kahf, hereby declare and state as follows:

1. I am an attorney at law with the law firm of Fisher & Phillips LLP, which is counsel of record for Defendant POLITICO LLC ("Defendant" or "POLITICO") in the above-captioned matter. I am duly licensed to practice law in the State of California and before the United States District Court for the Northern District of California. I have personal knowledge of the facts stated in this declaration and, if called as a witness, could and would competently testify thereto. I submit this declaration in support of Defendant POLITICO LLC's Notice and Petition for Removal of Action Pursuant 28 U.S.C. §§ 1332, 1441, 1446, and 1453.

2. On September 26, 2024, Plaintiffs Saber Khamooshi, Ryan Wu, and Brian Carolus commenced an action against POLITICO by filing in the Superior Court of the State of California, San Francisco County, Case No. CGC-24-618459, a Complaint styled as *Saber Khamooshi, Ryan Wu, and Brian Carolus, individually and on behalf of all others similarly situated v. POLITICO LLC and Does 1-100*. A true and correct copy of Plaintiff's Complaint and Summons is attached hereto as **Exhibit A**.

3. On October 11, 2024, POLITICO was served with the Complaint via personal service. A true and correct copy of Plaintiffs' Proof of Service is attached hereto as **Exhibit B**.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 8th day of November, 2024, at Mission Viejo, California.

[signature]

USAMA KAHF

# Exhibit A

ERIC A. GROVER (SBN 136080)
eric.grover@kellergrover.com
RACHAEL G. JUNG (SBN 239323)
rachael.jung@kellergrover.com
**KELLER GROVER LLP**
1965 Market Street
San Francisco, California 94103
Telephone: (415) 543-1305
Facsimile: (415) 543-7861

SCOT BERNSTEIN (SBN 94915)
swampadero@sbernsteinlaw.com
**LAW OFFICES OF SCOT D. BERNSTEIN,**
**A PROFESSIONAL CORPORATION**
101 Parkshore Drive, Suite 100
Folsom, California 95630
Telephone: (916) 447-0100
Facsimile: (916) 933-5533

*Attorneys for Plaintiffs*
Saber Khamooshi, Ryan Wu, and Brian Carolus

ELECTRONICALLY
**FILED**
*Superior Court of California, County of San Francisco*
**09/26/2024**
**Clerk of the Court**
**BY: SAHAR ENAYATI**
**Deputy Clerk**

**CGC-24-618459**

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**IN AND FOR THE COUNTY OF SAN FRANCISCO**

SABER KHAMOOSHI, RYAN WU, and BRIAN CAROLUS, individually and on behalf of a class of similarly situated individuals,

Plaintiffs,

v.

POLITICO LLC; and DOES 1 through 100, inclusive,

Defendant.

Case No:

CLASS ACTION

**COMPLAINT FOR DAMAGES**

**DEMAND FOR JURY TRIAL**

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

**CLASS ACTION COMPLAINT**

Plaintiffs Saber Khamooshi, Ryan Wu, and Brian Carolus, on behalf of themselves and a class of similarly situated individuals as defined below, and based on personal knowledge where applicable, information and belief, and investigation by counsel, allege the following against Defendant Politico LLC ("Defendant" or "Politico").

**INTRODUCTION**

1. This class action lawsuit arises out of Defendant's policy and practice during the proposed class period (i.e., the applicable limitations period preceding the filing of the Complaint in this matter and through and including June 30, 2024) of embedding and using various trackers on Defendant's website, www.Politico.com, to (1) install and store third-party tracker cookies on website users' browsers and (2) collect website users' browser and device data as well as personally identifying information, such as IP addresses,[1] that the Politico website then surreptitiously discloses to and shares with the third-party trackers. Defendant did all of this without users' knowledge, authorization, or consent.

2. Defendant Politico LLC is an American digital newspaper company that owns and operates the www.Politico.com website (the "Politico website"). While primarily providing distributed news, analysis, and opinion online, Politico also produces printed newspapers, radio programming, and podcasts. In October 2021, Defendant was acquired by and now is a subsidiary of Axel Springer SE.

3. Launched in 2007, the Politico website covers politics and policy in the United States and internationally. It has publications dedicated to politics in the United States, the European Union, the United Kingdom Canada, and other countries.

4. Politico touts itself as "the global authority on the intersection of politics, policy, and power." According to its website, Politico "strives to be the dominant source for news on

[1] IP addresses have been classified by the United States Department of Health and Human Services ("HHS") as personally identifying information. *Use of Online Tracking Technologies by HIPAA Covered Entities and Business Associates*, U.S. Department of Health and Human Services (Dec. 1, 2022), https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/hipaa-online-tracking/index.html

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

politics and policy in power centers across every continent where access to reliable information, nonpartisan journalism and real-time tools create, inform and engage a global citizenry."

5. Plaintiffs and Class members who visited the Politico website during the proposed class period expected that their personally identifying information, including their IP addresses, would remain private and confined to their use of the Politico website. Plaintiffs and Class members had a reasonable expectation that their accessing of and interactions with the Politico website during the proposed class period would not be shared with any third parties, let alone to *undisclosed* third-party trackers, or sold for advertising purposes.

6. Unbeknownst to individuals entering and viewing the Politico website during the proposed class period, third-party trackers were embedded into Defendant's website. Through that embedded tracking technology, while Plaintiffs and Class members were accessing and interacting with the Politico website, Defendant (1) installed and stored third-party tracker cookies on users' browsers and (2) captured Politico website users' browser and device data, IP addresses, and other identifying information. All of this happened the moment users entered the Politico website and without any further action required by or requested of the users. And it happened without any meaningful notice.

7. Plaintiffs are informed and believe and on that ground allege that Defendant surreptitiously shared identifying data, including addressing information such as IP addresses, with the third-party trackers for advertising and analytics-related purposes. Defendant did so without obtaining Politico website users' authorization or consent and without a court order.

8. Defendant's unauthorized (1) installation of third-party tracker cookies on users' web browsers and (2) collection and disclosure to third parties of Plaintiffs' and Class members' personally identifying and addressing information, all without consent or adequate notification to Plaintiffs and Class members, were invasions of Plaintiffs' and Class members' privacy. Defendant's actions also violated multiple laws, including the California Computer Data Access and Fraud Act, Cal. Penal Code § 502 ("CDAFA"); the California Invasion of Privacy Act, Cal. Penal Code §§ 630, *et seq.* ("CIPA"); and the right to privacy under Article 1, § 1, of the California Constitution, which includes privacy as one of six fundamental rights of all Californians.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

## PARTIES

**A. Plaintiff Saber Khamooshi**

9. Plaintiff Saber Khamooshi is a natural person and a resident of California.

10. Plaintiff Khamooshi regularly visited the Politico website to browse political news headlines and to read articles. He visited the Politico website on several occasions during the proposed class period. Plaintiff Khamooshi used an internet browser on his multiple computers to access Defendant's website.

