USAMA KAHF (SBN 266443)
E-Mail: ukahf@fisherphillips.com
DAVID M. SHANNON (SBN 342187)
E-Mail: dshannon@fisherphillips.com
**FISHER & PHILLIPS LLP**
2050 Main Street, Suite 1000
Irvine, California 92614
Telephone: (949) 851-2424
Facsimile: (949) 851-0152

DANIELLE KAYS (*PRO HAC VICE*)
E-Mail: dkays@fisherphillips.com
**FISHER & PHILLIPS LLP**
10 South Wacker Drive, Suite 3450
Chicago, IL 60606
Telephone: (312) 260-4751

CATHERINE M. CONTINO (*PRO HAC VICE*)
E-Mail: ccontino@fisherphillips.com
**FISHER & PHILLIPS LLP**
Two Logan Square, 12th Floor
100 N. 18th Street
Philadelphia, PA 19103
Telephone: (610) 230-2150
Facsimile: (610) 230-2151

Attorneys for Defendant
POLITICO LLC

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

SABER KHAMOOSHI, RYAN WU, and BRIAN CAROLUS, individually and on behalf of a class of similarly situated individuals,

Plaintiffs,

v.

POLITICO LLC, and DOES 1 through 100, inclusive,

Defendants.

Case No: 3:24-cv-07836-SK

*(Removed from San Francisco Superior Court, Case No. CGC-24-618459)*

**DEFENDANT'S NOTICE OF MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

*[Filed Concurrently with Declaration of Usama Kahf; [Proposed] Order, and Request for Judicial Notice]*

Date: February 24, 2025
Time: 9:30 a.m.
Dept.: Courtroom C – 15th Floor
Before: Hon. Judge Sallie Kim

Action Filed: September 26, 2024
Trial Date: None set

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:**

**NOTICE IS HEREBY GIVEN** that on February 24, 2025 at 9:30 a.m., or as soon thereafter as the matter may be heard, in Courtroom C – 15th Floor of the above-entitled Court, located at 400 McAllister St. San Francisco, California 94102, Defendant, POLITICO LLC ("POLITICO") hereby move, pursuant to the Federal Rules of Civil Procedure ("FRCP") 12(b)(2), 12(b)(6), and 9(b), for an order to dismiss Plaintiffs Saber Khamooshi, Ryan Wu, and Brian Carolus ("Plaintiffs") Complaint with prejudice.

This Motion is made on the grounds that Plaintiffs, and each of them,

(1) Failed to establish that POLITICO is subject to personal jurisdiction in California, as it is a Delaware limited liability company with its principal place of business in Arlington, Virginia, and Plaintiffs do not allege POLITICO specifically targeted and directed its activities toward California sufficient to establish purposeful availment;

(2) Failed to allege sufficient facts to sustain their claim that POLITICO violated the California Invasion of Privacy Act ("CIPA"), Cal. Pen. Code § 638.51;

(3) Failed to allege sufficient facts to sustain their claim that POLITICO violated Article 1, § 1 of the California Constitution; and

(4) Failed to allege sufficient facts with particularity, under the heightened pleading requirements of FRCP Rule 9(b), to sustain their claim that POLITICIO violated the California Computer Data Access and Fraud Act ("CDAFA"), Cal. Penal Code § 502.

This motion is based on this Notice, the Memorandum of Points and Authorities attached hereto, Request for Judicial Notice, all papers previously filed in this matter, and on such other and further evidence which may be presented at the time of the hearing.

Dated: December 20, 2024

Respectfully submitted,

FISHER & PHILLIPS LLP

By: */s/ Usama Kahf*
USAMA KAHF
DANIELLE KAYS (*pro hac vice*)
DAVID SHANNON
CATHERINE M. CONTINO (*pro hac vice*)
Attorneys for Defendant
POLITICO LLC

# TABLE OF CONTENTS

Page


I. INTRODUCTION .......... 1

II. SUMMARY OF RELEVANT FACTS .......... 2

A. Relevant Factual Background .......... 2

B. Procedural History .......... 3

III. LEGAL STANDARDS .......... 3

A. Rule 12(b)(2) Standard .......... 3

B. Rule 12(b)(6) Standard .......... 4

C. Rule 9(b) Standard .......... 5

IV. LEGAL ARGUMENT .......... 5

A. Plaintiffs Fail to Allege Facts Establishing Personal Jurisdiction .......... 5

1. Plaintiffs Fail To Establish General Jurisdiction. .......... 6

2. Plaintiffs Fail To Establish Specific Jurisdiction. .......... 6

a. Plaintiffs Cannot Establish Purposeful Availment. .......... 7

B. Plaintiffs Fail to Allege a Violation of CIPA .......... 8

1. Plaintiffs Admit that No Identifying Data was Disclosed to Third Parties by Including Screenshots Demonstrating No Such Data was Transmitted in the "Request" the Website Allegedly Sent to Third Parties. .......... 9

2. Because the Statute Does Not Apply to the Sharing of IP Addresses, POLITICO Does Not Operate a Pen Register. .......... 10

3. POLITICO May Lawfully Use a Pen Register or Trap and Trace Device Under the CIPA .......... 15

4. POLITICO Consented to the Alleged collection of IP Addresses because it is the "User" of this Technology. .......... 16

C. Plaintiffs Fail to Allege a Violation of the California Constitution. .......... 17

D. Plaintiffs Fail to State a Violation of the CDAFA. .......... 20

1. Plaintiffs Fail to Allege POLITICO Acted Without Permission Because Plaintiffs Have Not Plead POLITICO Overcame Any Technical or Code-Based Barriers to Access Their Own Website. .......... 20

2. Plaintiffs Fail to Allege They Incurred Any Damage or Loss Required for Statutory Standing under CDAFA. .......... 23

V. CONCLUSION .......... 24

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alamilla v. Hain Celestial Group, Inc.*,
30 F.Supp.3d 943 (N.D. Cal. 2014) ....................10

*In re Apple Inc. Device Performance Litig.*,
386 F. Supp. 3d 1155 (N.D. Cal. 2019) ....................5, 20, 22

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................4

*Boschetto v. Hansing*,
539 F.3d 1011 (9th Cir. 2008) ....................5

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal., San Francisco Cty.*,
582 U.S. 255 (2017) ....................8

*Brown v. Elec. Arts, Inc.*,
724 F.3d 1235 (9th Cir. 2013) ....................4

*Capitol Recs. Inc. v. Thomas-Rasset*,
No. CIV 06-1497, 2009 WL 1664468 (D. Minn. June 11, 2009) ....................12

*Casillas v. Transitions Optical, Inc.*,
No. 23STCV30742, Minute Order (Cal Super. Ct. L.A. Cty. Sept. 9, 2024) ....................11, 12, 13, 16

*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith*,
68 Cal. App. 4th 445 (1998) ....................5

*Columbia Pictures Indus. v. Bunnell*,
No. CV 06-1093FMCJCX, 2007 WL 2080419 (C.D. Cal. May 29, 2007) ....................12, 16

*Congoleum Corp. v. DLW Aktiengesellschaft*,
729 F.2d 1240 (9th Cir. 1984) ....................3

*Cottle v. Plaid Inc.*,
536 F. Supp. 3d 461 (N.D. Cal. 2021) ....................23

*Custom Packaging Supply, Inc. v. Phillips*,
No. 215CV04584ODWAGR, 2015 WL 8334793 (C.D. Cal. Dec. 7, 2015) ....................20

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) ....................6

*Digital Mktg. Advisors v. McCandless Grp., LLC*,
No. 2:21-CV-06888-AB-GJS, 2022 WL 18216003 (C.D. Cal. Mar. 28, 2022) ....................10

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) ....................23

*Emp'rs Ins. of Wausau v. Granite St. Ins. Co.*,
330 F.3d 1214 (9th Cir.2003) ....................11

*Esparza v. Kohl's, Inc.*,
723 F. Supp. 3d 934 (S.D. Cal. 2024)....................15, 18

*Folgelstrom v. Lamps Plus, Inc.*,
195 Cal. App. 4th 986 (2011) ....................19

*In re Google Location Hist. Litig.*,
428 F. Supp. 3d 185 (N.D. Cal. 2019) ....................18

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) ....................7

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023)....................13, 14

*Gutierrez v. Converse, Inc.*,
No. 2:23-cv-06547-RGK-MAR, 2023 WL 8939221 (C.D. Cal. Oct. 27, 2023) ..21, 22, 23, 24

*Heeger v. Facebook, Inc.*,
509 F. Supp. 3d 1182 (N.D. Cal. 2020) ....................15, 19

*Heiting v. Taro Pharms. USA, Inc.*,
709 F. Supp. 3d 1007 (C.D. Cal. 2023) ....................20, 21

