USAMA KAHF (SBN 266443)
E-Mail: ukahf@fisherphillips.com
DAVID M. SHANNON (SBN 342187)
E-Mail: dshannon@fisherphillips.com
**FISHER & PHILLIPS LLP**
2050 Main Street, Suite 1000
Irvine, California 92614
Telephone: (949) 851-2424
Facsimile: (949) 851-0152

DANIELLE KAYS (*PRO HAC VICE*)
E-Mail: dkays@fisherphillips.com
**FISHER & PHILLIPS LLP**
10 South Wacker Drive, Suite 3450
Chicago, IL 60606
Telephone: (312) 260-4751

CATHERINE M. CONTINO (*PRO HAC VICE*)
E-Mail: ccontino@fisherphillips.com
**FISHER & PHILLIPS LLP**
Two Logan Square, 12th Floor
100 N. 18th Street
Philadelphia, PA 19103
Telephone: (610) 230-2150
Facsimile: (610) 230-2151

Attorneys for Defendant
POLITICO LLC

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

SABER KHAMOOSHI, RYAN WU, and BRIAN CAROLUS, individually and on behalf of a class of similarly situated individuals,

Plaintiffs,

v.

POLITICO LLC, and DOES 1 through 100, inclusive,

Defendants.

Case No: 3:24-cv-07836-SK

*(Removed from San Francisco Superior Court, Case No. CGC-24-618459)*

**REQUEST FOR JUDICIAL NOTICE**

Action Filed: September 26, 2024
Trial Date: None set

**TO THE COURT, PLAINTIFFS AND THEIR COUNSEL OF RECORD**:

1. Pursuant to Federal Rules of Evidence Rule 201, Defendant POLITICO LLC ("POLITICO"), through its attorneys of record, hereby request that the Court take judicial notice of the following:

(a) *Casillas v. Transitions Optical, Inc.*, No. 23STCV30742, Minute Order at 1, 4 (Cal Super. Ct. L.A. Cty. Sept. 9, 2024) as **Exhibit A**.

(b) *Rodriguez v. Plivo, Inc.*, No. 24STCV08972 (Cal. Super. Ct. L.A. Cty. Oct. 2, 2024) as **Exhibit B**.

2. Judicial notice of **Exhibits A and B** is proper as judicial notice may be taken of documents filed in court proceedings. Fed. R. Evid. 201; *Harris v. Cty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) ("We may take judicial notice of . . . documents on file in federal or state courts."); *see also Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (taking judicial notice of pleadings, memoranda, and other court filings).

3. Moreover, judicial notice of **Exhibits A and B** is proper under Federal Rule of Evidence 201, which provides that a "court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)-(2). A federal court must take judicial notice of facts "if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2).

4. Finally, judicial notice of **Exhibits A and B** is proper as documents that are matters of public record may also be judicially noticed. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) ("[A] court may take judicial notice of 'matters of public record.'"); *Allergan USA, Inc. v. Prescribers Choice, Inc.*, 364 F. Supp. 3d 1089, 1095 (C.D. Cal. 2019).

///

///

///

///

///

///

5. Based on the foregoing, POLITICO respectfully requests that this Court take judicial notice of the above-referenced documents for purposes of POLITICO's Motion to Dismiss.

Dated: December 20, 2024

Respectfully submitted,

FISHER & PHILLIPS LLP

By: */s/ Usama Kahf*

USAMA KAHF
DANIELLE KAYS (*pro hac vice*)
DAVID SHANNON
CATHERINE M. CONTINO (*pro hac vice*)
Attorneys for Defendant
POLITICO LLC

# EXHIBIT A

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
**Civil Division**
Central District, Stanley Mosk Courthouse, Department 58

**23STCV30742** September 9, 2024
**MILTITA CASILLAS vs TRANSITIONS OPTICAL, INC., A DELAWARE CORPORATION** 9:00 AM

Judge: Honorable Bruce G. Iwasaki CSR: None
Judicial Assistant: M.F. Lopez ERM: None
Courtroom Assistant: R.E. Lee Deputy Sheriff: None

APPEARANCES:

For Plaintiff(s): Scott J. Ferrell (LACC)

For Defendant(s): Anahit Tagvoryan (LACC)

**NATURE OF PROCEEDINGS:** Hearing on Defendant's Demurrer - without Motion to Strike; Case Management Conference

The Court issues its tentative ruling which has been posted on the Los Angeles Superior Court's Website in advance of this hearing.

The matter is called for hearing.

Hearing on Demurrer is held.

Both sides submit to the Court's tentative ruling.

