ERIC A. GROVER (SBN 136080)
eric.grover@kellergrover.com
RACHAEL G. JUNG (SBN 239323)
rachael.jung@kellergrover.com
**KELLER GROVER LLP**
1965 Market Street
San Francisco, California 94103
Telephone: (415) 543-1305
Facsimile: (415) 543-7861

SCOT BERNSTEIN (SBN 94915)
swampadero@sbernsteinlaw.com
**LAW OFFICES OF SCOT D. BERNSTEIN,**
**A PROFESSIONAL CORPORATION**
101 Parkshore Drive, Suite 100
Folsom, California 95630
Telephone: (916) 447-0100
Facsimile: (916) 933-5533

*Attorneys for Plaintiffs*
Saber Khamooshi, Ryan Wu, and Brian Carolus

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SABER KHAMOOSHI, RYAN WU, and BRIAN CAROLUS, individually and on behalf of a class of similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>POLITICO LLC; and DOES 1 through 100, inclusive,<br><br>Defendant. | Case No: 3:24-cv-07836-SK<br><br>Assigned for All Purposes to:<br>Hon. Sallie Kim<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>Date: February 24, 2025<br>Time: 9:30 a.m.<br>Courtroom: C – 15th Floor<br><br>Complaint Filed: September 26, 2024<br>Trial Date: None Set |



KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

## TABLE OF CONTENTS

Page

I. INTRODUCTION ....................10

II. LEGAL STANDARDS ....................10

A. Federal Rule of Civil Procedure ("Rule" or "FRCP") 12(b)(2).................... 10

B. Rule 12(b)(6) .................... 10

III. PLAINTIFFS HAVE ESTABLISHED PERSONAL JURISDICTION....................11

A. Politico's Continuous and Extensive Coverage of California News, Politics, and Policy for California Markets Establishes General Jurisdiction .................... 11

B. The Court Also Has Specific Jurisdiction over Politico .................... 12

1. Politico's privacy violations occurred in California....................12

2. Politico purposefully directed its activities toward California. ....................13

3. Politico purposefully availed itself of the privilege of doing business in California and with California residents. ....................14

4. Plaintiffs' claims arise from and relate to Politico's California activities. ....................15

5. The exercise of jurisdiction is reasonable here. ....................16

IV. PLAINTIFFS HAVE PLEADED EACH OF THEIR CLAIMS SUFFICIENTLY ..........16

A. Politico's Use of Pen Register Trackers on Its Website to Collect and Secretly Share IP Addresses and Other User Data with Undisclosed Third Parties Without User Consent or a Court Order Violates CIPA.................... 16

1. Challenging factual allegations is beyond the scope of a Rule 12(b)(6) motion. .........17

2. Politico's conduct falls within the scope of Penal Code § 638.51. ....................18

a. Pen registers capture outgoing information, including IP addresses. .................. 18

b. A reasonable expectation of privacy exists for IP addresses, which constitute personal information that is protected by numerous statutes. .................... 22

3. Politico is not an electronic communication service provider; the surreptitious disclosure of personal information to unidentified third parties is not necessary for the operation or maintenance of the Politico website. ....................24

4. Politico's "consent" to the unauthorized collection of users' personally identifying information is irrelevant, and no statutory exception applies. ....................26

B. Politico's Unauthorized Disclosure of Geographical Location Information without Consent Is Highly Offensive Conduct and a Serious Invasion of Privacy. .................... 27

C. Politico's Surreptitious Installation of Third-Party Tracker Cookies on Website Users' Browsers Constitutes Knowing Access and Unauthorized Taking, Copying, or Use of User Data in Violation of the CDAFA.................... 29

1. Plaintiffs' CDAFA claims do not sound in fraud....................29

2. The CDAFA requires only knowing access and conduct undertaken without permission, not circumvention of technical barriers. ....................31

3. Politico's misappropriation of Plaintiffs' and Class members' personal data causes economic harm sufficient to confer standing....................33

V. CONCLUSION....................34

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

## TABLE OF AUTHORITIES

**Federal Cases** **Page(s)**

*AAA v. Darba Enters.*,
2009 U.S. Dist. LEXIS 37564 (N.D. Cal. Apr. 21, 2009) ........ 14

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 10

*Brown v. Google LLC*,
525 F.Supp.3d 1049 (N.D. Cal. 2021) ........ 31, 33, 34

*Brown v. Google LLC*,
685 F.Supp.3d 909 (N.D. Cal. 2023) ........ 34

*Bui-Ford v. Tesla, Inc.*,
2024 U.S. Dist. LEXIS 28767 (N.D. Cal. Feb. 20, 2024) ........ 31

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) ........ 16

*Butcher's Union Local No. 498 v. SDC Investment, Inc.*,
788 F.2d 535 (9th Cir. 1986) ........ 16

*Byars v. Tire*,
2023 U.S. Dist. LEXIS 22337 (C.D. Cal. 2023) ........ 17

*Calder v. Jones*,
465 U.S. 783 (1984) ........ 13, 14

*Calhoun v. Google, LLC*,
2024 WL 3869446 (9th Cir. Aug. 20, 2024) ........ 28, 31

*Campbell v. Facebook Inc.*,
77 F.Supp.3d 836 (N.D. Cal. 2014) ........ 31

*Capitol Records Inc. v. Thomas-Rasset*,
2009 WL 1664468 (D. Minn. June 11, 2009) ........ 21

*Casillas v. Cypress Ins. Co.*,
770 Fed.Appx. 329 (9th Cir. 2019) ........ 23

*Caveman Foods, LLC v. Lester*
2013 U.S. Dist. LEXIS 185237 (N.D. Cal. 2013), ........ 17

*CollegeSource, Inc. v. AcademyOne, Inc.*,
653 F.3d 1066 (9th Cir. 2011) ........ 10

*Cottle v. Plaid Inc.*,
536 F.Supp.3d 461. (N.D. Cal. 2021) ........ 25

*Crowley v. CyberSource Corp.*,
166 F.Supp.2d 1263 (N.D. Cal. 2001) .......... 25

*Cti III, LLC v. Devine*,
2022 U.S. Dist. LEXIS 94820 (E.D. Cal. May 25, 2022) .......... 30, 31, 33

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) .......... 12

*Davis v. Cranfield Aero. Sols., Ltd.*,
71 F.4th 1154 (9th Cir. 2023) .......... 12

*DocMagic. Inc. v. Ellie Mae, Inc.*,
745 F.Supp.2d 1119 (N.D. Cal. 2010) .......... 32

*Doe v. Meta Platforms, Inc.*,
690 F.Supp.3d 1064 (N.D. Cal. 2023) .......... 19

*Doe v. WebGroup Czech, A.S.*,
93 F.4th 442 (9th Cir. 2024) .......... 14, 16

*Erickson v. Pardus*,
551 U.S. 89 (2007) .......... 10

*Esparza v. Kohl's, Inc.*,
2024 WL 1152732 (C.D. Cal. Mar. 18, 2024) .......... 33

*Facebook, Inc. v. ConnectU LLC*,
489 F.Supp.2d 1087 (N.D. Cal. 2007) .......... 32, 33

*Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*,
592 U.S. 351 (2021) .......... 16

*Gonzalez v. Busby*,
2012 U.S. Dist. LEXIS 99940 (N.D. Cal. 2012) .......... 18

*Graham v. Noom, Inc.*,
533 F.Supp.3d 823 (N.D. Cal. 2021) .......... 14

*Greenley v. Kochava, Inc.*,
684 F.Supp.3d 1024 (S.D. Cal. 2023) .......... *passim*

*Gutierrez v. Converse, Inc.*,
2023 WL 8939221 (C.D. Cal. Oct. 27, 2023) .......... 32

*Heeger v. Facebook, Inc.*,
509 F.Supp.3d 1182 (N.D. Cal. 2020) .......... 23, 28

*Herbal Brands, Inc. v. Photoplaza, Inc.*,
72 F.4th 1085 (9th Cir. 2023) .......... 13, 15

*In re Broadcast.com, Inc.*,
2001 WL 36050382 (E.D. Tex. Dec. 12, 2001) .......... 27

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

*In re Carrier IQ, Inc.*,
78 F.Supp.3d 1051 (N.D. Cal. 2015) ........ 19, 32, 33

*In re DoubleClick Inc. Privacy Litig.*,
154 F.Supp.2d 497 (S.D.N.Y. 2001) ........ 27

*In re Facebook Internet Tracking Litig.*,
140 F.Supp.3d 922 (N.D. Cal. 2015) ........ 17

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ........ *passim*

*In re Google Assistant Privacy Litig.*,
457 F.Supp.3d 797 (N.D. Cal. 2020) ........ 31

*In re Google Inc. Gmail Litig.*,
2013 U.S. Dist. LEXIS 172784 (N.D. Cal. 2013) ........ 17

*In re Google Referrer Header*,
465 F.Supp.3d 999 (N.D. Cal. 2020) ........ 28

*In re Google RTB Consumer Privacy Litig.*,
606 F.Supp.3d 935 (N.D. Cal. 2022) ........ 23, 28

*In re iPhone Application Litig.*,
844 F.Supp.2d 1040 (N.D. Cal. 2012) ........ 25, 29

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014) ........ 20

*In-N-Out Burgers v. Basso*,
2005 U.S. Dist. LEXIS 44915 (C.D. Cal. Jun. 27, 2005) ........ 15

*Javier Assurance IQ, LLC*,
2022 WL 1744107 (9th Cir. 2022) ........ 17

*Javier v. Assurance IQ, LLC*,
2021 WL 940319 (N.D. Cal. Mar. 9, 2021) ........ 31

*Lee v. City of Los Angeles*,
250 F.3d 668 (9th Cir. 2001) ........ 17

*Levitt v. Yelp! Inc.*,
765 F.3d 1123 (9th Cir. 2014) ........ 10

*Lions Gate Entm't Inc. v. TD Ameritrade Servs. Co.*,
170 F.Supp. 3d 1249 (C.D. Cal. 2016) ........ 11

*Loomis v. Slendertone Distrib., Inc.*,
420 F.Supp. 3d 1046 (S.D. Cal. 2019) ........ 15

*Lopez v. Apple, Inc.*,
519 F.Supp.3d 672 (N.D. Cal. 2021) ........ 22, 24, 25

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

*LVRC Holdings LLC v. Brekka*,
581 F.3d 1127 (9th Cir. 2009) ....................................30

*Malibu Media, LLC v. Pontello*,
2013 WL 12180709 (E.D. Mich. Nov. 19, 2013) .................... 21

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
519 F.3d 1025 (9th Cir. 2008) ....................................11

*Massie v. GM Co.*,
2021 U.S. Dist. LEXIS 99945 (E.D. Cal. May 26, 2021) ............ 14

*Mastel v. Miniclip SA*,
549 F.Supp.3d 1129 (E.D. Cal. 2021) ............................. 29

*Matera v. Google Inc.*,
2016 U.S. Dist. LEXIS 107918 (N.D. Cal. Aug. 12, 2016) .......... 17

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
647 F.3d 1218 (9th Cir. 2011) .................................. *passim*

