ERIC A. GROVER (SBN 136080)
eric.grover@kellergrover.com
RACHAEL G. JUNG (SBN 239323)
rachael.jung@kellergrover.com
**KELLER GROVER LLP**
1965 Market Street
San Francisco, California  94103
Telephone: (415) 543-1305
Facsimile: (415) 543-7861

Timothy D. Cohelan, Esq. (SBN 60827)
tcohelan@cklaw.com
Isam C. Khoury, Esq. (SBN 58759)
ikhoury@cklaw.com
**COHELAN KHOURY & SINGER**
605 C Street, Suite 200
San Diego, California  92101
Telephone: (619) 595-3001
Facsimile: (619) 595-3000

SCOT BERNSTEIN (SBN 94915)
swampadero@sbernsteinlaw.com
**LAW OFFICES OF SCOT D. ERNSTEIN,
A PROFESSIONAL CORPORATION**
101 Parkshore Drive, Suite 100
Folsom, California  95630
Telephone: (916) 447-0100
Facsimile: (916) 933-5533

Patrick N. Keegan, Esq. (SBN  167698)
pkeegan@keeganbaker.com
**KEEGAN & BAKER, LLP**
2292 Faraday Avenue, Suite 100
Carlsbad, California 92008
Telephone: (760) 929-9303
Facsimile: (760) 929-9260

*Attorneys for Plaintiffs*
Saber Khamooshi, Ryan Wu, and Brian Carolus

*Attorneys for Plaintiff*
John Deddeh

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| SABER KHAMOOSHI, RYAN WU, BRIAN CAROLUS and JOHN DEDDEH, individually and on behalf of a class of similarly situated individuals, <br><br> Plaintiffs, <br><br> v. <br><br> POLITICO LLC; <br><br> Defendant. | Case No: 3:24-cv-07836-SK <br><br> CLASS ACTION <br><br> **FIRST CONSOLIDATED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** <br><br> **DEMAND FOR JURY TRIAL** <br><br> Action Filed:   September 26, 2024 <br> Removed:        November 8, 2024 <br> Consolidated:   January 27, 2025 |

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

1

**KELLER GROVER LLP**
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

## CLASS ACTION COMPLAINT

Plaintiffs Saber Khamooshi, Ryan Wu, Brian Carolus, and John Deddeh, on behalf of themselves and a class of similarly situated individuals as defined below, and based on personal knowledge where applicable, information and belief, and investigation by counsel, allege the following against Defendant Politico LLC ("Defendant" or "Politico").

## INTRODUCTION

1.      This class action lawsuit arises out of Defendant's policy and practice during the proposed class period (*i.e.*, the applicable limitations period preceding the filing of the Complaint in this matter and through and including June 30, 2024) of embedding and using various trackers on Defendant's website, www.Politico.com, to (1) install and store third-party tracker cookies on website users' browsers and (2) surreptitiously share and allow those third-party trackers to collect website users' browser and device data as well as personally identifying information, such as IP addresses[1].  Defendant did all of that without users' knowledge, authorization, or consent.

2.      Defendant Politico LLC is an American digital newspaper company that owns and operates the www.Politico.com website (the "Politico website").   While primarily providing distributed news, analysis, and opinion online, Politico also produces printed newspapers, radio programming, and podcasts.  In October 2021, Defendant was acquired by and now is a subsidiary of Axel Springer SE.

3.      Launched in 2007, the Politico website covers politics and policy in the United States and internationally.   It has publications dedicated to politics in the United States, the European Union, the United Kingdom, Canada, and other countries.  The Politico website menu also has a category for "State Politics & Policy," which has links to four state-specific sections, including one for California.

---

[1] IP addresses have been classified by the United States Department of Health and Human Services ("HHS") as personally identifying information.  *Use of Online Tracking Technologies by HIPAA Covered Entities and Business Associates*, U.S. Department of Health and Human Services (Dec. 1, 2022), https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/hipaa-online-tracking/index.html

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

4.      The Politico California section, which is located at www.politico.com/new/california, provides extensive news coverage of California politics, elections, state ballot initiatives, climate, and pertinent local news.  In addition to the California-specific section of its website, Politico also offers online subscriptions for its "California Playbook" and "California Climate" newsletters.  It also sells a "Politico California Pro" subscription, which is a policy intelligence platform designed for public affairs professionals.

5.      Politico touts itself as "the global authority on the intersection of politics, policy, and power."  According to its website, Politico "strives to be the dominant source for news on politics and policy in power centers across every continent where access to reliable information, nonpartisan journalism and real-time tools create, inform and engage a global citizenry."

6.      Plaintiffs and Class members who visited the Politico website during the proposed class period expected that their personally identifying information, including their IP addresses, would remain private and confined to their own use of the Politico website.  Plaintiffs and Class members had and were entitled to have a reasonable expectation that their accessing of and interactions with the Politico website during the proposed class period would not be sold for advertising purposes or shared with any third parties, let alone to *undisclosed* third-party trackers.

7.      Unbeknownst to individuals entering and viewing the Politico website during the proposed class period, third-party trackers were embedded into Defendant's website.  Through that embedded tracking technology, while Plaintiffs and Class members were accessing and interacting with the Politico website, Defendant was (1) installing and storing third-party tracker cookies on users' browsers and (2) disclosing and sharing Politico website users' browser and device data, IP addresses, and other identifying information with those third-party trackers.  All of this happened the moment users entered the Politico website and without any further action required by or requested of the users.  And it happened without any meaningful notice.

8.      Plaintiffs are informed and believe and on that ground allege that Defendant caused the collection of and surreptitiously shared identifying data, including addressing information such as IP addresses, with the third-party trackers for advertising and analytics-related purposes.  Defendant did so without obtaining Politico website users' authorization or consent and without a

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

court order.

9.     Defendant's unauthorized (1) installation of third-party tracker cookies on users' web browsers and (2) disclosure to and collection by third parties of Plaintiffs' and Class members' personally identifying and addressing information, all without consent or adequate notification to Plaintiffs and Class members, were invasions of Plaintiffs' and Class members' privacy. Defendant's actions also violated multiple laws, including the California Computer Data Access and Fraud Act, Cal. Penal Code § 502 ("CDAFA"); the California Invasion of Privacy Act, Cal. Penal Code §§ 630, *et seq.* ("CIPA"); the right to privacy under Article 1, § 1, of the California Constitution, which includes privacy as one of six fundamental rights of all Californians; and the Unfair Competition Law, California Business & Professions Code §§ 17200, *et seq.* ("UCL").

## PARTIES

### A.     Plaintiff Saber Khamooshi

10.     Plaintiff Saber Khamooshi is a natural person and a resident of California.

11.     Plaintiff Khamooshi regularly visited the Politico website to browse political news headlines and to read articles.  He visited the Politico website on several occasions during the proposed class period.  Plaintiff Khamooshi used an internet browser on his multiple computers to access Defendant's website.

12.     At no time when Plaintiff Khamooshi entered the Politico website and viewed its contents during the proposed class period did he authorize or consent to Defendant installing third-party tracker cookies on his internet browser or computer.

13.     Plaintiff Khamooshi also did not consent to Defendant sharing or selling his browser and device data, IP addresses, and other personally identifying information with or to third-party trackers.  Further, because Defendant did not provide notice or request permission, Plaintiff Khamooshi was unaware of and had no meaningful opportunity to opt out of or object to that unauthorized disclosure of his data.

### B.     Plaintiff Ryan Wu

14.     Plaintiff Ryan Wu is a natural person and a resident of California.

15.     Plaintiff Wu regularly visited the Politico website to browse political news

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

headlines and to read articles.  He visited the Politico website on several occasions during the proposed class period.  Plaintiff Wu used an internet browser on his various computers to access Defendant's website.

16.     At no time when Plaintiff Wu entered the Politico website and viewed its contents during the proposed class period did he authorize or consent to Defendant installing third-party tracker cookies on his internet browser or computer.

17.     Plaintiff Wu also did not consent to Defendant sharing or selling his browser and device data, IP addresses, and other personally identifying information with or to third-party trackers.  Further, because Defendant did not provide notice or request permission, Plaintiff Wu was unaware of and had no meaningful opportunity to opt out of or object to that unauthorized disclosure of his data.

**C.     Plaintiff Brian Carolus**

18.     Plaintiff Brian Carolus is a natural person and a resident of California.

19.     Plaintiff Carolus regularly visited the Politico website to browse political news headlines and to read articles.  He visited the Politico website on several occasions during the proposed class period.  Plaintiff Carolus used an internet browser on his various computers to access Defendant's website.

20.     At no time when Plaintiff Carolus entered the Politico website and viewed its contents during the proposed class period did he authorize or consent to Defendant installing third-party tracker cookies on his internet browser or computer.

21.     Plaintiff Carolus also did not consent to Defendant sharing or selling his browser and device data, IP addresses, and other personally identifying information with or to third-party trackers.  Further, because Defendant did not provide notice or request permission, Plaintiff Carolus was unaware of and had no meaningful opportunity to opt out of or object to that unauthorized disclosure of his data.

