USAMA KAHF (SBN 266443)
    E-Mail: ukahf@fisherphillips.com
**FISHER & PHILLIPS LLP**
2050 Main Street, Suite 1000
Irvine, California 92614
Telephone: (949) 851-2424
Facsimile: (949) 851-0152

DANIELLE KAYS (*PRO HAC VICE*)
    E-Mail: dkays@fisherphillips.com
**FISHER & PHILLIPS LLP**
10 South Wacker Drive, Suite 3450
Chicago, IL 60606
Telephone: (312) 260-4751

CATHERINE M. CONTINO (*PRO HAC VICE*)
    E-Mail: ccontino@fisherphillips.com
**FISHER & PHILLIPS LLP**
Two Logan Square, 12th Floor
100 N. 18th Street
Philadelphia, PA  19103
Telephone: (610) 230-2150
Facsimile: (610) 230-2151

Attorneys for Defendant
POLITICO LLC

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SABER KHAMOOSHI, RYAN WU, BRIAN CAROLUS and JOHN DEDDEH, individually and on behalf of a class of similarly situated individuals, <br><br> Plaintiffs, <br><br> v. <br><br> POLITICO LLC; <br><br> Defendant. | Case No:  3:24-cv-07836-SK <br><br> **CLASS ACTION** <br><br> **NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> **DATE:**      **April 28, 2025** <br> **TIME:**      **9:30 a.m.** <br><br> Action Filed:  September 26, 2024 <br> Removed:     November 8, 2024 <br> Consolidated: January 27, 2025 |

**TO PLAINTIFF AND TO COUNSEL OF RECORD:**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:**

**NOTICE IS HEREBY GIVEN** that on April 28, 2025 at 9:30 a.m., or as soon thereafter as the matter may be heard, in Courtroom C – 15th Floor of the above-entitled Court, located at 450 Golden Gate Ave., San Francisco, California 94102, Defendant, POLITICO LLC ("POLITICO") hereby moves, pursuant to the Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 9(b), for an order to dismiss Plaintiffs' Complaint with prejudice.

This Motion is made on the grounds that Plaintiffs:

(1) Failed to allege sufficient facts to establish Article III Standing to pursue an action against POLITICO;

(2) Failed to allege sufficient facts for violation of the California Invasion of Privacy Act ("CIPA"), Cal. Pen. Code § 638.51;

(3) Failed to allege sufficient facts for violation of Article 1, § 1 of the California Constitution;

(4) Failed to allege sufficient facts with particularity, under the heightened pleading requirements of FRCP Rule 9(b), for violation of the California Computer Data Access and Fraud Act ("CDAFA"), Cal. Penal Code § 502;

(5) Failed to allege sufficient facts for an unjust enrichment claim; and

(6) Failed to allege sufficient facts for violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq.

This motion is based on this Notice, the Memorandum of Points and Authorities attached hereto, Request for Judicial Notice, all papers previously filed in this matter, and on such other and further evidence which may be presented at the time of the hearing.

Dated:  March 14, 2025                          FISHER & PHILLIPS LLP


                                    By: /s/ Usama Kahf
                                    _____
                                    USAMA KAHF
                                    DANIELLE KAYS (*pro hac vice*)
                                    CATHERINE M. CONTINO (*pro hac vice*)
                                    Attorneys for Defendant
                                    POLITICO LLC

# TABLE OF CONTENTS

Page

I.    INTRODUCTION .................................................................................................... 1
II.   SUMMARY OF RELEVANT FACTS ................................................................... 1
      A.    Relevant Factual Background ..................................................................... 1
III.  LEGAL STANDARDS .......................................................................................... 2
      A.    Rule 12(b)(1) Standard ............................................................................... 2
      B.    Rule 12(b)(6) Standard ............................................................................... 3
      C.    Rule 9(b) Standard ...................................................................................... 3
IV.   LEGAL ARGUMENT ............................................................................................ 4
      A.    Plaintiffs lack Article III Standing. ............................................................ 4
      B.    Plaintiffs Fail to Allege a Violation of CIPA ............................................. 7
            1.    Plaintiffs' Allegations Fall Outside the Bounds of CIPA, and Thus,
                  Plaintiffs Do Not Have Statutory Standing. .................................... 7
            2.    Plaintiffs' Own Allegations Trounce Claims That Identifying Data was
                  Disclosed to Third Parties. ............................................................... 9
            3.    Plaintiffs Fail to Allege that the Third-Party Trackers are Pen Registers
                  Under California Law. .................................................................... 10
                  a.    CIPA's Pen Register Prohibition Does Not Protect IP Addresses..... 10
                  b.    Pen Registers Do Not Collect IP Addresses Under CIPA. ............... 14
            4.    POLITICO Consented to the Alleged collection of IP Addresses because
                  it is the "User" of this Technology. ............................................... 16
      C.    Plaintiffs Fail to Allege a Violation of the California Constitution. ......................... 17
      D.    Plaintiffs Fail to State a Violation of CDAFA. ........................................ 19
            1.    Plaintiffs Cannot Plead POLITICO Overcame Any Technical or Code-
                  Based Barriers to Access Their Own Website. ............................... 19
            2.    Plaintiffs Lack Damage Required for CDAFA Standing. ............................ 21
      E.    Plaintiffs Fail to State a Claim of Unjust Enrichment. ............................. 23
      F.    Plaintiffs Fail to State a Violation of the California UCL. ......................... 23
V.    CONCLUSION ..................................................................................................... 25

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Alamilla v. Hain Celestial Grp., Inc.*,
5     30 F.Supp.3d 943 (N.D. Cal. 2014) ...................................................................9

6

*In re Apple Inc. Device Performance Litig.*,
7     386 F. Supp. 3d 1155 (N.D. Cal. 2019) ...................................................3, 21

8

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...................................................................................3, 14

9

*Augustine v. Lenovo (United States), Inc.*,
10     2023 WL 4938050 (S.D. Cal., Aug. 2, 2023, No. 22-CV-2027-L-AHG) ....................15

11

*Aviles v. Liveramp, Inc.*,
12     No. 24STCV19869, Order (Cal. Super. Ct. L.A. Cty. Jan. 28, 2025) ....................10, 12

*Bell v. City of Kellogg*,
13     922 F.2d 1418 (9th Cir. 1991) ...................................................................7

14

*Brown v. Elec. Arts, Inc.*,
15     724 F.3d 1235 (9th Cir. 2013) ...................................................................3

16

*Capitol Recs. Inc. v. Thomas-Rasset*,
    No. CIV 06-1497, 2009 WL 1664468 (D. Minn. June 11, 2009)...................................12

17

*Casillas v. Transitions Optical, Inc.*,
18     No. 23STCV30742, Minute Order (Cal Super. Ct. L.A. Cty. Sept. 9, 2024) ...................11, 13, 17

19

*Chrisman v. City of Los Angeles*,
20     155 Cal. App. 4th 29 (2007) ...................................................................20

21

*City of Oakland v. Oakland Raiders*,
    83 Cal. App. 5th 458 (2022) ...................................................................23

22

*Columbia Pictures Indus. v. Bunnell*,
23     No. CV 06-1093FMCJCX, 2007 WL 2080419 (C.D. Cal. May 29, 2007)...........................12, 17

24

*Cottle v. Plaid Inc.*,
    536 F. Supp. 3d 461 (N.D. Cal. 2021) ...................................................21, 23

25

26

*Custom Packaging Supply, Inc. v. Phillips*,
    No. 215CV04584ODWAGR, 2015 WL 8334793 (C.D. Cal. Dec. 7, 2015)..............................19

27

*Davis v. HSBC Bank Nevada, N.A.*,
28     691 F.3d 1152 (2012)...........................................................................24

ii

*Digital Mktg. Advisors v. McCandless Grp., LLC,*
  No. 2:21-CV-06888-AB-GJS, 2022 WL 18216003 (C.D. Cal. Mar. 28, 2022) ............................9

*Doe I v. Google LLC,*
  No. 23-CV-02431-VC, 2024 WL 3490744 (N.D. Cal. July 22, 2024) ...................................22, 23

*Doe v. CVS Pharm., Inc.,*
  982 F.3d 1204 (9th Cir. 2020) .............................................................................................25

*Doe v. Meta Platforms, Inc.,*
  690 F. Supp. 3d 1064 (N.D. Cal. 2023) ...............................................................................22

*In re DoubleClick Inc. Priv. Litigation,*
  154 F. Supp. 2d 497 (S.D.N.Y. 2001) ..................................................................................16

*Durell v. Sharp Healthcare,*
  183 Cal. App. 4th 1350 (2010) .............................................................................................25

*Esparza v. Kohl's, Inc.,*
  723 F. Supp. 3d 934 (S.D. Cal. 2024) ..........................................................................6, 8, 17

*In re Facebook Internet Tracking Litig.,*
  140 F. Supp. 3d 922 (N.D. Cal. 2015) ...................................................................................4

*In re Facebook, Inc., Cons. Priv. User Profile Litig. ("Facebook User Profile Litig."),*
  402 F. Supp. 3d 767 (N.D. Cal. 2019) ......................................................................4, 22, 24

*Folgelstrom v. Lamps Plus, Inc.,*
  195 Cal. App. 4th 986 (2011) ...............................................................................................18

*Gabrielli v. Insider, Inc.,*
  No. 24-CV-01566 (ER), 2025 WL 522515 (S.D.N.Y. Feb. 18, 2025) ................................6, 7, 14

*Garcia v. Build.com, Inc.,*
  2023 WL 4535531 (S.D. Cal., July 13, 2023, No. 22-CV-01985-DMS-KSC) ..........................15

*Gonzales v. Uber Techs., Inc.,*
  305 F. Supp. 3d 1078 (N.D. Cal. 2018) ...............................................................................24

*In re Google Location Hist. Litig.,*
  428 F. Supp. 3d 185 (N.D. Cal. 2019) ..................................................................................17

*Greenley v. Kochava, Inc.,*
  684 F. Supp. 3d 1024 (S.D. Cal. 2023) .....................................................................13, 14, 23

*Gutierrez v. Converse, Inc.,*
  No. 2:23-cv-06547-RGK-MAR, 2023 WL 8939221 (C.D. Cal. Oct. 27, 2023) ..............20, 21, 23

*Hadley v. Kellogg Sales Co.*,
  243 F. Supp. 3d 1074 (N.D. Cal. 2017) ...................................................................25

*Hammerling v. Google LLC*,
  615 F. Supp. 3d 1069 (N.D. Cal. 2022) .............................................................18, 24

*Hazel v. Prudential Fin., Inc.*,
  No. 22-cv-07465-CRB, 2023 WL 3933073 (N.D. Cal. June 9, 2023) .....................22

