USAMA KAHF (SBN 266443)
E-Mail: ukahf@fisherphillips.com
**FISHER & PHILLIPS LLP**
2050 Main Street, Suite 1000
Irvine, California 92614
Telephone: (949) 851-2424
Facsimile: (949) 851-0152

DANIELLE KAYS (*PRO HAC VICE*)
E-Mail: dkays@fisherphillips.com
**FISHER & PHILLIPS LLP**
10 South Wacker Drive, Suite 3450
Chicago, IL 60606
Telephone: (312) 260-4751

CATHERINE M. CONTINO (*PRO HAC VICE*)
E-Mail: ccontino@fisherphillips.com
**FISHER & PHILLIPS LLP**
Two Logan Square, 12th Floor
100 N. 18th Street
Philadelphia, PA 19103
Telephone: (610) 230-2150
Facsimile: (610) 230-2151

Attorneys for Defendant
POLITICO LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SABER KHAMOOSHI, RYAN WU, BRIAN CAROLUS, and JOHN DEDDEH individually and on behalf of a class of similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>POLITICO LLC, and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No: 3:24-cv-07836-SK<br><br>**CLASS ACTION**<br><br>**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**<br><br>Action Filed: September 26, 2024<br>Removed: November 8, 2024<br>Consolidated: January 27, 2025 |

**TO THE COURT, PLAINTIFFS AND THEIR COUNSEL OF RECORD**:

1. Pursuant to Federal Rules of Evidence Rule 201, Defendant POLITICO LLC ("POLITICO"), through its attorneys of record, hereby request that the Court take judicial notice of the following:

(a) *Sanchez v. Cars.com*, No. 24STCV13201, Tentative Ruling, (Cal. Super. Ct. Jan. 27, 2025) as **Exhibit A**.

(b) *Rodriguez v. Plivo, Inc.*, No. 24STCV08972, Minute Order (Cal. Super. Ct. L.A. Cty. Oct. 2, 2024) as **Exhibit B.**

(c) *Aviles v. Liveramp, Inc.*, Tentative Ruling, No. 24STCV19869, Order (Cal. Super. Ct. L.A. Cty. Jan. 28, 2025) as **Exhibit C**.

(d) *Casillas v. Transitions Optical, Inc.*, No. 23STCV30742, Minute Order (Cal Super. Ct. L.A. Cty. Sept. 9, 2024) as **Exhibit D**.

(e) *Palacios v. Fandom, Inc.*, No. 24STCV11264, Minute Order (Cal. Super. Ct. Sept. 24, 2024) as **Exhibit E**.

(f) Assembly Bill No. 929, 2015-2016 Regular Session, as **Exhibit F**.

(g) Assembly Bill No. 1242, 2021-2022 Regular Session, as **Exhibit G**.

2. Judicial notice of **Exhibits A, B, C, D, E, F, and G** is proper as judicial notice may be taken of documents filed in court proceedings. Fed. R. Evid. 201; *Harris v. Cty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) ("We may take judicial notice of . . . documents on file in federal or state courts."); *see also Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (taking judicial notice of pleadings, memoranda, and other court filings).

3. Moreover, judicial notice of **Exhibits A, B, C, D, E, F, and G** is proper under Federal Rule of Evidence 201, which provides that a "court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)-(2). A federal court must take judicial notice of facts "if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2).

4. Finally, judicial notice of **Exhibits A, B, C, D, E, F, and G** is proper as documents that are matters of public record may also be judicially noticed. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) ("[A] court may take judicial notice of 'matters of public record.'"); *Allergan USA, Inc. v. Prescribers Choice, Inc.*, 364 F. Supp. 3d 1089, 1095 (C.D. Cal. 2019); *Rodriguez v. Ford Motor Co.*, 722 F. Supp. 3d 1104, 1111 (S.D. Cal. 2024) ("A court *may* properly take judicial notice of legislative history.") (quotations and citations omitted) (emphasis in original)

5. Based on the foregoing, POLITICO respectfully requests that this Court take judicial notice of the above-referenced documents for purposes of POLITICO's Motion to Dismiss.

Dated: March 14, 2025

Respectfully submitted,

FISHER & PHILLIPS LLP

By: */s/ Usama Kahf*
USAMA KAHF
DANIELLE KAYS (*pro hac vice*)
CATHERINE M. CONTINO (*pro hac vice*)
Attorneys for Defendant
POLITICO LLC

# EXHIBIT "A"

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

**Civil Division**

Central District, Stanley Mosk Courthouse, Department 78

**24STCV13201**
**MONICA SANCHEZ vs CARS.COM INC., A DELAWARE CORPORATION**

January 27, 2025
8:30 AM

Judge: Honorable Tiana J. Murillo
Judicial Assistant: D. Castro-Martinez
Courtroom Assistant: A. Comick

CSR: None
ERM: None
Deputy Sheriff: None

APPEARANCES:

For Plaintiff(s): Victoria Knowles for Scott J. Ferrell via LA Court Connect

For Defendant(s): Daniel Joseph Taylor via LA Court Connect

**NATURE OF PROCEEDINGS:** Case Management Conference; Hearing on Demurrer - without Motion to Strike

The Court's tentative ruling is posted online for the parties to review.

The matter is called for hearing.

The plaintiff and defendant submit to the Court's tentative ruling via email.

After reading and considering all moving documents, the Court adopts its tentative ruling as the final order of the Court, as follows:

The Demurrer - without Motion to Strike filed by Cars.com Inc. on 10/28/2024 is Sustained without Leave to Amend.

**I. BACKGROUND**

On September 24, 2024, plaintiff Monica Sanchez ("Plaintiff") filed a First Amended Complaint ("FAC") for violations of California Invasion of Privacy Act ("CIPA") against defendant Cars.Com Inc., d/b/a www.cars.com. The FAC sets forth a single cause of action for violation of CIPA, Penal Code section 638.51(a) against Defendant.

On October 28, 2024, Defendant filed a demurrer to the FAC on the grounds that the cause of action fails to state a claim against it.

On December 30, 2024, Plaintiff filed an opposition.

On January 6, 2025, Defendant filed a reply.

## II. PROCEDURAL REQUIREMENT

Before filing a demurrer, the demurring party is required to meet and confer with the party who filed the pleading demurred to for the purpose of determining whether an agreement can be reached that would resolve the objections to be raised in the demurrer. [Code of Civil Procedure ("CCP") § 430.41(a).]

Defendant's counsel declares that he contacted Plaintiff's counsel to meet and confer on the issue, which raised issues nearly identical to the prior motion. After an exchange of email communications, Plaintiff's counsel confirmed that no further meet and confer would resolve the issues. (Taylor Decl. ¶ 4.) The Court finds that Defendant has met the meet and confer requirement.

## III. LEGAL STANDARD

A demurrer for sufficiency tests whether the complaint states a cause of action. (Hahn v. Mirda (2007) 147 Cal.App.4th 740, 747.) When considering demurrers, courts read the allegations liberally and in context. In a demurrer proceeding, the defects must be apparent on the face of the pleading or via proper judicial notice. (Donabedian v. Mercury Ins. Co. (2004) 116 Cal.App.4th 968, 994.)

"A demurrer tests the pleadings alone and not the evidence or other extrinsic matters. Therefore, it lies only where the defects appear on the face of the pleading or are judicially noticed. (CCP §§ 430.30, 430.70.) At the pleading stage, a plaintiff need only allege ultimate facts sufficient to apprise the defendant of the factual basis for the claim against him. (Semole v. Sansoucie (1972) 28 Cal. App. 3d 714, 721.) A "demurrer does not, however, admit contentions, deductions or conclusions of fact or law alleged in the pleading, or the construction of instruments pleaded, or facts impossible in law." (S. Shore Land Co. v. Petersen (1964) 226 Cal.App.2d 725, 732 (internal citations omitted).)

## IV. REQUESTS FOR JUDICIAL NOTICE

Defendant requests the Court take judicial notice of (1) Minute Order, dated March 13, 2024, of the Superior Court of California, Central District, in Jose Licea vs. Hickory Farms LLC, Case No. 23STCV26148, (2) Minute Order, dated July 9, 2024, of the Superior Court of California, Central District, in Rebeka Rodriguez v. Fountain9, Inc., Case No. 24STCV04504, (3) Minute Order, dated April 23, 2024, of the Superior Court of California, Central District, in Miltita Casillas v. Transitions Optical, Inc., Case No. 23STCV30742, and (4) Minute Order, dated September 24, 2024, of the Superior Court of California, Central District, in Marielita Palacios v. Fandom, Inc., Case No. 24STCV11264.

Plaintiff requests the Court take judicial notice of (1) Minute Order filed on September 17, 2024 in Jurdi v. MSC Cruises (USA) LLC, No. 24STCV14098 (Cal. Super. Ct. L.A. Cty. Sept. 17, 2024), (2) Minute Order filed on October 28, 2024 in Heiting v. IHOP Restaurants, LLC, No. 24STCV14453 (Cal. Super. Ct. L.A. Cty. Oct. 28, 2024), and (3) Minute Order filed on November 21, 2024 in Price v. Entravision Communications Corp., No. 24SMCV02630.

The requests are granted. (Cal. Evid. Code § 452(d).)

## V. DISCUSSION

<u>CIPA</u>

Penal Code section 638.51 states, "[e]xcept as provided in subdivision (b), a person may not install or use a pen register or a trap and trace device without first obtaining a court order pursuant to Section 638.52 or 638.53." (Cal. Pen. Code, § 638.51, subd. (a).)

The FAC alleges in pertinent part the following. Plaintiff is a consumer privacy advocate who works as a "tester." Plaintiff visited Defendant's website, https://www.cars.com (the "Website") in April 2024, and without Plaintiff's knowledge or consent, Defendant secretly accessed Plaintiff's device and installed "pen register" and "trap and trace" ("PR/TT") tracking software. To make the Website load on a user's internet browser, the browser sends a request to Defendant's server, and in response to the request, the server sends a response back with instructions on how to properly display the Website. The server's instruction causes at least one PR/TT beacon to be installed on the Website user's internet browser, which sends the user's IP

address to the PR/TT beacon's software provider. The PR/TT beacon's software provider uses such PR/TT beacon to receive, store, and analyze data collected from website visitors, including visitors of Defendant's Website. Defendant installs the PR/TT beacon in the user's browsers to collect users' IP address. Because the PR/TT Beacon captures outgoing information –the IP address- from visitors to websites, the FAC alleges it is therefore a "pen register" for the purposes of Penal Code section 638.50(b). Plaintiff alleges the Website caused a PR/TT beacon to be installed on Plaintiff's browser to collect Plaintiff's IP address and to further collect additional information. Defendant therefore violated Pen. Code section 638.51(a).

Here, the FAC provides a lengthy exposition of theoretical possibilities of what website operators "can" do to deploy tracking software and how a website owner "can" correlate a grouping of fragments to create a unique digital profile of each website visitor. The FAC uses these theories of "can-dos" with very few specific allegations pertaining to Plaintiff or the Defendant and relies on "likening" alleged practices of companies to Defendant. (E.g. FAC ¶ 67: "In other words, companies like Defendant are collecting users' data and sending it to its PR/TT beacon's developer for a profit including by optimizing its marketing campaigns".) The Court notes that Plaintiff's FAC is nearly identical to other CIPA actions filed by other tester plaintiffs in this department.

The Court is not aware of, nor do the parties cite, any controlling published authority in California on the issue of whether internet communications constitute "pen registers" or "track and trace devices" within the meaning of the CIPA. The Court therefore beings with the plain language and legislative intent of the statute.

" 'Pen register' means a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." (Cal. Pen. Code, § 638.50, subd. (b).) It does not include a "device or process used by a provider or customer of a wire or electronic communication service for billing, or recording as an incident to billing, for communications services provided by such provider, or a device or process used by a provider or customer of a wire communication service for cost accounting or other similar purposes in the ordinary course of its business." (Ibid.)

Likewise, a "trap and trace device" is a "device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." (Cal. Pen. Code, § 638.50, subd. (c).)

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
**Civil Division**
Central District, Stanley Mosk Courthouse, Department 78

**24STCV13201**
**MONICA SANCHEZ vs CARS.COM INC., A DELAWARE CORPORATION**

January 27, 2025
8:30 AM

Judge: Honorable Tiana J. Murillo
Judicial Assistant: D. Castro-Martinez
Courtroom Assistant: A. Comick

CSR: None
ERM: None
Deputy Sheriff: None

In construing a statute, the court’s fundamental task is to ascertain legislative intent to effectuate the purpose of the statute, and by giving the words their usual and ordinary meaning. (Day v. City of Fontana (2001) 25 Cal.4th 268, 272.) If statutory terms are ambiguous, the court may examine extrinsic sources and choose sources that comport most closely with the Legislature’s apparent intent to promote the general purpose and avoid construction that would lead to absurd consequences. (Id. at 272.) The Penal Code commands construction of its provisions “according to the fair import of their terms, with a view to effect its objects and to promote justice”, but at the same time, penal statutes include only those offenses coming clearly within import of the language, and will not be given application beyond their plain intent. (See DeMille v. Am. Fed'n of Radio Artists (1947) 31 Cal. 2d 139, 156; Pen. Code §4.) Further, with construction of a criminal statute, the defendant must be given the benefit of every reasonable doubt as to whether the statute applies to him. (In re Zerbe (1964) 60 Cal. 2d 666, 668.)

Generally, CIPA criminalizes wiretapping, eavesdropping, interception or recording of telephone communications without authorization from a court. (Cal. Pen. Code, §§ 630, et seq.) Here, the legislative history of the CIPA suggests that “pen register” and “track and trace devices” refers to devices or processes that are used to record or decode dialing, routing, addressing, or signaling information from telephone numbers, not internet communications such as websites. Penal Code section 638.51 and its legislative history suggest that section 638.51 applies only to telephone-tracking technology, not IP address-collecting software used by a website to improve its user functionality and the effectiveness of its marketing. The California legislature enacted Assembly Bill 929, the genesis of CIPA section 638.51, in 2015 to create a comprehensive framework governing how California law enforcement officials could obtain and use a pen register or trap and trace device, just like its federal counterpart. In enacting Assembly Bill 929, the California Legislature adopted the same authorization provision in CIPA section 638.52 that courts have relied on under the federal Pen Register Act to find that the Act applied only to mechanical, telephone number-tracing technology, not technology used to collect the IP address from a desktop computer. Thus, the legislative history of the CIPA suggests that “pen register” and “track and trace devices” refer to devices or processes that are used to record or decode dialing, routing, addressing, or signaling information from telephone numbers, and not internet communications such as websites.

Both parties rely on several federal cases and other trial court rulings as persuasive authority. The Court is not persuaded by those authorities, and therefore finds that Plaintiff fails to state a cause of action under Penal Code section 638.51.

---

B. Reasonable Expectation of Privacy

Plaintiff's allegations are premised on the principle that her constitutional right to privacy has been violated by the Website collecting her IP address. (FAC ¶ 6.) The elements of a state constitutional cause of action for invasion of privacy, are (1) identification of a specific, legally protected privacy interest, and (2) a reasonable expectation of privacy on plaintiff's part. (See Hill v. Nat'l Collegiate Athletic Assn. (1994) 7 Cal. 4th 1, 36 (Hill).) Customs, practices, and physical settings surrounding particular activities may create or inhibit reasonable expectations of privacy. (Id. at 36.)

