Eric A. Grover (SBN 136080)
eric.grover@kellergrover.com
Rachael G. Jung (SBN 239323)
rachael.jung@kellergrover.com
**KELLER GROVER LLP**
1965 Market Street
San Francisco, California 94103
Telephone: (415) 543-1305
Facsimile: (415) 543-7861

Scot Bernstein (SBN 94915)
swampadero@sbernsteinlaw.com
**LAW OFFICES OF SCOT D. BERNSTEIN,
A PROFESSIONAL CORPORATION**
101 Parkshore Drive, Suite 100
Folsom, California 95630
Telephone: (916) 447-0100
Facsimile: (916) 933-5533

*Attorneys for Plaintiffs*
Saber Khamooshi, Ryan Wu, and Brian Carolus

Timothy D. Cohelan (SBN 60827)
tcohelan@ckslaw.com
Isam C. Khoury (SBN 58759)
ikhoury@ckslaw.com
**COHELAN KHOURY & SINGER**
605 C Street, Suite 200
San Diego, California 92101
Telephone: (619) 595-3001
Facsimile: (619) 595-3000

Patrick N. Keegan (SBN 167698)
pkeegan@keeganbaker.com
**KEEGAN & BAKER, LLP**
2292 Faraday Avenue, Suite 100
Carlsbad, California 92008
Telephone: (760) 929-9303
Facsimile: (760) 929-9260

*Attorneys for Plaintiff*
John Deddeh

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| SABER KHAMOOSHI, RYAN WU, BRIAN CAROLUS, and JOHN DEDDEH, individually and on behalf of a class of similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>POLITICO LLC;<br><br>Defendant. | ) Case No: 3:24-cv-07836-SK<br>)<br>) Assigned for All Purposes to:<br>) Hon. Sallie Kim<br>)<br>)<br>) **PLAINTIFFS' OPPOSITION TO**<br>) **DEFENDANT'S MOTION TO DISMISS FIRST**<br>) **CONSOLIDATED COMPLAINT**<br>)<br>)<br>) Date:          April 28, 2025<br>) Time:          9:30 a.m.<br>) Courtroom:     C – 15th Floor<br>)<br>)<br>) Action Filed:  September 26, 2024<br>) Removed:       November 8, 2024<br>) Consolidated:  January 27, 2025 |

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

**KELLER GROVER LLP**
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

# **TABLE OF CONTENTS**

Page

I.      INTRODUCTION………………………………………………………………….....11

II.     PLAINTIFFS HAVE ALLEGED INJURY IN FACT FOR STANDING……………11

III.    PLAINTIFFS HAVE PLEADED EACH OF THEIR CLAIMS SUFFICIENTLY…......14

    A.  Politico Violated CIPA by Using Pen Register Trackers on Its Website to
       Collect and Secretly Share IP Addresses and Other User Data…………………………14

       1.  A reasonable expectation of privacy exists for IP addresses…………………......14

       2.  Politico initiated and caused the unauthorized disclosure of its website users'
          personal information to undisclosed third parties……………………………….16

       3.  Pen registers capture outgoing information, including IP addresses…………….18

       4.  Penal Code § 638.51 is not limited to telephone technology……………………20

       5.  Politico's "consent" to the unauthorized collection of users' personally
          identifying information is irrelevant, and no statutory exception applies……….22

       6.  The surreptitious disclosure of personal information to third parties is not
          necessary for the operation or maintenance of the Politico website…………….23

    B.  Politico's Surreptitious Installation of Third-Party Tracker Cookies on
       Website Users' Browsers Violates the CDAFA………………………………………...25

       1.  Plaintiffs' CDAFA claims are not subject to Rule 9(b) pleading standards…….25

       2.  The CDAFA requires only knowing access and conduct undertaken
          without permission, not overcoming technical or code-based barriers………….26

       3.  Plaintiffs allege economic harm sufficient to confer CDAFA standing…………29

    C.  Politico's Unauthorized Disclosure of Geographical Location Information
       without Consent Is Highly Offensive Conduct and a Serious Invasion of Privacy……...31

    D.  Plaintiffs Are Entitled to Politico's Unjustly Earned Profits. ...........................................33

    E.  Plaintiffs Adequately Allege Their UCL Claims.............................................................. 33

IV.    CONCLUSION.......................................................................................................................35

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

## <u>TABLE OF AUTHORITIES</u>

**Federal Cases**                                                                                                              **Page(s)**

*A.B. v. Google LLC,*
   737 F.Supp.3d 869 (N.D. Cal. June 18, 2024) ....................................................................... 34

*Astiana v. Hain Celestial Grp., Inc.,*
   783 F.3d 753 (9th Cir. 2015) ............................................................................................. 33

*Biden v. Ziegler,*
   737 F.Supp.3d 958 (C.D. Cal. 2024) ................................................................................. 30

*Brown v. Google LLC,*
   525 F.Supp.3d 1049 (N.D. Cal. 2021) .......................................................................... 28, 34

*Brown v. Google LLC,*
   685 F.Supp.3d 909 (N.D. Cal. 2023) .................................................................. 12, 13, 29, 33

*Bui-Ford v. Tesla, Inc.,*
   2024 U.S. Dist. LEXIS 28767 (N.D. Cal. Feb. 20, 2024) ............................................ 25, 27

*Calhoun v. Google, LLC,*
   2024 WL 3869446 (9th Cir. Aug. 20, 2024) ................................................................. 28, 33

*Campbell v. Facebook Inc.,*
   77 F.Supp.3d 836 (N.D. Cal. 2014) ................................................................................... 28

*Campbell v. Facebook, Inc.,*
   951 F.3d 1106 (9th Cir. 2020) ........................................................................................... 12

*Capitol Records Inc. v. Thomas-Rasset,*
   2009 WL 1664468 (D. Minn. June 11, 2009) .................................................................... 20

*Carrese v. Yes Online Inc.,*
   2016 WL 6069198 (C.D. Cal. Oct. 13, 2016) ................................................................... 13

*Carroll v. Progressive Casualty Insurance Company,*
   2023 WL 3526137 (C.D. Cal., 2023) ................................................................................ 35

*Casillas v. Cypress Ins. Co.,*
   770 Fed.Appx. 329 (9th Cir. 2019) .................................................................................... 24

*Cottle v. Plaid Inc.,*
   536 F.Supp.3d 461. (N.D. Cal. 2021) ........................................................................... 24, 29

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

*Crowley v. CyberSource Corp.*,
  166 F.Supp.2d 1263 (N.D. Cal. 2001) .................................................................. 24

*Cti III, LLC v. Devine*,
  2022 U.S. Dist. LEXIS 94820 (E.D. Cal. May 25, 2022) ............................... 25, 27

*DocMagic. Inc. v. Ellie Mae, Inc.*,
  745 F.Supp.2d 1119 (N.D. Cal. 2010) .................................................................. 27

*Doe v. Meta Platforms, Inc.*,
  690 F.Supp.3d 1064 (N.D. Cal. 2023) .................................................................. 21

*ESG Capital Partners, LP v. Stratos*,
  828 F.3d 1023 (9th Cir. 2016) ............................................................................. 33

*Esparza v. Kohl's, Inc.*,
  2024 WL 1152732 (C.D. Cal. Mar. 18, 2024) ...................................................... 28

*Facebook, Inc. v. ConnectU LLC*,
  489 F.Supp.2d 1087 (N.D. Cal. 2007) ............................................................ 25, 27

*Ferry v. Porsche Cars North America, Inc.*,
  2022 WL 1769120 (C.D. Cal., 2022) ................................................................... 35

*Fraley v. Facebook, Inc.*,
  830 F.Supp.2d 785 (N.D. Cal. 2011) .................................................................... 34

*Frasco v. Flo Health, Inc.*,
  2024 WL 4280933 (N.D. Cal. Sept. 23, 2024) ..................................................... 29

*Gonzalez v. Busby*,
  2012 U.S. Dist. LEXIS 99940 (N.D. Cal. 2012) .................................................. 18

*Greenley v. Kochava, Inc.*,
  684 F.Supp.3d 1024 (S.D. Cal. 2023) .......................................................... *passim*

*Gutierrez v. Converse, Inc.*,
  2023 WL 8939221 (C.D. Cal. Oct. 27, 2023) ...................................................... 27

*Hammerling v. Google LLC*,
  2022 U.S. Dist. LEXIS 217020 (N.D. Cal. 2022) ................................................ 32

*Heeger v. Facebook, Inc.*,
  509 F.Supp.3d 1182 (N.D. Cal. 2020) .................................................................. 15

*In re Anthem, Inc. Data Breach Litig.*,
  162 F.Supp.3d 953 (N.D. Cal. 2016) .............................................................. 33, 35

*In re Broadcast.com, Inc.*,
  2001 WL 36050382 (E.D. Tex. Dec. 12, 2001) ........................................................ 24

*In re Carrier IQ, Inc.*,
  78 F.Supp.3d 1051 (N.D. Cal. 2015) ............................................... 21, 27, 28, 30

*In re DoubleClick Inc. Privacy Litig.*,
  154 F. Supp.2d 497 (S.D.N.Y. 2001) ................................................................ 23

*In re Eureka Casino Breach Litig.*,
  2024 U.S. Dist. LEXIS 169803 (Nev. Sept. 19, 2024) ........................................ 35

*In re Facebook, Inc. Internet Tracking Litig.*,
  956 F.3d 589 (9th Cir. 2020) ....................................................................... *passim*

*In re Facebook, Inc., Consumer Privacy User Profile Litig.*,
  402 F.Supp.3d 767 (N.D. Cal. 2019) ................................................ 12, 31, 32

*In re Google Assistant Privacy Litig.*,
  457 F.Supp.3d 797 (N.D. Cal. 2020) ................................................................ 28

*In re Google Inc. Gmail Litig.*,
  2013 U.S. Dist. LEXIS 172784 (N.D. Cal. 2013) ............................................. 14

*In re Google Referrer Header*,
  465 F.Supp.3d 999 (N.D. Cal. 2020) ................................................................ 32

*In re Google RTB Consumer Privacy Litig.*,
  606 F.Supp.3d 935 (N.D. Cal. 2022) ........................................... 13, 15, 31

*In re iPhone Application Litig.*,
  844 F.Supp.2d 1040 (N.D. Cal. 2012) .............................................................. 24

*In re Meta Pixel Tax Filing Cases*,
  724 F.Supp.3d 987 (N.D. Cal. 2024) ................................................................ 34

*In re Yahoo! Inc. Cust. Data Sec. Breach Litig.*,
  2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) ................................................... 33

*In re Zynga Privacy Litig.*,
  750 F.3d 1098 (9th Cir. 2014) ........................................................................ 19

*Javier Assurance IQ, LLC*,
  2022 WL 1744107 (9th Cir. 2022) ........................................................ 14, 28

*Javier v. Assurance IQ, LLC*,
  2021 WL 940319 (N.D. Cal. Mar. 9, 2021) ...................................................... 28

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**KELLER GROVER LLP**
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

*Jeong v. Nexo Fin. LLC*,
  2022 WL 174236 (N.D. Cal. 2022) ............................................................ 35

*Keskinen v. Lush Handmade Cosmetics LLC*,
  2025 U.S. Dist. LEXIS 45199 (C.D. Cal. Mar. 11, 2025) ...................................... 13

*Klein v. Facebook, Inc.*,
  580 F.Supp.3d 743 (N.D. Cal. 2022) ........................................................ 34

*Krottner v. Starbucks Corp.*,
  628 F.3d 1139 (9th Cir. 2010) ............................................................. 11

*Lee v. City of Los Angeles*,
  250 F.3d 668 (9th Cir. 2001) .............................................................. 16

