ERIC A. GROVER (SBN 136080)
eric.grover@kellergrover.com
RACHAEL G. JUNG (SBN 239323)
rachael.jung@kellergrover.com
**KELLER GROVER LLP**
1965 Market Street
San Francisco, California 94103
Telephone: (415) 543-1305
Facsimile: (415) 543-7861

SCOT BERNSTEIN (SBN 94915)
swampadero@sbernsteinlaw.com
**LAW OFFICES OF SCOT D. BERNSTEIN, A PROFESSIONAL CORPORATION**
101 Parkshore Drive, Suite 100
Folsom, California 95630
Telephone: (916) 447-0100
Facsimile: (916) 933-5533

*Attorneys for Plaintiffs*
Saber Khamooshi, Ryan Wu, and Brian Carolus

Timothy D. Cohelan, Esq. (SBN 60827)
tcohelan@ckslaw.com
Isam C. Khoury, Esq. (SBN 58759)
ikhoury@ckslaw.com
**COHELAN KHOURY & SINGER**
605 C Street, Suite 200
San Diego, California 92101
Telephone: (619) 595-3001
Facsimile: (619) 595-3000

Patrick N. Keegan, Esq. (SBN 167698)
pkeegan@keeganbaker.com
**KEEGAN & BAKER, LLP**
2292 Faraday Avenue, Suite 100
Carlsbad, California 92008
Telephone: (760) 929-9303
Facsimile: (760) 929-9260

*Attorneys for Plaintiff*
John Deddeh

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

SABER KHAMOOSHI, RYAN WU, BRIAN CAROLUS, and JOHN DEDDEH, individually and on behalf of a class of similarly situated individuals,

Plaintiffs,

v.

POLITICO LLC;

Defendant.

Case No: 3:24-cv-07836-SK

CLASS ACTION

**FIRST AMENDED CONSOLIDATED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

**DEMAND FOR JURY TRIAL**

Action Filed: September 26, 2024
Removed: November 8, 2024
Consolidated: January 27, 2025
FCC Filed: February 14, 2025



KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

## FIRST AMENDED CONSOLIDATED COMPLAINT

Plaintiffs Saber Khamooshi, Ryan Wu, Brian Carolus, and John Deddeh, on behalf of themselves and a class of similarly situated individuals as defined below, and based on personal knowledge where applicable, information and belief, and investigation by counsel, allege the following against Defendant Politico LLC ("Defendant" or "Politico").

## INTRODUCTION

1. This class action lawsuit arises out of Defendant's policy and practice during the proposed class period (*i.e.*, the applicable limitations period preceding the filing of the Complaint in this matter and through and including June 30, 2024) of embedding and using various trackers on Defendant's website, www.Politico.com, to (1) install and store third-party tracker cookies on California website users' browsers and (2) surreptitiously share and allow those third-party trackers to collect California website users' browser and device/operating system data as well as personally identifying and addressing information, including without limitation browsing activity, IP addresses[1], and geolocation information. Defendant did all of that without users' knowledge, authorization, or consent.

2. Defendant Politico LLC is an American digital newspaper company that owns and operates the www.Politico.com website (the "Politico website"). While primarily providing distributed news, analysis, and opinion online, Politico also produces printed newspapers, radio programming, and podcasts. In October 2021, Defendant was acquired by and now is a subsidiary of Axel Springer SE.

3. Launched in 2007, the Politico website covers politics and policy in the United States and internationally. It has publications dedicated to politics in the United States, the

---

[1] IP addresses have been classified by the United States Department of Health and Human Services ("HHS") as personally identifying information that can enable the disclosure of identifiable health information. *Use of Online Tracking Technologies by HIPAA Covered Entities and Business Associates*, U.S. Department of Health and Human Services (Dec. 1, 2022), https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/hipaa-online-tracking/index.html ("Such PHI may include, for example, an individual's IP address, medical record number, home or email addresses, dates of appointments, or other identifying information that the individual may provide when interacting with the webpage.").

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

European Union, the United Kingdom, Canada, and other countries. The Politico website menu also has a category for "State Politics & Policy," which has links to four state-specific sections, including one for California.

4. The Politico California section, which is located at www.politico.com/new/california, provides extensive news coverage of California politics, elections, state ballot initiatives, climate, and pertinent local news. In addition to the California-specific section of its website, Politico also offers online subscriptions for its "California Playbook" and "California Climate" newsletters. It also sells a "Politico California Pro" subscription, which is a policy intelligence platform designed for public affairs professionals.

5. Politico touts itself as "the global authority on the intersection of politics, policy, and power." According to its website, Politico "strives to be the dominant source for news on politics and policy in power centers across every continent where access to reliable information, nonpartisan journalism and real-time tools create, inform and engage a global citizenry."

6. Plaintiffs and Class members who visited the Politico website during the proposed class period expected that their personally identifying information, including their IP addresses and their geographic locations, would remain private and confined to their use of the Politico website. Plaintiffs and Class members had and were entitled to have a reasonable expectation that their accessing of and interactions with the Politico website during the proposed class period would not be shared with any third parties, let alone to *undisclosed* third-party trackers for digital surveillance and dossier building, and would not be sold for marketing, advertising, or other unconsented purposes.

7. Unbeknownst to individuals entering and viewing the Politico website during the proposed class period, third-party trackers were embedded into Defendant's website. Through that embedded tracking technology, while Plaintiffs and Class members were accessing and interacting with the Politico website, Defendant was (1) installing and storing third-party tracker cookies on users' browsers and (2) disclosing and sharing Politico website users' browser and device/operating system data, browsing activities, IP addresses, geolocation data, and other identifying information to and with those third-party trackers. All of this happened the moment

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

users entered the Politico website and without any further action required by or requested of the users. And it happened without any meaningful notice.

8. Plaintiffs are informed and believe and, on that ground, allege that Defendant caused the collection of and surreptitiously shared personal and identifying data, including browsing activity, geolocation information, and addressing information such as IP addresses, with the third-party trackers for profiling and dossier building, device fingerprinting, "cookie syncing," real-time bidding, and other advertising-related purposes. Defendant did so without obtaining Politico website users' authorization or consent and without a court order.

9. Defendant's unauthorized (1) installation of third-party tracker cookies on California users' web browsers and (2) disclosure to and collection by third parties of Plaintiffs' and Class members' personally identifying and addressing information, all without consent or adequate notification to Plaintiffs and Class members, were invasions of Plaintiffs' and Class members' privacy. Defendant's actions also violated multiple laws, including the California Computer Data Access and Fraud Act, Cal. Penal Code § 502 ("CDAFA"); the California Invasion of Privacy Act, Cal. Penal Code §§ 630, *et seq.* ("CIPA"); the right to privacy under Article 1, § 1, of the California Constitution, which includes privacy as one of six fundamental rights of all Californians; and the Unfair Competition Law, California Business & Professions Code §§ 17200, *et seq.* ("UCL").

## PARTIES

### A. Plaintiff Saber Khamooshi

10. Plaintiff Saber Khamooshi is a natural person and a resident of California.

11. While physically present in California, Plaintiff Khamooshi regularly visited the Politico website to browse political news headlines and to read articles. He visited the Politico website on several occasions during the proposed class period. Plaintiff Khamooshi used an internet browser on his multiple computers to access Defendant's website.

12. At no time when Plaintiff Khamooshi entered the Politico website and viewed its contents during the proposed class period did he authorize or consent to Defendant installing third-party tracker cookies on his internet browser or computer.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

13. Plaintiff Khamooshi also did not consent to Defendant sharing or selling his browser and device/operating system data, IP addresses, geolocation information, and other personally identifying information such as his browsing activity with or to third-party trackers. Further, because Defendant did not provide notice or request permission during the proposed class period, Plaintiff Khamooshi was unaware of and had no meaningful opportunity to opt out of or object to that unauthorized disclosure of his data.

**B. Plaintiff Ryan Wu**

14. Plaintiff Ryan Wu is a natural person and a resident of California.

15. While physically present in California, Plaintiff Wu regularly visited the Politico website to browse political news headlines and to read articles. He visited the Politico website on several occasions during the proposed class period. Plaintiff Wu used an internet browser on his various computers to access Defendant's website.

16. At no time when Plaintiff Wu entered the Politico website and viewed its contents during the proposed class period did he authorize or consent to Defendant installing third-party tracker cookies on his internet browser or computer.

17. Plaintiff Wu also did not consent to Defendant sharing or selling his browser and device/operating system data, IP addresses, geolocation information, and other personally identifying information such as his browsing activity with or to third-party trackers. Further, because Defendant did not provide notice or request permission during the proposed class period, Plaintiff Wu was unaware of and had no meaningful opportunity to opt out of or object to that unauthorized disclosure of his data.

**C. Plaintiff Brian Carolus**

18. Plaintiff Brian Carolus is a natural person and a resident of California.

19. While physically present in California, Plaintiff Carolus regularly visited the Politico website to browse political news headlines and to read articles. He visited the Politico website on several occasions during the proposed class period. Plaintiff Carolus used an internet browser on his various computers to access Defendant's website.

20. At no time when Plaintiff Carolus entered the Politico website and viewed its

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

contents during the proposed class period did he authorize or consent to Defendant installing third-party tracker cookies on his internet browser or computer.

21. Plaintiff Carolus also did not consent to Defendant sharing or selling his browser and device/operating system data, IP addresses, geolocation information, and other personally identifying information such as his browsing activity with or to third-party trackers. Further, because Defendant did not provide notice or request permission during the proposed class period, Plaintiff Carolus was unaware of and had no meaningful opportunity to opt out of or object to that unauthorized disclosure of his data.

**D. Plaintiff John Deddeh**

22. Plaintiff John Deddeh is a natural person and a resident of California. While physically present in California, Plaintiff Deddeh used an internet browser on his computer and on his cellular phone to access the Politico website on several occasions during the proposed class period to browse news headlines and to read articles.

23. At no time when Plaintiff Deddeh entered the Politico website and viewed its contents during the proposed class period did he authorize or consent to Defendant installing third-party tracker cookies on his internet browser or computer. Plaintiff Deddeh also did not consent to Defendant sharing or selling his browser and device/operating system data, IP addresses, geolocation information, and other personally identifying information such as his browsing activity with or to third-party trackers. Further, because Defendant did not provide notice or request permission during the proposed class period, Plaintiff Deddeh was unaware of and had no meaningful opportunity to opt out of or object to that unauthorized disclosure of his data.

**E. Defendant and its Politico Website**

24. Defendant Politico LLC is a limited liability company organized under the laws of the State of Delaware with its headquarters and principal place of business in Arlington, Virginia.

25. Defendant systematically and continuously does business in California and with California residents. To do so, Defendant is registered with the California Secretary of State and

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

has an agent for service of process in California.

26. Defendant currently owns and operates the www.Politico.com website, which publishes news focused on global and American politics and policy. As part of its vast editorial coverage in the United States, Politico also independently covers and separately reports political news from four states, including California.

27. The Politico California section specifically targets California consumers, providing extensive California news stories and subsections such as "State Politics," "Elections," and "California Ballot Initiatives." Toward the bottom of the Politico California webpage, there is an additional section titled "More From Politico California" with links to additional California news stories covering pertinent local news. This California portion of the Politico website also displays ads for California businesses and services.