11. At no time during the proposed class period when Plaintiff Khamooshi entered the Politico website and viewed its contents did he authorize or consent to Defendant installing third-party tracker cookies on his internet browser or computer.

12. Plaintiff Khamooshi also did not consent to Defendant sharing or selling his browser and device data, IP addresses, and other personally identifying information with or to third-party trackers. Further, because Defendant did not provide notice or request permission, Plaintiff Khamooshi was unaware of and had no meaningful opportunity to opt out of or object to that unauthorized disclosure of his data.

**B. Plaintiff Ryan Wu**

13. Plaintiff Ryan Wu is a natural person and a resident of California.

14. Plaintiff Wu regularly visited the Politico website to browse political news headlines and to read articles. He visited the Politico website on several occasions during the proposed class period. Plaintiff Wu used an internet browser on his various computers to access Defendant's website.

15. At no time during the proposed class period when Plaintiff Wu entered the Politico website and viewed its contents did he authorize or consent to Defendant installing third-party tracker cookies on his internet browser or computer.

16. Plaintiff Wu also did not consent to Defendant sharing or selling his browser and device data, IP addresses, and other personally identifying information with or to third-party trackers. Further, because Defendant did not provide notice or request permission, Plaintiff Wu

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

was unaware of and had no meaningful opportunity to opt out of or object to that unauthorized disclosure of his data.

**C. Plaintiff Brian Carolus**

17. Plaintiff Brian Carolus is a natural person and a resident of California.

18. Plaintiff Carolus regularly visited the Politico website to browse political news headlines and to read articles. He visited the Politico website on several occasions during the proposed class period. Plaintiff Carolus used an internet browser on his various computers to access Defendant's website.

19. At no time during the proposed class period when Plaintiff Carolus entered the Politico website and viewed its contents did he authorize or consent to Defendant installing third-party tracker cookies on his internet browser or computer.

20. Plaintiff Carolus also did not consent to Defendant sharing or selling his browser and device data, IP addresses, and other personally identifying information with or to third-party trackers. Further, because Defendant did not provide notice or request permission, Plaintiff Carolus was unaware of and had no meaningful opportunity to opt out of or object to that unauthorized disclosure of his data.

D. **Defendant and its Politico Website**

21. Defendant Politico LLC is a limited liability company organized under the laws of the State of Delaware with its headquarters in Arlington, Virginia. Defendant systematically and continuously does business in California and with California residents.

22. Defendant currently owns and operates the www.Politico.com website, which publishes news focused on global and American politics.

23. During the proposed class period, Defendant's Politico website failed to put visitors on notice of Defendant's use of website tracking technology, including its use of third-party trackers. Upon information and belief, Plaintiffs allege that third-party trackers allow companies like and including Defendant to sell advertising space on their websites by using the tracking technology to receive, store, and analyze information collected from website visitors.

24. During the proposed class period, the Politico website also failed to disclose the selling and sharing of browser and device data and personally identifying information, including IP addresses and other addressing information, to and with unauthorized third party-trackers for advertising and other purposes.

**E. Doe Defendants**

25. Plaintiffs are ignorant of the true names and capacities of defendants sued herein as DOES 1 through 100, inclusive, and therefore sues those defendants by those fictitious names. Plaintiffs will amend this Complaint to allege their true names and capacities when ascertained. Plaintiffs are informed and believe and on that ground allege that each of the fictitiously-named defendants is responsible in some manner for the occurrences alleged in this Complaint and that Plaintiffs' injuries and damages, as alleged, are proximately caused by those occurrences.

26. Plaintiffs are informed and believe and on that ground allege that, at all relevant times, each named Defendant and the Doe Defendants were the principals, agents, partners, joint venturers, officers, directors, controlling shareholders, controlling persons, subsidiaries, affiliates, parent corporations, successors in interest, and/or predecessors in interest of some or all of the other Defendants, were engaged with some or all of the other Defendants in a joint enterprise for profit, and bore such other relationships to some or all of the other Defendants as to be liable for their conduct with respect to the matters alleged below. Plaintiffs are informed and believe and, on that ground, allege that each Defendant acted pursuant to and within the scope of the relationships alleged above and that each knew or should have known about, and that each authorized, ratified, adopted, approved, controlled, aided and abetted the conduct of all Defendants.

## JURISDICTION AND VENUE

27. This Court has subject matter jurisdiction over this action under the California Computer Data Access and Fraud Act, Cal. Penal Code §502, the California Invasion of Privacy Act, Cal. Penal Code § 638.51, and the California Constitution.

28. This Court has personal jurisdiction over the parties because Defendant has sufficient minimum contacts with this State in that it operates and markets its services throughout

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

the State. Further, a substantial part of the events and conduct giving rise to Plaintiffs' claims occurred in the State of California. Those events and that conduct included Plaintiffs' accessing of the Politico website; Defendant's unauthorized installation of third-party tracker cookies on Plaintiffs' web browsers; and the collection and surreptitious sharing of browser and device data and personally identifying information with the third-party trackers, all without users' knowledge, authorization, or consent. Plaintiffs' rights were violated in the State of California, and those violations arose out of their contact with Defendant from and within California.

29. Venue is proper in this Court because Code of Civil Procedure §§ 395 and 395.5 and case law interpreting those sections provide that if a foreign business entity fails to designate with the office of the California Secretary of State a principal place of business in California, that entity is subject to being sued in any county that a plaintiff desires. On information and belief, Defendant Politico LLC is a foreign business entity and, as of the date on which this Complaint was filed, had failed to designate a principal place of business in California with the office of the Secretary of State.

## FACTUAL ALLEGATIONS COMMON TO THE CLASS

### A. Website Tracking Technology

30. Trackers collect information about internet users as those users browse the web. Trackers use cookies, scripts or pixels inserted by publishers or advertisers. Tracker profiling is the process of linking data from different websites to build user profiles based on browsing history, to place users in groups, and to sell that data to third parties for targeted advertising.

31. There is a broad range of online technologies that track and monitor internet-based interactions and communications. Four identifier tools commonly used are (i) website cookies, (ii) tracking pixels, (iii) digital fingerprinting, and (iv) software development kits.

32. A website cookie refers to a small text file that a website server creates and transmits to a web browser (*e.g.*, Chrome or Safari) which then installs and stores the file in a particular directory on an individual's computer, phone, or other device.[2] When a website user

---

[2] See Sara J. Nguyen, *What Are Internet Cookies and How Are They Used?*, All About Cookies (Jul. 28, 2023), https://allaboutcookies.org/what-is-a-cookie.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

attempts to access a webpage, the user's browser transmits a communication to the website's server requesting that the server display the website's content for the browser to load. While providing the requested content to the user, the website's server also provides the cookies that it would like the user's browser to install and retain.

33. Website cookies contain information that identifies the domain name of the webserver that wrote the cookie (e.g., hulu.com or facebook.com). Cookies also have information about the user's interaction with a website, such as how the website should be displayed, how many times a user has visited the website, how long a user spends on a webpage, information about what pages the user visited, and authentication information. In addition to a unique identifier and a site name, website cookies also can include personally identifiable information such as a user's name, address, email or telephone number if that information was provided to a website.