*Hill v. Nat'l Collegiate Athletic Ass'n*,
7 Cal. 4th 1 (1994) ....................17, 19

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ....................19, 20

*In re iPhone Application Litig.*,
No. 11-MD-02250-LHK, 2011 WL 4403963 (N.D. Cal. Sept. 20, 2011)....................21

*Lazy Y Ranch Ltd. v. Behrens*,
546 F.3d 580 (9th Cir. 2008) ....................10

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014)....................14

*Licea v. Caraway Home*,
655 F. Supp. ....................8

*Licea v. Caraway Home Inc.*,
655 F. Supp. 3d 954 (C.D. Cal. 2023) ....................8

*Licea v. Hickory Farms LLC*,
No. 23STCV26148, 2024 WL 1698147 (Cal. Super. Ct. L.A. Cty. Mar. 13, 2024) ....11, 13, 15, 16

*LNS Enter. LLC v. Cont'l Motors, Inc.*,
22 F.4th 852 (9th Cir. 2022) ....6

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ....11, 18, 19, 20

*Malibu Media, LLC v. Pontello*,
No. 13-12197, 2013 WL 12180709 (E.D. Mich. Nov. 19, 2013) ....13

*Massie v. Gen. Motors Co.*,
No. 1:20-CV-01560-JLT, 2021 WL 2142728 (E.D. Cal. May 26, 2021) ....7

*Meta Platforms, Inc. v. BrandTotal Ltd.*,
605 F. Supp. 3d 1218 (N.D. Cal. 2022) ....21

*Mikulsky v. Noom, Inc.*,
682 F. Supp. 3d 855 (S.D. Cal. 2023) ....6, 7

*Mirmalek v. Los Angeles Times Commc'ns LLC*,
No. 24-CV-01797-CRB, 2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) ....14

*Moody v. C2 Educ. Sys. Inc.*,
No. 2:24-CV-04249-RGK-SK, 2024 WL 3561367 (C.D. Cal. July 25, 2024) ....13, 14

*NovelPoster v. Javitch Canfield Grp.*,
140 F. Supp. 3d 938 (N.D. Cal. 2014) ....23

*Nowak v. Xapo, Inc.*,
No. 5:20-CV-03643-BLF, 2020 WL 6822888 (N.D. Cal. Nov. 20, 2020) ....22, 23

*Oregon Clinic, PC v. Fireman's Fund Ins. Co.*,
75 F.4th 1064 (9th Cir. 2023) ....22

*Pebble Beach Co. v. Caddy*,
453 F.3d 1151 (9th Cir. 2006) ....7

*Perkins v. LinkedIn Corp.*,
53 F. Supp. 3d 1190 (N.D. Cal. 2014) ....23

*Picot v. Weston*,
780 F.3d 1206 (9th Cir. 2015) ....7

*Rano v. Sipa Press, Inc.*,
987 F.2d 580 (9th Cir. 1993) ....3

*Rodriguez v. Plivo, Inc.*,
No. 24STCV08972 (Cal. Super. Ct. L.A. Cty. Oct. 2, 2024) ..........................................11, 12

*Roe v. Amgen, Inc.*,
No. 2:23-cv-07448-MCS-SSC, 2024 WL 2873482 (C.D. Cal. June 5, 2024).........................23

*Ruiz v. Gap, Inc.*,
540 F. Supp. 2d 1121 (N.D. Cal.2008) *aff'd,* 380 Fed. Appx. 689 (9th Cir. 2010) .................19

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) ..................................................................................6, 7

*Serv. by Medallion, Inc. v. Clorox Co.*
44 Cal. App. 4th 1807 (1996) .....................................................................................5

*Shah v. Fandom, Inc.*,
2024 WL 4539577 (N.D. Cal. Oct. 21, 2024).................................................................14

*Sher v. Johnson*,
911 F.2d 1357 (9th Cir. 1990) ..................................................................................3, 4

*Smith v. Maryland*,
442 U.S. 735 (1979).............................................................................................11, 14

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) .....................................................................................5

*Trew v. Int'l Game Fish Ass'n, Inc.*,
404 F. Supp. 2d 1173 (N.D. Cal. 2005) .......................................................................22

*United States v. Acevedo-Lemus*,
No. SACR 15-00137-CJC, 2016 WL 4208436 (C.D. Cal. Aug. 8, 2016), *aff'd*,
800 F. Appx. 571 (9th Cir. 2020)................................................................................18

*United States v. Christie*,
624 F.3d 558 (3d Cir. 2010).......................................................................................12

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008) ......................................................................3, 11, 14, 15

*United States v. Heckenkamp*,
482 F.3d 1142 (9th Cir. 2007) ...................................................................................18

*United States v. Hood*,
920 F.3d 87 (1st Cir. 2019)........................................................................................12

*United States v. Ritchie*,
342 F.3d 903 (9th Cir. 2003) .....................................................................................4

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) ....................5

*Wesch v. Yodlee*,
No. 20-cv-05991-SK, 2021 WL 1399291 (N.D. Cal. February 16, 2021) ....................23, 24

*Williams v. Facebook, Inc.*,
384 F. Supp. 3d 1043 (N.D. Cal. 2018) ....................24

*Woods v. U.S. Bank N.A.*,
831 F.3d 1159 (9th Cir. 2016) ....................4

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*,
433 F.3d 1199 (9th Cir. 2006) ....................7

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ....................18

**Statutes**

18 U.S.C. § 2701(c) ....................17

Cal. Code Civ. Proc. §410.10 ....................3

Cal. Pen. Code § 638.51(b)(5) ....................16

Cal. Penal Code § 502....................2, 23

Cal. Penal Code § 502(c)(1)....................20, 21

Cal. Penal Code § 502(e)(1)....................23

Cal. Penal Code § 630....................14

Cal. Penal Code § 638.50(b) ....................11

Cal. Pen. Code § 638.51.................... *passim*

Cal. Penal Code § 638.51(a) ....................10

**Other Authorities**

Federal Rules of Civil Procedure 12(b)(2), 12(b)(6), and 9(b)....................1

Federal Rules of Civil Procedure 9(b) .................... *passim*

Federal Rules of Civil Procedure 12(b)(2)....................3

Federal Rules of Civil Procedure 12(b)(6)....................4

# MEMORANDUM OF POINTS AND AUTHORITIES

POLITICO LLC ("POLITICO") respectfully submits this memorandum of points and authorities in support of its Motion to Dismiss the Complaint pursuant to the Federal Rules of Civil Procedure 12(b)(2), 12(b)(6), and 9(b).

## I. INTRODUCTION

Plaintiffs Saber Khamooshi, Ryan Wu, and Brian Carolus, on behalf of a putative class, assert that the alleged collection of their IP addresses and browser and device data violates state privacy statutes and the California Constitution. However, they fail to state actionable causes of action and instead ask this Court to improperly expand California law.

First, Plaintiffs have not established—nor can they establish—that POLITICO is subject to personal jurisdiction in California, as it is a Delaware limited liability company with its principal place of business in Arlington, Virginia. Plaintiffs have not alleged POLITICO specifically targeted and directed its activities toward California sufficient to establish purposeful availment.

Second, Plaintiffs' alleged violation of the California Invasion of Privacy Act ("CIPA"), Cal. Pen. Code § 638.51, fails because Plaintiffs included in their Complaint screenshots that directly contradict their claim that IP addresses and browser or device data was disclosed to any of the alleged third parties. Those screenshots are part of the allegations and must be assumed as true for purposes of this Motion. As explained below, the data at issue that Plaintiffs allege was shared can only be seen in the screenshots within the "Response" that POLITICO's website allegedly received from the third parties, and not in the "Request" which is what the website allegedly sent to the third parties. Even if the Court were to overlook the contradictory allegations that are clear within those screenshots, Plaintiffs' CIPA claim also fails because sharing IP addresses with a company's web server while browsing a public website is not covered by the statute. And even if the alleged disclosure could fall within the scope of this 60-year-old statute, Plaintiffs' claims further fail because Plaintiffs' website browsing would fall within an exception to CIPA permitting electronic communications services (such as POLITICO) to use a pen register to operate and maintain their websites. Moreover, Plaintiffs' CIPA claim also fails because POLITICO is the "user" of the technologies at issue and can therefore consent to the collection of IP addresses by virtue of its relationship with the alleged third parties.

Third, Plaintiffs cannot sustain a cause of action for invasion of privacy under the California Constitution because there is no legally protected privacy interest in IP addresses, a reasonable expectation of privacy in these circumstances, and POLITICO's actions are not an egregious breach of social norms. The information allegedly collected (IP addresses) during website viewing is the basis of routine, normal internet functionality and cannot constitute an invasion of privacy—otherwise, any website operator could be subject to both criminal and civil liability. Thus, this court must reject Plaintiffs' attempts to expand California law beyond the bounds which it was intended to apply.