The Court rules in accordance with its tentative ruling as follows:

Plaintiff Miltita Casillas (Plaintiff) alleges that upon accessing the website of Defendant Transitions Optical, Inc. (Defendant or Transitions Optical), Defendant secretly installed a "pen register" ("PR") and "trap and trace" tracking ("TT") "beacon" (collectively "PR/TT") on Plaintiff's web browser to "collect Plaintiff's IP address." Plaintiff alleges this violated the California Invasion of Privacy Act ("CIPA"), specifically, Penal Code section 638.51. That section prohibits, subject to exceptions, nonconsensual installation of a pen register or a trap and trace device without a court order. In December 2023, Plaintiff filed a complaint for violation of CIPA, Penal Code section 638.51. On April 23, 2024, the Court sustained with leave to amend Transitions Optical's demurrer. In May 2024, Plaintiff Casillas filed a First Amended Complaint (FAC). On June 25, 2024, Defendant Transitions Optical demurred to the FAC. On August 26, 2024, Plaintiff filed opposition; Defendant replied.

The Court sustains the demurrer without leave to amend.

**II. Requests for Judicial Notice.**

Plaintiff requests judicial notice of the legislative history of Senate Bill 1428. The request is granted.

**III. Discussion**

**A. Legal Standard**

A demurrer is an objection to a pleading, the grounds for which are apparent from either the face of the complaint or a matter of which the court may take judicial notice. (Code Civ. Proc., § 430.30, subd. (a); *see also Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) The purpose of a demurrer is to challenge the sufficiency of a pleading "by raising questions of law." (*Postley v. Harvey* (1984) 153 Cal.App.3d 280, 286.) "In the construction of a pleading, for the purpose of determining its effect, its allegations must be liberally construed, with a view to substantial justice between the parties." (Code Civ. Proc., § 452.) The court " ' "treat[s] the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law . . .." ' " (*Berkley v. Dowds* (2007) 152 Cal.App.4th 518, 525.)

**B. Pertinent provisions of California Invasion of Privacy Act.**

"Except as provided in subdivision (b), a person may not install or use a pen register or a trap and trace device without first obtaining a court order pursuant to Section 638.52 or 638.53." (Pen. Code, §638.51, subd. (a).) "A violation of this section is punishable by a fine not exceeding two thousand five hundred dollars ($2,500), or by imprisonment in the county jail not exceeding one year, or by imprisonment pursuant to subdivision (h) of Section 1170, or by both that fine and imprisonment." (Pen. Code, §638.51, subd. (a).)

"'Pen register' means a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication. 'Pen register' does not include a device or process used by a provider or customer of a wire or electronic communication service for billing, or recording as an incident to billing, for communications services provided by such provider, or a device or process used by a provider or customer of a wire communication service for cost accounting or other similar purposes in the

ordinary course of its business." (Pen. Code, §638.50, subd. (b).)

" 'Trap and trace device' means a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." (Pen. Code, §638.50, subd. (c).)

"Any person who has been injured by a violation of this chapter may bring an action against the person who committed the violation for the greater of the following amounts: (1) Five thousand dollars ($5,000) per violation. [¶] (2) Three times the amount of actual damages, if any, sustained by the plaintiff." (Pen. Code, §637.2, subd. (a).)

"It is not a necessary prerequisite to an action pursuant to this section that the plaintiff has suffered, or be threatened with, actual damages." (Pen. Code, §637.2, subd. (c).)

The legislative purpose of the Pen Register statute was to authorize law enforcement to seek orders for telephone surveillance. Section 638.50 does not address the privacy rights of Internet users.

**C. Allegations in First Amended Complaint**

The FAC here is one of many nearly identical complaints filed by a self-described tester plaintiff. (FAC ¶ 4.) The FAC is noteworthy for pleading a series of hypothetical possibilities. There are few specific facts concerning either Plaintiff or Defendant.

Paragraphs 20 through 30 of the First Amended Complaint purport to describe what website operators "can" do, describing hypothetical events having no specific relation to either Plaintiff or Defendant. "Some rogue website operators, however, secretly attach a 'tracking beacon' to visitor devices that are then used to track and surveil users." (FAC ¶ 20.) The FAC then alleges that "tracking software will connect fragments of information" and "connects and correlates 'undeclared identifiers.'" (*Id.* ¶ 21.) A "website owner can correlate a grouping of fragments and the connections between them to create a unique digital profile of each individual website visitor." (*Id.* ¶ 22.) A further hypothetical scenario is set forth in paragraph 23: "If a website owner can link a unique digital profile created by digital fingerprinting to a particular individual, the website owner can assemble a detailed picture of a person's private life…." The FAC continues in this vein, with a fictional chart and a description of the potential economic value of such digital profiles. (*Id.* ¶¶ 24-30.)