*Mikulsky v. Noom, Inc.*,
682 F.Supp.3d 855 (S.D. Cal. 2023) .............................. 14

*Mirmalek v. Los Angeles Times Communs. LLC*,
2024 U.S. Dist. LEXIS 227378 (N.D. Cal. Dec. 12, 2024) .......... 19, 21

*Moody v. C2 Educ. Systems, Inc.*,
2024 WL 3561367 (C.D. Cal. July 25, 2024) ....................... 17, 19, 21, 24

*Myers v. Bennett Law Offices*,
238 F.3d 1068 (9th Cir. 2001) .................................... 13

*Nowak v. Xapo, Inc.*,
2020 U.S. Dist. LEXIS 219575 (N.D. Cal. Nov. 20, 2020) ...........30

*Opperman v. Path, Inc.*,
87 F.Supp.3d 1018 (N.D. Cal. 2014) ............................... 28

*Quon v. Arch Wireless Operating Co., Inc.*,
529 F.3d 892 (9th Cir. 2008) ..................................... 24

*Reingold v. Elements Therapeutic Massage LLC*,
2020 U.S. Dist. LEXIS 263465 (C.D. Cal. Aug. 18, 2020) ........... 15

*Rodriquez v. Aquatic Sales Sols. LLC*,
2024 U.S. Dist. LEXIS 97308 (C.D. Cal. May 29, 2024) ............ 12, 13, 15, 16

*Rodriguez v. Autotrader.com, Inc.*,
2025 U.S. Dist. LEXIS 7139 (C.D. Cal. Jan. 8, 2025) .............. 22

*Rodriguez v. Google LLC*,
2025 U.S. Dist. LEXIS 3238 (N.D. Cal. Jan. 7, 2025) .............. 34

*Ruiz v. Gap, Inc.*,
540 F.Supp.2d 1121 (N.D. Cal. 2008) .......... 29

*S.D. v. Hytto Ltd.*,
2019 U.S. Dist. LEXIS 22909 (N.D. Cal. May 15, 2019) .......... 14

*Shah v. Fandom, Inc.*
2024 U.S. Dist. LEXIS 193032 (N.D. Cal. Oct. 21, 2024) .......... *passim*

*Smith Enter. v. Capital City Firearms*,
2008 U.S. Dist. LEXIS 94053 (D. Ariz. 2008) ..........14, 16

*Smith v. Maryland*,
442 U.S. 735 (1979) .......... 18

*South Dakota v. Wayfair, Inc.*,
585 U.S. 162 (2018) .......... 12

*Theme Promotions, Inc. v. News Am. Mktg. FSI*,
546 F.3d 991 (9th Cir. 2008) .......... 16, 34

*TransUnion LLC v. Ramirez*,
141 S. Ct. 2190 (2021).......... 22

*Tuazon v. R.J. Reynolds Tobacco Co.*,
433 F.3d 1163 (9th Cir. 2006) .......... 11

*U.S. Dep't of Justice v. Reporters Comm. For Freedom of the Press*,
489 U.S. 749 (1989) .......... 29

*U.S. v. LSL Biotechnologies*,
379 F.3d 672 (9th Cir. 2004) .......... 17

*U.S. v. Nosal*,
930 F. Supp. 2d 1051 (N.D. Cal. 2013) .......... 30

*United States v. Christensen*,
828 F.3d 763 (9th Cir. 2015) .......... 30

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008) .......... 18, 20, 23

*United States v. Soybel*,
13 F.4th 584 (7th Cir. 2021) .......... 20

*Valenzuela v. The Kroger Co.*,
2024 WL 1336959 (C.D. Cal. Mar. 28, 2024) .......... 20

*Vanity.com, Inc. v. Vanity Shop of Grand Forks, Inc.*,
2012 U.S. Dist. LEXIS 144088 (N.D. Cal. Oct. 4, 2012) .......... 13, 15, 16

*Vernon v. Closets by Design, Inc.*,
2024 U.S. Dist. LEXIS 177928 (W.D. Wash. Sept. 30, 2024) .......... 12, 15, 16

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) .......... 30, 31

*Wesch v. Yodlee, Inci*,
2021 WL 6206644 (N.D. Cal. July 19, 2021) .......... 25

*West v. Ronquillo-Morgan*,
526 F.Supp.3d 737 (C.D. Cal. 2020) .......... 32

*WhatsApp Inc. v. NSO Grp. Techs. Ltd.*,
472 F. Supp. 3d. 649 (N.D. Cal. 2020) .......... 12, 13

*Williams v. Pac. Sunwear of Cal. LLC*,
2024 U.S. Dist. LEXIS 196954 (D. Ariz. Oct. 30, 2024) .......... 12, 13

*Yoon v. Lululemon USA, Inc*,
549 F.Supp.3d 1073 (C.D. Cal. 2021) .......... 20

**Federal Statutes**

Code of Federal Regulations, Title 45
§ 164.514 .......... 22, 27

United State Code, Title 18
§ 2701 .......... 27

**State Cases**

*Anglo Irish Bank Corp, PLC v. Superior Court*,
165 Cal.App.4th 969 (2008) .......... 13, 15

*Apple Inc. v. Superior Court*,
56 Cal.4th 128 (2013) .......... 16

*Flanagan v. Flanagan*,
27 Cal.4th 766 (2002) .......... 16

*Heiting v. Taylor Fresh Foods, Inc.*,
2024 WL 3833296 (Cal. Super. Ct. L.A. Cty. July 31, 2024) .......... 21, 26

*Kearney v. Salomon Smith Barney, Inc.*,
39 Cal.4th 95 (2006) .......... 16, 22

*Levings v. Choice Hotels Int'l, Inc.*,
2024 WL 1481189 (Cal. Super. Ct. L.A. Cty. April 3, 2024) .......... 21

*Licea v. Hickory Farms LLC*,
2024 WL 1698147 (Cal. Super. March 13, 2024) .......... 20

*People v. Ault*,
33 Cal.4th 1250 (2004) .......... 23

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

*Rodriguez v. Plivo, Inc.*,
No. 24STCV08972 (Cal. Super. Ct. L.A. Cty. Oct 2, 2024) .......... 22

*Tavernetti v. Superior Court of San Diego Cty.*,
22 Cal.3d 187 (1978) .......... 17

*Thurston v. Fairfield Collectibles of Georgia, LLC*,
53 Cal.App.5th 1231 (2020) .......... 13, 14, 15

**State Statutes**

California Constitution, Article I,
§ 1 .......... 11, 23

California Civil Code
§ 1798.100 .......... 23
§ 1798.140 .......... 23, 27

California Penal Code
§ 502 .......... *passim*
§ 630 .......... 11
§ 631 .......... 18
§ 632 .......... 20, 28
§ 638.50 .......... 17, 18, 19, 20
§ 638.51 .......... *passim*
§ 1546 .......... 23, 24, 26 , 27

**Rules**

Federal Rules of Civil Procedure,
Rule 8 .......... 10, 31
Rule 9 .......... 30, 31
Rule 12 .......... *passim*
Rule 15 .......... 16
Rule 56 .......... 17

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs' Complaint addresses Politico's unlawful practice of embedding and using various third-party trackers on its website, www.Politico.com.[1] Without users' knowledge or consent, Politico (1) surreptitiously installs and stores third-party tracker cookies on Politico website users' browsers[2] and (2) initiates the disclosure of website users' personal data, including IP addresses, to those third-party trackers.[3] Politico attempts to escape liability by (1) downplaying its California activities, (2) improperly contradicting factual allegations to argue the merits of the case, (3) misconstruing the scope of and exceptions to the pen register statute, (4) mischaracterizing and ignoring the important privacy rights at stake, (5) hiding its unlawful actions under the guise of purported necessity, and (6) erroneously arguing for heightened pleading. Plaintiffs have pleaded their privacy claims and actionable injuries properly.

## II. LEGAL STANDARDS

### A. Federal Rule of Civil Procedure ("Rule" or "FRCP") 12(b)(2)

"Where, as here, the defendant's motion [to dismiss for lack of personal jurisdiction] is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie case showing of jurisdictional facts to withstand" it.[4] The Court must accept Plaintiffs' uncontroverted allegations as true and resolve factual disputes in their favor.[5]

### B. Rule 12(b)(6)

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" and suggesting that the claim has a plausible chance of success.[6] Courts are

---

[1] The Complaint alleges three causes of action for violations of (1) the California Computer Data Access and Fraud Act, Cal. Penal Code § 502 ("CDAFA"); (2) the California Invasion of Privacy Act, Cal. Penal Code §§ 630, *et seq.* ("CIPA"); and (3) the right to privacy under Article 1, § 1, of the California Constitution. Unless otherwise stated, "§" references are to the California Penal Code.

[2] Complaint, ¶¶ 1, 6, 8, 45-49, 51, 53, 57-58, 70, 97-99, 113, 122.

[3] Complaint, ¶¶ 1, 7-8, 47, 51, 53, 57-58, 60, 70, 113, 122.

[4] *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011). All emphasis is added and citations are omitted throughout unless otherwise noted.

[5] *Mavrix Photo, Inc. v. Brand Techs*., Inc., 647 F.3d 1218, 1223 (9th Cir. 2011).

[6] Fed. R. Civ. P. 8(a)(2). *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) ("Specific facts are not necessary; the statement need only give the defendant fair notice of what the … claim is and the grounds upon which it rests"). *See also Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

required to accept all factual allegations in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and construe pleadings in the light most favorable to the non-moving party.[7]

## III. PLAINTIFFS HAVE ESTABLISHED PERSONAL JURISDICTION

### A. Politico's Continuous and Extensive Coverage of California News, Politics, and Policy for California Markets Establishes General Jurisdiction

General jurisdiction exists when a defendant "engage[s] in 'continuous and systematic general business contacts,' that 'approximate physical presence' in the forum state[.]"[8] Courts consider "whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there."[9] Other factors include its "[l]ongevity, continuity, volume, economic impact, physical presence, and integration into the state's regulatory or economic markets."[10] These factors are present here.