**D.     Plaintiff John Deddeh**

22.     Plaintiff John Deddeh is a natural person and a resident of California. While physically present in California, Plaintiff Deddeh used an internet browser on his computer and on

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

his cellular phone to access the Politico website on several occasions during the proposed class period to browse news headlines and to read articles.

23.     At no time when Plaintiff Deddeh entered the Politico website and viewed its contents during the proposed class period did he authorize or consent to Defendant installing third-party tracker cookies on his internet browser or computer.  Plaintiff Deddeh also did not consent to Defendant sharing or selling his browser and device data, IP addresses and other personally identifying information with or to third-party trackers.  Further, because Defendant did not provide notice or request permission, Plaintiff Deddeh was unaware of and had no meaningful opportunity to opt out of or object to that unauthorized disclosure of his data

**E.     Defendant and its Politico Website**

24.     Defendant Politico LLC is a limited liability company organized under the laws of the State of Delaware with its headquarters in Arlington, Virginia.  Defendant systematically and continuously does business in California and with California residents.

25.     Defendant currently owns and operates the www.Politico.com website, which publishes news focused on global and American politics and policy.  As part of its vast editorial coverage in the United States, Politico also independently covers and separately reports political news from four states, including California.

26.     The Politico California section specifically targets California consumers, providing extensive California news stories and subsections such as "State Politics," "Elections," and "California Ballot Initiatives."  Toward the bottom of the Politico California webpage, there is an additional section titled "More From Politico California" with links to additional California news stories covering pertinent local news.  This California portion of the Politico website also displays ads for California businesses and services.

27.     In addition to the state-specific section of its Politico website, Politico's California offerings also include online subscriptions to two newsletters.  The "California Playbook," which can be found at www.politico.com/newsletters/californiaplaybook, provides additional California political news stories for consumers who sign up with an email address.  Similarly, the "California Climate" newsletter provides additional content specifically addressing California climate issues

and is located at www.politico.com/newsletters/california-climate.

28.    In September 2018, Politico announced its expanded California presence, which included "a Sacramento-based newsroom and intelligence service for professionals."  According to its press release, "Politico's operations will be grounded in Sacramento with a newsroom expansion that will increase the overall editorial footprint in California" with journalists who "will cover state-level battles over energy, health care, the budget, education, and more for a California audience."  Politico California Pro officially launched in January 2019.

29.    Politico confirmed its continued California expansion in a February 2023 press release announcing its new California Bureau Chief to be stationed in Sacramento, who was tasked with growing the California team, including the hiring of a new California expansion editor, and increasing Politico's California policy coverage and reporting.

30.    During the proposed class period, Defendant's Politico website failed to put visitors on notice of Defendant's use of website tracking technology, including its use of third-party trackers.  Upon information and belief, Plaintiffs allege that third-party trackers allow companies like and including Defendant to sell advertising space on their websites by using the tracking technology to receive, store, and analyze information collected from website visitors.

31.    During the proposed class period, the Politico website also failed to disclose the selling and sharing of browser and device data and personally identifying information, including IP addresses and other addressing information, to and with unauthorized third party-trackers for advertising and other purposes.

## JURISDICTION AND VENUE

32.    This Court has subject matter jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).  Specifically, this action satisfies all requirements for federal jurisdiction under CAFA in that the allegations in this Complaint identify a putative class of more than 100 members, establish the minimum diversity of citizenship required under CAFA, and place in controversy more than $5 million in the aggregate for the entire class, exclusive of interest and costs. 28 U.S.C. § 1332(d) and (d)(5) and § 1453(b).

33.    This Court has personal jurisdiction over the parties because Defendant has

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

1  sufficient minimum contacts with this State in that it operates and markets its services throughout

2  the State, including California-specific news offerings and directing targeted advertising to

3  California residents.   As described in Paragraphs 25 through 29, Defendant's activities in

4  California are substantial, continuous and systematic.   In a California-specific section of its

5  Politico website, Defendant provides extensive in-depth coverage of California issues, including

6  politics, elections, state ballot initiatives, climate, and other pertinent local news.

7        34.     Defendant also has multiple California-specific product offerings, including its two

8  online newsletters "California Playbook" and "California Climate" and a California version of its

9  fee-based Politico Pro product – Politico California Pro.   To provide its expansive editorial

10  coverage of California, Defendant maintains a newsroom office in Sacramento, California and

11  employs numerous individuals in the State of California.

12        35.     Further, a substantial part of the events and conduct giving rise to Plaintiffs' claims

13  occurred in the State of California.   Those events and that conduct included Plaintiffs' accessing

14  of and interacting with the Politico website; Defendant's unauthorized installation of third-party

15  tracker cookies on Plaintiffs' and California users' web browsers; and the disclosure and

16  surreptitious sharing of browser and device data and personally identifying information with the

17  third-party trackers, all without users' knowledge, authorization, or consent.   Plaintiffs' rights were

18  violated in the State of California; and those violations arose out of Plaintiffs' contact with

19  Defendant from and within the State of California.

20        36.     Venue is proper in this Court because Defendant removed the action from San

21  Francisco County Superior Court.   Venue was proper in that Court under Code of Civil Procedure

22  §§ 395 and 395.5 and case law interpreting those sections, which provide that if a foreign business

23  entity fails to designate with the office of the California Secretary of State a principal place of

24  business in California, it is subject to being sued in any county that a plaintiff desires.   On

25  information and belief, Defendant Politico LLC is a foreign business entity and had failed to

26  designate a principal place of business in California with the office of the Secretary of State as of

27  the date on which the Complaint in this action originally was filed.

28

**STANDING**

37.     Article III standing is met when a plaintiff "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 337, 338 (2016).

38.     Plaintiffs meet the "injury in fact" requirement because the invasion of their privacy is a "concrete and particularized" injury. *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021) ("Various intangible harms can also be concrete [including] . . . disclosure of private information"); *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d 589, 596 (9th Cir. 2020) (holding that Facebook's tracking of browsing histories that were sold to advertisers was an "invasion of [a] legally protected interest that is concrete and particularized.").

39.     Plaintiffs allege that they were personally injured when Defendant impermissibly obtained, disclosed, and shared Plaintiffs' personal information with third parties without consent or authorization.  It is black-letter law that such allegations are sufficient to confer Article III standing.  *See, e.g.*, *Mastel v. Miniclip SA*, 2021 WL 2983198, at *6 (E.D. Cal. July 15, 2021) (collection of "personal information without the plaintiff's consent involved a sufficiently 'concrete' injury"); *In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F.Supp.3d 767, 784 (N.D. Cal. 2019) (dissemination to third parties of plaintiffs' personal information is "sufficient to confer [Article III] standing.").

40.     Separate from an invasion-of-privacy harm, Plaintiffs also allege economic harm sufficient for Article III standing by alleging that user data carries financial value, citing a study that puts a quantifiable number on the value of that user data, and by alleging that Defendant profited from the misappropriated data.

41.     The Ninth Circuit has found such allegations to be sufficient to establish Article III standing under a theory of economic harm. *See Facebook Tracking*, 956 F.3d at 600.  Further, "[u]nder California law, this stake in unjustly-earned profits exists regardless of whether an individual planned to sell his or her data or whether the individual's data is made less valuable." *Facebook Tracking*, 956 F.3d at 600.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

42.    Plaintiffs' injuries are "fairly traceable" to Defendant's challenged conduct[2] because Defendant acquired and shared Plaintiffs' private information using third-party trackers that are embedded into the Politico website.  Plaintiffs' injuries therefore occurred the moment their information was acquired improperly by Defendant.

43.    Plaintiffs also meet the redressability element because courts consistently have recognized that violations of privacy rights can be redressed by an award of damages or injunctive relief.  *See Facebook Privacy*, 402 F.Supp.3d at 784, stating that "[T]he Ninth Circuit has repeatedly explained that intangible privacy injuries can be redressed in the federal courts."  *See also Jewel v. Nat'l Sec. Agency*, 673 F.3d 902, 912 (9th Cir. 2011) (similar).  Additionally, the injunctive relief that Plaintiffs seek includes terminating all downstream distributions of that illegally collected personal data.  That is a remedy that would redress future harms suffered by Plaintiffs and the Class and would have the potential to prevent those future harms.

## FACTUAL ALLEGATIONS COMMON TO THE CLASS

### A.    Website Tracking Technology

44.    "Third-party tracking refers to the practice by which a tracker, other than the website directly visited by the user, traces or assists in tracking the user's visit to the site."[3] Trackers collect information about internet users as those users are browsing the web.  Trackers use cookies, scripts or pixels inserted by publishers or advertisers.  Tracker profiling is the process of linking data from different websites to build user profiles based on browsing history, to place users in groups, and to sell that data to third parties so that they can use it for targeted advertising.

45.    A broad range of online technologies track and monitor internet-based interactions and communications.  Four identifier tools commonly used are (i) website cookies, (ii) tracking pixels, (iii) digital fingerprinting, and (iv) software development kits.

46.    A website cookie is a small text file that a website server creates and transmits to a web browser (*e.g.*, Chrome or Safari) which then installs and stores the file in a particular directory

---

[2]  *Spokeo*, 578 U.S. at 338.

[3]  See *Third-party Tracking*, PIWIK, https://piwik.pro/glossary/third-party-tracking/.