*Heeger v. Facebook, Inc.*,
  509 F. Supp. 3d 1182 (N.D. Cal. 2020) ..........................................................6, 8, 18

*Heiting v. Taro Pharms. USA, Inc.*,
  709 F. Supp. 3d 1007 (C.D. Cal. 2023) ..................................................................19

*Heiting, v. FKA Dist. Co.*,
  No. 2:24-CV-07314, 2025 WL 736594 (C.D. Cal. Feb. 3, 2025) ..............................5

*Hill v. Nat'l Coll. Athletic Ass'n*,
  7 Cal. 4th 1 (1994) ............................................................................................17, 18

*Hill v. Roll Int'l Corp.*,
  195 Cal. App. 4th 1295 (2011) ...............................................................................23

*I.C. v. Zynga, Inc.*,
  600 F. Supp. 3d 1034 (N.D. Cal. 2022) .....................................................................5

*Ingrao v. AddShoppers, Inc.*,
  No. CV 24-1022, 2024 WL 4892514 (E.D. Pa. Nov. 25, 2024)..................................6

*In re iPhone App. Litig.*,
  844 F. Supp. 1040 (N.D. Cal. 2012) ........................................................................18

*In re iPhone Application Litig.*,
  No. 11-MD-02250-LHK, 2011 WL 4403963 (N.D. Cal. Sept. 20, 2011)...................19

*Katz-Lacabe v. Oracle Am., Inc.*,
  668 F. Supp. 3d 928 (N.D. Cal. 2023) .....................................................................24

*Kauffman v. Papa John's Int'l, Inc.*,
  2024 WL 171363 (S.D. Cal., Jan. 12, 2024, No. 22-CV-1492-L-MSB) .....................15

*Kwisket Corp. v. Superior Court*,
  51 Cal. 4th 310 (2011) ............................................................................................23

*LaCourt v. Specific Media, Inc.*,
  No. SACV 10-1256.....................................................................................................4

iv

*Lazy Y Ranch Ltd. v. Behrens*,
    546 F.3d 580 (9th Cir. 2008) ...................................................................................9

*Lexmark Int'l, Inc. v. Static C. Components, Inc.*,
    572 U.S. 118 (2014) ...............................................................................................7

*Licea v. Cinmar, LLC*,
    659 F.Supp.3d 1096 (C.D. Cal. 2023) ...................................................................15

*Licea v. Hickory Farms LLC*,
    No. 23STCV26148, 2024 WL 1698147 (Cal. Super. Ct. Mar. 13, 2024) ............ *passim*

*Licea v. Vitacost.com, Inc.*,
    2023 WL 5086893 (S.D. Cal., July 24, 2023, No. 22-CV-1854-RSH-WVG) ............15

*Lightoller v. Jetblue Airways Corp.*,
    No. 23-CV-00361-H-KSC, 2023 WL 3963823 (S.D. Cal. June 12, 2023) ..................7

*Limon v. Circle K Stores Inc.*,
    84 Cal. App. 5th 671 (2022) ..................................................................................7

*Lineberry v. Addshopper, Inc.*,
    No. 23-CV-01996-VC, 2025 WL 551864 (N.D. Cal. Feb. 19, 2025) .......................22

*Lozano v. AT&T Wireless Servs., Inc.*,
    504 F.3d 718 (9th Cir. 2007) ...............................................................................24

*Malibu Media, LLC v. Pontello*,
    No. 13-12197, 2013 WL 12180709 (E.D. Mich. Nov. 19, 2013)..............................12

*Maya v. Centex Corp.*,
    658 F.3d 1060 (9th Cir. 2011) ................................................................................2

*Melchior v. New Line Prod., Inc.*,
    106 Cal. App. 4th 779 (2003) ...............................................................................23

*Meta Platforms, Inc. v. BrandTotal Ltd.*,
    605 F. Supp. 3d 1218 (N.D. Cal. 2022) .................................................................19

*Mikulsky v. Noom, Inc.*,
    682 F. Supp. 3d 855 (S.D. Cal. 2023).....................................................................6

*Mirmalek v. Los Angeles Times Commc'ns LLC*,
    No. 24-CV-01797-CRB, 2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) ..................14

*Moody v. C2 Educ. Sys. Inc.*,
    No. 2:24-CV-04249-RGK-SK, 2024 WL 3561367 (C.D. Cal. July 25, 2024) ...........13

*Morgan v. AT&T Wireless Servs., Inc.*,
    177 Cal. App. 4th 1235 (2009) ..................................................................................25

*Muha v. Experian Info. Sols., Inc.*,
    106 Cal. App. 5th 199 (2024), *review denied* (Jan. 29, 2025) ........................................7

*Nat'l R. R. Passenger Corp. v. Nat'l Ass'n of R. R. Passengers*,
    414 U.S. 453 (1974) ..................................................................................................15

*Nowak v. Xapo, Inc.*,
    No. 5:20-CV-03643-BLF, 2020 WL 6822888 (N.D. Cal. Nov. 20, 2020) ..................21

*Opperman v. Path, Inc.*,
    87 F. Supp. 3d 1018 (N.D. Cal. 2014) ........................................................................4

*Oregon Clinic, PC v. Fireman's Fund Ins. Co.*,
    75 F.4th 1064 (9th Cir. 2023) ..................................................................................21

*Palacios v. Fandom, Inc.*,
    No. 24STCV11264, Minute Order (Cal Super. Ct. L.A. Cty. Sept. 24, 2024) ..............11

*Perkins v. LinkedIn Corp.*,
    53 F. Supp. 3d 1190 (N.D. Cal. 2014) ......................................................................21

*Pruchnicki v. Envision Healthcare Corp.*,
    845 F. App'x 613 (9th Cir. 2021) ..............................................................................23

*Rodriguez v. Plivo., Inc.*,
    No. 3:24-cv-01062, Minute Order (Cal. Super. Ct. L.A. Cty. Oct. 2, 2024) ..........8, 10, 11

*Roe v. Amgen, Inc.*,
    No. 2:23-cv-07448-MCS-SSC, 2024 WL 2873482 (C.D. Cal. June 5, 2024) ..............22

*Ruiz v. Gap, Inc.*,
    540 F. Supp. 2d 1121 (N.D. Cal.2008) *aff'd*, 380 Fed. Appx. 689 (9th Cir. 2010) ..........18

*Sanchez v. Cars.com*,
    No. 24STCV13201, Tentative Ruling (Cal. Super. Ct. Jan. 27, 2025) .................. *passim*

*Shah v. Fandom, Inc.*,
    2024 WL 4539577 (N.D. Cal. Oct. 21, 2024) ........................................................13, 14

*Smith v. Maryland*,
    442 U.S. 735 (1979) ..............................................................................................10, 14

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) ..................................................................................25

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016)..................................................................................2, 3, 4

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001) ..............................................................................10

*Svenson v. Google Inc.*,
   65 F. Supp. 3d 717 (N.D. Cal. 2014 ....................................................................24

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021)...........................................................................................2, 4, 7

*Trew v. Int'l Game Fish Ass'n, Inc.*,
   404 F. Supp. 2d 1173 (N.D. Cal. 2005) ...............................................................21

*United States v. Christie*,
   624 F.3d 558 (3d Cir. 2010)...............................................................................11

*United States v. Felton*,
   367 F. Supp. 3d 569 (W.D. La. 2019)...............................................................6, 8

*United States v. Forrester*,
   512 F.3d 500 (9th Cir. 2008) ................................................................ *passim*

*Cafasso ex rel. United States v. Gen. Dynamics C4 Sys., Inc.*,
   637 F.3d 1047 (9th Cir. 2011) ..............................................................................3

*United States v. Heckenkamp*,
   482 F.3d 1142 (9th Cir. 2007) ............................................................................17

*United States v. Hood*,
   920 F.3d 87 (1st Cir. 2019)................................................................................11

*United States v. Jean*,
   207 F. Supp. 3d 920 (W.D. Ark. 2016), *aff'd*, 891 F.3d 712 (8th Cir. 2018)...........6, 8

*United States v. Ritchie*,
   342 F.3d 903 (9th Cir. 2003) ................................................................................3

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ..............................................................................3

*Wesch v. Yodlee*,
   No. 20-cv-05991-SK, 2021 WL 1399291 (N.D. Cal. February 16, 2021) ..............21, 23

*Williams v. Facebook, Inc.*,
   384 F. Supp. 3d 1043 (N.D. Cal. 2018) ..............................................................23

TABLE OF CONTENTS

*Woods v. U.S. Bank N.A.*,
   831 F.3d 1159 (9th Cir. 2016) ........................................................................3

*Yoon v. Lululemon USA, Inc.*,
   549 F. Supp. 3d 1073 (C.D. Cal. 2021) ......................................................17

*Yunker v. Pandora Media, Inc.*,
   No. 11-CV-03113 JSW, 2013 WL 1282980 (N.D. Cal. Mar. 26, 2013) ....................4, 5

**Statutes**

18 U.S.C. § 2701(c) ........................................................................16

Cal. Bus & Prof. Code § 17200 ........................................................24

Cal. Bus & Prof. Code § 17204 ........................................................23

Cal. Penal Code § 502(c)(1) ............................................................19

Cal. Penal Code § 502(e)(1) ............................................................21

Cal. Pen. Code § 637.2 ....................................................................8

Cal. Penal Code § 638.51 ..........................................................*passim*

Cal. Pen. Code § 638.51(b)(5) ..........................................................16

Cal. Pen. Code § 638.52(d)(3) ..........................................................15

Cal. Penal Code §§ 638.50 through 638.55 ......................................14

**Other Authorities**

Fed. Rule Civ. Proc. § 9(b) ....................................................3, 20, 21

Fed. Rule Civ. Proc. § 12(b)(1) ..........................................................2

Fed. Rule Civ. Proc. § 12(b)(6) ..........................................................3

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs, on behalf of a putative class, assert that the alleged collection and disclosure of their IP addresses and unspecified personally identifying information ("PII") violates California privacy statutes and the California Constitution. However, Plaintiffs fail to state actionable causes of action. First, Plaintiffs cannot establish standing under Article III of the U.S. Constitution because they did not suffer a concrete injury. Plaintiffs have no reasonable expectation of privacy in their IP addresses, nor can they claim any party tracked or targeted their IP addresses. Because California law requires more than a mere statutory violation for standing, Plaintiffs' Complaint must be dismissed with prejudice. Second, Plaintiffs' California Invasion of Privacy Act ("CIPA") claim fails because sharing IP addresses with a company's web server while browsing a public website is not covered by the statute. Indeed, they cannot establish statutory standing to assert a CIPA claim, and their allegations contradict both legislative intent and purpose as well as the very facts (and screenshots) alleged in the Complaint. Third, Plaintiffs cannot sustain a cause of action for invasion of privacy under the California Constitution because (a) there is no legally protected privacy interest in IP addresses, (b) Plaintiffs have no reasonable expectation of privacy in these circumstances, and (c) POLITICO's actions are not an egregious breach of social norms. Fourth, Plaintiffs cannot establish that POLITICO circumvented technological or code-based barriers as required for the California Computer Data Access and Fraud Act ("CDAFA"), let alone plead sufficient facts with particularity under Rule 9(b)'s heightened pleading standard. Fifth, unjust enrichment is only an equitable remedy and cannot form the basis of a cause of action. Sixth, the California Unfair Competition Law ("UCL") claim fails because (a) Plaintiffs have not pleaded an economic injury, (b) they failed to plead a claim under any UCL prong, and (c) they do not allege inadequate remedies at law. For these reasons, Plaintiffs' Complaint should be dismissed with prejudice.