Plaintiff alleges that "the IP address enables a device to communicate with another device—such as a computer's browser communicating with a server..." (FAC ¶ 35) and is a basic function of accessing the internet. (United States v. Forrester (9th Cir. 2008) 512 F.3d 500, 510 (Forrester) ["Every computer or server connected to the Internet has a unique IP address."].) Plaintiff alleges that through an IP address, the user's geographical location "can" be determined. (FAC ¶ 36.) However, a person has no legitimate expectation of privacy in information voluntarily turned over to third parties, even if the information is revealed on the assumption that it will be used only for a limited purpose and that the confidence placed in the third party will not be betrayed. (United States v. Morel (1st Cir. 2019) 922 F.3d 1, 8 (Morel) quoting United States v. Miller (1976) 425 U.S. 435, 443.) Here, Plaintiff chose to visit Defendant's website and allowed the Website to collect Plaintiff's IP address. (Morel 922 F.3d at 9 ["an internet user generates the IP address data ... only by making the affirmative decision to access a website or application."].) Internet users rely on third-party equipment to engage in communication, and thus "Internet users have no expectation of privacy in the to/from addresses of their messages or the IP addresses of the websites they visit because they should know that this information is provided to and used by Internet service providers for the specific purpose of directing the routing of information." (Forrester, 512 F.3d at 510.)

"[C]ourts have long distinguished between the contents of a communication (in which a person may have a reasonable expectation of privacy) and record information about those communications (in which a person does not have a reasonable expectation of privacy)...And we have allowed the warrantless collection of email and IP addresses under the same reasoning because email and IP addresses "constitute addressing information and do not necessarily reveal any more about the underlying contents of communication than do phone numbers." (In re Zynga Priv. Litig. (9th Cir. 2014) 750 F.3d 1098, 1108, citing Forrester, 512 F.3d at 509-511.) As alleged by Plaintiff, here "[t]he PR/TT beacon does not collect the content of Plaintiff's electronic communications with the Website." (FAC ¶ 82.)

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
**Civil Division**
Central District, Stanley Mosk Courthouse, Department 78

**24STCV13201**
**MONICA SANCHEZ vs CARS.COM INC., A DELAWARE CORPORATION**

January 27, 2025
8:30 AM

Judge: Honorable Tiana J. Murillo
Judicial Assistant: D. Castro-Martinez
Courtroom Assistant: A. Comick

CSR: None
ERM: None
Deputy Sheriff: None

Thus, even if, arguendo, the collection of Plaintiff's IP address constitutes operation of a pen register, Plaintiff has no reasonable expectation in the privacy of her computer's IP address since she chose to access the Website.

**VI. CONCLUSION**

The demurrer filed by Cars.Com Inc., d/b/a www.cars.com against Plaintiff's FAC is SUSTAINED without leave to amend.

Order to Show Cause Re: Dismissal is scheduled for 05/05/2025 at 08:30 AM in Department 78 at Stanley Mosk Courthouse.

Moving party is to give notice.

# EXHIBIT "B"

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

**Civil Division**

Central District, Spring Street Courthouse, Department 26

**24STCV08972**
**REBEKA RODRIGUEZ vs PLIVO INC., A DELAWARE CORPORATION WITH ITS PRINCIPAL PLACE OF BUSINESS IN CALIFORNIA**

October 2, 2024
10:00 AM

Judge: Honorable Mark E. Windham
Judicial Assistant: M. Mata
Courtroom Assistant: None

CSR: None
ERM: None
Deputy Sheriff: None

APPEARANCES:

For Plaintiff(s): No Appearances

For Defendant(s): Matthew D. Pearson via LACC

**NATURE OF PROCEEDINGS:** Hearing on Demurrer - with Motion to Strike (CCP 430.10)

The Court's tentative ruling is posted online and in Department 26 for the parties to review.

Defendant submits on the Court's tentative ruling via email.

There is no appearance by or for the Plaintiff this date.

The matter as captioned above, is not called for hearing.

The Court adopts its tentative ruling as the final order of the Court as follows:

RULING:

Defendant Plivo, Inc. dba www.plivo.com's Demurrer to the First Amended Complaint is SUSTAINED WITHOUT LEAVE TO AMEND.

ANALYSIS:

On April 10, 2024, Plaintiff Rebeka Rodriguez ("Plaintiff") filed the Complaint in this action against Defendant Plivo, Inc. dba www.plivo.com ("Defendant"). Following the filing of Defendant's demurrer to the Complaint, Plaintiff filed the First Amended Complaint on June 24, 2024.

Defendant filed the instant Demurrer to the First Amended Complaint on August 26, 2024. No opposition has been filed to date.

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
**Civil Division**
Central District, Spring Street Courthouse, Department 26

**24STCV08972**
**REBEKA RODRIGUEZ vs PLIVO INC., A DELAWARE CORPORATION WITH ITS PRINCIPAL PLACE OF BUSINESS IN CALIFORNIA**

October 2, 2024
10:00 AM

Judge: Honorable Mark E. Windham
Judicial Assistant: M. Mata
Courtroom Assistant: None

CSR: None
ERM: None
Deputy Sheriff: None

---

Discussion

Allegations in the First Amended Complaint

The First Amended Complaint alleges a single cause of action for violation of the California Invasion of Privacy Act ("CIPA") at Penal Code section 638.51(a). Plaintiff alleges that Defendant secretly deployed spyware at its website, www.plivo.com/ (the "Website") that accesses visitors' devices and installed tracking spyware before obtaining consent to do so, and then monitors and reports visitors' online habits after they leave the Website. (FAC, p. 2:2-3.) Plaintiff recently visited Defendant's Website and without Plaintiff's knowledge or consent, Defendant secretly accessed Plaintiff's device and installed "pen register" and "trap and trace" tracking software in violation of California law. (Id. at p. 2:5-7.) Cal. Penal Code section 638.51(a) prohibits any "person" from "install[ing] or us[ing] a pen register or a trap and trace device without first obtaining a court order." (Id. at ¶10.) Defendant installs the pen register or trap and trace device ("PR/TT") beacon on the user's browser, and such PR/TT beacon collects users' IP addresses. (Id. at ¶37.) Defendant uses the PR/TT beacon to "digitally fingerprint" each visitor but at no time prior to use of the PR/TT beacon obtained users' consent or a court order. (Id. at ¶¶52-53.) As a result, Plaintiff had her privacy invaded by Defendant's violations of Penal Code section 638.51(a). (Id. at ¶¶75.)

Demurrer

Defendant demurs to the First Amended Complaint for failure to allege facts sufficient to state a cause of action. (Citing Code Civ. Proc., § 430.10, subd. (e).) The demurrer is accompanied by a meet and confer declaration as required by Code of Civil Procedure section 430.41. (Motion, Pearson Decl., ¶3.)

The demurrer is brought on the grounds that section 638.51 of the CIPA does not prohibit the used of technology on a website to collect visitors' IP addresses and the First Amended Complaint does not allege facts that plausibly establish the use of a pen register. Penal Code section 638.51 subdivision (a) states in relevant part: "Except as provided in subdivision (b), a person may not install or use a pen register or a trap and trace device without first obtaining a court order pursuant to Section 638.52 or 638.53." (Pen. Code, § 638.51, subd. (a).) A pen register is defined as "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." (Pen. Code, § 638.50,

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

**Civil Division**

Central District, Spring Street Courthouse, Department 26

**24STCV08972**
**REBEKA RODRIGUEZ vs PLIVO INC., A DELAWARE CORPORATION WITH ITS PRINCIPAL PLACE OF BUSINESS IN CALIFORNIA**

October 2, 2024
10:00 AM

Judge: Honorable Mark E. Windham
Judicial Assistant: M. Mata
Courtroom Assistant: None

CSR: None
ERM: None
Deputy Sheriff: None

---

subd. (b).)

As there are no controlling state law cases on this statute, the Court must look to federal court rulings for guidance. In determining whether a device is a pen register, courts must look to the type of information being collected and not the device or process. (Greenley v. Kochava, Inc. (S.D. Cal. 2023) 684 F.Supp.3d 1024, 1050.) This is because what constitutes a pen register has changed as technology has shifted from telephone communication to internet-based communications. (In re Application of U.S. for an Ord. Authorizing use of A Pen Reg. & Trap On (XXX) Internet Serv. Acct./User Name, (xxxxxxxx@xxx.com) (D. Mass. 2005) 396 F. Supp. 2d 45, 47; Greenley, supra, 684 F.Supp.3d at 1050.)

Defendant argues that Plaintiff's IP address is not the type of information that parties are prohibited from collecting by CIPA. First, because Plaintiff voluntarily provided the information and could have no expectation of privacy in it. (See Smith v. Maryland (1979) 442 U.S. 735, 744.) This is implicit in the allegations explaining "the IP address enables a device to communicate with another device—such as a computer's browser communicating with a server." (FAC, ¶35.) Plaintiff's computer could not have accessed Defendant's website unless it provided her IP address.

Second, Plaintiff's IP address is not the type of information collected by pen registers. Pen registers collect outgoing information, such as outgoing telephone numbers, outgoing email addresses, IP addresses of websites visited, location data that reveals sensitive information, and cell site information. (In re Application of U.S. for an Ord. Authorizing use of A Pen Reg. & Trap, supra, 396 F. Supp. 2d at 48; Greenley, supra, 684 F.Supp.3d at 1047; (In re Application of U.S. for an Ord. for Disclosure of Telecommunications Recs. & Authorizing the Use of a Pen Reg. & Trap & Trace (S.D.N.Y. 2005) 405 F. Supp. 2d 435, 441; United States v. Forrester (9th Cir. 2008) 512 F.3d 500, 510.) Although Plaintiff alleges that the IP address could reveal the device's state, city, and zip code, this is not the type of sensitive data to which the Greenley court referred. (Greenley, supra, 684 F.Supp.3d at 1047 ["the Amended Complaint outlines a data collection system that compiles "rich personal data," including the "[i]dentification of sensitive and private characteristics of consumers from the location data sold."].) Plaintiff's device's city and zip code information is not analogous to this type of information, which included "a person's religious affiliation, sexual orientation, and medical condition." (Ibid.) Indeed, a federal district court asked to deny a plaintiff's discovery request that the defendants produce incoming IP addresses on the grounds that the discovery request violated the federal pen-register statute, refused to do so. (Columbia Pictures Indus. v. Bunnell (C.D. Cal. May 29, 2007) No. CV 06-

1093FMCJCX, 2007 WL 2080419, at *11 [“the collection of incoming IP addresses by defendants is exempt from this prohibition pursuant to 18 U.S.C. § 3121(b)(1) because defendants already and necessarily capture such data in their RAM (or Panther’s RAM) to operate the website.”].)

Based on the foregoing, Defendant has demonstrated that the First Amended Complaint fails to allege facts showing that it violated CIPA at Penal Code section 638.51, subdivision (a). Nor has Plaintiff filed any opposition to the instant Demurrer demonstrating what facts could be alleged to support this cause of action, as is Plaintiff’s burden if seeking leave to amend. (Goodman v. Kennedy (1976) 18 Cal.3d 335, 348.) Leave to amend is denied.

Conclusion The Demurrer - with Motion to Strike (CCP 430.10) filed by Plivo Inc., a Delaware corporation with its principal place of business in California on 08/26/2024 is Sustained without Leave to Amend.

Moving party is to give notice.

# EXHIBIT "C"

FILED
Superior Court of California
County of Los Angeles

JAN 28 2025

David W. Slayton, Executive Officer/Clerk of Court
By: A. Ortiz, Deputy

**SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF LOS ANGELES**

**DEPARTMENT 72**

TENTATIVE RULING

| | |
|---|---|
| JERRY AVILES,<br><br>Plaintiff,<br><br>v.<br><br>LIVERAMP, INC.,<br><br>Defendant. | Case No: 24STCV19869<br><br>Hearing Date: January 28, 2025<br>Calendar Number: 9 |

Defendant LiveRamp, Inc. ("Defendant") demurs to the First Amended Complaint ("FAC") filed by Plaintiff Jerry Aviles ("Plaintiff").

The Court SUSTAINS the demurrer WITH LEAVE TO AMEND. Defendant shall have 20 days to amend the First Amended Complaint.

The Court grants leave to amend so that Plaintiff can provide a clear description about what the software at issue is alleged to do other than track visitors' IP addresses. Once the allegations are clear, the Court will be in a better position to determine the legal sufficiency of the allegations under current caselaw.

The parties have waived notice.

<u>Background</u>

This case is brought under the California Invasion of Privacy Act ("CIPA"). The following facts are taken from the allegations of the FAC, which the Court accepts as true for the purposes of the demurrer.

Defendant owns and operates a website located at https://liveramp.com/ (the "Website").

Plaintiff alleges that the Website's code installs a 'PR/TT beacon' (the "Beacon") on the browsers of users who visit the Website. (FAC ¶¶ 54-55.) Plaintiff alleges that Defendant uses the Beacon to collect the IP addresses of visitors. (FAC ¶ 56.) Plaintiff alleges that the operators of the Beacon then use the IP addresses of the Website visitors to send targeted advertisements to users or conduct analytics for the Website, in part through two third-party services. (FAC ¶¶ 57, 61.)

Plaintiff alleges that he visited Defendant's Website in 2024 and that the Website installed the Beacon on Plaintiff's browser. (FAC ¶¶ 77-78.) Plaintiff alleges that the Beacon collects additional information about the user's device and software as well, including their operating system name and version number, browser name and version number, geolocation data, and email address. (FAC ¶ 79.)

Plaintiff filed this action on August 7, 2024. The operative complaint is now the FAC, which raises one claim for violation of CIPA.

On December 2, 2024, Defendant demurred to the FAC. Plaintiff filed an opposition and Defendant filed a reply.

<u>Requests for Judicial Notice</u>

The Court grants the parties' requests for judicial notice and takes notice of the submitted public records. However, the Court notes that the complaints filed by Plaintiff in other cases which Defendant submits do not have clear relevance to the resolution of this case.

<u>Legal Standard</u>

As a general matter, in a demurrer, the defects must be apparent on the face of the pleading or via proper judicial notice. (*Donabedian v. Mercury Ins. Co.* (2004) 116 Cal.App.4th 968, 994.) "A demurrer tests the pleading alone, and not the evidence or facts alleged." (*E-Fab, Inc. v. Accountants, Inc. Servs.* (2007) 153 Cal.App.4th 1308, 1315.) The court assumes the truth of the complaint's properly pleaded or implied factual allegations. (*Ibid.*) The only issue a demurrer is concerned with is whether the complaint, as it stands, states a cause of action. (*Hahn v. Mirda* (2007) 147 Cal.App.4th 740, 747.)