*Lesh v. Cable News Network, Inc.*,
  2025 WL 563358 (S.D.N.Y. Feb. 20, 2025) .................................................... 22

*Licea v. Cinmar, LLC*,
  659 F. Supp. 3d 1096 (C.D. Cal. 2023) ..................................................... 13

*Lineberry v. AddShopper, Inc.*,
  2025 WL 551864 (N.D. Cal. Feb. 19, 2025) .................................................. 29

*Lopez v. Apple, Inc.*,
  519 F.Supp.3d 672 (N.D. Cal. 2021) ..................................................... 11, 24

*Malibu Media, LLC v. Pontello*,
  2013 WL 12180709 (E.D. Mich. Nov. 19, 2013) ............................................... 20

*Mastel v. Miniclip SA*,
  549 F.Supp.3d 1129 (E.D. Cal. 2021) .................................................... 12, 32

*Matera v. Google Inc.*,
  2016 U.S. Dist. LEXIS 107918 (N.D. Cal. Aug. 12, 2016) .................................... 14

*McClung v. AddShopper, Inc.*,
  2024 WL 189006 (N.D. Cal. Jan. 17, 2024) ............................................... 27, 28

*Mirmalek v. L.A. Times Communs. LLC*,
  2024 U.S. Dist. LEXIS 227378 (N.D. Cal. Dec. 12, 2024) ......................... 12, 13, 18, 20

*Moody v. C2 Educ. Systems, Inc.* ("*Moody*"),
  2024 WL 3561367 (C.D. Cal. July 25, 2024)....................................... *passim*

*Moore v. Mars Petcare US, Inc.*,
  966 F.3d 1007 (9th Cir. 2020) ............................................................. 35

*Nowak v. Xapo, Inc.*,
    2020 U.S. Dist. LEXIS 219575 (N.D. Cal. Nov. 20, 2020) ................................... 25

*Pemberton v. Nationstar Mortg. LLC*,
    331 F.Supp.3d 1018 (S.D. Cal. 2018) ................................................... 35

*Polo v. Innovations Int'l, LLC*,
    833 F.3d 1193 (9th Cir. 2016) ................................................... 13

*Pruchnicki v. Envision Healthcare Corp.*,
    845 Fed. App'x. 613 (9th Cir. 2021) ................................................... 34

*Quon v. Arch Wireless Operating Co., Inc.*,
    529 F.3d 892 (9th Cir. 2008) ................................................... 24

*Raffin v. Medicredit, Inc.*,
    2016 WL 7743504 (C.D. Cal. Dec. 19, 2016) ................................................... 13

*Revitch v. New Moosejaw, LLC*,
    2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ................................................... 31

*Rodriguez v. Autotrader.com, Inc.*,
    2025 U.S. Dist. LEXIS 7139 (C.D. Cal. Jan. 8, 2025) ................................................... 20

*Rodriguez v. Google LLC*,
    2024 WL 38302 (N.D. Cal. Jan. 3, 2024) ................................................... 29

*Rodriguez v. Google LLC*,
    2025 U.S. Dist. LEXIS 3238 (N.D. Cal. Jan. 7, 2025) ................................................... 29

*Rubio v. Capital One Bank*,
    613 F.3d 1195 (9th Cir. 2010) ................................................... 35

*Ruiz v. Gap, Inc.*,
    540 F.Supp.2d 1121 (N.D. Cal. 2008) ................................................... 32

*Shah v. Fandom, Inc.*,
    2024 U.S. Dist. LEXIS 193032 (N.D. Cal. Oct. 21, 2024) ........................................... *passim*

*Smith v. Maryland*,
    442 U.S. 735 (1979) ................................................... 18

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) ................................................... 35

*Stasi v. Inmediata Health Grp. Corp.*,
    501 F.Supp.3d 898 (S.D. Cal. 2020) ................................................... 12

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

*TransUnion LLC v. Ramirez*,
     141 S. Ct. 2190 (2021) ............................................................................................. 11

*U.S. Dep't of Justice v. Reporters Comm. For Freedom of the Press*,
     489 U.S. 749 (1989) ................................................................................................ 32

*U.S. v. LSL Biotechnologies*,
     379 F.3d 672 (9th Cir. 2004) .................................................................................. 16

*United States v. Christensen*,
     828 F.3d 763 (9th Cir. 2015) ............................................................................ 25, 27

*United States v. Forrester*,
     512 F.3d 500 (9th Cir. 2008) ............................................................................ 15, 19

*United States v. Soybel*,
     13 F.4th 584 (7th Cir. 2021) .................................................................................. 19

*Vess v. Ciba-Geigy Corp. USA*,
     317 F.3d 1097 (9th Cir. 2003) .......................................................................... 25, 26

*Wesch v. Yodlee, Inci*,
     2021 WL 6206644 (N.D. Cal. July 19, 2021) ......................................................... 24

*West v. Ronquillo-Morgan*,
     526 F.Supp.3d 737 (C.D. Cal. 2020) ...................................................................... 27

*Williams v. Facebook, Inc.*,
     498 F.Supp.3d 1189 (N.D. Cal. 2019) .................................................................... 30

*Yoon v. Lululemon USA, Inc*,
     549 F.Supp.3d 1073 (C.D. Cal. 2021) .................................................................... 19

**Federal Statutes**

18 United States Code
     § 2701 ...................................................................................................................... 23

28 United States Code
     § 1447 ...................................................................................................................... 13

45 Code of Federal Regulations
     § 164.514 .......................................................................................................... 13, 31

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

1

*KELLER GROVER LLP*
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

**State Cases**

*Apple Inc. v. Superior Court,*
   56 Cal.4th 128 (2013) ................................................................................. 14

*Bell v. Farmers Ins. Exch.,*
   87 Cal.App.4th 805 (2001) ........................................................................... 20

*California Federal Bank v. Matreyek,*
   8 Cal.App.4th 125 (1992) ............................................................................. 33

*County of San Bernardino v. Walsh,*
   158 Cal.App.4th 533 (2007) ................................................................... 11, 12

*CTC Real Estate Servs. v. Lepe,*
   140 Cal.App.4th 856 (2006) ......................................................................... 33

*Flanagan v. Flanagan,*
   27 Cal.4th 766 (2002) ................................................................................... 14

*Friddle v. Epstein,*
   16 Cal.App.4th 1649 (1993) ......................................................................... 12

*Heiting v. Taylor Fresh Foods, Inc.,*
   2024 WL 3833296 (Cal. Super. Ct. L.A. Cty. July 31, 2024) ................... 20, 22, 25

*Kearney v. Salomon Smith Barney, Inc.,*
   39 Cal.4th 95 (2006) ............................................................................... 14, 15

*Klein v. Chevron U.S.A., Inc.,*
   202 Cal.App.4th 1342 (2012) ....................................................................... 34

*Kwikset Corp. v. Superior Court,*
   51 Cal.4th 310 (2011) ................................................................................... 34

*Lectrodryer v. SeoulBank,*
   77 Cal.App.4th 723 (2000) ........................................................................... 33

*Levings v. Choice Hotels Int'l, Inc.,*
   2024 WL 1481189 (Cal. Super. Ct. L.A. Cty. April 3, 2024) ..................... 20, 22

*Licea v. Hickory Farms LLC,*
   2024 WL 1698147 (Cal. Super. March 13, 2024) ......................................... 19

*McBride v. Boughton,*
   123 Cal.App.4th 379 (2004) ......................................................................... 12

*People v. Ault*,
    33 Cal.4th 1250 (2004) ........................................................ 16

*Saunders v. Sup. Ct.*,
    27 Cal.App.4th 832 (1994) ................................................ 34

*Smith v. State Farm Mutual Automobile Ins. Co.*,
    93 Cal.App.4th 700 (2001) ................................................ 34

**State Statutes**

California Business & Professions Code
    § 17200........................................................ 11, 34, 35
    § 17204 ........................................................ 33

California Constitution Article 1,
    § 1 ........................................................ 11

California Civil Code
    § 1798.100 ........................................................ 15
    § 1798.140 ........................................................ 13, 15, 31

California Penal Code
    § 502 ........................................................ *passim*
    § 629.51 ........................................................ 21
    § 630........................................................ 11
    § 632 ........................................................ 21
    § 638.50 ........................................................ *passim*
    § 638.51 ........................................................ *passim*
    § 638.52 ........................................................ 21, 22
    § 1546 ........................................................ 13, 15, 23, 31

**Rules**

Federal Rules of Civil Procedure,
    Rule 8 ........................................................ 26
    Rule 9 ........................................................ 25, 26
    Rule 12 ........................................................ 11, 16

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP

1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs' First Consolidated Complaint ("FCC") addresses Politico's unlawful practice of embedding and using various third-party trackers on its website, www.Politico.com.[1]  Without users' knowledge or consent, Politico (1) installs third-party tracker cookies on its website users' browsers and (2) causes disclosure of website users' personal data to those third-party trackers.  Politico attempts to escape liability by (1) mischaracterizing the privacy rights at stake, (2) arguing the merits of the case, (3) misconstruing the pen register statute, (4) hiding its unlawful actions under the guise of necessity, (5) erroneously arguing for heightened pleading standards, (6) imposing requirements not present in the CDAFA, and (7) minimizing Plaintiffs' harm and loss.

## II.    PLAINTIFFS HAVE ALLEGED INJURY IN FACT FOR STANDING

Politico's Rule 12(b)(1) argument, which challenges the "injury in fact" requirement, wrongly argues that no privacy interest exists for IP addresses. But disclosure of private information has long been recognized as one of the traditional harms giving rise to standing,[2] including online privacy violations.[3]  The misappropriation of personal information constitutes an injury in fact because it causes consumers reasonably to fear that their personal information later will be misused.[4]

Politico first argues that Plaintiffs failed to allege economic harm because they did not attempt to sell their personal information. The controlling *Facebook Tracking* opinion, however, recognized that California law confers a right to disgorgement of profits resulting from unjust enrichment, even where an individual has not suffered a corresponding loss.[5]  Plaintiffs need only

---

[1]  The FCC alleges five causes of action for violations of (1) the California Computer Data Access and Fraud Act, Cal. Penal Code § 502 ("CDAFA"); (2) the California Invasion of Privacy Act, Cal. Penal Code §§ 630, *et seq.* ("CIPA"); (3) the right to privacy under Article 1, § 1, of the California Constitution; (4) unjust enrichment; and (5) the Unfair Competition Law, California Business & Professions Code §§ 17200, *et seq.* ("UCL").

[2]  *See, e.g., TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021) (recognizing that "various intangible harms can also be concrete [including]…disclosure of private information").

[3]  *See, e.g., Lopez v. Apple, Inc.*, 519 F.Supp.3d 672, 681 (N.D. Cal. 2021) (violation of substantive privacy rights "gives rise to a concrete injury sufficient to confer standing"), quoting *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020) ("*Facebook Tracking*").

[4]  *Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1143 (9th Cir. 2010).

[5]  *Facebook Tracking*, 956 F.3d at 599, citing *County of San Bernardino v. Walsh*, 158 Cal.App.4th 533, 542 (2007).

allege that they retain a stake in the profit garnered from their personal data to establish standing.[6]

Here, Plaintiffs allege that their information carries financial value and that Politico misappropriated and sold that valuable data, without users' consent.[7] This is tangible harm.[8]

Politico's lack-of-intangible-harm argument also fails. Plaintiffs allege that they were injured when Politico shared Plaintiffs' personal information with third parties without consent or authorization. Such "invasion-of-privacy" allegations are sufficient to confer Article III standing.[9] Ninth Circuit case law is well settled that that the harm of invasion of privacy is an injury in fact that can establish Article III standing.[10] Further, "violations of the right to privacy have long been actionable at common law."[11] "[T]he Ninth Circuit has found, in near uniformity, that intangible injuries based on alleged violations of privacy-related statutes are sufficiently concrete."[12] "[T]he legislative history and statutory text demonstrate that Congress and the California legislature intended to protect these historical privacy rights when they passed" CIPA, which "thus codifies a substantive right to privacy, the violation of which gives rise to a concrete injury sufficient to confer standing."[13] Invasions of privacy are actionable injuries.[14]

Politico relies on non-binding cases from other states to argue that IP addresses are no more

---

[6] *Id.* at 600, citing *McBride v. Boughton*, 123 Cal.App.4th 379, 389 (2004).