28. In addition to the state-specific section of its Politico website, Politico's California offerings also include online subscriptions to two newsletters. The "California Playbook," which can be found at www.politico.com/newsletters/californiaplaybook, provides additional California political news stories for consumers who sign up with an email address. Similarly, the "California Climate" newsletter provides additional content specifically addressing California climate issues and is located at www.politico.com/newsletters/california-climate.

29. In September 2018, Politico announced its expanded California presence, which included "a Sacramento-based newsroom and intelligence service for professionals." According to its press release, "Politico's operations will be grounded in Sacramento with a newsroom expansion that will increase the overall editorial footprint in California" with journalists who "will cover state-level battles over energy, health care, the budget, education, and more for a California audience." Politico California Pro officially launched in January 2019.

30. Politico confirmed its continued California expansion in a February 2023 press release announcing its new California Bureau Chief, who would be stationed in Sacramento and was tasked with growing the California team, including hiring a new California expansion editor and increasing Politico's California policy coverage and reporting.

31. During the proposed class period, Defendant's Politico website failed to put

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

visitors on notice of Defendant's use of website tracking technology, including its use of third-party trackers. Upon information and belief, Plaintiffs allege that third-party trackers allow companies like and including Defendant to sell advertising space on their websites by using the tracking technology to receive, store, and analyze information collected from website visitors.

32. During the proposed class period, the Politico website also failed to disclose the selling and sharing of users' browsing activity, browser and device/operating system data, and personally identifying and addressing information, such as IP addresses and geolocation information, to and with unauthorized third party-trackers for digital surveillance, profiling and dossier building, cookie syncing, real-time bidding, and other advertising purposes.

**JURISDICTION AND VENUE**

33. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). Specifically, this action satisfies all requirements for federal jurisdiction under CAFA in that the allegations in this Complaint identify a putative class of more than 100 members, establish the minimum diversity of citizenship required under CAFA, and place in controversy more than $5 million in the aggregate for the entire class, exclusive of interest and costs. 28 U.S.C. § 1332(d) and (d)(5) and § 1453(b).

34. This Court has personal jurisdiction over the parties because Defendant has sufficient minimum contacts with this State in that it operates and markets its services throughout the State, including providing California-specific news offerings and directing targeted advertising to California residents. As described in Paragraphs 25 through 30, Defendant's activities in California are substantial, continuous and systematic. In a California-specific section of its Politico website, Defendant provides extensive in-depth coverage of California issues, including politics, elections, state ballot initiatives, climate, and other pertinent local news.

35. Defendant also has multiple California-specific product offerings, including its two online newsletters, "California Playbook" and "California Climate." Defendant also publishes a California version of its fee-based Politico Pro product – "Politico California Pro." To provide its expansive editorial coverage of California, Defendant maintains a newsroom

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

office in Sacramento, California and employs numerous individuals in the State of California.

36. Further, a substantial part of the events and conduct giving rise to Plaintiffs' claims occurred in the State of California. Those events and that conduct included Plaintiffs' accessing of and interacting with the Politico website; Defendant's unauthorized installation of third-party tracker cookies on Plaintiffs' and California users' web browsers; and Defendant's disclosure to and surreptitious sharing with third-party trackers of browser and device/operating system data, browsing activity, and personally identifying and addressing information, all without users' knowledge, authorization, or consent. By causing a digital transmission to enter California, Defendant deliberately reached out beyond its home state. Defendant did so in a manner that was neither random, isolated, nor fortuitous by knowingly installing tracking software on unsuspecting Californians' browsers so that it later could sell the data it obtained. The "brunt of the harm" of these privacy violations was suffered in the State of California, and those violations arose out of Plaintiffs' contact with Defendant from and within the State of California.

37. Moreover, Defendant's conduct was directed at California. Defendant operated its interactive Politico website to sell its products, marketed that website directly to Californians, installed trackers on Californians' devices in California, and profited from its intentional exploitation of that market and location-specific advertising. In essence, Defendant knows about its California consumer base, conducts its regular business in California, has contact and interacts with California residents, installs software onto their browsers in California, and continues to track and surveil their activities in California. Thus, by targeting its wrongful conduct at website consumers, some of whom it knew, at least constructively, to be residents of California, Defendant expressly aimed its conduct at California.

38. Venue is proper in this Court because Defendant removed the action from San Francisco County Superior Court. Venue was proper in that Court under Code of Civil Procedure §§ 395 and 395.5 and case law interpreting those sections, which provide that if a foreign business entity fails to designate with the office of the California Secretary of State a principal place of business in California, it is subject to being sued in any county that a plaintiff

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

desires. On information and belief, Defendant Politico LLC is a foreign business entity and had failed to designate a principal place of business in California with the office of the Secretary of State as of the date on which the Complaint in this action originally was filed.

**STANDING**

39. Article III standing is met when a plaintiff "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 337, 338 (2016).

40. Individuals have a time-honored right to control access to their private information and affairs. *See Patel v. Facebook, Inc.*, 290 F.Supp.3d 948, 954 (N.D. Cal. 2018). "The common law secures to each individual the right of determining, ordinarily, to what extent his thoughts, sentiments, and emotions shall be communicated to others." *U.S. Dep't of Just. V. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 763 n. 15 (1989). As recognized by the Supreme Court and the Ninth Circuit, "both the common law and the literal understanding of privacy encompass the individual's control of information concerning his or her person." *Id*. at 763-764; *see also In re Facebook Inc. Internet Tracking Litig*., 956 F.3d 589, 598 (9th Cir. 2020).

41. Consequently, the harm made actionable at common law was an individual's loss of control over his or her "private affairs or concerns" by an interloper's tortious "intentional interference." Restatement 2d § 652B cmt. a; *see also Facebook Tracking*, 956 F.3d at 599 ("Facebook's tracking practices allow it to amass a great degree of personalized information…without affording users a meaningful opportunity to control or prevent the unauthorized exploration of their private lives").

42. Plaintiffs meet the "injury in fact" requirement because the invasion of their privacy is a "concrete and particularized" injury. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021) ("Various intangible harms can also be concrete [including] . . . disclosure of private information and intrusion upon seclusion"); *Facebook Tracking*, 956 F.3d at 596 (holding that Facebook's tracking of browsing histories that were sold to advertisers was an "invasion of [a] legally protected interest that is concrete and particularized.").

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

43. Plaintiffs allege that they were personally injured when Defendant, without consent or authorization, impermissibly obtained, disclosed, and shared Plaintiffs' personal information with third parties, for the purpose of intrusive and constant surveillance of their online behavior. The loss of control over their personal information is "concrete" harm. It is black-letter law that such allegations are sufficient to confer Article III standing. *See, e.g.*, *Mastel v. Miniclip SA*, 2021 WL 2983198, at *6 (E.D. Cal. July 15, 2021) (collection of "personal information without the plaintiff's consent involved a sufficiently 'concrete' injury"); *In re Facebook, Inc., Consumer Privacy User Profile Litig*., 402 F.Supp.3d 767, 784 (N.D. Cal. 2019) (dissemination to third parties of plaintiffs' personal information is "sufficient to confer [Article III] standing."). As discussed herein, these invasions are particularly egregious because the mechanism of surveillance involved the placement of unauthorized "pen register" third-party tracking software on users' devices, an invasion upon their property as well as their privacy.

44. Separate from an invasion-of-privacy harm, Plaintiffs also allege economic harm sufficient for Article III standing by alleging that user data carries financial value. For example, Google's Online Insight Study will pay users "up to $130 per year" to record participants' data "browsing the web."[2] Similarly, Nielsen operates a Computer & Mobile Panel where users can receive up "[u]p to $60" in benefits to sign up "computers, smartphone, and tablets" for tracking.[3]

45. The Ninth Circuit has found such allegations to be sufficient to establish Article III standing under a theory of economic harm. *See Facebook Tracking*, 956 F.3d at 600 ("[Plaintiffs] point to the existence of a study that values users' browsing histories at $52 per year, as well as research panels that pay participants for access to their browsing histories."). Further, "[u]nder California law, this stake in unjustly-earned profits exists regardless of whether an individual planned to sell his or her data or whether the individual's data is made less

---

[2] Online Insights Study, Google, https://onlineinsightsstudy.google/signup (last visited May 7, 2025).

[3] Computer & Mobile Panel, Nielsen, https://computermobilepanel.nielsen.com/ui/US/en/sdp/landing (last visited May 7, 2025).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

valuable." *Id.*

46. Plaintiffs' injuries are "fairly traceable" to Defendant's challenged conduct[4] because Defendant acquired and shared Plaintiffs' private information using third-party trackers that are embedded into the Politico website. Plaintiffs' injuries therefore occurred the moment their information was acquired improperly by Defendant.

47. Plaintiffs also meet the redressability element because courts consistently have recognized that violations of privacy rights can be redressed by an award of damages or injunctive relief. *See Facebook Privacy*, 402 F.Supp.3d at 784, stating that "[T]he Ninth Circuit has repeatedly explained that intangible privacy injuries can be redressed in the federal courts." *See also Jewel v. Nat'l Sec. Agency*, 673 F.3d 902, 912 (9th Cir. 2011) (similar). Additionally, the injunctive relief that Plaintiffs seek includes terminating all downstream distributions of that illegally collected personal data. That is a remedy that would redress future harms suffered by Plaintiffs and the Class and would have the potential to prevent those future harms.

## FACTUAL ALLEGATIONS COMMON TO THE CLASS

### A. Website Tracking Technology

48. "Third-party tracking refers to the practice by which a tracker, other than the website directly visited by the user, traces or assists in tracking the user's visit to the site."[5] Trackers use cookies, scripts, or pixels inserted by publishers or advertisers to collect information about internet users as those users are browsing the web, including capturing IP addresses and other device information such as device type, browser type, and unique and persistent identifiers ("device fingerprints"). The trackers also cause additional data points -- such as the configuration of the browser and any unique cookie values present -- to be sent from users' browsers to third parties. Those additional data points are intended to identify users uniquely across sessions and devices and to track and surveil those users pervasively across the internet.

---

[4] *Spokeo*, 578 U.S. at 338.

[5] See *Third-party Tracking*, PIWIK, https://piwik.pro/glossary/third-party-tracking/ (last visited May 7, 2025).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

49. Tracker profiling is the process of linking data from different websites to build robust user dossiers based on the users' browsing activity and history, to place those users into categories or groups, and to share and sell that data to third parties so that those third parties can use it for targeted advertising, including IP targeted advertising and geomarketing. "If the same third-party tracker is present on many sites, it can build a more complete profile of the user over time."[6]

50. A broad range of online technologies tracks and monitors internet-based interactions and communications. Four identifier tools that commonly are used are (i) website cookies, (ii) tracking pixels, (iii) digital fingerprinting, and (iv) software development kits.

51. A website cookie is a small text file that a website server creates and transmits to a web browser (*e.g.*, Google Chrome or Safari). That web browser then installs and stores the file in a particular directory on an individual's computer, phone, or other device.[7] When a website user attempts to access a webpage, the user's browser transmits a communication to the website's server requesting that the server display the website's content for the browser to load. While providing the requested content to the user, the website's server also provides the cookies that it would like the user's browser to install and retain.