34. A first-party cookie is implemented by the website that the user accesses. The website uses its cookies for authentication, monitoring user sessions, and collecting analytical data. A third-party cookie, also called an "advertising cookie" or a "tracker cookie," is a cookie that belongs to a domain other than the one being displayed to the user in his or her browser. A third-party cookie typically is used for cross-site tracking, retargeting, and ad-serving. The key differences between the first- and third-party cookies are who sets them (*i.e.*, a website display host or a third party), whether and how they can be blocked by a web browser, and the availability of the cookie. A third-party advertising or tracker cookie is accessible on any website that loads the third-party server's code.

35. A pixel, also known as a "tracking pixel," "web bug," "clear GIF" or "web beacon," is similar to a website cookie, and is a small, almost-invisible image (pixel) embedded in a website or an email to track a user's activities. That tracked data often includes the user's operating system, the type of website or email used, the time when the website was accessed, the user's IP address, and whether there are cookies that previously have been set by the server hosting the pixel image.[3]

[3] See Patti Croft & Catherine McNally, *What Is a Web Beacon and Why Should You Care?*, All About Cookies (Sept. 26, 2023), https://allaboutcookies.org/what-is-a-web-beacon.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

36. Digital fingerprinting refers to device fingerprinting and browser fingerprinting, both of which send information to the website server to help ensure that a website is displaying content and operating appropriately. ***Although a browser or device does not usually transmit personal information about a user, most fingerprinting is performed via a third-party tracker, which can track an individual across multiple sites and form a profile of the user.***[4]

37. A software development kit (SDK) is a set of computer programs and similar tools that developers and engineers can leverage to build applications for specific platforms. The SDK often includes, among other tools, libraries, application programming interfaces, instructions, guides, directions, and tutorials.[5] SDKs also may have embedded code that allows them to intercept personal data and other information from application users surreptitiously, including geolocation data, usernames and communications derived from other SDK applications installed on a user's device, and a user's activities within an application after installation.

38. All of the information and data captured and collected by third-party trackers, regardless of the tool used, can be sold and used for marketing and advertising purposes.

**B. Internet Protocol Addresses ("IP Addresses")**

39. One important piece of identifying information collected by third-party trackers is a website user's IP address. An IP address is a unique identifier for a device, which is written as four sets of numbers separated by periods (e.g., 123.145.167.189). The first two sets of numbers reflect what network the device is on, and the second two sets of numbers identify the specific device. The IP address enables a device to communicate with another device, such as a computer's web browser communicating with a website server.

40. Similar to a telephone number, an IP address is a unique numerical code associated with a specific internet-connected device on a computer network. The IP address identifies all of the devices accessing a certain network at any given time.

---

[4] See Anokhy Desai, *The Half-Baked Future of Cookies and Other Tracking Technologies*, IAPP (July 2023), https://iapp.org/resources/article/future-of-cookies-tracking-technologies/.

[5] *What Is an SDK? Software Development Kits Explained*, Okta, Inc. (June 30, 2022), https://www.okta.com/identify-101/what-is-an-sdk.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

41. Significantly, an IP address contains geographical location information from which the state, city and zip code of a specific device can be determined. Given the information that it can and does reveal, an IP address is considered personally identifiable information and is subject to HIPAA protection.[6]

42. Knowing a website user's IP address, and therefore the user's geographic location, provides "a level of specificity previously unfound in marketing."[7] An IP address allows advertisers to target customers by countries, cities, neighborhoods, and postal code.[8] Even more specifically, it allows advertisers to target specific households, businesses, and even individuals with ads that are relevant to their interests.[9]

43. Indeed, IP targeting is one of the most successful marketing techniques that companies can employ to spread the word about a product or service because companies can use an IP address to identify individuals personally.[10] By targeting specific households or businesses, a company can avoid wasting money on ads that are unlikely to be seen by their target audience and can reach their target audience with greater precision.[11] Additionally, by analyzing data on which households or businesses are responding to their ads, IP address targeting can help businesses improve their overall marketing strategy and refine their marketing efforts.[12]

---

[6] *See* 45 C.F.R. § 164.514(b)(2)(i)(O).

[7] *IP Targeting: Understanding This Essential Marketing Tool*, AccuData, https://www.accudata.com/blog/ip-targeting/ (last visited April 17, 2024).

[8] *Location-based Targeting That Puts You in Control*, Choozle, https://choozle.com/geotargeting-strategies/ (last visited April 17, 2024).

[9] Herbert Williams, *The Benefits of IP Address Targeting for Local Businesses*, LinkedIn (Nov. 29, 2023), https://www.linkedin.com/pulse/benefits-ip-address-targeting-local-businesses-herbert-williams-z7bhf/

[10] Trey Titone, *The future of IP address as an advertising identifier*, Ad Tech Explained (May 16, 2022), https://adtechexplained.com/the-future-of-ip-address-as-an-advertising-identifier/

[11] Herbert Williams, *The Benefits of IP Address Targeting for Local Businesses*, LinkedIn (Nov. 29, 2023), https://www.linkedin.com/pulse/benefits-ip-address-targeting-local-businesses-herbert-williams-z7bhf/

[12] *Id.*

44. As alleged below, Defendant installed third-party tracker cookies on Politico website users' browsers. Those trackers have collected browser and device data as well as identifying and addressing information about Plaintiffs and Class members, including their IP addresses, all without a court order or consent.

**C. Defendant's use of third-party trackers on the Politico website**

45. Defendant has embedded and implemented several third-party trackers on the Politico website, including but not limited to (i) TripleLift Tracker, (ii) CasaleMedia Tracker and (iii) Adnx Tracker (the "trackers"). By installing those trackers and their corresponding tracking cookies, Defendant can sell advertising space on the Politico website, enabling Defendant to monetize its website further and earn additional revenue. Moreover, by collecting and disclosing its users' information, Politico can place advertisements on other companies' websites, thereby increasing its own brand awareness and sales and enabling Defendant to obtain and analyze users' data for its own profit.

46. When a website user first accesses and enters the Politico website, the user's browser sends an HTTP request to Defendant's server. The Politico website server then sends an HTTP response with directions to load the webpage content and to install the three trackers on the user's browser.

47. Each tracker installs and stores its own website cookie on the user's browser and uses that third-party tracker cookie to collect and share that user's browser and device data and addressing information, including IP addresses, every time the user visits and interacts with the Politico website.

48. The process described above takes place behind the scenes and in less than a second. Thus, the three tracker cookies appear and are implemented the instant the user enters the Politico website, without any further action, clicks, or consent required by the user.

49. Further, each of the three trackers embedded on Defendant's website re-installs its tracker cookies every time a user visits the Politico website. Thus, even if a user clears the cookies from the user's browser, it makes no difference: the next time that user visits the Politico website, all three trackers re-install their tracker cookies, reset the tracking process, and resume

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

transmission of the user's browser and device data, IP address, and other identifying information to the undisclosed third parties.