Finally, Plaintiffs cannot establish that POLITICO circumvented technological or code-based barriers as required for the California Computer Data Access and Fraud Act ("CDAFA"), Cal. Penal Code § 502, let alone plead sufficient facts with particularity under the heightened pleading standard required by Rule 9(b) . Further, Plaintiffs have not suffered damages or losses as a result of the alleged violation of the CDAFA and thus lack statutory standing to assert such claims.

For these reasons, Plaintiffs' claims fail and should be dismissed with prejudice.

## II. SUMMARY OF RELEVANT FACTS

### A. Relevant Factual Background

POLITICO, a Delaware limited liability company with its principal place of business in Virginia, is a robust news operation and information service specializing in politics and policy. Compl. ¶¶ 3, 21. POLITICO focuses on providing great nonpartisan journalism to inform and engage its readers. Plaintiffs are residents of California who allege they visited POLITICO's website.[1] Compl. ¶¶ 9, 10, 13, 14, 17, 18.

Plaintiffs allege that POLITICO "embedded and implemented" certain third-party technologies on the Politico website, including (1) TripleLift Tracker, (2) CasaleMedia Tracker, and (3) Andx Tracker. Compl. ¶ 45. Plaintiffs further allege that each of these technologies uses third-party "cookie[s] to collect and share that user's browser and device data and addressing information, including IP addresses, every time the user interacts with the Politico website." Compl. ¶ 47. An "IP address is a unique identifier for a device," which, as Plaintiffs concede, "enables a device to

[1] For purposes of this motion only, POLITICO assumes the truth of the allegations asserted in Plaintiffs' Complaint.

communicate with another device, such as a computer's web browser communicating with a website's server." Compl. ¶ 31; *see also United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008) (explaining that IP addresses are "provided to and used by Internet service providers for the specific purpose of directing the routing of information" from a "third party's servers"). Plaintiffs allege that the implementation of these technologies on the POLITICO website violates CDAFA, CIPA, and their right to privacy under the California Constitution. Compl. ¶ 8. Plaintiffs do not allege that they suffered monetary damages or loss based on the alleged installation of cookies on their browsers. *See* Compl.

### B. Procedural History

On September 26, 2024, Plaintiffs filed their Complaint in San Francisco Superior Court alleging violations of (1) CDAFA, (2) CIPA, and (3) Article 1, § 1 of the California Constitution. On October 11, 2024, POLITICO received the Complaint via personal service. On November 8, 2024, POLITICO timely removed the state court action to this Court based on diversity jurisdiction.

## III. LEGAL STANDARDS

### A. Rule 12(b)(2) Standard

Rule 12(b)(2) provides that a defendant may move for dismissal based on a lack of personal jurisdiction. "Whether there is a basis for the exercise of personal jurisdiction in a diversity of citizenship case depends upon two considerations: (1) whether a state statute potentially confers personal jurisdiction over the nonresident defendant, and (2) whether the exercise of jurisdiction accords with federal constitutional principles of due process." *Congoleum Corp. v. DLW Aktiengesellschaft*, 729 F.2d 1240, 1241 (9th Cir. 1984). California's statutory limitation is co-extensive with the outer limits of due process. *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990); Cal. Code Civ. Proc. §410.10. Thus, the jurisdictional inquiries under federal due process and California law merge into a single analysis. *Rano v. Sipa Press, Inc.*, 987 F.2d 580, 587 (9th Cir. 1993).

Due process permits exercise of personal jurisdiction only if a court has either general or specific jurisdiction over a nonresident. *Sher*, 911 F.2d at 1361. "General jurisdiction applies where a defendant's activities in the state are 'substantial' or 'continuous and systematic,' even if the cause of action is unrelated to those activities." *Id.* (citing *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1287 (9th Cir. 1977)). Where general jurisdiction is inappropriate, a court may exercise specific

jurisdiction if the defendant has sufficient contacts with the forum state in relation to the claim. *Id.*

**B. Rule 12(b)(6) Standard**

A court must dismiss a complaint for failure to state a claim upon which relief can be granted if it fails to allege "sufficient facts" under a "cognizable legal theory." *See Woods v. U.S. Bank N.A.*, 831 F.3d 1159, 1162 (9th Cir. 2016). Sufficient factual matter only exists if the facts alleged state a claim for relief that is "plausible on its face." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("*Twombly*")). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, the complaint must allege facts that are more than "merely consistent with" a defendant's liability. *See id.* (quoting *Twombly*, 550 U.S. at 557). When ruling on a motion to dismiss, courts presume the truth of all well-pleaded facts. *See Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1247 (9th Cir. 2013). However, no presumption of truth attaches to "threadbare recitals." *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, *supported by mere conclusory statements*, do not suffice") (emphasis added). A court can consider certain materials, such as documents incorporated by referenced into a complaint, "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim[]" without converting the motion to dismiss into a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

Under these standards, the analysis of determining whether a complaint survives a motion to dismiss focuses on two questions: (1) whether the allegations are supported by well-pleaded factual allegations, not just conclusions, entitling the factual allegations to an assumption of truth; and (2) whether the facts, assuming their truth, would plausibly give rise to an entitlement of relief. *See generally id.* As discussed below, each of Plaintiffs' claims fails to allege sufficient facts to support the purported legal theory, primarily because all of Plaintiffs' claims are supported only by conclusory assumptions and threadbare recitations. *See Iqbal*, 556 U.S. at 678. Plaintiff's conclusory allegations need not be assumed as true, and the remaining factual allegations are insufficient to state a plausible entitlement of relief as to any of the claims. In addition, Plaintiffs have plead themselves out of court by including and incorporating by reference screenshots into their Complaint that demonstrate IP

address and browser data were not transmitted by POLITICO to third party trackers, directly contradicting the premise of their entire theory of liability that POLITICO shared website user data with third party trackers. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988-989 (9th Cir. 2001) ("A plaintiff can plead himself out of court by alleging facts which show that he has no claim, even though he was not required to allege those facts.") (internal quotation marks omitted).

### C. Rule 9(b) Standard

Fraud carries a higher standard of pleading that Plaintiffs fail to meet. "In alleging fraud or mistake, a party must state ***with particularity*** the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b) (emphasis added). Fraud pleading requires an even higher standard of specificity than other claims. "A complaint for fraud must allege (1) a knowingly false representation by the defendant; (2) an intent to deceive or induce reliance; (3) justifiable reliance by the plaintiff; and (4) resulting damages." *Serv. by Medallion, Inc. v. Clorox Co.* 44 Cal. App. 4th 1807, 1816 (1996) (combining misrepresentation and scienter as a single element); *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith*, 68 Cal. App. 4th 445, 482 (1998) (intent coupled with misrepresentation is the focus) (internal citations omitted). When a complaint includes a claim "grounded in fraud and its allegations fail to satisfy the heightened pleading requirements of Rule 9(b), a district court may dismiss the . . . claim." *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003). Because Plaintiffs' claims under the CDAFA sound in fraud, Plaintiffs must plead the elements of this claim with particularity. *In re Apple Inc. Device Performance Litig.*, 386 F. Supp. 3d 1155, 1164 (N.D. Cal. 2019). Plaintiffs have failed to plead their CDAFA claim with particularity; therefore, it must be dismissed.

## IV. LEGAL ARGUMENT

### A. Plaintiffs Fail to Allege Facts Establishing Personal Jurisdiction.

Plaintiffs have the burden, which they have failed to meet, to establish that the court has personal jurisdiction over POLITICO in California. *See Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Personal jurisdiction over a non-resident defendant may be asserted on two bases: "(1) 'general jurisdiction,' which arises where defendant's activities in the forum state are sufficiently 'substantial' or 'continuous and systematic' to justify the exercise of jurisdiction over him in all matters; and (2) 'specific jurisdiction,' which arises when a defendant's contacts with the forum give

rise to the claim in question." *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 861-62 (S.D. Cal. 2023). Here, Plaintiffs fail to allege POLITICO is subject to general *or* specific jurisdiction in California.

**1. Plaintiffs Fail To Establish General Jurisdiction.**

The Complaint does not establish this Court can exercise general jurisdiction over POLITICO. The "place of incorporation and principal place of business are paradigm bases for general jurisdiction" of a business. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (internal quotations omitted). A defendant also must have contacts in the forum state that are "continuous and systematic as to render [them] essentially at home in the forum state." *LNS Enter. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 859 (9th Cir. 2022).