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
**Civil Division**
Central District, Stanley Mosk Courthouse, Department 58

**23STCV30742**
**MILTITA CASILLAS vs TRANSITIONS OPTICAL, INC., A DELAWARE CORPORATION**

September 9, 2024
9:00 AM

Judge: Honorable Bruce G. Iwasaki
Judicial Assistant: M.F. Lopez
Courtroom Assistant: R.E. Lee

CSR: None
ERM: None
Deputy Sheriff: None

---

In paragraphs 31 through 45, the FAC continues to allege no conduct by Defendant distinct from what is done by any website operator, and alleges no harm to Plaintiff. The FAC states that a "pen register" and "trap and trace" device" are referred to as "PR/TT." (FAC ¶ 13.) After a lengthy exposition, the FAC makes assertions that are inconsistent: "Because the PR/TT beacon captures the outgoing information – the IP address – from the visitors to websites, it is a 'pen register'" under Penal Code section 638.50. (*Id.* ¶ 45.) Two points about this assertion are noteworthy. First, after distinguishing between a "pen register" and a "trap and trace device" (*Id.* ¶ 13), paragraph 45 conflates the two. Second, the assertion is a tautology: a pen register is a pen register.

The exposition that concludes with paragraph 45 asserts that the only outgoing information even hypothetically captured by the so called "beacon" is the website visitor's Internet Protocol (IP) address. The FAC explains that the IP address is a "unique identifier for a device" (*Id.* ¶ 34.) and "enables a device to communicate with another device – such as a computer's browser communicating with a server…." (*Id.* ¶ 35.) Despite dark, vague hints about the possibility that highly sensitive personal information may be accessed (FAC ¶ 21), the only data assertedly captured is the IP address. (FAC ¶¶ 33, 37, 38, 39, 40, 41, 42 and 45.) To this point, the FAC is merely describing what happens every time any user accesses any website. Any computer that is used to access the internet needs an IP address to do so. (*U.S. v. Forrester* (9th Cir. 2008) 512 F.3d 500, 510, fn. 5 ["Every computer or server connected to the Internet has a unique IP address."](*Forrester*).)**[1]**

FAC paragraphs 47 through 68 do not specifically plead Defendant's conduct, but primarily that of unnamed companies "such as" Defendant. For instance, companies "like Defendant" and an unnamed PR/TT "developer" share data. (FAC ¶¶ 67-68) Similarly, paragraphs 69 through 76, which purport to allege Plaintiff's experience, are completely generic, with no specifics regarding dates. Plaintiff asserts that Defendant used the "PR/TT beacon to collect Plaintiff's IP address." (FAC ¶ 70.) Then Defendant and the unidentified "developer" use this information to "boost" their revenue. (*Id.* ¶ 71.) Plaintiff pleads that she did not consent to Defendant using the PR/TT beacon on her browser. (*Id.* ¶¶ 53, 76.) She further pleads that Defendant did not obtain a court order before doing so. (*Id.* ¶ 76.) Plaintiff describes no actual instance of Defendant obtaining unauthorized access to her private information. She offers no specifics about her accessing Defendant's website, but vaguely alleges a purported investigation "via a computer expert," who is unidentified. Although beginning with paragraph 78, Plaintiff alleges a cause of action for invasion of privacy, she fails to allege how her privacy was invaded. She pleads, in fact, that whatever Defendant allegedly installed, "does not collect the

contents of Plaintiff's electronic communications" at all. (*Id.* ¶ 84.)

Plaintiff alleges that "spyware beacons" detected on Defendant's website are identified in Exhibit 1 to the FAC. (¶ 54.) The exhibit is illegible, and no authenticating information is provided. The FAC does not allege that what the exhibit purports to show has anything to do with any actual encounter Plaintiff had with the website.

**D. The parties' contentions.**

Defendant Transitions Optical contends that the FAC (1) fails to allege that it used a pen register in operating its website, (2) merely alleges that Defendant collected the IP address of Plaintiff's computer, to which she has, in these circumstances, no reasonable expectation of privacy, and (3) that Plaintiff lacks standing to sue because he fails to allege any cognizable injury.

Plaintiff contends (1) the pen register statute applies to website access, and (2) that she has a reasonable expectation in the privacy in her computer's IP address. She also (3) denies that Defendant's website provides an electronic communications service.

**E. Plaintiff fails to plead a violation of Penal Code section 638.51.**

Beyond hypothetical scenarios, the only specific act the FAC alleges is that when Plaintiff used her computer voluntarily to access the Transitions Optical website, Defendant "collected Plaintiff's IP address." (FAC ¶ 70.) But this occurs when any user accesses any website. As Plaintiff himself alleged, the IP address "enables a device to communicate with another device – such as a computer's browser communicating with a server…." (*Id.* ¶ 35.) What makes the internet possible – devices communicating with each other – is the communication of the device's protocol. "IP addresses are … conveyed to websites that an internet user visits, and administrators of websites…can see the IP addresses of visitors to their sites. However, site administrators do not possess information linking a given IP address to a particular person." (*U.S. v. Christie* (3d Cir. 2010) 624 F.3d 558, 563.) Here, Plaintiff chose to allow Defendant to "collect" its IP address. " '[A]n internet user generates the IP address data … only by making the affirmative decision to access a website or application." (*U.S. v. Morel* (1st Cir. 2019) 922 F.3d 1, 9.)