Politico is registered with the California Secretary of State with an agent for service of process, has a Sacramento office and California staff, and has dedicated California news products that it continuously markets and sells in California.[11] It is significant for general jurisdiction that Politico "markets its own product by targeting forum residents."[12] Indeed, in September 2018, Politico announced its expanded California presence, which "include[d] a Sacramento-based newsroom and intelligence service for professionals" and a California version of its fee-based Politico Pro product.[13] Politico confirmed its continued California expansion in a February 2023 press release announcing its new California Bureau Chief.[14]

---

[7] *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).
[8] *Mavrix Photo,* 647 F.3d at 1223-24.
[9] *Rodriquez v. Aquatic Sales Sols. LLC,* 2024 U.S. Dist. LEXIS 97308, at *6 (C.D. Cal. May 29, 2024).
[10] *Mavrix Photo*, 647 F.3d at 1224.
[11] Complaint, ¶¶ 2-4, 21-22, 28-29; Declaration of Eric A. Grover submitted with this Opposition ("Grover Decl.") ¶¶ 2-14, Exs. A-M. All "Ex." References are to the exhibits attached to the Grover Declaration. *See also*, Plaintiffs' Request for Judicial Notice regarding Exs. A-M.
[12] *Mavrix Photo,* 647 F.3d at 1225-26; *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1172-75 (9th Cir. 2006) (general jurisdiction where defendant was licensed to do business and advertised in forum, engaged in local political activity, and maintained office and workforce in forum; collecting cases); *Lions Gate Entm't Inc. v. TD Ameritrade Servs*. Co., 170 F. Supp. 3d 1249, 1259 (C.D. Cal. 2016) (general jurisdiction where defendant conducted business in California).
[13] Ex. G (Politico's press release discussing its expanded operations grounded in Sacramento and the increase in overall editorial footprint in California),
[14] Ex. H (Politico's press release announcing new Politico California Bureau Chief),

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

Further, Politico operates an interactive website with a California-specific section providing extensive news coverage of California politics, elections, state ballot initiatives, climate, and local news.[15] It also sells advertising space to California businesses to display ads targeted to California consumers.[16] Politico's website places trackers on California browsers, thus establishing a physical presence in addition to serving California markets.[17] General jurisdiction is appropriate.[18]

**B. The Court Also Has Specific Jurisdiction over Politico**

Under the minimum contacts test, specific jurisdiction exists where: (1) the defendant *purposefully directs* its activities or consummates some transaction with the forum or resident thereof; or *purposefully avails* itself of the privilege of conducting activities in the forum; (2) the claims arise out of *or* relate to the defendant's forum-related activities; and (3) the exercise of jurisdiction is reasonable.[19] Plaintiffs need establish only the first two prongs. The burden then shifts to Politico to show that exercising jurisdiction would not be reasonable.[20]

**1. Politico's privacy violations occurred in California.**

"[W]hen a defendant engages in tortious activity toward a plaintiff in the state where that plaintiff resides, the defendant is subject to personal jurisdiction there."[21] Plaintiffs allege that Politico installed trackers on their and other Californians' browsers ***in California*** to collect and use their personal information.[22] "The location of the [browsers] is, therefore, not a fortuity but central to the alleged tortious conduct."[23] As the *Williams* court explained:

---

[15] *See* Ex. C (excerpted pages from www.politico.com/news/california); Complaint, ¶¶ 22-24, 28.
[16] Complaint, ¶¶ 23-24, 45; Grover Decl. ¶¶ 13-14, Exs. K, L
[17] Complaint, ¶¶ 1, 6, 8, 23-24, 28, 45-49, 51, 53, 57-58, 70, 97-99, 113, 122; *South Dakota v. Wayfair, Inc.*, 585 U.S. 162, 177, 181, 185 (2018) (recognizing that states have **defined "physical presence" to include "placing cookies on in-state residents' web browsers**").
[18] Politico's reliance on *Daimler AG v. Bauman*, 571 U.S. 117, 120 (2014) is unavailing. *Daimler* involved claims "brought by foreign plaintiffs against a foreign defendant based on events occurring entirely outside the United States." Here, the privacy violations occurred in California.
[19] *Mavrix Photo*, 647 F.3d at 1227-28. Courts generally apply "purposeful direction" to tort claims and "purposeful availment" to contract claims, but this is not "a hard-and-fast rule." *Vernon v. Closets by Design, Inc.*, 2024 U.S. Dist. LEXIS 177928, at *10 (W.D. Wash. Sept. 30, 2024). Rather, "the first prong may be satisfied by purposeful availment, by purposeful direction, or by some combination thereof." *Davis v. Cranfield Aero. Sols., Ltd.*, 71 F.4th 1154, 1162 (9th Cir. 2023).
[20] *Mavrix Photo*, 647 F.3d at 1228.
[21] *Williams v. Pac. Sunwear of Cal. LLC*, 2024 U.S. Dist. LEXIS 196954, at *10 (D. Ariz. Oct. 30, 2024).
[22] *See e.g.*, Complaint, ¶¶ 21-24, 28, 45-71.
[23] *WhatsApp Inc. v. NSO Grp. Techs. Ltd.*, 472 F. Supp. 3d. 649, 672-73 (N.D. Cal. 2020).

> As a matter of common sense, the intentional use of spyware [*i.e.*, data trackers] on an unwitting victim's computer must be deemed a tort that occurs ***inside the forum where the victim is located***. It makes no difference that . . . [the] digital interaction launch in a location-agnostic manner, such that the sender . . . neither knows nor cares where the recipient is physically located.[24]

By installing trackers on California-based browsers, Politico "caused a digital transmission to enter California, which then effectuated a breaking and entering of a server in California."[25] The "brunt of the harm" of these privacy violations was suffered in California.[26] Because that tortious conduct occurred *in California*, "the first two prongs of the minimum contacts test are automatically met," and Politico must show that personal jurisdiction is unreasonable.[27]

**2. Politico purposefully directed its activities toward California.**

Plaintiffs also have shown that Politico's conduct was directed at California. To determine "purposeful direction," courts apply the *Calder* "effects" test, requiring that the defendant allegedly "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that [it] knows is likely to be suffered in the forum state."[28] Politico challenges only the second prong.[29]

Politico's conduct targets California, ***one of only four states that it covers separately.***[30] In addition to the California-specific section of the website, Politico offers the "California Playbook" and "California Climate" newsletter subscriptions and sells a Politico Pro California subscription.[31]

---

[24] *Williams*, 2024 U.S. Dist. LEXIS 196954, at *16.
[25] *WhatsApp*, 472 F. Supp. 3d at 672-73.
[26] *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1074 (9th Cir. 2001).
[27] *Williams,* 2024 U.S. Dist. LEXIS 196954, at *9, 15; *Calder v. Jones*, 465 U.S. 783, 790 (1984); *Anglo Irish Bank Corp, PLC v. Superior Court*, 165 Cal.App.4th 969, 980 (2008).
[28] *Mavrix Photo*, 647 F.3d at 1228.
[29] Politico does not dispute that it committed intentional acts, including operating and marketing its website to Californians, providing subscriptions through its website to Californians, and installing trackers on Californians' devices to collect their personal information. Complaint, ¶¶ 2-4, 21-21, 28; Exs. B-E, G-L. "These all qualify as intentional acts." *Rodriquez*, 2024 U.S. Dist. LEXIS 97308, at *22. Politico also does not challenge that it **knew** that it was using trackers to collect consumers' personal information, "which could foreseeably cause harm in California." *Id*. at *28; Complaint, ¶¶ 21-24, 28 (alleging trackers were used to identify and target Californians by IP address and location and caused harm in California).
[30] Grover Decl. ¶¶ 4-5, Exs. B-L; *Thurston v. Fairfield Collectibles of Georgia, LLC*, 53 Cal.App.5th 1231, 1240 (2020) ("When a manufacturer makes a direct effort to serve the market for its product in the forum state, the requisite level of foreseeability [for personal jurisdiction] is met.").
[31] Exs. C-E, I-J; *see Vanity.com, Inc. v. Vanity Shop of Grand Forks, Inc.*, 2012 U.S. Dist. LEXIS 144088, at *10-11 (N.D. Cal. Oct. 4, 2012) (website "purposefully directed at California" where defendant sold products through website to Californians); *Rodriquez*, 2024 U.S. Dist. LEXIS 97308, at *27 **(in CIPA case, interactive website that made sales to California residents was "expressly aimed" at California)**; *Herbal Brands, Inc. v. Photoplaza*, Inc., 72 F.4th 1085, 1092 (9th Cir. 2023).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

Politico markets its website, newsletters and products ***directly to Californians***.[32]

Further, when individuals access the website, Politico ***actively installs*** trackers on their browsers *in California* to collect personal information so that it can profit from location-specific advertising.[33] The information that those trackers collect from Californians, including IP address and location, "concern[] the California activities of . . . California resident[s]."[34] Thus, Politico has "purposefully derived a benefit from [its] Internet activities in California, and ha[s] established a substantial connection with California through [its] website" and other marketing activities.[35]

The cases Politico cites are inapposite. In *Massie*, the defendant's conduct was not aimed at California because, unlike here, it operated a "passive" website not advertised to Californians.[36] Similarly, in *Mikulsky*, the defendant did not "aim[] any of its business at California," including its website.[37] *Graham* also is distinguishable as the plaintiffs alleged only that the third-party business operated in California, not the defendant itself.[38] Here, Politico operated a website to sell its products and advertising space, marketed that website ***directly to Californians***, installed trackers on their devices ***in California***, and profited from its intentional exploitation of this market.[39] By targeting its wrongful conduct at website consumers, "some of whom [it] knew, at least constructively, to be residents of [California]," Politico expressly aimed its conduct at California.[40]

**3. Politico purposefully availed itself of the privilege of doing business in California and with California residents.**

To determine purposeful availment, "courts 'look at the defendant's entire course of dealing'

---

[32] Complaint, ¶¶ 22-24, 28; *see* Exs. B-L. "The fact that [Politico] may have *also* differentially targeted other particular locations does not distract from the fact that" it "expressly aimed" its marketing efforts at California. *Doe v. WebGroup Czech, A.S.*, 93 F. 4th 442, 455 (9th Cir. 2024).

[33] *See AAA v. Darba Enters.*, 2009 U.S. Dist. LEXIS 37564, at *12 (N.D. Cal. Apr. 21, 2009) (personal jurisdiction warranted where defendant "profited when California users entered their contact information in his website, even though he did not sell anything to them").

[34] *Calder*, 465 U.S. at 788.

[35] *Thurston*, 53 Cal.App.5th at 1239 (cleaned up); *Mavrix Photo*, 647 F.3d at 1231.

[36] *Massie v. GM Co.*, 2021 U.S. Dist. LEXIS 99945, at *11, 14 (E.D. Cal. May 26, 2021).

[37] *Mikulsky v. Noom, Inc.*, 682 F.Supp.3d 855, 867 (S.D. Cal. 2023).

[38] *Graham v. Noom, Inc.*, 533 F.Supp.3d 823, 837 (N.D. Cal. 2021).

[39] Exs. C-L; *see Smith Enter. v. Capital City Firearms*, 2008 U.S. Dist. LEXIS 94053, at *10 (D. Ariz. 2008) (defendant "could have reasonably expected to be subject to suit in all states in which citizens would have access to its website and magazine advertisements, and where the effects of [its tortious conduct] could be felt").