1  on an individual's computer, phone, or other device.[4]  When a website user attempts to access a

2  webpage, the user's browser transmits a communication to the website's server requesting that the

3  server display the website's content for the browser to load.  While providing the requested content

4  to the user, the website's server also provides the cookies that it would like the user's browser to

5  install and retain.

6       47.    Website cookies contain information that identifies the domain name of the

7  webserver that wrote the cookie (e.g., hulu.com or facebook.com).  Cookies also have information

8  about the user's interaction with a website, such as how the website should be displayed, how

9  many times a user has visited the website, how long a user spends on a webpage, information about

10  what pages the user visited, and authentication information.  In addition to a unique identifier and

11  a site name, website cookies also can include personally identifiable information such as a user's

12  name, address, email address and/or telephone number if that information was provided to a

13  website.

14       48.    A first-party cookie is implemented by the website that the user accesses.  The

15  website uses its cookies for authentication, monitoring user sessions, and collecting analytical data.

16  A third-party cookie, also called an "advertising cookie" or a "tracker cookie," is a cookie that

17  belongs to a domain other than the one being displayed to the user in his or her browser.  A third-

18  party cookie typically is used for cross-site tracking, retargeting, and ad-serving.  The key

19  differences between the first- and third-party cookies are who sets them (*i.e.*, a website display

20  host or a third party), whether and how they can be blocked by a web browser, and the cookies'

21  availability.  A third-party advertising or tracker cookie is accessible on any website that loads the

22  third-party server's code.

23       49.    A pixel, also known as a "tracking pixel," "web bug," "clear GIF" or "web beacon,"

24  is similar to a website cookie.  It is a small, almost-invisible image (pixel) embedded in a website

25  or an email to track a user's activities.  That tracked data often includes the user's operating system,

26  the kind of website or email used, the time when the website was accessed, the user's IP address,

27

28  _____

[4]  See Sara J. Nguyen, *What Are Internet Cookies and How Are They Used?*, All About Cookies
(Jul. 28, 2023), https://allaboutcookies.org/what-is-a-cookie.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

and whether there are cookies that previously have been set by the server hosting the pixel image.[5]

50.     Digital fingerprinting refers to device fingerprinting and browser fingerprinting, both of which send information to the website server to help ensure that a website is displaying content and operating appropriately.  ***Although a browser or device does not usually transmit personal information about a user, most fingerprinting is performed via a third-party tracker, which can track an individual across multiple sites and form a profile of the user.***[6]

51.     A software development kit (SDK) is a set of computer programs and similar tools that developers and engineers can leverage to build applications for specific platforms.  The SDK often includes, among other tools, libraries, application programming interfaces, instructions, guides, directions, and tutorials.[7]  SDKs also may have embedded code that allows them to intercept personal data and other information from application users surreptitiously, including geolocation data, usernames and communications derived from other SDK applications installed on a user's device, and a user's activities within an application after installation.

52.     All of the information and data captured and collected by third-party trackers, regardless of the tool used, is capable of being sold and used for marketing and advertising purposes.

**B.     Internet Protocol Addresses ("IP Addresses")**

53.     One important piece of identifying information collected by third-party trackers is a website user's IP address.  An IP address is a unique identifier for a device connected to the internet, and is a numerical code written as four sets of numbers separated by periods (e.g., 123.145.167.189).  The first two sets of numbers reflect what network the device is on; the second two sets of numbers identify the specific device.

54.     An IP address is essential for identifying a specific device on the internet or within

---

[5]  See Patti Croft & Catherine McNally, *What Is a Web Beacon and Why Should You Care?*, All About Cookies (Sept. 26, 2023), https://allaboutcookies.org/what-is-a-web-beacon.

[6]  See Anokhy Desai, *The Half-Baked Future of Cookies and Other Tracking Technologies*, IAPP (July 2023), https://iapp.org/resources/article/future-of-cookies-tracking-technologies/.

[7]  *What Is an SDK?  Software Development Kits Explained*, Okta, Inc. (June 30, 2022), https://www.okta.com/identify-101/what-is-an-sdk.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

1    a local network. It facilitates communication between devices, and allows a communication signal

2    to be routed from one identified device to another identified device.

3           55.    A private IP address is used within an internal network and is assigned within a

4    specific range of numbers designated exclusively to be used for private IP addresses. A private IP

5    address is not routable on the internet, and thus can be used simultaneously, without conflict, in

6    different private or local networks because they are isolated from the global internet. Non-unique

7    private IP addresses conserve the finite amount of combinations that make an IP address and

8    facilitate local network communications.

9           56.    Public IP addresses are required for devices that need direct internet access and are

10   assigned by an Internet Service Provider ("ISP"). Because a public IP address is accessible from

11   anywhere on the internet, it is unique to a device globally. Although the term "public" is used, a

12   public IP address is not freely accessible. If a device is not actively sending out data, the public

13   IP address remains private and is not broadcast to the wider internet. Unique public IP addresses

14   facilitate global communications.

15          57.    Significantly, public IP addresses contain geographical location information from

16   which the state, city, and zip code of a specific device can be determined. Various services use

17   databases to map IP addresses to physical locations in geographic areas, and often can provide

18   information about the country, city, and approximate latitude and longitude coordinates of a

19   specific device. In some instances, even the ISP associated with the public IP address can be

20   determined.

21          58.    Given the information that it can and does reveal, an IP address is considered

22   personally identifiable information and is subject to HIPAA protection.[8] Under California law, an

23   IP address also is considered an identifier and constitutes a consumer's protected personal

24   information.[9] Further, under Europe's General Data Protection Regulation, IP addresses are

25

26

27   _____

28   [8]  *See* 45 C.F.R. § 164.514(b)(2)(i)(O).
     [9]  *See* Cal. Civ. Code § 1798.140(v)(1)(A).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

considered "personal data, as they can potentially be used to identify an individual."[10]

59.     While a private IP address does not disclose a user's geolocation information, a public IP address does divulge such personal information.  Thus, public IP addresses are leveraged and used extensively in online advertising and user identification services.

60.     Knowing a website user's public IP address, and therefore the user's geographic location, provides "a level of specificity previously unfound in marketing."[11]  A public IP address allows advertisers to target customers by countries, cities, neighborhoods, and postal code.[12]  Even more specifically, it allows advertisers to target specific households, businesses, and even individuals with ads that are relevant to their interests by matching physical addresses to IP addresses.[13]

61.     Indeed, IP targeting is one of the most successful marketing techniques that companies can employ to spread the word about a product or service because companies can use a public IP address to identify individuals personally.[14]  By targeting specific households or businesses, a company can avoid wasting money on ads that are unlikely to be seen by their target audience and can reach their target audience with greater precision.[15]  Additionally, by analyzing data on which households or businesses are responding to their ads, IP address targeting can help businesses improve their overall marketing strategy and refine their marketing efforts.[16]

---

[10]  *Is an IP Address Personal Data?*, Convesio, https://convesio.com/knowledgebase/article/is-an-ip-address-personal-data/ (last visited February 6, 2025); *see also What is Personal Data*, European Commission, https://commission.europa.eu/law/law-topic/data-protection/reform/what-personal-data_en/ (last visited February 6, 2025).

[11]  *IP Targeting: Understanding This Essential Marketing Tool*, AccuData, https://www.accudata.com/blog/ip-targeting/ (last visited April 17, 2024).

[12]  *Location-based Targeting That Puts You in Control*, Choozle, https://choozle.com/geotargeting-strategies/ (last visited April 17, 2024).

[13]  Herbert Williams, *The Benefits of IP Address Targeting for Local Businesses*, LinkedIn (Nov. 29, 2023), https://www.linkedin.com/pulse/benefits-ip-address-targeting-local-businesses-herbert-williams-z7bhf/

[14]  Trey Titone, *The future of IP address as an advertising identifier*, Ad Tech Explained (May 16, 2022), https://adtechexplained.com/the-future-of-ip-address-as-an-advertising-identifier/

[15]  Herbert Williams, *The Benefits of IP Address Targeting for Local Businesses*, LinkedIn (Nov. 29, 2023), https://www.linkedin.com/pulse/benefits-ip-address-targeting-local-businesses-herbert-williams-z7bhf/

[16]  *Id.*

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

62.    Public IP addresses also are used for "geomarketing," which is "the practice of using location data to identify and serve marketing messages to a highly targeted audience."[17] The core principle of geomarketing is that "where you are is who you are."  By identifying target audiences that work, live, or vacation in a specific location, geomarketing allows businesses (and their websites) to determine consumers' wants and needs based on location-related factors and tailor their marketing to the products or services that appeal to those needs.[18]

63.    As alleged below, Defendant installed third-party tracker cookies on Politico website users' browsers.  Those trackers unlawfully have collected browser and device data as well as identifying and addressing information about Plaintiffs and Class members, including their IP addresses.  They have done so without a court order and without Plaintiffs' or Class members' consent.