## II.    SUMMARY OF RELEVANT FACTS

### A.    Relevant Factual Background

POLITICO is a robust news and information service specializing in politics. Compl. ¶¶ 3, 5. POLITICO focuses on providing nonpartisan journalism to inform and engage its readers. *Id*. at ¶ 5. Plaintiffs are California residents who visited POLITICO's website. *Id*. at ¶¶ 14, 15, 18, 19, 22.

Plaintiffs allege that POLITICO "embedded and implemented" certain third-party technologies on its website, including (1) TripleLift Tracker, (2) CasaleMedia Tracker, and (3) Andx Tracker. *Id.* at ¶ 64.[1] Plaintiffs allege each of these technologies used third-party "cookie[s] to collect and share that user's browser and device data and addressing information, including IP addresses, every time the user interacts with the Politico website." *Id.* at ¶ 66. An "IP address is a unique identifier for a device," which, as Plaintiffs concede, "facilitates communication between devices, and allows a communication signal to be routed from one identified device to another identified device." Compl. ¶ 53-54; *see also United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008) (explaining that IP addresses are "provided to and used by Internet service providers for the specific purpose of directing the routing of information" from a "third party's servers"). Plaintiffs allege that the implementation of these technologies on the POLITICO website violates CIPA, CDAFA, UCL, and their right to privacy under the California Constitution (Compl. ¶ 9) and allege that POLITICO has been unjustly enriched as a result. *See id.* at ¶ 162. Plaintiffs do not—and cannot—allege they suffered monetary damages or loss based on the alleged installation of cookies on their browsers. *See gen.id.*

## III.    LEGAL STANDARDS

### A.    Rule 12(b)(1) Standard

Article III of the U.S. Constitution limits federal jurisdiction to "cases" and "controversies." U.S. Const. art. III, § 2; Fed. R. Civ. P. 12(b)(1); *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) ("lack of *Article III* standing requires dismissal for lack of subject matter jurisdiction") (italics in original)). "For there to be a case or controversy under Article III, the plaintiff must have a 'personal stake' in the case—in other words, standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citations omitted). Plaintiff bears the burden to demonstrate standing for each claim alleged and form of relief sought. *Id.* at 431; *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Plaintiff must demonstrate "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion*, 594 U.S. at 423 (citation omitted). In class actions, the named plaintiffs purporting

---

[1] For purposes of this motion only, POLITICO assumes the truth of the allegations asserted in the Complaint.

to represent a class "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong." *Id.* at 338 n.6 (quoting *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 40 n.20 (1976)).

## B.    Rule 12(b)(6) Standard

A court must dismiss a complaint for failure to state a claim if the complaint does not allege "sufficient facts" under a "cognizable legal theory." *See Woods v. U.S. Bank N.A.*, 831 F.3d 1159, 1162 (9th Cir. 2016). Sufficient factual matter only exists if the facts alleged state a claim for relief that is "plausible on its face." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When ruling on a motion to dismiss, courts presume the truth of all well-pleaded facts. *See Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1247 (9th Cir. 2013). However, no presumption of truth attaches to "threadbare recitals." *Iqbal*, 556 U.S. at 678. A court can consider certain materials, such as documents incorporated by referenced into a complaint, if "the document forms the basis of the plaintiff's claim[]" without converting the motion to dismiss into a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

## C.    Rule 9(b) Standard

Fraud carries a higher pleading standard which Plaintiffs fail to meet. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "To satisfy Rule 9(b), a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about [the purportedly fraudulent] statement, and why it is false." *Cafasso ex rel. United States v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (quotations and citation omitted). When a claim is "grounded in fraud and its allegations fail to satisfy the heightened pleading requirements of Rule 9(b)," a district court should dismiss the claim. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003). Because Plaintiffs' claims under the CDAFA sound in fraud, Plaintiffs must plead the elements of this claim with particularity. *In re Apple Inc. Device Performance Litig.*, 386 F. Supp. 3d 1155, 1164 (N.D. Cal. 2019).

1    IV.    **LEGAL ARGUMENT**

2          A.      <u>**Plaintiffs lack Article III Standing.**</u>

3          A plaintiff must establish standing, meaning she suffered an "injury in fact"—"an invasion of a

4    legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural

5    or hypothetical." *Lujan*, 504 U.S. at 560 (quotations omitted). A "concrete injury" is not abstract and

6    must "actually exist." *Spokeo*, 578 U.S. at 340. Plaintiffs must establish concrete injury even for a

7    statutory violation. *TransUnion*, 594 U.S. at 424-426. *Tangible* injuries arise from "physical harms and

8    monetary harms." *Id*. *Intangible* harm only is sufficiently concrete if the asserted harm has a "close

9    relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts."

10   *TransUnion*, 394 U.S. at 424.

11         Plaintiffs' claim that they incurred economic harms because "user data carries financial value,"

12   (Compl. ¶ 40) does not meet Article III standing. *In re Facebook, Inc., Cons. Priv. User Profile Litig.*

13   *("Facebook User Profile Litig.")*, 402 F. Supp. 3d 767, 784 (N.D. Cal. 2019) (declining to find standing

14   on basis of loss of value of personal information). Courts in this district consistently hold that an

15   economic loss theory based on the value of an individual's personal data is not a tangible harm sufficient

16   to establish standing, particularly when a plaintiff has not alleged that she intended to sell that

17   information or that someone else would have purchased it. *See LaCourt v. Specific Media, Inc.*, No.

18   SACV 10-1256 GW JCGX, 2011 WL 1661532, at *5 (C.D. Cal. Apr. 28, 2011) (holding plaintiffs lack

19   standing related to cookie installation because plaintiffs failed to allege they were foreclosed from selling

20   the data, ascribed value to it, or were "deprived" of economic value); *Yunker v. Pandora Media, Inc.*,

21   No. 11-CV-03113 JSW, 2013 WL 1282980, at *4 (N.D. Cal. Mar. 26, 2013) (same); *In re Facebook*

22   *Internet Tracking Litig.*, 140 F. Supp. 3d 922, 932 (N.D. Cal. 2015) (no standing because "existence of

23   a limited market for [plaintiffs'] browsing histories" does not establish injury); *Opperman v. Path, Inc.*,

24   87 F. Supp. 3d 1018, 1056 (N.D. Cal. 2014) (noting plaintiff must allege that he lost money, not just that

25   defendant obtained an economic benefit). In *Xu v. Reuters News & Media Inc.*, a case with similar facts

26   alleging a CIPA claim, the Southern District of New York found plaintiff failed to plead a concrete

27   injury, noting that although he alleged defendant collected his IP address and used his information for

28   marketing and targeted advertising, he did not allege that he "received any target advertising or was

otherwise affected, much less . . . harmed by any such advertising." No. 24 CIV. 2466 (PAE), 2025 WL 488501, at *3 (S.D.N.Y. Feb. 13, 2025). The court further noted that defendant's "increasing its revenue, by itself, does not harm [plaintiff]." *Id*. Here, Plaintiffs' sparsely alleged facts are similarly insufficient to establish a concrete injury and Plaintiffs failed to meet their burden to establish they were injured. *See id*. Because Plaintiffs did not attempt or intend to sell their personal information, their allegations of economic harm are insufficient to establish Article III standing.

While Plaintiffs conclude that POLITICO used tracking technology resulting in "additional processing, storage, and power usage," (Compl. ¶ 134), they lack facts supporting these claims, as required to establish standing. *See Yunker*, 2013 WL 1282980, at *5 (dismissed for lack of factual supporting allegations of "diminution in the performance of an electronic device"). Plaintiffs lack standing because they only allege "economic loss and damages," nothing more. Compl. ¶ 135.

Plaintiffs also lack standing because disclosure of IP addresses and other unspecified PII data is not an intangible harm, as it does not bear a "close relationship" to "traditional recognized harms." *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1049 (N.D. Cal. 2022) (citing *TransUnion*, 594 U.S. at 424). Plaintiffs only allegedly suffered an "invasion-of-privacy" harm. Compl. ¶¶ 38, 40. However, the vague, unidentified disclosure of their IP addresses and other PII does not bear a sufficiently close relationship to the harm posed by an invasion of privacy under California common law. Typical "recognized harms" for invasion of privacy must result in public disclosure of private facts and intrusion upon seclusion. *See Zynga*, 600 F. Supp. 3d at 1048. Public disclosure of private facts occurs when "[o]ne gives publicity to a matter concerning the private life of another" if the matter publicized "(1) would be highly offensive to a reasonable person, and (b) is not a legitimate concern to the public." Restatement (Second) of Torts § 652D. With respect to intrusion upon seclusion, "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." *Id*. § 652B. To have standing, the harm caused by both torts must be "highly offensive to a reasonable person." *See id*.

Merely alleging that Plaintiffs visited POLITICO's website is insufficient to establish an injury in fact. *Heiting, v. FKA Dist. Co.*, No. 2:24-CV-07314, 2025 WL 736594, at *3 (C.D. Cal. Feb. 3, 2025);

*Gabrielli v. Insider, Inc.*, No. 24-CV-01566 (ER), 2025 WL 522515, at *3 (S.D.N.Y. Feb. 18, 2025) (no standing when plaintiff only alleged she visited defendant's website as collection of IP addresses is not "highly offensive to a reasonable person."); *Xu*, 2025 WL 488501, at *5 (same). Numerous courts have held that an individual does not have a reasonable expectation of privacy in an IP address. *See*, *e.g.*, *Forrester*, 512 F.3d at 503; *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1189 (N.D. Cal. 2020); *Esparza v. Kohl's, Inc.*, 723 F. Supp. 3d 934, 946 (S.D. Cal. 2024). Plaintiffs broadly allege IP address geolocation data "can be used to identify, track, and target individuals in a very specific and precise way." Compl. ¶ 87. However, Plaintiffs do not allege POLITICO actually took these actions or used their IP addresses to identify them. Other than IP addresses, Plaintiffs cannot identify any PII allegedly obtained by third parties. Without such facts, Plaintiffs lack harm that is "highly offensive to a reasonable person" as both torts require.