Where a demurrer is sustained, leave to amend must be allowed where there is a reasonable possibility of successful amendment. (*Goodman v. Kennedy* (1976) 18 Cal.3d 335, 348.) The burden is on the plaintiff to show the court that a pleading can be amended successfully. (*Ibid.*; *Lewis v. YouTube, LLC* (2015) 244 Cal.App.4th 118, 226.) However, "[i]f there is any reasonable possibility that the plaintiff can state a good cause

of action, it is error to sustain a demurrer without leave to amend." (*Youngman v. Nevada Irrigation Dist.* (1969) 70 Cal.2d 240, 245).

Discussion

A person who has been injured by a violation of CIPA may bring an action against the violator for the greater of $5,000.00 or three times the amount of actual damages, if any, sustained by the plaintiff. (Pen. Code, § 637.2, subd. (a).) "It is not a necessary prerequisite to an action pursuant to this section that the plaintiff has suffered, or be threatened with, actual damages." (Pen. Code, § 637.2, subd. (c).)

"Except as provided in subdivision (b), a person may not install or use a pen register or a trap and trace device without first obtaining a court order pursuant to Section 638.52 or 638.53." (Pen. Code, § 638.51, subd. (a).) Subdivision (b) permits the use of such a device if, inter alia, the consent of the user has been obtained. (Pen. Code, § 638.51, subd. (b).)

" 'Pen register' means a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication. 'Pen register' does not include a device or process used by a provider or customer of a wire or electronic communication service for billing, or recording as an incident to billing, for communications services provided by such provider, or a device or process used by a provider or customer of a wire communication service for cost accounting or other similar purposes in the ordinary course of its business." (Pen. Code, § 638.50, subd. (b).)

" 'Trap and trace device' means a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." (Pen. Code, § 638.50, subd. (c).)

Plaintiff alleges that Defendant's Website uses either a pen register or a trap and trace device. Plaintiff's FAC, as well as the opposition (Opposition at pp. 14:10-15:7), indicate that the key data collection alleged is that the Website, as well as the third-party software installed on it, collect identifying information about visitors' devices, from visitors' devices.

Historically, courts recognized that "[a] pen register is a mechanical device which records the numbers dialed from a telephone[.]" (*People v. Blair* (1979) 25 Cal.3d 640, 654.) While the statutory definition of a pen register now includes electronic communications in mediums other than simply telephone communications, Plaintiff has

not provided authority showing that the category of information collected by pen registers as defined by the statute has been expanded. The analog of the number dialed by a telephone here is the IP address and related information of a website accessed by a computer – but not the computer's own IP address or identifying information. Although Plaintiff alleges conclusorily that the Beacon is a PR/TT device, Plaintiff does not allege that the Beacon – or any other software installed on users' devices by the Website – collects the outgoing addressing information from visitors' devices or browsers. Plaintiff therefore has not alleged the use of a pen register.

Nor has Plaintiff alleged the use of a trap and trace device. Plaintiff at most alleges that Defendant's Website collects the IP addresses and other information of visitors incoming to the website – the equivalent of if Defendant had used a trap and trace device on its *own* website, rather than on Plaintiff's device.

The problem with this argument is that it is normal for websites to track the IP addresses of their visitors. "Analogously, e-mail and Internet users have no expectation of privacy in the to/from addresses of their messages or the IP addresses of the websites they visit because they should know that this information is provided to and used by Internet service providers for the specific purpose of directing the routing of information. Like telephone numbers, which provide instructions to the 'switching equipment that processed those numbers,' e-mail to/from addresses and IP addresses are not merely passively conveyed through third party equipment, but rather are voluntarily turned over in order to direct the third party's servers." (*U.S. v. Forrester* (9th Cir. 2008) 512 F.3d 500, 510.) As Defendant points out, and as the Court takes judicial notice, the Los Angeles Superior Court's own website contains a notice that it may collect and record the IP addresses of visitors. Without alleging that Defendant installed software on *Plaintiff*'s device or browser that collected incoming contact information to *Plaintiff*'s device, Plaintiff has not alleged anything above and beyond how the internet normally works.

Plaintiff argues at length in his opposition that software is not excluded from being a pen register or trap and trace device by nature of its not being a form of telephonic surveillance. But Defendant does not argue that software cannot be a pen register or trap and trace device.

Plaintiff additionally alleges downstream uses of the data that is collected – but downstream use of data is not a part of the definitions of pen registers or trap and trace devices. It is the method of data collection itself that is at issue.

Because Plaintiff has not alleged that Defendant used a pen register or trap and trace device, the Court sustains the demurrer with leave to amend.

# EXHIBIT "D"

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

**Civil Division**

Central District, Stanley Mosk Courthouse, Department 58

**23STCV30742** September 9, 2024
**MILTITA CASILLAS vs TRANSITIONS OPTICAL, INC., A DELAWARE CORPORATION** 9:00 AM

Judge: Honorable Bruce G. Iwasaki CSR: None
Judicial Assistant: M.F. Lopez ERM: None
Courtroom Assistant: R.E. Lee Deputy Sheriff: None

---

APPEARANCES:

For Plaintiff(s): Scott J. Ferrell (LACC)

For Defendant(s): Anahit Tagvoryan (LACC)

---

**NATURE OF PROCEEDINGS:** Hearing on Defendant's Demurrer - without Motion to Strike; Case Management Conference

The Court issues its tentative ruling which has been posted on the Los Angeles Superior Court's Website in advance of this hearing.

The matter is called for hearing.

Hearing on Demurrer is held.

Both sides submit to the Court's tentative ruling.

The Court rules in accordance with its tentative ruling as follows:

Plaintiff Miltita Casillas (Plaintiff) alleges that upon accessing the website of Defendant Transitions Optical, Inc. (Defendant or Transitions Optical), Defendant secretly installed a “pen register” (“PR”) and “trap and trace” tracking (“TT”) “beacon” (collectively “PR/TT”) on Plaintiff’s web browser to “collect Plaintiff’s IP address.” Plaintiff alleges this violated the California Invasion of Privacy Act (“CIPA”), specifically, Penal Code section 638.51. That section prohibits, subject to exceptions, nonconsensual installation of a pen register or a trap and trace device without a court order. In December 2023, Plaintiff filed a complaint for violation of CIPA, Penal Code section 638.51. On April 23, 2024, the Court sustained with leave to amend Transitions Optical’s demurrer. In May 2024, Plaintiff Casillas filed a First Amended Complaint (FAC). On June 25, 2024, Defendant Transitions Optical demurred to the FAC. On August 26, 2024, Plaintiff filed opposition; Defendant replied.

The Court sustains the demurrer without leave to amend.

**II. Requests for Judicial Notice.**

Plaintiff requests judicial notice of the legislative history of Senate Bill 1428. The request is granted.

**III. Discussion**

**A. Legal Standard**

A demurrer is an objection to a pleading, the grounds for which are apparent from either the face of the complaint or a matter of which the court may take judicial notice. (Code Civ. Proc., § 430.30, subd. (a); *see also Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) The purpose of a demurrer is to challenge the sufficiency of a pleading "by raising questions of law." (*Postley v. Harvey* (1984) 153 Cal.App.3d 280, 286.) "In the construction of a pleading, for the purpose of determining its effect, its allegations must be liberally construed, with a view to substantial justice between the parties." (Code Civ. Proc., § 452.) The court " ' "treat[s] the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law . . .." ' " (*Berkley v. Dowds* (2007) 152 Cal.App.4th 518, 525.)

**B. Pertinent provisions of California Invasion of Privacy Act.**

"Except as provided in subdivision (b), a person may not install or use a pen register or a trap and trace device without first obtaining a court order pursuant to Section 638.52 or 638.53." (Pen. Code, §638.51, subd. (a).) "A violation of this section is punishable by a fine not exceeding two thousand five hundred dollars ($2,500), or by imprisonment in the county jail not exceeding one year, or by imprisonment pursuant to subdivision (h) of Section 1170, or by both that fine and imprisonment." (Pen. Code, §638.51, subd. (a).)

"'Pen register' means a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication. 'Pen register' does not include a device or process used by a provider or customer of a wire or electronic communication service for billing, or recording as an incident to billing, for communications services provided by such provider, or a device or process used by a provider or customer of a wire communication service for cost accounting or other similar purposes in the

ordinary course of its business." (Pen. Code, §638.50, subd. (b).)

" 'Trap and trace device' means a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." (Pen. Code, §638.50, subd. (c).)

"Any person who has been injured by a violation of this chapter may bring an action against the person who committed the violation for the greater of the following amounts: (1) Five thousand dollars ($5,000) per violation. [¶] (2) Three times the amount of actual damages, if any, sustained by the plaintiff." (Pen. Code, §637.2, subd. (a).)

"It is not a necessary prerequisite to an action pursuant to this section that the plaintiff has suffered, or be threatened with, actual damages." (Pen. Code, §637.2, subd. (c).)

The legislative purpose of the Pen Register statute was to authorize law enforcement to seek orders for telephone surveillance. Section 638.50 does not address the privacy rights of Internet users.

**C. Allegations in First Amended Complaint**

The FAC here is one of many nearly identical complaints filed by a self-described tester plaintiff. (FAC ¶ 4.) The FAC is noteworthy for pleading a series of hypothetical possibilities. There are few specific facts concerning either Plaintiff or Defendant.

Paragraphs 20 through 30 of the First Amended Complaint purport to describe what website operators "can" do, describing hypothetical events having no specific relation to either Plaintiff or Defendant. "Some rogue website operators, however, secretly attach a 'tracking beacon' to visitor devices that are then used to track and surveil users." (FAC ¶ 20.) The FAC then alleges that "tracking software will connect fragments of information" and "connects and correlates 'undeclared identifiers.'" (*Id.* ¶ 21.) A "website owner can correlate a grouping of fragments and the connections between them to create a unique digital profile of each individual website visitor." (*Id.* ¶ 22.) A further hypothetical scenario is set forth in paragraph 23: "If a website owner can link a unique digital profile created by digital fingerprinting to a particular individual, the website owner can assemble a detailed picture of a person's private life…." The FAC continues in this vein, with a fictional chart and a description of the potential economic value of such digital profiles. (*Id.* ¶¶ 24-30.)

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
**Civil Division**
Central District, Stanley Mosk Courthouse, Department 58

**23STCV30742** September 9, 2024
**MILTITA CASILLAS vs TRANSITIONS OPTICAL, INC., A DELAWARE CORPORATION** 9:00 AM

Judge: Honorable Bruce G. Iwasaki CSR: None
Judicial Assistant: M.F. Lopez ERM: None
Courtroom Assistant: R.E. Lee Deputy Sheriff: None

---

In paragraphs 31 through 45, the FAC continues to allege no conduct by Defendant distinct from what is done by any website operator, and alleges no harm to Plaintiff. The FAC states that a "pen register" and "trap and trace" device" are referred to as "PR/TT." (FAC ¶ 13.) After a lengthy exposition, the FAC makes assertions that are inconsistent: "Because the PR/TT beacon captures the outgoing information – the IP address – from the visitors to websites, it is a 'pen register'" under Penal Code section 638.50. (*Id.* ¶ 45.) Two points about this assertion are noteworthy. First, after distinguishing between a "pen register" and a "trap and trace device" (*Id.* ¶ 13), paragraph 45 conflates the two. Second, the assertion is a tautology: a pen register is a pen register.

The exposition that concludes with paragraph 45 asserts that the only outgoing information even hypothetically captured by the so called "beacon" is the website visitor's Internet Protocol (IP) address. The FAC explains that the IP address is a "unique identifier for a device" (*Id.* ¶ 34.) and "enables a device to communicate with another device – such as a computer's browser communicating with a server…." (*Id.* ¶ 35.) Despite dark, vague hints about the possibility that highly sensitive personal information may be accessed (FAC ¶ 21), the only data assertedly captured is the IP address. (FAC ¶¶ 33, 37, 38, 39, 40, 41, 42 and 45.) To this point, the FAC is merely describing what happens every time any user accesses any website. Any computer that is used to access the internet needs an IP address to do so. (*U.S. v. Forrester* (9th Cir. 2008) 512 F.3d 500, 510, fn. 5 ["Every computer or server connected to the Internet has a unique IP address."](*Forrester*).)**[1]**

FAC paragraphs 47 through 68 do not specifically plead Defendant's conduct, but primarily that of unnamed companies "such as" Defendant. For instance, companies "like Defendant" and an unnamed PR/TT "developer" share data. (FAC ¶¶ 67-68) Similarly, paragraphs 69 through 76, which purport to allege Plaintiff's experience, are completely generic, with no specifics regarding dates. Plaintiff asserts that Defendant used the "PR/TT beacon to collect Plaintiff's IP address." (FAC ¶ 70.) Then Defendant and the unidentified "developer" use this information to "boost" their revenue. (*Id.* ¶ 71.) Plaintiff pleads that she did not consent to Defendant using the PR/TT beacon on her browser. (*Id.* ¶¶ 53, 76.) She further pleads that Defendant did not obtain a court order before doing so. (*Id.* ¶ 76.) Plaintiff describes no actual instance of Defendant obtaining unauthorized access to her private information. She offers no specifics about her accessing Defendant's website, but vaguely alleges a purported investigation "via a computer expert," who is unidentified. Although beginning with paragraph 78, Plaintiff alleges a cause of action for invasion of privacy, she fails to allege how her privacy was invaded. She pleads, in fact, that whatever Defendant allegedly installed, "does not collect the

contents of Plaintiff's electronic communications" at all. (*Id.* ¶ 84.)

Plaintiff alleges that "spyware beacons" detected on Defendant's website are identified in Exhibit 1 to the FAC. (¶ 54.) The exhibit is illegible, and no authenticating information is provided. The FAC does not allege that what the exhibit purports to show has anything to do with any actual encounter Plaintiff had with the website.

**D. The parties' contentions.**

Defendant Transitions Optical contends that the FAC (1) fails to allege that it used a pen register in operating its website, (2) merely alleges that Defendant collected the IP address of Plaintiff's computer, to which she has, in these circumstances, no reasonable expectation of privacy, and (3) that Plaintiff lacks standing to sue because he fails to allege any cognizable injury.

Plaintiff contends (1) the pen register statute applies to website access, and (2) that she has a reasonable expectation in the privacy in her computer's IP address. She also (3) denies that Defendant's website provides an electronic communications service.

**E. Plaintiff fails to plead a violation of Penal Code section 638.51.**

Beyond hypothetical scenarios, the only specific act the FAC alleges is that when Plaintiff used her computer voluntarily to access the Transitions Optical website, Defendant "collected Plaintiff's IP address." (FAC ¶ 70.) But this occurs when any user accesses any website. As Plaintiff himself alleged, the IP address "enables a device to communicate with another device – such as a computer's browser communicating with a server…." (*Id.* ¶ 35.) What makes the internet possible – devices communicating with each other – is the communication of the device's protocol. "IP addresses are … conveyed to websites that an internet user visits, and administrators of websites…can see the IP addresses of visitors to their sites. However, site administrators do not possess information linking a given IP address to a particular person." (*U.S. v. Christie* (3d Cir. 2010) 624 F.3d 558, 563.) Here, Plaintiff chose to allow Defendant to "collect" its IP address. " '[A]n internet user generates the IP address data … only by making the affirmative decision to access a website or application." (*U.S. v. Morel* (1st Cir. 2019) 922 F.3d 1, 9.)