[7] FCC, ¶¶ 6, 8, 30-31, 40, 64, 79-80, 133.

[8] "This stake in unjustly earned profits exists regardless of whether an individual planned to sell his or her data or whether the individual's data is made less valuable." *Facebook Tracking*, 956 F.3d at 600 (finding that plaintiffs could state an economic injury for their misappropriated data).

[9] *See, e.g.*, *Mastel v. Miniclip SA*, 2021 WL 2983198, at *6 (E.D. Cal. July 15, 2021) (collection of "personal information without the plaintiff's consent involved a sufficiently 'concrete' injury"); *In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F.Supp.3d 767, 784 (N.D. Cal. 2019).

[10] *See e.g.*, *Facebook Tracking*, 956 F.3d at 598 (CIPA standing established where plaintiffs alleged invasion of their privacy rights), citing *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1117-18 (9th Cir. 2020) *Mirmalek v. L.A. Times Communs. LLC*, 2024 U.S. Dist. LEXIS 227378, at *12 (N.D. Cal. Dec. 12, 2024) (CIPA standing established in allegations that the defendant caused the "***Plaintiff's IP address to be disclosed to unconsented-to third parties***" (emphasis added)); *Shah v. Fandom, Inc.*, 2024 U.S. Dist. LEXIS 193032, at *15-17 (N.D. Cal. Oct. 21, 2024) (similar); *Brown v. Google LLC*, 685 F.Supp.3d 909, 923 (N.D. Cal. 2023) ("*Brown III*") (privacy harm allegations based on disclosure of plaintiffs' anonymized browsing data to unauthorized third parties established standing for CIPA and invasion-of-privacy claims).

[11] *Facebook Tracking*, 956 F.3d at 598.

[12] *Stasi v. Inmediata Health Grp. Corp.*, 501 F.Supp.3d 898, 909 (S.D. Cal. 2020).

[13] *Facebook Tracking*, 956 F.3d at 598. Moreover, it is well established that "any invasion of privacy involves an affront to human dignity." *Friddle v. Epstein*, 16 Cal.App.4th 1649, 1660-1661 (1993).

[14] *See Moody v. C2 Educ. Systems, Inc.*, 2024 WL 3561367, at *6 (C.D. Cal. July 25, 2024) ("*Moody*"), citing *Facebook Tracking*, 956 F.3d at 598.

KELLER GROVER LLP

1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

than "basic contact information" for which no privacy interest exists.  But those cases fail to consider the statutory protections afforded to IP addresses in various federal and California law contexts.[15] Further, courts in this district have found injury-in-fact when the information disclosed included IP addresses.[16] Those California courts recognized that CIPA § 638.51 "reflects the Legislature's judgment that an individual's consent is required before others may track certain addressing information in their electronic communications for non-law enforcement purposes."[17]

Lastly, contrary to Politico's assertion, courts have found that "violations of plaintiffs' statutory rights under CIPA, without more, constitute injury in fact because instead of a bare technical violation of a statute...a CIPA violation involves ... a violation of privacy rights."[18] Indeed, "district courts in the Ninth Circuit consistently have concluded that, to satisfy injury in fact, a plaintiff in a CIPA action need not allege actual harm beyond the invasion of the private right conferred by the statute."[19]  Thus, "a violation of a privacy right protected by California law is sufficient injury for standing purposes."[20] Based on the FCC's allegations of Politico's privacy invasions and the resulting economic harm, Plaintiffs have established Article III standing.[21]

---

[15]  *See e.g.*, 45 C.F.R. § 164.514(b)(2)(i)(O) (IP address is a personal identifier subject to HIPAA protection); Cal. Civ. Code § 1798.140(v)(1)(A) ("[i]dentifiers such as a[n] [IP] address" constitute a consumer's personal information); Cal. Pen. Code §§ 1546(d) and (h), 1546.1(a)(1) and (b) (precluding the government from compelling ISPs to provide a user's IP address without a warrant); *In re Google RTB Consumer Privacy Litig.*, 606 F.Supp.3d 935, 946-947 (N.D. Cal. 2022) ("*Google RTB*") (a reasonable expectation of privacy exists for an IP address that "is personal information under California law[,]" which generally is expected to remain private).

[16]  *See Mirmalek*, 2024 U.S. Dist. LEXIS 227378, at *12-13 (finding CIPA § 638.51 standing when the defendant's embedded trackers disclosed the plaintiff's IP address without her consent to unauthorized third parties); *Shah*, 2024 U.S. Dist. LEXIS 193032, at *15-17; *see also*, *Brown III*, 685 F.Supp.3d at 919-20, 923-25; *Moody*, 2024 U.S. Dist. LEXIS 132614, at *9-11 (finding CIPA standing where plaintiffs alleged that the defendant, via tracking software, secretly disclosed their device and browsing data to third parties without their consent).

[17]  *See, e.g.*, *Shah*, 2024 U.S. Dist. LEXIS 193032, at *17.

[18]  *Keskinen v. Lush Handmade Cosmetics LLC*, 2025 U.S. Dist. LEXIS 45199, at *15 (C.D. Cal. Mar. 11, 2025), citing *Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096, 1103 (C.D. Cal. 2023).

[19]  *Raffin v. Medicredit, Inc.*, 2016 WL 7743504, at *3 (C.D. Cal. Dec. 19, 2016); *Carrese v. Yes Online Inc.*, 2016 WL 6069198, at *5 (C.D. Cal. Oct. 13, 2016) ("the allegation of a violation of CIPA ... is sufficient to confer standing without any independent allegation of injury").

[20]  *Lush*, 2025 U.S. Dist. LEXIS 45199, at *15.

[21]  Politico argues that remand to state court would be "futile." This request for the Court to find it does not have subject matter jurisdiction yet also adjudicate state standing under California law is

---

1    **III.    PLAINTIFFS HAVE PLEADED EACH OF THEIR CLAIMS SUFFICIENTLY**

2    **A.    Politico Violated CIPA by Using Pen Register Trackers on Its Website to Collect and Secretly Share IP Addresses and Other User Data.**

3    The California Supreme Court regularly reads statutes to apply to new technologies where

4    such a reading would not conflict with the statutory scheme.[22]  In the CIPA context, the California

5    Supreme Court repeatedly has found that the California Legislature intended CIPA to establish

6    strong privacy protections and has instructed other courts to interpret CIPA in a manner that "fulfills

7    the legislative purpose of [CIPA] by giving greater protection to privacy interests."[23] Numerous

8    district courts have applied CIPA to new technologies.[24] The Ninth Circuit and other district courts

9    also have determined that CIPA, including the pen register statute, applies to internet

10    communications and regularly have applied CIPA to computer-based internet wiretapping.[25]

**1.    A reasonable expectation of privacy exists for IP addresses.**

11

12    Politico first wrongly argues that Plaintiffs lack statutory standing because there is no privacy

13    interest in IP addresses.  An IP address is private, personal information. Disclosure of private

14    information has long been recognized as one of the traditional harms for standing.  In *Kearney v.*

15    *Salomon Smith Barney, Inc*.[26], the California Supreme Court held that California's explicit

16    constitutional privacy provision was enacted in part specifically to ***protect Californians from overly***

17    ***intrusive business practices that were seen to pose a significant and increasing threat to personal***

18

19    _____

20    improper. 28 U.S.C. § 1447(c); *see also Polo v. Innovations Int'l*, LLC, 833 F.3d 1193, 1196 (9th Cir. 2016).  California standing is not governed by Article III and should not be prematurely decided.

21    [22]  *See Apple Inc. v. Superior Court*, 56 Cal.4th 128, 137 (2013) (holding that even if a technology did not exist at the time of a statute's enactment, that does not necessarily preclude the application of the statute to that technology).  *Id*. at 139-141.

22

23    [23]  *Flanagan v. Flanagan*, 27 Cal.4th 766, 775 (2002).
     [24]  *Matera v. Google Inc.*, 2016 U.S. Dist. LEXIS 107918 at *61, 67 (N.D. Cal. Aug. 12, 2016) (applying CIPA to emails); *Facebook Tracking*, 140 F.Supp.3d at 936 (CIPA applies to "electronic communications"); *In re Google Inc. Gmail Litig.*, 2013 U.S. Dist. LEXIS 172784, at *20-21 (N.D. Cal. 2013) (same).

24

25    [25]  *Javier Assurance IQ, LLC*, 2022 WL 1744107, at *1 (9th Cir. 2022) (CIPA applies to internet communications). *See also Greenley v. Kochava, Inc.*, 684 F.Supp.3d 1024, 1050 (S.D. Cal. 2023) (tracking software was a "pen register"); *Moody*, 2024 WL 3561367, at *2-3 (software embedded on the website falls within the scope of §§ 638.50 and 638.51); *Shah*, 2024 U.S. Dis. LEXIS 193032, at *13 (tracking software could plausibly constitute a pen register*).*

26

27    [26]  39 Cal.4th 95, 124-25 (2006) ("*Kearney*") (California Legislature "repeatedly has enacted new legislation in related areas in an effort to increase the protection of California consumers' privacy").

28

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

*privacy*."[27] That privacy right extends to IP addresses.[28]

Indeed, multiple California and federal laws recognize that IP addresses constitute personal information, and thus provide consumers with a privacy interest in that information.[29] That is because IP addresses can be used to determine a user's geographical location, gather insights about a user's online behavior and activity, deliver targeted advertisements, and enable hackers to launch cyberattacks and scams.[30]  Knowing a website user's IP address allows advertisers to target specific households and particular individuals with ads that are relevant to their interests by matching physical addresses to IP addresses.[31] Given the information that it reveals, an IP address is considered personally identifiable information.

Recently enacted California laws protect IP addresses. For example, the California Electronic Communications Privacy Act ("CECPA"), Penal Code § 1546, *et seq.*, precludes the government from compelling ISPs to disclose user IP addresses without a warrant. The California Consumer Privacy Act ("CCPA"), Cal. Civ. Code § 1798.100, *et seq.*, protects and defines "personal information" to include "[g]eolocation data" or "internet protocol addresses."[32] Individuals maintain a reasonable expectation of privacy in their personal information.[33]

Politico's federal authorities are inapposite. *United States v. Forrester* pre-dates California's recent laws and analyzed only the "**IP addresses *of websites visited***" and what constitutes a "search" under the Fourth Amendment.[34]  *Forrester* did not consider whether a user has a reasonable expectation of privacy in the ***user's*** IP address. In *Heeger v. Facebook, Inc.*[35], the plaintiffs did not bring a § 638.51 claim, so the court did not conduct any analysis of the viability of such a claim.