52. Website cookies contain information that identifies the domain name of the webserver that wrote the cookie (e.g., www.hulu.com or www.facebook.com). Cookies also have information about the user's interaction with a website, such as how the website should be displayed, how many times a user has visited the website, how long a user spends on a webpage, information about what pages the user visited, and authentication information. In addition to a unique identifier and a site name, website cookies also can include personally identifiable information such as a user's name, address, email address and/or telephone number if that information was provided to a website.

53. A **first-party cookie** is implemented by the website that the user accesses. The

---

[6] *Id.*

[7] See Sara J. Nguyen, *What Are Internet Cookies and How Are They Used?*, All About Cookies (July 28, 2023), https://allaboutcookies.org/what-is-a-cookie (last visited May 7, 2025).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

website uses first-party cookies for authentication, monitoring user sessions, and collecting analytical data.

54. In contrast, a **third-party cookie**, also called an "advertising cookie" or a "tracker cookie," is a cookie that belongs to a domain other than the one being displayed to the user in his or her browser. A third-party cookie typically is used for cross-site tracking, retargeting, and ad-serving. The key differences between the first-party and third-party cookies are who sets them (*i.e.*, a website display host or a third party), whether and how they can be blocked by a web browser, and the availability of the cookie. A third-party advertising or tracker cookie is available and accessible on *any* website that loads the third-party server's code, not just on the host website that the user is trying to access.

55. Additionally, a third-party cookie will assign a user ID unique to its tracker, which then allows a user to be tracked across the Internet by the third-party tracker and have his or her information synced between multiple entities.

56. A pixel, also known as a "tracking pixel," "web bug," "clear GIF" or "web beacon," is similar to a website cookie. It is a small, almost-invisible image (pixel) embedded in a website or an email to track a user's activities. That tracked data often includes information regarding the user's operating system, the type of website or email used, the time when the website was accessed, the user's IP address, and whether there are cookies that previously have been set by the server hosting the pixel image.[8]

57. "Digital fingerprinting" refers to device fingerprinting and browser fingerprinting, both of which send information to the website server to help ensure that a website is displaying content correctly and operating appropriately. Although a browser or device does not usually transmit personal information about a user, most fingerprinting is performed via a third-party tracker, which can track an individual across multiple sites and form a profile or dossier of the

---

[8] See Patti Croft & Catherine McNally, *What Is a Web Beacon and Why Should You Care?*, All About Cookies (Feb. 19, 2025), https://allaboutcookies.org/what-is-a-web-beacon (last visited May 7, 2025).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

user.[9]

58. Specifically, fingerprinting is a method by which tracking companies identify and re-identify users across browsing sessions and websites without relying on traditional cookies. Unlike cookies, which are stored locally on a user's device and can be deleted, fingerprinting collects passive metadata from a user's browser and device, such as screen resolution, time zone, operating system, installed fonts, language settings, and user agent string. These attributes are often stable and unique enough that, when combined, they form a distinctive "fingerprint" that can identify the user over time and across sites, even when in private browsing mode or after cookie deletion. Further, because it uses environmental data rather than locally-stored identifiers, fingerprinting is considered and widely viewed as a more covert and persistent method of user surveillance.[10]

59. A software development kit ("SDK") is a set of computer programs and similar tools that developers and engineers can leverage to build applications for specific platforms. The SDK often includes, among other tools, libraries, application programming interfaces, instructions, guides, directions, and tutorials.[11] SDKs also may have embedded code that allows them to intercept personal data and other information from application users surreptitiously, including geolocation data, usernames and communications derived from other SDK applications installed on a user's device, and a user's activities within an application after installation.

60. All of the personal information and data captured and collected by third-party trackers, regardless of the surveillance tool implemented, is used to create and build the most complete and robust user dossiers possible. Those user profiles are then sold and used for

---

[9] See Anokhy Desai, *The Half-Baked Future of Cookies and Other Tracking Technologies*, IAPP (July 2023), https://iapp.org/resources/article/future-of-cookies-tracking-technologies/ (last visited May 7, 2025).

[10] See Maciej Zawadziński, *What Is Device Fingerprinting And How Does It Work?*, Clearcode (June 17, 2024), https://clearcode.cc/blog/device-fingerprinting/ ("Advertisers and AdTech vendors also use device fingerprinting to identify and track users across the Internet, which allows them to create user profiles and target them with personalized ads") (last visited June 2, 2025).

[11] *See What Is an SDK? Software Development Kits Explained*, Okta, Inc. (Apr. 2, 2025), https://www.okta.com/identify-101/what-is-an-sdk (last visited May 7, 2025).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

marketing and advertising purposes targeted to the specific user.

**B. Internet Protocol Addresses ("IP Addresses")**

61. One important piece of identifying information collected by third-party trackers is a website user's IP address. An IP address is a unique identifier for a device connected to the internet, and is a numerical code written as four sets of numbers separated by periods (e.g., 123.145.167.189). The first two sets of numbers reflect what network the device is on; the second two sets of numbers identify the specific device.

62. An IP address is essential for identifying a specific device on the internet or within a local network. It facilitates communication between devices and allows a communication signal to be routed from one identified device to another identified device.

63. A **private IP address** is used within an internal network and is assigned within a specific range of numbers designated exclusively to be used for private IP addresses. A private IP address is not routable on the internet, and thus can be used simultaneously, without conflict, in different private or local networks because they are isolated from the global internet. Non-unique private IP addresses conserve the finite number of combinations that make an IP address and facilitate local network communications.

64. In contrast, **public IP addresses** are required for devices that need direct internet access and are assigned by an Internet Service Provider ("ISP"). Because a public IP address is accessible from anywhere on the internet, it is unique to a device globally. Although the term "public" is used, a public IP address is not freely accessible. If a device is not actively sending out data, the public IP address remains private and is not broadcast to the wider internet. Unique public IP addresses facilitate global communications.

65. Significantly, public IP addresses contain geographical location information from which the state, city, and zip code of a specific device can be determined. Various services, such as iplocation.io, use databases to map IP addresses to physical locations in geographic areas, and often can provide information about the country, city, and approximate latitude and longitude coordinates of a specific device. In some instances, even the ISP associated with the public IP address can be determined. This geolocation capability is leveraged and used extensively in

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

online advertising and user identification services.

66. Given the information that it can and does reveal, an IP address is considered personally identifiable information and, in some cases, is subject to HIPAA protection.[12] Under California law, an IP address also is considered an identifier and constitutes a consumer's protected personal information when it can be linked with a particular consumer or household.[13] Further, under Europe's General Data Protection Regulation, IP addresses are considered "personal data, as they can potentially be used to identify an individual."[14]

67. While a private IP address does not disclose a user's geolocation information, a public IP address does divulge such personal information. A public IP address reveals the approximate location of the user who is connecting to the internet and the router that is directing those communications. That often is the user's house or workplace.

68. Knowing a website user's public IP address, and therefore the user's geographic location, provides "a level of specificity previously unfound in marketing."[15] A public IP address allows advertisers to target customers by countries, cities, neighborhoods, and postal codes.[16] Even more specifically, by matching physical addresses to IP addresses, it allows advertisers to target specific households, businesses, and even individuals with ads that are relevant to their interests.[17]

69. Indeed, IP targeting is one of the most successful marketing techniques that

---

[12] *See* 45 C.F.R. § 164.514(b)(2)(i)(O).

[13] *See* Cal. Civ. Code § 1798.140(v)(1)(A).

[14] *Is an IP Address Personal Data?*, Convesio, https://convesio.com/knowledgebase/article/is-an-ip-address-personal-data/ (last visited May 28, 2025); *see also What is Personal Data*, European Commission, https://commission.europa.eu/law/law-topic/data-protection/reform/what-personal-data_en/ (last visited May 28, 2025).

[15] *IP Targeting: Understanding This Essential Marketing Tool*, AccuData, https://www.accudata.com/blog/ip-targeting/, *archived at* https://web.archive.org/web/20240326190403/https://www.accudata.com/blog/ip-targeting/ (last visited May 28, 2025).

[16] *Location-based Targeting That Puts You in Control*, Choozle, https://choozle.com/geotargeting-strategies/ (last visited May 28, 2025).

[17] Herbert Williams, *The Benefits of IP Address Targeting for Local Businesses*, LinkedIn (Nov. 29, 2023), https://www.linkedin.com/pulse/benefits-ip-address-targeting-local-businesses-herbert-williams-z7bhf/ (last visited May 28, 2025).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

companies can employ to spread the word about a product or service because companies are incentivized and can use a public IP address to identify individuals personally.[18] By targeting specific households or businesses, a company can avoid wasting money on ads that are unlikely to be seen by their target audience and can reach their target audience with greater precision.[19] Additionally, by analyzing data on which households or businesses are responding to their ads, IP address targeting can help businesses improve their overall marketing strategies and refine their marketing efforts.[20]

70. "IP targeting capabilities are highly precise, with an accuracy rate of over 95%. This means that advertisers can deliver highly targeted ads to specific households or businesses, rather than relying on more general demographic or behavioral data."[21]

71. Public IP addresses also are used for "geomarketing," which is "the practice of using location data to identify and serve marketing messages to a highly targeted audience."[22] The core principle of geomarketing is that "where you are is who you are." By identifying target audiences that work, live, or vacation in a specific location, geomarketing allows businesses (and their websites) to determine consumers' wants and needs based on location-related factors and to tailor their marketing to the products or services that appeal to those needs.[23]

72. Further, when IP addresses are collected by third-party trackers and are combined with unique cookie identifiers, device fingerprints, geolocation data, and browsing history, that collection and use of such data allows for comprehensive dossier building and sustained and

---

[18] Trey Titone, *The future of IP address as an advertising identifier*, Ad Tech Explained (May 16, 2022), https://adtechexplained.com/the-future-of-ip-address-as-an-advertising-identifier/ (last visited May 28, 2025).

[19] Herbert Williams, *The Benefits of IP Address Targeting for Local Businesses*, LinkedIn (Nov. 29, 2023), https://www.linkedin.com/pulse/benefits-ip-address-targeting-local-businesses-herbert-williams-z7bhf/ (last visited May 28, 2025).

[20] *Id.*

[21] *IP Targeting*, Savant DSP, https://www.savantdsp.com/ip-targeting/ (last visited May 5, 2025).

[22] *See, e.g.*, *Geomarketing Strategies & Tips: The Essential Guide*, Deep Sync (Jan. 3, 2025), https://deepsync.com/geomarketing/ (last visited May 28, 2025).

[23] *Id.*

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

intrusive surveillance by those unauthorized third-party trackers.

73. As alleged below, Defendant installed third-party tracker cookies on Politico website users' browsers. Those trackers unlawfully have collected browsing activity and interaction data, browser and device/operating system data for fingerprinting, and identifying and addressing information about Plaintiffs and Class members, including their IP addresses and geolocation information. They have done so without a court order and without Plaintiffs' or Class members' consent.