50. The TripleLift Tracker is developed by digital advertising company TripleLift, Inc. ("TripleLift"). TripleLift is a platform that seeks to enhance advertisers' performance. To increase the overall effectiveness of online advertising, the TripleLift Tracker focuses on collecting users' data, particularly IP addresses, to fine-tune the platform's ad targeting. TripleLift's approach integrates both third-party and first-party data through its "TripleLift Audiences" feature, which facilitates precise ad placements and maximizes the accuracy of the advertisement's targeting. In essence, the TripleLift Tracker enables websites to analyze users' data to craft and optimize marketing campaigns, to target specific user groups and to increase website revenue by facilitating the collection of website users' information for use by third-parties.

51. When a user visits the Politico website, the TripleLift Tracker installs and stores its website cookie on the user's browser. This third-party tracker cookie is used to collect and share that user's browser and device data, IP address, and other identifying information with third-party TripleLift. That, in turn, enables TripleLift to serve personalized advertisements and optimize user engagement. ***TripleLift receives a user's data and IP address each and every time the user interacts with the Politico website.*** *See* Figure 1.

Figure 1:




KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

52. The CasaleMedia Tracker is developed by Index Exchange, Inc. ("Index Exchange"), formerly known as Casale Media. By integrating third-party and first-party data, Index Exchange seeks to maximize ad relevancy and placement precision by leveraging the company's advertising technology experience for publishers, advertisers, and consumers within its global advertising marketplace. The CasaleMedia Tracker collects user data, including browser and device data and IP addresses, to enable website owners to analyze user data thoroughly, target specific user demographics, and optimize their marketing campaigns by increasing advertising effectiveness. By continuously updating its data sets to refine ad targeting, the CasaleMedia Tracker allows for the strategic collection of users' information for use by third-parties that purchase the information.

53. Politico embeds Index Exchange's code on its website. That hidden code enables Index Exchange to install and store the CasaleMedia Tracker and its corresponding website cookie on users' browsers. Like the TripleLift Tracker above, the CasaleMedia Tracker is installed the instant a user accesses the Politico website. That happens without any notice to or request for permission from the user. By using HTTP requests and responses, cookies, IP addresses, and other information shared by the Politico website, third-party Index Exchange can track and deliver personalized ads based on users' browsing habits and preferences, geographic locations, and other data personal to the users.

54. During the HTTP communication process, the CasaleMedia tracker cookie stores identifiers linked to users' browsing behavior. That enables Index Exchange to recognize that user on the user's subsequent visits to Politico or to other websites within Index Exchange's advertising network. That, in turn, facilitates a cycle of ad targeting and tracking.

55. Index Exchange also receives a user's browser and device data and IP address every time the user interacts with the Politico website. If cookies are cleared from the user's browser, the CasaleMedia Tracker is re-installed instantly on the user's next visit to the Politico website. This automatic process ensures that Index Exchange consistently receives the user's data and IP address with each website interaction. *See* Figure 2.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

**<u>Figure 2</u>**:




56. The third tracker embedded in Defendant's Politico website is developed by software company Xandr, which Microsoft acquired in 2021. Xandr operates as an advanced advertising company that claims to provide a comprehensive platform for buying and selling consumer-oriented digital advertising. The platform, which includes programmatic advertising, data analytics, and cross-screen media solutions, claims to improve the efficiency and effectiveness of advertising across various channels by leveraging data and technology.

57. Like other third-party trackers, Xandr allows companies like Defendant to sell advertising space on their websites by using the Adnx Tracker to receive, store and analyze information collected from website visitors. The Adnx Tracker is installed and stored on the user's browser the instant the user enters the Politico website. The third-party tracker cookie then sends the user's IP address to Xandr each and every time the user interacts with the Politico website. *See* Figure 3.

**Figure 3**:




58. During the proposed class period, each of the three trackers embedded on Defendant's Politico website (1) installed a third-party tracker cookie on users' browsers and (2) captured, collected, and shared with undisclosed third parties the Politico website users' personally identifying and addressing information, including the users' IP addresses, ***all without users' knowledge or consent***.

59. Upon further information and belief, all three trackers were used for real-time bidding ("RTB"). Essentially, when a user entered the Politico website, an advertising auction took place almost instantly. Defendant's website used the third-party trackers to "host" the bidding on Defendant's behalf. The RTB system was designed to allow Defendant to sell targeted advertising and to maximize its revenue gained from selling ad space on the Politico website.

60. Further, each of the three trackers embedded on Defendant's website re-installed its tracker cookies instantly every time a user visited the Politico website. That happened even if the user previously cleared the cookies from his or her web browser. As a result, during the proposed class period, Politico website users could not escape the unauthorized sharing of their personally identifying and addressing information with third-parties TripleLift, Index Exchange, and Xandr.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

### D. Plaintiffs and class members did not consent to Defendant's disclosure of their personally identifying and addressing information, and they have a reasonable expectation of privacy in their user data.

61. During the proposed class period, Defendant did not ask its Politico website visitors, including Plaintiffs, whether they consent to having their personally identifying and addressing information disclosed to and used by third parties like TripleLift, Index Exchange, and Xandr. When a website user accessed and entered the Politico website during the proposed class period, there was no pop-up window or other notification to inform users that Defendant was using website tracking technology or installing third-party tracker cookies.

62. Additionally, the third-party trackers were incorporated seamlessly – ***and, to users, invisibly*** – in the background on the Politico website. That seamless and invisible incorporation gave Plaintiffs and Class members no way of knowing that Defendant was collecting their personally identifying and addressing information, including their IP addresses, and secretly sharing that information with undisclosed third parties.

63. Further, although the Politico website does have a Privacy Policy containing some disclosures about how information is shared, that policy can be viewed only after scrolling through all the website content to the very bottom of the webpage. During the proposed class period, Defendant's policies and notices would be seen, if at all, only long after the third-party trackers and cookies had been installed on users' web browsers – in other words, only after it was too late.

64. In addition to its hard-to-see location, the hyperlink to access the Privacy Policy is written in small, inconspicuous font and is listed among a number of other links at the bottom of the Politico webpage. *See* Figure 4.

**<u>Figure 4</u>**:




KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

65. Unlike first-party cookies that may be technologically necessary to enable a computer user to view a webpage, ***third-party tracker cookies are not necessary***. Moreover, they (1) simultaneously communicate information to an external server as a user navigates a website; (2) track users across devices, meaning that a user's actions on multiple devices all will be included in the information stored regarding that user; (3) are not easily disabled by users; and/or (4) ***create a record of all of the information that users provide to and/or receive from the website***. Because they were unaware of Defendant's use of third-party trackers and tracking cookies, Plaintiffs and Class members could not and did not consent to the collection, storage, and use of their personally-identifying and addressing information by undisclosed third parties like TripleLift, Index Exchange and Xandr.

66. During the proposed class period, Plaintiffs and Class members had a reasonable expectation of privacy in their interactions with the Politico website and their user data, especially their personally identifying information. This is even truer of Plaintiffs' and Class members' IP addresses, which contain geolocation data that can be used to identify, track and target individuals in a very specific way.