Plaintiffs have not alleged sufficient facts demonstrating that POLITICO is "essentially at home" in California. *See Daimler*, 571 U.S. at 139. Critically, Plaintiffs admit POLITICO is a Delaware limited liability company with its headquarters in Arlington, Virginia, but fail to assert any facts regarding POLITICO's alleged actions within the State of California besides concluding that it "operates and markets its services" in the state. *See* Compl. ¶ 28. In fact, Plaintiffs admit that POLITICO is a foreign business entity not registered with the office of the California Secretary of State and with no designated principal place of business in California. *See* Compl. ¶ 29. Thus, merely concluding that POLITICO "systematically and continuously does business in California" without any factual support is not enough. *See* Compl. ¶¶ 21, 28. Thus, Plaintiffs fail to allege facts establishing general jurisdiction over POLITICO in California.

**2. Plaintiffs Fail To Establish Specific Jurisdiction.**

Plaintiffs fail to meet their burden establishing that this Court can exercise specific personal jurisdiction over POLITICO. To establish specific personal jurisdiction, the Ninth Circuit has set forth the following test to analyze a claim of specific jurisdiction:

> [t]he non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). Plaintiffs bear the

burden to establish sufficient contacts under the first two prongs of the test. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006).

**a. Plaintiffs Cannot Establish Purposeful Availment.**

Plaintiffs have not alleged that POLITICO specifically targeted California and directed its activities toward the state sufficiently enough to establish purposeful availment. To analyze the first prong of the specific jurisdiction test, courts utilize either the purposeful availment or purposeful direction tests. *Schwarzenegger*, 374 F.3d at 802.[2] "Purposeful availment" is treated differently in tort and contract cases. To establish purposeful availment for claims sounding in tort, a plaintiff must satisfy the "effects" test to determine whether a defendant has "purposely directed its activities at the forum state[,]" called the "purposeful direction" test. *See Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006). Under the "effects" test, a defendant is only subject to specific jurisdiction in California if plaintiff can establish "purposeful direction" by showing a defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Picot v. Weston*, 780 F.3d 1206, 1213-14 (9th Cir. 2015). In contract cases, the Ninth Circuit asks whether "[t]he non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws[,]" referred to as the "purposeful availment" test. *Id.*

Courts have dismissed CIPA cases for lack of personal jurisdiction based on the purposeful direction analysis and the purposeful availment analysis. *See, e.g.*, *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 837 (N.D. Cal. 2021) (lack of specific personal jurisdiction where plaintiffs only alleged that a vendor sold software to a business where the business operated in California); *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 867 (S.D. Cal. 2023) (declining to exercise specific personal jurisdiction over defendant where plaintiff's complaint failed to include any allegations as to how defendant directed its business at California); *Massie v. Gen. Motors Co.*, No. 1:20-CV-01560-JLT, 2021 WL

[2] Courts often use the phrase "purposeful availment" to include both purposeful availment and purposeful direction. *Schwarzenegger*, 374 F.3d at 802.

2142728, at *6 (E.D. Cal. May 26, 2021) ("broadly accessible websites does not constitute the type of minimum contacts with the forum needed for specific personal jurisdiction."). Indeed, in *Licea v. Caraway Home, Inc.*, the court declined to exercise personal jurisdiction over a defendant, a Delaware corporation with a principal place of business in New York, that operated a website and allegedly provided third-party access to its website chat feature. *Licea v. Caraway Home Inc.*, 655 F. Supp. 3d 954, 959 (C.D. Cal. 2023). The court dismissed the complaint because it "lack[ed] even the most basic showing" of personal jurisdiction noting that plaintiff did not allege "if, or how, [defendant] aimed any of its business at California," and alleged "no connection between Defendant's forum-related contacts and the harm he suffered, which is necessary to show that his claim 'arises out of or relates to the defendant's forum-related activities.'" *Id.* at 969 (citing *Schwarzenegger*, 374 F.3d at 802).

Here, the Complaint similarly lacks even basic allegations to satisfy exercise of personal jurisdiction. The Complaint lacks any facts to support that POLITICO "aimed any of its business at California" or that POLITICO's contacts with California relate to the harm they allege. *See Bristol-Myers Squibb Co. v. Super. Ct. of Cal., San Francisco Cty.*, 582 U.S. 255, 265 (2017) ("What is needed—and what is missing here—is a connection between the forum and the specific claims at issue."). Nor are there any allegations that POLITICO intentionally and specifically targeted Californians. At best, Plaintiffs allege that POLITICO's website covers "politics and policy in the United States and internationally." Compl. ¶ 3. However, a broadly accessible website is insufficient to constitute minimum contacts required for specific personal jurisdiction. *Licea v. Caraway Home*, 655 F. Supp. at 954. Thus, Plaintiffs' Complaint must be dismissed because Plaintiffs have failed to meet their burden of establishing that POLITICO is subject to personal jurisdiction in California.

**B. Plaintiffs Fail to Allege a Violation of CIPA.**

Plaintiffs cannot sustain a cause of action under CIPA because (1) Plaintiffs admitted that no identifying data was disclosed to third parties by including screenshots in the Complaint that show no such data being transmitted in the "Request" the website alleged sent to third parties, (2) § 638.51 does not apply to the collection of IP addresses, (3) POLITICO falls under an exception of CIPA permitting electronic communications services to use a pen register or trap and trace device to operate and

maintain its website, and (4) POLITICO is the "user" of the technologies at issue, and can therefore consent to the collection of IP addresses by virtue of its relationship with the alleged third parties.

**1. Plaintiffs Admit that No Identifying Data was Disclosed to Third Parties by Including Screenshots Demonstrating No Such Data was Transmitted in the "Request" the Website Allegedly Sent to Third Parties.**

The screenshots in the Complaint at Figures 1, 2, and 3 disprove Plaintiffs' allegations that the HTTP requests that POLITICO alleged sent to third parties contained Plaintiffs' IP addresses. *See* Compl. ¶¶ 51, 55, and 57. In describing Figure 1, Plaintiffs allege that "[w]hen a user visits the Politico website, the TripleLift Tracker installs and stores its website cookie on the user's browser. This third-party tracker cookie is used to collect and share that user's browser and device data, IP address, and other identifying information with third-party TripleLift." Compl. ¶ 51. Similarly, in describing Figure 2, "Index Exchange also receives a user's browser and device data and IP address every time the user interacts with the Politico website. . . . This automatic process ensures that Index Exchange consistently receives the user's data and IP address with each website interaction." Compl. ¶ 55. In Figure 3, Plaintiffs allege "[t]he third-party tracker cookie . . . sends the user's IP address to Xandr each and every time the user interacts with the Politico website." Compl. ¶ 57.

In short, Plaintiffs are alleging that IP addresses and browser data are transmitted in the HTTP request to POLITICO's server, which is then shared with TripleLift and Casale Media. *See* Compl. ¶ 46. The left side of Figures 1, 2, and 3 (labeled by Plaintiffs as the "Request") reflects the user's request to POLITICO's website. The right side of the figure (labeled by Plaintiffs as the "Response") reflects POLITICO's response. Plaintiffs acknowledge this process in the following allegation:

> when a website user attempts to access a webpage, the user's browser transmits a communication to the website's server requesting that the server display the website's content for the browser to load. While providing the requested content to the user, the website's server also provides the cookies that it would like the user's browser to install and retain.

Compl. ¶ 32. However, Figure 1, on which Plaintiffs rely, shows only that TripleLift is ***responding*** to POLITICO's request with a Plaintiff's IP address; it does not show that POLITICO is ***transmitting*** the IP address to TripleLift. *Id.* ¶ 51. That is demonstrated by the fact that that there is an IP address included in the ***response*** from TripleLift, as the highlighted IP address is displayed on the response

side, but not in the ***request*** from POLITICO to TripleLift, as the IP address is not displayed on the request side. *See id*.

The process does not reflect that Plaintiffs' IP addresses are transmitted by POLITICO to TripleLift; rather, it shows that TripleLift is simply responding with the IP address. The same is true with respect to Figure 2, which reflects the same process for Casale Media, as well as Figure 3, which reflects the same process for Adnx. Plaintiffs' allegations that IP addresses are transmitted by POLITICO to TripleLift, Casale Media, and Adnx are simply not supported by the screenshots in the Complaint. The screenshots directly contradict Plaintiffs' allegation upon which their entire complaint hinges: that POLITICO transmitted their IP address and browser data to third-party trackers. In fact, the screenshots prove that the opposite is true. A court "need not accept as true allegations contradicting documents that are referenced in the complaint" when adjudicating a motion to dismiss." *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008); *see also Alamilla v. Hain Celestial Group, Inc.*, 30 F.Supp.3d 943, 944 (N.D. Cal. 2014) (dismissing a complaint where "[t]he articles the plaintiff cite . . . contradict the allegation upon which their entire complaint hinges.") and *Digital Mktg. Advisors v. McCandless Grp., LLC*, No. 2:21-CV-06888-AB-GJS, 2022 WL 18216003, at *3 (C.D. Cal. Mar. 28, 2022) (refusing to credit plaintiff's bare allegations in its second amended complaint when they were contradicted by a document incorporated by said complaint).