The pen register statute did not, and does not, criminalize the process by which all websites communicate with all users who choose to access them. The terms of Penal Code

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
**Civil Division**
Central District, Stanley Mosk Courthouse, Department 58

**23STCV30742**
**MILTITA CASILLAS vs TRANSITIONS OPTICAL, INC., A DELAWARE CORPORATION**

September 9, 2024
9:00 AM

Judge: Honorable Bruce G. Iwasaki
Judicial Assistant: M.F. Lopez
Courtroom Assistant: R.E. Lee

CSR: None
ERM: None
Deputy Sheriff: None

section 638.50 make that clear. A pen register does not include a "process used by a provider or customer of [an] … electronic communication service for … communications service provided by such provider … or other similar services in the ordinary course of business." (Pen. Code, § 638.50, subd. (b).) Moreover, even if the process of collecting IP addresses is deemed a pen register, there is no liability when an electronic communication service does so to "operate, maintain, and test [an] … electronic communication service" or to "record the fact that [an] … electronic communication was initiated or completed" to protect against unlawful or abusive use of the service. (Pen. Code, § 638.51, subd. (b).) Given the breadth of the statutory definition, Defendant's website is an electronic communication service, and under the terms of the statute, obtaining IP addresses from ordinary user access does not violate the pen register statute.**[2]**

Cases interpreting the analogous federal pen register statute demonstrate that there is no cause of action under Penal Code section 638.51 for the conduct alleged here. Assuming that a pen register captures outgoing IP addresses, "the collection of incoming IP addresses by [a website operator] is exempt" from penalty under 18 U.S.C. section 3121(b)(1), because defendants "necessarily capture such data …to operate the website." (*Columbia Pictures Industries v. Bunnell* (C.D. Cal. May 29, 2007, CV 06-1093FMCJCX) 2007 WL 2080419 at p. *11.) The federal statute is mirrored by Penal Code section 638.51, subdivision (b)(1), which authorizes a provider of an electronic communications service to use a pen register to "operate, maintain, and test [an] … electronic communications service." (See also *Capitol Records, Inc. v. Thomas Rasset* (D. Minn. June 11, 2009, No. 06-1497) 2009 WL 1664468, at p. 3 ["the Pen Register Act cannot be intended to prevent individuals who receive electronic communications from recording the IP information sent to them. If it did apply to those cases, then the Internet could not function because standard computer operations require recording IP addresses so parties can communicate with one another over the Internet"].) Plaintiff fails to address these authorities.

**F. Plaintiff has no privacy interest in the Internet Protocol address of her computer, and by accessing Defendant's website, she had no reasonable expectation that the IP address was private.**

Even if it is assumed that the ability of a website operator to obtain a user's IP address constitutes operating a pen register, the issue here is whether, when Plaintiff chose to access Transitions Optical's website, she had a reasonable expectation in the privacy of her computer's IP address. Based on relevant authorities, the answer is no.

Although the FAC alludes to hypothetical "digital fingerprinting" by which an imaginary

website might identify the location, race, browsing history, and other traits of each user (FAC ¶ 24.), the only information Plaintiff alleges she provided to Defendant – as necessary when she accessed the Transitions Optical website – was her computer's Internet Protocol address. (FAC ¶¶ 52, 60.)

To establish her claim that Defendant violated her right of privacy, Plaintiff must establish a specific, legally protected privacy interest in her computer's IP address, and entertain a reasonable expectation of privacy. (*Hill v. National Collegiate Athletic Association* (1994) 7 Cal.4th 1, 35.)

In assessing claims that one's personal information has been improperly accessed or exposed, courts distinguish between communication *content* and records or information about a communication. The former is a protected privacy interest; the latter is not. The United States Supreme Court explained this when, in *Smith v. Maryland* (1979) 442 U.S. 735, it held that warrantless installation of a pen register by a telephone company was not a "search" within the Fourth Amendment. There, the pen register " 'record[ed] numbers dialed on a telephone by monitoring the electrical impulses caused when the dial on the telephone is released. It does not overhear oral communications and does not indicate whether calls are actually completed." (*Id.* at p. 736, n.1.) The high court distinguished between a record of information about a communication, and, on the other hand, the contents of communication. In contrast to a listening device, "pen registers do not acquire the *contents* of communications." (*Id.* at p. 741, original italics.) The Supreme Court concluded that the petitioner "entertained no actual expectation of privacy in the phone numbers she dialed, and that, even if she did, her expectation was not 'legitimate'" and thus, use of the pen register was not a "search." (*Id.* at p. 745-746.) Plaintiff's effort to dismiss this foundational holding is unpersuasive. (Oppos. p. 16.)