[40] *S.D. v. Hytto Ltd.*, 2019 U.S. Dist. LEXIS 22909, at *11 (N.D. Cal. May 15, 2019).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

with the forum state – 'not solely the particular contract or tortious conduct giving rise to a plaintiff's claim.'"[41] It is established when a defendant "purposefully avails itself of the privilege of conducting activities" in the forum, such as delivering goods, "[o]r when a defendant deliberately reaches out beyond its home to exploit a market in the forum State." *Id.*

Politico purposefully availed itself of the benefits of doing business in California. Politico is registered with the California Secretary of State, has an agent for service of process, and sells its national and California-specific products in California.[42] Politico also markets its website *to Californians* and installs trackers on their browsers *in California* to profit from their personal data.[43] In 2018, Politico expanded its presence in California and launched POLITICO California Pro "for a California audience" with a Sacramento-based newsroom.[44] "Given the nature and quality of these contacts, [Politico] has purposely availed itself of personal jurisdiction in California."[45]

**4. Plaintiffs' claims arise from and relate to Politico's California activities.**

"A claim need not arise directly from the defendant's forum contacts … [A]s long as the claim bears a substantial connection to the nonresident's forum contacts, the exercise of specific jurisdiction is appropriate."[46] Here, Plaintiffs' claims arise from and "relate to" Politico's operation of its website, installation of trackers on Californians' devices, *and* marketing through that website to Californians.[47] Those claims also relate directly to Politico's advertising *in California* to drive website traffic from and sales toward Californians.[48] Thus, the claims relate to Politico's forum-

---

[41] *Vernon*, 2024 U.S. Dist. LEXIS 177928, at *11.
[42] Complaint, ¶¶ 2-4, 21-22, 28; Exs. B-L; *see Loomis v. Slendertone Distrib., Inc.*, 420 F. Supp. 3d 1046, 1069-70 (S.D. Cal. 2019) (personal jurisdiction where defendant ran interactive website, advertised it to Californians, registered with Secretary of State, and had agent for service of process).
[43] Complaint, ¶¶ 1. 5-6, 28; Exs. B-L; *Reingold v. Elements Therapeutic Massage LLC*, 2020 U.S. Dist. LEXIS 263465, at *15 (C.D. Cal. Aug. 18, 2020) ("While running a passive website accessible to individuals in a state may not constitute purposeful availment, 'specifically target[ing] consumers' in a state" by advertising there "does qualify as purposeful availment."); *In-N-Out Burgers v. Basso*, 2005 U.S. Dist. LEXIS 44915, at *3 (C.D. Cal. Jun. 27, 2005) **("defendant purposefully availed himself of the forum by advertising to and soliciting business from California residents")**.
[44] Ex. G; *see also*, Exs. F, H, I, J.
[45] *Vanity.com*, 2012 U.S. Dist. LEXIS 144088, at *11; *Herbal Brands*, 72 F.4th at 1093 (**where a defendant has "[chosen] to conduct 'a part of its general business' in [California], it is fair to subject [it] to personal jurisdiction in that forum"**).
[46] *Anglo Irish Bank*, 165 Cal.App.4th at 979.
[47] *See Rodriguez*, 2024 U.S. Dist. LEXIS 97308, at *12-14 (privacy claims arising from interactive website were "related to" website sales to Californians for personal jurisdiction).
[48] Grover Decl. ¶¶ 2-14, Exs. A-L; *Thurston*, 53 Cal.App.5th at 1240-41.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

related activities "targeting [its] website [and wrongful conduct] toward the [California] market."[49]

**5. The exercise of jurisdiction is reasonable here.**

Politico must show that the exercise of jurisdiction would not be reasonable.[50] Politico does not address the relevant factors or show why personal jurisdiction would be unreasonable.[51]

If the Court is inclined to grant Politico's Rule 12(b)(2) motion, Plaintiffs request leave to amend the Complaint to incorporate jurisdictional allegations.[52] Alternatively, if the Court finds that Plaintiffs have not presented material sufficient to support specific jurisdiction, Plaintiffs request leave to conduct limited jurisdictional discovery[53] regarding Politico's conduct aimed at California.[54]

## IV. PLAINTIFFS HAVE PLEADED EACH OF THEIR CLAIMS SUFFICIENTLY

### A. Politico's Use of Pen Register Trackers on Its Website to Collect and Secretly Share IP Addresses and Other User Data with Undisclosed Third Parties Without User Consent or a Court Order Violates CIPA.

CIPA is a "broad, protective, invasion-of-privacy statute."[55] The California Supreme Court regularly reads statutes to apply to new technologies where such a reading would not conflict with the statutory scheme.[56] In the CIPA context, the California Supreme Court repeatedly has found that the California Legislature intended CIPA to establish strong privacy protections and has instructed other courts to interpret CIPA in a manner that "fulfills the legislative purpose of [CIPA] by giving greater protection to privacy interests."[57] Numerous district courts have followed that instruction

---

[49] *Doe*, 93 F. 4th at 457; *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 592 U.S. 351, 364 (2021) ("[W]hen a corporation has 'continuously and deliberately exploited [a State's] market, it must reasonably anticipate being hailed into [that State's] court[s]' to defend actions 'based on' [conduct] causing injury there.").

[50] *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985) (setting forth relevant factors).

[51] *Vernon*, 2024 U.S. Dist. LEXIS 177928, at *15.

[52] FRCP 15(a); *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1010 (9th Cir. 2008).

[53] *Butcher's Union Local No. 498 v. SDC Investment, Inc.*, 788 F.2d 535, 540 (9th Cir. 1986) ("Discovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary.").

[54] *See Rodriguez*, 2024 U.S. Dist. LEXIS 97308, at *3, 11-14, 19, 27 (number of website sales to Cal. residents, disclosed through jurisdictional discovery, supported personal jurisdiction in privacy case); *Vanity.com*, 2012 U.S. Dist. LEXIS 144088, at *10-11 (that 0.02% of online sales were made to Californians supported personal jurisdiction in that forum); *Smith Enter.*, 2008 U.S. Dist. LEXIS 94053, at *11-12 (number of hits received on website was relevant to personal jurisdiction).

[55] *Kearney*, 39 Cal.4th at 115.

[56] *See Apple Inc. v. Superior Court*, 56 Cal.4th 128, 137 (2013) (holding that even if a technology did not exist at the time of a statute's enactment, that does not necessarily preclude the application of the statute to that technology). *Id*. at 139-141.

[57] *Flanagan v. Flanagan*, 27 Cal.4th 766, 775 (2002).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

and have applied CIPA to new technologies.[58] Courts also have determined that CIPA applies to internet communications and regularly have applied CIPA to computer-based internet wiretapping, including the pen register statute.[59] Politico cannot escape liability by misconstruing the statute.

**1. Challenging factual allegations is beyond the scope of a Rule 12(b)(6) motion.**

Politico first argues for dismissal by improperly contradicting Plaintiffs' allegations and misinterpreting the figures contained in the Complaint to assert that no privacy violation has been demonstrated. Politico's argument should be rejected for multiple reasons.

First, Politico's argument violates the well-established stricture that the court "is required to presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the non-moving party."[60] Politico's opposing interpretation of the facts cannot render Plaintiffs' allegations incorrect or implausible. "***Indeed, factual challenges to a plaintiff's complaint have no bearing on the legal sufficiency of the allegations under Rule 12(b)(6)***."[61]

Further, Politico misconstrues the process reflected in Figures 1-3 of the complaint. Politico's rebuttal explanation itself is contradictory. Politico first asserts that the left side "Request" reflects the user's request to Politico's website, and the right side "Response" reflects Politico's response to the user. Thus, the communications seen in the figures presumably are between the website user and Politico. But in the next paragraph, Politico argues that the figures show the

---

[58] *Matera v. Google Inc.*, 2016 U.S. Dist. LEXIS 107918, at *61, 67 (N.D. Cal. Aug. 12, 2016) ("in light of the plain language of section 631, the legislative intent underlying CIPA to protect privacy, and the California Supreme Court's approach to applying statutes to new technologies," CIPA applies to email communications). *See also In re Facebook Internet Tracking Litig.*, 140 F.Supp.3d 922, 936 (N.D. Cal. 2015) (concluding that CIPA applies to "electronic communications"); *In re Google Inc. Gmail Litig.*, 2013 U.S. Dist. LEXIS 172784, at *20-21 (N.D. Cal. 2013) (same).

[59] *Byars v. Tire*, 2023 U.S. Dist. LEXIS 22337, at *11 (C.D. Cal. 2023), citing *Tavernetti v. Superior Court of San Diego Cty.*, 22 Cal.3d 187 (1978) and *Javier Assurance IQ, LLC*, 2022 WL 1744107, at *1 (9th Cir. 2022) (CIPA applies to internet communications). *See also Greenley v. Kochava, Inc.*, 684 F.Supp.3d 1024, 1050 (S.D. Cal. 2023) (noting the expansive language in the California Legislature's chosen definition and finding that tracking software was a "pen register"); *Moody v. C2 Educ. Systems, Inc.*, 2024 WL 3561367, at *2-3 (C.D. Cal. July 25, 2024) (finding that software embedded on the website falls within the scope of §§ 638.50 and 638.51); *Shah v. Fandom, Inc.*, 2024 U.S. Dis. LEXIS 193032, at *13 (N.D. Cal. Oct. 21, 2024) ***(holding that tracking software could plausibly constitute a pen register)***.

[60] *U.S. v. LSL Biotechnologies*, 379 F.3d 672, 698 (9th Cir. 2004).

[61] *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). Moreover, if a party presents matters outside of the pleadings on a motion to dismiss, and they are not excluded by the court, "the motion must be treated as one for summary judgment under Rule 56." *Caveman Foods, LLC v. Lester*, 2013 U.S. Dist. LEXIS 185237, at *4 (N.D. Cal. 2013), citing Fed. R. Civ. Proc. 12(d).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

*trackers* responding to Politico's requests. Thus, the communications seen are allegedly between Politico and the third-party trackers. Both of Politico's interpretations are incorrect.

In fact, Figures 1, 2, and 3 reflect the communications occurring between a Politico website user and the third-party trackers that Politico installed on the user's browser.[62] As can be seen from the figures, www.politico.com is listed as the "**Referrer**" or "Access-Control-Allow-**Origin**" (Figure 3), demonstrating that Politico is responsible for "referring" or sending the user to the "host" URL and initiating communications. The "host" listed in each of the figures is one of the three trackers – TripleLift, CasaleMedia, or Adnx – ***embedded on Politico's website and installed on a user's browser the instant the user enters the Politico website.*** Based on the code programmed within the third-party tracker cookie specifying what information to collect, the left side "Request" shows the user sending that specified data to the "host" tracker, and the right side "Response" reflects information being sent from the tracker back to the Politico website user at the user's IP address.

Thus, in addition to being completely irrelevant for a Rule 12(b)(6) motion, Politico's challenge to Plaintiffs' factual allegations fails completely. Politico's attempt to use a motion to dismiss to present evidence and/or argue the merits of the case is improper.[63]

**2. Politico's conduct falls within the scope of Penal Code § 638.51.**

**a. Pen registers capture outgoing information, including IP addresses.**

In erroneously claiming that pen registers record only information relating to "the destination of an outgoing communication," not the source of a communication, Politico misinterprets what a "pen register" captures. First, pen registers are not limited to devices installed on a telephone as Politico's cited cases suggest.[64] The definitions under § 638.50 do not state any such requirement or limitation. Rather, they simply refer to "a device ***or process***" that records or captures certain

---

[62] Complaint, ¶¶ 51, 53-55, 57.

[63] *Gonzalez v. Busby*, 2012 U.S. Dist. LEXIS 99940, at *4-5 (N.D. Cal. 2012).