**C.    Defendant's use of third-party trackers on the Politico website**

64.    Defendant has embedded and implemented several third-party trackers on the Politico website, including but not limited to (i) TripleLift Tracker, (ii) CasaleMedia Tracker and (iii) Adnx Tracker (referred to collectively as the "trackers").  By installing those trackers and their corresponding tracking cookies, Defendant can sell advertising space on the Politico website, enabling Defendant to monetize its website further and obtain additional revenue.  Moreover, by collecting and disclosing its users' information, Politico can place advertisements on other companies' websites, thereby increasing public awareness of Politico's brand, increasing its sales, and enabling Defendant to obtain and analyze users' data for its own profit.

65.    When a website user first accesses and enters the Politico website, the user's browser sends an HTTP request to Defendant's server.  The Politico website server then sends an HTTP response with directions to load the webpage content.  In addition to the webpage details, the Politico website server also sends instructions, as programmed by Defendant, and causes the three trackers to be installed on the user's browser.  The trackers, in turn, instruct the user's browser

---

[17] *See, e.g., Geomarketing Strategies & Tips: The Essential Guide*, Deep Sync, https://deepsync.com/geomarketing/ (last visited February 6, 2025).
[18] *Id.*

to send the trackers the user's IP address.

66. Each tracker installs and stores its own website cookie on the user's browser and uses that third-party tracker cookie to collect and share that user's browser and device data and addressing information, including IP addresses, *every time the user visits and interacts with the Politico website*. Some of the data points sent from Politico website users' browsers to the third parties are meant to identify users uniquely across sessions and devices, allowing for cross-site tracking and behavioral profiling.

67. The process described above takes place behind the scenes and in less than a second. Thus, the three tracker cookies appear and are implemented the instant the user enters the Politico website. No further action, clicks, or consent from the user are required.

68. Further, each of the three trackers embedded on Defendant's website re-installs its tracker cookies every time a user visits the Politico website. Thus, even if a user clears the cookies from the user's browser, it makes no difference: the next time that user visits the Politico website, all three trackers re-install their tracker cookies, reset the tracking process, and resume transmission of the user's browser and device data, IP address, and other identifying information to the undisclosed third parties.

69. At no time prior to the installation and use of the trackers on Politico website users' browsers did Defendant procure users' consent for such conduct. Nor did Defendant obtain a court order to install or use any of the three trackers.

70. The TripleLift Tracker is developed by digital advertising company TripleLift, Inc. ("TripleLift"). TripleLift is a platform that seeks to enhance advertisers' performance. To increase the overall effectiveness of online advertising, the TripleLift Tracker focuses on collecting users' data, particularly IP addresses, to fine-tune the platform's ad targeting. TripleLift's approach integrates both third-party and first-party data through its "TripleLift Audiences" feature, which facilitates precise ad placements and maximizes the accuracy of the advertisement's targeting. In essence, the TripleLift Tracker enables websites to analyze users' data to craft and optimize marketing campaigns, to target specific user groups and to increase website revenue by facilitating the collection of website users' information for use by third-parties.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

71.    When a user visits the Politico website, the TripleLift Tracker installs and stores its website cookie on the user's browser.  This third-party tracker cookie is used to collect and share that user's browser and device data, IP address, and other identifying information with third-party TripleLift.  That, in turn, enables TripleLift to serve personalized, targeted advertisements and to optimize and maximize user engagement.  ***TripleLift receives a user's data and IP address each and every time the user interacts with the Politico website.***  *See* Figure 1.

**Figure 1** (Red circles and yellow highlighting added):



72.    The CasaleMedia Tracker is developed by Index Exchange, Inc. ("Index Exchange"), formerly known as Casale Media.  By integrating third-party and first-party data, Index Exchange seeks to maximize ad relevancy and placement precision within its global advertising marketplace by leveraging the company's advertising technology experience for publishers, advertisers and consumers.  The CasaleMedia Tracker collects user data, including browser and device data and IP addresses, to enable website owners to analyze user data thoroughly, target specific user demographics, and optimize their marketing campaigns by increasing advertising effectiveness.  By continuously updating its data sets to refine ad targeting, the CasaleMedia Tracker allows for the strategic collection of users' information for use by third-parties that purchase the information.

73.    Politico embeds Index Exchange's code on its website.  That hidden code causes

and enables Index Exchange to install and store the CasaleMedia Tracker and its corresponding website cookie on users' browsers.  Like the TripleLift Tracker above, the CasaleMedia Tracker is installed the instant a user accesses the Politico website.  That happens without any notice to the user and without any request for permission from the user.  By using HTTP requests and responses, cookies, IP addresses, and other information shared by the Politico website, third-party Index Exchange can track and deliver personalized ads based on users' browsing habits and preferences, geographic locations, and other data personal to the users.

74.     During the HTTP communication process, the CasaleMedia tracker cookie stores identifiers linked to users' browsing behavior.  That enables Index Exchange to recognize that user on the user's subsequent visits to Politico or to other websites within Index Exchange's advertising network.  That, in turn, facilitates a cycle of ad targeting and tracking.

75.     Index Exchange also receives a user's browser and device data and IP address every time the user interacts with the Politico website.  Thus, even if the user clears the cookies from the user's browser, *the CasaleMedia Tracker is re-installed instantly* on the user's next visit to the Politico website.  That automatic process ensures that Index Exchange consistently receives the user's data and IP address with each and every website interaction.  *See* Figure 2.

**Figure 2** (red circles and yellow highlighting added):

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

76.    The third tracker embedded in Defendant's Politico website is developed by software company Xandr, which Microsoft acquired in 2021.  Xandr operates as an advanced advertising company that claims to provide a comprehensive platform for buying and selling consumer-oriented digital advertising.  The platform, which includes programmatic advertising, data analytics, and cross-screen media solutions, claims to improve the efficiency and effectiveness of advertising across various channels by leveraging data and technology.

77.    Like other third-party trackers, Xandr allows companies like Defendant to sell advertising space on their websites by using the Adnx Tracker to receive, store and analyze information collected from website visitors.  The Adnx Tracker is installed and stored on the user's browser the instant the user enters the Politico website.  The third-party tracker cookie then sends the user's IP address to Xandr each and every time the user interacts with the Politico website.  *See* Figure 3.

**Figure 3** (Red circles and yellow highlighting added):



78.    During the proposed class period, each of the three trackers embedded on Defendant's Politico website (1) installed a third-party tracker cookie on users' browsers and (2) captured, collected, and shared with undisclosed third parties the Politico website users' personally identifying and addressing information, including the users' IP addresses, ***all without users' knowledge or consent***.

79.     As alleged above, the trackers are designed to analyze Politico website data, conduct targeted advertising, and boost Defendant's revenue, all through the surreptitious collection and use of Politico website users' data.

80.     Upon further information and belief, when a user entered the Politico website, all three trackers were used for real-time bidding ("RTB"), an advertising auction that took place almost instantly.  Defendant's website used the third-party trackers to "host" the bidding on Defendant's behalf.  The RTB system was designed to allow Defendant to sell targeted advertising and to maximize its revenue gained from selling ad space on the Politico website.

81.     Further, each of the three trackers embedded on Defendant's website re-installed its tracker cookies automatically every time a user visited the Politico website.  That happened even if the user previously had cleared the cookies from his or her web browser.  As a result, during the proposed class period, *Politico website users could not escape the unauthorized sharing of their personally identifying and addressing information with third-parties TripleLift, Index Exchange, and Xandr.*

**D.     Plaintiffs and class members did not consent to Defendant's disclosure of their personally identifying and addressing information; they had and have a reasonable expectation of privacy in their user data.**

82.     During the proposed class period, Defendant did not ask its Politico website visitors, including Plaintiffs, whether they consented to having their personally identifying and addressing information disclosed to and used by third parties like TripleLift, Index Exchange, and Xandr.  When a website user accessed and entered the Politico website during the proposed class period, there was no pop-up window or other notification to inform users that Defendant was using website tracking technology or installing third-party tracker cookies.

83.     Additionally, the third-party trackers were incorporated seamlessly – ***and, to users, invisibly*** – in the background on the Politico website.  That seamless and invisible incorporation gave Plaintiffs and Class members no way of knowing that Defendant was allowing and enabling the collection of their browser and device data and personally identifying and addressing information, including their IP addresses, for use by undisclosed third parties.

84.     Further, although the Politico website does have a Privacy Policy containing some

KELLER GROVER LLP

1965 Market Street, San Francisco, CA 94103

Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

1  disclosures about how information is shared, ***that policy can be viewed only after scrolling all the***

2  ***way through the website content to the very bottom of the webpage***.  During the proposed class

3  period, Defendant's policies and notices would be seen, if at all, only long after the third-party

4  trackers and cookies had been installed on users' web browsers – in other words, only after it was

5  too late.

6         85.     In addition to its hard-to-see location, the hyperlink to access the Privacy Policy is

7  written in small, inconspicuous font and is listed among a number of other links at the bottom of

8  the Politico webpage.  *See* Figure 4.