Even if an IP address could specify an individual's location, a defendant is not liable for "[publishing] facts about the plaintiff's life that are matters of public record." Restatement (Second) of Torts § 652D, Comment b; *see also Ingrao v. AddShoppers, Inc.*, No. CV 24-1022, 2024 WL 4892514, at *7 (E.D. Pa. Nov. 25, 2024) (dismissing CIPA claim for lack of standing and explaining that "common law privacy torts necessarily require the information disclosed to be <u>private</u> and <u>personal</u> information") (underlining in original). Federal courts repeatedly hold an IP address does not belong to a person because it "is not associated with the user's personal property and cannot be transported to a new location simply by moving the user's personal computer to that new location." *United States v. Jean*, 207 F. Supp. 3d 920, 928-29 (W.D. Ark. 2016), *aff'd*, 891 F.3d 712 (8th Cir. 2018); *see also United States v. Felton*, 367 F. Supp. 3d 569, 574 (W.D. La. 2019) (an IP address is "not owned, nor possessed by [the individual]"). IP addresses, as opposed to sensitive personally identifiable information, can be "determined with relative ease" as it is voluntarily "exchanged back and forth by computers" and is not associated with a specific person. *Felton*, 367 F. Supp.3d at 575. An IP address amounts to "basic contact information," which "does not bear a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 864 (S.D. Cal. 2023). As such, Plaintiffs have not established that the harm they experienced is analogous to public disclosure of private facts or intrusion upon section.

Moreover, simply alleging a statutory CIPA violation does not satisfy the concrete harm requirement. *See Gabrielli*, 2025 WL 522515, at *3 (holding CIPA's pen register prohibition does not codify a substantive privacy right and cannot establish standing); *Xu*, 2025 WL 488501, at *3 (same). While some district courts have ruled a statutory CIPA violation alone establishes an injury-in-fact, such cases are inconsistent with the Supreme Court's holding that "Article III standing requires a concrete injury even in the context of a statutory violation." *TransUnion*, 594 U.S. at 426 (quoting *Spokeo*, 578 U.S. at 341); *see also Lightoller v. Jetblue Airways Corp.*, No. 23-CV-00361-H-KSC, 2023 WL 3963823, at *3 (S.D. Cal. June 12, 2023) ("a bare CIPA violation by itself is insufficient to demonstrate Article III injury in fact.").

Because Plaintiffs also do not have standing to sue in California state court, the proper action this court should take is to dismiss the case and not to remand.[2] Because Plaintiffs have failed to establish standing under both federal and state law, this Court must dismiss Plaintiffs' Complaint in its entirety.

**B.    Plaintiffs Fail to Allege a Violation of CIPA.**

**1.    Plaintiffs' Allegations Fall Outside the Bounds of CIPA, and Thus, Plaintiffs Do Not Have Statutory Standing.**

Plaintiffs' CIPA claim fails because an IP address falls outside the privacy rights CIPA was designed to protect, therefore, Plaintiffs have failed to establish statutory standing. "[A] statutory cause of action extends only to plaintiffs whose interests 'fall within the zone of interests protected by the law invoked.'" *Lexmark Int'l, Inc. v. Static C. Components, Inc*., 572 U.S. 118, 129 (2014) (citations omitted). Section 638.1 of CIPA only applies to telephone-tracking technology, not to internet communications. RJN, Ex. A [*Sanchez v. Cars.com*, No. 24STCV13201, at *5 Tentative Ruling, (Cal.

---

[2] In cases where "remand to state court would be futile," a district court may dismiss a case entirely. *Bell v. City of Kellogg*, 922 F.2d 1418, 1424-25 (9th Cir. 1991). Here, remand to state court would be futile, as Plaintiffs could not establish standing under California state law. California courts are not bound by the "case or controversy" requirement of Article III of the U.S. Constitution; rather, they are guided by "prudential considerations." *Limon v. Circle K Stores Inc.*, 84 Cal. App. 5th 671, 690, (2022). "One who invokes the judicial process does not have "standing" if he, or those whom he properly represents, does not have a real interest in the ultimate adjudication because the actor has neither suffered nor is about to suffer any injury of sufficient magnitude[.]" *Id*. California's "beneficial interest" test is the functional equivalent of the federal "injury in fact" test, which "requires a party to prove by a preponderance of the evidence that it has suffered 'an invasion of a legally protected interest that is "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Muha v. Experian Info. Sols., Inc.*, 106 Cal. App. 5th 199, 208 (2024), *review denied* (Jan. 29, 2025). As such, in California state court, a plaintiff must allege that she suffered a concrete injury to sue. *Id*. As discussed above, Plaintiffs have failed to allege that they suffered a concrete injury sufficient to establish standing because Plaintiffs have not been harmed.

1   Super. Ct. Jan. 27, 2025)]. A plaintiff can maintain a CIPA claim only if she was "*injured* by a violation

2   of the statute." Cal. Pen. Code § 637.2 (emphasis added). California state courts repeatedly held that

3   individuals do not have a legally protected interest their IP address. *See, e.g.*, RJN, Ex. A [*Cars.com*, at

4   6 (dismissing CIPA claim because plaintiff *voluntarily* provided IP address as part of a "basic function

5   of accessing the internet" and thus had no reasonable expectation of privacy of her computer's IP

6   address)]; RJN, Ex. B [*Rodriguez v. Plivo., Inc.*, No. 3:24-cv-01062, Minute Order at *3 (Cal. Super. Ct.

7   L.A. Cty. Oct. 2, 2024) (same)].

8          Federal courts similarly agree an IP address is not protected by CIPA and its disclosure does not

9   give rise to a viable claim under CIPA. *See, e.g., Forrester*, 512 F.3d at 503 (no expectation of privacy

10  in IP addresses when visiting websites because plaintiffs "should know that this information is provided

11  to and used by Internet service providers for the specific purpose of directing the routing of

12  information."); *Heeger*, 509 F. Supp. 3d at 1189) ("no legally protected privacy interest in IP

13  addresses."); *Esparza*, 723 F. Supp. 3d at 946 (IP address, personal details, and browsing history are

14  "insufficient to demonstrate that Defendant's conduct constituted a serious invasion of a protected

15  privacy interest."). Indeed, an "IP address can be determined with relative ease because it is always

16  attached, like a 'return address,' to every 'envelope' of information exchanged back and forth by

17  computers that are actively communicating with each other over the internet." *Jean*, 207 F. Supp. 3d at

18  928–29. Plaintiffs do not have a privacy interest in a data point that does not belong to them and is not

19  associated with a particular individual. *See id.* at 932 (IP address "is not associated with the user's

20  personal property"); *see also Felton*, 367 F. Supp. 3d at 574 (W.D. La. 2019) (same).

21         Here, the only data allegedly transmitted by POLITICO to third parties is "personally identifying

22  and addressing information, including their IP addresses" Compl. ¶ 155. Plaintiffs have not asserted

23  collection or dissemination of any other type of PII. Plaintiffs—and every internet user—voluntarily

24  provides their IP address as a basic function of browsing websites, including POLITICO's website. Thus,

25  because Plaintiffs do not have a legally protected privacy interest in their IP address, they do not have

26  statutory standing to pursue a CIPA claim, and it must be dismissed.

27

28

### 2.     Plaintiffs' Own Allegations Trounce Claims That Identifying Data was Disclosed to Third Parties.

The screenshots in the Complaint at Figures 1, 2, and 3 disprove Plaintiffs' assertions that the HTTP requests POLITICO allegedly sent to third parties contained Plaintiffs' IP addresses. *See* Compl. ¶¶ 71, 75, and 77. A court "need not accept as true allegations contradicting documents that are referenced in the complaint" when adjudicating a motion to dismiss." *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008); *see also Alamilla v. Hain Celestial Grp., Inc.*, 30 F.Supp.3d 943, 944 (N.D. Cal. 2014) (dismissing a complaint where "[t]he articles the plaintiff cite . . . contradict the allegation upon which their entire complaint hinges.") and *Digital Mktg. Advisors v. McCandless Grp., LLC*, No. 2:21-CV-06888-AB-GJS, 2022 WL 18216003, at *3 (C.D. Cal. Mar. 28, 2022) (refusing to credit plaintiff's bare allegations of second amended complaint when they were contradicted by a document incorporated by said complaint).

In describing Figure 1, Plaintiffs allege that "[w]hen a user visits the Politico website, the TripleLift Tracker installs and stores its website cookie on the user's browser. This third-party tracker cookie is used to collect and share that user's browser and device data, IP address, and other identifying information with third-party TripleLift." Compl. ¶ 71. Plaintiffs describe Figures 2 and 3 in the same manner. *Id*. at ¶¶ 75 and 77. Plaintiffs allege that IP addresses are transmitted in the HTTP request to POLITICO's server, which is then shared with TripleLift, Casale Media, and Adnx. *See id*. at ¶ 65. The left side of Figures 1, 2, and 3 (labeled by Plaintiffs as the "Request") reflects the user's request to POLITICO's website. The right side of the figure (labeled by Plaintiffs as the "Response") reflects POLITICO's response. However, Figures 1, 2, and 3 show only that the third party ***responded*** to POLITICO's request with an IP address (as the highlighted IP address is displayed on the response side); it does not show that POLITICO ***transmitted*** the IP address to the third party (as the IP address is <u>not</u> displayed on the request side). *Id*. at ¶¶ 71, 75, and 77. Only the data in the request is what Plaintiffs allege POLITICO had sent to the third parties, not the data in the response. *See id*. This is not a matter for interpretation requiring discovery; the Court can conclude from the screenshots themselves that the "Request" does not contain any IP address, and therefore, no IP address was disclosed to third parties.

This is a fatal flaw in Plaintiffs' CIPA allegations. By including these screenshots, they admit no

identifying information was in the "Request" that POLITICO's website sent to third parties. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988-989 (9th Cir. 2001) ("A plaintiff can plead himself out of court by alleging facts which show that he has no claim, even though he was not required to allege those facts.") (internal quotation marks omitted). Indeed, a California court recently granted defendant's motion to dismiss on this same basis because plaintiff had only alleged that the website "collects the IP addresses and other information of visitors incoming to the website – the equivalent of if Defendant had used a trap and trace device on its *own* website, rather than on Plaintiff's device," and had failed to allege that third party or other software collected outgoing information from visitors' devices or browsers. RJN, Ex. C. [*Aviles v. Liveramp, Inc.*, No. 24STCV19869, Order at *4 (Cal. Super. Ct. L.A. Cty. Jan. 28, 2025)]. Plaintiffs cannot amend their Complaint as this admission is documented in the very website activity that forms the basis of their complaint. Thus, Plaintiffs' CIPA claim must be dismissed with prejudice.