The pen register statute did not, and does not, criminalize the process by which all websites communicate with all users who choose to access them. The terms of Penal Code

section 638.50 make that clear. A pen register does not include a "process used by a provider or customer of [an] … electronic communication service for … communications service provided by such provider … or other similar services in the ordinary course of business." (Pen. Code, § 638.50, subd. (b).) Moreover, even if the process of collecting IP addresses is deemed a pen register, there is no liability when an electronic communication service does so to "operate, maintain, and test [an] … electronic communication service" or to "record the fact that [an] … electronic communication was initiated or completed" to protect against unlawful or abusive use of the service. (Pen. Code, § 638.51, subd. (b).) Given the breadth of the statutory definition, Defendant's website is an electronic communication service, and under the terms of the statute, obtaining IP addresses from ordinary user access does not violate the pen register statute.**[2]**

Cases interpreting the analogous federal pen register statute demonstrate that there is no cause of action under Penal Code section 638.51 for the conduct alleged here. Assuming that a pen register captures outgoing IP addresses, "the collection of incoming IP addresses by [a website operator] is exempt" from penalty under 18 U.S.C. section 3121(b)(1), because defendants "necessarily capture such data …to operate the website." (*Columbia Pictures Industries v. Bunnell* (C.D. Cal. May 29, 2007, CV 06-1093FMCJCX) 2007 WL 2080419 at p. *11.) The federal statute is mirrored by Penal Code section 638.51, subdivision (b)(1), which authorizes a provider of an electronic communications service to use a pen register to "operate, maintain, and test [an] … electronic communications service." (See also *Capitol Records, Inc. v. Thomas Rasset* (D. Minn. June 11, 2009, No. 06-1497) 2009 WL 1664468, at p. 3 ["the Pen Register Act cannot be intended to prevent individuals who receive electronic communications from recording the IP information sent to them. If it did apply to those cases, then the Internet could not function because standard computer operations require recording IP addresses so parties can communicate with one another over the Internet"].) Plaintiff fails to address these authorities.

**F. Plaintiff has no privacy interest in the Internet Protocol address of her computer, and by accessing Defendant's website, she had no reasonable expectation that the IP address was private.**

Even if it is assumed that the ability of a website operator to obtain a user's IP address constitutes operating a pen register, the issue here is whether, when Plaintiff chose to access Transitions Optical's website, she had a reasonable expectation in the privacy of her computer's IP address. Based on relevant authorities, the answer is no.

Although the FAC alludes to hypothetical "digital fingerprinting" by which an imaginary

website might identify the location, race, browsing history, and other traits of each user (FAC ¶ 24.), the only information Plaintiff alleges she provided to Defendant – as necessary when she accessed the Transitions Optical website – was her computer's Internet Protocol address. (FAC ¶¶ 52, 60.)

To establish her claim that Defendant violated her right of privacy, Plaintiff must establish a specific, legally protected privacy interest in her computer's IP address, and entertain a reasonable expectation of privacy. (*Hill v. National Collegiate Athletic Association* (1994) 7 Cal.4th 1, 35.)

In assessing claims that one's personal information has been improperly accessed or exposed, courts distinguish between communication *content* and records or information about a communication. The former is a protected privacy interest; the latter is not. The United States Supreme Court explained this when, in *Smith v. Maryland* (1979) 442 U.S. 735, it held that warrantless installation of a pen register by a telephone company was not a "search" within the Fourth Amendment. There, the pen register " 'record[ed] numbers dialed on a telephone by monitoring the electrical impulses caused when the dial on the telephone is released. It does not overhear oral communications and does not indicate whether calls are actually completed." (*Id.* at p. 736, n.1.) The high court distinguished between a record of information about a communication, and, on the other hand, the contents of communication. In contrast to a listening device, "pen registers do not acquire the *contents* of communications." (*Id.* at p. 741, original italics.) The Supreme Court concluded that the petitioner "entertained no actual expectation of privacy in the phone numbers she dialed, and that, even if she did, her expectation was not 'legitimate'" and thus, use of the pen register was not a "search." (*Id.* at p. 745-746.) Plaintiff's effort to dismiss this foundational holding is unpersuasive. (Oppos. p. 16.)

Courts have repeatedly applied *Smith's* reasoning to IP addresses and concluded that no privacy interest is violated when a user shares the information with the service provider or when accessing a website. As explained above, Plaintiff alleges that when she accessed the Transitions Optical website, Defendant "collected" her computer's IP address.**[3]**

In *U.S. v. Forrester* (9th Cir. 2008) 512 U.S. 500, the Ninth Circuit relied on *Smith* to reject a challenge to the government's computer surveillance, which had gathered, among other information, IP addresses of websites visited. "[T]he Court in *Smith* … drew a clear line between unprotected addressing information and protected content information…." (*Id.* at p. 510.) The Court of Appeals reasoned that the IP information was analogous to the record of phone numbers dialed in *Smith.* "Internet users have no expectation of privacy in the…IP

addresses of the websites they visit because they should know that this information is provided to and used by Internet service providers for the specific purpose of directing the routing of information…. IP addresses are not merely passively conveyed through the third party equipment, but rather are voluntarily turned over in order to direct the third party's servers." (*Ibid.*) The *Forrester* court found that the surveillance in question could be compared to government review of physical mail. "In a line of cases dating back to the nineteenth century, the Supreme Court has held that the government cannot engage in a warrantless search of the contents of sealed mail, but can observe whatever information people put on the outside of mail, because that information is voluntarily transmitted to third parties." (*Id.* at p. 511.)

The Ninth Circuit has reiterated its view that there is no expectation of privacy in an IP address. In *In re Zynga Privacy Litigation* (9th Cir. 2014) 750 F.3d 1098 (*Zynga*), the court affirmed dismissal of a suit filed by users of a social networking site. The Ninth Circuit reasoned that "courts have long distinguished between the contents of a communication (in which a person may have a reasonable expectation of privacy) and record information about those communications (in which a person does not have a reasonable expectation of privacy)." (*Id.* at p. 1108.) Accordingly, said the panel, "we have allowed the warrantless collection of email and IP addresses under the same reasoning because email and IP addresses 'constitute addressing information and do not necessarily reveal any more about the underlying contents of communication than do phone numbers.'" (*Ibid.*) Here, the FAC cites *Zynga* in conceding that Defendant did "not collect the content of Plaintiff's electronic communications with the Website." (FAC ¶ 84.)

In *U.S. v. Rosenow* (9th Cir. 2022) 50 F.4th 715, the court rejected a claim that a warrantless subpoena for IP information was an unconstitutional search. Relying on *Forrester,* the *Rosenow* court concluded that a defendant has no reasonable expectation of privacy in IP addresses. (*Id.* at p. 738.) While Plaintiff argues that *Forrester* should not be followed because of technological developments, that is not the view of more recent circuit court precedent.

The California Court of Appeal also followed *Forrester*. In *People v. Stipo* (2011) 195 Cal.App.4th 664, the court held: "A subscriber has no expectation of privacy in the subscriber information she supplies to her Internet provider. Therefore, her challenge to a warrant requiring her Internet provider to identify him through her Internet Protocol (IP) number has no merit." (*Id.* at p. 666.)

The view that there is no privacy interest in IP addresses provided to a service provider or website is well established. This is due in part because a user voluntarily shares her computer's

IP address every time she accesses a website. (See *U.S. v. Morel* (1st Cir. 2019) 922 F.3d 1, 9 [defendant had no reasonable expectation of privacy in her IP address; "an internet user generates the IP data…only by making the affirmative decision to access a website"]; *U.S. v. Caira* (7th Cir. 2016) 833 F.3d 803, 806 [IP addresses are broadcast "far and wide in the course of normal internet use"; hence there is no reasonable expectation of privacy in IP address]; *U.S. v. Wellbeloved-Stone* (4th Cir. 2019) 777 Fed. Appx. 605 [no expectation of privacy in IP address and internet subscriber information]; *U.S. v. Gottesfeld* (D.Mass. 2018) 319 F.Supp.3d 548 [use of pen register did not violate Fourth Amendment rights because no reasonable expectation of privacy in IP address routing information]; *U.S. v. Knowles* (D.S.C. 2016) 207 F.Supp.3d 585 [no reasonable expectation of privacy in IP address which a user voluntarily provides to third parties every time she uses the internet]; *Heeger v. Facebook, Inc.* (N.D.Cal. 2020) 509 F.Supp.3d 1182, 1189 ["Plaintiffs do not plausibly allege anything more than the collection of IP addresses, and there is no legally protected privacy interest in IP addresses"].) With respect to *Heeger*, Plaintiff's efforts to distinguish it are unconvincing. The case is one of many that hold there is no privacy interest in IP addresses or no reasonable expectation of privacy in IP addresses. Plaintiff has identified no case involving a voluntary user of a website who, by allowing her IP address to be "collected" by the website operator, can nevertheless maintain a claim for invasion of privacy.

Plaintiff contends that "California law has expressly recognized a legally protected privacy interest in IP addresses." She relies on sections of the California Electronic Privacy Act, Penal Code sections 1546, 1546.1 and 1546.4, which prohibit Internet Service Providers from providing a user's IP address without a warrant or other limited exception. These statutes do not address a user's voluntary access of a website that necessarily results in the website obtaining the user's IP address.

Plaintiff also cites the California Consumer Privacy Act of 2018, in which IP addresses are recognized as personal information. Civil Code section 1798.140, subdivision (v) defines personal information and governs the conduct of businesses that collect such information. Plaintiff cites no authority indicating that this statute abrogates the cases holding that there is no reasonable expectation in the privacy of an IP address when it is voluntarily provided to a website by the mere act of accessing the website.

Plaintiff also relies on *In re: Google RTB Consumer Privacy Litigation* (N.D. Cal. 2022) 606 F.Supp.3d 935, to argue that persons have a reasonable expectation of privacy over IP addresses. She misconceives the case. The user information Google allegedly directed to third parties was "content" relating to the substance and meaning of the communication. The decision

relied on the Ninth Circuit ruling in *Zynga, supra,* 750 F.3d. at p. 1107, to distinguish between "content" – which is a protected privacy interest, and record information such as an IP address, which is not so protected. (*Google RTB, supra,* 606 F.Supp.3d at p. 949.)

Plaintiff continues to rely on *Greenley v. Kochava* (S.D. Cal. 2023) 684 F.Supp.3d 1024. As we explained in sustaining the demurrer to the original complaint, the defendant in that case was a third-party data broker, not a website operator. Because the conduct of the defendant and the relationship to the plaintiff were quite different from the allegations here, *Greenley* does not support Plaintiff's argument.

The FAC fails to allege a cause of action for invasion of privacy by Defendant Transitions Optical. Plaintiff has not shown a reasonable possibility of curing the defects in her complaint. Accordingly, leave to amend is denied.

**IV. Conclusion**

Defendant's demurrer to the FAC is sustained without leave to amend.

[1] A leading case explains the function of the IP address. "A computer attached to the Internet uses a unique numerical address called an Internet Protocol address, or IP address, to identify itself to other computers. *Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Svcs.,* 545 U.S. 967, 987 n. 1 (2005) ("IP addresses identify computers on the Internet, enabling data packets transmitted from other computers to reach them."); *United States v. Yu,* 411 Fed.Appx. 559, 560 n. 1 (4th Cir. 2010) ("Each computer connected to the Internet is assigned a unique numerical address, otherwise known as an Internet protocol or IP address, to identify itself and facilitate the orderly flow of electronic traffic") (quoting *Peterson v. Nat'l Telecomm'ns & Info. Admin.,* 478 F.3d 626, 629 (4th Cir.2007)). In computer terms, an IP address is a 32–bit integer that can be stamped on network communications or translated into human-readable format. The most basic communication standard underlying the Internet, called the Internet Protocol, uses IP addresses to transmit bundles of data, called "packets," through the network. [Citation.] …Each packet is stamped with a source IP address and a destination IP address, and every time a router receives a packet, it examines the destination address, looks up routing information for that address in the database, and forwards the packet toward the right network. [Citation.] This process is repeated until the packet reaches a router that can transmit directly to the destination IP address. Clearly, correct IP addressing information is essential to Internet technology.

"A human user may not know the specific IP address assigned to her network connection,

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
**Civil Division**
Central District, Stanley Mosk Courthouse, Department 58

**23STCV30742**
**MILTITA CASILLAS vs TRANSITIONS OPTICAL, INC., A DELAWARE CORPORATION**

September 9, 2024
9:00 AM

Judge: Honorable Bruce G. Iwasaki
Judicial Assistant: M.F. Lopez
Courtroom Assistant: R.E. Lee

CSR: None
ERM: None
Deputy Sheriff: None

---

or the IP address of a remote computer or website, even though the computer must know those addresses as a prerequisite to Internet communications…. Thus, when a person attempts to access a named computer, the person's computer finds the IP address of the remote site by matching, or "resolving," the name to the proper IP address, then contacts the website over the Internet using that IP address.

"From the perspective of the destination computer, it is an extraordinarily simple task to determine the IP address of the computer seeking to access it…. Most websites maintain standard logs of connecting IP addresses, along with date and time information, and may even include information about the user associated with the connection. [Citation.] Such information is routinely gathered to evaluate usage patterns, engage in site marketing analysis, troubleshoot problems, or to gather feedback.. . . .

"IP address information, by itself, cannot identify a particular person."

(*In re Application of the U.S. for an Order Pursuant to 18 U.S.C. sec. 2703(d)* (E.D. Va. 2011) 830 F.Supp.2d 114, 119-120.)

[2] "Electronic communication" is broadly defined to include "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature in whole or in part by a wire, radio, electromagnetic, photoelectric or photo-optical system." (Pen. Code, § 629.51, subd. (a)(2).) The broad definition of "electronic communications" reasonably indicates that an electronic communications service provider includes website operators. Plaintiff's argument that Defendant is not an electronic communications service provider lacks support. Her argument that Defendant as a website operator is not an internet service provider or a wireless telephone company are irrelevant. The text of the pen register statute does not impose liability on website operators that obtain IP addresses as a matter of course when users access their site.

[3] Despite Plaintiff's murky allusions to an unnamed "developer" of the purported "beacon," she nowhere alleges that Defendant shared Plaintiff's computer's IP address with anyone else without Plaintiff's consent.

The Court orders the Amended Complaint (1st) filed by Miltita Casillas on 05/23/2024 dismissed without prejudice.

Case Management Conference is placed off calendar.

Clerk gives notice.

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
**Civil Division**
Central District, Stanley Mosk Courthouse, Department 58

**23STCV30742**
**MILTITA CASILLAS vs TRANSITIONS OPTICAL, INC., A DELAWARE CORPORATION**

September 9, 2024
9:00 AM

Judge: Honorable Bruce G. Iwasaki
Judicial Assistant: M.F. Lopez
Courtroom Assistant: R.E. Lee

CSR: None
ERM: None
Deputy Sheriff: None

Certificate of Mailing is attached.