---

[27]  *Id*. at 124-125 (emphasis added).
[28]  *Shah*, 2024 U.S. Dis. LEXIS 193032, at *17.
[29]  *See* footnote 16, *supra*.
[30]  FCC, ¶¶ 56-62, 66.  *See also* Danao, Monique, *What Can Someone Do With Your IP Address?*, Forbes Advisor, https://www.forbes.com/advisor/business/what-can-someone-do-with-ip-address/.
[31]  FCC, ¶ 60.  *See* Herbert Williams, *The Benefits of IP Address Targeting for Local Businesses*, LinkedIn (Nov. 29, 2023),  https://www.linkedin.com/pulse/benefits-ip-address-targeting-local-businesses-herbert-williams-z7bhf/.
[32] Civ. Code § 1798.140(v)(1)(A).
[33] *See Google RTB*, 606 F.Supp.3d at 946-947 (selling and sharing of "sensitive personal information *such as plaintiff's IP address*" without consent supported a reasonable expectation of privacy).
[34] *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008).
[35] *Heeger v. Facebook, Inc.*, 509 F.Supp.3d 1182 (N.D. Cal. 2020).

That court also did not address the CECPA or CCPA and thus did not consider the Legislature's decision to make IP addresses personal information subject to protection.[36]

Politico also suggests that CIPA does not apply because the only personal information alleged is IP addresses, which it asserts are necessary for the "basic function of browsing websites." But Plaintiffs allege that the tracking technology also collects operating system information, browser information, and geolocation data for use by Politico and third parties.[37] Politico does not argue that this collection of additional data is necessary to operate or maintain its website. Nor does it argue that the collection of *any data by a third party* is necessary.

Plaintiffs allege that (1) Politico operates its website with third-party trackers embedded on the website; (2) installs third-party tracker cookies on website users' browsers without obtaining users' authorization; (3) the third-party trackers surreptitiously collect data from every website visitor without consent; and (4) Plaintiffs visited Politico's website during the relevant period. These allegations demonstrate that Politico, through the unauthorized installation of the third-party trackers, *discloses its website users' personal information to third parties without permission.* That invades Plaintiffs' and Class members' privacy and constitutes actionable injuries.[38]

### 2. Politico initiated and caused the unauthorized disclosure of its website users' personal information to undisclosed third parties.

Politico next argues for dismissal by improperly contradicting Plaintiffs' allegations and misinterpreting the figures contained in the FCC to assert that no disclosure to third parties has been demonstrated. Politico's flawed argument should be rejected for multiple reasons.

First, Politico's argument violates the well-established rule that the Court "is required to presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the non-moving party."[39] "*Indeed, factual challenges to a plaintiff's complaint have no bearing on the legal sufficiency of the allegations under Rule 12(b)(6).*"[40]

---

[36] *People v. Ault*, 33 Cal.4th 1250, 1268 n. 10 (2004) (it is "axiomatic that cases are not authority for propositions not considered"). Politico's cited California cases are unpersuasive and against the weight of authority in this district finding a privacy interest in IP addresses. *See* footnotes 10 and 17.
[37] FCC, ¶¶ 1, 7, 31, 35, 63, 66, 68, 71-72, 75, 83, 127, 145.
[38] *See Moody*, 2024 WL 3561367, at *6, citing *Facebook Tracking*, 956 F.3d at 598.
[39] *U.S. v. LSL Biotechnologies*, 379 F.3d 672, 698 (9th Cir. 2004).
[40] *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). *See also* Fed. R. Civ. Proc. 12(d).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP

1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

Second, Politico flatly misinterprets the allegations in FCC Paragraphs 65, 71, 75, and 77. Plaintiffs do *not* allege that IP addresses were transmitted in the HTTP request to Politico's servers and subsequently shared with third parties. Rather, when a user enters the Politico website, Politico sends instructions and "causes the three trackers to be installed on the user's browser. The trackers, in turn, instruct the user's browser to send the trackers the user's IP address." Plaintiffs further allege that each tracker installs and stores its own website cookie on the user's browser and "uses that third-party tracker cookie to collect and share user's browser and device data and addressing information, including IP addresses, every time the user visits and interacts with the Politico website."[41] Politico initiates and causes that disclosure of information to third parties.

Third, Politico misunderstands the process reflected in FCC Figures 1-3. Politico first asserts that the left side "Request" reflects the user's request to Politico's website, and the right side "Response" reflects Politico's response to the user. Thus, the communications seen in the figures presumably are between the website user and Politico. But in the very next sentence, Politico argues that the figures show the *trackers* responding to Politico's requests, reflecting communications between Politico and the third-party trackers. Both interpretations are incorrect.

In fact, Figures 1-3 reflect the communications occurring between a Politico website user and the third-party trackers that Politico installed on the user's browser.[42] As can be seen from the figures, www.politico.com is listed as the "**Referrer**" or "Access-Control-Allow-**Origin**" (Figure 3). That demonstrates that Politico is responsible for "referring" or sending the user to the "host" URL and initiating communications. The "host" listed in each of the figures is one of the three trackers – TripleLift, CasaleMedia, or Adnx – *embedded on Politico's website and installed on a user's browser the instant the user enters the Politico website.* Based on the code programmed within the third-party tracker cookies specifying what information to collect, the left side "Request" shows the user sending that data to the "host" tracker, and the right side "Response" shows information being sent from the tracker back to the Politico website user's IP address. The figures do *not* demonstrate that "no IP address was disclosed to third parties" as Politico argues.

---

[41] FCC, ¶¶ 65-66, 78.
[42] FCC, ¶¶ 71, 75, 77-78.

In sum, Politico's attempt to use a motion to dismiss to present unsupported "evidence" and/or argue the merits of the case is improper.[43]

### 3. Pen registers capture outgoing information, including IP addresses.

Politico misinterprets what a "pen register" captures. First, pen registers are not limited to telephone technology.[44] The definitions under § 638.50 do not state any such requirement or limitation. Rather, they simply refer to "a device *or process*" that records or captures certain information from a "wire or electronic communication."[45] Recent decisions have confirmed that tracking software, like the third-party trackers used here, can constitute a "pen register" under §§ 638.50 and 683.51.[46]

Second, a "pen register" is a "device or process" that records *outgoing* information from the source of a communication. The "pen register" definition provides for the recording of information "transmitted *by* an instrument *from* which a wire or electronic communication is transmitted."[47] Here, the relevant information is *outbound* information from website users' browsers, including browser and device data and IP addresses, sent to the Politico website *and also sent surreptitiously to and recorded by the third-party trackers* used by Politico.

Third, the statute specifies that a pen register captures "dialing, routing, addressing or signaling information." Nothing states that the information relates only to the destination, versus the

---

[43] *Gonzalez v. Busby*, 2012 U.S. Dist. LEXIS 99940, at *4-5 (N.D. Cal. 2012).

[44] Politico's reliance on *Smith v. Maryland*, 442 U.S. 735 (1979) is misplaced. *Smith* is an outdated case that relied upon an older definition of "pen register" that later was modified by the enactment of the Electronic Communication Privacy Act of 1986 ("ECPA") and further modified by the Patriot Act. Significantly, the ECPA omitted language limiting the types of information that a pen register could acquire and broadened its scope to encompass electronic communications. The Patriot Act further modified the "pen register" definition to cover software processes that collect information. *Forrester* also is unavailing because it relied on *Smith* and did not consider the either amendment.

[45] Pen. Code §§ 638.50(b)-(c) [emphasis added].

[46] *See Kochava*, 684 F.Supp.3d at 1050 (tracking software was a "pen register"); *Moody*, 2024 WL 3561367, at *2-3 (software embedded on the website falls within the scope of §§ 638.50 and 638.51); *Shah*, 2024 U.S. Dist. LEXIS 193032, at *6 and *13 (*trackers operate as a "process" that records IP addressing information and can plausibly constitute a pen register); Mirmalek*, 2024 U.S. Dist. LEXIS 227378, at *6-10 (trackers are a "device or process" under § 638.50 and record addressing information in the form of IP addresses as required by CIPA).

[47] Pen. Code § 638.50(b) (emphasis added). Compare Pen. Code § 638.50(c) defining a "trap and trace device" that records *incoming* information.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

1  source.[48]  Moreover, even if Politico's interpretation were correct, that simply would mean that the

2  trackers are "trap and trace" devices because they collect "electronic or other impulses that identify

3  the ***originating number*** or other dialing, routing, ***addressing***, or signaling information reasonably

4  likely to identify the source of a wire or electronic communication."[49]

5      Further, IP addresses constitute ***addressing information***.[50] The FCC clearly alleges the

6  unauthorized collection and use of IP addresses, *i.e.* addressing information, sent from Plaintiffs and

7  Class members who visited the Politico website.  Thus, Politico's installation and use of third-party

8  trackers clearly fall within the scope of § 638.51 and CIPA prohibitions regarding pen registers.

9      Politico attempts to bolster its position by asserting that its conduct is a part of "basic internet

10 functionality" and "necessary for normal website use."  ***But this case does not involve information***

11 ***conveyed to a first-party website operator.  Rather, it involves personal information sent to third***

12 ***parties without notice or consent.*** Politico's surreptitious disclosure to the third-party trackers is not

13 "necessary" to the function or operation of the Politico website.[51] Any narrow consent given by

14 website users to use their IP addresses was limited to communicating with Politico's website.[52]

15     Politico's reliance on *Licea v. Hickory Farms LLC*[53] is misplaced. There, the plaintiff did not

16 allege that the defendant installed a pen register that disclosed plaintiff's information *to a third party*.

17 Rather, that case involved sending information to the website-operator defendant.  The court

18 reasoned that there was "consent under the guise of visiting a website" because the defendant could

19 not otherwise host a website.  *Id*. at *4.  Politico's reliance on *federal* Pen Register Act cases also is

---

48  *See Shah*, 2024 U.S. Dis. LEXIS 193032, at *9-10 ("By the plain meaning of § 638.50(b), collection of the recipient phone number or IP address is not a required element").

49  Pen. Code § 638.50(c).  Pen registers and trap-and-trace devices almost always are used together. Thus, courts generally discuss them as one.  *See, e.g., United States v. Soybel*, 13 F.4th 584, 586 n. 2 (7th Cir. 2021).

50  *See Shah*, 2024 U.S. Dis. LEXIS 193032, at *6-8 (finding trackers record addressing information), citing *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1108 (9th Cir. 2014).  Even the *Forrester* case cited by Politico supports this characterization.  *Forrester*, 512 F.3d at 510 (holding that "email to/from addresses and IP addresses constitute addressing information").

51  *See Shah*, 2024 U.S. Dis. LEXIS 193032, at *14-15 ("A user who consents to disclose their IP address [ ] as part of accessing [a] website does not necessarily consent to disclose their IP address to the third parties operating the Trackers").

52  *See, e.g., Yoon v. Lululemon USA, Inc*, 549 F.Supp.3d 1073, 1080-1081 (C.D. Cal. 2021) (finding that plaintiff sufficiently pleaded lack of consent to third party software provider's participation in website conversation despite defendant website operator's reliance on its online privacy disclosure).

53  *Licea v. Hickory Farms LLC*, 2024 WL 1698147 (Cal. Super. March 13, 2024).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

unavailing.[54] Those out-of-district authorities involve transmission of information **to a party** to a communication, **not to third parties**.[55] Here, in contrast, the unauthorized conduct is Politico's disclosure of Plaintiffs' and Class members' personal information **to unidentified third parties.**

Lastly, Politico's attempt to distinguish *Greenley v. Kochava, Inc.* fails.[56] With similar allegations – hidden code installed by a defendant allowing for the improper collection and use of user information for marketing, advertising or data analytics purposes – *Kochava* is directly analogous. Third-party code does not appear on the Politico website by accident. It must be installed on the website affirmatively by Politico. The *Kochava* court recognized that "[t]oday, pen registers take the form of software" and, for this reason, "***the California Legislature does not limit its prohibition on installing pen registers to law enforcement.***" In finding that "courts should focus less on the form of the data collector and more on the results," the court held that "[a] process can take many forms. Surely among them is software that identifies consumers, gathers data, and correlates that data through unique 'fingerprinting.'"[57] Other courts are in accord.[58]

### 4. Penal Code § 638.51 is not limited to telephone technology.

Politico argues that Plaintiffs' § 638.51 claim fails because a pen register applies only to telephone-tracking technology. But the plain language of the statutes and their legislative history are contrary to and do not support Politico's outdated interpretation. First, the statutory provisions

---

[54] *See, e.g., Bell v. Farmers Ins. Exch.*, 87 Cal.App.4th 805, 817 (2001) finding interpretations of similar federal laws persuasive, but not binding, in interpreting California law).