**C. Defendant's Use of Third-Party Trackers on the Politico Website**

74. Defendant has embedded and implemented several third-party trackers on the Politico website, including but not limited to (i) TripleLift Tracker, (ii) CasaleMedia Tracker and (iii) Adnxs Tracker (referred to collectively as the "trackers"). By installing those trackers and their corresponding tracking cookies, Defendant can sell advertising space on the Politico website. That enables Defendant to monetize its website further and to maximize its revenue by disclosing and selling user information. Moreover, by collecting its users' information and disclosing it to third parties, Politico can place advertisements on other companies' websites, thereby increasing public awareness of Politico's brand, increasing its sales, and enabling Defendant to obtain and analyze users' data for its own profit.

75. When a website user first accesses and enters the Politico website, the user's browser sends an HTTP[24] request to Defendant's server. The Politico website server then sends an HTTP response with directions to load the webpage content. In addition to the webpage details, the Politico website server also sends instructions, as programmed by Defendant, and causes the three trackers to be installed on the user's browser. The trackers, in turn, instruct the user's browser to send the third parties the user's identifying and addressing information, including but not limited to the user's IP address, geolocation information, and device fingerprints.

---

[24] HTTP stands for "HyperText Transfer Protocol." It is the computer communication protocol used for most communication on the world wide web.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

76. Each tracker installs and stores its own persistent website cookie on the user's browser/device and uses that third-party tracker cookie to collect and share that user's browsing activity (*e.g.* domains and webpages visited), browser and device/operating system data, and addressing information, including IP addresses. ***It does that every time the user visits and interacts with the Politico website. Some of the data points sent from Politico website users' browsers to the third parties are meant to identify users uniquely across sessions and devices, allowing for cross-site tracking and behavioral profiling of those individuals.***

77. The process described above takes place behind the scenes and in less than a second. Thus, the three tracker cookies appear and are implemented the instant the user enters the Politico website. No further action, clicks, or consent from the user are required.

78. Further, each of the three trackers embedded on Defendant's website re-installs its tracker cookies every time a user visits the Politico website. Thus, even if a user clears the cookies from the user's browser, it makes no difference: the next time that user visits the Politico website, all three trackers re-install their tracker cookies, reset the tracking process, and resume transmission of the user's browsing activity, browser and device/operating system data, IP address, and other location and identifying information to the undisclosed third parties.

79. Upon information and belief, the third-party trackers embedded on the Politico website are persistent trackers. Thus, their corresponding tracker cookies are downloaded (and automatically re-installed) in the hard disk space of a user's device and remain there even after the browsing session has ended. That constant presence of the third-party tracker cookies over time can (1) take up valuable storage space, (2) slow down a user's browsing experience, and (3) slow down a user's computer if those cookies, like Defendant's, are used to track the user's browsing activity for advertising purposes.[25]

80. At no time before the installation and use of the trackers on Politico website users' browsers did Defendant procure users' consent for that conduct. Nor did Defendant

---

[25] *Do Internet Cookies Slow Down Your Computer?*, AUQ.IO, https://auq.io/knowledge-base/do-internet-cookies-slow-down-your-computer/ (last visited June 2, 2025).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

obtain a court order to install or use any of the three trackers.

81. The TripleLift Tracker is developed by digital advertising company TripleLift, Inc. ("TripleLift"). TripleLift is a platform that seeks to enhance advertisers' performance. To increase the overall effectiveness of online advertising, the TripleLift Tracker focuses on collecting users' data, particularly their IP addresses and device fingerprints, to fine-tune the platform's ad targeting. TripleLift's approach integrates both third-party and first-party data through its "TripleLift Audiences" feature, which facilitates precise ad placements and maximizes the accuracy of the advertisement's targeting. In essence, the TripleLift Tracker enables websites to analyze users' data to craft and optimize marketing campaigns, to target specific user groups and to increase website revenue by facilitating the collection of website users' information for use by third-parties.

82. When a user visits the Politico website, the TripleLift Tracker installs and stores its persistent website cookie on the user's browser. This third-party tracker cookie is used to collect and share that user's browsing activity, browser and device/operating system data for fingerprinting, persistent cookie values, and addressing information such as the IP address with third-party TripleLift. That surreptitious data capture, in turn, enables TripleLift to build user profiles, serve personalized, targeted advertisements, and optimize and maximize user engagement. ***TripleLift receives a user's browsing activity, device fingerprints, and IP address each and every time the user interacts with the Politico website.*** *See* Figure 1, identifying TripleLift (tlx.3lift.com), www.politico.com, and the user's IP address (185.211.xx.xxx); Figure 2, identifying TripleLift collecting unique cookies values and device and browser information, including the screen display information, "do not track" setting, and user agent string.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

**Figure 1** (red circles and yellow highlighting added):




**Figure 2** (red circles added):




83. The CasaleMedia Tracker is developed by Index Exchange, Inc. ("Index Exchange"), formerly known as Casale Media. By integrating third-party and first-party data, Index Exchange seeks to maximize ad relevancy and placement precision within its global advertising marketplace by leveraging the company's advertising technology experience for

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

publishers, advertisers and consumers. The CasaleMedia Tracker collects user data, including browsing activity, browser and device/operating system data, geolocation information, and IP addresses. It does so to enable website owners to analyze user data thoroughly, target specific user demographics, and optimize their marketing campaigns by increasing advertising effectiveness. By continuously updating its data sets and building more robust user dossiers to refine ad targeting, the CasaleMedia Tracker allows for the strategic collection of users' information for use by third-parties that purchase the information.

84. Politico embeds Index Exchange's code on its website. This hidden code causes and enables Index Exchange to install and store the CasaleMedia Tracker and its corresponding website cookie on users' browsers. Like the TripleLift Tracker above, the CasaleMedia Tracker is installed the instant a user accesses the Politico website. That happens without any notice to the user and without any request for permission from the user. By using HTTP requests and responses, cookies, IP addresses, and other information shared by the Politico website, third-party Index Exchange can track and deliver personalized ads based on users' browsing habits and preferences, their geographic locations, and other data personal to the users.

85. During the HTTP communication process, the CasaleMedia tracker cookie stores identifiers linked to users' browsing behavior. That enables Index Exchange to recognize that user on the user's subsequent visits to Politico or to other websites within Index Exchange's advertising network. That pervasive surveillance, in turn, facilitates a cycle of ad targeting and tracking.

86. Index Exchange also receives a user's browser and device/operating system data, geolocation information, and IP address every time the user interacts with the Politico website. Even if the user clears the cookies from the user's browser, *the CasaleMedia Tracker is re-installed instantly* on the user's next visit to the Politico website. That persistent and automatic process ensures that Index Exchange consistently receives the user's personal data and identifying information, such as location and IP address, with each and every Politico website interaction. *See* Figure 3, identifying CasaleMedia, www.politico.com, and the user's IP address (185.211.xx.xxx); and Figure 4, identifying CasaleMedia collecting latitude and longitude

geolocation data and unique cookies values.

**Figure 3** (red circles and yellow highlighting added):




**Figure 4** (red circles added):



87. The third tracker embedded in Defendant's Politico website is developed by software company Xandr, which Microsoft acquired in 2021. Xandr operates as an advanced advertising company that claims to provide a comprehensive platform for buying and selling

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

consumer-centric digital advertising. The platform, which includes programmatic advertising, data analytics, and cross-screen media solutions, aims to improve the efficiency and effectiveness of advertising across various channels by leveraging data and technology.

88. Like other third-party trackers, Xandr allows companies like Defendant to sell advertising space on their websites by using the Adnxs Tracker to receive, store and analyze information collected from website visitors. The Adnxs Tracker is installed and stored on the user's browser the instant the user enters the Politico website. The persistent third-party tracker cookie then sends the user's browsing activity, device fingerprints, geolocation information, and IP address to Xandr each and every time the user interacts with the Politico website. *See* Figure 5, identifying Adnxs, www.politico.com, and the user's IP address (185.211.xx.xxx); and Figure 6, identifying Adnxs collecting latitude and longitude geolocation data and unique cookies values.

**Figure 5** (red circles and yellow highlighting added):




KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

**Figure 6** (red circles added):




89. During the proposed class period, each of the three trackers embedded on Defendant's Politico website (1) installed a persistent third-party tracker cookie on users' browsers/devices, (2) captured, collected, and shared with undisclosed third parties the Politico website users' personally identifying and addressing information, including the users' browsing activity, device fingerprints, geolocation information, and IP addresses, (3) created and built comprehensive and robust dossiers on those Politico website users, and (4) shared and sold those users' profiles through the real-time bidding process and cookie syncing (discussed below). ***The trackers did all of that without users' knowledge or consent.***

90. Further, each of the three trackers embedded on Defendant's website ***re-installed its tracker cookies automatically every time a user visited the Politico website***. That happened even if the user previously had cleared the cookies from his or her web browser. As a result, during the proposed class period, Politico website users like Plaintiffs and Class members could not escape the unauthorized sharing of their personally identifying and addressing information with third-parties TripleLift, Index Exchange, and Xandr.

91. As alleged above, the trackers are designed to analyze Politico website data, deliver hyper-targeted advertisements, and unjustly enrich Defendant by boosting Defendant's revenue, all through the surreptitious collection and use of information regarding Politico

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

website users' browsing activity (*e.g.* domains and webpages visited), device fingerprints, geolocation information, public IP addresses, and other information collected and set by the third-party trackers.

92. Notably, upon information and belief, the third-party trackers collected IP addresses that can be used to ascertain a user's location, potentially with precise latitude-longitude coordinates and a zip code. Further, two of the trackers embedded on the Politico website – CasaleMedia and Adnxs – expressly capture the latitude and longitude data of a user's device as part of their data payload. As discussed above, Defendant and third parties can use that geolocation information to analyze the Politico website data and conduct targeted advertising based on a user's precise location.

93. Upon further information and belief, when a user entered the Politico website, all three trackers were used for real-time bidding ("RTB"). RTB is an online advertising auction that uses sensitive personal information to facilitate the process of determining which digital ad will be displayed to a user on a given website or application. Defendant's Politico website uses the third-party trackers to "host" the bidding on Defendant's behalf, which happens almost instantly upon the visitor entering the website. The RTB system was designed to allow Defendant to sell targeted advertising and to maximize its revenue gained from selling ad space on the Politico website.

94. During the RTB process, trackers will send user data to an advertising exchange, a platform that allows advertisers and publishers to exchange data, set prices, and ultimately serve an ad. The user data, often referred to as "bidstream data," includes information such as device identifiers, IP addresses, zip/postal codes, GPS locations, browsing histories, location data, and more. After receiving the bidstream data, an advertising exchange will broadcast the data to several demand-side platforms ("DSPs"). The DSPs then examine the data to determine whether to make a bid on behalf of their advertising client. Ultimately, the winner of the bid will

have its advertisement displayed to the user.[26]

95. Because most RTB auctions are held on the server/exchange side instead of the client/browser side, the user sees only the winner of the auction and would not be aware of the advertisers that bid and lost. Nonetheless, even the losing advertisers benefit ***because they also receive and collect the user data that was broadcast during the RTB auction process***. That surreptitiously-exchanged information can be added to existing dossiers that advertisers have regarding users[27], further diminishing users' ability to control their personal information and its use by others.