67. Privacy studies, such as those conducted by the *Pew Research Center*, show that most Americans are concerned about how data is collected about them.[13] Those privacy polls also reflect that Americans consider one of the most important privacy rights to be the need for an individual's affirmative consent before a company collects and shares data regarding that customer or other individual.

68. Indeed, according to *Consumer Reports*, more than 90% of Americans believe that more should be done to ensure that companies protect consumers' privacy. Further, a supermajority of Americans – **64%** – believe that companies should be prohibited from sharing data with third parties, while 63% of Americans want a federal law requiring companies to obtain a consumer's permission before sharing the consumer's information. To that end, 60% of

---

[13] Brooke Auxier et al., *Americans and Privacy: Concerned, Confused and Feeling Lack of Control Over Their Personal Information*, Pew Research Center (Nov. 15, 2019), https://www.pewresearch.org/internet/2019/11/15/americans-and-privacy-concerned-confused-and-feeling-lack-of-control-over-their-personal-information/

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

Americans believe that companies should be required to be more transparent about their privacy policies so that consumers can make more informed choices.[14]

69. Users act in a manner that is consistent with those preferences. During a rollout of new iPhone operating software, for example, ***94% of U.S. users who were asked for clear, affirmative consent before allowing companies to track them chose not to share their data.***[15]

70. Defendant's unauthorized (1) installation of third-party tracker cookies on Plaintiffs' and Class members' web browsers and (2) collection and disclosure of Plaintiffs' and Class members' personally identifying and addressing information to undisclosed third parties, all without any consent or even adequate notification, were invasions of Plaintiffs' and Class members' privacy.

71. Plaintiffs and Class members have suffered injuries in the form of (i) invasion of privacy; (ii) statutory damages; (iii) the continued and ongoing risk to their personally identifying information that, once out, never can be restored to its previous level of privacy; and (iv) the continued and ongoing risk of harassment, spam and targeted advertisements enabled by the Politico website.

## CLASS ACTION ALLEGATIONS

72. Plaintiffs bring this action under California Code of Civil Procedure § 382 on behalf of themselves and a class (the "Politico Website Class" or "the Class") defined as follows:

> All California residents who, while located within California at any time during the applicable limitations period preceding the filing of the Complaint in this matter and through and including June 30, 2024, accessed and viewed the Politico website and had their IP addresses and/or browser and device data collected by and disclosed to the third-party trackers embedded in the Politico website.

---

[14] Benjamin Moskowitz et al., *Privacy Front & Center: Meeting the Commercial Opportunity to Support Consumer Rights*, Consumer Reports in collaboration with Omidyar Network (Fall 2020), https://thedigitalstandard.org/downloads/CR_PrivacyFrontAndCenter_102020_vf.pdf

[15] *See* https://www.wired.co.uk/article/apple-ios14-facebook (**"According to Flurry Analytics, 85 per cent of worldwide users clicked 'ask app not to track' when prompted, with the proportion rising to 94 per cent in the US."**).

73. Excluded from the Politico Website Class are website users who (i) registered and/or subscribed to the Politico website and/or (ii) registered to receive the Politico newsletter. Employees of Defendant and employees of Defendant's parents, subsidiaries, and corporate affiliates also are excluded from the Class. Plaintiffs reserve the right to amend or modify the class definition and/or to add sub-classes or limitations to particular issues, where appropriate, based upon subsequently discovered information.

74. This action properly may be maintained as a class action under § 382 of the California Code of Civil Procedure because (1) there is a well-defined community of interest in the litigation, (2) common questions of law and fact predominate over individual issues, and (3) the proposed Class is ascertainable.

**Numerosity**

75. The Politico Website Class that Plaintiffs seek to represent contains numerous members and is clearly ascertainable including, without limitation, by using Defendant's records and/or third-party trackers' records to determine the size of the Class and to determine the identities of individual Class members.

76. Based on information and belief, the Politico Website Class consists of at least 75 individuals. The Class is so numerous that joinder of all members is impracticable.

**Typicality**

77. Plaintiffs' claims are typical of the claims of all the other members of the Politico Website Class as Plaintiffs have suffered from the same violations of the law as other putative Class members. Plaintiffs' claims and the Class members' claims are based on the same legal theories and arise from the same unlawful conduct, resulting in the same injury to Plaintiffs and all of the other Class members.

**Adequacy**

78. Plaintiffs will fairly and adequately represent and protect the interests of the other members of the Class. Plaintiffs have retained competent counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the Politico Website Class members and have the

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

financial resources to do so. Neither Plaintiffs nor their counsel have any interests that are adverse to those of the other Politico Website Class members.

**Commonality and Predominance**

79. By its unlawful actions, Defendant has violated Plaintiffs' and the Class members' rights under the CDAFA, CIPA and the California Constitution. The questions raised are, therefore, of common or general interest to the Class members, who have a well-defined community of interest in the questions of law and fact presented in this Complaint.

80. This action involves common questions of law and fact that predominate over any questions affecting only individual Class members. Those common questions of law and fact include, without limitation, the following:

(a) Whether Plaintiffs and Class members had a reasonable expectation of privacy when they accessed and visited the Politico website during the proposed class period;

(b) Whether Defendant knowingly and without permission accessed Plaintiffs' and Class members' computers during the proposed class period;

(c) Whether Defendant knowingly and without permission altered, damaged, deleted, destroyed, or otherwise used any data from Plaintiffs' and Class members' computers during the proposed class period;

(d) Whether Defendant knowingly and without permission took, copied, or made use of any data from Plaintiffs' and Class members' computers during the proposed class period;

(e) Whether Defendant knowingly and without permission added, altered, damaged, deleted, or destroyed any data from Plaintiffs' and Class members' computers during the proposed class period;

(f) Whether Plaintiffs and Class members had a reasonable expectation of privacy in their personally identifying information, including IP addresses, when they accessed and visited the Politico website during the proposed class period;

(g) Whether each of the third-party trackers embedded in the Politico website was a

"pen register" under California Penal Code § 638.50(b);

(h) Whether, during the proposed class period, Defendant had a policy or practice of collecting and sharing personally identifying and addressing information collected on the Politico website including, without limitation, IP addresses and/or browser and device data, with third-party trackers and/or other third parties;

(i) Whether, during the proposed class period, Defendant had a policy or practice of not disclosing to Politico website users that it would collect and share their personally identifying and addressing information, including IP addresses and/or browser and device data, with third-party trackers and/or other third parties;

(j) Whether, during the proposed class period, Defendant had a policy or practice of not obtaining Politico website users' prior consent to collect and share personally identifying and addressing information, including IP addresses and/or browser and device data, with third-party trackers and/or other third parties;

(k) Whether Defendant sought or obtained a court order for its use of the third-party trackers;

(l) Whether Defendant's conduct invaded Plaintiffs' and Class members' privacy;

(m) Whether Defendant's acts and practices violated California's Computer Data Access and Fraud Act, Cal. Penal Code § 502;

(n) Whether Defendant's acts and practices violated the California Invasion of Privacy Act, Cal. Penal Code § 638.51(a);

(o) Whether Defendant's acts and practices violated the California Constitution or individual rights arising under the California Constitution; and

(p) Whether Plaintiffs and Class members are entitled to actual, statutory, nominal, and/or other forms of damages, restitution, and other relief.