This is a fatal flaw in Plaintiffs' CIPA allegations. By including these screenshots, they have already admitted that no identifying information was in the "Request" that POLITICO's website sent to third parties. Plaintiffs cannot amend their Complaint in any way that would relieve them of this admission. Therefore, Plaintiffs' CIPA claim must be dismissed with prejudice.

**2. Because the Statute Does Not Apply to the Sharing of IP Addresses, POLITICO Does Not Operate a Pen Register.**

**a. An IP Address is Not the Type of Information CIPA Protects Because it Reflects the Source of a Communication as Opposed to a Destination of an Outgoing Communication.**

Plaintiffs' CIPA claim also fails because sharing an IP address during website viewing does not constitute an unlawful pen register under CIPA. Cal. Penal Code § 638.51(a) states, "a person may not install or use a pen register or a trap and trace device without first obtaining a court order[.]" A

"pen register" is defined as "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code § 638.50(b). A "communication" under the statute is defined as "communications transmitted by voice, data, or image, including facsimile." § 632.7(d)(3). Whether a device is a pen register depends on the type of information collected, rather than the device or process. Request for Judicial Notice ("RJN"), Ex. B [*Rodriguez v. Plivo, Inc.*, No. 24STCV08972 (Cal. Super. Ct. L.A. Cty. Oct. 2, 2024)].[3]

IP addresses are not the type of information CIPA protects because an IP address reflects the ***source*** of an outgoing communication, as opposed to the ***destination*** of an outgoing communication, which is what a pen register collects. *See Smith v. Maryland*, 442 U.S. 735, 745 (1979) (explaining a pen register as "a mechanical device that records the numbers dialed on a telephone by monitoring the electrical impulses caused when the dial on the telephone is released."); *Forrester*, 512 F.3d at 509 (a pen register is a "device that records numbers dialed from a phone line"). In fact, sharing of physical addresses without consent for advertising purposes, which is similar to the sharing of IP addresses in this case, is considered "routine commercial behavior." *See Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (explaining that disclosure of personal information, including geolocation information, does not constitute invasion of privacy). Accordingly, California state courts reject expanding the definition of "pen registers" to include third party trackers collecting IP addresses because an IP address is not the same as the "unique fingerprinting" covered by CIPA, which "thereby provid[es] unique location and other information normally within the domain of law enforcement officers with a warrant." *Licea v. Hickory Farms LLC*, No. 23STCV26148, 2024 WL 1698147, *4 (Cal. Super. Ct. L.A. Cty. Mar. 13, 2024) (sustaining demurrer because tracking IP addresses does not constitute use of a pen register when software is embedded into mobile phone); *see also* RJN, Ex. A [*Casillas v. Transitions Optical, Inc.*, No. 23STCV30742, Minute Order at 1, 4 (Cal Super. Ct. L.A. Cty. Sept. 9, 2024) (sustaining demurrer where plaintiff alleged website operator "collected" her IP

[3] Federal courts can consider unpublished California opinions as instructive. *Emp'rs Ins. of Wausau v. Granite St. Ins. Co.,* 330 F.3d 1214, 1220 n. 8 (9th Cir.2003) (stating that the Court "may consider unpublished state decisions, even though such opinions have no precedential value" and that unpublished opinions, "while certainly not dispositive of how the California Supreme Court would rule," may still "lend[] support" to a certain position regarding California law).

address and shared it with third parties, noting that an IP address is conveyed to a website anytime a person visits a website)].

Here, Plaintiffs cannot plausibly plead that visiting POLITICO's website resulted in use of an unlawful pen register. Plaintiffs allege that POLITICO "collect[ed] Plaintiffs' . . . IP addresses and/or browser and device data." Compl. ¶ 113. However, as Plaintiffs admit, sharing an IP address and browser data occurs any time a user accesses any website. *Id.* ¶ 39 (explaining that an IP address "enables a device to communicate with another device, such as a computer's web browser communicating with a website server."); *see also* RJN, Ex. B [*Rodriguez v. Plivo, Inc.*, No. 24STCV08972 (Cal Super. Ct. L.A. Cty. Oct. 2, 2024) ("Plaintiff's computer could not have accessed Defendant's website unless it provided her IP address.")]. "What makes the internet possible—devices communicating with each other—is the communication of the device's protocol." RJN, Ex. A [*Casillas*, No. 23STCV30742 at *5]. The POLITICO website simply responds to Plaintiffs' own requests to browse its website and facilitate that communication, which is a fundamental internet function. *United States v. Christie*, 624 F.3d 558, 563 (3d Cir. 2010) ("IP addresses are . . . conveyed to websites that an internet user visits, and administrators of websites . . . can see the IP addresses of visitors to their sites. However, site administrators do not possess information linking a given IP address to a particular person."). This basic internet functionality does not amount to a pen register—*i.e.,* POLITICO's website does not "dial" out to Plaintiffs' computer using their IP addresses. Indeed, if Plaintiffs never visited POLITICO's website, POLITICO would not have received Plaintiffs' IP addresses. *United States v. Hood*, 920 F.3d 87, 92 (1st Cir. 2019) ("[A]n internet user generates the IP address data . . . only by making the affirmative decision to access a website or application.").

Even if Plaintiffs' allegations were not contradictory—which they clearly are, as explained above—Plaintiffs' voluntary use of POLITICO's website does not equate to a pen register. Attempting to draw similarities between these two separate and distinct technologies further reveals key differences between IP addresses and outgoing telephone numbers. That is precisely why federal courts interpreting the analogous federal pen register statute decline to apply the statute to the exchange of IP addresses. *See Columbia Pictures Indus. v. Bunnell*, No. CV 06-1093FMCJCX, 2007 WL 2080419, at *11 (C.D. Cal. May 29, 2007); *see also Capitol Recs. Inc. v. Thomas-Rasset*, No.

CIV 06-1497, 2009 WL 1664468, at *3 (D. Minn. June 11, 2009) ("the Pen Register Act cannot be intended to prevent individuals who receive electronic communications from recording the IP information sent to them. ***If it did apply to those cases, then the Internet could not function because standard computer operations require recording IP addresses so parties can communicate with one another over the Internet.***") (emphasis added); *Malibu Media, LLC v. Pontello*, No. 13-12197, 2013 WL 12180709, at *4 (E.D. Mich. Nov. 19, 2013) (Pen Register Act cannot prevent recording IP address information because it was sent voluntarily).

The federal decisions allowing CIPA claims under § 638.51 to proceed past a motion to dismiss have significantly distinguishable facts inapplicable to this case. For example, in *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024 (S.D. Cal. 2023), the defendant was a data broker that provided software to application developers "to assist them in developing their apps"; in return, those third party application developers allowed the defendant to allegedly collect application users' data, which defendant then packaged and sold to its clients for advertising purposes. *Greenley*, 684 F. Supp. 3d at 1035. This data included geolocation and payment methods, among other things. *Id.* The *Greenley* court reviewed the definition of "device or process" finding it "vague and inclusive" and read it broadly without referring to legislative intent. *Id*. at 1050. In contrast here, POLITICO operates a website, which receives Plaintiffs' IP addresses when Plaintiffs visit its website as part of a normal function of website browsing—much different information than at issue in *Greenley*. As such, *Greenley* and cases relying on it as authority are inapposite and inapplicable to the facts here. *See id.*; *see also* RJN, Ex. A [*Casillas*, No. 23STCV30742 at *3 (explaining that the "legislative purpose of the Pen Register statute was to authorize law enforcement to seek orders for telephone surveillance. Section 638.50 does not address the privacy rights of Internet users.")] and *Licea v. Hickory Farms,* 2024 WL 1698147, *5 (CIPA "[l]egislative updates and commentary continue to explicitly cover cordless and cellular phone technology without reference to internet based communications."). As such, the *Greenley* decision is inapplicable in this case because it involved distinct disclosures completely different than those at issue in this case and did not take into account the applicable legislative history of CIPA.[4]

[4] Another case that relied on *Greenley* is *Moody v. C2 Educ. Sys. Inc.*, No. 2:24-CV-04249-RGK-SK, 2024 WL

Similarly, in *Shah v. Fandom, Inc.*, 2024 WL 4539577 (N.D. Cal. Oct. 21, 2024), the court relied on *Greenley* in holding that plaintiffs stated a claim under § 638.51. *Shah*, 2024 WL 4539577 at *2. In *Shah*, plaintiffs alleged that third-party trackers on defendant's website amounted to an illegal pen register because IP address information was sent to third parties without consent. *Id*. at *1. Relying on *Greenley*, the court in *Shah* found that the trackers operate as a "process" under the statute by broadly stating that the CIPA's purpose is to "protect privacy interests." *Id*. at *4. But the court did not analyze the lack of a privacy interest in IP addresses since an IP address is necessary for internet functionality. Thus, both *Greenley* and *Shah* are inapposite to the matter at hand.[5]