Courts have repeatedly applied *Smith's* reasoning to IP addresses and concluded that no privacy interest is violated when a user shares the information with the service provider or when accessing a website. As explained above, Plaintiff alleges that when she accessed the Transitions Optical website, Defendant "collected" her computer's IP address.**[3]**

In *U.S. v. Forrester* (9th Cir. 2008) 512 U.S. 500, the Ninth Circuit relied on *Smith* to reject a challenge to the government's computer surveillance, which had gathered, among other information, IP addresses of websites visited. "[T]he Court in *Smith* … drew a clear line between unprotected addressing information and protected content information…." (*Id.* at p. 510.) The Court of Appeals reasoned that the IP information was analogous to the record of phone numbers dialed in *Smith.* "Internet users have no expectation of privacy in the…IP

addresses of the websites they visit because they should know that this information is provided to and used by Internet service providers for the specific purpose of directing the routing of information…. IP addresses are not merely passively conveyed through the third party equipment, but rather are voluntarily turned over in order to direct the third party's servers." (*Ibid.*) The *Forrester* court found that the surveillance in question could be compared to government review of physical mail. "In a line of cases dating back to the nineteenth century, the Supreme Court has held that the government cannot engage in a warrantless search of the contents of sealed mail, but can observe whatever information people put on the outside of mail, because that information is voluntarily transmitted to third parties." (*Id.* at p. 511.)

The Ninth Circuit has reiterated its view that there is no expectation of privacy in an IP address. In *In re Zynga Privacy Litigation* (9th Cir. 2014) 750 F.3d 1098 (*Zynga*), the court affirmed dismissal of a suit filed by users of a social networking site. The Ninth Circuit reasoned that "courts have long distinguished between the contents of a communication (in which a person may have a reasonable expectation of privacy) and record information about those communications (in which a person does not have a reasonable expectation of privacy)." (*Id.* at p. 1108.) Accordingly, said the panel, "we have allowed the warrantless collection of email and IP addresses under the same reasoning because email and IP addresses 'constitute addressing information and do not necessarily reveal any more about the underlying contents of communication than do phone numbers.'" (*Ibid.*) Here, the FAC cites *Zynga* in conceding that Defendant did "not collect the content of Plaintiff's electronic communications with the Website." (FAC ¶ 84.)

In *U.S. v. Rosenow* (9th Cir. 2022) 50 F.4th 715, the court rejected a claim that a warrantless subpoena for IP information was an unconstitutional search. Relying on *Forrester,* the *Rosenow* court concluded that a defendant has no reasonable expectation of privacy in IP addresses. (*Id.* at p. 738.) While Plaintiff argues that *Forrester* should not be followed because of technological developments, that is not the view of more recent circuit court precedent.

The California Court of Appeal also followed *Forrester*. In *People v. Stipo* (2011) 195 Cal.App.4th 664, the court held: "A subscriber has no expectation of privacy in the subscriber information she supplies to her Internet provider. Therefore, her challenge to a warrant requiring her Internet provider to identify him through her Internet Protocol (IP) number has no merit." (*Id.* at p. 666.)

The view that there is no privacy interest in IP addresses provided to a service provider or website is well established. This is due in part because a user voluntarily shares her computer's

IP address every time she accesses a website. (See *U.S. v. Morel* (1st Cir. 2019) 922 F.3d 1, 9 [defendant had no reasonable expectation of privacy in her IP address; "an internet user generates the IP data…only by making the affirmative decision to access a website"]; *U.S. v. Caira* (7th Cir. 2016) 833 F.3d 803, 806 [IP addresses are broadcast "far and wide in the course of normal internet use"; hence there is no reasonable expectation of privacy in IP address]; *U.S. v. Wellbeloved-Stone* (4th Cir. 2019) 777 Fed. Appx. 605 [no expectation of privacy in IP address and internet subscriber information]; *U.S. v. Gottesfeld* (D.Mass. 2018) 319 F.Supp.3d 548 [use of pen register did not violate Fourth Amendment rights because no reasonable expectation of privacy in IP address routing information]; *U.S. v. Knowles* (D.S.C. 2016) 207 F.Supp.3d 585 [no reasonable expectation of privacy in IP address which a user voluntarily provides to third parties every time she uses the internet]; *Heeger v. Facebook, Inc.* (N.D.Cal. 2020) 509 F.Supp.3d 1182, 1189 ["Plaintiffs do not plausibly allege anything more than the collection of IP addresses, and there is no legally protected privacy interest in IP addresses"].) With respect to *Heeger*, Plaintiff's efforts to distinguish it are unconvincing. The case is one of many that hold there is no privacy interest in IP addresses or no reasonable expectation of privacy in IP addresses. Plaintiff has identified no case involving a voluntary user of a website who, by allowing her IP address to be "collected" by the website operator, can nevertheless maintain a claim for invasion of privacy.