[64] Politico's reliance on *Smith v. Maryland*, 442 U.S. 735 (1979) is misplaced. *Smith* is an outdated case that relied upon an older definition of "pen register" that later was modified significantly by the enactment of the Electronic Communication Privacy Act of 1986 ("ECPA") and further modified by the Patriot Act. Significantly, the ECPA omitted language limiting the types of information that a pen register could acquire and broadened its scope to encompass electronic communications. The enactment of the Patriot Act further modified the "pen register" definition to cover software processes that collect information. *United States v. Forrester*, 512 F.3d 500 (9th Cir. 2008) also is unavailing. *Forrester* relied heavily on *Smith* and did not consider the effect of either amendment.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

information from a "wire or electronic communication."[65] Many courts have recognized that software qualifies as a "device."[66] Recent decisions also have confirmed that tracking software can constitute a "pen register" under §§ 638.50 and 683.51.[67]

Second, a "pen register" is a "device or process" that records ***outgoing*** information from the source of a communication. The "pen register" definition provides for the recording of information "transmitted ***by*** an instrument ***from*** which a wire or electronic communication is transmitted."[68] Thus, if an email is sent, a "pen register" might record the email address from which the email was sent (source), the email address to which the email was sent (recipient), and the subject line – because that is the user's *outgoing* information.[69] There, both source and recipient are revealed. For a pen register, the focus is on the ***outgoing*** direction of the information from the source, as contrasted with a "trap and trace device" that records ***incoming*** information.[70]

Here, the relevant information is ***outbound*** information from website users' browsers, including browser and device data and IP addresses, sent to the Politico website ***and also sent surreptitiously to and recorded by the third-party trackers*** used by Politico. Further, the statute specifies that a pen register captures "dialing, routing, addressing or signaling information." There is no limitation indicating the information relates only to the destination, versus the source, as Politico claims.[71] Moreover, even if Politico's interpretation was correct, that simply would mean that the third-party trackers are "trap and trace" devices because they collect "electronic or other

---

[65] Pen. Code §§ 638.50(b)-(c) [emphasis added].
[66] *See Doe v. Meta Platforms, Inc.*, 690 F.Supp.3d 1064, 1080 (N.D. Cal. 2023) (finding Pixel software to be a device under § 632(a)); *In re Carrier IQ, Inc.*, 78 F.Supp.3d 1051, 1084 (N.D. Cal. 2015) (finding Carrier IQ software to be a "device" for purposes of the Wiretap Act).
[67] *See Kochava*, 684 F.Supp.3d at 1050 (finding that tracking software was a "pen register"); *Moody*, 2024 WL 3561367, at *2-3 (finding that software embedded on the website falls within the scope of §§ 638.50 and 638.51); *Fandom*, 2024 U.S. Dist. LEXIS 193032, at *6 and *13 (***finding that trackers operate as a "process" that records IP addressing information and can plausibly constitute a pen register);*** *Mirmalek v. Los Angeles Times Communs. LLC*, 2024 U.S. Dist. LEXIS 227378, at *6-10 (N.D. Cal. Dec. 12, 2024) (holding trackers are a "device or process" under § 638.50 and record addressing information in the form of IP addresses as required by CIPA).
[68] Complaint, ¶ 109; Pen. Code § 638.50(b) (emphasis added).
[69] Complaint, ¶¶ 109, 111.
[70] Complaint, ¶¶ 110-111; Pen. Code § 638.50(c).
[71] *See Fandom*, 2024 U.S. Dis. LEXIS 193032, at *9-10 ("By the plain meaning of § 638.50(b), collection of the recipient phone number or IP address is not a required element").

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

impulses that identify the ***originating number*** or other dialing, routing, ***addressing***, or signaling information reasonably likely to identify the source of a wire or electronic communication."[72]

Further, IP addresses constitute ***addressing information*** and do not necessarily reveal any more about the underlying contents of the communication.[73] The Complaint clearly alleges the unauthorized collection and use of IP addresses, *i.e.* addressing information, sent from Plaintiffs and Class members who visited the Politico website. Thus, Politico's installation and use of third-party trackers clearly fall within the scope of § 638.51 and CIPA prohibitions.

Politico attempts to bolster its position by asserting erroneously that its conduct is a part of basic internet functionality. ***But this case does not involve information conveyed to a first-party website operator. Rather, it involves personal information sent to third parties without notice or consent.*** Politico's surreptitious disclosure to third-parties TripleLift, Index Exchange, and Xandr is not "necessary" to the function, operation or maintenance of the Politico website.[74] Any narrow consent given by website users to use their IP addresses was limited to communicating with Politico's website.[75] Politico cannot hide behind the guise of necessity.[76]

Further, Politico's cited authorities are unpersuasive and factually distinguishable. In *Licea v. Hickory Farms LLC*[77], for example, the plaintiff did not allege that the defendant installed a pen

---

[72] Pen. Code § 638.50(c). Pen registers and trap-and-trace devices almost always are used together. Thus, courts generally discuss them as one. *See, e.g., United States v. Soybel*, 13 F.4th 584, 586 n. 2 (7th Cir. 2021).

[73] Complaint, ¶ 113. *See Fandom*, 2024 U.S. Dis. LEXIS 193032, at *6-8 (finding trackers record addressing information), citing *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1108 (9th Cir. 2014). Even the *Forrester* case cited by Defendant supports this characterization. *Forrester*, 512 F.3d at 510 (holding that "email to/from addresses and IP addresses constitute addressing information").

[74] *See Fandom*, 2024 U.S. Dis. LEXIS 193032, at *14-15 ("A user who consents to disclose their IP address [ ] as part of accessing [a] website does not necessarily consent to disclose their IP address to the third parties operating the Trackers").

[75] Generally speaking, in privacy-related actions, courts have rejected and/or withheld from deciding the issue of consent as a matter of law at the pleading stage. *See, e.g., Valenzuela v. The Kroger Co.*, 2024 WL 1336959, at *3-4 (C.D. Cal. Mar. 28, 2024); *Yoon v. Lululemon USA, Inc*, 549 F.Supp.3d 1073, 1080-1081 (C.D. Cal. 2021) (finding that plaintiff sufficiently pleaded lack of consent to third party software provider's participation in website conversation despite defendant website operator's reliance on its online privacy disclosure); *Licea v. Jockey Int'l, Inc.*, No. 23STCV02906, at *9-10 (Cal. Super Ct. L.A. Cty. Aug. 11, 2023).

[76] *See* § IV.A.3, *infra*.

[77] *Licea v. Hickory Farms LLC*, 2024 WL 1698147 (Cal. Super. March 13, 2024). The plaintiff alleged that the defendant "knowingly and intentionally deployed a software device" on its *own* website for its *own* "identity resolution efforts."

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

register that disclosed plaintiff's information *to a third party.* Rather, that case involved sending information to a party to the communication: the website operator. Thus, the court reasoned that there was "consent under the guise of visiting a website" because the defendant could not otherwise be able to host a website.[78] Here, in contrast, the unauthorized conduct is Politico's disclosure of Plaintiffs' and Class members' personal information ***to unidentified third parties.***

Politico's reliance on *federal* Pen Register Act cases also is unavailing. Politico's out-of-district authorities involve transmission of information ***to a party*** to a communication, ***not to third parties***.[79] Those cases have ***no bearing*** on the present case.

Lastly, Politico's attempt to distinguish *Greenley v. Kochava, Inc.* fails.[80] With similar allegations – hidden code installed by a defendant allowing for the improper collection and use of user information for marketing, advertising or data analytics purposes – *Kochava* is directly analogous. Third-party code does not appear on the Politico website by accident. It must be installed on the website affirmatively by Politico. The *Kochava* court recognized that "[t]oday, pen registers take the form of software" and, for this reason, "the California Legislature does not limit its prohibition on installing pen registers to law enforcement." In finding that "courts should focus less on the form of the data collector and more on the results," the court held that "[a] process can take many forms. Surely among them is software that identifies consumers, gathers data, and correlates that data through unique 'fingerprinting.'"[81] Other courts are in accord.[82]

---

[78] *Id*. at *4.
[79] *Capitol Records Inc. v. Thomas-Rasset*, 2009 WL 1664468, at *3 (D. Minn. June 11, 2009) (holding that "the Pen Register Act cannot be intended to prevent individuals who receive electronic communications from recording the IP information *sent to them*") (emphasis added); *Malibu Media, LLC v. Pontello*, 2013 WL 12180709, at *4 (E.D. Mich. Nov. 19, 2013) (IP address *sent to a party* to a communication, not to a third party).
[80] In lengthy footnotes, Politico also tries unsuccessfully to distinguish *Moody*, *Fandom*, and *Mirmalek.* The various asserted arguments already have been addressed within this Opposition, and none of Politico's arguments is persuasive. These cases are directly on point and instructive,
[81] *Kochava*, 684 F.Supp.3d at 1050.
[82] *See also Moody*, 2024 WL 3561367, at *2-4; *Heiting v. Taylor Fresh Foods, Inc.*, 2024 WL 3833296, at *3 (Cal. Super. Ct. L.A. Cty. July 31, 2024) (overruling demurrer and holding that a "plain reading of the modern definitions [of "pen register" and "trap and trace device"] shows that they are not limited to physical devices attached to telephone lines"); *Levings v. Choice Hotels Int'l, Inc.*, 2024 WL 1481189, at *1-2 (Cal. Super. Ct. L.A. Cty. April 3, 2024); *Fandom*, 2024 U.S. Dis. LEXIS 193032, at *6; *Mirmalek*, 2024 U.S. Dist. LEXIS 227378, at *6-10. Politico cites a recent

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

**b. A reasonable expectation of privacy exists for IP addresses, which constitute personal information that is protected by numerous statutes.**

Politico next argues that Plaintiffs' claims fall outside the zone of interests protected by CIPA. That is patently false. An IP address is private information, and disclosure of private information has long been recognized as one of the traditional harms giving rise to standing.[83] In *Kearney v. Salomon Smith Barney, Inc.*[84], the California Supreme Court held that "California's explicit constitutional privacy provision (Cal. Const., Art. I, § 1) was enacted in part specifically to ***protect Californians from overly intrusive business practices that were seen to pose a significant and increasing threat to personal privacy***."[85] That privacy right also extends to IP addresses.[86]

Over the past decade, multiple California and federal laws have recognized that IP addresses constitute personal information, and thus provide consumers with a privacy interest in that information.[87] That is because IP addresses can be used to determine a user's geographical location, gather insights about a user's online behavior and activity, deliver targeted advertisements, and enable hackers to launch cyberattacks and scams.[88] An IP address is considered personally identifying information and is subject to HIPAA protection.[89]

---

California Superior Court decision – *Rodriguez v. Plivo, Inc.*, No. 24STCV08972 (Cal. Super. Ct. L.A. Cty. Oct 2, 2024) – for the opposite holding. But, as recognized in a more recent district court decision, "that a California Superior Court concluded differently, while persuasive, is not binding and does not foreclose the possibility that software may qualify as a pen register or trap and trace device under California law, at least at the pleading stage." *Rodriguez v. Autotrader.com, Inc.*, 2025 U.S. Dist. LEXIS 7139, at *13 (C.D. Cal. Jan. 8, 2025).