9  **Figure 4** (Red boxes added):



14         86.     Unlike first-party cookies that may be technologically necessary to enable a

15  computer user to view a webpage, ***third-party tracker cookies are not necessary***.  Moreover, they

16  (1) simultaneously communicate information to an external server as a user navigates a website;

17  (2) track users across devices, meaning that a user's actions on multiple devices all will be included

18  in the information stored regarding that user; (3) are not easily disabled by users; and/or (4) ***create***

19  ***a record of all of the information that users provide to and/or receive from the website***.  Because

20  they were unaware of Defendant's use of third-party trackers and tracking cookies, Plaintiffs and

21  Class members could not and did not consent to the collection, storage, and use of their personally-

22  identifying and addressing information by undisclosed third parties like TripleLift, Index

23  Exchange, and Xandr.

24         87.     During the proposed class period, Plaintiffs and Class members had a reasonable

25  expectation of privacy in their interactions with the Politico website and in their user data,

26  especially their personally identifying information.  That is even truer of Plaintiffs' and Class

27  members' IP addresses, which contain geolocation data that can be used to identify, track, and

28  target individuals in a very specific and precise way.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

88.     Privacy studies, such as those conducted by the *Pew Research Center*, show that most Americans are concerned about how data is collected about them.[19]  Those privacy polls also reflect that Americans consider one of the most important privacy rights to be the need for an individual's affirmative consent before a company collects and shares data regarding that customer or other individual.

89.     Indeed, according to *Consumer Reports*, more than 90% of Americans believe that more should be done to ensure that companies protect consumers' privacy.   Further, a supermajority of Americans – **64%** – believe that companies should be prohibited from sharing data with third parties, while 63% of Americans want a federal law requiring companies to obtain a consumer's permission before sharing the consumer's information.   To that end, 60% of Americans believe that companies should be required to be more transparent about their privacy policies so that consumers can make more informed choices.[20]

90.     Users act in a manner that is consistent with those preferences.  During a rollout of new iPhone operating software, for example, ***94% of U.S. users who were asked for clear, affirmative consent before allowing companies to track them chose not to share their data.***[21]

91.     Defendant's unauthorized (1) installation of third-party tracker cookies on Plaintiffs' and Class members' web browsers and (2) disclosure of Plaintiffs' and Class members' personally identifying and addressing information to undisclosed third parties, all without adequate notification to the individual and certainly without any consent, were invasions of Plaintiffs' and Class members' privacy.

92.     Plaintiffs and Class members have suffered injuries in the form of (i) invasion of

---

[19]  Brooke Auxier et al., *Americans and Privacy: Concerned, Confused and Feeling Lack of Control Over Their Personal Information*, Pew Research Center (Nov. 15, 2019), https://www.pewresearch.org/internet/2019/11/15/americans-and-privacy-concerned-confused-and-feeling-lack-of-control-over-their-personal-information/

[20]  Benjamin Moskowitz et al., *Privacy Front & Center: Meeting the Commercial Opportunity to Support Consumer Rights*, Consumer Reports in collaboration with Omidyar Network (Fall 2020), https://thedigitalstandard.org/downloads/CR_PrivacyFrontAndCenter_102020_vf.pdf

[21]  *See* https://www.wired.co.uk/article/apple-ios14-facebook (**"According to Flurry Analytics, 85 per cent of worldwide users clicked 'ask app not to track' when prompted, with the proportion rising to 94 per cent in the US."**).

privacy; (ii) statutory damages; (iii) the continued and ongoing risk to their personally identifying information that, once out, never can be restored to its previous level of privacy; and (iv) the continued and ongoing risk of harassment, spam and targeted advertisements enabled by the Politico website.

## **CLASS ACTION ALLEGATIONS**

93.    Plaintiffs bring this action under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and a class (the "Politico Website Class" or "the Class") defined as follows:

> All California residents who, while located within California at any time during the applicable limitations period preceding the filing of the Complaint in this matter and through and including June 30, 2024, accessed and viewed the Politico website and whose IP addresses and/or browser data and/or device data were collected by and disclosed to the third-party trackers embedded in the Politico website.

94.    Excluded from the Politico Website Class are website users who (i) registered and/or subscribed to the Politico website and/or (ii) registered to receive the Politico newsletter. Employees of Defendant and employees of Defendant's parents, subsidiaries, and corporate affiliates also are excluded from the Class.  Plaintiffs reserve the right to amend or modify the class definition and/or to add sub-classes or limitations to particular issues, where appropriate, based upon subsequently discovered information.

95.    This action properly may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure because (1) there is a well-defined community of interest in the litigation, (2) common questions of law and fact predominate over individual issues, and (3) the proposed Class is ascertainable.

### **Numerosity**

96.    The Politico Website Class that Plaintiffs seek to represent contains numerous members and is clearly ascertainable including, without limitation, by using Defendant's records and/or third-party trackers' records to determine the size of the Class and to determine the identities of individual Class members.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

1    97.    Based on information and belief, the Politico Website Class consists of at least 100

2    individuals.  The Class is so numerous that joinder of all members is impracticable.

3    **Typicality**

4    98.    Plaintiffs' claims are typical of the claims of all the other members of the Politico

5    Website Class as Plaintiffs have suffered from the same violations of the law as other putative

6    Class members.  Plaintiffs' claims and the Class members' claims are based on the same legal

7    theories and arise from the same unlawful conduct, resulting in the same injury to Plaintiffs and

8    all of the other Class members.

9    **Adequacy**

10    99.    Plaintiffs will fairly and adequately represent and protect the interests of the other

11    members of the Class.  Plaintiffs have retained competent counsel with substantial experience in

12    prosecuting complex litigation and class actions.  Plaintiffs and their counsel are committed to

13    prosecuting this action vigorously on behalf of the Politico Website Class members and have the

14    financial resources to do so.  Neither Plaintiffs nor their counsel have any interests that are adverse

15    to the interests of other members of the Politico Website Class.

16    **Commonality and Predominance**

17    100.    By its unlawful actions, Defendant has violated Plaintiffs' and the Class members'

18    rights under the CDAFA, CIPA, the California Constitution, and the UCL.  The questions raised

19    are, therefore, of common or general interest to the Class members, who have a well-defined

20    community of interest in the questions of law and fact presented in this Complaint.

21    101.    This action involves common questions of law and fact that predominate over any

22    questions affecting only individual Class members.  Those common questions of law and fact

23    include, without limitation, the following:

24    (a)    Whether Plaintiffs and Class members had a reasonable expectation of privacy

25    when they accessed and visited the Politico website during the proposed class

26    period;

27    (b)    Whether Defendant knowingly and without permission accessed Plaintiffs' and

28    Class members' computers during the proposed class period;

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

(c)    Whether Defendant knowingly and without permission altered, damaged, deleted, destroyed, or otherwise used any data from Plaintiffs' and Class members' computers during the proposed class period;

(d)    Whether Defendant knowingly and without permission took, copied, or made use of any data from Plaintiffs' and Class members' computers during the proposed class period;

(e)    Whether Defendant knowingly and without permission added, altered, damaged, deleted, or destroyed any data from Plaintiffs' and Class members' computers during the proposed class period;

(f)    Whether Defendant knowingly introduced any computer contaminant into Plaintiffs' and Class members' computers, computer systems, and/or computer networks during the proposed class period;

(g)    Whether Plaintiffs and Class members had a reasonable expectation of privacy in their personally identifying information, including IP addresses, when they accessed and visited the Politico website during the proposed class period;

(h)    Whether each of the third-party trackers embedded in the Politico website was a "pen register" under California Penal Code § 638.50(b);

(i)    Whether, during the proposed class period, Defendant had a policy or practice of collecting and sharing personally identifying and addressing information collected on the Politico website including, without limitation, IP addresses and/or browser and device data, with third-party trackers and/or other third parties;

(j)    Whether, during the proposed class period, Defendant had a policy or practice of not disclosing to Politico website users that it would collect and share their personally identifying and addressing information, including IP addresses and/or browser and device data, with third-party trackers and/or other third parties;

(k)    Whether, during the proposed class period, Defendant had a policy or practice of not obtaining Politico website users' prior consent to collect and share personally

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

identifying and addressing information, including IP addresses and/or browser and device data, with third-party trackers and/or other third parties;

(l)    Whether Defendant sought or obtained a court order for its use of the third-party trackers;

(m)    Whether Defendant's conduct invaded Plaintiffs' and Class members' privacy;

(n)    Whether Defendant's acts and practices violated California's Computer Data Access and Fraud Act, Cal. Penal Code § 502;

(o)    Whether Defendant's acts and practices violated the California Invasion of Privacy Act, Cal. Penal Code § 638.51(a);

(p)    Whether Defendant's acts and practices violated the California Constitution or individual rights arising under the California Constitution;

(q)    Whether Defendant's acts and practices resulted in unjust enrichment to Defendant;

(r)    Whether Defendant's acts and practices violated California Business & Professions Code §§ 17200, *et seq*.; and

(s)    Whether Plaintiffs and Class members are entitled to actual, statutory, nominal, and/or other forms of damages, restitution, and other relief.

**Superiority**

102.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all of the members of the Class is impracticable and because questions of law and fact common to the Politico Website Class predominate over any questions affecting only individual members of the Class. Even if every individual member of the Class could afford individual litigation, the court system could not. It would be unduly burdensome to the courts if individual litigation of the numerous cases were to be required. Individualized litigation also would present the potential for varying, inconsistent or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the conduct of this action as a class action with respect to some or all of the issues will present fewer management difficulties, conserve the resources of the court system and the parties, and protect

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

the rights of each member of the Politico Website Class.  Further, it will prevent the very real harm that would be suffered by numerous members of the putative Class who simply will be unable to enforce individual claims of this size on their own, and by Defendant's competitors, who will be placed at a competitive disadvantage as their punishment for obeying the law.  Plaintiffs anticipate no difficulty in the management of this case as a class action.