### 3. Plaintiffs Fail to Allege that the Third-Party Trackers are Pen Registers Under California Law.

#### a. CIPA's Pen Register Prohibition Does Not Protect IP Addresses.

Whether a device is a pen register under CIPA depends on the type of information collected, rather than the device or process. RJN, Ex. B [*Plivo, Inc.*, No. 24STCV08972 at *3]. Here, Plaintiffs cannot establish that the alleged third-party trackers constitute an unlawful pen register.

IP addresses are not the type of information CIPA protects because an IP address reflects the *source* of an outgoing communication, as opposed to the *destination* of an outgoing communication, which is what a pen register collects. *See Smith v. Maryland*, 442 U.S. 735, 745 (1979) (explaining a pen register is "a mechanical device that records the numbers dialed on a telephone by monitoring the electrical impulses caused when the dial on the telephone is released."); *Forrester*, 512 F.3d at 509 (a pen register is a "device that records numbers dialed from a phone line"). California state courts have repeatedly rejected expanding the definition of "pen registers" beyond telecommunication technology to include third party trackers collecting IP addresses because an IP address is not the same as the "unique fingerprinting" covered by CIPA, which "thereby provid[es] unique location and other information normally within the domain of law enforcement officers with a warrant." *Licea v. Hickory Farms LLC*,

No. 23STCV26148, 2024 WL 1698147, *4 (Cal. Super. Ct. Mar. 13, 2024) (sustaining demurrer because tracking IP addresses does not constitute use of a pen register when software is embedded into mobile phone); *see also* RJN, Ex. D [*Casillas v. Transitions Optical, Inc.*, No. 23STCV30742, Minute Order at 1, 4 (Cal Super. Ct. L.A. Cty. Sept. 9, 2024) (sustaining demurrer on CIPA pen register claim alleging website collected and disclosed IP address, noting that an IP address is conveyed to a website anytime a person visits a website)].

Plaintiffs cannot plausibly plead that visiting POLITICO's website resulted in use of an unlawful pen register. Plaintiffs admit that sharing an IP address and browser data occurs any time a user accesses any website. Compl. ¶ 54 (explaining that an IP address "facilitates communication between devices and allows a communication signal to be routed from one identified device to another identified device"); *see also* RJN, Ex. B [*Plivo, Inc.*, No. 24STCV08972 at *3 ("Plaintiff's computer could not have accessed Defendant's website unless it provided her IP address.")]. "What makes the internet possible—devices communicating with each other—is the communication of the device's protocol." RJN, Ex. D [*Casillas*, No. 23STCV30742 at *5]. POLITICO's website simply responds to Plaintiffs' requests to browse its website and facilitates that activity, which is a fundamental internet function. *United States v. Christie*, 624 F.3d 558, 563 (3d Cir. 2010) (IP addresses are "conveyed to websites that an internet user visits, and administrators of websites [see] the IP addresses of visitors to their sites. However, site administrators do not possess information linking a given IP address to a particular person."). This basic internet functionality does not amount to a pen register—*i.e.,* POLITICO's website does not "dial" out to Plaintiffs' computers using their IP addresses. If Plaintiffs never visited POLITICO's website, POLITICO would not have received their IP addresses. *United States v. Hood*, 920 F.3d 87, 92 (1st Cir. 2019) ("[A]n internet user generates the IP address data . . . only by making the affirmative decision to access a website or application."). Further, even if the statute did apply to IP addresses, the statute would apply to the collection of website IP addresses "accessed by a [user's] computer – but not the computer's own IP address." RJN, Ex. E [*Palacios v. Fandom, Inc.*, No. 24STCV11264, Minute Order at *4-5 (Cal Super. Ct. L.A. Cty. Sept. 24, 2024) (finding that the defendant was not operating a pen register because "it does not collect the destination information of communications from a Plaintiff's computer.")].

Strong public policy concerns prevent expanding the definition of a pen register to include

collection of IP addresses. Again, a user automatically communicates an IP address to every website they visit as that is necessary for normal website use. *Forrester*, 512 F.3d at 510. Plaintiffs cannot assert a § 638.51 claim for sharing their IP addresses during website viewing. *Hickory Farms*, 2024 WL 1698147, *6 (declining to expand § 638.51 based on concerns that such an expansion would render "every single entity voluntarily visited by a potential plaintiff, thereby providing an IP address for purposes of connecting the website, as a violator[]" of CIPA). Indeed, such "a broad based interpretation would potentially disrupt a large swath of internet commerce without further refinement as [to] the precise basis of liability[.]" *Id.*

Because a website visitor must share her IP address to access a website, California courts interpreting CIPA have held that § 638.51(a) does not apply to, nor can it criminalize, internet communications. *See* RJN, Ex. A [*Cars.com*, No. 24STCV13201, at *5 (explaining the legislative history suggests that "pen register" devices refer only to telephonic devices or processes, "not internet communications such as websites.")]; *see also Hickory Farms*, 2024 WL 1698147, at *4 (explaining that "public policy strongly disputes Plaintiff's potential interpretation of privacy laws as one rendering every single entity voluntarily visited by a potential plaintiff"); RJN, Ex. C [*Aviles*, No. 24STCV19869, at *4 ("Without alleging that Defendant installed software on Plaintiff's device or browser that collected incoming contact information to Plaintiff's device, Plaintiff has not alleged anything above and beyond how the internet normally works.")].

Key technological differences exist between telecommunication devices and internet technology, which is precisely why federal courts interpreting the analogous federal pen register statute decline to apply the statute to the exchange of IP addresses. *See Columbia Pictures Indus. v. Bunnell*, No. CV 06-1093FMCJCX, 2007 WL 2080419, at *11 (C.D. Cal. May 29, 2007); *see also Capitol Recs. Inc. v. Thomas-Rasset*, No. CIV 06-1497, 2009 WL 1664468, at *3 (D. Minn. June 11, 2009) ("the Pen Register Act cannot be intended to prevent individuals who receive electronic communications from recording the IP information sent to them. ***If it did apply, then the Internet could not function because standard computer operations require recording IP addresses so parties can communicate with one another over the Internet.***") (emphasis added); *Malibu Media, LLC v. Pontello*, No. 13-12197, 2013 WL 12180709, at *4 (E.D. Mich. Nov. 19, 2013) (Pen Register Act cannot prevent recording IP address

information because it was sent voluntarily).

Federal decisions allowing CIPA claims under § 638.51 to proceed past a motion to dismiss are factually distinguishable and inapplicable here. For example, in *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024 (S.D. Cal. 2023), the defendant was a data broker that provided software to application developers "to assist them in developing their apps"; in return, those third-party application developers allowed the defendant to allegedly collect application users' data, which defendant then packaged and sold to its clients for advertising purposes. *Greenley*, 684 F. Supp. 3d at 1035. This data included geolocation and payment methods, among other things. *Id.* The *Greenley* court reviewed the definition of "device or process" finding it "vague and inclusive" and read it broadly without referring to legislative intent. *Id.* at 1050. In contrast, POLITICO operates a website, which receives Plaintiffs' IP addresses when Plaintiffs visit its website as part of a normal function of website browsing—much different information than at issue in *Greenley*. As such, *Greenley* and cases relying on it as authority are inapposite and inapplicable to the facts here. *See id.*; *see also* RJN, Ex. A [*Cars.com*, No. 24STCV13201, at *5 (finding "pen register" does not apply to internet communications, "such as websites")]; RJN, Ex. D [*Casillas*, No. 23STCV30742, at *3 (explaining that the "legislative purpose of the Pen Register statute was to authorize law enforcement to seek orders for telephone surveillance. Section 638.50 does not address the privacy rights of Internet users.")] and *Hickory Farms,* 2024 WL 1698147, *5 (CIPA "[l]egislative updates and commentary continue to explicitly cover cordless and cellular phone technology without reference to internet based communications."). As such, the *Greenley* decision is inapplicable in this case because it involved distinct disclosures completely different than those at issue in this case and did not take into account the applicable legislative history of CIPA.[3]

Similarly, in *Shah v. Fandom, Inc.*, 2024 WL 4539577 (N.D. Cal. Oct. 21, 2024), the court relied

---

[3] Another case that relied on *Greenley* is *Moody v. C2 Educ. Sys. Inc.*, No. 2:24-CV-04249-RGK-SK, 2024 WL 3561367 (C.D. Cal. July 25, 2024). That case is similarly distinguishable on a factual basis. There, plaintiff alleged that defendant installed TikTok (a social media platform) software on its website, which enabled the website to "collect[] data from anonymous visitors and match[] that data with TikTok's database to uncover the visitors' identities. *Moody*, 2024 WL 3561367 at *1. This is achieved "using device and browser information, geographic information, referral tracking, and URL tracking." Further, plaintiff alleged that the software captured a user's "name, date of birth, and address" when users inputted data into a form on its website when it enabled TikTok's "AutoAdvanced Matching" feature. *Id.* The court found that plaintiff's allegations were sufficient to state a claim that defendant operated an illegal pen register. *Id.* at *2. The *Moody* decision is inapplicable to this case, as there are no allegations that the technologies used by POLITICO are designed to uncover visitors' identities, nor that they capture data such as a person's name, date of birth, and address.

on *Greenley* in holding that plaintiffs stated a claim under § 638.51. *Shah*, 2024 WL 4539577 at *2. In *Shah*, plaintiffs alleged that third-party trackers on defendant's website amounted to an illegal pen register because IP address information was sent to third parties without consent. *Id*. at *1. Relying on *Greenley*, the court in *Shah* found that the trackers operate as a "process" under the statute by broadly stating that the CIPA's purpose is to "protect privacy interests." *Id*. at *4. But the court did not analyze the lack of a privacy interest in IP addresses since an IP address is necessary for internet functionality. *See Gabrielli*, 2025 WL 522515, at *8 (noting that unlike other sections of CIPA, § 638.51 does not codify a substantive privacy right; rather, it requires defendant to obtain a court order before using statutory mechanisms to obtain information provided voluntarily). Thus, both *Greenley* and *Shah* are inapposite to the matter at hand.[4]

### b.  Pen Registers Do Not Collect IP Addresses Under CIPA.

Although Plaintiffs repeatedly refer to the third party "trackers" as pen registers, Plaintiffs fail to allege facts that demonstrate the "trackers" are "pen registers." "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Plaintiffs cannot allege such facts because pen registers do not collect IP addresses, and the plain language and legislative history of § 638.51 demonstrate that the statute was intended only to apply to telephone-tracking technology. RJN, Ex. A [*Cars.com*, No. 24STCV13201, at *5].