# EXHIBIT "E"

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
**Civil Division**
Central District, Stanley Mosk Courthouse, Department 72

**24STCV11264**
**MARIELITA PALACIOS vs FANDOM, INC., A DELAWARE CORPORATION, WITH ITS PRINCIPAL PLACE OF BUSINESS IN CALIFORNIA,**

September 24, 2024
9:30 AM

Judge: Honorable Joseph Lipner
Judicial Assistant: G. Morales
Courtroom Assistant: F. Estrada

CSR: None
ERM: None
Deputy Sheriff: None

APPEARANCES:

For Plaintiff(s): No Appearances

For Defendant(s): No Appearances

**NATURE OF PROCEEDINGS:** Hearing on Demurrer - with Motion to Strike (CCP 430.10)

The matter is not called for hearing.

The Court posted its tentative ruling online in advance of this hearing.

Plaintiff informed the court telephonically on 09/23/2024 that both parties have reviewed the Court's tentative ruling and that both parties submit on the tentative ruling.

The Court adopts its tentative ruling as the Order of the Court as follows:

The Motion to Strike (not initial pleading) filed by Fandom, Inc., a Delaware corporation, with its principal place of business in California, on 08/12/2024 is Sustained with Leave to Amend.

Defendant Fandom, Inc. ("Defendant") demurs to the First Amended Complaint ("FAC") filed by Plaintiff Marielita Palacios ("Plaintiff"). Defendant additionally moves to strike certain portions of the FAC related to punitive damages.

The Court SUSTAINS the demurrer WITH LEAVE TO AMEND. Plaintiff shall have 15 days from the issuance of this order to amend her complaint.

The Court DENIES the motion to strike as MOOT.

## Background

This case is brought under the California Invasion of Privacy Act ("CIPA"). The following facts

are taken from the allegations of the FAC, which the Court accepts as true for the purposes of the demurrer.

Defendant owns and operates the website Fandom.com (the "Website"), a publicly-accessible entertainment website.

When a user accesses a website, the website exchanges information with the user's computer so that the website server can provide the user's computer with instructions on how to load the website. Plaintiff alleges that, as a part of this process, the Website causes users' computers to install code (the "Accused Code") which records the user's device's IP address. (Complaint ¶ 52.) Plaintiff alleges that the Accused Code then causes the user's browser to send the user's IP address to third-party software developers when the user visits the website for the first time and upon subsequent visits. (Complaint ¶ 53.)

Plaintiff visited the Website in February 2024. Plaintiff alleges that the Accused Code collected her IP address.

Plaintiff filed this action on May 6, 2024. The operative complaint is now the FAC, which raises one claim for violation of CIPA, Penal Code section 638.51, subd. (a).

## Requests for Judicial Notice

The Court grants the parties' requests for judicial notice and takes notice of the submitted legislative materials as public records.

## Legal Standard

### *Demurrer*

As a general matter, in a demurrer, the defects must be apparent on the face of the pleading or via proper judicial notice. (*Donabedian v. Mercury Ins. Co.* (2004) 116 Cal.App.4th 968, 994.) "A demurrer tests the pleading alone, and not the evidence or facts alleged." (*E-Fab, Inc. v. Accountants, Inc. Servs.* (2007) 153 Cal.App.4th 1308, 1315.) The court assumes the truth of the complaint's properly pleaded or implied factual allegations. (*Ibid.*) The only issue a demurrer is concerned with is whether the complaint, as it stands, states a cause of action. (*Hahn v. Mirda*

(2007) 147 Cal.App.4th 740, 747.)

Where a demurrer is sustained, leave to amend must be allowed where there is a reasonable possibility of successful amendment. (*Goodman v. Kennedy* (1976) 18 Cal.3d 335, 348.) The burden is on the plaintiff to show the court that a pleading can be amended successfully. (*Ibid*.; *Lewis v. YouTube, LLC* (2015) 244 Cal.App.4th 118, 226.) However, "[i]f there is any reasonable possibility that the plaintiff can state a good cause of action, it is error to sustain a demurrer without leave to amend." (*Youngman v. Nevada Irrigation Dist.* (1969) 70 Cal.2d 240, 245).

### *Motion to Strike*

The court may, upon a motion, or at any time in its discretion, and upon terms it deems proper, strike any irrelevant, false, or improper matter inserted in any pleading. (Code Civ. Proc., § 436(a).) The court may also strike all or any part of any pleading not drawn or filed in conformity with the laws of this state, a court rule, or an order of the court. (Code Civ. Proc., § 436(b).) The grounds for a motion to strike are that the pleading has irrelevant, false or improper matter, or has not been drawn or filed in conformity with laws. (Code Civ. Proc., § 436.) The grounds for moving to strike must appear on the face of the pleading or by way of judicial notice. (Code Civ. Proc., § 437.)

## Discussion

### *Demurrer*

A person who has been injured by a violation of CIPA may bring an action against the violator for the greater of $5,000.00 or three times the amount of actual damages, if any, sustained by the plaintiff. (Pen. Code, § 637.2, subd. (a).) "It is not a necessary prerequisite to an action pursuant to this section that the plaintiff has suffered, or be threatened with, actual damages." (Pen. Code, § 637.2, subd. (c).)

"Except as provided in subdivision (b), a person may not install or use a pen register or a trap and trace device without first obtaining a court order pursuant to Section 638.52 or 638.53." (Pen. Code, § 638.51, subd. (a).)

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
**Civil Division**
Central District, Stanley Mosk Courthouse, Department 72

**24STCV11264**
**MARIELITA PALACIOS vs FANDOM, INC., A DELAWARE CORPORATION, WITH ITS PRINCIPAL PLACE OF BUSINESS IN CALIFORNIA,**

September 24, 2024
9:30 AM

Judge: Honorable Joseph Lipner
Judicial Assistant: G. Morales
Courtroom Assistant: F. Estrada

CSR: None
ERM: None
Deputy Sheriff: None

" 'Pen register' means a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication. 'Pen register' does not include a device or process used by a provider or customer of a wire or electronic communication service for billing, or recording as an incident to billing, for communications services provided by such provider, or a device or process used by a provider or customer of a wire communication service for cost accounting or other similar purposes in the ordinary course of its business." (Pen. Code, § 638.50, subd. (b).)

" 'Trap and trace device' means a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." (Pen. Code, § 638.50, subd. (c).)

As Plaintiff explains, "[i]n plain English, a 'pen register' is a 'device or process' that records outgoing information, whereas a "trap and trace device' is a 'device or process' that records incoming information. A 'pen register' and 'trap and trace device' are collectively referred to herein as 'Pen-Traps' or 'PR/TT'." (FAC ¶ 13.) "Historically, law enforcement used 'pen registers' to record the numbers of outgoing calls from a particular telephone line, while law enforcement used 'trap and trace devices' to record the numbers of incoming calls to that particular telephone line. As technology advanced, however, courts have expanded the application of those surveillance devices consistent with changes in both federal and state law." (FAC ¶ 14.)

Defendant argues that Plaintiff has failed to allege that Defendant's website used a pen register or trap and trace device. Defendant argues that outgoing "dialing, routing, addressing, or signaling information", as defined in Penal Code, section 638.50, subd. (b), refers only to *destination* information – i.e., the information of the server that a computer is connecting to, but *not* the computer's own IP address. Plaintiff argues that a computer's IP address is included in outgoing "dialing, routing, addressing, or signaling information" within the meaning of the pen register statute.

Historically, courts recognized that "[a] pen register is a mechanical device which records the numbers dialed from a telephone[.]" (*People v. Blair* (1979) 25 Cal.3d 640, 654.) While the statutory definition of a pen register now includes electronic communications in mediums other than simply telephone communications, Plaintiff has not provided authority showing that the

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
**Civil Division**
Central District, Stanley Mosk Courthouse, Department 72

**24STCV11264**
**MARIELITA PALACIOS vs FANDOM, INC., A DELAWARE CORPORATION, WITH ITS PRINCIPAL PLACE OF BUSINESS IN CALIFORNIA,**

September 24, 2024
9:30 AM

Judge: Honorable Joseph Lipner
Judicial Assistant: G. Morales
Courtroom Assistant: F. Estrada

CSR: None
ERM: None
Deputy Sheriff: None

category of information collected by pen registers as defined by the statute has been expanded. The analog of the number dialed by a telephone here is the IP address and related information of a website accessed by a computer – but not the computer's own IP address.

Legislative materials from AB 929, which expanded the ability of law enforcement to use pen registers, also support this interpretation. "One of the tools available to law enforcement is called a 'pen register' which allows law enforcement officers to record all outgoing numbers from a particular telephone line. In addition, another tool law enforcement uses is called a 'trap and trace device' which allows them to record what numbers have called a specific telephone line, i.e. all incoming phone numbers." (Defendant's Request for Judicial Notice, Ex. 3 at p. 3, Concurrence in Senate Amendments, AB 929, June 17, 2015.)

The Court concludes that, as alleged, the Accused Code is not a pen register because it does not collect the destination information of communications from Plaintiff's computer.

Plaintiff argues that the Accused Code alternatively constitutes a trap and trace device, which is also prohibited by section 638.51. Plaintiff has not alleged that the Accused Code collects incoming information directed toward Plaintiff's computer. However, it is not entirely clear that Plaintiff could not allege such a function. The Court therefore sustains the demurrer with leave to amend.

## *Motion to Strike*

Because the Court sustains the demurrer with leave to amend, the Court denies the motion to strike as moot.

Plaintiff is to give notice.

# EXHIBIT "F"

LEGISLATIVE COUNSEL BUREAU
STATE OF CALIFORNIA
AUTHENTICATED
ELECTRONIC LEGAL MATERIAL

**Assembly Bill No. 929**

CHAPTER 204

An act to add Sections 638.50, 638.51, 638.52, and 638.53 to the Penal Code, relating to privacy.

[Approved by Governor August 13, 2015. Filed with Secretary of State August 13, 2015.]

LEGISLATIVE COUNSEL'S DIGEST

AB 929, Chau. Pen registers: authorized use.

Existing law authorizes the Attorney General or a district attorney to make a written application to a judge of a superior court for an order permitting the interception of wire communication and electronic communication, as defined. Existing law permits an application to be made informally and granted orally if an emergency situation exists, and other factors are present. Existing law conditions the granting of an oral approval on the filing of a written application by midnight of the second full court day after the oral approval is made. Existing law prohibits a communication interception from lasting for longer than 30 days. Existing law permits an extension of the original order, not to exceed 30 days, upon a showing that there is continued probable cause that the information sought is likely to be obtained under the extension.

This bill would prohibit a person, other than a provider of electronic or wire communication service for specified purposes, from installing or using a pen register or a trap and trace device, as defined. The bill would authorize a peace officer to make a written application to a magistrate for an order permitting the installation and use of a pen register or a trap and trace device. The bill would require the magistrate to enter an ex parte order authorizing the installation and use of a pen register or a trap and trace device only in specified circumstances and would permit the magistrate to question the peace officer pertaining to the need for the information. The bill would also permit an application to be made informally and granted orally if an emergency situation exists, and other factors are present. The bill would condition the grant of an oral approval on the filing of a written application by midnight of the second full court day after the pen register or trap and trace device is installed. The bill would prohibit the installation and use of a pen register or trap and trace device for longer than 60 days. The bill would permit an extension of the original order, not to exceed 60 days, upon a showing that there is continued probable cause that the information sought is likely to be obtained under the extension. The bill would clarify that any location information obtained by a pen register or a track and trace device is limited to the information that can be determined from the telephone number.

The bill would make the prohibited installation or use of a pen register or a trap and trace device punishable by a fine not exceeding $2,500, or by imprisonment in the county jail not exceeding 1 year, or by imprisonment in state prison for offenders with specified prior convictions, or by both that fine and imprisonment. By creating a new crime, the bill would impose a state-mandated local program.

The California Constitution requires the state to reimburse local agencies and school districts for certain costs mandated by the state. Statutory provisions establish procedures for making that reimbursement.

This bill would provide that no reimbursement is required by this act for a specified reason.

*The people of the State of California do enact as follows:*

SECTION 1. Section 638.50 is added to the Penal Code, to read:

638.50. For purposes of this chapter, the following terms have the following meanings:

(a) "Wire communication" and "electronic communication" have the meanings set forth in subdivision (a) of Section 629.51.

(b) "Pen register" means a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication. "Pen register" does not include a device or process used by a provider or customer of a wire or electronic communication service for billing, or recording as an incident to billing, for communications services provided by such provider, or a device or process used by a provider or customer of a wire communication service for cost accounting or other similar purposes in the ordinary course of its business.

(c) "Trap and trace device" means a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication.

SEC. 2. Section 638.51 is added to the Penal Code, to read:

638.51. (a) Except as provided in subdivision (b), a person may not install or use a pen register or a trap and trace device without first obtaining a court order pursuant to Section 638.52 or 638.53.

(b) A provider of electronic or wire communication service may use a pen register or a trap and trace device for any of the following purposes:

(1) To operate, maintain, and test a wire or electronic communication service.

(2) To protect the rights or property of the provider.

(3) To protect users of the service from abuse of service or unlawful use of service.

(4) To record the fact that a wire or electronic communication was initiated or completed to protect the provider, another provider furnishing service toward the completion of the wire communication, or a user of that service, from fraudulent, unlawful, or abusive use of service.

(5) If the consent of the user of that service has been obtained.

(c) A violation of this section is punishable by a fine not exceeding two thousand five hundred dollars ($2,500), or by imprisonment in the county jail not exceeding one year, or by imprisonment pursuant to subdivision (h) of Section 1170, or by both that fine and imprisonment.

(d) A good faith reliance on an order issued pursuant to Section 638.52, or an authorization made pursuant to Section 638.53, is a complete defense to a civil or criminal action brought under this section or under this chapter.

SEC. 3. Section 638.52 is added to the Penal Code, to read:

638.52. (a) A peace officer may make an application to a magistrate for an order or an extension of an order authorizing or approving the installation and use of a pen register or a trap and trace device. The application shall be in writing under oath or equivalent affirmation, and shall include the identity of the peace officer making the application and the identity of the law enforcement agency conducting the investigation. The applicant shall certify that the information likely to be obtained is relevant to an ongoing criminal investigation and shall include a statement of the offense to which the information likely to be obtained by the pen register or trap and trace device relates.

(b) The magistrate shall enter an ex parte order authorizing the installation and use of a pen register or a trap and trace device if he or she finds that the information likely to be obtained by the installation and use of a pen register or a trap and trace device is relevant to an ongoing investigation and that there is probable cause to believe that the pen register or trap and trace device will lead to any of the following:

(1) Recovery of stolen or embezzled property.

(2) Property or things used as the means of committing a felony.

(3) Property or things in the possession of a person with the intent to use them as a means of committing a public offense, or in the possession of another to whom he or she may have delivered them for the purpose of concealing them or preventing them from being discovered.

(4) Evidence that tends to show a felony has been committed, or tends to show that a particular person has committed or is committing a felony.

(5) Evidence that tends to show that sexual exploitation of a child, in violation of Section 311.3, or possession of matter depicting sexual conduct of a person under 18 years of age, in violation of Section 311.11, has occurred or is occurring.

(6) The location of a person who is unlawfully restrained or reasonably believed to be a witness in a criminal investigation or for whose arrest there is probable cause.

(7) Evidence that tends to show a violation of Section 3700.5 of the Labor Code, or tends to show that a particular person has violated Section 3700.5 of the Labor Code.