[55] *Capitol Records Inc. v. Thomas-Rasset*, 2009 WL 1664468, at *3 (D. Minn. June 11, 2009) (holding that "the Pen Register Act cannot be intended to prevent individuals who receive electronic communications from recording the IP information *sent to them*") (emphasis added); *Malibu Media, LLC v. Pontello*, 2013 WL 12180709, at *4 (E.D. Mich. Nov. 19, 2013) (IP address *sent to a party* to a communication, not to a third party).

[56] In lengthy footnotes, Politico also tries unsuccessfully to distinguish *Moody*, *Shah*, and *Mirmalek*. The various asserted arguments already have been addressed within this Opposition, and none of Politico's arguments is persuasive. These cases are directly on point and instructive,

[57] *Kochava*, 684 F.Supp.3d at 1050.

[58] *See also Moody*, 2024 WL 3561367, at *2-4; *Heiting v. Taylor Fresh Foods, Inc.*, 2024 WL 3833296, at *3 (Cal. Super. Ct. L.A. Cty. July 31, 2024); *Levings v. Choice Hotels Int'l, Inc.*, 2024 WL 1481189, at *1-2 (Cal. Super. Ct. L.A. Cty. April 3, 2024); *Shah*, 2024 U.S. Dis. LEXIS 193032, at *6; *Mirmalek*, 2024 U.S. Dist. LEXIS 227378, at *6-10. Politico cites several recent California Superior Court decisions for the opposite holding. But, as recognized in a recent district court decision, "that a California Superior Court concluded differently, while persuasive, is not binding and does not foreclose the possibility that software may qualify as a pen register or trap and trace device under California law, at least at the pleading stage." *Rodriguez v. Autotrader.com, Inc.*, 2025 U.S. Dist. LEXIS 7139, at *13 (C.D. Cal. Jan. 8, 2025).

---

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

do not limit the prohibitions of § 638.51 to telephones.[59]  Section 638.50 defines a "pen register" as "a device *or **process*** that records or decodes dialing, routing, addressing or signaling information transmitted by an instrument or facility from which a wire *or electronic communication* is transmitted, but not the contents of a communication."[60]  There is no mention of telephones.  The portion of Assembly Bill 929's introductory language cited by Politico does not change the pen register definition, nor does it limit the definition to telephone-tracking technology.[61]

Further, use of the term "process" in the disjunctive negates the argument that a device must be attached to a telephone.  Indeed, multiple courts have found that software qualifies as a "device."[62]  Politico also ignores the Legislature's intent to define broadly the meaning of "electronic communication."  As defined in § 629.51(a)(2), "electronic communication" means "any transfer of signs, signals, *writing, images, sounds, data, or intelligence of any nature* in whole or in part by a wire, radio, electromagnetic, or photoelectric or photo-optical system…."  While Politico may be correct that Assembly Bill 1242 did not "expand the scope of the definition of a pen register," the 2022 amendment *also did not alter the definition of "electronic communication,"* which includes writings, images, data, and intelligence, none of which are related to telephones.

Second, Politico focuses on inapplicable § 638.52. As recognized in *Shah*, § 638.52 merely lists the procedures that *law enforcement officers* must follow when applying for a pen register; it does not alter the pen register definition.[63]  The *Shah* court also held that the definition of a pen register is "not limited to the type most often utilized by law enforcement." While recognizing that telephone-based pen registers are among the "variety of electronic tools" used by law enforcement,

---

[59]  *See Shah*, 2024 U.S. Dis. LEXIS 193032, at *9 ("Nothing in the statutory definition limits pen registers to those that operate the same way as traditional phone pen registers.").
[60]  Pen. Code § 638.50(b) [emphasis added].
[61]  Politico wrongly implies that AB 929 governs only how law enforcement could obtain and use a pen register or trap and trace device.  As the cited introduction states, however, the bill also was intended to "prohibit *a person*, other than a provider of electronic or wire communication service for specified purposes, from installing or using a pen register or trap and trace device, *as defined*." [Emphasis added.]
[62]  *See Doe v. Meta Platforms, Inc.*, 690 F.Supp.3d 1064, 1080 (N.D. Cal. 2023) (*finding Pixel software to be a device* under § 632(a)); *In re Carrier IQ, Inc.*, 78 F.Supp.3d 1051, 1084 (N.D. Cal. 2015) (holding that plaintiffs *sufficiently have alleged that the Carrier IQ software is a "device"* for purposes of the Wiretap Act).
[63]  *Shah*, 2024 U.S. Dis. LEXIS 193032, at *10.

the court also found that **nowhere** in the legislative materials "did the Legislature state an intent to add a statutory requirement limiting pen registers to those traditional forms."[64] Law enforcement's use of a pen register  has no bearing on what constitutes a pen register for § 638.51 purposes.[65]

Third, pen registers are not limited to devices attached to telephones. The *Moody* court rejected that exact limitation, holding that "[t]hough § 638.52 refers to pen registers and trap and trace devices as physically attached to telephone lines, the definitions under § 638.50 do not state any such requirement."[66] Instead, they refer only to 'device[s] or process[es]' that record or capture certain information" and include reference to "'a wire or electronic communication,'"[67] Citing the *Kochava* decision, the *Moody* court held that tracking software plausibly could constitute a "pen register" under §§ 638.50 and 638.51.[68]

Defendant's telephone-only arguments are without merit.[69]

### 5. Politico's "consent" to the unauthorized collection of users' personally identifying information is irrelevant, and no statutory exception applies.

Politico next argues that *its* consent as the "user" of the tracking technology was sufficient for the collection of website users' personal information. That twisted reading of the statute undermines the entire concept of **personal** privacy. First, assuming that Politico is the relevant "user," its argument could be valid only if the third-party trackers were providers of electronic communication services ("ECS"). They plainly are not.  TripleLift, Index Exchange, and Xandr are third parties that provide marketing and advertising services.[70]  They do not "provide **the ability** to

---

[64] *Id.*, at *10 and *18 fn. 2.

[65] Moreover, Politico neglects to point out that § 638.52 includes language instructing that "[u]pon the presentation of an order…*a provider of wire or electronic communication service*…shall immediately provide the peace officer all information, facilities, and technical assistance necessary to accomplish the installation of the pen register." Pen. Code § 638.52(h) (emphasis added).  *See also* Pen. Code §§ 638.52(i)-(j) (same). That language is not limited to providers of "telephone" services.  Rather, it also encompasses other wire or electronic communication services.

[66] *Moody*, 2024 WL 3561367, at *2.

[67] *Id.*, citing Pen. Code §§ 638.50(b)-(c).

[68] *Id.*, citing *Kochava*, 684 F.Supp.3d at 1050.

[69] *See also Heiting*, 2024 WL 3833296, at *3 (overruling demurrer involving similar allegations and holding that *a* "*plain reading of the modern definitions [of "pen register" and "trap and trace device"] shows that they are not limited to physical devices attached to telephone lines*"); *Levings*,, 2024 WL 1481189, at *1-2; *Lesh v. Cable News Network, Inc.*, 2025 WL 563358, at *3-5 (S.D.N.Y. Feb. 20, 2025) (trackers are "pen registers" under § 638.51 and finding that "the plain text of Section 638.50 *clearly does not limit* the application of pen registers to telephones").

[70] FCC, ¶¶ 70, 72, 76.

KELLER GROVER LLP

1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

send or receive electronic communications," nor do they act as "an intermediary in the transmission of electronic communications."[71]  Because the third-party trackers are not providers of ECS and do not fall within the § 638.51(b) exception, Politico's consent to their conduct is irrelevant.

Politico's reliance on *In re DoubleClick Inc. Privacy Litig.*[72] is misplaced.  First, ***that New York case involved the federal ECPA, not CIPA.***  The case also contains no analysis of § 638.51 or of the "user consent" exception that Politico is trying to assert.  Moreover, the ECPA and CIPA are not analogous.  The exception under 18 U.S.C. § 2701(c)(2) permits access to a communication if it is authorized by the authors or intended recipients of that communication.  No such exception exists under § 638.51(b), which allows *only* the "***provider***" of an "electronic communications service" to install or use a pen register with a service user's consent.  Because neither Politico nor the third-party trackers are ECS providers, the exception under § 638.51(b)(5) does not shield their conduct.

### 6.  The surreptitious disclosure of personal information to third parties is not necessary for the operation or maintenance of the Politico website.

In a lengthy footnote, Politico argues that its installation of third-party trackers is allowed because its website is an ECS and thus it is permitted to use a pen register under the § 638.51(b)(1) exception to operate and maintain its website.[73]  While CIPA does not specifically define "electronic communications service provider," California's Electronic Communications Privacy Act does define the relevant terms "electronic communication service" and "service provider" as follows:

> "Electronic communication service" means a service that provides to its subscribers or users ***the ability to send or receive electronic communications***, including any service that acts as an ***intermediary in the transmission of electronic communications***, or stores electronic communication information.

> "Service provider" means a person or entity offering an electronic communication service.[74]

These definitions plainly refer to companies that provide access to the internet, including companies that provide internet-based services for email, wireless cellular telephone

---

[71] *See* Cal. Pen. Code §§ 1546(e) and (j) defining "electronic communication service" and "service provider."  Those definitions are set forth below in section III.A.6.
[72] *In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp.2d 497 (S.D.N.Y. 2001).
[73] Section 638.51(b)(1) provides that a "***provider of electronic or wire communication service*** may use a pen register or trap and trace device…to operate, maintain, and test a wire or electronic communication service."
[74] Cal. Pen. Code §§ 1546(e) and (j) (emphasis added).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

communications, and text messaging.[75] "[U]ncontroversial examples of facilities that provide electronic communications services" include "the computer systems of an email provider, a bulletin board system, or an ISP."[76]  Politico does not fall into any of these internet provider categories.

Further, that "an entity communicates electronically with its customers does not mean that it 'provides an [ECS].'"[77]  Many courts have held that companies that provide traditional products and services over the internet, as opposed to internet access itself, are not ECS providers.[78]  Courts also have rejected construing ECS broadly to cover merely "sending information to servers" "because it would expand 'electronic communication service' to all online services and thus render the term meaningless."[79]  Politico is a digital newspaper company and not an ECS provider.[80]

Moreover, Politico's surreptitious disclosure to third parties is not "necessary" to the function, operation, or maintenance of the Politico website.  Politico attempts to obscure the issue by arguing that the pen register statute does not prevent a website operator from collecting incoming IP addresses in order to operate its website.  That argument is a red herring. The issue here is not the disclosure of IP addresses to Politico or the collection of that and other user data for the Politico website's use. ***Rather, Plaintiffs allege that Politico, without authorization, installed three "pen registers" (i.e,. the third-party trackers) on Politico website users' browsers, and that doing so enabled the secret collection and sharing of users' personal information with the unknown third parties.***[81]

In overruling similar motions, courts have found that "the allegations here suggest that the []"

---

[75] *See Casillas v. Cypress Ins. Co.*, 770 Fed.Appx. 329, 330 (9th Cir. 2019) ("websites and services that permit users to communicate directly with one another are considered ECS providers"); *Quon v. Arch Wireless Operating Co., Inc.*, 529 F.3d 892, 902-903 (9th Cir. 2008) (wireless communications provider of text messaging pager services and provider of e-mail services are ECS providers); *Lopez*, 519 F.Supp.3d at 686 (facilities that *provide* an electronic communication service include "an email provider's servers or an ISP").