96. As the Federal Trade Commission ("FTC") has noted, "[t]he use of real-time bidding presents potential concerns," including but not limited to the following:

a. "incentiviz[ing] invasive data-sharing" by "push[ing] publishers [*i.e.*, Defendant] to share as much end-user data as possible to get higher valuation for their ad inventory – particularly their location data and cookie cache, which can be used to ascertain a person's browsing history and behavior;"

b. "send[ing] sensitive data across geographic borders;" and

c. sending consumer data "to potentially dozens of bidders simultaneously, despite only one of those parties – the winning bidder – actually using that data to serve a targeted ad. ***Experts have previously cautioned that there are few (if any) technical controls ensuring [that] those other parties do not retain that data for use in unintended ways.***"[28]

97. Similarly, the Electronic Privacy Information Center ("EPIC") has warned that consumers' privacy "is violated when entities disclose their information without authorization or

---

[26] See *Real-Time Bidding*, Appsflyer, https://www.appsflyer.com/glossary/real-time-bidding/ (last visited May 5, 2025).

[27] *Id*.

[28] Federal Trade Commission, Unpacking Real Time Bidding Through FTC's Case On Mobilewalla (Dec. 3, 2024), https://www.ftc.gov/policy/advocacy-research/tech-at-ftc/2024/12/unpacking-real-time-bidding-through-ftcs-case-mobilewalla (last visited May 28, 2025) [emphasis added].



KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

in ways that thwart their expectations."[29]

98. Upon further information and belief, in addition to the real-time bidding process, the third-party trackers embedded on the Politico website also shared website users' personal and identifying data among one another and with various other entities through a process called "cookie syncing." **Cookie syncing** is a practice through which tracking entities share and align (*i.e.* synchronize) user identifiers. That sharing and alignment enable multiple trackers to link their respective cookies to a single user across different domains.

99. Put another way, cookie syncing allows tracking companies to share (synchronize) cookies and match the different IDs that they assign for the same user while that user browses the web.[30] That surreptitious sharing process circumvents the restriction that websites cannot read one another's cookies. Further, it allows third parties to track a user to a far larger number of websites and share and capture user information more freely in order to better facilitate targeted advertising and real-time bidding.[31]

100. When a user visits a website, each third-party tracker assigns a unique user ID via its website cookie and transmits that identifier to a network of tracking or advertising companies. For instance, Tracker A may assign a user the ID "userABC," which it transmits and shares with Tracker B, which assigned the same user the ID "user123." This is a simple but textbook example of cookie syncing in which one tracker facilitates ID sharing by initiating a chain of redirects or pixel requests to other advertising and tracking entities. That practice allows all participating trackers to map the user to a common ID, thus enabling the trackers to link their respective datasets and build richer, more comprehensive user dossiers, regardless of whether the

---

[29] Sara Geoghegan, *What is Real Time Bidding?*, EPIC (Jan. 15, 2025), https://epic.org/what-is-real-time-bidding/ (last visited May 28, 2025).

[30] Panagiotis Papadopoulos et al., *Cookie Synchronization: Everything You Always Wanted to Know But Were Afraid to Ask*, WWW '19: The World Wide Web Conference 1432, 1432 (May 13, 2019), https://doi.org/10.1145/3308558.3313542 (last visited May 29, 2025).

[31] Gunes Acar et al., *The Web Never Forgets: Persistent Tracking Mechanisms in the Wild*, CCS '14: Proceedings of the 2014 ACM SIGSAC Conference on Computer and Communication Security 674, 674 (Nov. 3, 2014), https://doi.org/10.1145/2660267.2660347 (last visited May 29, 2025).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

user has interacted directly with the tracker in the network.

101. In essence, the cookie syncing facilitates cross-platform behavioral profiling and persistent identification of the same individual across services, tracking the websites the individual visits and profiling the individual's online behavior. Thus, "syncing user IDs of a given user increases the user identifiability while browsing" and reduces the user's "overall anonymity on the Web."[32]

102. Upon information and belief, the CasaleMedia and Adnxs trackers embedded on the Politico website (1) engaged in cookie synching of website users' identifiers and (2) shared that information with multiple third parties, such as Yahoo, Google, and Bidswitch, in order to match users across platforms and build comprehensive cross-site user profiles. That pervasive, unauthorized surveillance invades Plaintiffs' and Class members' privacy.

**D. Plaintiffs and Class Members Did Not Consent to Defendant's Disclosure of Their Personally Identifying and Addressing Information, and They Had a Reasonable Expectation of Privacy in Their User Data.**

103. During the proposed class period, Defendant did not ask its Politico website visitors, including Plaintiffs, whether they consented to having their personally identifying and addressing information disclosed to and used by third parties like TripleLift, Index Exchange, and Xandr. When a website user accessed and entered the Politico website during the proposed class period, there was no pop-up window or other notification to inform users that Defendant was using website tracking technology or installing third-party tracker cookies.

104. Additionally, the third-party trackers were incorporated seamlessly – ***and, to users, invisibly*** – in the background on the Politico website. That seamless and invisible incorporation gave Plaintiffs and Class members no way of knowing that Defendant was collecting their personally identifying and addressing information, including their browsing activity, device fingerprints, geolocation information, and IP addresses, and secretly was sharing that information with undisclosed third parties.

---

[32] Panagiotis Papadopoulos et al., *Cookie Synchronization: Everything You Always Wanted to Know But Were Afraid to Ask*, WWW '19: The World Wide Web Conference at 1441 (May 13, 2019), https://doi.org/10.1145/3308558.3313542 (last visited May 29, 2025).

105. Further, although the Politico website does have a Privacy Policy containing some disclosures about how information is collected and shared, ***that policy can be viewed only after scrolling all the way through the website content to the very bottom of the webpage***. During the proposed class period, Defendant's policies and notices would be seen, if at all, only long after the third-party trackers and cookies had been installed on users' web browsers – in other words, only after it was too late.

106. In addition to its hard-to-see location, the hyperlink to access the Privacy Policy is written in small, inconspicuous font and is listed among many other links at the bottom of the Politico webpage. *See* Figure 7.

**<u>Figure 7</u>** (red boxes added):




107. Unlike first-party cookies that may be technologically necessary to enable a computer user to view a webpage, ***third-party tracker cookies are not necessary***. Moreover, they (1) simultaneously communicate information to an external server as a user navigates a website; (2) track users across devices, meaning that a user's actions on multiple devices all will be included in the information stored regarding that user; (3) are not easily disabled by users; and/or (4) ***create a record of all of the information that users provide to and/or receive from the website***.

108. Because they were unaware of Defendant's use of third-party trackers and tracking cookies, Plaintiffs and Class members could not and did not consent to the collection, storage, and use of their personally-identifying and addressing information by undisclosed third parties such as TripleLift, Index Exchange, and Xandr.

109. During the proposed class period, Plaintiffs and Class members had a reasonable expectation of privacy in their interactions with the Politico website and in their user data, especially their personally identifying and addressing information. That expectation is even

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

more pronounced for Plaintiffs' and Class members' specific locations and IP addresses, which contain geolocation data that can be used to identify, track, and target an individual in a very specific way.

110. Privacy studies, such as those conducted by the *Pew Research Center*, show that most Americans are concerned about how data is collected about them.[33] Those privacy polls also reflect that Americans consider one of the most important privacy rights to be the need for a customer's or other individual's affirmative consent before a company collects and shares data regarding that customer or other individual.

111. Indeed, according to *Consumer Reports*, more than 90% of Americans believe that more should be done to ensure that companies protect consumers' privacy. Further, nearly two thirds of Americans – **64%** – believe that companies should be prohibited from sharing data with third parties, while 63% of Americans want a federal law requiring companies to obtain a consumer's permission before sharing the consumer's information. To that end, 60% of Americans believe that companies should be required to be more transparent about their privacy policies so that consumers can make more informed choices.[34]

112. Users act in a manner that is consistent with those preferences. During a rollout of new iPhone operating software, for example, ***94% of U.S. users who were asked for clear, affirmative consent before allowing companies to track them chose not to share their data.***[35]

113. Defendant's unauthorized (1) installation of third-party tracker cookies on Plaintiffs' and Class members' web browsers and (2) disclosure of Plaintiffs' and Class members' personally identifying and addressing information to undisclosed third parties, all

---

[33] Brooke Auxier et al., *Americans and Privacy: Concerned, Confused and Feeling Lack of Control Over Their Personal Information*, Pew Research Center (Nov. 15, 2019), https://www.pewresearch.org/internet/2019/11/15/americans-and-privacy-concerned-confused-and-feeling-lack-of-control-over-their-personal-information/ (last visited May 28, 2025).

[34] Benjamin Moskowitz et al., *Privacy Front & Center: Meeting the Commercial Opportunity to Support Consumer Rights*, Consumer Reports in collaboration with Omidyar Network (Fall 2020), https://thedigitalstandard.org/downloads/CR_PrivacyFrontAndCenter_102020_vf.pdf (last visited May 28, 2025).

[35] *See* Margaret Taylor, *How Apple Screwed Facebook*, Wired (May 19, 2021) https://www.wired.co.uk/article/apple-ios14-facebook (last visited May 28, 2025).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

without adequate notification to the individual and certainly without any consent, were invasions of Plaintiffs' and Class members' privacy.

114. Plaintiffs and Class members have suffered injuries and damages in the form of (i) invasion of privacy; (ii) statutory damages; (iii) the continued and ongoing risk to their personally identifying and addressing information, including data regarding their private online behavior, that, once out, cannot be restored to its previous level of privacy once disclosed; and (iv) the continued and ongoing risk of harassment, spam and targeted advertisements enabled by the Politico website.

**CLASS ACTION ALLEGATIONS**

115. Plaintiffs bring this action under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and a class (the "Politico Website Class" or "the Class") defined as follows:

> All California residents who, while located within California at any time during the applicable limitations period preceding the original filing of the Complaint in this matter and through and including June 30, 2024, accessed and viewed the Politico website and had their IP addresses, browser and/or device/operating system data, browsing activity, geolocation information, and/or other personal data collected by and/or disclosed to the third-party trackers embedded in the Politico website.

116. Excluded from the Politico Website Class are website users who (i) registered and/or subscribed to the Politico website and/or (ii) registered to receive the Politico newsletter. Employees of Defendant and employees of Defendant's parents, subsidiaries, and corporate affiliates also are excluded from the Class. Plaintiffs reserve the right to amend or modify the class definition and/or to add sub-classes or limitations to particular issues, where appropriate, based upon subsequently discovered information.

117. This action properly may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure because (1) there is a well-defined community of interest in the litigation, (2) common questions of law and fact predominate over individual issues, and (3) the proposed Class is ascertainable.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

**Numerosity**

118. The Politico Website Class that Plaintiffs seek to represent contains numerous members and is clearly ascertainable including, without limitation, by using Defendant's records and/or third-party trackers' records to determine the size of the Class and to determine the identities of individual Class members.

119. Based on information and belief, the Politico Website Class consists of at least 100 individuals. The Class is so numerous that joinder of all members is impracticable.

**Typicality**

120. Plaintiffs' claims are typical of the claims of all of the other members of the Politico Website Class as Plaintiffs have suffered from the same violations of the law as other putative Class members. Plaintiffs' claims and the Class members' claims are based on the same legal theories and arise from the same unlawful conduct, resulting in the same injury to Plaintiffs and all of the other Class members.