**<u>Superiority</u>**

81. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all of the members of the Class is impracticable and because questions of law and fact common to the Politico Website

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

Class predominate over any questions affecting only individual members of the Class. Even if every individual member of the Class could afford individual litigation, the court system could not. It would be unduly burdensome to the courts if individual litigation of the numerous cases were to be required. Individualized litigation also would present the potential for varying, inconsistent or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the conduct of this action as a class action with respect to some or all of the issues will present fewer management difficulties, conserve the resources of the court system and the parties, and protect the rights of each member of the Politico Website Class. Further, it will prevent the very real harm that would be suffered by numerous members of the putative Class who simply will be unable to enforce individual claims of this size on their own, and by Defendant's competitors, who will be placed at a competitive disadvantage as their punishment for obeying the law. Plaintiffs anticipate no difficulty in the management of this case as a class action.

82. The prosecution of separate actions by individual members of the Politico Website Class would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other members of the Class who are not parties to those adjudications or that would substantially impair or impede the ability of those non-party members of the Class to protect their interests.

83. The prosecution of individual actions by members of the Politico Website Class also would run the risk of establishing inconsistent standards of conduct for Defendant.

**FIRST CAUSE OF ACTION**
**Violation of the California Computer Data Access and Fraud Act**
**(California Penal Code § 502)**

84. Plaintiffs incorporate each allegation set forth above as if fully set forth herein and further allege as follows.

85. The California Legislature enacted the CDAFA with the intent to "expand the degree of protection afforded to individuals, businesses, and governmental agencies from

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

tampering, interference, damage, and unauthorized access to lawfully created computer data and computer systems." Cal. Penal Code § 502(a).

86. The Legislature further declared that "protection of the integrity of all types and forms of lawfully created computers, computer systems, and computer data is vital to the protection of the privacy of individuals as well as to the well-being of financial institutions, business concerns, governmental agencies, and others within this state that lawfully utilize those computers, computer systems, and data." Cal. Penal Code § 502(a).

87. For purposes of the statute, a number of definitions were provided. The term "access" means to "gain entry to, instruct, cause input to, cause output from, cause data processing with, or communicate with, the logical, arithmetical, or memory function resources of a computer, computer system, or computer network." Cal. Penal Code § 502(b)(1).

88. The term "computer program or software" is defined as "a set of instructions or statements, and related data, that when executed in actual or modified form, cause a computer, computer system, or computer network to perform specified functions." Cal. Penal Code § 502(b)(3).

89. The term "computer system" refers to "a device or collection of devices, including support devices and excluding calculators that are not programmable and capable of being used in conjunction with external files, one or more of which contain computer programs, electronic instructions, input data, and output data, that performs functions, including but not limited to, logic, arithmetic, data storage and retrieval, communication, and control." Cal. Penal Code § 502(b)(5).

90. Plaintiffs' and Class members' web browsers used to access the Politico website are "computer software," and the computers on which Plaintiffs and Class members used their web browsers constitute computers or "computer systems" within the scope of the CDAFA.

91. The statute also defines the term "data" to mean a "representation of information, knowledge, facts, concepts, computer software, or computer programs or instructions." The statute further provides that data may be in "any form, in storage media, or as stored in the memory of the computer or in transit or presented on a display device." Cal. Penal Code § 502(b)(8).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

92. As discussed above, a website cookie, including a third-party tracker cookie, and an IP address both are "data" within the meaning of the statute.

93. Under California Penal Code § 502(c)(1), it is unlawful to knowingly access and without permission alter, damage, delete, destroy, or otherwise use any data, computer, computer system, or computer network in order to…wrongfully control or obtain money, property or data. Cal. Penal Code § 502(c)(1).

94. The statute also makes it unlawful knowingly to access and without permission take, copy, or make use of any data from a computer, computer system, or computer network. Cal. Penal Code § 502(c)(2).

95. The CDAFA further prohibits any person from knowingly accessing and without permission adding, altering, damaging, or destroying any data, computer software, or computer programs which reside or exist internal or external to a computer, computer system, or computer network. Cal. Penal Code § 502(c)(4).

96. Under subsections (6) and (7) of Penal Code § 502(c), a person also may not knowingly and without permission (i) provide or assist in providing a means of accessing or (ii) access or cause to be accessed any computer, computer system, or computer network. Cal. Penal Code §§ 502(c)(6) and (7).

97. Based on Defendant's unauthorized installation and storage of third-party tracker cookies on Plaintiffs' and Class members' web browsers during the proposed class period, as alleged above, Defendant knowingly accessed and without permission altered and used Plaintiffs' and Class members' data and computer systems in violation of Penal Code § 502(c)(1).

98. Similarly, the installation of those third-party tracker cookies violated subsection (c)(4) because Defendant added and altered data and computer software on Plaintiffs' and Class members' computers or computer systems. Cal. Penal Code § 502(c)(4).

99. By installing third-party tracker cookies, Defendant also knowingly and without permission provided those trackers a means of accessing and/or caused to be accessed Plaintiffs' and Class members' computers, computer systems, and/or computer networks in violation of Penal Code §§ 502(c)(6) and (7).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

100. Further, Defendant's unauthorized collection and disclosure of Plaintiffs' and Class members' personally identifying and addressing information to undisclosed third parties during the proposed class period violated Penal Code § 502(c)(2) because Defendant took and made use of data, including IP addresses, from Plaintiffs' and Class members' computers, computer systems, or computer networks.

101. Plaintiffs and Class members are residents of California and used their computers, computer systems, and/or computer networks in California. Defendant accessed or caused to be accessed Plaintiffs' and Class members' data and other personally identifying information from within California.

102. Defendant was unjustly enriched by accessing, acquiring, taking, and using Plaintiffs' and Class members' data and computer systems during the proposed class period without their permission or consent and by using all of that identifying information to maximize revenue from selling advertising space on the Politico website for Defendant's own financial benefit. Defendant has been unjustly enriched in an amount to be determined at trial.

103. As a direct and proximate result of Defendant's violations of the CDAFA, Plaintiffs and Class members have suffered damages. Under Penal Code § 502(e)(1), Plaintiffs and Class members are entitled to compensatory damages, injunctive relief and other equitable relief in an amount to be determined at trial.

104. Plaintiffs and Class members also are entitled to an award of reasonable attorneys' fees and costs under Penal Code § 502(e)(2).