**b. Plaintiffs Have No Reasonable Expectation of Privacy in their IP Address and Therefore Their Claim Falls Outside the Privacy Rights CIPA was Designed to Protect.**

Second, Plaintiffs' claim under CIPA fails because an IP address falls outside the privacy rights CIPA was designed to protect. "[A] statutory cause of action extends only to plaintiffs whose interests 'fall within the zone of interests protected by the law invoked.'" *Lexmark Int'l, Inc. v. Static Control Components, Inc*., 572 U.S. 118, 129 (2014) (citations omitted). The statute is clear that the California Legislature enacted CIPA "to protect the right of privacy of the people of [California]." Cal. Penal Code § 630. However, Plaintiffs have no reasonable expectation of privacy in their IP addresses. *See Forrester*, 512 F.3d at 503 (finding no expectation of privacy in their IP addresses of websites visited because "they should know that this information is provided to and used by Internet service providers

---

3561367 (C.D. Cal. July 25, 2024). That case is similarly distinguishable on a factual basis. There, plaintiff alleged that defendant installed TikTok (a social media platform) software on its website, which enabled the website to "collect[] data from anonymous visitors and match[] that data with TikTok's database to uncover the visitors' identities. *Moody*, 2024 WL 3561367 at *1. This is achieved "using device and browser information, geographic information, referral tracking, and URL tracking." Further, plaintiff alleged that the software captured a user's "name, date of birth, and address" when users inputted data into a form on its website when it enabled TikTok's "AutoAdvanced Matching" feature. *Id*. The court found that plaintiff's allegations were sufficient to state a claim that defendant operated an illegal pen register. *Id*. at *2. The *Moody* decision is inapplicable to this case, as there are no allegations that the technologies used by POLITICO are designed to uncover visitors' identities, nor that they capture data such as a person's name, date of birth, and address.

[5] Similarly, in *Mirmalek v. Los Angeles Times Commc'ns LLC*, No. 24-CV-01797-CRB, 2024 WL 5102709, at *4 (N.D. Cal. Dec. 12, 2024), a recent case relying on both *Greenley* and *Shah*, the court mischaracterized how a pen register works in deciding that plaintiff had stated a claim that third party trackers present on defendant's website were pen registers. *Mirmalek*, 2024 WL 5102709 at * 4. The court found that the plaintiff adequately alleged that the third-party trackers record addressing information when plaintiff's browser communicated to defendant's website, resulting in the alleged recording of plaintiff's IP address by third party trackers. *Id*. However, the process described by the court is not how a pen register operates. As discussed, a pen register collects the ***destination*** of an outgoing communication; as opposed to an IP address, which reflects the source of an outgoing communication. *See Smith*, 442 U.S. at 745.

for the specific purpose of directing the routing of information."); *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1189 (N.D. Cal. 2020) (stating "there is no legally protected privacy interest in IP addresses."); *Esparza v. Kohl's, Inc.*, 723 F. Supp. 3d 934, 946 (S.D. Cal. 2024) (finding that IP address, personal details, and browsing history are "insufficient to demonstrate that Defendant's conduct constituted a serious invasion of a protected privacy interest."). Here, the only data allegedly transmitted is "IP addresses and/or browser and device data." Compl. ¶ 113. Plaintiffs—and every internet user—voluntarily provide their IP address when browsing websites, including POLITICO's website. As such, Plaintiffs do not have a legally protected privacy interest in their IP address.

Finally, there are strong public policy concerns against expanding the definition of a pen register under § 638.51 to include collection of IP addresses. As explained, an IP address is automatically communicated to any website a person visits and is necessary for a website to provide information to that person. *Forrester*, 512 F.3d at 510 (noting that IP addresses are "provided to and [are] used by Internet service provides for the specific purpose of directing the routing of information."). As such, Plaintiffs cannot assert a § 638.51 claim here over the sharing of their IP addresses during website viewing. *Licea v. Hickory Farms*, 2024 WL 1698147, *6 (declining to expand § 638.51 based on concerns that such an expansion would render "every single entity voluntarily visited by a potential plaintiff, thereby providing an IP address for purposes of connecting the website, as a violator[]" of CIPA"). Indeed, such "a broad based interpretation would potentially disrupt a large swath of internet commerce without further refinement as [to] the precise basis of liability[.]" *Id*.

Therefore, because § 638.51 does not apply to the collection of IP addresses, Plaintiff's CIPA claim must be dismissed.

**3. POLITICO May Lawfully Use a Pen Register or Trap and Trace Device Under the CIPA.**

POLITICO disputes that § 638.51 applies to the collection of IP addresses. However, even if it did apply, POLITICO falls under an important exception: A "provider of electronic or wire communication service may use a pen register or a trap and trace device . . . to operate, maintain, and test a wire or electronic communication service." § 638.51(b)(1). POLITICO fits into this definition because its website is an electronic communication service which provides "distributed news, analysis,

and opinion online" and "strives to be the dominant source for news on politics and policy in power centers across every continent where access to reliable information, nonpartisan journalism and real-time tools create, inform and engage a global citizenry." Compl. ¶¶ 3-4.

In cases analyzing this exception under the Federal Wiretap Act, courts have found that website operators are exempt from the "prohibitions on use of pen registers and trap and trace devices" where defendants capture incoming IP addresses in order to operate their website. *Columbia Pictures Indus. v. Bunnell*, No. CV 06-1093FMCJCX, 2007 WL 2080419, at *11 (C.D. Cal. May 29, 2007) (holding that collection of IP addresses is exempt from liability for operating a pen register or trap and trace device under a similar exception for providers of "electronic communication services relating to the operation and maintenance of such service" under the Federal Wiretap Act); *see also Licea v. Hickory Farms*, 2024 WL 1698147, *6, and RJN, Ex. A [*Casillas*, No. 23STCV30742 at *6 (noting that cases interpreting federal pen register statute have interpreted website operators as exempt)].

POLITICO is exempt from § 638.51 because its website is an "electronic communication service" and thus is permitted to use a pen register or trap and trace device to collect IP addresses to operate and maintain its website. Therefore, Plaintiff's claim under CIPA fails as a matter of law.

**4. POLITICO Consented to the Alleged collection of IP Addresses because it is the "User" of this Technology.**

Plaintiffs also fail to state a claim under CIPA because POLITICO is a "user" of the alleged technologies at issue and can therefore consent to the collection of IP addresses by virtue of its relationship with TripleLift, CasaleMedia, and Adnx. The statute provides that "[a] provider of electronic or wire communication service may use a pen register or a trap and trace device . . . [i]f the consent of the user of that service has been obtained." Cal. Pen. Code § 638.51(b)(5). Here, the alleged third-party trackers, TripleLift, CasaleMedia, and Adnx, can be considered "electronic or wire communications services" by the statute because Plaintiffs themselves allege that they are designed for use in "marketing campaigns" and "to target specific user groups." Compl. ¶¶ 50, 52. In this case, POLITICO's consent to collecting IP addresses as a "user" of this technology referenced in the Complaint is sufficient to qualify POLITICO for an exemption under CIPA.

In *In re DoubleClick Inc. Priv. Litigation*, the Southern District of New York, interpreting an analogous exemption under the federal Electric Communications Privacy Act ("ECPA"), concluded

that a website operator's consent prohibited claims under that statute. 154 F. Supp. 2d 497 (S.D.N.Y. 2001). In that case, the court was asked to decide whether defendant's advertising technology violated the ECPA when it placed cookies on website visitors' browsers when visitors went to DoubleClick-affiliated websites and collected information about those visitors through those cookies. *DoubleClick*, 154 F. Supp. 2d at 502-03. Similar to CIPA, the ECPA "does not apply with respect to conduct authorized . . . by a user of that [wire or electronic communications] service." 18 U.S.C. § 2701(c). The ECPA provides "a civil right of action against persons who gain unauthorized access to communications facilities and thereby access electronic communications stored incident to their transmission." *Id*. at 507. The *DoubleClick* court dismissed claims brought under the ECPA because it found the statutory exemption applied, as the affiliate websites were "users" of the "electronic communication service"—the internet—and therefore consented to the collection of website visitors' information through their "technological and commercial relationships" with DoubleClick. *Id*. at 510.