Plaintiff contends that "California law has expressly recognized a legally protected privacy interest in IP addresses." She relies on sections of the California Electronic Privacy Act, Penal Code sections 1546, 1546.1 and 1546.4, which prohibit Internet Service Providers from providing a user's IP address without a warrant or other limited exception. These statutes do not address a user's voluntary access of a website that necessarily results in the website obtaining the user's IP address.

Plaintiff also cites the California Consumer Privacy Act of 2018, in which IP addresses are recognized as personal information. Civil Code section 1798.140, subdivision (v) defines personal information and governs the conduct of businesses that collect such information. Plaintiff cites no authority indicating that this statute abrogates the cases holding that there is no reasonable expectation in the privacy of an IP address when it is voluntarily provided to a website by the mere act of accessing the website.

Plaintiff also relies on *In re: Google RTB Consumer Privacy Litigation* (N.D. Cal. 2022) 606 F.Supp.3d 935, to argue that persons have a reasonable expectation of privacy over IP addresses. She misconceives the case. The user information Google allegedly directed to third parties was "content" relating to the substance and meaning of the communication. The decision

relied on the Ninth Circuit ruling in *Zynga, supra,* 750 F.3d. at p. 1107, to distinguish between "content" – which is a protected privacy interest, and record information such as an IP address, which is not so protected. (*Google RTB, supra,* 606 F.Supp.3d at p. 949.)

Plaintiff continues to rely on *Greenley v. Kochava* (S.D. Cal. 2023) 684 F.Supp.3d 1024. As we explained in sustaining the demurrer to the original complaint, the defendant in that case was a third-party data broker, not a website operator. Because the conduct of the defendant and the relationship to the plaintiff were quite different from the allegations here, *Greenley* does not support Plaintiff's argument.

The FAC fails to allege a cause of action for invasion of privacy by Defendant Transitions Optical. Plaintiff has not shown a reasonable possibility of curing the defects in her complaint. Accordingly, leave to amend is denied.

**IV. Conclusion**

Defendant's demurrer to the FAC is sustained without leave to amend.

[1] A leading case explains the function of the IP address. "A computer attached to the Internet uses a unique numerical address called an Internet Protocol address, or IP address, to identify itself to other computers. *Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Svcs.,* 545 U.S. 967, 987 n. 1 (2005) ("IP addresses identify computers on the Internet, enabling data packets transmitted from other computers to reach them."); *United States v. Yu,* 411 Fed.Appx. 559, 560 n. 1 (4th Cir. 2010) ("Each computer connected to the Internet is assigned a unique numerical address, otherwise known as an Internet protocol or IP address, to identify itself and facilitate the orderly flow of electronic traffic") (quoting *Peterson v. Nat'l Telecomm'ns & Info. Admin.,* 478 F.3d 626, 629 (4th Cir.2007)). In computer terms, an IP address is a 32–bit integer that can be stamped on network communications or translated into human-readable format. The most basic communication standard underlying the Internet, called the Internet Protocol, uses IP addresses to transmit bundles of data, called "packets," through the network. [Citation.] …Each packet is stamped with a source IP address and a destination IP address, and every time a router receives a packet, it examines the destination address, looks up routing information for that address in the database, and forwards the packet toward the right network. [Citation.] This process is repeated until the packet reaches a router that can transmit directly to the destination IP address. Clearly, correct IP addressing information is essential to Internet technology.

"A human user may not know the specific IP address assigned to her network connection,

or the IP address of a remote computer or website, even though the computer must know those addresses as a prerequisite to Internet communications…. Thus, when a person attempts to access a named computer, the person's computer finds the IP address of the remote site by matching, or “resolving,” the name to the proper IP address, then contacts the website over the Internet using that IP address.

“From the perspective of the destination computer, it is an extraordinarily simple task to determine the IP address of the computer seeking to access it…. Most websites maintain standard logs of connecting IP addresses, along with date and time information, and may even include information about the user associated with the connection. [Citation.] Such information is routinely gathered to evaluate usage patterns, engage in site marketing analysis, troubleshoot problems, or to gather feedback.. . . .

“IP address information, by itself, cannot identify a particular person.”

(*In re Application of the U.S. for an Order Pursuant to 18 U.S.C. sec. 2703(d)* (E.D. Va. 2011) 830 F.Supp.2d 114, 119-120.)