[83] *See, e.g., TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021) (recognizing that "various intangible harms can also be concrete [including]…disclosure of private information"); *Lopez v. Apple, Inc.*, 519 F.Supp.3d 672, 681 (N.D. Cal. 2021) (a violation of substantive privacy rights "gives rise to a concrete injury sufficient to confer standing"), quoting *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020) ("*Facebook Tracking*").

[84] *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal.4th 95 (2006) ("*Kearney*") (recognizing that the California Legislature "repeatedly has enacted new legislation in related areas in an effort to increase the protection of California consumers' privacy"). *Id*. at 124-125.

[85] *Id*. at 124-125 (emphasis added).

[86] *Fandom*, 2024 U.S. Dis. LEXIS 193032, at *17 (recognizing that the statute "reflects the Legislature's judgment that an individual's consent is required before others may track certain addressing information in their electronic communications for non-law enforcement purposes").

[87] *See, e.g* pen register statutes cited *infra*, protecting routing and addressing information.

[88] Complaint, ¶¶ 41-43. *See also* Danao, Monique, *What Can Someone Do With Your IP Address?*, Forbes Advisor, https://www.forbes.com/advisor/business/what-can-someone-do-with-ip-address/ (last visited October 30, 2024).

[89] *See* 45 C.F.R. § 164.514(b)(2)(i)(O). *See also Use of Online Tracking Technologies by HIPAA Covered Entities and Business Associates*, U.S. Dept. of HHS (Dec. 1, 2022), https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/hipaa-online-tracking/index.html.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

Further, recent laws enacted in California also have recognized the personal nature of and have protected IP addresses. For example, the California Electronic Communications Privacy Act ("CECPA"), Penal Code § 1546, *et seq.*, precludes the government from compelling internet service providers to disclose a user's IP address without a warrant or other limited exceptions.[90] The California Consumer of Privacy Act ("CCPA), Cal. Civ. Code § 1798.100, *et seq.*, recognizes that "[i]dentifiers such as a[n] Internet Protocol address" constitute a consumer's personal information.[91] Individuals maintain a reasonable expectation of privacy in their personal information.[92]

Politico's cases pre-date California's new laws and are unpersuasive. *United States v. Forrester* is from 2008 and analyzed what constitutes a "search" under the Fourth Amendment, but did not consider whether a user has a reasonable expectation of privacy as to the ***user's*** IP address. The *Forrester* court only considered and treated the "**IP addresses *of websites visited***" as "unprotected" because that information was irrelevant to "know[ing] the particular pages on the websites the person viewed" and thus did not reveal the "contents of communication."[93]

Politico's reliance on *Heeger v. Facebook, Inc.*[94] also is unavailing. First, the *Heeger* plaintiffs did not bring a claim under § 638.51, so the court did not conduct any analysis of the viability of such a claim. That court also failed to address the CECPA or CCPA, and thus failed to consider the Legislature's enactment into California law that IP addresses are personal information subject to protection. Thus, *Heeger* should not be interpreted as addressing whether Californians have a protected privacy interest in their IP addresses.[95]

Plaintiffs allege that: (1) Politico operates its website with third-party trackers embedded on the website; (2) it installs third-party tracker cookies on website users' browsers without obtaining

---

[90] Pen. Code §§ 1546(d) and (h), 1546.1(a)(1) and (b), 1546.4(a) (stating that government's violation of CECPA by compelling production of or access to individual's IP address without a warrant can result in suppression of evidence at trial).
[91] Civ. Code § 1798.140(v)(1)(A).
[92] *See In re Google RTB Consumer Privacy Litig*., 606 F.Supp.3d 935-946-947 (N.D. Cal. 2022) (rejecting Google's argument that routine sharing of personal information, such as IP addresses, cannot support a reasonable expectation of privacy).
[93] *Forrester*, 512 F.3d at 510.
[94] *Heeger v. Facebook, Inc*., 509 F.Supp.3d 1182 (N.D. Cal. 2020).
[95] *People v. Ault*, 33 Cal.4th 1250, 1268 n. 10 (2004) (holding that it is "axiomatic that cases are not authority for propositions not considered").

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

users' authorization; (3) the third-party trackers surreptitiously collect data from every website visitor without consent; and (4) Plaintiffs visited the Politico website during the relevant period. These allegations demonstrate that Politico, through the unauthorized installation of the third-party trackers, ***discloses to third parties its website users' personal information without permission.*** That conduct invades Plaintiffs' and Class members' privacy and constitutes actionable injuries.[96]

**3. Politico is not an electronic communication service provider; the surreptitious disclosure of personal information to unidentified third parties is not necessary for the operation or maintenance of the Politico website.**

Given the clear applicability of § 638.51(a), Politico next argues that its installation of third-party pen-register trackers is allowed under an exception to the statute. Politico's conclusory claim is that it is an electronic communication service ("ECS") provider and thus is permitted to use a pen register under § 638.51(b)(1) to operate its website. Its argument is without support.

Section 638.51(b)(1) states that a "***<u>provider</u> of electronic or wire communication service*** may use a pen register or trap and trace device…to operate, maintain, and test a wire or electronic communication service." While CIPA does not specifically define "electronic communications service provider," California's Electronic Communications Privacy Act does define the relevant terms "electronic communication service" and "service provider" as follows:

> "Electronic communication service" means a service that provides to its subscribers or users ***the ability to send or receive electronic communications***, including any service that acts as an ***intermediary in the transmission of electronic communications***, or stores electronic communication information.
>
> "Service provider" means a person or entity offering an electronic communication service.[97]

These definitions clearly refer to companies that provide access to the internet, including companies that provide internet-based services for email, wireless cellular telephone communications, and text messaging.[98] "[U]ncontroversial examples of facilities that provide

---

[96] *See Moody*, 2024 WL 3561367, at *6, citing *Facebook Tracking*, 956 F.3d at 598.
[97] Cal. Pen. Code §§ 1546(e) and (j) (emphasis added).
[98] *See Casillas v. Cypress Ins. Co.*, 770 Fed.Appx. 329, 330 (9th Cir. 2019) ("websites and services that permit users to communicate directly with one another are considered ECS providers"); *Quon v. Arch Wireless Operating Co., Inc.*, 529 F.3d 892, 902-903 (9th Cir. 2008) (wireless communications provider of text messaging pager services and provider of e-mail services are ECS providers); *Lopez*, 519 F.Supp.3d at 686 (facilities that *provide* an electronic communication service include "an email provider's servers or an ISP").

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

electronic communications services" include "the computer systems of an email provider, a bulletin board system, or an ISP."[99] Politico cannot claim that it falls into any of these internet provider categories.

The Complaint alleges that Politico is a digital newspaper company that has online and printed publications dedicated to politics and policy in California, the United States, and internationally.[100] Politico touts itself as "the global authority on the intersection of politics, policy, and power."[101] Politico also owns and operates the website, www.Politico.com.[102] Politico plainly does not provide the ***ability*** to send or receive electronic communications. Nor is it engaged in the business of offering internet access, email services or text messaging services or acting as a conduit for the transmission of electronic communications from one user to another.

Politico erroneously claims that "its website is an electronic communications service."[103] "The fact that an entity communicates electronically with its customers does not mean that it 'provides an [ECS].'"[104] Many courts have held that companies that provide traditional products and services over the internet, as opposed to internet access itself, are not ECS providers.[105] Courts also have rejected construing ECS broadly to cover merely "sending information to servers" "because it would expand 'electronic communication service' to all online services and thus render the term meaningless."[106] Politico plainly is not an ECS provider.

Further, Politico's surreptitious disclosure to third parties is not "necessary" to the function, operation, or maintenance of the Politico website. Politico attempts to obscure the issue by arguing that the pen register statute does not prevent a website operator from collecting incoming IP addresses which are necessary for the operation of a website. Its argument is a red herring. The issue

---

[99] *In re iPhone Application Litig.*, 844 F.Supp.2d 1040, 1057 (N.D. Cal. 2012).
[100] Complaint, ¶¶ 2-4.
[101] Complaint, ¶ 4.
[102] Complaint, ¶¶ 2, 22.
[103] Def. MTD, p. 15, line 28.
[104] *Cottle v. Plaid Inc.*, 536 F.Supp.3d 461. 490 (N.D. Cal. 2021).
[105] *See, e.g., Crowley v. CyberSource Corp.*, 166 F.Supp.2d 1263, 1270 (N.D. Cal. 2001) (holding that Amazon does not qualify as an ECS); *Wesch v. Yodlee, Inci*, 2021 WL 6206644, at * 3 (N.D. Cal. July 19, 2021).
[106] *Lopez*, 519 F.Supp.3d at 687.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

here is not the disclosure of IP addresses to Politico or the collection of that and other user data for the Politico website's use. ***Rather, Plaintiffs allege that Politico, without authorization, installed three "pen registers" (i.e. the third-party trackers) on Politico website users' browsers, and that doing so enabled the secret collection and sharing of users' personal information with the unknown third parties.***[107] Plaintiffs further allege that the trackers collect more than IP addresses, also surreptitiously collecting geolocation data, identifiers, and browser and device information.[108]

In overruling similar motions, courts have found that "the allegations here suggest that the [] software tracks data beyond that which is necessary for the proper functioning of a website."[109] ***Politico does not argue that the collection of the additional data is necessary to operate or maintain its website. Nor does Politico argue that the collection of any data by a third party is necessary.*** The statutory exception under § 638.51(b)(1) simply does not apply.

**4. Politico's "consent" to the unauthorized collection of users' personally identifying information is irrelevant, and no statutory exception applies.**

Politico further argues that only *its own* consent as the "user" of the tracking technology was necessary for the collection of website users' personal information. That twisted reading of the statute undermines the entire concept of ***personal*** privacy. First, assuming that Politico is the relevant "user," its argument could be valid only if the third-party trackers were providers of ECS. And they clearly are not. Trackers TripleLift, CasaleMedia, and Adnx are third parties that provide marketing and advertising services.[110] They do not "provide the ability to send or receive electronic communications," nor do they act as "an intermediary in the transmission of electronic communications."[111] Because the third-party trackers are not providers of ECS and do not fall within the § 638.51(b) exception, Politico's consent to their conduct is irrelevant.

Further, Politico is a digital newspaper company that covers politics and policy in the United

---

[107] Complaint, ¶¶ 1, 6-8, 45-49, 51, 53, 57-58, 60, 70, 97-99, 113, 122.
[108] Complaint, ¶¶ 1, 6, 47, 49, 53-54, 65, 121.
[109] *Heiting v. Taylor Fresh Foods*, 2024 WL 3833296, at * 4. *See also Fandom*, 2024 U.S. Dist. LEXIS 193032, at *14-15 ("A user who consents to disclose their IP address [] as part of accessing [a] website does not necessarily consent to disclose their IP address to the third parties operating the Trackers").
[110] Complaint, ¶¶ 50, 52, 56.
[111] *See* Cal. Pen. Code §§ 1546(e) and (j) defining "electronic communication service" and "service provider."