103.    The prosecution of separate actions by individual members of the Politico Website Class would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other members of the Class who are not parties to those adjudications or that would substantially impair or impede the ability of those non-party members of the Class to protect their interests.

104.    The prosecution of individual actions by members of the Politico Website Class also would run the risk of establishing inconsistent standards of conduct for Defendant.

## FIRST CAUSE OF ACTION

### Violation of the California Computer Data Access and Fraud Act
**(California Penal Code § 502)**
**(On Behalf of Plaintiffs and the Class)**

105.    Plaintiffs incorporate each allegation set forth above as if fully set forth herein and further allege as follows.

106.    The California Legislature enacted the CDAFA with the intent to "expand the degree of protection afforded to individuals, businesses, and governmental agencies from tampering, interference, damage, and unauthorized access to lawfully created computer data and computer systems."  Cal. Penal Code § 502(a).

107.    The Legislature further declared that "protection of the integrity of all types and forms of lawfully created computers, computer systems, and computer data is vital to the protection of the privacy of individuals as well as to the well-being of financial institutions, business concerns, governmental agencies, and others within this state that lawfully utilize those computers, computer systems, and data."  Cal. Penal Code § 502(a).

108.    To effectuate that purpose, the CDAFA affords a private right of action to owners of computers, systems, networks, programs, and/or data who suffer damages or loss as a result of

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

a violation of the Act.  Cal. Penal Code § 502(e)(1).  There is no quantitative threshold of damage to bring a claim, and there is no monetary threshold to qualify for CDAFA protection.

109.    For purposes of the statute, several definitions were provided.  The term "access" means to "gain entry to, instruct, cause input to, cause output from, cause data processing with, or communicate with, the logical, arithmetical, or memory function resources of a computer, computer system, or computer network."  Cal. Penal Code § 502(b)(1).

110.    The term "computer program or software" is defined as "a set of instructions or statements, and related data, that when executed in actual or modified form, cause a computer, computer system, or computer network to perform specified functions."  Cal. Penal Code § 502(b)(3).

111.    The term "computer system" refers to "a device or collection of devices, including support devices and excluding calculators that are not programmable and capable of being used in conjunction with external files, one or more of which contain computer programs, electronic instructions, input data, and output data, that performs functions, including but not limited to, logic, arithmetic, data storage and retrieval, communication, and control."  Cal. Penal Code § 502(b)(5).

112.    The web browsers that Plaintiffs' and Class members' used to access the Politico website are "computer software."  The computers on which Plaintiffs and Class members used their web browsers constitute computers or "computer systems" within the scope of the CDAFA.

113.    The statute also defines the term "data" broadly to mean a "representation of information, knowledge, facts, concepts, computer software, or computer programs or instructions."  The statute further provides that data may be in "any form, in storage media, or as stored in the memory of the computer or in transit or presented on a display device."  Cal. Penal Code § 502(b)(8).

114.    The term "computer contaminant" refers to "any set of computer instructions that are designed to modify, damage, destroy, record, or transmit information within a computer, computer system, or computer network without the intent or permission of the owner of the information. They include, but are not limited to, a group of computer instructions commonly called viruses or worms, that are self-replicating or self-propagating and are designed to

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

contaminate other computer programs or computer data, consume computer resources, modify, destroy, record, or transmit data, or in some other fashion usurp the normal operation of the computer, computer system, or computer network." Cal. Penal Code § 502(b)(12).

115.    As discussed above, a website cookie (including a third-party tracker cookie) and an IP address both are "data" within the meaning of the statute.

116.    The website cookies installed by the TripleLift tracker, CasaleMedia tracker, and Adnx tracker also constitute a "contaminant" under the CDAFA because they are designed to, and do, self-propagate to contaminate Politico users' computers, computer systems, and computer networks to record and transmit data that would not otherwise be transmitted.

117.    The third-party tracker cookies and tracking technology used by Defendant usurp the normal operation of Plaintiffs' and Class members' computing devices because they supplant Plaintiffs' and Class members' choices in how those devices and their resources, including energy resources, are used.  For example, the trackers command Politico website users' computing devices to act in ways that are contrary to what was intended by Plaintiffs and Class members, such as storing unauthorized tracking cookies on their web browsers' and disclosing to unknown third parties their identifying and addressing information without users' knowledge or consent.

118.    As described above in more detail in Paragraph 86, third-party tracker cookies are not necessary for any of Plaintiffs' or Class members' devices to communicate effectively with Defendant or the Politico website.

119.    Under California Penal Code § 502(c)(1), it is unlawful to knowingly access and without permission alter, damage, delete, destroy, or otherwise use any data, computer, computer system, or computer network in order to…wrongfully control or obtain money, property or data. Cal. Penal Code § 502(c)(1).

120.    The statute also makes it unlawful knowingly to access and without permission take, copy, or make use of any data from a computer, computer system, or computer network.  Cal. Penal Code § 502(c)(2).

121.    The CDAFA further prohibits any person from knowingly accessing and without permission adding, altering, damaging, or destroying any data, computer software, or computer

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

programs which reside or exist internal or external to a computer, computer system, or computer network.  Cal. Penal Code § 502(c)(4).

122.    Under subsections (6) and (7) of Penal Code § 502(c), a person also may not knowingly and without permission (i) provide or assist in providing a means of accessing or (ii) access or cause to be accessed any computer, computer system, or computer network.  Cal. Penal Code §§ 502(c)(6) and (7).

123.    Under California Penal Code § 502(c)(8), it also is unlawful to knowingly introduce any computer contaminant into any computer, computer system, or computer network.  Cal. Penal Code § 502(c)(8).

124.    Based on Defendant's unauthorized installation and storage of third-party tracker cookies on Plaintiffs' and Class members' web browsers during the proposed class period, as alleged above, Defendant knowingly accessed and without permission altered and used Plaintiffs' and Class members' data, computers, computer systems, and computer networks in violation of Penal Code § 502(c)(1).

125.    Similarly, the installation of those third-party tracker cookies violated subsection (c)(4) because Defendant added and altered data and computer software on Plaintiffs' and Class members' computers or computer systems.  Cal. Penal Code § 502(c)(4).

126.    By installing third-party tracker cookies, Defendant also knowingly and without permission provided those trackers a means of accessing and/or caused to be accessed Plaintiffs' and Class members' computers, computer systems, and/or computer networks in violation of Penal Code §§ 502(c)(6) and (7).  Defendant's actions caused the data processing functions and networks of users' devices to redirect Plaintiffs' and Class members' data to the third-party trackers.

127.    Further, Defendant's unauthorized collection and disclosure of Plaintiffs' and Class members' personally identifying and addressing information to undisclosed third parties during the proposed class period violated Penal Code § 502(c)(2) because Defendant took and made use of data, including IP addresses and browser and device data, from Plaintiffs' and Class members' computers, computer systems, or computer networks.

128.    Defendant's installation of the third-party tracker cookies also violates subsection

1    (c)(8) because Defendant knowingly introduced a computer contaminant into Plaintiffs' and Class

2    members' computers, computer systems, or computer networks. Cal. Penal Code § 502(c)(8).

3        129.    Defendant lacked permission to use and access Plaintiffs' and Class members' data,

4    computers, computer systems, and computer networks in the manners described above and lacked

5    permission to introduce the third-party trackers into Politico website users' web browsers, all as

6    evidenced by the following:

7        (a) When entering and accessing Defendant's Politico website, there is no pop-up window

8            or other notification to inform users that Defendant is using website tracking

9            technology or installing third-party tracker cookies;

10       (b) The third-party trackers are incorporated seamlessly and invisibly in the background

11           on Defendant's Politico website, thereby giving Plaintiffs and Class members no way

12           of knowing that Defendant was allowing and enabling those third-party trackers to

13           collect their personally identifying information and IP addresses; and

14       (c) Defendant does not seek permission from Politico website visitors or otherwise ask

15           them whether they consent to having their personally identifying and addressing

16           information disclosed to and used by undisclosed third parties like TripleLift, Index

17           Exchange, and Xandr.

18       130.    Defendant's knowing conduct as described herein, including embedding and

19    implementing third-party trackers on its Politico website and installing third-party tracker cookies

20    on Politico website users' browsers without their knowledge or consent, violates the CDAFA.

21       131.    Plaintiffs and Class members are residents of California and were the owners or

22    lessees of the computers, computer systems, computer networks, and data described herein.

23    Plaintiffs and Class members used their computers, computer systems and/or computer networks

24    in California. Defendant accessed or caused to be accessed Plaintiffs' and Class members' data

25    and other personally identifying information from within California.

26       132.    Case law has established that misappropriation of data that has financial value can

27    state an economic injury under the CDAFA. *See Brown v. Google LLC*, 685 F. Supp. 3d 909, 939-

28    940 (N.D. Cal. 2023), citing *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 600 (9th

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

Cir. 2020). In *Brown*, the court recognized that browsing histories and similar data carry financial value and that an economic market for that data exists. Id.