In 2015, Assembly Bill 929, which would become CIPA §§ 638.50 through 638.55, was enacted to create a comprehensive framework to govern how law enforcement could obtain and use a pen register or trap and trace device. RJN, Ex. F [(Assembly Bill No. 929, 2015-2016 Regular Session) ("The bill would clarify that any location information obtained by a pen register or a track [sic] and trace device is limited to the information that can be determined *from the telephone number*.") (emphasis added)]. There

---

[4] Similarly, in *Mirmalek v. Los Angeles Times Commc'ns LLC*, No. 24-CV-01797-CRB, 2024 WL 5102709, at *4 (N.D. Cal. Dec. 12, 2024), a recent case relying on both *Greenley* and *Shah*, the court mischaracterized how a pen register works in deciding that plaintiff had stated a claim that third party trackers present on defendant's website were pen registers. *Mirmalek*, 2024 WL 5102709 at * 4. The court found that the plaintiff adequately alleged that the third-party trackers record addressing information when plaintiff's browser communicated to defendant's website, resulting in the alleged recording of plaintiff's IP address by third party trackers. *Id*. However, the process described by the court is not how a pen register operates. As discussed, a pen register collects the ***destination*** of an outgoing communication; as opposed to an IP address, which reflects the source of an outgoing communication. *See Smith*, 442 U.S. at 745.

is no reference to any other type of identifying information besides telephone numbers. *See id.*; *Nat'l R. R. Passenger Corp. v. Nat'l Ass'n of R. R. Passengers*, 414 U.S. 453, 458 (1974) (statutory interpretation must "yield to" and "must be consistent with the evident legislative intent and, of course, with the effectuation of the purposes intended to be served by the [statute]"). Additionally, the statute was amended in 2022, but the California Legislature declined to expand the scope of the definition of a pen register or trap and trace device. RJN, Ex. G [(Assembly Bill No. 1242, 2021-2022 Regular Session)].

The California Legislature specifically limited § 638.52 (enacted with Section 638.51) by authorizing use of pen registers only where law enforcement could identify the person associated with "the telephone line to which the pen register . . . is to be attached." § 638.52(d)(1), (3). Further, California state and federal courts interpreting § 638.52 have found it significant that internet-based communications are not referenced in legislative updates and commentary, despite discussing cordless and cellular phone technology, and declined to expand the definition of the statute. RJN, Ex. A [*Cars.com*, No. 24STCV13201, at *4-5]; *Hickory Farms*, 2024 WL 1698147, at *5 (citing *Smith v. LoanMe, Inc.*, 11 Cal. 5th 183, 191 (2021)); *see also Licea v. Cinmar, LLC*, 659 F.Supp.3d 1096, 1104 (C.D. Cal. 2023); *Licea v. Vitacost.com, Inc.*, 2023 WL 5086893, at *4-5 (S.D. Cal., July 24, 2023, No. 22-CV-1854-RSH-WVG); *Augustine v. Lenovo (United States), Inc.*, 2023 WL 4938050, at *4 (S.D. Cal., Aug. 2, 2023, No. 22-CV-2027-L-AHG); *Garcia v. Build.com, Inc.*, 2023 WL 4535531, at *6 (S.D. Cal., July 13, 2023, No. 22-CV-01985-DMS-KSC); *Kauffman v. Papa John's Int'l, Inc.*, 2024 WL 171363, at *9 (S.D. Cal., Jan. 12, 2024, No. 22-CV-1492-L-MSB).

Plaintiffs allege the three trackers constitute "pen registers" because POLITICO "installed" each tracker on Plaintiffs' browsers and "caused the trackers to capture and record Plaintiffs' . . . IP addresses and/or browser and device data." Compl. ¶ 145. This demonstrates a fundamental misunderstanding of how a pen register works, and why Plaintiffs are wrong that the trackers are pen registers under the statutory definition. A pen register device is attached to a phone line associated with a phone number already known to the user (usually, law enforcement) of the pen register in order to monitor phone numbers that the phone line dials or receives (which were previously unknown). There is no need to collect information about the monitoring device because it must be known before a pen register is installed. *See, e.g.*, Cal. Pen. Code § 638.52(d)(3) ("[t]he number and, if known, physical location of the

telephone line to which the pen register or trap and trace device is to be attached" before court order will be issued). To adopt Plaintiffs' expansive interpretation would subject all websites using tracker cookies (which are ubiquitous) to liability under CIPA, something the California legislature clearly never intended. There is nothing in CIPA's legislative history, case law, or statutory framework that supports the expansion of § 638.51 to include technology that collects IP address.

### 4. POLITICO Consented to the Alleged collection of IP Addresses because it is the "User" of this Technology.

Plaintiffs also fail to state a claim under CIPA because POLITICO is a "user" of the alleged technologies at issue and can therefore consent to the collection of IP addresses by virtue of its relationship with TripleLift, CasaleMedia, and Adnx. The statute provides that "[a] provider of electronic or wire communication service may use a pen register or a trap and trace device . . . [i]f the consent of the user of that service has been obtained." Cal. Pen. Code § 638.51(b)(5). Here, the alleged third-party trackers can be considered "electronic or wire communications services" because Plaintiffs themselves allege that they are designed for use in "marketing campaigns" and "to target specific user groups." Compl. ¶¶ 50, 52. POLITICO's consent to collecting IP addresses as a "user" of this technology referenced in the Complaint is sufficient to qualify POLITICO for an exemption under CIPA.[5]

Therefore, POLITICO must be deemed a "user" of an "electronic or wire communication service" under CIPA and consented to the implementation of the technologies referenced in the Complaint. As such, Plaintiffs' CIPA claim fails and should be dismissed.[6]

---

[5] Similar to CIPA, the federal Electric Communications Privacy Act ("ECPA") "does not apply with respect to conduct authorized . . . by a user of that [wire or electronic communications] service." 18 U.S.C. § 2701(c). The Southern District of New York, interpreting this analogous exemption under the ECPA, was asked to decide whether defendant's advertising technology violated the ECPA when it placed cookies on website visitors' browsers when visitors went to DoubleClick-affiliated websites and collected information about those visitors through those cookies. *In re DoubleClick Inc. Priv. Litigation*, 154 F. Supp. 2d 497, 502-03 (S.D.N.Y. 2001). The court dismissed the ECPA claims because the statutory exemption applied, as the affiliate websites were "users" of the "electronic communication service"—the internet—and therefore consented to the collection of website visitors' information through their "technological and commercial relationships" with DoubleClick. *Id.* at 510. Here, the facts are substantially similar, if not identical, to those in *DoubleClick*, and thus this court should similarly dismiss Plaintiffs' CIPA claims. POLITICO uses the internet through the hosting of its website, and Plaintiffs allege that it uses third-party technologies for advertising and other purposes. Compl. ¶¶ 30-31.

[6] POLITICO disputes that § 638.51 applies to the collection of IP addresses. However, even if it did apply, POLITICO falls under an important exception: A "provider of electronic or wire communication service may use a pen register or a trap and trace device . . . to operate, maintain, and test a wire or electronic communication service." § 638.51(b)(1). POLITICO fits into this definition because its website is an electronic communication service which provides "distributed news, analysis, and opinion online" and "strives to be the dominant source for news on politics and policy in power centers across every continent where access to reliable information,

### C.     <u>Plaintiffs Fail to Allege a Violation of the California Constitution.</u>

Plaintiffs' invasion of privacy claim under the California Constitution also is deficient. To plead a claim for invasion of privacy under the Article 1, Section 1 of the California Constitution, a plaintiff must allege facts demonstrating the following: "(1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by [a] defendant constituting a serious invasion of privacy." *Hill v. Nat'l Coll. Athletic Ass'n*, 7 Cal. 4th 1 (1994). "[I]f the allegations show no reasonable expectation of privacy or an insubstantial impact on privacy interests, the question of invasion may be adjudicated as a matter of law." *Low*, 900 F. Supp. 2d at 1025 (quotations omitted).

First, informational privacy is the only privacy interest Plaintiffs could even potentially assert here.[7] But again, Plaintiffs have no legally protected privacy interest in their IP address or browser or device information, especially during ordinary website browsing. *See Esparza*, 723 F. Supp. 3d at 946 (dismissing invasion of privacy claim because personal details, browsing history, and IP address are insufficient to establish a "serious invasion of a protected privacy interest."); *In re Google Location Hist. Litig.*, 428 F. Supp. 3d at 198 (finding no privacy interest where Google "only tracked and collected data during use of Google services"); *Yoon*, 549 F. Supp. at 1086 (dismissing invasion of privacy claim under California Constitution where plaintiff did not plead facts that defendant tracked her data outside of defendant's website). Thus, Plaintiffs fail to establish a legally protected privacy interest.

Second, Plaintiffs failed to establish that they had a reasonable expectation of privacy in their IP address or browser and device data. As noted above, an IP address is automatically communicated to a website when a user visits that website and is required for proper user interaction. *United States v.*

---

[7] nonpartisan journalism and real-time tools create, inform and engage a global citizenry." Compl. ¶¶ 2-5. In cases analyzing this same exception under the Federal Wiretap Act, courts find website operators exempt from "prohibitions on use of pen registers and trap and trace devices" where defendants capture incoming IP addresses in order to operate their website. *Bunnell*, 2007 WL 2080419, at *11 (holding that collection of IP addresses is exempt from liability for operating a pen register or trap and trace device under similar exception for providers of "electronic communication services relating to the operation and maintenance of such service" under the Federal Wiretap Act); *see also Hickory Farms*, 2024 WL 1698147, *6, and RJN, Ex. D [*Casillas*, No. 23STCV30742 at *6 (noting cases exempting website operators from federal pen register statute )].

[7] The California Constitution recognizes two classes of privacy interests: (1) informational privacy, defined as "interests in precluding the dissemination or misuse of sensitive and confidential information"; and (2) autonomy privacy, defined as "interests in making intimate personal decisions or conducting personal activities without observation, intrusion, or interference." *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1086 (C.D. Cal. 2021). "Autonomy privacy protects ***bodily*** autonomy; courts have not extended the concept to ***data*** autonomy." *Id.* (citing *In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 198 (N.D. Cal. 2019) (emphasis in original).