(8) Evidence that does any of the following:

(A) Tends to show that a felony, a misdemeanor violation of the Fish and Game Code, or a misdemeanor violation of the Public Resources Code, has been committed or is being committed.

(B) Tends to show that a particular person has committed or is committing a felony, a misdemeanor violation of the Fish and Game Code, or a misdemeanor violation of the Public Resources Code.

(C) Will assist in locating an individual who has committed or is committing a felony, a misdemeanor violation of the Fish and Game Code, or a misdemeanor violation of the Public Resources Code.

(c) Information acquired solely pursuant to the authority for a pen register or a trap and trace device shall not include any information that may disclose the physical location of the subscriber, except to the extent that the location may be determined from the telephone number. Upon the request of the person seeking the pen register or trap and trace device, the magistrate may seal portions of the application pursuant to People v. Hobbs (1994) 7 Cal.4th 948, and Sections 1040, 1041, and 1042 of the Evidence Code.

(d) An order issued pursuant to subdivision (b) shall specify all of the following:

(1) The identity, if known, of the person to whom is leased or in whose name is listed the telephone line to which the pen register or trap and trace device is to be attached.

(2) The identity, if known, of the person who is the subject of the criminal investigation.

(3) The number and, if known, physical location of the telephone line to which the pen register or trap and trace device is to be attached and, in the case of a trap and trace device, the geographic limits of the trap and trace order.

(4) A statement of the offense to which the information likely to be obtained by the pen register or trap and trace device relates.

(5) The order shall direct, if the applicant has requested, the furnishing of information, facilities, and technical assistance necessary to accomplish the installation of the pen register or trap and trace device.

(e) An order issued under this section shall authorize the installation and use of a pen register or a trap and trace device for a period not to exceed 60 days.

(f) Extensions of the original order may be granted upon a new application for an order under subdivisions (a) and (b) if the officer shows that there is a continued probable cause that the information or items sought under this subdivision are likely to be obtained under the extension. The period of an extension shall not exceed 60 days.

(g) An order or extension order authorizing or approving the installation and use of a pen register or a trap and trace device shall direct that the order be sealed until otherwise ordered by the magistrate who issued the order, or a judge of the superior court, and that the person owning or leasing the line to which the pen register or trap and trace device is attached, or who has been ordered by the court to provide assistance to the applicant, not

disclose the existence of the pen register or trap and trace device or the existence of the investigation to the listed subscriber or to any other person, unless or until otherwise ordered by the magistrate or a judge of the superior court, or for compliance with Sections 1054.1 and 1054.7.

(h) Upon the presentation of an order, entered under subdivisions (b) or (f), by a peace officer authorized to install and use a pen register, a provider of wire or electronic communication service, landlord, custodian, or other person shall immediately provide the peace officer all information, facilities, and technical assistance necessary to accomplish the installation of the pen register unobtrusively and with a minimum of interference with the services provided to the party with respect to whom the installation and use is to take place, if the assistance is directed by the order.

(i) Upon the request of a peace officer authorized to receive the results of a trap and trace device, a provider of a wire or electronic communication service, landlord, custodian, or other person shall immediately install the device on the appropriate line and provide the peace officer all information, facilities, and technical assistance, including installation and operation of the device unobtrusively and with a minimum of interference with the services provided to the party with respect to whom the installation and use is to take place, if the installation and assistance is directed by the order.

(j) Unless otherwise ordered by the magistrate, the results of the pen register or trap and trace device shall be provided to the peace officer at reasonable intervals during regular business hours for the duration of the order.

(k) The magistrate, before issuing the order pursuant to subdivision (b), may examine on oath the person seeking the pen register or the trap and trace device, and any witnesses the person may produce, and shall take his or her affidavit or their affidavits in writing, and cause the affidavit or affidavits to be subscribed by the parties making them.

SEC. 4. Section 638.53 is added to the Penal Code, to read:

638.53. (a) Except as otherwise provided in this chapter, upon an oral application by a peace officer, a magistrate may grant oral approval for the installation and use of a pen register or a trap and trace device, without an order, if he or she determines all of the following:

(1) There are grounds upon which an order could be issued under Section 638.52.

(2) There is probable cause to believe that an emergency situation exists with respect to the investigation of a crime.

(3) There is probable cause to believe that a substantial danger to life or limb exists justifying the authorization for immediate installation and use of a pen register or a trap and trace device before an order authorizing the installation and use can, with due diligence, be submitted and acted upon.

(b) (1) By midnight of the second full court day after the pen register or trap and trace device is installed, a written application pursuant to Section 638.52 shall be submitted by the peace officer who made the oral application to the magistrate who orally approved the installation and use of a pen register or trap and trace device. If an order is issued pursuant to Section

638.52, the order shall also recite the time of the oral approval under subdivision (a) and shall be retroactive to the time of the original oral approval.

(2) In the absence of an authorizing order pursuant to paragraph (1), the use shall immediately terminate when the information sought is obtained, when the application for the order is denied, or by midnight of the second full court day after the pen register or trap and trace device is installed, whichever is earlier.

(c) A provider of a wire or electronic communication service, landlord, custodian, or other person who provides facilities or technical assistance pursuant to this section shall be reasonably compensated by the requesting peace officer's law enforcement agency for the reasonable expenses incurred in providing the facilities and assistance.

SEC. 5. No reimbursement is required by this act pursuant to Section 6 of Article XIII B of the California Constitution because the only costs that may be incurred by a local agency or school district will be incurred because this act creates a new crime or infraction, eliminates a crime or infraction, or changes the penalty for a crime or infraction, within the meaning of Section 17556 of the Government Code, or changes the definition of a crime within the meaning of Section 6 of Article XIII B of the California Constitution.

O

# EXHIBIT "G"

STATE OF CALIFORNIA
AUTHENTICATED
ELECTRONIC LEGAL MATERIAL
LEGISLATIVE COUNSEL BUREAU

**Assembly Bill No. 1242**

CHAPTER 627

An act to amend Sections 629.51, 629.52, 638.50, 638.52, 1269b, 1524, 1524.2, and 1551 of, and to add Sections 1546.5 and 13778.2 to, the Penal Code, relating to reproductive rights, and declaring the urgency thereof, to take effect immediately.

[Approved by Governor September 27, 2022. Filed with Secretary of State September 27, 2022.]

LEGISLATIVE COUNSEL'S DIGEST

AB 1242, Bauer-Kahan. Reproductive rights.

(1) Existing law authorizes a judge to enter an ex parte order authorizing interception of wire or electronic communications within the territorial jurisdiction of the court. Existing law also authorizes a peace officer to apply for, and a magistrate to issue, an order, or extension of an order, authorizing or approving the installation and use of a pen register or trap and trace device.

This bill would prohibit the issuance of an ex parte order authorizing interception of wire or other electronic communication or an order, or extension of an order, authorizing or approving the installation and use of a pen register or trap and trace device for the purpose of investigating or recovering evidence of a prohibited violation. The bill would define "prohibited violation" for this purpose as a violation of a law that creates liability for, or arising out of, either providing, facilitating, or obtaining an abortion or intending or attempting to provide, facilitate, or obtain an abortion that is lawful under California law.

Existing law provides for the issuance of a search warrant upon specified grounds.

This bill would prohibit the issuance of a search warrant for any item or items that pertain to an investigation into a prohibited violation.

Existing law requires a California corporation that provides electronic communication services or remote computing services to the general public to comply with a warrant issued by another state to produce records that would reveal the identity of the customers using those services, data stored by, or on behalf of, the customer, the customer's usage of those services, the recipient or destination of communications sent to or from those customers, or the content of those communications as if that warrant had been issued by a California court.

This bill would require an out-of-state warrant for the records listed above to include an attestation that the evidence sought is not related to an investigation into, or enforcement of, a prohibited violation. The bill would prohibit the production of records by a California corporation when the

corporation knows or should know that the warrant relates to an investigation into, or enforcement of, a prohibited violation.

(2) Existing law includes a declaration of the Legislature that every individual possesses a fundamental right of privacy with respect to reproductive decisions, including the fundamental right to choose to bear a child or obtain an abortion. Existing law prohibits the state from denying or interfering with a woman's fundamental right to choose to bear a child or obtain an abortion prior to viability of the fetus, as defined, or when necessary to protect her life or health.

Existing law, the Reproductive Rights Law Enforcement Act, requires the Attorney General to carry out certain functions relating to anti-reproductive-rights crimes in consultation with, among others, subject matter experts. Existing law requires all law enforcement agencies to develop, adopt, and implement written policies and standards for responding to anti-reproductive-rights calls by January 1, 2023.

This bill would prohibit a state or local law enforcement agency or officer from knowingly arresting or knowingly participating in the arrest of any person for performing, supporting, or aiding in the performance of an abortion or for obtaining an abortion, if the abortion is lawful in this state. The bill would prohibit a state or local public agency from cooperating with or providing information to an individual or agency from another state or a federal law enforcement agency, as specified, regarding a lawful abortion. The bill would prohibit specified persons, including a judicial officer, court employee, an authorized attorney, among others, from issuing a subpoena in connection with a proceeding in another state regarding an individual performing, supporting, or aiding in the performance of an abortion in this state, or an individual obtaining an abortion in this state, if the abortion is lawful in this state. The bill would not prohibit the investigation of criminal activity that may involve an abortion, provided that no information relating to any medical procedure performed on a specific individual may be shared with an agency or individual from another state for the purpose of enforcing another state's abortion law.

(3) Existing law requires superior court judges in each county to prepare, adopt, and annually revise a uniform countywide schedule of bail for all bailable offenses, as specified. Existing law requires a bail schedule to contain a list of the offenses and amounts of bail applicable for each, as well as a general clause for designated amounts of bail for all offenses not specifically listed in the schedule.

This bill would require a uniform countywide schedule of bail to set $0 bail for an individual who has been arrested in connection with a proceeding in another state regarding and individual performing, supporting, or aiding in the performance of an abortion in this state, or an individual obtaining an abortion in this state, if the abortion is protected, as specified.

Existing law requires the Governor to recognize a demand for extradition of a person if the demand meets specified requirements. Existing law requires a magistrate, upon the filing of a verified complaint, to issue a warrant directed to any peace officer commanding the officer to apprehend an

individual in this state who is convicted, or has violated the terms of bail, probation, or parole, or who is charged with a crime, in another state and who is believed to be in this state.

This bill would require, within 24 hours of the filing of a verified complaint, the filing agency to electronically transmit to the Attorney General a complete copy of the verified complaint, the out-of-state indictment, information, complaint, or judgment, out-of-state warrant, and the affidavit upon which the out-of-state warrant was issued.

(4) Existing law, the Electronic Communications Privacy Act, determines how governmental entities may access information on electronic devices and from electronic communication service providers, as defined.

This bill would prohibit a California corporation or a corporation whose principal executive offices are located in California that provides electronic communication services from providing records, information, facilities, or assistance in accordance with the terms of a warrant, court order, subpoena, wiretap order, pen register trap and trace order, or other legal process issued by, or pursuant to, the procedures of another state or a political subdivision thereof that relates to an investigation into, or enforcement of, a prohibited violation. The bill would authorize the Attorney General to commence a civil action to compel compliance with the above provisions, but would only impose civil liability if the corporation knew or should have known that the warrant, court order, subpoena, wiretap order, pen register trap and trace order, or other legal process relates to an investigation into or enforcement of a prohibited violation.

(5) The bill would state that its provisions are severable.

(6) This bill would declare that it is to take effect immediately as an urgency statute.

*The people of the State of California do enact as follows:*

SECTION 1. The Legislature finds and declares all of the following:

(a) Existing law provides that every individual possesses a fundamental right of privacy with respect to their personal reproductive decisions.

(b) Accordingly, it is the public policy of the State of California that a corporation that is headquartered or incorporated in California that provides electronic communications services shall not provide records, information, facilities, or assistance in response to legal process issued by, or pursuant to, the procedures of another state or a subdivision thereof to investigate or enforce any violation, the investigation or enforcement of which would implicate the fundamental right of privacy with respect to personal reproductive decisions.

(c) California also has the sovereign power to determine whether to give legal effect to legal process in California.

SEC. 2. Section 629.51 of the Penal Code is amended to read:

629.51. (a) For the purposes of this chapter, the following terms have the following meanings:

(1) "Wire communication" means any aural transfer made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection between the point of origin and the point of reception (including the use of a like connection in a switching station), furnished or operated by any person engaged in providing or operating these facilities for the transmission of communications.

(2) "Electronic communication" means any transfer of signs, signals, writings, images, sounds, data, or intelligence of any nature in whole or in part by a wire, radio, electromagnetic, photoelectric, or photo-optical system, but does not include any of the following:

(A) Any wire communication defined in paragraph (1).

(B) Any communication made through a tone-only paging device.

(C) Any communication from a tracking device.

(D) Electronic funds transfer information stored by a financial institution in a communications system used for the electronic storage and transfer of funds.

(3) "Tracking device" means an electronic or mechanical device that permits the tracking of the movement of a person or object.

(4) "Aural transfer" means a transfer containing the human voice at any point between and including the point of origin and the point of reception.

(5) (A) "Prohibited violation" means any violation of law that creates liability for, or arising out of, either of the following:

(i) Providing, facilitating, or obtaining an abortion that is lawful under California law.

(ii) Intending or attempting to provide, facilitate, or obtain an abortion that is lawful under California law.

(B) As used in this paragraph, "facilitating" or "facilitate" means assisting, directly or indirectly in any way, with the obtaining of an abortion that is lawful under California law.

(b) This chapter applies to the interceptions of wire and electronic communications. It does not apply to stored communications or stored content.

(c) The act that added this subdivision is not intended to change the law as to stored communications or stored content.

SEC. 3. Section 629.52 of the Penal Code is amended to read:

629.52. Upon application made under Section 629.50, the judge may enter an ex parte order, as requested or modified, authorizing interception of wire or electronic communications initially intercepted within the territorial jurisdiction of the court in which the judge is sitting, if the judge determines, on the basis of the facts submitted by the applicant, all of the following:

(a) There is probable cause to believe that an individual is committing, has committed, or is about to commit, one of the following offenses:

(1) Importation, possession for sale, transportation, manufacture, or sale of controlled substances in violation of Section 11351, 11351.5, 11352, 11370.6, 11378, 11378.5, 11379, 11379.5, or 11379.6 of the Health and Safety Code with respect to a substance containing heroin, cocaine, PCP,

methamphetamine, fentanyl, or their precursors or analogs where the substance exceeds 10 gallons by liquid volume or three pounds of solid substance by weight.

(2) Murder, solicitation to commit murder, a violation of Section 209, or the commission of a felony involving a destructive device in violation of Section 18710, 18715, 18720, 18725, 18730, 18740, 18745, 18750, or 18755.

(3) A felony violation of Section 186.22.

(4) A felony violation of Section 11418, relating to weapons of mass destruction, Section 11418.5, relating to threats to use weapons of mass destruction, or Section 11419, relating to restricted biological agents.

(5) A violation of Section 236.1.

(6) An attempt or conspiracy to commit any of the above-mentioned crimes.