[76] *In re iPhone Application Litig.*, 844 F.Supp.2d 1040, 1057 (N.D. Cal. 2012).

[77] *Cottle v. Plaid Inc.*, 536 F.Supp.3d 461. 490 (N.D. Cal. 2021).

[78] *See, e.g., Crowley v. CyberSource Corp.*, 166 F.Supp.2d 1263, 1270 (N.D. Cal. 2001) (holding that Amazon does not qualify as an ECS); *Wesch v. Yodlee, Inci*, 2021 WL 6206644, at * 3 (N.D. Cal. July 19, 2021).

[79] *Lopez*, 519 F.Supp.3d at 687.

[80] *See In re Broadcast.com, Inc.*, 2001 WL 36050382, at *3 (E.D. Tex. Dec. 12, 2001) (finding that "Broadcast.com ***operates a website and, in doing so, does not provide internet access to the public.  It uses it."*** [emphasis added.]).

[81] FCC, ¶¶ 1, 6-9, 35, 63-66, 69, 71, 73, 77-78, 91, 145, 148, 155.

software tracks data beyond that which is necessary for the proper functioning of a website."[82] *Politico does not argue that the collection of the additional data is necessary to operate or maintain its website.  Nor does Politico argue that the collection of any data by a third party is necessary.* The statutory exception under § 638.51(b)(1) simply does not apply.

## B.  Politico's Surreptitious Installation of Third-Party Tracker Cookies on Website Users' Browsers Violates the CDAFA.

By enacting the CDAFA, the California Legislature declared its intent to "expand the degree of protection afforded to individuals…from tampering, interference, damage, and unauthorized access to lawfully created computer data and computer systems."[83]  It further declared that "protection of the integrity of all types and forms of lawfully created computers, computer systems, and computer data is vital to the protection of the privacy of individuals."  *Id.*

### 1.  Plaintiffs' CDAFA claims are not subject to Rule 9(b) pleading standards.

"Under California law, the 'indispensable elements of a fraud claim include a false representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages.'"[84] No such allegations are needed in the FCC because fraud is not an element of a CDAFA claim.[85]  Unlike otherwise-similar statutes that do require "intent to defraud," the CDAFA uses the terms "knowingly accesses and without permission."[86]

Politico's reliance on *Nowak v. Xapo, Inc.*[87] is misplaced.  There, the court's analysis focused on whether the defendants had the requisite *fraudulent intent* under the federal Computer Fraud and Abuse Act ("CFAA"). While CFAA and CDAFA are similar in some respects, there are important distinctions between them.[88]  Unlike the CFAA, the CDAFA does not require unauthorized access,

---

[82] *Heiting v. Taylor Fresh Foods*, 2024 WL 3833296, at * 4. *See also Shah*, 2024 U.S. Dist. LEXIS 193032, at *14-15 ("A user who consents to disclose their IP address [] as part of accessing [a] website *does not necessarily consent to disclose their IP address to the third parties*").
[83] Cal. Pen. Code § 502(a).
[84] *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003).
[85] *See, e.g., Kochava*, 684 F.Supp.3d at 1047-1049 (analyzing CDAFA claims under plausibility standard); *Cti III*, 2022 U.S. Dist. LEXIS 94820, at *9-13 (same); *Bui-Ford v. Tesla, Inc.*, 2024 U.S. Dist. LEXIS 28767, at *12-16 (N.D. Cal. Feb. 20, 2024) (same).
[86] *See generally* Pen. Code § 502(c). *See also Facebook, Inc. v. ConnectU LLC*, 489 F.Supp.2d 1087, 1090-1091 (N.D. Cal. 2007) (rejecting argument that another phrase referenced in the CDAFA's title should overrule what the statute's provisions actually set forth).
[87] *Nowak v. Xapo, Inc.*, 2020 U.S. Dist. LEXIS 219575, at *13 (N.D. Cal. Nov. 20, 2020).
[88] *See Cti III, LLC v. Devine*, 2022 U.S. Dist. LEXIS 94820, at *12 (E.D. Cal. May 25, 2022)

---

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP

1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

1 instead requiring only knowing access.  Critically, CDAFA § 502 does not include the same "fraud"

2 language as the CFAA.[89] "Where fraud is not an essential element of a claim, only allegations . . .

3 of fraudulent conduct must satisfy the heightened pleading requirements of Rule 9(b).,""Allegations

4 of non-fraudulent conduct need satisfy only the ordinary notice pleading standards or Rule 8(a)."[90]

5     Here, (1) Plaintiffs were the owners the computers and data described in the FCC[91]; (2)

6 Politico installed data in the form of third-party tracker cookies on its website users' browsers

7 without notice or users' authorization[92]; (3) the third-party trackers surreptitiously collected and used

8 data from Politico website visitors without those users' consent[93]; (4) Politico was unjustly enriched

9 by accessing, acquiring, taking, and using website users' data to maximize revenue by selling

10 advertising space on the Politico website and for other purposes for Politico's own financial

11 benefit[94]; and (5) Politico website users incurred increased energy and device costs from the

12 additional processing, storage, and power usage resulting from the trackers being installed on those

13 users' browsers and computer systems.[95]  Plaintiffs have satisfied their Rule 8(a) pleading burden.

14     **2. The CDAFA requires only knowing access and conduct undertaken without permission, not overcoming technical or code-based barriers.**

15     Politico argues that it did not act "without permission" because it did not circumvent any

16 technical or code-based barriers to access *its own* website.  This argument has already been rejected

17 by the Ninth Circuit. What makes that access unlawful is that the person "without permission takes,

18 copies, or makes use of" data on the computer.[96] A plain reading of the statute demonstrates that its

---

(distinguishing the CDAFA's prohibition on **unauthorized use** from the CFAA's prohibition on **unauthorized access**), citing *United States v. Christensen*, 828 F.3d 763, 789 (9th Cir. 2015) (holding that the CDAFA differs from the CFAA and is interpreted differently).
[89] To succeed on a claim brought under the CFAA, a plaintiff must show that the defendant (1) accessed a protected computer, (2) without authorization or exceeding such authorization as was granted, (3) knowingly and **with intent to defraud**, and thereby (4) **furthered the intended fraud** and obtained anything of value. *U.S. v. Nosal*, 930 F. Supp. 2d 1051, 1058 (N.D. Cal. 2013), citing *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1132 (9th Cir. 2009) (emphasis added).  **No comparable "intent to defraud" language appears in the CDAFA.**
[90] *Vess*, 317 F.3d at 1104-1105.
[91] FCC, ¶¶ 11, 15, 19, 22, 131.
[92] FCC, ¶¶ 1, 7-9, 35, 63-66, 69, 71, 75, 77-78, 91, 124-126, 128, 130.
[93] FCC, ¶¶ 1, 6, 8, 66, 71, 73, 78, 82-85, 91, 129, 133.
[94] FCC, ¶¶ 30-31, 40, 64, 80, 133, 462-165.
[95] FCC, ¶ 134.
[96] Penal Code § 502(c)(2).

focus is on unauthorized taking or use of information. In *U.S. v. Christensen*, the Ninth Circuit clarified that § 502(c)(2) does not require unauthorized access to information, but rather the unauthorized taking and using of such information. Thus, liability under § 502(c) turns on an analysis of the specific "acts" alleged and whether there was "permission" to engage in those acts.[97]

Politico's argument fails for additional reasons. First, Politico misconstrues Plaintiffs' CDAFA allegations, which do not involve unauthorized access by Politico to its own website. Rather, the FCC alleges that by Politico's (1) unauthorized installation of third-party tracker cookies **on users' browsers** and (2) surreptitious disclosure of Plaintiffs' personal information to unknown third parties, Politico knowingly accessed and without permission added, altered, and used **Plaintiffs' data and computer systems**.[98]

Second, Plaintiffs need not allege that Politico overcame or circumvented a technical or code-based barrier.[99] As the Ninth Circuit noted, **the statute does not require unauthorized access to information, only the unauthorized taking and using of that information.**[100] Other cases support Plaintiffs' position.[101]

Here, the FCC alleges that Politico knowingly accessed its website users' browsers and that, through its surreptitious installation and use of third-party trackers, it added data without permission and then collected, copied, and used data in a manner not permitted by users. That is sufficient to

---

[97] *Bui-Ford v. Tesla, Inc.*, 2024 WL 694485 at *5.
[98] FCC, ¶¶ 1, 7-9, 35, 63-66, 69, 71, 75, 77-78, 91, 124-126, 128, 130. Politico's access to its own website is irrelevant and its reliance on *Gutierrez* misplaced. *Gutierrez v. Converse, Inc.*, 2023 WL 8939221 (C.D. Cal. Oct. 27, 2023) (involving a defendant's redirection of live chat communications **on its own website** to a third party, not action taken on a **user's** web browser or computer system).
[99] *See Kochava*, 684 F.Supp.3d at 1049 (the "plain meaning of 'without permission' does not require the circumvention of computer barriers" and thus even "code hidden in embedded software may plausibly use or take computer data 'without permission'"); *West v. Ronquillo-Morgan*, 526 F.Supp.3d 737, 746 (C.D. Cal. 2020).
[100] *Christensen*, 828 F.3d at 789-790 (affirming convictions under CDAFA of individuals who accessed databases with the authority to do so, without circumventing any technical or code-based barriers); *see also McClung v. AddShopper, Inc*., 2024 WL 189006, at *4 (N.D. Cal. Jan. 17, 2024).
[101] *See In re Carrier IQ, Inc.*, 78 F.Supp.3d at 1099-1100 (hidden software that transmitted data without notice and without providing an opportunity to opt out of its functionality was sufficient for a CDAFA claim). *See also DocMagic. Inc. v. Ellie Mae, Inc.*, 745 F.Supp.2d 1119, 1151 (N.D. Cal. 2010) (finding use of a third-party's log-in credentials, even with the third parties' consent, to access servers and remove information was sufficient to state a CDAFA claim), citing *ConnectU*, 489 F.Supp.2d at 1091; *Cti III, LLC v. Devine*, 2022 U.S. Dist. LEXIS 94820, at *12 (logging into a database with a valid password and subsequently taking, copying, or using the information improperly violates the CDAFA).

---

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP

1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

state a CDAFA claim.[102] Further, each of the third-party trackers embedded on Politico's website *__automatically and without permission re-installs its tracker cookies every time a user visits__* the Politico website.[103]   That persistent and repeated reinstallation is sufficient to demonstrate "overcoming or bypassing technical barriers" and circumventing users' choices.[104]

Third, liability under § 502(c) turns on whether Politico had "permission" to engage in the complained of acts.  While Politico may have had permission to access users' browsers to load the Politico webpage content, it did not have permission or users' consent to install the third-party trackers or to misappropriate users' personal information and sell that data for its own profit. Consent is "generally limited to the specific conduct authorized."[105]

Further, Politico has the burden of proving a consent defense.[106]  Here, Plaintiffs could not have consented to the installation of third-party trackers on their web browsers because they were unaware that Politico had embedded those trackers on its website.[107]  Moreover, Politico's Privacy Policy is buried at the bottom of the webpage.  It is seen, if at all, only after scrolling through all the content and long after the third-party trackers have been installed on users' computers.  Further, no pop-up window or other notice asks for users' authorization or consent.[108] The complete lack of notice defeats any claim that Plaintiffs gave permission to Politico to access their computers, install third-party trackers, and allow those third parties to collect and use their personal information.