**Adequacy**

121. Plaintiffs will represent and protect the interests of the other members of the Class fairly and adequately. Plaintiffs have retained competent counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the Politico Website Class members and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interests that are adverse to those of the interests of other Politico Website Class members.

**Commonality and Predominance**

122. By its unlawful actions, Defendant has violated Plaintiffs' and the Class members' rights under the CDAFA, CIPA, the California Constitution, common law, and the UCL. The questions raised are, therefore, of common or general interest to the Class members, who have a well-defined community of interest in the questions of law and fact presented in this Complaint.

123. This action involves common questions of law and fact that predominate over any questions affecting only individual Class members. Those common questions of law and fact

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

include, without limitation, the following:

(a) Whether Plaintiffs and Class members had a reasonable expectation of privacy when they accessed and visited the Politico website during the proposed class period;

(b) Whether Defendant knowingly and without permission accessed Plaintiffs' and Class members' computers or computer systems during the proposed class period;

(c) Whether Defendant knowingly and without permission altered, damaged, deleted, destroyed, or otherwise used any data from Plaintiffs' and Class members' computers or computer systems during the proposed class period;

(d) Whether Defendant knowingly and without permission took, copied, or made use of any data from Plaintiffs' and Class members' computers or computer systems during the proposed class period;

(e) Whether Defendant knowingly and without permission added, altered, damaged, deleted, or destroyed any data from Plaintiffs' and Class members' computers or computer systems during the proposed class period;

(f) Whether Defendant knowingly introduced any computer contaminant into Plaintiffs' and Class members' computers, computer systems, and/or computer networks during the proposed class period;

(g) Whether Plaintiffs and Class members had a reasonable expectation of privacy in their personally identifying and addressing information, including without limitation their browsing activity, device fingerprints, geolocation information, and IP addresses, when they accessed and visited the Politico website during the proposed class period;

(h) Whether each of the third-party trackers embedded in the Politico website was a "pen register" under California Penal Code § 638.50(b);

(i) Whether, during the proposed class period, Defendant had a policy or practice of disclosing and sharing personally identifying and addressing information collected on the Politico website including, without limitation, browsing activity,

device fingerprints, geolocation information, and IP addresses, with third-party trackers and/or other third parties;

(j) Whether, during the proposed class period, Defendant had a policy or practice of not disclosing to Politico website users that it would collect and share their personally identifying and addressing information, including browsing activity, device fingerprints, geolocation information, and IP addresses, with third-party trackers and/or other third parties;

(k) Whether, during the proposed class period, Defendant had a policy or practice of not obtaining Politico website users' prior consent to collect and share personally identifying and addressing information, including browsing activity, device fingerprints, geolocation information, and IP addresses, with third-party trackers and/or other third parties;

(l) Whether Defendant sought or obtained a court order for its use of the third-party trackers;

(m) Whether Defendant's conduct invaded Plaintiffs' and Class members' privacy;

(n) Whether Defendant's acts and practices violated California's Computer Data Access and Fraud Act, Cal. Penal Code § 502;

(o) Whether Defendant's acts and practices violated the California Invasion of Privacy Act, Cal. Penal Code § 638.51(a);

(p) Whether Defendant's acts and practices violated the California Constitution or individual rights arising under the California Constitution;

(q) Whether Defendant's acts and practices resulted in unjust enrichment to Defendant;

(r) Whether Defendant's acts and practices violated California Business & Professions Code §§ 17200, *et seq.*; and

(s) Whether Plaintiffs and Class members are entitled to actual, statutory, nominal, and/or other forms of damages, restitution, and other relief.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

**Superiority**

124. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all of the members of the Class is impracticable and because questions of law and fact common to the Politico Website Class predominate over any questions affecting only individual members of the Class. Even if every individual member of the Class could afford individual litigation, the court system could not. It would be unduly burdensome to the courts if individual litigation of the numerous cases were to be required. Individualized litigation also would present the potential for varying, inconsistent or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the conduct of this action as a class action with respect to some or all of the issues will present fewer management difficulties, conserve the resources of the court system and the parties, and protect the rights of each member of the Politico Website Class. Further, it will prevent the very real harm that would be suffered by numerous members of the putative Class who simply will be unable to enforce individual claims of this size on their own, and by Defendant's competitors, who will be placed at a competitive disadvantage as their punishment for obeying the law. Plaintiffs anticipate no difficulty in the management of this case as a class action.

125. The prosecution of separate actions by individual members of the Politico Website Class would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other members of the Class who are not parties to those adjudications or that would substantially impair or impede the ability of those non-party members of the Class to protect their interests.

126. The prosecution of individual actions by members of the Politico Website Class also would run the risk of establishing inconsistent standards of conduct for Defendant.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

**FIRST CAUSE OF ACTION**
**Violation of the California Computer Data Access and Fraud Act**
**(California Penal Code § 502)**
**(On Behalf of Plaintiffs and the Class)**

127. Plaintiffs incorporate each allegation set forth above as if fully set forth herein and further allege as follows.

128. The California Legislature enacted the CDAFA with the intent to "expand the degree of protection afforded to individuals, businesses, and governmental agencies from tampering, interference, damage, and unauthorized access to lawfully created computer data and computer systems." Cal. Penal Code § 502(a).

129. The Legislature further declared that "protection of the integrity of all types and forms of lawfully created computers, computer systems, and computer data is vital to the protection of the privacy of individuals as well as to the well-being of financial institutions, business concerns, governmental agencies, and others within this state that lawfully utilize those computers, computer systems, and data." Cal. Penal Code § 502(a).

130. To effectuate that purpose, the CDAFA affords a private right of action to owners of computers, systems, networks, programs, and/or data who suffer damages or loss as a result of a violation of the Act. Cal. Penal Code § 502(e)(1). There is no quantitative threshold of damage required to bring a claim, and there is no monetary threshold to qualify for CDAFA protection.

131. For purposes of the statute, several definitions were provided. The term "access" means to "gain entry to, instruct, cause input to, cause output from, cause data processing with, or communicate with, the logical, arithmetical, or memory function resources of a computer, computer system, or computer network." Cal. Penal Code § 502(b)(1).

132. The term "computer program or software" is defined as "a set of instructions or statements, and related data, that when executed in actual or modified form, cause a computer, computer system, or computer network to perform specified functions." Cal. Penal Code § 502(b)(3).

133. The term "computer system" refers to "a device or collection of devices,

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

including support devices and excluding calculators that are not programmable and capable of being used in conjunction with external files, one or more of which contain computer programs, electronic instructions, input data, and output data, that performs functions, including but not limited to, logic, arithmetic, data storage and retrieval, communication, and control." Cal. Penal Code § 502(b)(5).

134. Plaintiffs' and Class members' web browsers used to access the Politico website are "computer software." The computers on which Plaintiffs and Class members used their web browsers constitute computers or "computer systems" within the scope of the CDAFA.

135. The statute also defines the term "data" broadly to mean a "representation of information, knowledge, facts, concepts, computer software, or computer programs or instructions." The statute further provides that data may be in "any form, in storage media, or as stored in the memory of the computer or in transit or presented on a display device." Cal. Penal Code § 502(b)(8).

136. The term "computer contaminant" refers to "any set of computer instructions that are designed to modify, damage, destroy, record, or transmit information within a computer, computer system, or computer network without the intent or permission of the owner of the information. They include, but are not limited to, a group of computer instructions commonly called viruses or worms, that are self-replicating or self-propagating and are designed to contaminate other computer programs or computer data, consume computer resources, modify, destroy, record, or transmit data, or in some other fashion usurp the normal operation of the computer, computer system, or computer network." Cal. Penal Code § 502(b)(12).

137. As discussed above, a website cookie (including a third-party tracker cookie) and an IP address both are "data" within the meaning of the statute.

138. The website cookies installed by the TripleLift tracker, CasaleMedia tracker, and Adnxs tracker also constitute a "contaminant" under the CDAFA because they are designed to, and do, self-propagate to contaminate Politico users' computers, computer systems, and computer networks to record and transmit data that otherwise would not be transmitted.

139. The third-party tracker cookies and tracking technology that Defendant used

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

usurp the normal operation of Plaintiffs' and Class members' computing devices because they supplant Plaintiffs' and Class members' choices regarding how those devices and their resources, including energy and memory resources, are used. For example, the trackers command Politico website users' computing devices to act in ways that are contrary to what was intended by Plaintiffs and Class members, such as storing unauthorized tracking cookies on their web browsers/devices and disclosing to unknown third parties their identifying and addressing information without users' knowledge or consent.

140. As described above in more detail in Paragraph 107, third-party tracker cookies are not necessary for any of Plaintiffs' or Class members' devices to communicate effectively with Defendant or the Politico website.

141. Under California Penal Code § 502(c)(1), it is unlawful to knowingly access and without permission alter, damage, delete, destroy, or otherwise use any data, computer, computer system, or computer network in order to…wrongfully control or obtain money, property or data. Cal. Penal Code § 502(c)(1).

142. The statute also makes it unlawful to knowingly access and without permission take, copy, or make use of any data from a computer, computer system, or computer network. Cal. Penal Code § 502(c)(2).

143. The CDAFA further prohibits any person from knowingly accessing and without permission adding, altering, damaging, or destroying any data, computer software, or computer programs that reside or exist internal or external to a computer, computer system, or computer network. Cal. Penal Code § 502(c)(4).

144. Under subsections (6) and (7) of Penal Code § 502(c), a person also may not knowingly and without permission (i) provide or assist in providing a means of accessing or (ii) access or cause to be accessed any computer, computer system, or computer network. Cal. Penal Code §§ 502(c)(6) and (7).

145. Under California Penal Code § 502(c)(8), it also is unlawful to knowingly introduce any computer contaminant into any computer, computer system, or computer network. Cal. Penal Code § 502(c)(8).

146. Based on Defendant's unauthorized installation and storage of third-party tracker cookies on Plaintiffs' and Class members' web browsers during the proposed class period, as alleged above, Defendant knowingly accessed and without permission altered and used Plaintiffs' and Class members' data and computer systems in violation of Penal Code § 502(c)(1).

147. Similarly, the installation of those third-party tracker cookies violated subsection (c)(4) because Defendant added and altered data and computer software on Plaintiffs' and Class members' computers or computer systems. Cal. Penal Code § 502(c)(4).

148. By installing third-party tracker cookies, Defendant also knowingly and without permission provided those trackers a means of accessing and/or caused to be accessed Plaintiffs' and Class members' computers, computer systems, and/or computer networks in violation of Penal Code §§ 502(c)(6) and (7). Defendant's actions caused the data processing functions and networks of users' devices to redirect Plaintiffs' and Class members' data to the third-party trackers.

149. Further, Defendant's unauthorized collection and disclosure of Plaintiffs' and Class members' personally identifying and addressing information to undisclosed third parties during the proposed class period violated Penal Code § 502(c)(2) because Defendant took and made use of data, including browsing activity, device fingerprints, geolocation information, and IP addresses, from Plaintiffs' and Class members' computers, computer systems, and/or computer networks.

150. Defendant's installation of the third-party tracker cookies also violated subsection (c)(8) because Defendant knowingly introduced a computer contaminant into Plaintiffs' and Class members' computers, computer systems, and/or computer networks. Cal. Penal Code § 502(c)(8).