## SECOND CAUSE OF ACTION
**Unlawful Use of a Pen Register or Trap and Trace Device**
**(California Penal Code §§ 638.51)**

105. Plaintiffs incorporate each allegation set forth above as if fully set forth herein and further allege as follows.

106. The California Legislature enacted the California Invasion of Privacy Act, Cal. Penal Code §§ 630, *et seq*. ("CIPA"), to address "advances in science and technology [that] have led to the development of new devices and techniques for the purpose of eavesdropping upon

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

private communications and that the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society." *Id.* § 630. CIPA is intended "to protect the right of privacy of the people of this state." *Id.*

107. Although CIPA was enacted before the dawn of the Internet, the California Supreme Court "regularly reads statutes to apply to new technologies where such a reading would not conflict with the statutory scheme." *In re Google Inc.*, 2013 WL 5423918, at *21 (N.D. Cal. Sept. 26, 2013); *see also Greenley*, 2023 WL 4833466, at *15 (referencing CIPA's "expansive language" when finding that software was a "pen register"); *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *1 (9th Cir. May 31, 2022) ("Though written in terms of wiretapping, [CIPA] Section 631(a) applies to Internet communications."). This is consistent with the observation in *Matera v. Google Inc.* that, "when faced with two possible interpretations of CIPA, the California Supreme Court has construed CIPA in accordance with the interpretation that provides the greatest privacy protection." *Matera v. Google Inc.*, 2016 WL 8200619, at *19 (N.D. Cal. Aug. 12, 2016).

108. Particularly pertinent here, California Penal Code § 638.51(a) makes it unlawful for a person to "install or use a pen register or a trap and trace device without first obtaining a court order."

109. A "pen register" is "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code § 638.50(b).

110. A "trap and trace device" is a "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." Cal. Penal Code § 638.50(c).

111. In essence, a "pen register" is a "device or process" that records *outgoing* information, while a "trap and trace device" is a "device or process" that records *incoming* information. For example, if a user sends an email, a "pen register" might record the email address

from which the email was sent, the email address to which the email was sent, and the subject line – because this is the user's *outgoing* information. On the other hand, if that same user receives an email, a "trap and trace device" might record the email address from which that email was sent, the email address to which it was sent, and the subject line – because this is *incoming* information that is being sent to that same user.

112. The three trackers embedded in the Politico website – TripleLift, CasaleMedia, and Adnx – are "pen registers" because each of them is a device or process that captures and records outgoing addressing or signaling information from the electronic communications transmitted by Plaintiffs' and Class members' computers, computer systems, and computer networks as they are accessing and visiting the Politico website.

113. At all relevant times during the proposed class period, Defendant installed each of the three pen register trackers on Plaintiffs' and Class members' web browsers and used the trackers to collect Plaintiffs' and Class members' IP addresses and/or browser and device data. IP addresses constitute addressing information and do not necessarily reveal any more about the underlying contents of the communication. *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1108 (9th Cir. 2014).

114. Unaware of Defendant's installation and use of the third-party trackers as pen registers during the proposed class period, Plaintiffs and Class members could not have provided and did not provide their prior consent to Defendant's installation or use of the third-party trackers or pen registers.

115. Upon information and belief, Defendant was not authorized by any court order to use a pen register to track Plaintiffs' and Class members' location data and other identifying information.

116. Defendant's conduct as described above violated California Penal Code § 638.51. As a result, Defendant is liable for the relief sought by Plaintiffs and the Politico Website Class. Under California Penal Code § 637.2, Plaintiffs and Class Members are entitled to and seek statutory damages of $5,000 for each of Defendant's numerous CIPA violations.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

**<u>THIRD CAUSE OF ACTION</u>**
**Invasion of Privacy**
**(Violation of Art. 1, § 1, California Constitution)**

117. Plaintiffs incorporate each allegation set forth above as if fully set forth herein and further allege as follows.

118. "Privacy" is listed in Article I, Section 1, of the California Constitution as one of six fundamental rights of all Californians. That section of the Constitution provides as follows: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy." Cal. Const. Art. I, § 1.

119. The right to privacy in California's Constitution creates a right of action against private entities such as Defendant. To state a claim for invasion of privacy under the California Constitution, a plaintiff must establish (1) a legally protected privacy interest; (2) a reasonable expectation of privacy; and (3) an intrusion so serious in nature, scope, and actual or potential impact as to constitute an egregious breach of social norms.

120. Plaintiffs and Class members had a legally protected privacy interest in their personally identifying information and addressing information that was captured during the proposed class period, without notice or consent, when they accessed and viewed the Politico website. These privacy interests are recognized by the California Constitution, CDAFA, CIPA, HIPAA, and numerous other statutes.

121. Plaintiffs and Class members had a reasonable expectation of privacy under the circumstances, as they could not reasonably have expected that Defendant would violate state and federal privacy laws. During the proposed class period, Plaintiffs and Class members were not aware of and could not reasonably have expected that Defendant would use website tracking technology and install third-party tracker cookies without notice or obtaining consent. Those unauthorized trackers collected and transmitted to undisclosed third parties Plaintiffs' and Class members' personally identifying and addressing information, including their IP addresses, which contain geolocation data.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

122. Defendant's unauthorized (1) installation of third-party tracker cookies and (2) collection and disclosure to third parties of Plaintiffs' and Class members' personally identifying and addressing information during the proposed class period, all without consent or adequate notification to Plaintiffs and Class members, were an invasion of Plaintiffs' and Class members' privacy.

123. Defendant's conduct during the proposed class period constituted a serious invasion of privacy that would be highly offensive to a reasonable person in that (i) the information disclosed by Defendant and shared with third-party trackers was personally identifying information protected by the California Constitution and numerous California and federal statutes; (ii) Defendant did not have authorization or consent to disclose that personally identifying and addressing information, including IP addresses, to any third-party tracker embedded in the Politico website, and the trackers did not have authorization to collect and use that geolocation information; and (iii) the invasion deprived Plaintiffs and Class members of the ability to control the dissemination and circulation of that information, an ability that is considered a fundamental privacy right. Defendant's conduct constitutes a severe and egregious breach of social norms.

124. As a direct and proximate result of Defendant's actions, Plaintiffs and Class members have had their privacy invaded and have sustained injury, including injury to their peace of mind.

125. Plaintiffs and Politico Website Class members seek appropriate relief for that injury, including but not limited to restitution, disgorgement of profits earned by Defendant as a result of or in connection with the intrusions upon Plaintiffs' and Class members' privacy, nominal damages, and any and all other equitable relief that will compensate Plaintiffs and Class members properly for the harm to their privacy interests.