Here, the facts are substantially similar, if not identical, to those in *DoubleClick*, and thus this court should similarly dismiss Plaintiffs' CIPA claims. Plaintiffs allege that POLITICO's use of technologies that placed "third party tracker cookies" on its website and collected IP addresses. Compl. ¶ 1. POLITICO also uses the internet through the hosting of its website, and Plaintiffs allege that it uses third-party technologies and is engaged in "technological and commercial relationships." Compl. ¶¶ 50, 52; *DoubleClick*, 154 F. Supp. at 510. Therefore, POLITICO must be deemed a "user" of an "electronic or wire communication service" under CIPA and therefore consented to the implementation of the technologies referenced in Plaintiffs' Complaint. § 638.51(b)(5). As such, Plaintiffs' CIPA claim fails and should be dismissed.

### C. Plaintiffs Fail to Allege a Violation of the California Constitution.

Plaintiffs' invasion of privacy claim under the California Constitution also is deficient. To plead a claim for invasion of privacy under the Article 1, Section 1 of the California Constitution, a plaintiff must allege facts demonstrating the following: "(1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by [a] defendant constituting a serious invasion of privacy." *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1 (1994). "[I]f the allegations show no reasonable expectation of privacy or an insubstantial impact on privacy interests,

the question of invasion may be adjudicated as a matter of law." *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (quotations omitted).

The California Constitution only recognizes two classes of privacy interests: (1) informational privacy, defined as "interests in precluding the dissemination or misuse of sensitive and confidential information"; and (2) autonomy privacy, defined as "interests in making intimate personal decisions or conducting personal activities without observation, intrusion, or interference." *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1086 (C.D. Cal. 2021). As autonomy privacy protects bodily autonomy, informational privacy is the only privacy interest that can be asserted in this case. *Id*. However, again, Plaintiffs have no legally protected privacy interest in their IP address or browser or device information, especially during ordinary website browsing. *See Esparza*, 723 F. Supp. 3d at 946 (dismissing invasion of privacy claim under California constitution because personal details, browsing history, and IP address are insufficient to establish a "serious invasion of a protected privacy interest."); *In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 198 (N.D. Cal. 2019) (finding no privacy interest where Google "only tracked and collected data during use of Google services"); *Yoon*, 549 F. Supp. at 1086 (dismissing invasion of privacy claim under California Constitution where plaintiff did not plead facts that defendant tracked her data outside of defendant's website). Thus, Plaintiffs fail to establish a legally protected privacy interest.

Second, Plaintiffs failed to establish that they had a reasonable expectation of privacy in their IP address or browser and device data. As noted above, an IP address is automatically communicated to a website when a user visits that website and is required for proper user interaction. *United States v. Heckenkamp*, 482 F.3d 1142, 1144 n. 1 (9th Cir. 2007) ("An IP address is a standard way of identifying a computer that is connected to the Internet."); *United States v. Acevedo-Lemus*, No. SACR 15-00137-CJC, 2016 WL 4208436, at *4 (C.D. Cal. Aug. 8, 2016), *aff'd*, 800 F. Appx. 571 (9th Cir. 2020) (finding that criminal defendant had no reasonable expectation of privacy in his IP address as he "routinely disclosed it to third parties . . . and websites he visited on the open internet."). Here, Plaintiffs allege that they had a reasonable expectation of privacy because the alleged trackers "collected and transmitted to undisclosed third parties Plaintiffs' and Class members' personally identifying and addressing information, including their IP addresses, which contain geolocation data."

Compl. ¶ 121. Similar claims asserted in support of a reasonable expectation of privacy have been rejected, particularly where a plaintiff alleges only "generalized location" data was collection. *Heeger*, 509 F. Supp. 3d at 1193 (finding that "city-level" tracking data insufficient to support a claim for invasion of privacy under the California Constitution). Thus, Plaintiffs have no reasonable expectation of privacy related to their IP address or browser and device data.

Third, Plaintiffs were not subjected to a serious invasion of privacy. The California Constitution sets "a high bar" for an invasion of privacy claim. *Low*, 900 F. Supp. at 1025. "Actionable invasions of privacy must be sufficiently serious in their nature, scope, and actual or potential impact to constitute an *egregious breach* of the social norms underlying the privacy right." *Hill*, 7 Cal. 4th at 26 (emphasis added). For example, disclosure of highly sensitive personal information, such as Social Security numbers, is insufficient to establish an invasion of privacy claim. *See*, *e.g.*, *Ruiz v. Gap, Inc.,* 540 F. Supp. 2d 1121, 1127-28 (N.D. Cal.2008) *aff'd,* 380 Fed. Appx. 689 (9th Cir. 2010) (holding that the theft of laptop containing personal information, including social security numbers, did not constitute an egregious breach of privacy and was thus insufficient to state a claim for invasion of privacy under California Constitution); *Folgelstrom v. Lamps Plus, Inc.,* 195 Cal. App. 4th 986, 992 (2011) ("Here, the supposed invasion of privacy essentially consisted of [Defendant] obtaining plaintiff's address without his knowledge or permission, and using it to mail him coupons and other advertisements. This conduct is not an egregious breach of social norms, but routine commercial behavior."). To that end, courts hold that user browser data disclosed to third parties does not amount to a serious invasion of a protected privacy interest and is not a "highly offensive disclosure or information" when the Complaint alleges that browsing history data is disclosed, even when Plaintiffs allege that third parties could de-anonymize the data. *See Low*, 900 F. Supp. at 1025; *see also In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1050, 1063 (N.D. Cal. 2012) (dismissing constitutional invasion of privacy claim because disclosure of user's addresses, geolocation, the unique device identifier assigned to the user's device, gender, age, time zone, and information about app usage was not an "egregious breach of social norms"). Plaintiffs thus fail to establish the third prong under *Hill* as they fail to allege facts demonstrating that collection of IP addresses or browser and device data is an "egregious breach of social norms."

Plaintiffs cannot cure these defects in their Complaint by amendment, as Plaintiffs will be unable to establish that they had a reasonable expectation of privacy in their IP address or browser and device data and because POLITICO's alleged collection of this information does not amount to an "egregious breach of social norms." *See Low*, 900 F. Supp. at 1026 (refusing to grant leave to amend because it would be futile as the complaint failed "to allege facts establishing a serious invasion of privacy or an invasion that is highly offensive to a reasonable person."); *In re iPhone Application Litig.*, 844 F. Supp. at 1078 (refusing to grant leave to amend because "it is unlikely that Plaintiffs can amend their allegations to establish the type of egregious breach of social norms required to establish a constitutional privacy claim" as disclosure of " unique device identifier number, personal data, and geolocation information" is not egregious breach of social norms, even if information was transmitted without consent). For these reasons, Plaintiffs fail to state a claim for invasion of privacy under the California Constitution, and therefore, the claim must be dismissed without leave to amend.

**D. Plaintiffs Fail to State a Violation of the CDAFA.**

Plaintiffs' CDAFA claim must be dismissed because they cannot plead that POLITICO acted "without permission" in collecting their IP addresses and they lack standing because they did not incur any damages. Further, plaintiffs asserting claims under the CDAFA must meet the heightened pleading requirements of Rule 9(b) and allege the circumstances constituting fraud with particularity. *In re Apple*, 386 F. Supp. 3d at 1181. Plaintiffs' allegations lack this requisite specificity.

**1. Plaintiffs Fail to Allege POLITICO Acted Without Permission Because Plaintiffs Have Not Plead POLITICO Overcame Any Technical or Code-Based Barriers to Access Their Own Website.**

The CDAFA is an anti-hacking statute targeting illegal activity and computer crime by prohibiting "the unauthorized use of any computer system for improper or illegitimate purpose." *Custom Packaging Supply, Inc. v. Phillips*, No. 215CV04584ODWAGR, 2015 WL 8334793, at *3 (C.D. Cal. Dec. 7, 2015) (citing *In re Facebook Priv. Litig.*, 791 F. Supp. 2d 705, 715 (N.D. Cal. 2011), *aff'd*, 572 F. Appx. 494 (9th Cir. 2014)); *see also Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1020 (C.D. Cal. 2023) (explaining that CDAFA was initially enacted to combat computer crime and hacking). The CDAFA expressly criminalizes specific conduct, including conduct intended to "devise or execute any scheme or artifice to **defraud**, deceive or extort." Cal. Penal Code

§ 502(c)(1) (emphasis added).