[2] “Electronic communication” is broadly defined to include “any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature in whole or in part by a wire, radio, electromagnetic, photoelectric or photo-optical system.” (Pen. Code, § 629.51, subd. (a)(2).) The broad definition of “electronic communications” reasonably indicates that an electronic communications service provider includes website operators. Plaintiff's argument that Defendant is not an electronic communications service provider lacks support. Her argument that Defendant as a website operator is not an internet service provider or a wireless telephone company are irrelevant. The text of the pen register statute does not impose liability on website operators that obtain IP addresses as a matter of course when users access their site.

[3] Despite Plaintiff's murky allusions to an unnamed “developer” of the purported “beacon,” she nowhere alleges that Defendant shared Plaintiff's computer's IP address with anyone else without Plaintiff's consent.

The Court orders the Amended Complaint (1st) filed by Miltita Casillas on 05/23/2024 dismissed without prejudice.

Case Management Conference is placed off calendar.

Clerk gives notice.

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
**Civil Division**
Central District, Stanley Mosk Courthouse, Department 58

**23STCV30742**
**MILTITA CASILLAS vs TRANSITIONS OPTICAL, INC., A DELAWARE CORPORATION**

September 9, 2024
9:00 AM

Judge: Honorable Bruce G. Iwasaki
Judicial Assistant: M.F. Lopez
Courtroom Assistant: R.E. Lee

CSR: None
ERM: None
Deputy Sheriff: None

---

Certificate of Mailing is attached.

# EXHIBIT B

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

**Civil Division**

Central District, Spring Street Courthouse, Department 26

**24STCV08972**
**REBEKA RODRIGUEZ vs PLIVO INC., A DELAWARE CORPORATION WITH ITS PRINCIPAL PLACE OF BUSINESS IN CALIFORNIA**

October 2, 2024
10:00 AM

Judge: Honorable Mark E. Windham
Judicial Assistant: M. Mata
Courtroom Assistant: None

CSR: None
ERM: None
Deputy Sheriff: None

APPEARANCES:

For Plaintiff(s): No Appearances

For Defendant(s): Matthew D. Pearson via LACC

**NATURE OF PROCEEDINGS:** Hearing on Demurrer - with Motion to Strike (CCP 430.10)

The Court's tentative ruling is posted online and in Department 26 for the parties to review.

Defendant submits on the Court's tentative ruling via email.

There is no appearance by or for the Plaintiff this date.

The matter as captioned above, is not called for hearing.

The Court adopts its tentative ruling as the final order of the Court as follows:

RULING:

Defendant Plivo, Inc. dba www.plivo.com's Demurrer to the First Amended Complaint is SUSTAINED WITHOUT LEAVE TO AMEND.

ANALYSIS:

On April 10, 2024, Plaintiff Rebeka Rodriguez ("Plaintiff") filed the Complaint in this action against Defendant Plivo, Inc. dba www.plivo.com ("Defendant"). Following the filing of Defendant's demurrer to the Complaint, Plaintiff filed the First Amended Complaint on June 24, 2024.

Defendant filed the instant Demurrer to the First Amended Complaint on August 26, 2024. No opposition has been filed to date.

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
**Civil Division**
Central District, Spring Street Courthouse, Department 26

**24STCV08972**
**REBEKA RODRIGUEZ vs PLIVO INC., A DELAWARE CORPORATION WITH ITS PRINCIPAL PLACE OF BUSINESS IN CALIFORNIA**

October 2, 2024
10:00 AM

Judge: Honorable Mark E. Windham
Judicial Assistant: M. Mata
Courtroom Assistant: None

CSR: None
ERM: None
Deputy Sheriff: None

Discussion

Allegations in the First Amended Complaint

The First Amended Complaint alleges a single cause of action for violation of the California Invasion of Privacy Act ("CIPA") at Penal Code section 638.51(a). Plaintiff alleges that Defendant secretly deployed spyware at its website, www.plivo.com/ (the "Website") that accesses visitors' devices and installed tracking spyware before obtaining consent to do so, and then monitors and reports visitors' online habits after they leave the Website. (FAC, p. 2:2-3.) Plaintiff recently visited Defendant's Website and without Plaintiff's knowledge or consent, Defendant secretly accessed Plaintiff's device and installed "pen register" and "trap and trace" tracking software in violation of California law. (Id. at p. 2:5-7.) Cal. Penal Code section 638.51(a) prohibits any "person" from "install[ing] or us[ing] a pen register or a trap and trace device without first obtaining a court order." (Id. at ¶10.) Defendant installs the pen register or trap and trace device ("PR/TT") beacon on the user's browser, and such PR/TT beacon collects users' IP addresses. (Id. at ¶37.) Defendant uses the PR/TT beacon to "digitally fingerprint" each visitor but at no time prior to use of the PR/TT beacon obtained users' consent or a court order. (Id. at ¶¶52-53.) As a result, Plaintiff had her privacy invaded by Defendant's violations of Penal Code section 638.51(a). (Id. at ¶¶75.)