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

States and internationally, primarily providing distributed news, analysis, and opinion online.[112] It is not an electronic communications service provider.[113] If a website could absolve itself of liability simply by using the internet, the exception would swallow the rule. The purported exception also would contravene CIPA's express all-party consent language.[114]

Politico's reliance on *In re DoubleClick Inc. Privacy Litig.*[115] is misplaced. First, ***that out-of-district case involved the federal ECPA, not CIPA or any pen register statute.*** The case contains no analysis of § 638.51 or of the "user consent" exception that Politico is trying to assert and thus has no bearing on this case. Moreover, the ECPA and CIPA are not analogous. The exception under 18 U.S.C. § 2701(c)(2) permits access to a communication if it is authorized by the authors or intended recipients of that communication. No such exception exists under § 638.51(b), which is limited to and allows *only* the "***provider***" of an "electronic communications service" to install or use a pen register with a service user's consent. Neither Politico nor the third-party trackers are ECS providers. Thus, the exception under § 638.51(b)(5) cannot and does not shield their conduct.

### B. Politico's Unauthorized Disclosure of Geographical Location Information without Consent Is Highly Offensive Conduct and a Serious Invasion of Privacy.

Plaintiffs properly have pleaded the required elements to state a Constitutional privacy claim.[116] Politico's arguments that its conduct is not highly offensive are based yet again on the false premise that individuals do not have a protected interest in their IP addresses. As discussed above, IP addresses constitute personally identifying addressing information and are protected by numerous statutes.[117] A legally protected privacy interest is at stake.

---

[112] Complaint, ¶¶ 2-4.

[113] *See In re Broadcast.com, Inc.*, 2001 WL 36050382, at *3 (E.D. Tex. Dec. 12, 2001) (finding that "Broadcast.com ***operates a website and, in doing so, does not provide internet access to the public. It uses it.***").

[114] *See, e.g.,* Cal. Pen. Code §§ 632 ("without the consent of all parties to a confidential communication") and 632.7 ("without the consent of all of the parties to a communication").

[115] *In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp.2d 497 (S.D.N.Y. 2001).

[116] *See* Complaint, ¶¶ 120 (protected privacy interest), 121 (reasonable expectation of privacy), and 123 (serious invasion of privacy).

[117] *See e.g.*, 45 C.F.R. § 164.514(b)(2)(i)(O) (IP address is a personal identifier subject to HIPAA protection); Cal. Civ. Code § 1798.140(v)(1)(A) ("[i]dentifiers such as a[n] Internet Protocol address" constitute a consumer's personal information protected by the CCPA); Cal. Pen. Code §§ 1546(d) and (h), 1546.1(a)(1) and (b) (precluding the government from compelling ISPs to provide a user's IP address without a warrant).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

Further, individuals *do* have a reasonable expectation of privacy in their IP addresses. Politico again attempts to mischaracterize the unauthorized disclosure of personal information ***to third parties*** as information conveyed to first-party website operators "during ordinary website browsing." But transmitting information to the Politico website itself is not the issue. Thus, Politico's authorities discussing the need to disclose an IP address to connect to a website are utterly irrelevant.

Politico's reliance on *Heeger* also is unavailing. There, the court failed to consider California statutory law protecting a consumer's IP address as personal information. Further, contrary to Politico's assertion, Plaintiffs allege much more than "generalized location" data. The Complaint asserts that "an IP address contains geographical location information from which the state, city, and zip code of a specific device can be determined."[118] Plaintiffs further allege that an IP address "allows advertisers to target specific households, businesses, and even individuals…"[119] "Information need not be personally identifying to be private."[120] Courts have found that a defendant's selling and sharing of "sensitive personal information ***such as plaintiff's IP address***" without consent violates a reasonable expectation of privacy.[121]

Ignoring the surreptitious nature of its own actions, Politico implies that its conduct is routine commercial behavior and not a serious invasion of privacy. Politico's unauthorized installation of third-party trackers and its secret disclosure of its website users' personal information to undisclosed third parties, all without consent, is neither necessary nor routine.[122] Both the Supreme Court and the Ninth Circuit have recognized that "both the common law and the literal understanding of privacy

---

[118] Complaint, ¶ 41.
[119] *Id*, at ¶ 42.
[120] *In re Google Referrer Header*, 465 F.Supp.3d 999, 1009-10 (N.D. Cal. 2020).
[121] *See, e.g., In re Google RTB Consumer Privacy Litig.*, 606 F.Supp.3d 935, 946-947 (N.D. Cal. 2022) (holding that an IP address "is personal information under California law[,]" which generally is expected to remain private).
[122] *See Calhoun v. Google LLC*, 526 F.Supp.3d at 631 (surreptitious collection of data in contravention of representations to users is highly offensive); *Opperman v. Path, Inc.*, 87 F.Supp.3d 1018, 1061 (N.D. Cal. 2014) (holding that interception of personal contact lists ***without consent*** was sufficient to pass challenges to the "highly offensive" element on a motion to dismiss); *Facebook Tracking*, 956 F.3d at 601 (recognizing reasonable expectation of privacy when data collection is inconsistent with privacy promises).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

encompass the individual's control of information concerning his or her person."[123]

Politico's cited authorities are unpersuasive.[124] Tellingly, ***Politico ignores the controlling Facebook Tracking opinion***, opting instead to base its argument on cases decided before that Ninth Circuit decision.[125] To the extent that those older opinions find that similar invasions of privacy did not violate social norms, *Facebook Tracking* overruled them. Further, questions of whether conduct violates social norms "tend by their very nature to be subjective" and "these questions are typically more appropriately resolved by a jury."[126] The Ninth Circuit has held that "the ultimate question of whether tracking and collection practices could highly offend a reasonable individual is an issue that cannot be resolved at the pleading stage."[127] Politico's premature arguments should be rejected.

### C. Politico's Surreptitious Installation of Third-Party Tracker Cookies on Website Users' Browsers Constitutes Knowing Access and Unauthorized Taking, Copying, or Use of User Data in Violation of the CDAFA.

The CDAFA was enacted with the intent to "expand the degree of protection afforded to individuals, businesses, and governmental agencies from tampering, interference, damage, and ***unauthorized access*** to lawfully created computer data and computer systems."[128] The Legislature declared that "protection of the integrity of all types and forms of lawfully created computers, computer systems, and computer data is vital to the protection of the privacy of individuals."[129] Politico cannot violate that important privacy right and escape liability for its unlawful conduct by requiring Plaintiffs to allege more than the statute requires.

#### 1. Plaintiffs' CDAFA claims do not sound in fraud.

Politico asserts that Plaintiffs' CDAFA claims "sound in fraud" and are subject to Rule 9(b)

---

[123] *U.S. Dep't of Justice v. Reporters Comm. For Freedom of the Press*, 489 U.S. 749, 763-764 (1989); *see also Facebook Tracking*, 956 F.3d at 598; *Kochava*, 684 F.Supp.3d at 1047.
[124] *See, e.g., In re iPhone Application Litig.*, 844 F.Supp.2d 1040, 1063 (N.D. Cal. 2012) (in contrast to the lack of knowledge or consent in the present case, those consumers agreed to a privacy policy directly with defendant); *Ruiz v. Gap, Inc.*, 540 F.Supp.2d 1121, 1127-1128 (N.D. Cal. 2008) (the one-time theft of a laptop containing personal information is a world apart from the persistent, secret taking of personal data each time a user visits the Politico website).
[125] *Facebook Tracking,* 956 F.3d at 599 (finding plaintiffs had stated a claim for invasion of privacy when defendant tracked and collected consumers' personal information without notice or consent).
[126] *Mastel v. Miniclip SA*, 549 F.Supp.3d 1129, 1139 (E.D. Cal. 2021).
[127] *Facebook Tracking*, 956 F.3d at 606.
[128] Complaint, ¶ 85; Cal. Penal Code § 502(a) (emphasis added).
[129] Complaint, ¶ 86; Cal. Penal Code § 502(a).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

pleading standards. That is incorrect. "Under California law, the 'indispensable elements of a fraud claim include a false representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages.'"[130] No such allegations are present ***or needed*** in the Complaint because fraud is not an element of a claim under the CDAFA.

Politico's cited authority is factually distinguishable. In *Nowak v. Xapo, Inc.*,[131] the plaintiff's cryptocurrency exchange account was hacked and bitcoins were stolen and later traced to addresses owned by custodial cryptocurrency firms Indodax and Xapo. A large part of the *Xapo* court's analysis focused on whether those firms had the requisite intent under the federal Computer Fraud and Abuse Act ("CFAA"). The court concluded that the plaintiff failed to allege that the defendant actually engaged in or had the requisite knowledge of the hacking.[132] ***Here, in contrast, Politico knowingly accessed its website users' computers*** and, by installing third party trackers, enabled third parties to take and use personal information without users' consent.

Further, there are important distinctions between the CFAA and CDAFA.[133] CDAFA § 502 does not include the same "fraud" language as the CFAA. To succeed on a claim brought under the CFAA, a plaintiff must show that the defendant (1) accessed a protected computer, (2) without authorization or exceeding such authorization as was granted, (3) knowingly and ***with intent to defraud***, and thereby (4) ***furthered the intended fraud*** and obtained anything of value.[134] ***No comparable "intent to defraud" language appears in the CDAFA.*** Instead, the CDAFA uses the terms "knowingly accesses and without permission…."[135]

Due to the lack of reference to "fraud" in the statute, many of the cases analyzing the CDAFA

---

[130] *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003).

[131] *Nowak v. Xapo, Inc.*, 2020 U.S. Dist. LEXIS 219575, at *13 (N.D. Cal. Nov. 20, 2020).

[132] *Id*. at *7-12.

[133] *See Cti III, LLC v. Devine*, 2022 U.S. Dist. LEXIS 94820, at *12 (E.D. Cal. May 25, 2022) (distinguishing the CDAFA's prohibition on ***unauthorized use*** from the CFAA's prohibition on ***unauthorized access***), citing *United States v. Christensen*, 828 F.3d 763, 789 (9th Cir. 2015) (holding that the CDAFA differs from the CFAA and is interpreted differently). ***Unlike the CFAA, the CDAFA "does not require unauthorized access. It merely requires knowing access."***

[134] *U.S. v. Nosal*, 930 F. Supp. 2d 1051, 1058 (N.D. Cal. 2013), citing *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1132 (9th Cir. 2009) (emphasis added).

[135] Notably, the only place the word "fraud" appears in the statute is for a willful violation of subdivision (c), which allows for punitive or exemplary damages if there is evidence that a defendant has been "guilty of oppression, fraud, or malice." Pen. Code § 502(e)(4).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

do not discuss the Rule 9(b) pleading standard.[136] "Where fraud is not an essential element of a claim, only allegations . . . of fraudulent conduct must satisfy the heightened pleading requirements of Rule 9(b)," while "[a]llegations of non-fraudulent conduct need satisfy only the ordinary notice pleading standards or Rule 8(a)."[137] Because Plaintiffs' CDAFA claims do not sound in fraud, Plaintiffs have satisfied their Rule 8(a) pleading burden.