133.    Defendant was unjustly enriched by accessing, acquiring, taking and using Plaintiffs' and Class members' data and computer systems during the proposed class period without their permission or consent and by using all of that identifying information, including their IP addresses and browsing data, to maximize revenue from selling advertising space on the Politico website for Defendant's own financial benefit. Defendant has been unjustly enriched in an amount to be determined at trial.

134.    Further, website tracking technology, such as tracking beacons and the third-party tracking cookies used by Defendant, take up and use processing, storage, and power resources to run on users' devices.[22] Those website tracking cookies also cause webpages to load more slowly, thereby increasing the time and energy needed for devices to run. Overall, that additional processing, storage, and power usage results in increased energy and device costs for users. That extra cost is economic harm.

135.    As a direct and proximate result of Defendant's violations of the CDAFA, Plaintiffs and Class members have suffered economic loss and damages. The statute imposes no minimum threshold for damages. Under Penal Code § 502(e)(1), Plaintiffs and Class members therefore are entitled to compensatory damages, injunctive relief and other equitable relief in an amount to be determined at trial.

136.    Plaintiffs and Class members also are entitled to an award of reasonable attorneys' fees and costs under Penal Code § 502(e)(2).

**SECOND CAUSE OF ACTION**
**Unlawful Use of a Pen Register or Trap and Trace Device**
**(California Penal Code §§ 638.51)**
**(On Behalf of Plaintiffs and the Class)**

137.    Plaintiffs incorporate each allegation set forth above as if fully set forth herein and further allege as follows.

---

[22] See Joshua M. Pearce, *Energy Conservation with Open Source Ad Blockers* (Mar. 30, 2020), https://www.mdpi.com/2227-7080/8/2/18 (last accessed on January 2, 2025).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

138.    The California Legislature enacted the California Invasion of Privacy Act, Cal. Penal Code §§ 630, *et seq*. ("CIPA"), to address "advances in science and technology [that] have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications and that the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society." *Id*. § 630. CIPA is intended "to protect the right of privacy of the people of this state." *Id*.

139.    Although CIPA was enacted before the dawn of the Internet, the California Supreme Court "regularly reads statutes to apply to new technologies where such a reading would not conflict with the statutory scheme." *In re Google Inc.*, 2013 WL 5423918, at *21 (N.D. Cal. Sept. 26, 2013); *see also Greenley*, 2023 WL 4833466, at *15 (referencing CIPA's "expansive language" when finding that software was a "pen register"); *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *1 (9th Cir. May 31, 2022) ("Though written in terms of wiretapping, [CIPA] Section 631(a) applies to Internet communications."). This is consistent with the observation in *Matera v. Google Inc.* that, "when faced with two possible interpretations of CIPA, the California Supreme Court has construed CIPA in accordance with the interpretation that provides the greatest privacy protection." *Matera v. Google Inc.*, 2016 WL 8200619, at *19 (N.D. Cal. Aug. 12, 2016).

140.    Particularly pertinent here, California Penal Code § 638.51(a) makes it unlawful for a person to "install or use a pen register or a trap and trace device without first obtaining a court order."

141.    A "pen register" is "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code § 638.50(b).

142.    A "trap and trace device" is a "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." Cal. Penal Code § 638.50(c).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

143.    In essence, a "pen register" is a "device or process" that records *outgoing* information, while a "trap and trace device" is a "device or process" that records *incoming* information. For example, if a user sends an email, a "pen register" might record the email address from which the email was sent, the email address to which the email was sent, and the subject line – because this is the user's *outgoing* information. On the other hand, if that same user receives an email, a "trap and trace device" might record the email address from which that email was sent, the email address to which it was sent, and the subject line – because this is *incoming* information that is being sent to that same user.

144.    The three trackers embedded in the Politico website – TripleLift, CasaleMedia, and Adnx – are "pen registers" because each of them is a device or process that captures and records outgoing addressing or signaling information from the electronic communications transmitted by Plaintiffs' and Class members' computers, computer systems, and computer networks as they are accessing and visiting the Politico website.

145.    At all relevant times during the proposed class period, Defendant installed each of the three pen register trackers on Plaintiffs' and Class members' web browsers and caused the trackers to capture and record Plaintiffs' and Class members' IP addresses and/or browser and device data.

146.    Public IP addresses constitute addressing information because they disclose the general geographic coordinates of the user who is accessing and communicating with a website, but do not necessarily reveal any more about the underlying contents of the communication. *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1108 (9th Cir. 2014).

147.    Public IP addresses also constitute "routing" or "signaling" information because they are sending or directing users' communications from the routers in their homes or workplaces to the websites that users are communicating with.

148.    Unaware of Defendant's installation and use of the third-party trackers as pen registers during the proposed class period, Plaintiffs and Class members could not have provided and did not provide their prior consent to Defendant's installation or use of the third-party trackers or pen registers.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

1    149.    Upon information and belief, Defendant was not authorized by any court order to

2 use a pen register to track Plaintiffs' and Class members' location data and other identifying

3 information.

4    150.    Defendant's conduct as described above violated California Penal Code § 638.51.

5 As a result, Defendant is liable for the relief sought by Plaintiffs and the Politico Website Class.

6 Under California Penal Code § 637.2, Plaintiffs and Class Members are entitled to and seek

7 statutory damages of $5,000 for each of Defendant's numerous CIPA violations.

**THIRD CAUSE OF ACTION**
**Invasion of Privacy**
**(Violation of Art. 1, § 1, California Constitution)**
**(On Behalf of Plaintiffs and the Class)**

11    151.    Plaintiffs incorporate each allegation set forth above as if fully set forth herein and

12 further allege as follows.

13    152.    "Privacy" is listed in Article I, Section 1, of the California Constitution as one of

14 six fundamental rights of all Californians. That section of the Constitution provides as follows:

15 "All people are by nature free and independent and have inalienable rights. Among these are

16 enjoying and defending life and liberty, acquiring, possessing, and protecting property, and

17 pursuing and obtaining safety, happiness, and privacy." Cal. Const. Art. I, § 1.

18    153.    The right to privacy in California's Constitution creates a right of action against

19 private entities such as Defendant. To state a claim for invasion of privacy under the California

20 Constitution, a plaintiff must establish (1) a legally protected privacy interest; (2) a reasonable

21 expectation of privacy; and (3) an intrusion so serious in nature, scope, and actual or potential

22 impact as to constitute an egregious breach of social norms.

23    154.    Plaintiffs and Class members had a legally protected privacy interest in their

24 personally identifying information and addressing information that was captured during the

25 proposed class period, without notice or consent, when they accessed and viewed the Politico

26 website. These privacy interests are recognized by the California Constitution, CDAFA, CIPA,

27 HIPAA, and numerous other statutes.

28    155.    Plaintiffs and Class members had a reasonable expectation of privacy under the

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

circumstances, as they could not reasonably have expected that Defendant would violate state and federal privacy laws. During the proposed class period, Plaintiffs and Class members were not aware of and could not reasonably have expected that Defendant would use website tracking technology and install third-party tracker cookies without notice or obtaining consent. Those unauthorized trackers collected and transmitted to undisclosed third parties Plaintiffs' and Class members' personally identifying and addressing information, including their IP addresses, which contain geolocation data.

156.    Defendant's unauthorized (1) installation of third-party tracker cookies and (2) disclosure to and sharing with unknown third parties of Plaintiffs' and Class members' personally identifying and addressing information during the proposed class period, all without consent or adequate notification to Plaintiffs and Class members, were an invasion of Plaintiffs' and Class members' privacy.

157.    Defendant's conduct during the proposed class period constituted a serious invasion of privacy that would be highly offensive to a reasonable person in that (i) the information disclosed by Defendant and shared with third-party trackers was personally identifying information protected by the California Constitution and numerous California and federal statutes; (ii) Defendant did not have authorization or consent to disclose that personally identifying and addressing information, including IP addresses, to any third-party tracker embedded in the Politico website, and the trackers did not have authorization to collect and use that geolocation information; and (iii) the invasion deprived Plaintiffs and Class members of the ability to control the dissemination and circulation of that information, an ability that is considered a fundamental privacy right. Defendant's conduct constitutes a severe and egregious breach of social norms.

158.    As a direct and proximate result of Defendant's actions, Plaintiffs and Class members have had their privacy invaded and have sustained injury, including injury to their peace of mind.

159.    Plaintiffs and Politico Website Class members seek appropriate relief for that injury, including but not limited to restitution, disgorgement of profits earned by Defendant as a result of or in connection with the intrusions upon Plaintiffs' and Class members' privacy, nominal

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

damages, and any and all other equitable relief that will compensate Plaintiffs and Class members properly for the harm to their privacy interests.

160.    Plaintiffs also seek such other relief as the Court may deem just and proper.

### FOURTH CAUSE OF ACTION
**Unjust Enrichment**
**(On Behalf of Plaintiffs and the Class)**

161.    Plaintiffs incorporate each allegation set forth above as if fully set forth herein and further allege as follows.