*Heckenkamp*, 482 F.3d 1142, 1144 n. 1 (9th Cir. 2007) ("An IP address is a standard way of identifying a computer that is connected to the Internet."). Here, Plaintiffs allege that they had a reasonable expectation of privacy because the alleged trackers "collected and transmitted to undisclosed third parties Plaintiffs' and Class members' personally identifying and addressing information, including their IP addresses, which contain geolocation data." Compl. ¶ 155. Similar claims asserted in support of a reasonable expectation of privacy have been rejected where a plaintiff alleges only "generalized location" data was collection. *Heeger*, 509 F. Supp. 3d at 1193 ("city-level" tracking data insufficient to support a claim for invasion of privacy). Thus, Plaintiffs have no reasonable expectation of privacy related to their IP address or browser and device data.

Third, Plaintiffs were not subjected to a serious invasion of privacy. The California Constitution sets "a high bar" for an invasion of privacy claim. *Low*, 900 F. Supp. at 1025. "Actionable invasions of privacy must be sufficiently serious in their nature, scope, and actual or potential impact to constitute an *egregious breach* of the social norms underlying the privacy right." *Hill*, 7 Cal. 4th at 26 (emphasis added). For example, disclosure of highly sensitive personal information, such as Social Security numbers, is insufficient to establish an invasion of privacy claim. *See*, *e.g.*, *Ruiz v. Gap, Inc.,* 540 F. Supp. 2d 1121, 1127-28 (N.D. Cal.2008) *aff'd,* 380 Fed. Appx. 689 (9th Cir. 2010) (holding that theft of laptop containing Social Security numbers did not constitute egregious breach of privacy); *Folgelstrom v. Lamps Plus, Inc.,* 195 Cal. App. 4th 986, 992 (2011) (obtaining address without consent and using it to send coupons and advertisements not "egregious breach of social normal" but is "routine commercial behavior"). To that end, courts in this District have held that user browser data disclosed to third parties does not amount to a serious invasion of a protected privacy interest and is not a "highly offensive disclosure or information" even when plaintiffs allege that third parties could de-anonymize the data. *See Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1090 (N.D. Cal. 2022) ("data collection and disclosure to third parties that is routine commercial behavior is not a highly offensive intrusion of privacy."). Plaintiffs thus fail to establish the third prong under *Hill* as they fail to allege facts demonstrating that the data collection at issue is an "egregious breach of social norms."

Plaintiffs cannot cure these defects in their Complaint by amendment because POLITICO's alleged collection of this information does not amount to an "egregious breach of social norms." *See In*

*re iPhone App. Litig.*, 844 F. Supp. 1040, 1078 (N.D. Cal. 2012) (refusing to grant leave to amend because disclosure of "unique device identifier number, personal data, and geolocation information" is not egregious breach of social norms, even if transmitted without consent). For these reasons, Plaintiffs' invasion of privacy claim under the California Constitution must be dismissed without leave to amend.

### D.    Plaintiffs Fail to State a Violation of CDAFA.

#### 1.    Plaintiffs Cannot Plead POLITICO Overcame Any Technical or Code-Based Barriers to Access Their Own Website.

The CDAFA is an anti-hacking statute targeting illegal activity and computer crime by prohibiting "the unauthorized use of any computer system for improper or illegitimate purpose." *Custom Packaging Supply, Inc. v. Phillips*, No. 215CV04584ODWAGR, 2015 WL 8334793, at *3 (C.D. Cal. Dec. 7, 2015) (citing *In re Facebook Priv. Litig.*, 791 F. Supp. 2d 705, 715 (N.D. Cal. 2011), *aff'd*, 572 F. Appx. 494 (9th Cir. 2014)); *see also Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1020 (C.D. Cal. 2023) (explaining that CDAFA was initially enacted to combat computer crime and hacking). The CDAFA expressly criminalizes specific conduct, including conduct intended to "devise or execute any scheme or artifice to **defraud**, deceive or extort." Cal. Penal Code § 502(c)(1) (emphasis added).

Under each provision of the CDAFA claim, Plaintiffs must allege that POLITICO acted "without permission." *See* § 502(c)(1)); § 502(c)(2); § 502(c)(4); § 502(c)(6) and (7). Courts hold "without permission" means accessing a website in a way that "overcomes technical or code-based barriers." *In re iPhone Application Litig.*, No. 11-MD-02250-LHK, 2011 WL 4403963, at *12 (N.D. Cal. Sept. 20, 2011) (quoting *Facebook, Inc. v. Power Ventures, Inc.*, No. C 08-05780 JW, 2010 WL 3291750, at *11 (N.D. Cal. July 20, 2010)). Therefore, to assert a CDAFA claim, plaintiffs must allege that a defendant "in some way caused output from the function of a computer, without the owner's permission." *Heiting*, 709 F. Supp. 3d at 1020. Put another way, to assert at CDAFA claim and establish that a defendant acted without permission, Plaintiffs must allege that when a request is sent back to the defendant from Plaintiffs' browser, the defendant overcame some technical barriers to access its website. Thus, "where a website is made available to the public without any authentication requirement in at least the first instance, the concept of 'without authorization' does not apply[]." *Meta Platforms, Inc. v. BrandTotal Ltd.*, 605 F. Supp. 3d 1218, 1262 (N.D. Cal. 2022) (internal quotations removed). Indeed, "the mere fact

1    that a plaintiff does not consent to an action does not create liability under the CDAFA." *Gutierrez v.*

2    *Converse, Inc.*, No. 2:23-cv-06547-RGK-MAR, 2023 WL 8939221, at *4 (C.D. Cal. Oct. 27, 2023).

3    Here, Plaintiffs fail to allege any facts, let alone with Rule 9(b) specificity, to establish

4    POLITICO overcame or circumvented any technical obstacles put in place to restrict its access. Plaintiffs

5    instead allege that while browsing the POLITICO website, POLITICO installed third-party tracker

6    cookies onto Plaintiffs' browsers, thereby accessing Plaintiffs' "computers, computer systems, and/or

7    computer networks" without permission or authorization. *See* Compl. ¶ 124. However, those allegations

8    are insufficient to state a CDAFA claim. POLITICO's website is available to the public, and Plaintiffs'

9    interaction with the website (and POLITICO's response) is part of a normal internet function.

10    Indeed, in *Gutierrez v. Converse, Inc.*, the Central District of California dismissed a similar claim

11    because the CDAFA does not prohibit such conduct. In *Gutierrez*, plaintiff alleged a live chat feature on

12    a defendant's website sent plaintiff's communications to a third party. *Gutierrez*, 2023 WL 8939221, at

13    *4. Significantly, where "[d]efendant controlled the website and presumably designed the Website to

14    facilitate the so-called 'interception' and 'diversion' of these messages," and there were "no technical

15    barriers blocking Defendant from using its own Website." *Id.* Thus, the plaintiff could not claim that

16    defendant faced technical barriers blocking it from using its own website. *Id.*

17    The same reasoning in *Gutierrez* applies here. As Plaintiffs allege, after a cookie is installed, the

18    ***user's browser*** sends a message to POLITICO's website to display the website's content. *See* Compl. ¶

19    46. Plaintiffs do no plead that any technical or code-based barriers were circumvented through this

20    installation and subsequent interaction with POLITICO's website. Plaintiffs fail to allege that third-party

21    tracker cookies on POLITICO's website collected their PII despite Plaintiffs' efforts to block them, nor

22    have they alleged that the trackers would have collected their PII even if they did have blocking

23    technology in place. As such, Plaintiffs have not plead that POLITICO acted "without permission."

24    Plaintiffs rely on conclusory allegations that POLITICO's installation of third-party trackers violated the

25    CDAFA without pleading any facts as to how POLITICO circumvented technical or code-based barriers

26    to do so. These allegations do not demonstrate that POLITICO's conduct amounted to "'hacking' or

27    breaking into a computer." *Chrisman v. City of Los Angeles*, 155 Cal. App. 4th 29, 34 (2007). Plaintiffs'

28    CDAFA claim is subject to Rule 9(b)'s pleading standards because it sounds in fraud. Under Rule 9(b),

Plaintiffs fail to allege the "who, what, when, where, and how" of the alleged CDAFA misconduct." *In re Apple*, 386 F. Supp. 3d at 1164; *Nowak v. Xapo, Inc.*, No. 5:20-CV-03643-BLF, 2020 WL 6822888, at *5 (N.D. Cal. Nov. 20, 2020) (dismissing CDAFA claim because plaintiff's claim sounds in fraud, is subject to Rule 9(b) pleading standard, and failed to allege specific facts to sustain cause of action).

Further, because POLITICO did not overcome any technical barriers when Plaintiffs accessed its website, Plaintiffs are unable to cure the defects in their Complaint and should not be granted leave to amend. *Oregon Clinic, PC v. Fireman's Fund Ins. Co.*, 75 F.4th 1064, 1073 (9th Cir. 2023) ("If a complaint is dismissed for failure to state a claim, leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency."). Thus, no new allegations could address the problems in Plaintiffs' Complaint because an "amendment would be futile." *Trew v. Int'l Game Fish Ass'n, Inc.*, 404 F. Supp. 2d 1173, 1177 (N.D. Cal. 2005). Therefore, Plaintiffs' CDAFA claim should be dismissed without leave to amend because they have not plead facts supporting POLITICO acted "without permission."

### 2.    Plaintiffs Lack Damage Required for CDAFA Standing.

The CDAFA also requires Plaintiffs to allege they suffered "damage or loss" in order to have standing for a civil claim. § 502(e)(1); *see also Wesch v. Yodlee*, No. 20-cv-05991-SK, 2021 WL 1399291, at *7 (N.D. Cal. February 16, 2021). A plaintiff is required to plead "some injury emanating from [a party's] alleged Section 502 violations to survive [a] Motion to Dismiss." *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1219 (N.D. Cal. 2014). Although a certain threshold for damages need not be met, a plaintiff still needs to allege damages resulting from the CDAFA violation. *Gutierrez*, 2023 WL 8939227 at *5. The CDAFA allows recovery of "[c]ompensatory damages [that] include any expenditure reasonably and necessarily incurred by the owner or lessee to verify that a computer system, computer network, computer program, or data was or was not altered, damaged, or deleted by the access." Cal. Penal Code § 502(e)(1). Courts have held that the type of loss protected by CDAFA does not include a "loss of the right to control their own data, the loss of the value of their data, and the loss of the right to protection of the data." *Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 488 (N.D. Cal. 2021); *see also Nowak*, 2020 WL 6822888 at *5 (finding that plaintiff's alleged loss of value of Bitcoins and cost to hire investigator to trace stolen Bitcoins was not cognizable under CDAFA, dismissing claim)

and *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1082 (N.D. Cal. 2023) (dismissing CDAFA claim where plaintiffs alleged use of Meta Pixel precluded communication with healthcare providers because plaintiffs failed allege type of loss or damage is actionable under statute). Further, allegations of unjust enrichment or that a defendant has profited from disclosing information to a third party are insufficient to support a CDAFA claim. *See Roe v. Amgen, Inc.*, No. 2:23-cv-07448-MCS-SSC, 2024 WL 2873482 at *7 (C.D. Cal. June 5, 2024) (dismissing CDAFA claim when plaintiffs failed to allege defendant was unjustly enriched and failed to allege defendant sold their data).