(b) There is probable cause to believe that particular communications concerning the illegal activities will be obtained through that interception, including, but not limited to, communications that may be utilized for locating or rescuing a kidnap victim.

(c) There is probable cause to believe that the facilities from which, or the place where, the wire or electronic communications are to be intercepted are being used, or are about to be used, in connection with the commission of the offense, or are leased to, listed in the name of, or commonly used by the person whose communications are to be intercepted.

(d) Normal investigative procedures have been tried and have failed or reasonably appear either unlikely to succeed if tried or too dangerous.

(e) Notwithstanding any other provision in this section, no magistrate shall enter an ex parte order authorizing interception of wire or electronic communications for the purpose of investigating or recovering evidence of a prohibited violation, as defined in Section 629.51.

SEC. 4. Section 638.50 of the Penal Code is amended to read:

638.50. For purposes of this chapter, the following terms have the following meanings:

(a) “Wire communication” and “electronic communication” have the meanings set forth in subdivision (a) of Section 629.51.

(b) “Pen register” means a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication. “Pen register” does not include a device or process used by a provider or customer of a wire or electronic communication service for billing, or recording as an incident to billing, for communications services provided by such provider, or a device or process used by a provider or customer of a wire communication service for cost accounting or other similar purposes in the ordinary course of its business.

(c) “Trap and trace device” means a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably

likely to identify the source of a wire or electronic communication, but not the contents of a communication.

(d) "Prohibited violation" has the same meaning as that term is defined in Section 629.51.

SEC. 5. Section 638.52 of the Penal Code is amended to read:

638.52. (a) A peace officer may make an application to a magistrate for an order or an extension of an order authorizing or approving the installation and use of a pen register or a trap and trace device. The application shall be in writing under oath or equivalent affirmation, and shall include the identity of the peace officer making the application and the identity of the law enforcement agency conducting the investigation. The applicant shall certify that the information likely to be obtained is relevant to an ongoing criminal investigation and shall include a statement of the offense to which the information likely to be obtained by the pen register or trap and trace device relates.

(b) The magistrate shall enter an ex parte order authorizing the installation and use of a pen register or a trap and trace device if the magistrate finds that the information likely to be obtained by the installation and use of a pen register or a trap and trace device is relevant to an ongoing investigation and that there is probable cause to believe that the pen register or trap and trace device will lead to any of the following:

(1) Recovery of stolen or embezzled property.

(2) Property or things used as the means of committing a felony.

(3) Property or things in the possession of a person with the intent to use them as a means of committing a public offense, or in the possession of another to whom they may have delivered them for the purpose of concealing them or preventing them from being discovered.

(4) Evidence that tends to show a felony has been committed, or tends to show that a particular person has committed or is committing a felony.

(5) Evidence that tends to show that sexual exploitation of a child, in violation of Section 311.3, or possession of matter depicting sexual conduct of a person under 18 years of age, in violation of Section 311.11, has occurred or is occurring.

(6) The location of a person who is unlawfully restrained or reasonably believed to be a witness in a criminal investigation or for whose arrest there is probable cause.

(7) Evidence that tends to show a violation of Section 3700.5 of the Labor Code, or tends to show that a particular person has violated Section 3700.5 of the Labor Code.

(8) Evidence that does any of the following:

(A) Tends to show that a felony, a misdemeanor violation of the Fish and Game Code, or a misdemeanor violation of the Public Resources Code, has been committed or is being committed.

(B) Tends to show that a particular person has committed or is committing a felony, a misdemeanor violation of the Fish and Game Code, or a misdemeanor violation of the Public Resources Code.

(C) Will assist in locating an individual who has committed or is committing a felony, a misdemeanor violation of the Fish and Game Code, or a misdemeanor violation of the Public Resources Code.

(c) Information acquired solely pursuant to the authority for a pen register or a trap and trace device shall not include any information that may disclose the physical location of the subscriber, except to the extent that the location may be determined from the telephone number. Upon the request of the person seeking the pen register or trap and trace device, the magistrate may seal portions of the application pursuant to People v. Hobbs (1994) 7 Cal.4th 948, and Sections 1040, 1041, and 1042 of the Evidence Code.

(d) An order issued pursuant to subdivision (b) shall specify all of the following:

(1) The identity, if known, of the person to whom is leased or in whose name is listed the telephone line to which the pen register or trap and trace device is to be attached.

(2) The identity, if known, of the person who is the subject of the criminal investigation.

(3) The number and, if known, physical location of the telephone line to which the pen register or trap and trace device is to be attached and, in the case of a trap and trace device, the geographic limits of the trap and trace order.

(4) A statement of the offense to which the information likely to be obtained by the pen register or trap and trace device relates.

(5) The order shall direct, if the applicant has requested, the furnishing of information, facilities, and technical assistance necessary to accomplish the installation of the pen register or trap and trace device.

(e) An order issued under this section shall authorize the installation and use of a pen register or a trap and trace device for a period not to exceed 60 days.

(f) Extensions of the original order may be granted upon a new application for an order under subdivisions (a) and (b) if the officer shows that there is a continued probable cause that the information or items sought under this subdivision are likely to be obtained under the extension. The period of an extension shall not exceed 60 days.

(g) An order or extension order authorizing or approving the installation and use of a pen register or a trap and trace device shall direct that the order be sealed until the order, including any extensions, expires, and that the person owning or leasing the line to which the pen register or trap and trace device is attached not disclose the existence of the pen register or trap and trace device or the existence of the investigation to the listed subscriber or to any other person.

(h) Upon the presentation of an order, entered under subdivisions (b) or (f), by a peace officer authorized to install and use a pen register, a provider of wire or electronic communication service, landlord, custodian, or other person shall immediately provide the peace officer all information, facilities, and technical assistance necessary to accomplish the installation of the pen register unobtrusively and with a minimum of interference with the services

provided to the party with respect to whom the installation and use is to take place, if the assistance is directed by the order.

(i) Upon the request of a peace officer authorized to receive the results of a trap and trace device, a provider of a wire or electronic communication service, landlord, custodian, or other person shall immediately install the device on the appropriate line and provide the peace officer all information, facilities, and technical assistance, including installation and operation of the device unobtrusively and with a minimum of interference with the services provided to the party with respect to whom the installation and use is to take place, if the installation and assistance is directed by the order.

(j) A provider of a wire or electronic communication service, landlord, custodian, or other person who provides facilities or technical assistance pursuant to this section shall be reasonably compensated by the requesting peace officer's law enforcement agency for the reasonable expenses incurred in providing the facilities and assistance.

(k) Unless otherwise ordered by the magistrate, the results of the pen register or trap and trace device shall be provided to the peace officer at reasonable intervals during regular business hours for the duration of the order.

(*l*) The magistrate, before issuing the order pursuant to subdivision (b), may examine on oath the person seeking the pen register or the trap and trace device, and any witnesses the person may produce, and shall take their affidavit or their affidavits in writing, and cause the affidavit or affidavits to be subscribed by the parties making them.

(m) Notwithstanding any other provision in this section, no magistrate shall enter an ex parte order authorizing the installation and use of a pen register or a trap and trace device for the purpose of investigating or recovering evidence of a prohibited violation, as defined in Section 629.51.

SEC. 6. Section 1269b of the Penal Code is amended to read:

1269b. (a) The officer in charge of a jail in which an arrested person is held in custody, an officer of a sheriff's department or police department of a city who is in charge of a jail or is employed at a fixed police or sheriff's facility and is acting under an agreement with the agency that keeps the jail in which an arrested person is held in custody, an employee of a sheriff's department or police department of a city who is assigned by the department to collect bail, the clerk of the superior court of the county in which the offense was alleged to have been committed, and the clerk of the superior court in which the case against the defendant is pending may approve and accept bail in the amount fixed by the warrant of arrest, schedule of bail, or order admitting to bail in cash or surety bond executed by a certified, admitted surety insurer as provided in the Insurance Code, to issue and sign an order for the release of the arrested person, and to set a time and place for the appearance of the arrested person before the appropriate court and give notice thereof.

(b) If a defendant has appeared before a judge of the court on the charge contained in the complaint, indictment, or information, the bail shall be in the amount fixed by the judge at the time of the appearance. If that

appearance has not been made, the bail shall be in the amount fixed in the warrant of arrest or, if no warrant of arrest has been issued, the amount of bail shall be pursuant to the uniform countywide schedule of bail for the county in which the defendant is required to appear, previously fixed and approved as provided in subdivisions (c) and (d).

(c) It is the duty of the superior court judges in each county to prepare, adopt, and annually revise a uniform countywide schedule of bail for all bailable felony offenses and for all misdemeanor and infraction offenses except Vehicle Code infractions. The penalty schedule for infraction violations of the Vehicle Code shall be established by the Judicial Council in accordance with Section 40310 of the Vehicle Code.

(d) A court may, by local rule, prescribe the procedure by which the uniform countywide schedule of bail is prepared, adopted, and annually revised by the judges. If a court does not adopt a local rule, the uniform countywide schedule of bail shall be prepared, adopted, and annually revised by a majority of the judges.

(e) In adopting a uniform countywide schedule of bail for all bailable felony offenses the judges shall consider the seriousness of the offense charged. In considering the seriousness of the offense charged the judges shall assign an additional amount of required bail for each aggravating or enhancing factor chargeable in the complaint, including, but not limited to, additional bail for charges alleging facts that would bring a person within any of the following sections: Section 667.5, 667.51, 667.6, 667.8, 667.85, 667.9, 667.10, 12022, 12022.1, 12022.2, 12022.3, 12022.4, 12022.5, 12022.53, 12022.6, 12022.7, 12022.8, or 12022.9 of this code, or Section 11356.5, 11370.2, or 11370.4 of the Health and Safety Code.

In considering offenses in which a violation of Chapter 6 (commencing with Section 11350) of Division 10 of the Health and Safety Code is alleged, the judge shall assign an additional amount of required bail for offenses involving large quantities of controlled substances.

(f) (1) The countywide bail schedule shall contain a list of the offenses and the amounts of bail applicable for each as the judges determine to be appropriate. If the schedule does not list all offenses specifically, it shall contain a general clause for designated amounts of bail as the judges of the county determine to be appropriate for all the offenses not specifically listed in the schedule. A copy of the countywide bail schedule shall be sent to the officer in charge of the county jail, to the officer in charge of each city jail within the county, to each superior court judge and commissioner in the county, and to the Judicial Council.

(2) The countywide bail schedule shall set zero dollars ($0) bail for an individual who has been arrested in connection with a proceeding in another state regarding an individual performing, supporting, or aiding in the performance of an abortion in this state, or an individual obtaining an abortion in this state, if the abortion is lawful under the laws of this state.

(g) Upon posting bail, the defendant or arrested person shall be discharged from custody as to the offense on which the bail is posted.

All money and surety bonds so deposited with an officer authorized to receive bail shall be transmitted immediately to the judge or clerk of the court by which the order was made or warrant issued or bail schedule fixed. If, in the case of felonies, an indictment is filed, the judge or clerk of the court shall transmit all of the money and surety bonds to the clerk of the court.

(h) If a defendant or arrested person so released fails to appear at the time and in the court so ordered upon their release from custody, Sections 1305 and 1306 apply.

SEC. 7. Section 1524 of the Penal Code is amended to read:

1524. (a) A search warrant may be issued upon any of the following grounds:

(1) When the property was stolen or embezzled.

(2) When the property or things were used as the means of committing a felony.

(3) When the property or things are in the possession of any person with the intent to use them as a means of committing a public offense, or in the possession of another to whom that person may have delivered them for the purpose of concealing them or preventing them from being discovered.

(4) When the property or things to be seized consist of an item or constitute evidence that tends to show a felony has been committed, or tends to show that a particular person has committed a felony.

(5) When the property or things to be seized consist of evidence that tends to show that sexual exploitation of a child, in violation of Section 311.3, or possession of matter depicting sexual conduct of a person under 18 years of age, in violation of Section 311.11, has occurred or is occurring.

(6) When there is a warrant to arrest a person.

(7) When a provider of electronic communication service or remote computing service has records or evidence, as specified in Section 1524.3, showing that property was stolen or embezzled constituting a misdemeanor, or that property or things are in the possession of any person with the intent to use them as a means of committing a misdemeanor public offense, or in the possession of another to whom that person may have delivered them for the purpose of concealing them or preventing their discovery.

(8) When the property or things to be seized include an item or evidence that tends to show a violation of Section 3700.5 of the Labor Code, or tends to show that a particular person has violated Section 3700.5 of the Labor Code.

(9) When the property or things to be seized include a firearm or other deadly weapon at the scene of, or at the premises occupied or under the control of the person arrested in connection with, a domestic violence incident involving a threat to human life or a physical assault as provided in Section 18250. This section does not affect warrantless seizures otherwise authorized by Section 18250.

(10) When the property or things to be seized include a firearm or other deadly weapon that is owned by, or in the possession of, or in the custody

or control of, a person described in subdivision (a) of Section 8102 of the Welfare and Institutions Code.

(11) When the property or things to be seized include a firearm that is owned by, or in the possession of, or in the custody or control of, a person who is subject to the prohibitions regarding firearms pursuant to Section 6389 of the Family Code, if a prohibited firearm is possessed, owned, in the custody of, or controlled by a person against whom a protective order has been issued pursuant to Section 6218 of the Family Code, the person has been lawfully served with that order, and the person has failed to relinquish the firearm as required by law.

(12) When the information to be received from the use of a tracking device constitutes evidence that tends to show that either a felony, a misdemeanor violation of the Fish and Game Code, or a misdemeanor violation of the Public Resources Code has been committed or is being committed, tends to show that a particular person has committed a felony, a misdemeanor violation of the Fish and Game Code, or a misdemeanor violation of the Public Resources Code, or is committing a felony, a misdemeanor violation of the Fish and Game Code, or a misdemeanor violation of the Public Resources Code, or will assist in locating an individual who has committed or is committing a felony, a misdemeanor violation of the Fish and Game Code, or a misdemeanor violation of the Public Resources Code. A tracking device search warrant issued pursuant to this paragraph shall be executed in a manner meeting the requirements specified in subdivision (b) of Section 1534.

(13) When a sample of the blood of a person constitutes evidence that tends to show a violation of Section 23140, 23152, or 23153 of the Vehicle Code and the person from whom the sample is being sought has refused an officer's request to submit to, or has failed to complete, a blood test as required by Section 23612 of the Vehicle Code, and the sample will be drawn from the person in a reasonable, medically approved manner. This paragraph is not intended to abrogate a court's mandate to determine the propriety of the issuance of a search warrant on a case-by-case basis.

(14) Beginning January 1, 2016, the property or things to be seized are firearms or ammunition or both that are owned by, in the possession of, or in the custody or control of a person who is the subject of a gun violence restraining order that has been issued pursuant to Division 3.2 (commencing with Section 18100) of Title 2 of Part 6, if a prohibited firearm or ammunition or both is possessed, owned, in the custody of, or controlled by a person against whom a gun violence restraining order has been issued, the person has been lawfully served with that order, and the person has failed to relinquish the firearm as required by law.