Politico again attempts to bolster its position by claiming that its conduct is "part of a normal

---

[102] *In re Carrier IQ*, 78 F.Supp.3d at 1101; *Brown v. Google LLC*, 525 F.Supp.3d 1049, 1075 (N.D. Cal. 2021).  *See also Esparza v. Kohl's, Inc.*, 2024 WL 1152732 at * 7-8 (C.D. Cal. Mar. 18, 2024) (denying motion to dismiss where CDAFA claim was predicated on website's tracking cookie accessing plaintiff's IP address to de-anonymize and extract plaintiff's personal information).
[103] FCC, ¶¶ 68, 75, 81.
[104] *See Brown*, 525 F.Supp.3d at 1075 (finding that plaintiffs stated a CDAFA claim where defendant's technology "would render ineffective any barrier that plaintiffs implemented").
[105] *Kochava*, 684 F.Supp.3d at 1048, quoting *Javier v. Assurance IQ, LLC*, 2021 WL 940319 at *2 (N.D. Cal. Mar. 9, 2021).  *See also Campbell v. Facebook Inc.*, 77 F.Supp.3d 836, 847 (N.D. Cal. 2014) (no consent to data being used for advertising where users consented to use for "data analytics"); *In re Google Assistant Privacy Litig.*, 457 F.Supp.3d 797, 824 (N.D. Cal 2020) (**consent to data collection does not extend to data disclosure**).
[106] *Calhoun v. Google, LLC*, 2024 WL 3869446, at *5 (9th Cir. Aug. 20, 2024); *Brown*, 525 F.Supp.3d at 1063.
[107] FCC, ¶¶ 82-85, 129; *see McClung*, 2024 WL 189006 at *3, citing *Javier v. Assurance IQ, LLC*, 2022 WL 1744107 at *2 (9th Cir. 2022) [unpublished].
[108] FCC, ¶¶ 82, 129.

1    internet function." But this case involves personal information sent to **third parties**, not first-party

2    website operators.  The FCC clearly alleges that by Politico's unauthorized installation of third-party

3    tracker cookies on users' browsers, it knowingly accessed and without permission added, altered,

4    and used Plaintiffs' data and computer systems.[109] Plaintiffs' allegations state a CDAFA claim.

### 3.   Plaintiffs allege economic harm sufficient to confer CDAFA standing.

6        Politico argues that Plaintiffs lack standing because no cognizable damages have been

7    pleaded ignores Plaintiffs' allegations of economic damage and loss caused by Politico's

8    unauthorized installation of third-party trackers resulting in (1) unjust enrichment to Politico from

9    the misappropriation **and unauthorized sale** of website users' data and (2) the increased monetary

10   costs to users from the additional consumption of energy and device resources caused by the trackers.

11   This tangible, economic harm is sufficient to satisfy the CDAFA "damage or loss" requirement.[110]

12       The CDAFA sets no monetary threshold for "damage or loss."[111]  Rather, under the plain

13   language of the statute, **any amount of damage or loss** due to a CDAFA violation is cognizable.[112]

14   Here, Plaintiffs allege that by "installing trackers and their corresponding tracking cookies" and "by

15   collecting and disclosing its users' information," Politico was able to monetize website users'

16   personal information, including IP addresses, and sell advertising space and earn additional

17   revenue.[113] The FCC further alleges that Plaintiffs and Class members suffered economic harm

18   because Politico took their valuable data without permission, failed to pay them for their

19   misappropriated data despite there being a market for it, and then exploited that personal data by

20   selling it for profit.[114] Because Plaintiffs are entitled to Defendant's unjustly-earned profits from the

---

22   [109] FCC, ¶¶ 124-126, 128, 130
23   [110] Pen. Code § 502(e)(1); *Brown v. Google LLC*, 685 F.Supp.3d 909, 939-940 (N.D. Cal 2023) (holding that **plaintiffs satisfied the CDAFA's damage or loss requirement because they had "a stake in the value of their misappropriated data**"). *See also Rodriguez v. Google LLC*, 2025 U.S. Dist. LEXIS 3238, at *34 (N.D. Cal. Jan. 7, 2025) (based on evidence that plaintiffs' data has economic value, "a reasonable juror could find that Plaintiffs suffered damage or loss because Google profited from the misappropriation of their data").
25   [111] *Cottle v. Plaid Inc.*, 536 F.Supp.3d 461, 487 (N.D. Cal. 2021).
26   [112] *See* Cal. Pen. Code § 502(e)(1); *Lineberry v. AddShopper, Inc.*, 2025 WL 551864 at *2 (N.D. Cal. Feb. 19, 2025).
27   [113] FCC ¶¶ 6, 8, 30-31, 64, 79-80, 133.
28   [114] FCC ¶¶ 6, 8, 30-31, 40, 64, 80, 133.  *See Frasco v. Flo Health, Inc.*, 2024 WL 4280933, at *3 (N.D. Cal. Sept. 23, 2024) (misappropriated information carried financial value sufficient to

---

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

1    *sale* of their data, Politico's cited authorities are inapposite.

2    Politico further argues that Plaintiffs lack standing because they did not articulate the "actual

3    value" of their misappropriated data. But "California law recognizes a right to disgorgement of

4    profits resulting from unjust enrichment, even where an individual has not suffered a corresponding

5    loss." This stake in unjustly earned profits exists regardless of whether an individual planned to sell

6    her data. [115] Here, Plaintiffs allege that their data carries financial value, including for IP targeted

7    advertising and that Politico profited by selling that valuable data without users' consent, to the third-

8    party trackers to generate revenue.[116] Plaintiffs' allegations are sufficient at the pleading stage.

9    Further, the FCC plausibly alleges that the unauthorized installation of the third-party

10    trackers consumed additional energy resources and depleted users' battery and bandwidth, causing

11    economic damage.[117]  Courts have recognized depletion of battery and computing resources as

12    acceptable forms of damage or loss for purposes of a CDAFA claim.[118] Because there is no minimum

13    threshold, even small harms satisfy the CDAFA's requirements.

14    Politico's verification argument likewise fails.  Politico erroneously suggests that Plaintiffs

15    are required to "undertake an investigation" to confirm data alteration, damage, or deletion. While

16    the CDAFA allows recovery of compensatory damages for costs incurred in verifying system

17    integrity, the statute does ***not*** make that a required element.[119] Rather, "compensatory damages

18    ***include but are not limited to*** 'any expenditure reasonably and necessarily incurred by the owner or

19    lessee to verify that a computer system, computer network, computer program, or data was or was

20    not altered, damaged, or deleted by the access.'"[120]

21    Liberally construing the FCC and its allegations of (1) unjustly earned profits from Politico's

22    unauthorized sale of users' misappropriated data and (2) increased costs incurred by Plaintiffs due

---

establish CDAFA damages); *Rodriguez v. Google LLC*, 2024 WL 38302, at *6 (N.D. Cal. Jan. 3, 2024) (certifying CDAFA class based on evidence of data's financial value and defendants' profits).
[115] *Facebook Tracking*, 956 F.3d at 599, 600.
[116] FCC, ¶¶ 6, 8, 30-31, 40, 56-62, 64, 80, 133, 174.
[117] FCC, ¶ 134.
[118] *In re Carrier IQ, Inc.*, 78 F.Supp.3d 1051, 1065 (N.D. Cal. 2015); *Williams v. Facebook, Inc.*, 498 F.Supp.3d 1189, 1199 (N.D. Cal. 2019).
[119] Cal. Pen. Code § 502(e)(1).
[120] *See Biden v. Ziegler*, 737 F.Supp.3d 958, 976 (C.D. Cal. 2024) (emphasis added).

KELLER GROVER LLP

1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

1  to the additional consumption of energy and device resources, Plaintiffs have pleaded economic

2  harm sufficient to establish standing to bring their CDAFA claims.

3      **C.  Politico's Unauthorized Disclosure of Geographical Location Information without Consent Is Highly Offensive Conduct and a Serious Invasion of Privacy.**

4      Plaintiffs properly have pleaded a Constitutional privacy claim.[121]  Politico responds by again

5  mischaracterizing the unauthorized disclosure of personal information *to third parties* as "required

6  for proper user interaction." Transmitting information to Politico's website is not the issue.

7  Moreover, in addition to IP addresses, the FCC also alleges that Politico surreptitiously allows third-

8  party trackers to collect website users' browser and device data as well as other information that

9  reveals their identity and browsing habits, including data points that allow for cross-site tracking and

10  behavioral profiling.[122] A jury could find that this intrusion is a highly offensive breach of norms.[123]

11      Politico argues that Plaintiffs' IP addresses are not particularly sensitive, and so their

12  disclosure would not amount to a highly offensive or egregious breach of social norms.  However, a

13  privacy interest exists because IP addresses constitute personally identifying information protected

14  by numerous statutes.[124]  Courts also have found that a defendant's selling and sharing of "sensitive

15  personal information *such as plaintiff's IP address*" without consent violates a reasonable

16  expectation of privacy.[125] Although an IP address may be necessary to load and view a webpage,

17  "the fact that the privacy one expects in a given setting is not complete or absolute does not render

18  the expectation unreasonable as a matter of law."[126]

19

20

21  [121]  *See* FCC, ¶¶ 154 (protected privacy interest), 155 (reasonable expectation of privacy), and 157 (serious invasion of privacy).

22  [122]  FCC, ¶¶ 1, 7, 31, 35, 63, 66, 68, 71-72, 75, 83, 127, 145.

23  [123]  *See Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019); *In re Facebook, Inc., Consumer Privacy User Profile Litigation*, 2019 WL 4261048, at *17.

24  [124]  FCC, ¶ 58; s*ee e.g.*, 45 C.F.R. § 164.514(b)(2)(i)(O) (IP address is a personal identifier subject to HIPAA protection); Cal. Civ. Code § 1798.140(v)(1)(A) ("[i]dentifiers such as a[n] Internet Protocol address" constitute a consumer's personal information protected by the CCPA); Cal. Pen.

25  Code §§ 1546(d) and (h), 1546.1(a)(1) and (b) (precluding the government from compelling ISPs to provide a user's IP address without a warrant).

26  [125]  *See, e.g., In re Google RTB Consumer Privacy Litig.*, 606 F.Supp.3d at 946-947 (an IP address "is personal information under California law" and generally is expected to remain private); *Shah*,

27  2024 U.S. Dist. LEXIS 193032, at *1-2, 16-17 (addressing a CIPA § 638.51 claim **and finding that the plaintiffs reasonably expected their IP addresses would not be shared with third parties**).