151. Defendant lacked permission to use and access Plaintiffs' and Class members' data, computers, computer systems, and computer networks in the manners described above and lacked permission to introduce the third-party trackers into Politico website users' web browsers, all as evidenced by the following:

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

(a) When entering and accessing Defendant's Politico website, there is no pop-up window or other notification to inform users that Defendant is using website tracking technology or installing third-party tracker cookies;

(b) The third-party trackers are incorporated seamlessly and invisibly in the background on Defendant's Politico website, thereby giving Plaintiffs and Class members no way to know that Defendant was allowing and enabling those third-party trackers to collect their personally identifying and addressing information, including their browsing activity, device fingerprints, geolocation information, and IP addresses; and

(c) Defendant does not seek permission from Politico website visitors to have or otherwise ask them whether they consent to having their personally identifying and addressing information disclosed to and used by undisclosed third parties such as TripleLift, Index Exchange, and Xandr.

152. Defendant's knowing conduct as described herein, including embedding and implementing third-party trackers on its Politico website and installing third-party tracker cookies on Politico website users' browsers without their knowledge or consent, violates the CDAFA.

153. Plaintiffs and Class members are residents of California and were the owners or lessees of the computers, computer systems, computer networks, and data described in this Complaint. Plaintiffs and Class members used their computers, computer systems and/or computer networks in California. Defendant accessed or caused to be accessed Plaintiffs' and Class members' data and other personally identifying information from within California.

154. Case law has established that misappropriation of data that has financial value can state an economic injury under the CDAFA. *See Brown v. Google LLC*, 685 F. Supp. 3d 909, 939-940 (N.D. Cal. 2023), citing *Facebook Tracking*, 956 F.3d at 600. In *Brown*, the court recognized that browsing histories and similar data carry financial value and that an economic market for that data exists. *Id.*; *see also, supra,* ¶ 44 (identifying examples of services and research panels that offer individuals compensation for the tracking of their data).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

155. The financial value of Plaintiffs' and Class members' personal data, including browsing activity and IP addresses, collected without authorization by the third-party trackers embedded on the Politico website is evidenced by, among other things, that data's extensive collection and use by third parties for real-time bidding, IP targeted advertising, and geomarketing.

156. Defendant was unjustly enriched by accessing, acquiring, taking and using Plaintiffs' and Class members' data and computer systems during the proposed class period without their permission or consent and by using all of that identifying information, including their IP addresses, browsing activity and data, and geolocation information, to maximize revenue from selling advertising space on the Politico website for Defendant's own financial benefit. Defendant has been unjustly enriched in an amount to be determined at trial.

157. Further, website tracking technology, such as tracking beacons and the third-party tracking cookies used by Defendant, take up and use processing, storage, and power resources to run on users' devices.[36] Upon information and belief, the third-party trackers embedded on the Politico website and their corresponding tracker cookies are persistent trackers, and thus are downloaded in the hard disk space of a user's device and remain there even after the browsing session has ended and the browser is closed. By the persistent downloading and installing (and automatic re-installing) of these third-party tracker cookies, without users' consent, a portion of the finite amount of storage space on website users' devices is taken up and used.[37] *See In re Meta Healthcare Pixel Litig.,* 713 F. Supp. 3d 650, 659 (N.D. Cal. 2024) ("Plaintiffs have alleged measurable harm from the loss of available storage space on their devices.").

158. Those persistent website tracking cookies also cause webpages to load more slowly, thereby increasing the time and energy needed for devices to be used and to run.

---

[36] See Joshua M. Pearce, *Energy Conservation with Open Source Ad Blockers* (Mar. 30, 2020), https://www.mdpi.com/2227-7080/8/2/18 (last visited May 28, 2025).

[37] See *Computer Cookies: What They Are and How They Work*, HP, https://www.hp.com/us-en/shop/tech-takes/what-are-computer-cookies (last visited May 28, 2025) ("Deleting cookies periodically can help protect your privacy by removing tracking data and free up storage space on your computer.").

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

Overall, the additional processing, storage, and power usage cause increased energy and device costs for users. That extra cost is economic harm to Plaintiffs and Class members. S*ee* *Rodriguez v. Google LLC*, 2025 U.S. Dist. LEXIS 3238 at *35 (N.D. Cal. Jan. 7, 2025) ***(recognizing depletion of battery and computing resources as acceptable forms of damage or loss for purposes of a CDAFA claim)***, citing *In re Carrier IQ, Inc.*, 78 F.Supp.3d 1051, 1065 (N.D. Cal. 2015); and *Williams v. Facebook, Inc.*, 498 F.Supp.3d 1189, 1199 (N.D. Cal. 2019).

159. As a direct and proximate result of Defendant's violations of the CDAFA, Plaintiffs and Class members have suffered economic loss and damages. The statute imposes no minimum threshold for damages. Under Penal Code § 502(e)(1), Plaintiffs and Class members therefore are entitled to compensatory damages, injunctive relief and other equitable relief in amounts to be determined at trial.

160. Plaintiffs and Class members also are entitled to an award of reasonable attorneys' fees and costs under Penal Code § 502(e)(2).

## SECOND CAUSE OF ACTION

**Unlawful Use of a Pen Register or Trap and Trace Device**
**(California Penal Code §§ 638.51)**
**(On Behalf of Plaintiffs and the Class)**

161. Plaintiffs incorporate each allegation set forth above as if fully set forth herein and further allege as follows.

162. The California Legislature enacted the California Invasion of Privacy Act, Cal. Penal Code §§ 630, *et seq*. ("CIPA"), to address "advances in science and technology [that] have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications" and declared "that the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society." *Id*. § 630. CIPA is intended "to protect the right of privacy of the people of this state." *Id*.

163. Although CIPA was enacted before the dawn of the Internet, the California Supreme Court "regularly reads statutes to apply to new technologies where such a reading would not conflict with the statutory scheme." *In re Google Inc.*, 2013 WL 5423918, at *21

(N.D. Cal. Sept. 26, 2013); *see also Greenley*, 2023 WL 4833466, at *15 (referencing CIPA's "expansive language" when finding that software was a "pen register"); *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *1 (9th Cir. May 31, 2022) ("Though written in terms of wiretapping, [CIPA] Section 631(a) applies to Internet communications."). This is consistent with the observation in *Matera v. Google Inc.* that, "when faced with two possible interpretations of CIPA, the California Supreme Court has construed CIPA in accordance with the interpretation that provides the greatest privacy protection." *Matera v. Google Inc.*, 2016 WL 8200619, at *19 (N.D. Cal. Aug. 12, 2016).

164. Particularly pertinent here, California Penal Code § 638.51(a) makes it unlawful for a person to "install or use a pen register or a trap and trace device without first obtaining a court order . . . ."

165. A "pen register" is "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code § 638.50(b).

166. A "trap and trace device" is a "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." Cal. Penal Code § 638.50(c).

167. In essence, a "pen register" is a "device or process" that records *outgoing* information, while a "trap and trace device" is a "device or process" that records *incoming* information. For example, if a user sends an email, a "pen register" might record the email address from which the email was sent, the email address to which the email was sent, and the subject line – because this is the user's *outgoing* information. On the other hand, if that same user receives an email, a "trap and trace device" might record the email address from which that email was sent, the email address to which it was sent, and the subject line – because this is *incoming* information that is being sent to that same user.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

168. The three trackers embedded in the Politico website – TripleLift, CasaleMedia, and Adnxs – are "pen registers" because each of them is a device or process that captures and records outgoing addressing or signaling information from the electronic communications transmitted by Plaintiffs' and Class members' computers, computer systems, and computer networks as they are accessing and visiting the Politico website. These third-party trackers took the form of software that was downloaded on Plaintiffs' and Class members' browsers/devices without their consent, surveilling them and using device resources.

169. At all relevant times during the proposed class period, Defendant installed each of the three pen register trackers on Plaintiffs' and Class members' web browsers in California and used the trackers to collect and share Plaintiffs' and Class members' outgoing public IP addresses, browser and device/operating system data, and geolocation information.

170. Public IP addresses constitute addressing information because they disclose the general geographic coordinates of the user who is accessing and communicating with a website, but do not necessarily reveal any more about the underlying contents of the communication. *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1108 (9th Cir. 2014).

171. Public IP addresses also constitute "routing" or "signaling" information because they are sending or directing users' communications from the routers in their homes or workplaces to the websites with which users are communicating. In combination with the data collected by the third-party trackers embedded on Politico's website, that routing or signaling information allowed unauthorized third parties to commit invasive surveillance upon Plaintiffs and Class members.

172. Unaware of Defendant's installation and use of the third-party trackers as pen registers during the proposed class period, Plaintiffs and Class members could not have provided and did not provide their prior consent to Defendant's installation or use of the third-party trackers or pen registers.

173. Upon information and belief, Defendant was not authorized by any court order to use a pen register to track Plaintiffs' and Class members' location data and other identifying or addressing information.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

174. Defendant's conduct as described above violated California Penal Code § 638.51. As a result, Defendant is liable for the relief sought by Plaintiffs and the Politico Website Class. Under California Penal Code § 637.2, Plaintiffs and Class Members are entitled to and therefore seek statutory damages of $5,000 for each of Defendant's numerous CIPA violations.

**THIRD CAUSE OF ACTION**
**Invasion of Privacy**
**(Violation of Art. 1, § 1, California Constitution)**
**(On Behalf of Plaintiffs and the Class)**

175. Plaintiffs incorporate each allegation set forth above as if fully set forth herein and further allege as follows.

176. "Privacy" is listed in Article I, Section 1, of the California Constitution as one of six fundamental rights of all Californians. That section of the Constitution provides as follows: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy." Cal. Const. art. I, § 1.

177. The right to privacy in California's Constitution creates a right of action against private entities such as Defendant. To state a claim for invasion of privacy under the California Constitution, a plaintiff must establish (1) a legally protected privacy interest; (2) a reasonable expectation of privacy; and (3) an intrusion so serious in nature, scope, and actual or potential impact as to constitute an egregious breach of social norms.

178. Plaintiffs and Class members had a legally protected privacy interest in their personally identifying and addressing information, such as their browsing activity, device fingerprints, geolocation information, and IP addresses, that was captured during the proposed class period, without notice or consent, when they accessed and viewed the Politico website. These privacy interests are recognized by the California Constitution, CDAFA, CIPA, HIPAA, and numerous other statutes.

179. Plaintiffs and Class members had a reasonable expectation of privacy under the circumstances, as they could not reasonably have expected that Defendant would violate state and federal privacy laws. During the proposed class period, Plaintiffs and Class members were

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

not aware of and could not reasonably have expected that Defendant would use website tracking technology and install third-party tracker cookies without notice or without obtaining consent. Those unauthorized trackers collected and transmitted to undisclosed third parties Plaintiffs' and Class members' personally identifying and addressing information, including their browsing activity, device fingerprints, geolocation information, and IP addresses, which contain geolocation data. That tracking resulted in pervasive and intrusive surveillance of users, such as Plaintiffs and Class members, over time and in defiance of their expectation of privacy.