126. Plaintiffs also seek such other relief as the Court may deem just and proper.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and the members of the Class, pray for the following relief:

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

a. An order certifying the Politico Website Class, appointing Plaintiffs Saber Khamooshi, Ryan Wu, and Brian Carolus as representatives of the Politico Website Class, and appointing counsel for Plaintiffs as counsel for the Politico Website Class;

b. An order declaring that Defendant's actions, as described above, violated California Penal Code § 502;

c. An order declaring that Defendant's actions, as described above, violated California Penal Code § 638.51;

d. An order declaring that Defendant's actions, as described above, violated Art. 1, § 1 of the California Constitution;

e. A judgment for and award of compensatory damages or other equitable relief under California Penal Code § 502(e)(1) to Plaintiffs and each of the members of the Politico Website Class;

f. A judgment for and award of statutory damages of $5,000 per violation of CIPA under California Penal Code § 637.2 to Plaintiffs and each of the members of the Politico Website Class;

g. A judgment for and award of restitution, disgorgement of profits, and nominal damages to which Plaintiffs and all of the members of the Politico Website Class are entitled by law;

h. Payment of costs of the suit;

i. Payment of attorneys' fees under California Code of Civil Procedure § 1021.5 and Penal Code § 502(e)(2);

j. An award of pre- and post-judgment interest to the extent allowed by law; and

k. Such other and/or and further relief as the Court may deem proper.

Respectfully submitted,

Dated: September 26, 2024

**KELLER GROVER LLP**

By:____________________________
ERIC A. GROVER
*Attorneys for Plaintiffs*

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

**JURY DEMAND**

Plaintiffs request a trial by jury of all claims that can be so tried.

Respectfully submitted,

Dated: September 26, 2024

**KELLER GROVER LLP**

By: ______________________________
ERIC A. GROVER
*Attorneys for Plaintiffs*

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
***(AVISO AL DEMANDADO):***
POLITICO LLC; and DOES 1 through 100, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
***(LO ESTÁ DEMANDANDO EL DEMANDANTE):***
SABER KHAMOOSHI, RYAN WU, and BRIAN CAROLUS, individually and on behalf of a class of similarly situated individuals,

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

***¡AVISO!*** *Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California* (www.sucorte.ca.gov)*, en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services,* (www.lawhelpcalifornia.org)*, en el Centro de Ayuda de las Cortes de California,* (www.sucorte.ca.gov) *o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* San Francisco Superior Court
Civic Center Courthouse
400 McAllister Street, San Francisco, California 94102

CASE NUMBER:
*(Número del Caso):*
**CGC-24-618459**

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Eric A. Grover, Esq. KELLER GROVER LLP, 1965 Market Street, San Francisco, CA 94103 (415) 543-1305

DATE: **10/01/2024** Clerk, by **ERNALYN BURA** , Deputy
*(Fecha)* *(Secretario)* *(Adjunto)*

*(For proof of service of this summons, use* Proof of Service of Summons *(form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario* Proof of Service of Summons, *(POS-010)).*

[

SUPERIOR COURT OF CALIFORNIA EUREKA COUNTY OF SAN FRANCISCO

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

under: ☐ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
☐ other *(specify):*

4. ☐ by personal delivery on *(date)*:

# Exhibit B

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)* | FOR COURT USE ONLY |
|---|---|
| Keller Grover LLP<br>Eric Grover SBN 136080<br>1965 Market Street<br>San Francisco, CA 94103<br>TELEPHONE NO: 415-543-1305 FAX NO *(Optional)*:<br>E-MAIL ADDRESS *(Optional)*: eagrover@kellergrover.com<br>ATTORNEY FOR *(Name)*: Plaintiff | ELECTRONICALLY<br>**FILED**<br>*Superior Court of California, County of San Francisco*<br>**10/15/2024**<br>**Clerk of the Court**<br>**BY: YOLANDA TABO**<br>**Deputy Clerk** |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF** San Francisco<br>STREET ADDRESS: 400 McAllister Street<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: San Francisco, 94102<br>BRANCH NAME: San Francisco-McAllister | |
| PLAINTIFF / PETITIONER: SABER KHAMOOSHI, et al.<br>DEFENDANT / RESPONDENT: POLITICO LLC, et al. | CASE NUMBER:<br>CGC-24-618459 |
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.:<br>11966385 (23907177) |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   a. [X] Summons
   b. [X] Complaint
   c. [X] Alternative Dispute Resolution (ADR) Package
   d. [X] Civil Case Cover Sheet *(served in complex cases only)*
   e. [ ] Cross-Complaint
   f. [X] Other *(specify documents)*: Notice of Case Management Conference
3. a. Party served *(specify name of party as shown on documents served)*:
   Politico LLC
   b. [X] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a)*:
   CSC Lawyers Incorporating Service - Maddie Bright - Person Authorized to Accept Service of Process
4. Address where the party was served:
   2710 Gateway Oaks Drive Suite 150N, Sacramento, CA 95833
5. I served the party *(check proper box)*
   a. [X] **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date)*: Fri, Oct 11 2024 (2) at *(time)*: 01:30 PM
   b. [ ] **by substituted service.** On *(date)*: at *(time)*: I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3)*:

      (1) [ ] **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.
      (2) [ ] **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.
      (3) [ ] **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.
      (4) [ ] I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date)*: from *(city)*: or [ ] a declaration of mailing is attached.
      (5) [ ] I attach a **declaration of diligence** stating actions taken first to attempt personal service.

| PLAINTIFF / PETITIONER: SABER KHAMOOSHI, et al.<br>DEFENDANT / RESPONDENT: POLITICO LLC, et al. | CASE NUMBER:<br>CGC-24-618459 |
|---|---|

5\. c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

(1) on *(date)*: (2) from *(city)*:

(3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed Notice and Acknowledgement of Receipt.)* (Code Civ. Proc., § 415.30.)

(4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

d. ☐ **by other means** *(specify means of service and authorizing code section)*:

☐ Additional page describing service is attached.

6\. The "Notice to the Person Served" (on the summons) was completed as follows:

a. ☐ as an individual defendant.

b. ☐ as the person sued under the fictitious name of *(specify)*:

c. ☐ as occupant.

d. ☒ On behalf of *(specify)*: Politico LLC

under the following Code of Civil Procedure section:

☐ 416.10 (corporation)
☐ 416.20 (defunct corporation)
☐ 416.30 (joint stock company/association)
☐ 416.40 (association or partnership)
☐ 416.50 (public entity)
☒ other: Corp. Code 17701.16, LLC
☐ 415.95 (business organization, form unknown)
☐ 416.60 (minor)
☐ 416.70 (ward or conservatee)
☐ 416.90 (authorized person)
☐ 415.46 (occupant)

7\. **Person who served papers**

a. Name: Tyler Di Maria

b. Address: 1400 North McDowell Blvd Suite 300, Petaluma, CA 94954

c. Telephone number: 800-938-8815

d. **The fee** for service was: $40.00

e. I am:

(1) ☐ not a registered California process server.

(2) ☐ exempt from registration under Business and Professions Code section 22350(b).

(3) ☒ a registered California process server:

(i) ☐ owner ☐ employee ☒ independent contractor

(ii) Registration No: 2006-006

(iii) County: Sacramento

8\. ☒ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

or

9\. ☐ **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: October 11, 2024

Tyler Di Maria

(NAME OF PERSON WHO SERVED PAPERS / SHERIFF OR MARSHAL)

InfoTrack US, Inc. - P000634
1400 North McDowell Blvd Suite 300,
Petaluma, CA 94954
800-938-8815

(SIGNATURE)