Under each provision of the CDAFA under which Plaintiffs bring their claims, Plaintiffs must allege that POLITICO acted "without permission." *See* § 502(c)(1)); § 502(c)(2); § 502(c)(4); § 502(c)(6) and (7). Courts hold "without permission" means accessing a website in a way that "overcomes technical or code-based barriers." *In re iPhone Application Litig.*, No. 11-MD-02250-LHK, 2011 WL 4403963, at *12 (N.D. Cal. Sept. 20, 2011) (quoting *Facebook, Inc. v. Power Ventures, Inc.*, No. C 08-05780 JW, 2010 WL 3291750, at *11 (N.D. Cal. July 20, 2010)). Therefore, to assert a CDAFA claim, plaintiffs must allege that a defendant "in some way caused output from the function of a computer, without the owner's permission." *Heiting*, 709 F. Supp. 3d at 1020. Put another way, to assert at CDAFA claim and establish that a defendant acted without permission, Plaintiffs must allege that when a request is sent back to the defendant from Plaintiffs' browser, the defendant overcame some technical barriers to access its website. Thus, "where a website is made available to the public without any authentication requirement in at least the first instance, the concept of 'without authorization' does not apply[]." *Meta Platforms, Inc. v. BrandTotal Ltd.*, 605 F. Supp. 3d 1218, 1262 (N.D. Cal. 2022) (internal quotations removed). Indeed, "the mere fact that a plaintiff does not consent to an action does not create liability under the CDAFA." *Gutierrez v. Converse, Inc.*, No. 2:23-cv-06547-RGK-MAR, 2023 WL 8939221, at *4 (C.D. Cal. Oct. 27, 2023).

Here, Plaintiffs fail to allege any facts, let alone facts with the requisite Rule 9(b) specificity, to assert that POLITICO overcame or circumvented any technical obstacles put in place to restrict POLITICO's access. Plaintiffs instead allege that while browsing the POLITICO website, POLITICO installed third-party tracker cookies onto Plaintiffs' browsers, thereby accessing Plaintiffs' "computers, computer systems, and/or computer networks" without permission or authorization. *See* Compl. ¶¶ 97-99. However, those allegations are insufficient to state a CDAFA claim. POLITICO's website is available to the public, and Plaintiffs' interaction with the website (and POLITICO's response) is part of a normal internet function.

Indeed, in *Gutierrez v. Converse, Inc.*, the Central District of California dismissed a similar claim because the CDAFA does not prohibit such conduct. In *Gutierrez*, plaintiff alleged a live chat feature on a defendant's website sent plaintiff's communications to a third party. *Gutierrez*, 2023 WL

8939221, at *4. Significantly, where "[d]efendant controlled the website and presumably designed the Website to facilitate the so-called 'interception' and 'diversion' of these messages," and there were "no technical barriers blocking Defendant from using its own Website." *Id.* Thus, plaintiff could not claim that defendant faced technical barriers blocking it from using its own website. *Id.*

The same reasoning in *Gutierrez* applies to this case. As Plaintiffs allege, after a cookie is installed, the ***user's browser*** sends a message to POLITICO's website to display the website's content. *See* Compl. ¶ 32.[6] Plaintiffs do no plead that any technical or code-based barriers were circumvented through this installation and subsequent interaction with POLITICO's website. Nowhere in Plaintiffs' Complaint do they allege that when the request is transmitted back to POLITICO, POLITICO overcame any technical or code-based barriers in accessing its own website such that it acted "without permission." Plaintiffs rely on conclusory allegations that POLITICO's alleged installation of third-party trackers violated the CDAFA without pleading any facts as to how POLITICO circumvented technical or code-based barriers to do so. Plaintiffs' CDAFA claim is subject to Rule 9(b)'s pleading standards because it sounds in fraud. Under Rule 9(b), Plaintiffs fail to allege the "who, what, when, where, and how" of the alleged CDAFA misconduct." *In re Apple*, 386 F. Supp. 3d at 1164; *Nowak v. Xapo, Inc.*, No. 5:20-CV-03643-BLF, 2020 WL 6822888, at *5 (N.D. Cal. Nov. 20, 2020) (dismissing CDAFA claim because plaintiff's claim sounds in fraud, is subject to Rule 9(b) pleading standard, and failed to allege specific facts to sustain cause of action).

Further, because POLITICO did not overcome any technical barriers when Plaintiffs accessed its website, Plaintiffs are unable to cure the defects in their Complaint and should not be granted leave to amend. *Oregon Clinic, PC v. Fireman's Fund Ins. Co.*, 75 F.4th 1064, 1073 (9th Cir. 2023) ("If a complaint is dismissed for failure to state a claim, leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency."). Thus, no new allegations could address the problems in Plaintiffs' Complaint because an "amendment would be futile." *Trew v. Int'l Game Fish Ass'n, Inc.*, 404 F. Supp. 2d 1173,

---

[6] Plaintiffs claim that "[a] website cookie refers to a small text file that a website server creates and transmits to a web browser . . . which then installs and stores the file in a particular directory on an individual's computer, phone, or other device. When a website user attempts to access a webpage, ***the user's browser transmits a communication to the website's server requesting that the server display the website's content for the browser to load***." Compl. ¶ 32 (emphasis added).

1177 (N.D. Cal. 2005). Therefore, Plaintiffs' CDAFA claim should be dismissed without leave to amend because they have not plead facts supporting POLITICO acted "without permission."

**2. Plaintiffs Fail to Allege They Incurred Any Damage or Loss Required for Statutory Standing under CDAFA.**

The CDAFA also requires Plaintiffs to allege they suffered "damage or loss" in order to have standing for a civil claim. § 502(e)(1); *see also Wesch v. Yodlee*, No. 20-cv-05991-SK, 2021 WL 1399291, at *7 (N.D. Cal. February 16, 2021). A plaintiff is required to plead "some injury emanating from [a party's] alleged Section 502 violations to survive [a] Motion to Dismiss." *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1219 (N.D. Cal. 2014); *see also NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 949 (N.D. Cal. 2014) (finding complaint failed to allege damages or loss under CDAFA). Although a certain threshold for damages need not be met, a plaintiff still needs to allege damages resulting from the CDAFA violation. *See Gutierrez*, 2023 WL 8939227 at *5 ("While Plaintiff is correct that she need not meet a certain threshold, she is incorrect that she need not allege any damages."). The CDAFA allows recovery of "[c]ompensatory damages [that] include any expenditure reasonably and necessarily incurred by the owner or lessee to verify that a computer system, computer network, computer program, or data was or was not altered, damaged, or deleted by the access." Cal. Penal Code § 502(e)(1). Courts have held that the type of loss protected by CDAFA does not include a "loss of the right to control their own data, the loss of the value of their data, and the loss of the right to protection of the data." *Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 488 (N.D. Cal. 2021); *see also Nowak*, 2020 WL 6822888 at *5 (finding that plaintiff's alleged loss of value of Bitcoins and cost to hire investigator to trace stolen Bitcoins was not cognizable under CDAFA, dismissing claim) and *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1082 (N.D. Cal. 2023) (dismissing CDAFA claim where plaintiffs alleged use of Meta Pixel precluded them from communicating with healthcare providers because plaintiffs failed to provide support that type of loss or damage is actionable under statute). Further, allegations of unjust enrichment or that a defendant has profited from disclosing information to a third party are insufficient to support a CDAFA claim. *See Roe v. Amgen, Inc.*, No. 2:23-cv-07448-MCS-SSC, 2024 WL 2873482 at *7 (C.D. Cal. June 5, 2024) (dismissing CDAFA claim when plaintiffs failed to allege facts showing defendant was unjustly enriched and failed to allege that defendant sold their data to support their claims).

Here, Plaintiffs fail to plead facts establishing they incurred a cognizable damage or loss based on the alleged installation of third-party cookies on their browser. In an attempt to circumvent this deficiency, Plaintiffs conclude POLITICO was "unjustly enriched by accessing, acquiring, taking, and using" Plaintiffs' data. Compl. ¶ 102. But Plaintiffs include no facts to support their claim, nor do they allege that POLITICO sold their data. Moreover, Plaintiffs' conclusory allegations that they "suffered damages" and are thus "entitled to compensatory damages, injunctive relief, and other equitable relief" are insufficient to plead damages under CDAFA. *See Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1049 (N.D. Cal. 2018) (dismissing CDAFA claim when plaintiffs' complaint offered "only conclusory claims of a deprivation of income and an invasion of privacy without identifying injury to the plaintiffs themselves"); *Gutierrez*, 2023 WL 8939227, at *5 (dismissing CDAFA claim where plaintiff made no factual allegations about damages); *Wesch*, 2021 WL 1399291, at *7 (dismissing CDAFA claim where plaintiffs "fail to allege that the data incurred any damage or loss").

Because Plaintiffs have failed to plead facts that they suffered cognizable damages or losses, their CDAFA must be dismissed.

## V. <u>CONCLUSION</u>

For all the foregoing reasons, Defendant requests that the Court grant its Motion to Dismiss without leave to amend.

Dated: December 20, 2024

Respectfully submitted,

FISHER & PHILLIPS LLP

By: */s/ Usama Kahf*
USAMA KAHF
DANIELLE KAYS (*pro hac vice*)
DAVID SHANNON
CATHERINE M. CONTINO (*pro hac vice*)
Attorneys for Defendant
POLITICO LLC