Demurrer

Defendant demurs to the First Amended Complaint for failure to allege facts sufficient to state a cause of action. (Citing Code Civ. Proc., § 430.10, subd. (e).) The demurrer is accompanied by a meet and confer declaration as required by Code of Civil Procedure section 430.41. (Motion, Pearson Decl., ¶3.)

The demurrer is brought on the grounds that section 638.51 of the CIPA does not prohibit the used of technology on a website to collect visitors' IP addresses and the First Amended Complaint does not allege facts that plausibly establish the use of a pen register. Penal Code section 638.51 subdivision (a) states in relevant part: "Except as provided in subdivision (b), a person may not install or use a pen register or a trap and trace device without first obtaining a court order pursuant to Section 638.52 or 638.53." (Pen. Code, § 638.51, subd. (a).) A pen register is defined as "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." (Pen. Code, § 638.50,

subd. (b).)

As there are no controlling state law cases on this statute, the Court must look to federal court rulings for guidance. In determining whether a device is a pen register, courts must look to the type of information being collected and not the device or process. (Greenley v. Kochava, Inc. (S.D. Cal. 2023) 684 F.Supp.3d 1024, 1050.) This is because what constitutes a pen register has changed as technology has shifted from telephone communication to internet-based communications. (In re Application of U.S. for an Ord. Authorizing use of A Pen Reg. & Trap On (XXX) Internet Serv. Acct./User Name, (xxxxxxxx@xxx.com) (D. Mass. 2005) 396 F. Supp. 2d 45, 47; Greenley, supra, 684 F.Supp.3d at 1050.)

Defendant argues that Plaintiff's IP address is not the type of information that parties are prohibited from collecting by CIPA. First, because Plaintiff voluntarily provided the information and could have no expectation of privacy in it. (See Smith v. Maryland (1979) 442 U.S. 735, 744.) This is implicit in the allegations explaining "the IP address enables a device to communicate with another device—such as a computer's browser communicating with a server." (FAC, ¶35.) Plaintiff's computer could not have accessed Defendant's website unless it provided her IP address.

Second, Plaintiff's IP address is not the type of information collected by pen registers. Pen registers collect outgoing information, such as outgoing telephone numbers, outgoing email addresses, IP addresses of websites visited, location data that reveals sensitive information, and cell site information. (In re Application of U.S. for an Ord. Authorizing use of A Pen Reg. & Trap, supra, 396 F. Supp. 2d at 48; Greenley, supra, 684 F.Supp.3d at 1047; (In re Application of U.S. for an Ord. for Disclosure of Telecommunications Recs. & Authorizing the Use of a Pen Reg. & Trap & Trace (S.D.N.Y. 2005) 405 F. Supp. 2d 435, 441; United States v. Forrester (9th Cir. 2008) 512 F.3d 500, 510.) Although Plaintiff alleges that the IP address could reveal the device's state, city, and zip code, this is not the type of sensitive data to which the Greenley court referred. (Greenley, supra, 684 F.Supp.3d at 1047 ["the Amended Complaint outlines a data collection system that compiles "rich personal data," including the "[i]dentification of sensitive and private characteristics of consumers from the location data sold."].) Plaintiff's device's city and zip code information is not analogous to this type of information, which included "a person's religious affiliation, sexual orientation, and medical condition." (Ibid.) Indeed, a federal district court asked to deny a plaintiff's discovery request that the defendants produce incoming IP addresses on the grounds that the discovery request violated the federal pen-register statute, refused to do so. (Columbia Pictures Indus. v. Bunnell (C.D. Cal. May 29, 2007) No. CV 06-

1093FMCJCX, 2007 WL 2080419, at *11 ["the collection of incoming IP addresses by defendants is exempt from this prohibition pursuant to 18 U.S.C. § 3121(b)(1) because defendants already and necessarily capture such data in their RAM (or Panther's RAM) to operate the website."].)

Based on the foregoing, Defendant has demonstrated that the First Amended Complaint fails to allege facts showing that it violated CIPA at Penal Code section 638.51, subdivision (a). Nor has Plaintiff filed any opposition to the instant Demurrer demonstrating what facts could be alleged to support this cause of action, as is Plaintiff's burden if seeking leave to amend. (Goodman v. Kennedy (1976) 18 Cal.3d 335, 348.) Leave to amend is denied.

Conclusion The Demurrer - with Motion to Strike (CCP 430.10) filed by Plivo Inc., a Delaware corporation with its principal place of business in California on 08/26/2024 is Sustained without Leave to Amend.

Moving party is to give notice.