**2. The CDAFA requires only knowing access and conduct undertaken without permission, not circumvention of technical barriers.**

Although there is no hint of any language in the statute requiring a "hack," Politico next argues that it did not act "without permission" because it did not overcome technical or code-based barriers to access the Politico website. Politico's argument fails for numerous reasons.

First, Politico has the burden of proving a consent defense.[138] Plaintiffs and Class members could not have consented or permitted Politico to install and store third party trackers on their web browsers because they were unaware that it had embedded those trackers on its website.[139] Further, Politico's Privacy Policy is buried at the bottom of the webpage. It is seen only after scrolling through all of the content and long after the third-party trackers have been installed on users' computers.[140] No pop-up window or other notice asks for users' authorization or consent.[141] Consent is "generally limited to the specific conduct authorized."[142] That lack of notice defeats any claim that Plaintiffs gave permission to Politico to access their computers and install third-party trackers.

Second, the statute defines "access" to mean "gain entry to, instruct, cause input to, cause output from, cause data processing with, or communicate with, the logical, arithmetical, or memory

---

[136] *See, e.g., Kochava*, 684 F.Supp.3d at 1047-1049 (analyzing CDAFA claims under plausibility standard); *Cti III*, 2022 U.S. Dist. LEXIS 94820, at *9-13 (same); *Bui-Ford v. Tesla, Inc.*, 2024 U.S. Dist. LEXIS 28767, at *12-16 (N.D. Cal. Feb. 20, 2024) (same).
[137] *Vess*, 317 F.3d at 1104-1105.
[138] *Calhoun v. Google, LLC*, 2024 WL 3869446, at *5 (9th Cir. Aug. 20, 2024); *Brown v. Google LLC*, 525 F.Supp.3d 1049, 1063 (N.D. Cal. 2021).
[139] Complaint, ¶¶ 1, 6-8, 23, 48, 53, 58, 60-65, 70, 114, 122.
[140] Complaint, ¶¶ 63-64.
[141] Complaint, ¶¶ 61-62.
[142] *Kochava*, 684 F.Supp.3d at 1048, quoting *Javier v. Assurance IQ, LLC*, 2021 WL 940319, at *2 (N.D. Cal. Mar. 9, 2021). *See also Campbell v. Facebook Inc.*, 77 F.Supp.3d 836, 847 (N.D. Cal. 2014) (finding no consent to data being used for targeted advertising where users consented to use for "data analytics"); *In re Google Assistant Privacy Litig.*, 457 F.Supp.3d 797, 824 (N.D. Cal. 2020) (***holding consent to data collection does not extend to data disclosure***).

function resources of a computer, computer system, or computer network."[143] The plain language of the statute does not suggest "overcoming technical or code-based barriers" as a requirement. The subsections also do not use that language, and instead state "***knowingly accesses and without permission***."[144] The Complaint clearly alleges that by Politico's (1) unauthorized installation of third-party tracker cookies ***on users' browsers*** and (2) surreptitious disclosure of Plaintiffs' personal information to undisclosed third parties, Politico knowingly accessed and without permission added, altered, and used Plaintiffs' data and computer systems.[145] Politico's access to its own website is irrelevant to the issue, and its reliance on *Gutierrez* is misplaced.[146]

Third, Plaintiffs need not allege that Politico overcame or circumvented a technical barrier.[147] That is not required, nor is it the only way to establish that Politico acted "without permission."[148] For example, in *DocMagic*, the court held that using a third-party's log-in credentials, even with the third parties' consent, to access servers and remove information from them was sufficient to state a CDAFA claim.[149] Penal Code § 502 "prohibits ***knowing access, followed by unauthorized (i.e. 'without permission')*** taking, copying, or use of data, including where the access is by means of a third-parties' voluntarily-provided log-in credentials." *Id*. (emphasis added).

*ConnectU* held the same. There, the court rejected the defendant's argument that it did not engage in "hacking" or "unauthorized" access because it obtained information on the Facebook

---

[143] Complaint, ¶ 87; Cal. Penal Code § 502(b)(1).

[144] Complaint, ¶¶ 93-96; Cal. Penal Code § 502(c)(1)-(7).

[145] Complaint, ¶¶ 1, 6-8, 45-49, 51, 53, 57-58, 60, 70, 97-99, 113-114, 122.

[146] *Gutierrez v. Converse, Inc.*, 2023 WL 8939221 (C.D. Cal. Oct. 27, 2023) (involving a defendant's redirection of live chat communications ***on its own website*** to a third party, not action taken on a user's web browser or computer system).

[147] *See Kochava*, 684 F.Supp.3d at 1049 (holding that the "plain meaning of 'without permission' does not require the circumvention of computer barriers" and thus even "code hidden in embedded software may plausibly use or take computer data 'without permission'"); *West v. Ronquillo-Morgan*, 526 F.Supp.3d 737, 746 (C.D. Cal. 2020) (finding that "[c]ircumventing technical barriers may be sufficient to show that a person acted 'without permission,' ***but that does not mean it is necessary for a person to circumvent technical barriers to act 'without permission'***").

[148] *In re Carrier IQ, Inc.*, 78 F.Supp.3d at 1099-1100 (hidden software that transmitted data without notice and without providing an opportunity to opt out of its functionality was sufficient for a CDAFA claim). *See also DocMagic. Inc. v. Ellie Mae, Inc.*, 745 F.Supp.2d 1119, 1151 (N.D. Cal. 2010), citing *Facebook, Inc. v. ConnectU LLC*, 489 F.Supp.2d 1087, 1091 (N.D. Cal. 2007).

[149] *DocMagic. Inc.*, 745 F.Supp.2d at 1151.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

website by using log-in information voluntarily supplied by registered users.[150] The *ConnectU* court held that the "FAC alleges facts showing that ConnectU ***knowingly accessed*** Facebook's website to collect, copy, and use data found thereon ***in a manner not authorized or permitted*** by Facebook."[151] Circumvention of technical or code-based barriers clearly is not required.

Here, the Complaint alleges that Politico knowingly accessed its website users' browsers and that, through the surreptitious installation and use of third-party trackers, it collected, copied, and used data in a manner not permitted by users.[152] That is sufficient to state a CDAFA claim. Similarly, courts have found that ***hidden code*** used to access individuals' computers and track their activity is sufficient to violate the CDAFA.[153] ***Further, each of the third-party trackers embedded on Politico's website automatically and without permission re-installs its tracker cookies every time a user visits the Politico website.***[154] That persistent reinstallation, ***even when users previously cleared the cookies from their browsers***, is sufficient to demonstrate "overcoming barriers" and circumventing users' choices.[155]

**3. Politico's misappropriation of Plaintiffs' and Class members' personal data causes economic harm sufficient to confer standing.**

Politico further argues that no cognizable losses or damages have been pleaded based on the installation of third-party cookies. That assertion ignores Plaintiffs' allegations that by "installing trackers and their corresponding tracking cookies" and "by collecting and disclosing its users' information," Politico was able to monetize website users' personal information, including IP addresses, and sell advertising space on its website and earn additional revenue.[156] There is value in and a market for Plaintiffs' and Class members' personal data, including for IP targeted

---

[150] *ConnectU LLC*, 489 F.Supp.2d at 1090-1091. *See also Cti III, LLC v. Devine*, 2022 U.S. Dist. LEXIS 94820, at *12 ("logging into a database with a valid password and subsequently taking, copying, or using the information in the database improperly" violates the CDAFA).
[151] *Id*. at 1091 (emphasis added).
[152] Complaint, ¶¶ 1, 6-8, 45-49, 51, 53, 57-58, 60, 70, 97-99, 113-114, 122.
[153] *In re Carrier IQ*, 78 F.Supp.3d at 1101; *Brown*, 525 F.Supp.3d at 1075. *See also Esparza v. Kohl's, Inc.*, 2024 WL 1152732, at * 7-8 (C.D. Cal. Mar. 18, 2024) (denying a motion to dismiss where a claim under CDAFA was predicated upon a website's tracking cookie accessing plaintiff's IP address to de-anonymize and extract plaintiff's personal information).
[154] Complaint, ¶¶ 49, 55, 60.
[155] *See Brown*, 525 F.Supp.3d at 1075 (finding that plaintiffs stated a CDAFA claim where defendant's technology "would render ineffective any barrier that plaintiffs implemented").
[156] Complaint, ¶¶ 23, 45.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

advertising.[157] Politico's efforts to commercialize and monetize the private information that it misappropriated from Politico website users causes economic injury.[158] That tangible, economic harm is sufficient to satisfy the "damage or loss" requirement under the CDAFA.[159]

Based on that injury, the Complaint alleged that Politico was unjustly enriched "by accessing, acquiring, taking, and using Plaintiffs' and Class members' data" without their permission or consent "for Defendant's own financial benefit."[160] As noted by the Ninth Circuit, "California law recognizes a right to disgorgement of profits resulting from unjust enrichment, even where an individual has not suffered a corresponding loss."[161] Plaintiffs' allegations are sufficient to state a CDAFA claim.

## V. CONCLUSION

Plaintiffs properly have asserted individual and putative class privacy claims under the CIPA, the California Constitution, and the CDAFA. Plaintiffs respectfully request that the Court deny Politico's motion to dismiss in its entirety. If the Court is inclined to grant any part of the motion, Plaintiffs request leave to amend any perceived defects.[162]

Respectfully submitted,

Dated: January 24, 2025

**KELLER GROVER LLP**

By: ______________________
ERIC A. GROVER
*Attorneys for Plaintiffs*

---

[157] Complaint, ¶¶ 42-43. An IP address allows advertisers to target customers by countries, cities, neighborhoods, and postal codes, thus providing "a level of specificity previously unfound in marketing." *Id*. at 42, citing *IP Targeting: Understanding This Essential Marketing Tool*, AccuData, https://www.accudata.com/blog/ip-targeting/.

[158] *Facebook Tracking*, 956 F.3d at 600 (plaintiffs sufficiently alleged their browsing histories carried financial value and could state an economic injury for their misappropriated data); *Brown v. Google LLC*, 685 F.Supp.3d 909, 940 (N.D. Cal. 2023) (plaintiffs could state an economic injury for their misappropriated data after proffering evidence there was a market for such data).

[159] Pen. Code § 502(e)(1); *Brown v. Google LLC*, 685 F.Supp.3d at 939-940 (holding that ***plaintiffs satisfied the CDAFA's damage or loss requirement because they had "a stake in the value of their misappropriated data***"). *See also Rodriguez v. Google LLC*, 2025 U.S. Dist. LEXIS 3238, at *34 (N.D. Cal. Jan. 7, 2025) (based on evidence that plaintiffs' data has economic value, "a reasonable juror could find that Plaintiffs suffered damage or loss because Google profited from the misappropriation of their data").

[160] Complaint, ¶ 102.

[161] *Facebook Tracking*, 956 F.3d at 599.

[162] *Theme Promotions*, 546 F.3d at 1010 (holding that leave to amend a complaint "shall be freely given where justice so requires").