162.    Defendant received benefits from Plaintiffs and Class members and unjustly retained those benefits at their expense.

163.    Plaintiffs and Class members conferred a benefit upon Defendant in the form of valuable personal information and data that Defendant collected from Plaintiffs and Class members without authorization and proper compensation. Defendant has collected, disclosed, and otherwise misused that information for its own gain, providing Defendant with economic, intangible, and other benefits, including substantial monetary compensation from third parties that received Plaintiffs' and Class members' personal information and data.

164.    Defendant unjustly retained those benefits at the expense of Plaintiffs and Class members because Defendant's conduct damaged Plaintiffs and Class members, all without providing any commensurate compensation to Plaintiffs and Class members.

165.    The benefits that Defendant derived from Plaintiffs and Class members rightly belong to Plaintiffs and Class members. It would be inequitable under unjust enrichment principles in California for Defendant to be permitted to retain any of the profit or other benefits that it derived from the unfair and unconscionable methods, acts, and trade practices alleged in this Complaint.

166.    Defendant should be compelled to disgorge in a common fund for the benefit of Plaintiffs and Class members all unlawful or inequitable proceeds that Defendant received, and such other relief as the Court may deem just and proper.

### FIFTH CAUSE OF ACTION
**Violations of California's Unfair Competition Law**
**(Cal. Bus. & Prof. Code §§ 17200, *et seq*.)**
**(On Behalf of Plaintiffs and the Class)**

167.    Plaintiffs incorporate each allegation set forth above as if fully set forth herein and further allege as follows.

168.    California Business & Professions Code §§ 17200, *et seq*. ("UCL") prohibit unfair competition in the form of any unlawful, unfair, deceptive or fraudulent business act or practice.

169.    Defendant's business acts and practices are "unlawful" under the UCL because, as alleged above, Defendant violated the California Constitution, California common law, and other California statutes and causes of action described in this complaint.

170.    Defendant's business acts and practices are "unfair" under the UCL.  California has a strong public policy of protecting consumers' privacy interests, including protecting consumers' personal data. Defendant violated that public policy by, among other things, surreptitiously collecting, disclosing, and otherwise misusing Plaintiffs' and Class members' personal information and data without Plaintiffs' and Class members' consent. Defendant's conduct violates the policies underlying the statutes referenced in this Complaint.

171.    Defendant's business acts and practices are also "unfair" in that they are immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to consumers.  The gravity of the harm caused by Defendant secretly collecting, disclosing, and otherwise misusing Plaintiffs' and Class members' personal information and data is significant.   Further, there is no corresponding benefit resulting from that conduct.  Finally, because Plaintiffs and Class members were completely unaware of Defendant's conduct, they could not have avoided the harm that Defendant inflicted on them.

172.    Defendant's violations were and are willful, deceptive, unfair, and unconscionable.

173.    Had Plaintiffs and Class members known that their information would be collected and otherwise misused for Defendant's own benefit, they would not have used Defendant's website.

174.    Plaintiffs have suffered an economic injury, *i.e.*, a loss of money or property. Plaintiffs have alleged that their browser and device data and personally identifying and addressing information, including their IP addresses, were collected by the three trackers embedded on Defendant's website and were disseminated and/or sold to other undisclosed third parties in

exchange for monetary compensation received by Defendant. Plaintiffs also have alleged that that personal information has tangible monetary value and that Plaintiffs and Class members were deprived of that value when their browser and device data and personally identifying and addressing information, including their IP addresses, were disseminated and/or sold to other undisclosed third parties. These allegations are sufficient to establish an economic injury under the UCL. *See Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 636 (N.D. Cal. 2021) ("[T]he Ninth Circuit . . . ha[s] concluded that plaintiffs who suffered a loss of their personal information suffered economic injury and had [UCL statutory] standing."); *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 810-812 (N.D. Cal. 2011) (allegations that Facebook used plaintiffs' Facebook profiles to endorse third-party products and services, without compensation, sufficed). Nor are Plaintiffs' UCL claims barred by the fact that Plaintiffs did not pay for Defendant's services. *See Fraley*, 830 F. Supp. 2d at 811 (alleged injury was cognizable even though "[i]t is undisputed that Plaintiffs did not pay for Facebook's services").

175.    Plaintiffs and Class members have a property interest in their sensitive personal data. By surreptitiously disclosing and otherwise misusing Plaintiffs' and Class members' information, Defendant has taken property from Plaintiffs and Class members without providing just compensation or, indeed, any compensation.

176.    California Business & Professions Code § 17203 provides that the Court may restore to any person in interest any money or property which may have been acquired by means of unfair, deceptive, and fraudulent business acts and practices, and may order restitution by Defendant to Plaintiffs for the practices alleged in this complaint.  Plaintiffs and Class members are entitled under California Business & Professions Code §§ 17203 and 17208 to restitution and restoration of all ill-gotten money and property belonging to Plaintiffs and the Class.

177.    Plaintiffs also seek injunctive relief in the form of a permanent injunction enjoining Defendant's unlawful and unfair business activities and practices, including an injunction terminating all downstream distributions of Plaintiffs' and Class members' illegally collected personal data.  Plaintiffs additionally seek any and all other equitable relief that the Court deems proper.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

178.    Plaintiffs' success in this action will enforce important rights affecting the public interest and, in that regard, Plaintiffs sue on behalf of the proposed class as well as on behalf of themselves and the general public.

179.    Plaintiffs take upon themselves the enforcement of these laws and lawful claims. There is a financial burden incurred in pursuing this action and it would be against the interests of justice to penalize Plaintiffs by forcing them to pay attorneys' fees from the recovery in this action. Therefore, an award of attorneys' fees is appropriate under California Code of Civil Procedure § 1021.5.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and the members of the Class, seek the following relief:

a.    An order certifying the Politico Website Class, appointing Plaintiffs Saber Khamooshi, Ryan Wu, Brian Carolus, and John Deddeh as representatives of the Politico Website Class, and appointing counsel for Plaintiffs as counsel for the Politico Website Class;

b.    An order enjoining Defendant from engaging in the acts and practices complained of in this complaint;

c.    An order declaring that Defendant's actions, as described above, violated California Penal Code § 502;

d.    An order declaring that Defendant's actions, as described above, violated California Penal Code § 638.51;

e.    An order declaring that Defendant's actions, as described above, violated Art. 1, § 1 of the California Constitution;

f.    An order declaring that Defendant's actions, as described above, violated California Business & Professions Code §§ 17200, *et seq.*;

g.    A judgment for and award of compensatory damages or other equitable relief under California Penal Code § 502(e)(1) to Plaintiffs and each of the members of the Politico Website Class;

h.   For each violation of CIPA, a judgment for and award of statutory damages of $5,000 under California Penal Code § 637.2 to Plaintiffs and each of the members of the Politico Website Class;

i.   A judgment for and award of restitution, disgorgement of profits, and nominal damages to which Plaintiffs and all of the members of the Politico Website Class are entitled by law;

j.   Disgorgement of profits and restitution and restoration of all costs incurred, sums or property unlawfully withheld, and/or losses caused by the acts and practices that violated California Business & Professions Code §§ 17200, *et seq.*;

k.   Payment of costs of the suit;

l.   Payment of attorneys' fees under California Code of Civil Procedure § 1021.5 and Penal Code § 502(e)(2);

m.   An award of pre- and post-judgment interest to the extent allowed by law; and

n.   Such other and/or and further relief as the Court may deem proper.

Respectfully submitted,

Dated:  February 14, 2025          **KELLER GROVER LLP**

By: */s/ Eric A. Grover*
ERIC A. GROVER
*Attorneys for Plaintiffs*
Saber Khamooshi, Ryan Wu, and Brian Carolus

**COHELAN KHOURY & SINGER**

By: */s/ Isam C. Khoury*
Isam C. Khoury, Esq.
Attorneys for Plaintiff John Deddeh

**KEEGAN & BAKER, LLP**

By: */s/ Patrick N. Keegan*
Patrick N. Keegan, Esq.
Attorneys for Plaintiff John Deddeh

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

**JURY DEMAND**

Plaintiffs request a trial by jury of all claims that can be so tried.

Respectfully submitted,

Dated:  February 14, 2025                    **KELLER GROVER LLP**

By:  /s/ *Eric A. Grover*
ERIC A. GROVER
*Attorneys for Plaintiffs*
Saber Khamooshi, Ryan Wu, and Brian Carolus

**COHELAN KHOURY & SINGER**

By:  /s/ *Isam C. Khoury*
Isam C. Khoury, Esq.
Attorneys for Plaintiff John Deddeh

**KEEGAN & BAKER, LLP**

By: /s/ *Patrick N. Keegan*
Patrick N. Keegan, Esq.
Attorneys for Plaintiff John Deddeh

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

**CIVIL LOCAL RULE 5-1(i)(3) ATTESTATION**

Pursuant to L.R.5-1, the filer of this document, Eric Grover, hereby attests that all other signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized this filing.


Dated:  February 14, 2025                    **KELLER GROVER LLP**

By: */s/ Eric A. Grover*
ERIC A. GROVER
*Attorneys for Plaintiffs*
Saber Khamooshi, Ryan Wu, and Brian Carolus

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861