Here, Plaintiffs fail to plead facts establishing they incurred a cognizable damage or loss based on the installation of third-party cookies on their browser. To circumvent this deficiency, Plaintiffs conclude POLITICO was "unjustly enriched by accessing, acquiring, taking, and using" Plaintiffs' data. Compl. ¶ 133. But Plaintiffs include no facts to support their claim, nor do they allege that POLITICO sold their data. In *Zarif v. Hwareh.com, Inc.*, which also involved a third-party tracker present on a defendant's website, the court dismissed plaintiff's CDAFA claim because she did not allege defendant sold her data or include "other facts supporting the assertion that Defendant was unjustly enriched by using tracking tools to collect her data." No. 23-CV-0565-BAS-DEB, 2025 WL 486317, at *13 (S.D. Cal. Feb. 13, 2025); *see also Facebook User Profile Litig.*, 402 F. Supp. 3d at 804 ("Facebook may have gained money through its sharing or use of the plaintiffs' information, but that's different from saying the plaintiffs lost money."); *Hazel v. Prudential Fin., Inc.*, No. 22-cv-07465-CRB, 2023 WL 3933073, at *6 (N.D. Cal. June 9, 2023) (same). Plaintiffs allege that "[c]ase law established that misappropriation of data that has financial value can state an economic injury under the CDAFA" and "browsing histories and similar data carry financial value and that an economic market for that data exists." Comp. ¶ 132. However, Plaintiffs do not allege that *they* incurred any economic injuries or have articulated anything regarding the "actual value" of their data. *See Lineberry v. Addshopper, Inc.*, No. 23-CV-01996-VC, 2025 WL 551864, at *2 (N.D. Cal. Feb. 19, 2025). Further, they allege that third party cookies cause "additional processing, storage, and power usage results in increased energy and device costs for users. That extra cost is economic harm." Compl. ¶ 134. But they fail to allege that *they* experienced increased costs as a result of visiting POLITICO's website or that they undertook an investigation to confirm their "data was or was not altered, damaged, or deleted." *Doe I v. Google LLC*, No. 23-CV-02431-VC, 2024

WL 3490744, at *5 (N.D. Cal. July 22, 2024) (dismissing CDAFA claim when plaintiffs failed to plead they verified their computer was or was not altered, damaged, or deleted by unlawful access, which is a requirement of the statute in order to obtain compensatory damages).

Plaintiffs' conclusory allegations that they "suffered damages" and are thus "entitled to compensatory damages, injunctive relief, and other equitable relief" are insufficient to plead damages under CDAFA. *See Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1049 (N.D. Cal. 2018) (dismissing CDAFA claim where complaint offered "only conclusory claims of a deprivation of income and an invasion of privacy without identifying injury to the plaintiffs themselves"); *Gutierrez*, 2023 WL 8939227, at *5 (dismissing CDAFA claim where plaintiff made no factual allegations about damages); *Wesch*, 2021 WL 1399291, at *7 (same). Plaintiffs' CDAFA must be dismissed.

### E.    Plaintiffs Fail to State a Claim of Unjust Enrichment.

Plaintiffs cannot prevail on their unjust enrichment claim because there is no cause of action in California for unjust enrichment. *See Melchior v. New Line Prod., Inc.,* 106 Cal. App. 4th 779, 793 (2003) ("there is no cause of action in California for unjust enrichment."); *City of Oakland v. Oakland Raiders,* 83 Cal. App. 5th 458, 477 (2022) (same). Courts have dismissed such claims, recognizing that unjust enrichment is not a cause of action. *See Greenley,* 684 F. Supp. 3d at 1055 (granting motion to dismiss unjust enrichment claim because it "is not a stand-alone cause of action."); *Hill v. Roll Int'l Corp.,* 195 Cal. App. 4th 1295, 1307 (2011) (same).

### F.    Plaintiffs Fail to State a Violation of the California UCL.

Plaintiffs have not alleged any economic injury and therefore lack standing to plead a UCL claim, which may only be brought by "a person who has suffered an injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus & Prof. Code § 17204. "The loss of personal data is also not sufficient to demonstrate an economic injury. *Google*, 2024 WL 3490744, at *5. As such, demonstrating "some form of economic injury" is required. *Kwiset Corp. v. Superior Court,* 51 Cal. 4th 310, 323 (2011). Courts have dismissed UCL claims where the alleged injury relates to "the loss of the inherent value of their personal data." *See Cottle,* 536 F. Supp. 3d at 484. "The 'mere appropriation of personal information' does not establish compensable damages." *Pruchnicki v. Envision Healthcare Corp.,* 845 F. App'x 613, 615 (9th Cir. 2021). Courts have also declined to find economic injury where

a plaintiff paid no money to defendant before their data was disclosed. *Facebook User Profile Litig.,* 402 F. Supp. 3d at 804 ("the plaintiffs here do not allege they paid any premiums (or any money at all) to Facebook to potentially give rise to standing under California law"). When a party fails to allege that they suffered a monetary or economic loss, and only allege a third party received a financial gain, this Court has consistently held does not constitute an injury under the UCL.[8]

Notwithstanding Plaintiffs' inability to establish standing, Plaintiffs have failed to plead facts sufficient to establish a UCL claim. The UCL creates liability where a business practice is unlawful, unfair, or fraudulent, with each prong providing a distinct theory of liability and basis for relief. Cal. Bus. & Profs. Code § 17200; *Lozano v. AT&T Wireless Servs., Inc.,* 504 F.3d 718, 731 (9th Cir. 2007). Under the unlawful prong, a plaintiff bases their UCL claim on other causes of action, and if the predicate claims fail, the UCL claim also fails. *Davis v. HSBC Bank Nevada, N.A.,* 691 F.3d 1152, 1168 (2012). Here, Plaintiffs allege that the unlawful prong is satisfied because "as alleged above, Defendant violated the California Constitution, California common law, and other California statutes and causes of action described in this complaint." Compl. ¶ 169. As discussed above, each of these claims fail; therefore, the UCL claim fails as well. *See Hammerling,* 615 F. Supp. 3d at 1094 (finding the UCL unlawful prong claim failed where predicate claims also failed).

Plaintiffs also allege a UCL violation based on the unfair prong, alleging that POLITICO's practices are "'unfair' under the UCL," and POLITICO "violated public policy" by "surreptitiously collecting, disclosing, and otherwise misusing" Plaintiffs' personal data without consent. Compl. ¶ 170. Plaintiffs vaguely add that these acts are "'unfair' in that they are immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to consumers." Compl. ¶ 171. Under the UCL's unfairness

---

[8] *See Facebook User Profile Litig.,* 402 F. Supp. 3d at 784 ("it does not follow that the same information, when not disclosed, has independent economic value to an individual user. The plaintiffs do not plausibly allege that they intended to sell their non-disclosed personal information to someone else. Nor, in any event, do they plausibly allege that someone else would have bought it as a stand-alone product. The plaintiffs' economic-loss theory is therefore purely hypothetical and does not give rise to standing."); *Katz-Lacabe v. Oracle Am., Inc.,* 668 F. Supp. 3d 928, 944 (N.D. Cal. 2023) (declining to find economic injury where plaintiffs alleged personal information disclosed without consent "[b]ecause Plaintiffs have not alleged a specific monetary or economic loss"); *Gonzales v. Uber Techs., Inc.,* 305 F. Supp. 3d 1078, 1093 (N.D. Cal. 2018) ("[T]he sharing of names, user IDs, location and other personal information does not constitute lost money or property for UCL standing purposes.") (citation omitted); *Svenson v. Google Inc.,* 65 F. Supp. 3d 717, 730 (N.D. Cal. 2014) (no economic injury where plaintiff had "not alleged any facts showing that Defendants' business practice—disclosing users' Contact Information to third-party App vendors—changed her economic position at all")). Thus, because Plaintiff failed to plead an economic injury, Plaintiff lacks standing under the UCL, and this claim must be dismissed.

prong, courts analyze either: (1) whether the challenged conduct is "tethered to any underlying constitutional, statutory or regulatory provision, or that it threatens an incipient violation of an antitrust law, or violates the policy or spirit of an antitrust law," (*Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1366 (2010)); (2) whether the practice is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers," *Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1254 (2009); or (3) whether the practice's impact on the victim outweighs "the reasons, justifications and motives of the alleged wrongdoer." *Id*. Here, Plaintiffs fail to allege a specific public policy was violated or how POLITICO's conduct violated any policy, and the vague allegations of immoral conduct fail to adequately plead an unfair prong claim. *See Doe v. CVS Pharm., Inc.,* 982 F.3d 1204, 1215 (9th Cir. 2020) (affirming denial of UCL unfairness claim where plaintiffs' "conclusory recitation of one of the UCL's legal standards does not clarify what conduct they claim is unfair").[9]

Lastly, Plaintiffs' UCL claim fails because they cannot establish that they lack an adequate remedy at law. *See generally* Compl.; *see also Sonner v. Premier Nutrition Corp.,* 971 F.3d 834, 844 (9th Cir. 2020) (plaintiff "must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL").

## V.    CONCLUSION

For the foregoing reasons, POLITICO respectfully requests the Court grant this Motion in its entirety and deny Plaintiffs leave to amend their claims.

Dated:  March 14, 2025

FISHER & PHILLIPS LLP

By: */s/ Usama Kahf*
USAMA KAHF
DANIELLE KAYS (*pro hac vice*)
CATHERINE M. CONTINO (*pro hac vice*)
Attorneys for Defendant POLITICO LLC

---

[9] Further, these allegations entirely overlap with the allegations under the unlawful prong. Compl. ¶ 169. Courts in this district have found that when the allegations in the unfair prong "overlap entirely with the business practices addressed in the fraudulent and unlawful prongs of the UCL, the unfair prong of the UCL cannot survive if the claims under the other two prongs of the UCL do not survive. *Hadley v. Kellogg Sales Co.,* 243 F. Supp. 3d 1074, 1104–05 (N.D. Cal. 2017). Accordingly, the unfair prong claim must be dismissed.