(15) Beginning January 1, 2018, the property or things to be seized include a firearm that is owned by, or in the possession of, or in the custody or control of, a person who is subject to the prohibitions regarding firearms pursuant to Section 29800 or 29805, and the court has made a finding pursuant to subdivision (c) of Section 29810 that the person has failed to relinquish the firearm as required by law.

(16) When the property or things to be seized are controlled substances or a device, contrivance, instrument, or paraphernalia used for unlawfully using or administering a controlled substance pursuant to the authority described in Section 11472 of the Health and Safety Code.

(17) (A) When all of the following apply:

(i) A sample of the blood of a person constitutes evidence that tends to show a violation of subdivision (b), (c), (d), (e), or (f) of Section 655 of the Harbors and Navigation Code.

(ii) The person from whom the sample is being sought has refused an officer's request to submit to, or has failed to complete, a blood test as required by Section 655.1 of the Harbors and Navigation Code.

(iii) The sample will be drawn from the person in a reasonable, medically approved manner.

(B) This paragraph is not intended to abrogate a court's mandate to determine the propriety of the issuance of a search warrant on a case-by-case basis.

(18) When the property or things to be seized consists of evidence that tends to show that a violation of paragraph (1), (2), or (3) of subdivision (j) of Section 647 has occurred or is occurring.

(19) (A) When the property or things to be seized are data, from a recording device installed by the manufacturer of a motor vehicle, that constitutes evidence that tends to show the commission of a felony or misdemeanor offense involving a motor vehicle, resulting in death or serious bodily injury to any person. The data accessed by a warrant pursuant to this paragraph shall not exceed the scope of the data that is directly related to the offense for which the warrant is issued.

(B) For the purposes of this paragraph, "recording device" has the same meaning as defined in subdivision (b) of Section 9951 of the Vehicle Code. The scope of the data accessible by a warrant issued pursuant to this paragraph shall be limited to the information described in subdivision (b) of Section 9951 of the Vehicle Code.

(C) For the purposes of this paragraph, "serious bodily injury" has the same meaning as defined in paragraph (4) of subdivision (f) of Section 243 of the Penal Code.

(20) When the property or things to be seized consists of evidence that tends to show that a violation of Section 647.9 has occurred or is occurring. Evidence to be seized pursuant to this paragraph shall be limited to evidence of a violation of Section 647.9 and shall not include evidence of a violation of a departmental rule or guideline that is not a public offense under California law.

(b) The property, things, person, or persons described in subdivision (a) may be taken on the warrant from any place, or from any person in whose possession the property or things may be.

(c) Notwithstanding subdivision (a) or (b), a search warrant shall not be issued for any documentary evidence in the possession or under the control of any person who is a lawyer as defined in Section 950 of the Evidence Code, a physician as defined in Section 990 of the Evidence Code, a

psychotherapist as defined in Section 1010 of the Evidence Code, or a member of the clergy as defined in Section 1030 of the Evidence Code, and who is not reasonably suspected of engaging or having engaged in criminal activity related to the documentary evidence for which a warrant is requested unless the following procedure has been complied with:

(1) At the time of the issuance of the warrant, the court shall appoint a special master in accordance with subdivision (d) to accompany the person who will serve the warrant. Upon service of the warrant, the special master shall inform the party served of the specific items being sought and that the party shall have the opportunity to provide the items requested. If the party, in the judgment of the special master, fails to provide the items requested, the special master shall conduct a search for the items in the areas indicated in the search warrant.

(2) (A) If the party who has been served states that an item or items should not be disclosed, they shall be sealed by the special master and taken to court for a hearing.

(B) At the hearing, the party searched shall be entitled to raise any issues that may be raised pursuant to Section 1538.5 as well as a claim that the item or items are privileged, as provided by law. The hearing shall be held in the superior court. The court shall provide sufficient time for the parties to obtain counsel and make motions or present evidence. The hearing shall be held within three days of the service of the warrant unless the court makes a finding that the expedited hearing is impracticable. In that case, the matter shall be heard at the earliest possible time.

(C) If an item or items are taken to court for a hearing, any limitations of time prescribed in Chapter 2 (commencing with Section 799) of Title 3 of Part 2 shall be tolled from the time of the seizure until the final conclusion of the hearing, including any associated writ or appellate proceedings.

(3) The warrant shall, whenever practicable, be served during normal business hours. In addition, the warrant shall be served upon a party who appears to have possession or control of the items sought. If, after reasonable efforts, the party serving the warrant is unable to locate the person, the special master shall seal and return to the court, for determination by the court, any item that appears to be privileged as provided by law.

(d) (1) As used in this section, a "special master" is an attorney who is a member in good standing of the California State Bar and who has been selected from a list of qualified attorneys that is maintained by the State Bar particularly for the purposes of conducting the searches described in this section. These attorneys shall serve without compensation. A special master shall be considered a public employee, and the governmental entity that caused the search warrant to be issued shall be considered the employer of the special master and the applicable public entity, for purposes of Division 3.6 (commencing with Section 810) of Title 1 of the Government Code, relating to claims and actions against public entities and public employees. In selecting the special master, the court shall make every reasonable effort to ensure that the person selected has no relationship with any of the parties involved in the pending matter. Information obtained by the special master

shall be confidential and may not be divulged except in direct response to inquiry by the court.

(2) In any case in which the magistrate determines that, after reasonable efforts have been made to obtain a special master, a special master is not available and would not be available within a reasonable period of time, the magistrate may direct the party seeking the order to conduct the search in the manner described in this section in lieu of the special master.

(e) Any search conducted pursuant to this section by a special master may be conducted in a manner that permits the party serving the warrant or that party's designee to accompany the special master as the special master conducts the search. However, that party or that party's designee may not participate in the search nor shall they examine any of the items being searched by the special master except upon agreement of the party upon whom the warrant has been served.

(f) As used in this section, "documentary evidence" includes, but is not limited to, writings, documents, blueprints, drawings, photographs, computer printouts, microfilms, x-rays, files, diagrams, ledgers, books, tapes, audio and video recordings, films, and papers of any type or description.

(g) No warrant shall issue for any item or items described in Section 1070 of the Evidence Code.

(h) No warrant shall issue for any item or items that pertain to an investigation into a prohibited violation, as defined in Section 629.51.

(i) Notwithstanding any other law, no claim of attorney work product as described in Chapter 4 (commencing with Section 2018.010) of Title 4 of Part 4 of the Code of Civil Procedure shall be sustained where there is probable cause to believe that the lawyer is engaging or has engaged in criminal activity related to the documentary evidence for which a warrant is requested unless it is established at the hearing with respect to the documentary evidence seized under the warrant that the services of the lawyer were not sought or obtained to enable or aid anyone to commit or plan to commit a crime or a fraud.

(j) Nothing in this section is intended to limit an attorney's ability to request an in-camera hearing pursuant to the holding of the Supreme Court of California in People v. Superior Court (Laff) (2001) 25 Cal.4th 703.

(k) In addition to any other circumstance permitting a magistrate to issue a warrant for a person or property in another county, when the property or things to be seized consist of any item or constitute evidence that tends to show a violation of Section 530.5, the magistrate may issue a warrant to search a person or property located in another county if the person whose identifying information was taken or used resides in the same county as the issuing court.

(*l*) This section shall not be construed to create a cause of action against any foreign or California corporation, its officers, employees, agents, or other specified persons for providing location information.

SEC. 8. Section 1524.2 of the Penal Code is amended to read:

1524.2. (a) As used in this section, the following terms have the following meanings:

(1) The terms "electronic communication services" and "remote computing services" shall be construed in accordance with the Electronic Communications Privacy Act of 1986 in Chapter 121 (commencing with Section 2701) of Part I of Title 18 of the United States Code. This section does not apply to corporations that do not provide those services to the general public.

(2) An "adverse result" occurs when notification of the existence of a search warrant results in:

(A) Danger to the life or physical safety of an individual.

(B) A flight from prosecution.

(C) The destruction of or tampering with evidence.

(D) The intimidation of potential witnesses.

(E) Serious jeopardy to an investigation or undue delay of a trial.

(3) "Applicant" refers to the peace officer to whom a search warrant is issued pursuant to subdivision (a) of Section 1528.

(4) "California corporation" refers to any corporation or other entity that is subject to Section 102 of the Corporations Code, excluding foreign corporations.

(5) "Foreign corporation" refers to any corporation that is qualified to do business in this state pursuant to Section 2105 of the Corporations Code.

(6) "Properly served" means that a search warrant has been delivered by hand, or in a manner reasonably allowing for proof of delivery if delivered by United States mail, overnight delivery service, or facsimile to a person or entity listed in Section 2110 of the Corporations Code, or any other means specified by the recipient of the search warrant, including email or submission via an internet web portal that the recipient has designated for the purpose of service of process.

(b) The following provisions apply to any search warrant issued pursuant to this chapter allowing a search for records that are in the actual or constructive possession of a foreign corporation that provides electronic communication services or remote computing services to the general public, where those records would reveal the identity of the customers using those services, data stored by, or on behalf of, the customer, the customer's usage of those services, the recipient or destination of communications sent to or from those customers, or the content of those communications.

(1) When properly served with a search warrant issued by the California court, a foreign corporation subject to this section shall provide to the applicant, all records sought pursuant to that warrant within five business days of receipt, including those records maintained or located outside this state.

(2) If the applicant makes a showing and the magistrate finds that failure to produce records within less than five business days would cause an adverse result, the warrant may require production of records within less than five business days. A court may reasonably extend the time required for production of the records upon finding that the foreign corporation has shown good cause for that extension and that an extension of time would not cause an adverse result.

(3) A foreign corporation seeking to quash the warrant must seek relief from the court that issued the warrant within the time required for production of records pursuant to this section. The issuing court shall hear and decide that motion no later than five court days after the motion is filed.

(4) The foreign corporation shall verify the authenticity of records that it produces by providing an affidavit that complies with the requirements set forth in Section 1561 of the Evidence Code. Those records shall be admissible in evidence as set forth in Section 1562 of the Evidence Code.

(c) (1) A California corporation that provides electronic communication services or remote computing services to the general public, when served with a warrant issued by another state to produce records that would reveal the identity of the customers using those services, data stored by, or on behalf of, the customer, the customer's usage of those services, the recipient or destination of communications sent to or from those customers, or the content of those communications, shall produce those records as if that warrant had been issued by a California court, but shall not produce records when the corporation knows or should know that the warrant relates to an investigation into, or enforcement of, a prohibited violation, as defined in Section 629.51.

(2) A California corporation shall not comply with subdivision (c) unless the warrant includes, or is accompanied by, an attestation that the evidence sought is not related to an investigation into, or enforcement of, a prohibited violation, as defined in Section 629.51.

(3) A California corporation served with a warrant described in paragraph (1) is entitled to rely on the representations made in an attestation described in paragraph (2) in determining whether the warrant relates to an investigation into, or enforcement of, a prohibited violation, as defined in Section 629.51.

(d) A cause of action shall not lie against any foreign or California corporation subject to this section, its officers, employees, agents, or other specified persons for providing records, information, facilities, or assistance in accordance with the terms of a warrant issued pursuant to this chapter.

SEC. 9. Section 1546.5 is added to the Penal Code, to read:

1546.5. (a) A California corporation or a corporation whose principal executive offices are located in California that provides electronic communications services shall not, in California, provide records, information, facilities, or assistance in accordance with the terms of a warrant, court order, subpoena, wiretap order, pen register trap and trace order, or other legal process issued by, or pursuant to, the procedures of another state or a political subdivision thereof that relates to an investigation into or enforcement of a prohibited violation, as defined in Section 629.51.

(b) The Attorney General may commence a civil action to compel any California corporation or a corporation whose principal executive offices are located in California that provides electronic communications services to comply with the provisions of this section.

(c) A California corporation or a corporation whose principal executive offices are located in California, and its officers, employees, and agents,

are not subject to any cause of action for providing records, information, facilities, or assistance in accordance with the terms of a warrant, court order, subpoena, wiretap order, pen register trap and trace order, or other legal process issued by, or pursuant to, the procedures of another state or a political subdivision thereof, except where the corporation knew or should have known that the warrant, court order, subpoena, wiretap order, pen register trap and trace order, or other legal process relates to an investigation into or enforcement of a prohibited violation, as defined in Section 629.51.

SEC. 10. Section 1551 of the Penal Code is amended to read:

1551. (a) Whenever any person within this State is charged by a verified complaint before any magistrate of this State with the commission of any crime in any other State, or, with having been convicted of a crime in that State and having escaped from confinement, or having violated the terms of their bail, probation or parole or whenever complaint is made before any magistrate in this State setting forth on the affidavit of any credible person in another State that a crime has been committed in such other State and that the accused has been charged in such State with the commission of the crime, or that the accused has been convicted of a crime in that State and has escaped from bail, probation or parole and is believed to be in this State; then the magistrate shall issue a warrant directed to any peace officer commanding the officer to apprehend the person named therein, wherever the individual may be found in this State, and to bring them before the same or any other magistrate who is available in or convenient of access to the place where the arrest is made. A certified copy of the sworn charge or complaint and affidavit upon which the warrant is issued shall be attached to the warrant.

(b) Within 24 hours of the filing of any verified complaint pursuant to this section, the filing agency shall transmit electronically to the Attorney General a complete copy of the verified complaint, the out-of-state indictment, information, complaint, or judgment, out-of-state warrant, and the affidavit upon which the out-of-state warrant was issued.

SEC. 11. Section 13778.2 is added to the Penal Code, to read:

13778.2. (a) A state or local law enforcement agency or officer shall not knowingly arrest or knowingly participate in the arrest of any person for performing, supporting, or aiding in the performance of an abortion in this state, or obtaining an abortion in this state, if the abortion is lawful under the laws of this state.

(b) A state or local public agency, or any employee thereof acting in their official capacity, shall not cooperate with or provide information to any individual or agency or department from another state or, to the extent permitted by federal law, to a federal law enforcement agency regarding an abortion that is lawful under the laws of this state and that is performed in this state.

(c) (1) A law of another state that authorizes the imposition of civil or criminal penalties related to an individual performing, supporting, or aiding in the performance of an abortion in this state, or an individual obtaining

an abortion in this state, if the abortion is lawful under the laws of this state, is against the public policy of this state.

(2) No state court, judicial officer, or court employee or clerk, or authorized attorney shall issue a subpoena pursuant to any state law in connection with a proceeding in another state regarding an individual performing, supporting, or aiding in the performance of an abortion in this state, or an individual obtaining an abortion in this state, if the abortion is lawful under the laws of this state.

(d) This section does not prohibit the investigation of any criminal activity in this state that may involve the performance of an abortion, provided that information relating to any medical procedure performed on a specific individual is not shared with an agency or individual from another state for the purpose of enforcing another state's abortion law.

SEC. 12. The provisions of this measure are severable. If any provision of this measure or its application is held invalid, that invalidity shall not affect other provisions or applications that can be given effect without the invalid provision or application.

SEC. 13. This act is an urgency statute necessary for the immediate preservation of the public peace, health, or safety within the meaning of Article IV of the California Constitution and shall go into immediate effect. The facts constituting the necessity are:

The impending United States Supreme Court decision overturning Roe v. Wade makes it necessary to protect California's health care providers and those seeking reproductive health care in California at the earliest time possible.

O