28  [126]  *See In re Facebook Consumer Privacy User Profile Litig.*, 402 F.Supp.3d 767, 782-783 (N.D. Cal. Sept. 9, 2019).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

The FCC also alleges much more than "generalized location" data and asserts that "an IP address contains geographical location information from which the state, city, and zip code of a specific device can be determined."[127] Indeed, various services can use databases to map IP addresses to physical locations in geographic areas, and can provide information about the country, city, and approximate latitude and longitude coordinates of a specific device. *Id.* The FCC also alleges that an IP address "allows advertisers to target specific households, businesses, and even individuals" for geomarketing and "is used extensively in online advertising and user identification services."[128]

The Supreme Court and the Ninth Circuit have recognized that "both the common law and the literal understanding of privacy encompass the individual's control of information concerning his or her person."[129] Tellingly, ***Politico ignores the controlling Facebook Tracking opinion,*** which held that plaintiffs had stated a claim for invasion of privacy when the defendant tracked and collected consumers' personal information without notice or consent.[130] Moreover, "information need not be personally identifying to be private."[131]

Politico's cited authorities are unpersuasive.[132]  Further, questions of whether conduct violates social norms "tend by their very nature to be subjective" and "these questions are typically more appropriately resolved by a jury."[133] The Ninth Circuit has held that "the ultimate question of whether tracking and collection practices could highly offend a reasonable individual is an issue that cannot be resolved at the pleading stage." [134]

---

127 FCC, ¶ 57.
128 FCC, ¶¶ 59-62.
129 *U.S. Dep't of Justice v. Reporters Comm. For Freedom of the Press*, 489 U.S. 749, 763-764 (1989); *see also Facebook Tracking*, 956 F.3d at 598; *Kochava*, 684 F.Supp.3d at 1047.
130 *Facebook Tracking,* 956 F.3d at 599.
131 *In re Google Referrer Header*, 465 F.Supp.3d 999, 1009-10 (N.D. Cal. 2020).
132 *See, e.g.,Ruiz v. Gap, Inc.*, 540 F.Supp.2d 1121, 1127-1128 (N.D. Cal. 2008) (the one-time theft of a laptop containing personal information is a world apart from the persistent, secret taking of personal data each time a user visits the Politico website); *Hammerling v. Google LLC*, 2022 U.S. Dist. LEXIS 217020, at *25-26 (N.D. Cal. 2022) (involving data collection regarding only the frequency of use or duration of downloaded third-party apps, not users' personal information).
133 *Mastel v. Miniclip SA*, 549 F.Supp.3d 1129, 1139 (E.D. Cal. 2021).
134 *Facebook Tracking*, 956 F.3d at 606.

KELLER GROVER LLP

1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

**D.   Plaintiffs Are Entitled to Politico's Unjustly Earned Profits.**

Courts recognize an independent cause of action for unjust enrichment.[135]   Restitution is available if one is unjustly enriched at the expense of another.[136]  "California law requires the disgorgement of unjustly earned profits *regardless* of … whether a defendant's actions directly caused the plaintiff's property to become less valuable."[137]  Here, the FCC alleges that Politico was unjustly enriched taking and using Plaintiffs' and Class members' data without their permission or consent "for Defendant's own financial benefit."[138]

Plaintiffs have a privacy interest in their IP addresses, geolocation data and online identifiers. Plaintiffs have alleged that such information carries financial value and that a market exists for that personal data, including for IP targeted advertising and geomarketing.  Politico received monetary compensation from the third-party trackers surreptitiously collecting and using Plaintiffs' and Class members' personal information.  Plaintiffs are entitled to those unjustly earned profits.

**E.   Plaintiffs Adequately Allege Their UCL Claims.**

Plaintiffs must show that they have "suffered injury in fact" and have "lost money or property as a result of the unfair competition."[139]  Plaintiffs have suffered a loss of money or property because their browser and device data and personally identifying and addressing information were collected by the three trackers embedded on Defendant's website and were disseminated and/or sold by Defendant to third parties."[140] These allegations establish an economic injury under the UCL.[141]

---

[135]  *See ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016) (holding that unjust enrichment can state a claim for relief as an independent cause of action or as a quasi-contract claim for restitution), citing *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (same). *See also Lectrodryer v. SeoulBank*, 77 Cal.App.4th 723, 726 (2000).
[136]  *California Federal Bank v. Matreyek*, 8 Cal.App.4th 125, 131 (1992).
[137]  *Facebook Tracking*, 956 F.3d at 599-600, citing *CTC Real Estate Servs. v. Lepe*, 140 Cal.App.4th 856, 860-861 (2006).
[138]  FCC, ¶¶ 30-31, 40, 64, 80, 133, 163-165.
[139]  Cal. Bus. & Prof. Code § 17204.
[140]  FCC, ¶ 174.  *See also* FCC, ¶¶ 39-40, 64-81.
[141]  *See Calhoun*, 526 F.Supp.3d at 636 (finding that "plaintiffs who suffered a loss of their personal information suffered economic injury and had [UCL statutory] standing"); *Brown*, 685 F.Supp.3d at 942; *In re Yahoo! Inc. Cust. Data Sec. Breach Litig.*, 2017 WL 3727318, at *13 (N.D. Cal. Aug. 30, 2017) (plaintiffs adequately alleged injury in fact based on the loss of value of their personal information); *In re Anthem Inc. Data Breach Litig.*, 2016 WL 3029783, at *14 (N.D. Cal. May 17, 2016) (approving allegations of damage from the loss of value of personal information).

KELLER GROVER LLP

1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

1    Moreover, Plaintiffs' UCL claims are not barred by Plaintiffs not having paid for Politico's

2 services.[142] Any time users transact with a business or other entity and the users' expectations

3 regarding personal data are not met as a result of conduct alleged to violate the UCL, the users

4 can establish UCL standing by showing that they had to "surrender...more, or acquire...less" than

5 they otherwise would have.[143]  "[A] party who has provided goods or services in a transaction

6 and has not been paid the fair value of those goods or services has suffered an economic

7 injury....The same logic would apply to parties...who have provided valuable data... and have

8 received *no* money in return."[144]  Numerous courts have recognized that plaintiffs who have lost

9 personal information have suffered economic injury.[145]  The same is true here.

10    In addition to establishing standing, Plaintiffs have pleaded facts sufficient to establish a

11 UCL claim.  First, the "unlawful" prong of the UCL permits a cause of action to be brought if a

12 practice violates some other law.[146]  Virtually any law or regulation – federal or state, statutory or

13 common law – can serve as a predicate for a § 17200 "unlawful" violation.[147]  Here, the FCC

14 adequately pleads a claim for relief under the "unlawful" prong of the UCL by alleging violations of

15 the CDAFA (¶¶ 105-136), CIPA (¶¶ 137-151), and the California Constitution (¶¶ 151-160).

16    Under the balancing test[148], the FCC has stated an "unfair" claim by alleging facts showing

---

[142] *See Fraley v. Facebook, Inc.*, 830 F.Supp.2d 785, 811 (N.D. Cal. 2011) (allegations that Facebook used plaintiffs' Facebook profiles to endorse third-party products and services, without compensation, sufficed even though the plaintiffs did not pay for Facebook's services).

[143] *In re Meta Pixel Tax Filing Cases*, 724 F.Supp.3d 987, 1024 (N.D. Cal. 2024) ("*Meta Tax Filing*"), citing *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 323 (2011).  Notably, the reasoning and holding in Politico's cited authority, *Pruchnicki v. Envision Healthcare Corp.*, 845 Fed. App'x. 613, 614 (9th Cir. 2021), specifically were rejected by the *Meta Tax Filing* court.  *Id.* at 1013.

[144] *Brown v. Google LLC*, 2021 WL 6064009, at *17 (N.D. Cal. Dec. 22, 2021); *Meta Tax Filing*, 724 F.Supp.3d at 1013 (noting that privacy harms can constitute economic injury to confer UCL standing under three theories: unfair benefit-of-the-bargain to businesses that violate user expectations about how their data will be used; diminished value of personal information; and reduced right or ability to exclude others from accessing personal data).

[145] *See Klein v. Facebook, Inc.*, 580 F.Supp.3d 743, 803 (N.D. Cal. 2022) (collecting cases) and *A.B. v. Google LLC*, 737 F.Supp.3d 869, 881-882 (N.D. Cal. June 18, 2024) (agreeing with the rationale of *Calhoun* and *Brown* and concluding that plaintiffs had adequately pleaded the economic injury needed to establish UCL standing).

[146] *See Saunders v. Sup. Ct.*, 27 Cal.App.4th 832, 838-839 (1994).

[147] *Klein v. Chevron U.S.A., Inc.*, 202 Cal.App.4th 1342, 1383 (2012).

[148] The balancing test "involves an examination of [that practice's] impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer." *Smith v. State Farm Mutual Automobile Ins. Co.*, 93 Cal.App.4th 700, 718-719 (2001).

---

that the "gravity of the harm caused by Defendant secretly collecting, disclosing, and otherwise misusing Plaintiffs' and Class members' personal information and data is significant."[149] These allegations are sufficient under the public policy or tethering test, which requires only that "a practice violates public policy as declared by 'specific constitutional, statutory or regulatory provisions.'"[150] Presented with similar privacy allegations, district courts in this circuit consistently have found that plaintiffs had sufficiently alleged an "unfair" claim under the balancing test.[151]

Lastly, Politico argues that Plaintiffs' UCL claim should be dismissed because they cannot establish that they lack an adequate remedy at law, citing *Sonner v. Premier Nutrition Corp*.[152] Courts have found that *Sonner* has limited applicability at the pleading stage because the plaintiff there dropped her damages claim on the eve of trial.[153] Further, the remedies under § 17200 are "cumulative," such that a plaintiff may seek both restitution and injunctive relief.[154] The rulings in *Moore* and *Sonner* as-issued are clearly in conflict and, in that setting, a district court must follow the earlier-issued *Moore* decision.[155]  Plaintiffs properly have pleaded a claim under the UCL.

## IV.     CONCLUSION

Defendant's motion should be denied in its entirety.  If the Court is inclined to grant any part of the motion, Plaintiffs request leave to amend any perceived defects.

Respectfully submitted,

Dated:  March 28, 2025

**KELLER GROVER LLP**
By: /s/ *Eric A. Grover*
ERIC A. GROVER
*Attorneys for Plaintiffs*
Saber Khamooshi, Ryan Wu, and Brian Carolus

---

[149]  FCC, ¶ 171; *see also* ¶¶ 39-40, 64-81.
[150]  *Rubio*, 613 F.3d at 1205; *Pemberton v. Nationstar Mortg. LLC*, 331 F.Supp.3d 1018, 1050-1051 (S.D. Cal. 2018); *In re Anthem, Inc. Data Breach Litig.*, 162 F.Supp.3d 953, 990 (N.D. Cal. 2016).
[151]  *In re Eureka Casino Breach Litig*., 2024 U.S. Dist. LEXIS 169803, *33-35 (Nev. Sept. 19, 2024) (finding balance test met because "the harm to the plaintiffs of having their PII stolen is potentially far greater."); *Rubio*, 613 F.3d at 1205 (holding that the harm to the consumer from Capital One's solicitation may outweigh the solicitation's utility).
[152]  *Sonner v. Premier Nutrition Corp*., 971 F.3d 834 (9th Cir. 2020).
[153]   *Jeong v. Nexo Fin. LLC*, 2022 WL 174236, at *27 (N.D. Cal. 2022); *Carroll v. Progressive Casualty Insurance Company*, 2023 WL 3526137, at *6 (C.D. Cal., 2023).
[154]  *Moore v. Mars Petcare US, Inc*., 966 F.3d 1007 (9th Cir. 2020).
[155]  *See*, *Ferry v. Porsche Cars North America, Inc*., 2022 WL 1769120, at *5 fn. 6 (C.D. Cal., 2022).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**KELLER GROVER LLP**
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

**COHELAN KHOURY & SINGER**

By: /s/ *Isam C. Khoury*
Isam C. Khoury, Esq.
*Attorneys for Plaintiff*
John Deddeh

**KEEGAN & BAKER, LLP**

By: /s/ *Patrick N. Keegan*
Patrick N. Keegan, Esq.
*Attorneys for Plaintiff*
John Deddeh

## CIVIL LOCAL RULE 5-1(i)(3) ATTESTATION

Pursuant to L.R.5-1, the filer of this document, Eric Grover, hereby attests that all other signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized this filing.


Dated: March 28, 2025                                    **KELLER GROVER LLP**


By: _/s/ *Eric A. Grover*_
ERIC A. GROVER
*Attorneys for Plaintiffs*
Saber Khamooshi, Ryan Wu, and Brian Carolus

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861