180. Defendant's unauthorized (1) installation of third-party tracker cookies and (2) disclosure to and sharing with unknown third parties of Plaintiffs' and Class members' personally identifying and addressing information during the proposed class period, all without consent and without adequate notification to Plaintiffs and Class members, were invasions of Plaintiffs' and Class members' privacy.

181. Defendant's conduct during the proposed class period constituted a serious invasion of privacy that would be highly offensive to a reasonable person in that (i) the information disclosed by Defendant and shared with third-party trackers was personally identifying information protected by the California Constitution and numerous California and federal statutes; (ii) Defendant did not have authorization or consent to disclose that personally identifying and addressing information, including Politico website users' browsing activity, device fingerprints, geolocation information, and IP addresses, to any third-party tracker embedded in the Politico website, and the trackers did not have authorization to collect and use that personal data or sensitive geolocation information; and (iii) the invasion deprived Plaintiffs and Class members of the ability to control the dissemination, circulation, and sale of that information, an ability that is a fundamental privacy right. Defendant's conduct constitutes a severe and egregious breach of social norms.

182. As a direct and proximate result of Defendant's actions, Plaintiffs and Class members have had their privacy invaded and have sustained injury, including injury to their peace of mind.

183. Plaintiffs and Politico Website Class members seek appropriate relief for that

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

injury, including but not limited to restitution, disgorgement of profits earned by Defendant because of, by way of, or in connection with the intrusions upon Plaintiffs' and Class members' privacy, nominal damages, and all other relief, including equitable relief, that will compensate Plaintiffs and Class members properly for the harm to their privacy interests.

184. Plaintiffs also seek such other relief as the Court may deem just and proper.

**FOURTH CAUSE OF ACTION**
**Unjust Enrichment**
**(On Behalf of Plaintiffs and the Class)**

185. Plaintiffs incorporate each allegation set forth above as if fully set forth herein and further allege as follows.

186. Defendant received benefits from Plaintiffs and Class members and unjustly retained those benefits at their expense.

187. Plaintiffs and Class members conferred a benefit upon Defendant in the form of valuable personal information and data, including their browsing activity, device fingerprints, geolocation information, and IP addresses, that Defendant collected from Plaintiffs and Class members without authorization and without proper compensation. Defendant has collected, disclosed, and otherwise misused that information for its own gain, providing Defendant with economic, intangible, and other benefits, including substantial monetary compensation from third parties that received Plaintiffs' and Class members' personal information and data from or through Defendant and/or as a result of Defendant's violations of California law.

188. Defendant unjustly retained those benefits at the expense of Plaintiffs and Class members because Defendant's conduct damaged Plaintiffs and Class members, all without providing any commensurate compensation to Plaintiffs and Class members.

189. The benefits that Defendant derived from Plaintiffs and Class members rightly belong to Plaintiffs and Class members. It would be inequitable under California unjust enrichment principles for Defendant to be permitted to retain any of the profit or other benefits that it derived from the unfair and unconscionable methods, acts, and trade practices alleged in this Complaint.

190. Defendant should be compelled to disgorge in a common fund for the benefit of

Plaintiffs and Class members all unlawful or inequitable proceeds that Defendant received, together with such other relief as the Court may deem just and proper.

**FIFTH CAUSE OF ACTION**
**Violations of California's Unfair Competition Law**
**(Cal. Bus. & Prof. Code §§ 17200, *et seq*.)**
**(On Behalf of Plaintiffs and the Class)**

191. Plaintiffs incorporate each allegation set forth above as if fully set forth herein and further allege as follows.

192. California Business & Professions Code §§ 17200, *et seq*. ("the UCL") prohibit unfair competition in the form of any unlawful, unfair, deceptive or fraudulent business act or practice.

193. Defendant's business acts and practices are "unlawful" under the UCL because, as alleged above, Defendant violated the California Constitution, California common law, and other California statutes and causes of action described in this complaint.

194. Defendant's business acts and practices are "unfair" under the UCL. California has a strong public policy of protecting consumers' privacy interests, including protecting consumers' personal data. Defendant violated that public policy by, among other things, surreptitiously collecting, disclosing, and otherwise misusing Plaintiffs' and Class members' personal information and data, including their browsing activity, device fingerprints, geolocation information, and IP addresses, without Plaintiffs' and Class members' consent. Defendant's conduct violates the policies underlying the statutes referenced in this Complaint.

195. Defendant's business acts and practices also are "unfair" in that they are immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to consumers. The gravity of the harm caused by Defendant secretly collecting, disclosing, and otherwise misusing Plaintiffs' and Class members' personal information and data is significant. Further, there is no corresponding benefit to Plaintiffs and Class members resulting from that conduct. Finally, because Plaintiffs and Class members were completely unaware of Defendant's conduct, they could not have avoided the harm that Defendant inflicted upon them.

196. Defendant's violations were and are willful, deceptive, unfair, and

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

unconscionable.

197. Had Plaintiffs and Class members known that their information would be collected and otherwise misused for Defendant's own benefit, they would not have used Defendant's Politico website.

198. Plaintiffs have suffered an economic injury, *i.e.*, a loss of money or property. Plaintiffs have alleged that their personally identifying and addressing information, including their browsing activity, device fingerprints, geolocation information, and IP addresses, were collected by the three trackers embedded on Defendant's Politico website and were disseminated and/or sold to other undisclosed third parties in exchange for monetary compensation received by Defendant. Plaintiffs also have alleged that that personal information has tangible monetary value and that Plaintiffs and Class members were deprived of that value when their personally identifying and addressing information, including their browsing activity, device fingerprints, geolocation information, and IP addresses, were disseminated and/or sold to other undisclosed third parties. These allegations are sufficient to establish an economic injury under the UCL. *See Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 636 (N.D. Cal. 2021) ("[T]he Ninth Circuit . . . ha[s] concluded that plaintiffs who suffered a loss of their personal information suffered economic injury and had [UCL statutory] standing."); *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 810-812 (N.D. Cal. 2011) (allegations that Facebook used plaintiffs' Facebook profiles to endorse third-party products and services, without compensation, sufficed).

199. Nor are Plaintiffs' UCL claims barred by Plaintiffs not having paid for Defendant's services. *See Fraley*, 830 F. Supp. 2d at 811 (alleged injury was cognizable even though "[i]t is undisputed that Plaintiffs did not pay for Facebook's services").

200. Plaintiffs and Class members have a property interest in their sensitive personal data. By surreptitiously disclosing and otherwise misusing Plaintiffs' and Class members' information, including their browsing activity, device fingerprints, geolocation information, and IP addresses, Defendant has taken property from Plaintiffs and Class members without providing just compensation or, indeed, any compensation whatsoever.

201. California Business & Professions Code § 17203 provides that the Court may

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

restore to any person in interest any money or property which may have been acquired by means of unfair, deceptive, and fraudulent business acts and practices, and may order restitution by Defendant to Plaintiffs for the practices alleged in this complaint. Plaintiffs and Class members are entitled under California Business & Professions Code §§ 17203 and 17208 to restitution and restoration of all ill-gotten money and property belonging to Plaintiffs and the Class.

202. Plaintiffs also seek injunctive relief in the form of a permanent injunction enjoining Defendant's unlawful and unfair business activities and practices, including an injunction terminating all downstream distributions of Plaintiffs' and Class members' illegally collected personal data. Plaintiffs additionally seek any and all other equitable relief that the Court deems proper.

203. Plaintiffs' success in this action will enforce important rights affecting the public interest and, in that regard, Plaintiffs sue on behalf of the proposed class as well as on behalf of themselves and the general public.

204. Plaintiffs take upon themselves the enforcement of these laws and lawful claims. There is a financial burden incurred in pursuing this action and it would be against the interests of justice to penalize Plaintiffs by forcing them to pay attorneys' fees from the recovery in this action. Therefore, an award of attorneys' fees is appropriate under California Code of Civil Procedure § 1021.5.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, on behalf of themselves and the members of the Class, seek the following relief:

a. An order certifying the Politico Website Class, appointing Plaintiffs Saber Khamooshi, Ryan Wu, Brian Carolus, and John Deddeh as representatives of the Politico Website Class, and appointing counsel for Plaintiffs as counsel for the Politico Website Class;

b. An order enjoining Defendant from engaging in the acts and practices complained of in this complaint;

c. An order declaring that Defendant's actions, as described above, violated

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

California Penal Code § 502;

d. An order declaring that Defendant's actions, as described above, violated California Penal Code § 638.51;

e. An order declaring that Defendant's actions, as described above, violated Art. 1, § 1 of the California Constitution;

f. An order declaring that Defendant's actions, as described above, violated California Business & Professions Code §§ 17200, *et seq.*;

g. A judgment for and award of compensatory damages and/or other equitable relief under California Penal Code § 502(e)(1) to Plaintiffs and each of the members of the Politico Website Class;

h. For each violation of CIPA, a judgment for and award of statutory damages of $5,000 under California Penal Code § 637.2 to Plaintiffs and each of the members of the Politico Website Class;

i. A judgment for and award of restitution, disgorgement of profits, and nominal damages to which Plaintiffs and all of the members of the Politico Website Class are entitled by law;

j. Disgorgement of profits and restitution and restoration of all costs incurred, sums or property unlawfully withheld, and/or losses caused by the acts and practices that violated California Business & Professions Code §§ 17200, *et seq.*;

k. Payment of costs of the suit;

l. Payment of attorneys' fees under California Code of Civil Procedure § 1021.5 and Penal Code § 502(e)(2);

m. An award of pre- and post-judgment interest to the extent allowed by law; and

n. Such other and/or and further relief as the Court may deem proper.

Respectfully submitted,

Dated: June 3, 2025

**KELLER GROVER LLP**

By: /s/ *Eric A. Grover*
ERIC A. GROVER
*Attorneys for Plaintiffs*
Saber Khamooshi, Ryan Wu, and Brian Carolus

**COHELAN KHOURY & SINGER**

By: s/ *Isam C. Khoury*
Isam C. Khoury, Esq.
Attorneys for Plaintiff John Deddeh

**KEEGAN & BAKER, LLP**

By: /s/ *Patrick N. Keegan*
Patrick N. Keegan, Esq.
Attorneys for Plaintiff John Deddeh

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

**JURY DEMAND**

Plaintiffs request a trial by jury of all claims that can be so tried.

Respectfully submitted,

Dated: June 3, 2025

**KELLER GROVER LLP**

By: */s/ Eric A. Grover*
ERIC A. GROVER
*Attorneys for Plaintiffs*
Saber Khamooshi, Ryan Wu, and Brian Carolus

**COHELAN KHOURY & SINGER**

By: s/ *Isam C. Khoury*
Isam C. Khoury, Esq.
Attorneys for Plaintiff John Deddeh

**KEEGAN & BAKER, LLP**

By: /s/ *Patrick N. Keegan*
Patrick N. Keegan, Esq.
Attorneys for Plaintiff John Deddeh

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

**CIVIL LOCAL RULE 5-1(i)(3) ATTESTATION**

Pursuant to L.R.5-1, the filer of this document, Eric Grover, hereby attests that all other signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized this filing.

Dated: June 3, 2025

**KELLER GROVER LLP**

By: /s/ *Eric A. Grover*
ERIC A. GROVER
*Attorneys for Plaintiffs*
Saber Khamooshi, Ryan Wu, and Brian Carolus