USAMA KAHF (SBN 266443)
E-Mail: ukahf@fisherphillips.com
**FISHER & PHILLIPS LLP**
2050 Main Street, Suite 1000
Irvine, California 92614
Telephone: (949) 851-2424
Facsimile: (949) 851-0152

DANIELLE KAYS (*PRO HAC VICE*)
E-Mail: dkays@fisherphillips.com
**FISHER & PHILLIPS LLP**
10 South Wacker Drive, Suite 3450
Chicago, IL 60606
Telephone: (312) 260-4751

CATHERINE M. CONTINO (*PRO HAC VICE*)
E-Mail: ccontino@fisherphillips.com
**FISHER & PHILLIPS LLP**
Two Logan Square, 12th Floor
100 N. 18th Street
Philadelphia, PA 19103
Telephone: (610) 230-2150
Facsimile: (610) 230-2151

Attorneys for Defendant
POLITICO LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SABER KHAMOOSHI, RYAN WU, BRIAN CAROLUS, and JOHN DEDDEH individually and on behalf of a class of similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>POLITICO LLC, and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No: 3:24-cv-07836-SK<br><br>**CLASS ACTION**<br><br>**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**<br><br>Action Filed: September 26, 2024<br>Removed: November 8, 2024<br>Consolidated: January 27, 2025 |

**TO THE COURT, PLAINTIFFS AND THEIR COUNSEL OF RECORD**:

1. Pursuant to Federal Rules of Evidence Rule 201, Defendant POLITICO LLC ("POLITICO"), through its attorneys of record, hereby request that the Court take judicial notice of the following:

(a) *Camacho v. DG Premium Brands LLC*, No. 24STCV21672, (Cal. Super. Ct. L.A. Cty. April 17, 2025), as **Exhibit A**.

(b) Assembly Bill No. 929, 2015-2016 Regular Session, as **Exhibit B**.

(c) Assembly Bill No. 1242, 2021-2022 Regular Session, as **Exhibit C**.

2. Judicial notice of **Exhibits A, B, and C** is proper as judicial notice may be taken of documents filed in court proceedings. Fed. R. Evid. 201; *Harris v. Cty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) ("We may take judicial notice of . . . documents on file in federal or state courts."); *see also Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (taking judicial notice of pleadings, memoranda, and other court filings).

3. Moreover, judicial notice of **Exhibits A, B, and C** is proper under Federal Rule of Evidence 201, which provides that a "court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)-(2). A federal court must take judicial notice of facts "if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2).

4. Finally, judicial notice of **Exhibits A, B, and C** is proper as documents that are matters of public record may also be judicially noticed. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) ("[A] court may take judicial notice of 'matters of public record.'"); *Allergan USA, Inc. v. Prescribers Choice, Inc.*, 364 F.Supp.3d 1089, 1095 (C.D. Cal. 2019); *Rodriguez v. Ford Motor Co.*, 722 F. Supp. 3d 1104, 1111 (S.D. Cal. 2024) ("A court *may* properly take judicial notice of legislative history.") (quotations and citations omitted) (emphasis in original)

5. Based on the foregoing, POLITICO respectfully requests that this Court take judicial notice of the above-referenced documents for purposes of POLITICO's Motion to Dismiss.

Dated: August 1, 2025

Respectfully submitted,

FISHER & PHILLIPS LLP

By: */s/ Usama Kahf*

USAMA KAHF
DANIELLE KAYS (*pro hac vice*)
CATHERINE M. CONTINO (*pro hac vice*)
Attorneys for Defendant
POLITICO LLC

# EXHIBIT "A"

FILED
Superior Court of California
County of Los Angeles

APR 17 2025

David W. Slayton, Executive Officer/Clerk of Court
By: N. Navarro, Deputy

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| ISABEL CAMACHO,<br><br>Plaintiff,<br><br>vs.<br><br>DG PREMIUM BRANDS LLC D/B/A DELTA GALIL USA, INC., and DELTA GALIL USA, INC. D/B/A WWW.7FORALLMANKIND.COM,<br><br>Defendants. | Case No.: 24STCV21672<br><br>ORDER RE DEMURRER AND MOTION TO STRIKE<br><br>Date: April 17, 2025<br>Time: 9:00 a.m.<br>Dept.: SSC 17 |

Defendants DG Premium Brands LLC and Delta Galil USA, Inc. demurred to Plaintiff Isabel Camacho's First Amended Complaint and moved to strike Plaintiff's prayers for punitive damages and attorney fees.

## I. **DEMURRER**

The FAC alleges three cause of action: (1) violation of Penal Code section 638.51, (2) violation of Penal Code section 631, and (3) invasion of privacy.

### A. **First Cause of Action (Section 638.51)**

The first cause of action alleges "Defendants deployed an illegal PR/TT [pen register/trap and trace device] by placing the following Spyware website cookies/beacons on the Plaintiff . . . devices," which allowed Defendants to "access Plaintiff . . . devices, and obtain Plaintiff . . . personal information including, inter alia, Plaintiff's IP address." (FAC, ¶¶ 96, 97.)

Both the pen register statute and trap and trace statute prohibit devices that capture "dialing, routing, addressing, or signaling information." (Pen. Code, § 638.50, subds. (b), (c).) The legislative history describes a purpose of the statute – to expand the ability of law enforcement to use these devices to determine who a subject of a criminal investigation is calling and is receiving phone calls from. (See, e.g., June 15, 2015 Assembly Committee Report.)

The pen register statute prohibits the use of a device or process that does not discover the contents of the communications, but only transmission information about those communications – for example, the phone numbers called by the subject. (Pen. Code, § 638.50, subd. (b).) The trap and trace statute prohibits the use of a device or process that does not discover the content of communications, but only the incoming information about those communications – for example, the phone numbers of calls made to the subject. (Pen. Code,. § 638.50, subd (c).) The language, with emphases added, reads: "the *incoming* electronic or other impulses that *identify the originating number* or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication. . . " (Pen. Code, § 638.50, subd. (c).) This statutory language requires that the device capture outgoing data identifying who the subject is contacting and incoming data identifying who is contacting the subject.

The FAC alleges that a pen register records "outgoing information" and a trap and trace device records "incoming information." (FAC, ¶ 19.) That is not precisely correct. Those devices, as defined by the statute, only record address or identifying information, not all information being transmitted.

Defendants argue this claim fails because section 638.51 applies only to eavesdropping by a third party, and Defendants cannot eavesdrop on its own communications. (Demurrer at pp. 8-9.) Defendants argue Plaintiff "must allege sufficient facts to demonstrate that a defendant's website is in some way violating the law" in a way that does not subject every website to legal violations simply by collecting the information necessary to run a website. (Demurrer at p. 10.) Plaintiff argues the section 638.51 claim is based on Defendants placing "third party spyware on the Website, which each constitute a device or process that records or decodes dialing, routing, addressing, or signaling information (including specifically Plaintiff's IP address amongst other such information) transmitted by Plaintiff's device to the Website." (Opposition at p. 3.)

Defendant is somewhat correct. As described above, the statute prohibits a defendant from using a device that records electronic data identifying who the subject is communicating with and who is communicating with the subject. The statute does not prohibit a defendant from collecting identifying information about who the defendant is communicating with and who is communicating with the defendant. Obviously, when a person goes on a website to make a purchase, the website needs to know who that person is. Also if section 638.51 was as broad as Plaintiff contends, it would prohibit phones from revealing the phone number of the person calling those phones (in other words every cell phone in use today).

Further, the history of sections 638.50 and 638.51 is helpful in understanding the scope of the statutes. When law enforcement places a pen register or trap and trace device on a subject's phone or other communication device, law enforcement by definition knows who the subject is. The pen register and trap and trace device, as defined by the statute, tell law enforcement what third parties the subject is communicating with. If the subject is communicating with law enforcement, that law enforcement agency does not need those devices to identify the subject. Here, the allegations are not that Defendants were trying to learn who Plaintiff was

communicating with or who was communicating with Plaintiff. Rather the allegations are that Defendants used devices to obtain Plaintiff's IP address and other undefined "personal information." (FAC, ¶ 97.) That does not fit the definitions in section 638.50.

The demurrer is sustained as to the first cause of action with leave to amend.

**B. Second Cause of Action (Section 631)**

The second cause of action alleges Defendants aided and abetted third parties to intercept Plaintiff's communications with Defendants in violation of section 631, subdivision (a)(1). (FAC, ¶¶ 104, 106.)

Defendants argue section 631 applies only to eavesdropping by a third party, and Defendants cannot eavesdrop on its own communications. (Demurrer at pp. 8-9.) That is not the point of the second cause of action, which alleges a violation of the fourth part of section 631, subdivision (a).

Defendants next argue the FAC does not allege Defendants obtained the contents of Plaintiff's communications. (Demurrer at p. 9.) Section 631, subdivision (a)(1) does not require that a defendant obtain the contents. The fourth part makes it unlawful to aid a third party to read or attempt to read or learn the contents of a plaintiff's communications. The FAC alleges Defendant aided "third party Session Reply code providers, such as HotJar, to intercept components of Plaintiff's . . . private electronic communications and transmissions," and thereby allowed third parties to access Plaintiff's "substantive communications, PII, and other data," including credit card information. (FAC, ¶¶ 104-106.) This is vague. The allegations do not identify the third parties, except for Hotjar, and do not state which specific third parties accessed what specific types of data. For example, the FAC does not allege that Defendants aided any specific third party in accessing Plaintiff's credit card information.

Nor do the allegations about session replay code allege that Defendant allowed third parties to obtain Plaintiff's information. The FAC alleges the Hotjar sessions reply code allowed Defendant "to record individual visitors' sessions, watch them in real-time, and collect and store[] the sessions recordings for watch-back." (FAC, ¶ 64.) The FAC does not allege that Defendant actually sent that information about individual visitors' sessions to any specific third party or

allowed any specific third party to access that information. If Defendant recorded that information for watch-back later, that does not allege a violation of the fourth part of section 631, subdivision (a)(1).

The demurrer is sustained with leave to amend.

**C. <u>Third Cause of Action (Invasion of Privacy)</u>**

The third cause of action alleges Defendant violated the California Constitutional right to privacy by collecting Plaintiff's personal identifying information, location data, and communications. (FAC, ¶ 121.) The elements of a cause of action for violation of the constitutional right to privacy are: "(1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by defendant constituting a serious invasion of privacy." (*Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 39-40.)

Defendant argues Plaintiff had no reasonable expectation of privacy of activity on Defendant's website "because she was shopping online." (Demurrer at p. 11.) Defendant cites *In re Google Location History Litigation* (N.D. Cal. 2019) 428 F.Supp.3d 185, 198 and *Cousin v. Sharp Healthcare* (S.D. Cal. 2023) 681 F.Supp.3d 1117, 1124. The court in *Cousin* held that data obtained from browsing activity on a public website did not constitute sensitive health information because the information available on the website was general and publicly available. (*Cousins, supra,* 681 F.Supp.3d at p. 1123.) In *Google Location History Litigation*, the court held that the constitutional right of privacy is limited to "bodily autonomy" and did not extend to "geolocation information" collected by the defendant. (*Google, supra*, 428 F.Supp.3d at p. 198.)

The FAC alleges in vague terms that Defendant allowed third parties to obtain Plaintiff's personal identifying information, location data, and communications. (See, e.g., FAC, ¶ 121.) This is too vague and does not allege a serious invasion of privacy.

Plaintiff argues the FAC alleges Defendant allowed third parties to obtain Plaintiff's name, addresses, phone numbers, IP addresses, credit card information, and every other websites Plaintiff used, including healthcare sites she visited. (Opposition at p. 14.) Plaintiff points to paragraphs 2, 3, 4, and 49-79 of the FAC. (*Ibid.*) These paragraphs allege that various tracking cookies can function in various ways. These paragraphs do not allege that Defendant allowed or placed

tracking cookies that transmitted to third parties information about Plaintiff's name, addresses, phone numbers, IP addresses, credit card information, and every other website Plaintiff used. Instead, the paragraphs vaguely allege the tracking cookies "track[] user sessions," "track user engagement," "collect information on the user's behavior," "track[] individual sessions," "record individual visitor's sessions," "collect[] data on visitor behavior," "record[] and store[] individual visitors' sessions," "harvest[] user data," and "track[] a user's interactions with a website." (FAC, ¶¶ 51, 54, 56, 61, 64, 66, 69, 73, 76.)

To the extent Plaintiff is arguing Defendants violated her privacy simply by capturing her information, even if Defendants did not allow third parties to access that information, Plaintiff failed to allege a serious invasion of privacy. By shopping on a website, Plaintiff had to disclose her information to pay for the product and have it shipped to her. Plaintiff cites no law that such information in such a context is protected by the California Constitution.

The demurrer to the third cause of action is sustained with leave to amend.

**D. <u>Class Allegations</u>**

Defendant argues Plaintiff's class allegations are boilerplate and do not contain enough specific facts. (Demurrer at pp. 12-13.) At the beginning of a case before discovery has occurred, a plaintiff may not be able to allege specifics about the class. The allegations are sufficient at this stage. The demurrer is overruled.

## II. MOTION TO STRIKE

**A. <u>Punitive Damages</u>**

Defendants move to strike the request for punitive damages because the FAC does not allege facts showing oppression, fraud or malice. (Motion at p. 3.) Plaintiff argues the alleged facts show Defendant installed spyware that transmitted Plaintiff's data to third parties and allowed third parties to track her online activity. (Opposition at p. 3.)

The FAC alleges in conclusory fashion that Defendants knowingly violated Plaintiff's rights and acted with oppression and malice. (FAC, ¶ 125.) That is not sufficient. The motion is granted as to punitive damages.

**B. Attorney Fees**

Defendants argue Plaintiff has not alleged any statutory basis to recover attorney fees. (Motion at pp. 3-4.) Plaintiff argues she can obtain attorney fees under Code of Civil Procedure section 1021.5. (Opposition at p. 4.) However, the FAC does not allege the right to attorney fees under that section. The motion is granted as to attorney fees.

The demurrer is SUSTAINED with 30 days leave to amend. The motion to strike is GRANTED with 30 days leave to amend

Dated: 4/17/2025

Laura Seigle

LAURA A. SEIGLE
JUDGE OF THE SUPERIOR COURT

# EXHIBIT "B"

LEGISLATIVE COUNSEL BUREAU
STATE OF CALIFORNIA
AUTHENTICATED
ELECTRONIC LEGAL MATERIAL

## Assembly Bill No. 929

CHAPTER 204

An act to add Sections 638.50, 638.51, 638.52, and 638.53 to the Penal Code, relating to privacy.

[Approved by Governor August 13, 2015. Filed with Secretary of State August 13, 2015.]

LEGISLATIVE COUNSEL'S DIGEST

AB 929, Chau. Pen registers: authorized use.

Existing law authorizes the Attorney General or a district attorney to make a written application to a judge of a superior court for an order permitting the interception of wire communication and electronic communication, as defined. Existing law permits an application to be made informally and granted orally if an emergency situation exists, and other factors are present. Existing law conditions the granting of an oral approval on the filing of a written application by midnight of the second full court day after the oral approval is made. Existing law prohibits a communication interception from lasting for longer than 30 days. Existing law permits an extension of the original order, not to exceed 30 days, upon a showing that there is continued probable cause that the information sought is likely to be obtained under the extension.

This bill would prohibit a person, other than a provider of electronic or wire communication service for specified purposes, from installing or using a pen register or a trap and trace device, as defined. The bill would authorize a peace officer to make a written application to a magistrate for an order permitting the installation and use of a pen register or a trap and trace device. The bill would require the magistrate to enter an ex parte order authorizing the installation and use of a pen register or a trap and trace device only in specified circumstances and would permit the magistrate to question the peace officer pertaining to the need for the information. The bill would also permit an application to be made informally and granted orally if an emergency situation exists, and other factors are present. The bill would condition the grant of an oral approval on the filing of a written application by midnight of the second full court day after the pen register or trap and trace device is installed. The bill would prohibit the installation and use of a pen register or trap and trace device for longer than 60 days. The bill would permit an extension of the original order, not to exceed 60 days, upon a showing that there is continued probable cause that the information sought is likely to be obtained under the extension. The bill would clarify that any location information obtained by a pen register or a track and trace device is limited to the information that can be determined from the telephone number.

The bill would make the prohibited installation or use of a pen register or a trap and trace device punishable by a fine not exceeding $2,500, or by imprisonment in the county jail not exceeding 1 year, or by imprisonment in state prison for offenders with specified prior convictions, or by both that fine and imprisonment. By creating a new crime, the bill would impose a state-mandated local program.

The California Constitution requires the state to reimburse local agencies and school districts for certain costs mandated by the state. Statutory provisions establish procedures for making that reimbursement.

This bill would provide that no reimbursement is required by this act for a specified reason.

*The people of the State of California do enact as follows:*

SECTION 1. Section 638.50 is added to the Penal Code, to read:

638.50. For purposes of this chapter, the following terms have the following meanings:

(a) "Wire communication" and "electronic communication" have the meanings set forth in subdivision (a) of Section 629.51.

(b) "Pen register" means a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication. "Pen register" does not include a device or process used by a provider or customer of a wire or electronic communication service for billing, or recording as an incident to billing, for communications services provided by such provider, or a device or process used by a provider or customer of a wire communication service for cost accounting or other similar purposes in the ordinary course of its business.

(c) "Trap and trace device" means a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication.

SEC. 2. Section 638.51 is added to the Penal Code, to read:

638.51. (a) Except as provided in subdivision (b), a person may not install or use a pen register or a trap and trace device without first obtaining a court order pursuant to Section 638.52 or 638.53.

(b) A provider of electronic or wire communication service may use a pen register or a trap and trace device for any of the following purposes:

(1) To operate, maintain, and test a wire or electronic communication service.

(2) To protect the rights or property of the provider.

(3) To protect users of the service from abuse of service or unlawful use of service.

(4) To record the fact that a wire or electronic communication was initiated or completed to protect the provider, another provider furnishing service toward the completion of the wire communication, or a user of that service, from fraudulent, unlawful, or abusive use of service.

(5) If the consent of the user of that service has been obtained.

(c) A violation of this section is punishable by a fine not exceeding two thousand five hundred dollars ($2,500), or by imprisonment in the county jail not exceeding one year, or by imprisonment pursuant to subdivision (h) of Section 1170, or by both that fine and imprisonment.

(d) A good faith reliance on an order issued pursuant to Section 638.52, or an authorization made pursuant to Section 638.53, is a complete defense to a civil or criminal action brought under this section or under this chapter.

SEC. 3. Section 638.52 is added to the Penal Code, to read:

638.52. (a) A peace officer may make an application to a magistrate for an order or an extension of an order authorizing or approving the installation and use of a pen register or a trap and trace device. The application shall be in writing under oath or equivalent affirmation, and shall include the identity of the peace officer making the application and the identity of the law enforcement agency conducting the investigation. The applicant shall certify that the information likely to be obtained is relevant to an ongoing criminal investigation and shall include a statement of the offense to which the information likely to be obtained by the pen register or trap and trace device relates.

(b) The magistrate shall enter an ex parte order authorizing the installation and use of a pen register or a trap and trace device if he or she finds that the information likely to be obtained by the installation and use of a pen register or a trap and trace device is relevant to an ongoing investigation and that there is probable cause to believe that the pen register or trap and trace device will lead to any of the following:

(1) Recovery of stolen or embezzled property.

(2) Property or things used as the means of committing a felony.

(3) Property or things in the possession of a person with the intent to use them as a means of committing a public offense, or in the possession of another to whom he or she may have delivered them for the purpose of concealing them or preventing them from being discovered.

(4) Evidence that tends to show a felony has been committed, or tends to show that a particular person has committed or is committing a felony.

(5) Evidence that tends to show that sexual exploitation of a child, in violation of Section 311.3, or possession of matter depicting sexual conduct of a person under 18 years of age, in violation of Section 311.11, has occurred or is occurring.

(6) The location of a person who is unlawfully restrained or reasonably believed to be a witness in a criminal investigation or for whose arrest there is probable cause.

(7) Evidence that tends to show a violation of Section 3700.5 of the Labor Code, or tends to show that a particular person has violated Section 3700.5 of the Labor Code.

(8) Evidence that does any of the following:

(A) Tends to show that a felony, a misdemeanor violation of the Fish and Game Code, or a misdemeanor violation of the Public Resources Code, has been committed or is being committed.

(B) Tends to show that a particular person has committed or is committing a felony, a misdemeanor violation of the Fish and Game Code, or a misdemeanor violation of the Public Resources Code.

(C) Will assist in locating an individual who has committed or is committing a felony, a misdemeanor violation of the Fish and Game Code, or a misdemeanor violation of the Public Resources Code.

(c) Information acquired solely pursuant to the authority for a pen register or a trap and trace device shall not include any information that may disclose the physical location of the subscriber, except to the extent that the location may be determined from the telephone number. Upon the request of the person seeking the pen register or trap and trace device, the magistrate may seal portions of the application pursuant to People v. Hobbs (1994) 7 Cal.4th 948, and Sections 1040, 1041, and 1042 of the Evidence Code.

(d) An order issued pursuant to subdivision (b) shall specify all of the following:

(1) The identity, if known, of the person to whom is leased or in whose name is listed the telephone line to which the pen register or trap and trace device is to be attached.

(2) The identity, if known, of the person who is the subject of the criminal investigation.

(3) The number and, if known, physical location of the telephone line to which the pen register or trap and trace device is to be attached and, in the case of a trap and trace device, the geographic limits of the trap and trace order.

(4) A statement of the offense to which the information likely to be obtained by the pen register or trap and trace device relates.

(5) The order shall direct, if the applicant has requested, the furnishing of information, facilities, and technical assistance necessary to accomplish the installation of the pen register or trap and trace device.

(e) An order issued under this section shall authorize the installation and use of a pen register or a trap and trace device for a period not to exceed 60 days.

(f) Extensions of the original order may be granted upon a new application for an order under subdivisions (a) and (b) if the officer shows that there is a continued probable cause that the information or items sought under this subdivision are likely to be obtained under the extension. The period of an extension shall not exceed 60 days.

(g) An order or extension order authorizing or approving the installation and use of a pen register or a trap and trace device shall direct that the order be sealed until otherwise ordered by the magistrate who issued the order, or a judge of the superior court, and that the person owning or leasing the line to which the pen register or trap and trace device is attached, or who has been ordered by the court to provide assistance to the applicant, not

disclose the existence of the pen register or trap and trace device or the existence of the investigation to the listed subscriber or to any other person, unless or until otherwise ordered by the magistrate or a judge of the superior court, or for compliance with Sections 1054.1 and 1054.7.

(h) Upon the presentation of an order, entered under subdivisions (b) or (f), by a peace officer authorized to install and use a pen register, a provider of wire or electronic communication service, landlord, custodian, or other person shall immediately provide the peace officer all information, facilities, and technical assistance necessary to accomplish the installation of the pen register unobtrusively and with a minimum of interference with the services provided to the party with respect to whom the installation and use is to take place, if the assistance is directed by the order.

(i) Upon the request of a peace officer authorized to receive the results of a trap and trace device, a provider of a wire or electronic communication service, landlord, custodian, or other person shall immediately install the device on the appropriate line and provide the peace officer all information, facilities, and technical assistance, including installation and operation of the device unobtrusively and with a minimum of interference with the services provided to the party with respect to whom the installation and use is to take place, if the installation and assistance is directed by the order.

(j) Unless otherwise ordered by the magistrate, the results of the pen register or trap and trace device shall be provided to the peace officer at reasonable intervals during regular business hours for the duration of the order.

(k) The magistrate, before issuing the order pursuant to subdivision (b), may examine on oath the person seeking the pen register or the trap and trace device, and any witnesses the person may produce, and shall take his or her affidavit or their affidavits in writing, and cause the affidavit or affidavits to be subscribed by the parties making them.

SEC. 4. Section 638.53 is added to the Penal Code, to read:

638.53. (a) Except as otherwise provided in this chapter, upon an oral application by a peace officer, a magistrate may grant oral approval for the installation and use of a pen register or a trap and trace device, without an order, if he or she determines all of the following:

(1) There are grounds upon which an order could be issued under Section 638.52.

(2) There is probable cause to believe that an emergency situation exists with respect to the investigation of a crime.

(3) There is probable cause to believe that a substantial danger to life or limb exists justifying the authorization for immediate installation and use of a pen register or a trap and trace device before an order authorizing the installation and use can, with due diligence, be submitted and acted upon.

(b) (1) By midnight of the second full court day after the pen register or trap and trace device is installed, a written application pursuant to Section 638.52 shall be submitted by the peace officer who made the oral application to the magistrate who orally approved the installation and use of a pen register or trap and trace device. If an order is issued pursuant to Section

638.52, the order shall also recite the time of the oral approval under subdivision (a) and shall be retroactive to the time of the original oral approval.

(2) In the absence of an authorizing order pursuant to paragraph (1), the use shall immediately terminate when the information sought is obtained, when the application for the order is denied, or by midnight of the second full court day after the pen register or trap and trace device is installed, whichever is earlier.

(c) A provider of a wire or electronic communication service, landlord, custodian, or other person who provides facilities or technical assistance pursuant to this section shall be reasonably compensated by the requesting peace officer's law enforcement agency for the reasonable expenses incurred in providing the facilities and assistance.

SEC. 5. No reimbursement is required by this act pursuant to Section 6 of Article XIII B of the California Constitution because the only costs that may be incurred by a local agency or school district will be incurred because this act creates a new crime or infraction, eliminates a crime or infraction, or changes the penalty for a crime or infraction, within the meaning of Section 17556 of the Government Code, or changes the definition of a crime within the meaning of Section 6 of Article XIII B of the California Constitution.

O

# EXHIBIT “C”

STATE OF CALIFORNIA
LEGISLATIVE COUNSEL BUREAU
AUTHENTICATED
ELECTRONIC LEGAL MATERIAL

# Assembly Bill No. 1242

## CHAPTER 627

An act to amend Sections 629.51, 629.52, 638.50, 638.52, 1269b, 1524, 1524.2, and 1551 of, and to add Sections 1546.5 and 13778.2 to, the Penal Code, relating to reproductive rights, and declaring the urgency thereof, to take effect immediately.

[Approved by Governor September 27, 2022. Filed with Secretary of State September 27, 2022.]

LEGISLATIVE COUNSEL'S DIGEST

AB 1242, Bauer-Kahan. Reproductive rights.

(1) Existing law authorizes a judge to enter an ex parte order authorizing interception of wire or electronic communications within the territorial jurisdiction of the court. Existing law also authorizes a peace officer to apply for, and a magistrate to issue, an order, or extension of an order, authorizing or approving the installation and use of a pen register or trap and trace device.

This bill would prohibit the issuance of an ex parte order authorizing interception of wire or other electronic communication or an order, or extension of an order, authorizing or approving the installation and use of a pen register or trap and trace device for the purpose of investigating or recovering evidence of a prohibited violation. The bill would define "prohibited violation" for this purpose as a violation of a law that creates liability for, or arising out of, either providing, facilitating, or obtaining an abortion or intending or attempting to provide, facilitate, or obtain an abortion that is lawful under California law.

Existing law provides for the issuance of a search warrant upon specified grounds.

This bill would prohibit the issuance of a search warrant for any item or items that pertain to an investigation into a prohibited violation.

Existing law requires a California corporation that provides electronic communication services or remote computing services to the general public to comply with a warrant issued by another state to produce records that would reveal the identity of the customers using those services, data stored by, or on behalf of, the customer, the customer's usage of those services, the recipient or destination of communications sent to or from those customers, or the content of those communications as if that warrant had been issued by a California court.

This bill would require an out-of-state warrant for the records listed above to include an attestation that the evidence sought is not related to an investigation into, or enforcement of, a prohibited violation. The bill would prohibit the production of records by a California corporation when the

corporation knows or should know that the warrant relates to an investigation into, or enforcement of, a prohibited violation.

(2) Existing law includes a declaration of the Legislature that every individual possesses a fundamental right of privacy with respect to reproductive decisions, including the fundamental right to choose to bear a child or obtain an abortion. Existing law prohibits the state from denying or interfering with a woman's fundamental right to choose to bear a child or obtain an abortion prior to viability of the fetus, as defined, or when necessary to protect her life or health.

Existing law, the Reproductive Rights Law Enforcement Act, requires the Attorney General to carry out certain functions relating to anti-reproductive-rights crimes in consultation with, among others, subject matter experts. Existing law requires all law enforcement agencies to develop, adopt, and implement written policies and standards for responding to anti-reproductive-rights calls by January 1, 2023.

This bill would prohibit a state or local law enforcement agency or officer from knowingly arresting or knowingly participating in the arrest of any person for performing, supporting, or aiding in the performance of an abortion or for obtaining an abortion, if the abortion is lawful in this state. The bill would prohibit a state or local public agency from cooperating with or providing information to an individual or agency from another state or a federal law enforcement agency, as specified, regarding a lawful abortion. The bill would prohibit specified persons, including a judicial officer, court employee, an authorized attorney, among others, from issuing a subpoena in connection with a proceeding in another state regarding an individual performing, supporting, or aiding in the performance of an abortion in this state, or an individual obtaining an abortion in this state, if the abortion is lawful in this state. The bill would not prohibit the investigation of criminal activity that may involve an abortion, provided that no information relating to any medical procedure performed on a specific individual may be shared with an agency or individual from another state for the purpose of enforcing another state's abortion law.

(3) Existing law requires superior court judges in each county to prepare, adopt, and annually revise a uniform countywide schedule of bail for all bailable offenses, as specified. Existing law requires a bail schedule to contain a list of the offenses and amounts of bail applicable for each, as well as a general clause for designated amounts of bail for all offenses not specifically listed in the schedule.

This bill would require a uniform countywide schedule of bail to set $0 bail for an individual who has been arrested in connection with a proceeding in another state regarding and individual performing, supporting, or aiding in the performance of an abortion in this state, or an individual obtaining an abortion in this state, if the abortion is protected, as specified.

Existing law requires the Governor to recognize a demand for extradition of a person if the demand meets specified requirements. Existing law requires a magistrate, upon the filing of a verified complaint, to issue a warrant directed to any peace officer commanding the officer to apprehend an

individual in this state who is convicted, or has violated the terms of bail, probation, or parole, or who is charged with a crime, in another state and who is believed to be in this state.

This bill would require, within 24 hours of the filing of a verified complaint, the filing agency to electronically transmit to the Attorney General a complete copy of the verified complaint, the out-of-state indictment, information, complaint, or judgment, out-of-state warrant, and the affidavit upon which the out-of-state warrant was issued.

(4) Existing law, the Electronic Communications Privacy Act, determines how governmental entities may access information on electronic devices and from electronic communication service providers, as defined.

This bill would prohibit a California corporation or a corporation whose principal executive offices are located in California that provides electronic communication services from providing records, information, facilities, or assistance in accordance with the terms of a warrant, court order, subpoena, wiretap order, pen register trap and trace order, or other legal process issued by, or pursuant to, the procedures of another state or a political subdivision thereof that relates to an investigation into, or enforcement of, a prohibited violation. The bill would authorize the Attorney General to commence a civil action to compel compliance with the above provisions, but would only impose civil liability if the corporation knew or should have known that the warrant, court order, subpoena, wiretap order, pen register trap and trace order, or other legal process relates to an investigation into or enforcement of a prohibited violation.

(5) The bill would state that its provisions are severable.

(6) This bill would declare that it is to take effect immediately as an urgency statute.

*The people of the State of California do enact as follows:*

SECTION 1. The Legislature finds and declares all of the following:

(a) Existing law provides that every individual possesses a fundamental right of privacy with respect to their personal reproductive decisions.

(b) Accordingly, it is the public policy of the State of California that a corporation that is headquartered or incorporated in California that provides electronic communications services shall not provide records, information, facilities, or assistance in response to legal process issued by, or pursuant to, the procedures of another state or a subdivision thereof to investigate or enforce any violation, the investigation or enforcement of which would implicate the fundamental right of privacy with respect to personal reproductive decisions.

(c) California also has the sovereign power to determine whether to give legal effect to legal process in California.

SEC. 2. Section 629.51 of the Penal Code is amended to read:

629.51. (a) For the purposes of this chapter, the following terms have the following meanings:

(1) "Wire communication" means any aural transfer made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection between the point of origin and the point of reception (including the use of a like connection in a switching station), furnished or operated by any person engaged in providing or operating these facilities for the transmission of communications.

(2) "Electronic communication" means any transfer of signs, signals, writings, images, sounds, data, or intelligence of any nature in whole or in part by a wire, radio, electromagnetic, photoelectric, or photo-optical system, but does not include any of the following:

(A) Any wire communication defined in paragraph (1).

(B) Any communication made through a tone-only paging device.

(C) Any communication from a tracking device.

(D) Electronic funds transfer information stored by a financial institution in a communications system used for the electronic storage and transfer of funds.

(3) "Tracking device" means an electronic or mechanical device that permits the tracking of the movement of a person or object.

(4) "Aural transfer" means a transfer containing the human voice at any point between and including the point of origin and the point of reception.

(5) (A) "Prohibited violation" means any violation of law that creates liability for, or arising out of, either of the following:

(i) Providing, facilitating, or obtaining an abortion that is lawful under California law.

(ii) Intending or attempting to provide, facilitate, or obtain an abortion that is lawful under California law.

(B) As used in this paragraph, "facilitating" or "facilitate" means assisting, directly or indirectly in any way, with the obtaining of an abortion that is lawful under California law.

(b) This chapter applies to the interceptions of wire and electronic communications. It does not apply to stored communications or stored content.

(c) The act that added this subdivision is not intended to change the law as to stored communications or stored content.

SEC. 3. Section 629.52 of the Penal Code is amended to read:

629.52. Upon application made under Section 629.50, the judge may enter an ex parte order, as requested or modified, authorizing interception of wire or electronic communications initially intercepted within the territorial jurisdiction of the court in which the judge is sitting, if the judge determines, on the basis of the facts submitted by the applicant, all of the following:

(a) There is probable cause to believe that an individual is committing, has committed, or is about to commit, one of the following offenses:

(1) Importation, possession for sale, transportation, manufacture, or sale of controlled substances in violation of Section 11351, 11351.5, 11352, 11370.6, 11378, 11378.5, 11379, 11379.5, or 11379.6 of the Health and Safety Code with respect to a substance containing heroin, cocaine, PCP,

methamphetamine, fentanyl, or their precursors or analogs where the substance exceeds 10 gallons by liquid volume or three pounds of solid substance by weight.

(2) Murder, solicitation to commit murder, a violation of Section 209, or the commission of a felony involving a destructive device in violation of Section 18710, 18715, 18720, 18725, 18730, 18740, 18745, 18750, or 18755.

(3) A felony violation of Section 186.22.

(4) A felony violation of Section 11418, relating to weapons of mass destruction, Section 11418.5, relating to threats to use weapons of mass destruction, or Section 11419, relating to restricted biological agents.

(5) A violation of Section 236.1.

(6) An attempt or conspiracy to commit any of the above-mentioned crimes.

(b) There is probable cause to believe that particular communications concerning the illegal activities will be obtained through that interception, including, but not limited to, communications that may be utilized for locating or rescuing a kidnap victim.

(c) There is probable cause to believe that the facilities from which, or the place where, the wire or electronic communications are to be intercepted are being used, or are about to be used, in connection with the commission of the offense, or are leased to, listed in the name of, or commonly used by the person whose communications are to be intercepted.

(d) Normal investigative procedures have been tried and have failed or reasonably appear either unlikely to succeed if tried or too dangerous.

(e) Notwithstanding any other provision in this section, no magistrate shall enter an ex parte order authorizing interception of wire or electronic communications for the purpose of investigating or recovering evidence of a prohibited violation, as defined in Section 629.51.

SEC. 4. Section 638.50 of the Penal Code is amended to read:

638.50. For purposes of this chapter, the following terms have the following meanings:

(a) "Wire communication" and "electronic communication" have the meanings set forth in subdivision (a) of Section 629.51.

(b) "Pen register" means a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication. "Pen register" does not include a device or process used by a provider or customer of a wire or electronic communication service for billing, or recording as an incident to billing, for communications services provided by such provider, or a device or process used by a provider or customer of a wire communication service for cost accounting or other similar purposes in the ordinary course of its business.

(c) "Trap and trace device" means a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably

likely to identify the source of a wire or electronic communication, but not the contents of a communication.

(d) "Prohibited violation" has the same meaning as that term is defined in Section 629.51.

SEC. 5. Section 638.52 of the Penal Code is amended to read:

638.52. (a) A peace officer may make an application to a magistrate for an order or an extension of an order authorizing or approving the installation and use of a pen register or a trap and trace device. The application shall be in writing under oath or equivalent affirmation, and shall include the identity of the peace officer making the application and the identity of the law enforcement agency conducting the investigation. The applicant shall certify that the information likely to be obtained is relevant to an ongoing criminal investigation and shall include a statement of the offense to which the information likely to be obtained by the pen register or trap and trace device relates.

(b) The magistrate shall enter an ex parte order authorizing the installation and use of a pen register or a trap and trace device if the magistrate finds that the information likely to be obtained by the installation and use of a pen register or a trap and trace device is relevant to an ongoing investigation and that there is probable cause to believe that the pen register or trap and trace device will lead to any of the following:

(1) Recovery of stolen or embezzled property.

(2) Property or things used as the means of committing a felony.

(3) Property or things in the possession of a person with the intent to use them as a means of committing a public offense, or in the possession of another to whom they may have delivered them for the purpose of concealing them or preventing them from being discovered.

(4) Evidence that tends to show a felony has been committed, or tends to show that a particular person has committed or is committing a felony.

(5) Evidence that tends to show that sexual exploitation of a child, in violation of Section 311.3, or possession of matter depicting sexual conduct of a person under 18 years of age, in violation of Section 311.11, has occurred or is occurring.

(6) The location of a person who is unlawfully restrained or reasonably believed to be a witness in a criminal investigation or for whose arrest there is probable cause.

(7) Evidence that tends to show a violation of Section 3700.5 of the Labor Code, or tends to show that a particular person has violated Section 3700.5 of the Labor Code.

(8) Evidence that does any of the following:

(A) Tends to show that a felony, a misdemeanor violation of the Fish and Game Code, or a misdemeanor violation of the Public Resources Code, has been committed or is being committed.

(B) Tends to show that a particular person has committed or is committing a felony, a misdemeanor violation of the Fish and Game Code, or a misdemeanor violation of the Public Resources Code.

(C) Will assist in locating an individual who has committed or is committing a felony, a misdemeanor violation of the Fish and Game Code, or a misdemeanor violation of the Public Resources Code.

(c) Information acquired solely pursuant to the authority for a pen register or a trap and trace device shall not include any information that may disclose the physical location of the subscriber, except to the extent that the location may be determined from the telephone number. Upon the request of the person seeking the pen register or trap and trace device, the magistrate may seal portions of the application pursuant to People v. Hobbs (1994) 7 Cal.4th 948, and Sections 1040, 1041, and 1042 of the Evidence Code.

(d) An order issued pursuant to subdivision (b) shall specify all of the following:

(1) The identity, if known, of the person to whom is leased or in whose name is listed the telephone line to which the pen register or trap and trace device is to be attached.

(2) The identity, if known, of the person who is the subject of the criminal investigation.

(3) The number and, if known, physical location of the telephone line to which the pen register or trap and trace device is to be attached and, in the case of a trap and trace device, the geographic limits of the trap and trace order.

(4) A statement of the offense to which the information likely to be obtained by the pen register or trap and trace device relates.

(5) The order shall direct, if the applicant has requested, the furnishing of information, facilities, and technical assistance necessary to accomplish the installation of the pen register or trap and trace device.

(e) An order issued under this section shall authorize the installation and use of a pen register or a trap and trace device for a period not to exceed 60 days.

(f) Extensions of the original order may be granted upon a new application for an order under subdivisions (a) and (b) if the officer shows that there is a continued probable cause that the information or items sought under this subdivision are likely to be obtained under the extension. The period of an extension shall not exceed 60 days.

(g) An order or extension order authorizing or approving the installation and use of a pen register or a trap and trace device shall direct that the order be sealed until the order, including any extensions, expires, and that the person owning or leasing the line to which the pen register or trap and trace device is attached not disclose the existence of the pen register or trap and trace device or the existence of the investigation to the listed subscriber or to any other person.

(h) Upon the presentation of an order, entered under subdivisions (b) or (f), by a peace officer authorized to install and use a pen register, a provider of wire or electronic communication service, landlord, custodian, or other person shall immediately provide the peace officer all information, facilities, and technical assistance necessary to accomplish the installation of the pen register unobtrusively and with a minimum of interference with the services

provided to the party with respect to whom the installation and use is to take place, if the assistance is directed by the order.

(i) Upon the request of a peace officer authorized to receive the results of a trap and trace device, a provider of a wire or electronic communication service, landlord, custodian, or other person shall immediately install the device on the appropriate line and provide the peace officer all information, facilities, and technical assistance, including installation and operation of the device unobtrusively and with a minimum of interference with the services provided to the party with respect to whom the installation and use is to take place, if the installation and assistance is directed by the order.

(j) A provider of a wire or electronic communication service, landlord, custodian, or other person who provides facilities or technical assistance pursuant to this section shall be reasonably compensated by the requesting peace officer's law enforcement agency for the reasonable expenses incurred in providing the facilities and assistance.

(k) Unless otherwise ordered by the magistrate, the results of the pen register or trap and trace device shall be provided to the peace officer at reasonable intervals during regular business hours for the duration of the order.

(*l*) The magistrate, before issuing the order pursuant to subdivision (b), may examine on oath the person seeking the pen register or the trap and trace device, and any witnesses the person may produce, and shall take their affidavit or their affidavits in writing, and cause the affidavit or affidavits to be subscribed by the parties making them.

(m) Notwithstanding any other provision in this section, no magistrate shall enter an ex parte order authorizing the installation and use of a pen register or a trap and trace device for the purpose of investigating or recovering evidence of a prohibited violation, as defined in Section 629.51.

SEC. 6. Section 1269b of the Penal Code is amended to read:

1269b. (a) The officer in charge of a jail in which an arrested person is held in custody, an officer of a sheriff's department or police department of a city who is in charge of a jail or is employed at a fixed police or sheriff's facility and is acting under an agreement with the agency that keeps the jail in which an arrested person is held in custody, an employee of a sheriff's department or police department of a city who is assigned by the department to collect bail, the clerk of the superior court of the county in which the offense was alleged to have been committed, and the clerk of the superior court in which the case against the defendant is pending may approve and accept bail in the amount fixed by the warrant of arrest, schedule of bail, or order admitting to bail in cash or surety bond executed by a certified, admitted surety insurer as provided in the Insurance Code, to issue and sign an order for the release of the arrested person, and to set a time and place for the appearance of the arrested person before the appropriate court and give notice thereof.

(b) If a defendant has appeared before a judge of the court on the charge contained in the complaint, indictment, or information, the bail shall be in the amount fixed by the judge at the time of the appearance. If that

appearance has not been made, the bail shall be in the amount fixed in the warrant of arrest or, if no warrant of arrest has been issued, the amount of bail shall be pursuant to the uniform countywide schedule of bail for the county in which the defendant is required to appear, previously fixed and approved as provided in subdivisions (c) and (d).

(c) It is the duty of the superior court judges in each county to prepare, adopt, and annually revise a uniform countywide schedule of bail for all bailable felony offenses and for all misdemeanor and infraction offenses except Vehicle Code infractions. The penalty schedule for infraction violations of the Vehicle Code shall be established by the Judicial Council in accordance with Section 40310 of the Vehicle Code.

(d) A court may, by local rule, prescribe the procedure by which the uniform countywide schedule of bail is prepared, adopted, and annually revised by the judges. If a court does not adopt a local rule, the uniform countywide schedule of bail shall be prepared, adopted, and annually revised by a majority of the judges.

(e) In adopting a uniform countywide schedule of bail for all bailable felony offenses the judges shall consider the seriousness of the offense charged. In considering the seriousness of the offense charged the judges shall assign an additional amount of required bail for each aggravating or enhancing factor chargeable in the complaint, including, but not limited to, additional bail for charges alleging facts that would bring a person within any of the following sections: Section 667.5, 667.51, 667.6, 667.8, 667.85, 667.9, 667.10, 12022, 12022.1, 12022.2, 12022.3, 12022.4, 12022.5, 12022.53, 12022.6, 12022.7, 12022.8, or 12022.9 of this code, or Section 11356.5, 11370.2, or 11370.4 of the Health and Safety Code.

In considering offenses in which a violation of Chapter 6 (commencing with Section 11350) of Division 10 of the Health and Safety Code is alleged, the judge shall assign an additional amount of required bail for offenses involving large quantities of controlled substances.

(f) (1) The countywide bail schedule shall contain a list of the offenses and the amounts of bail applicable for each as the judges determine to be appropriate. If the schedule does not list all offenses specifically, it shall contain a general clause for designated amounts of bail as the judges of the county determine to be appropriate for all the offenses not specifically listed in the schedule. A copy of the countywide bail schedule shall be sent to the officer in charge of the county jail, to the officer in charge of each city jail within the county, to each superior court judge and commissioner in the county, and to the Judicial Council.

(2) The countywide bail schedule shall set zero dollars ($0) bail for an individual who has been arrested in connection with a proceeding in another state regarding an individual performing, supporting, or aiding in the performance of an abortion in this state, or an individual obtaining an abortion in this state, if the abortion is lawful under the laws of this state.

(g) Upon posting bail, the defendant or arrested person shall be discharged from custody as to the offense on which the bail is posted.

All money and surety bonds so deposited with an officer authorized to receive bail shall be transmitted immediately to the judge or clerk of the court by which the order was made or warrant issued or bail schedule fixed. If, in the case of felonies, an indictment is filed, the judge or clerk of the court shall transmit all of the money and surety bonds to the clerk of the court.

(h) If a defendant or arrested person so released fails to appear at the time and in the court so ordered upon their release from custody, Sections 1305 and 1306 apply.

SEC. 7. Section 1524 of the Penal Code is amended to read:

1524. (a) A search warrant may be issued upon any of the following grounds:

(1) When the property was stolen or embezzled.

(2) When the property or things were used as the means of committing a felony.

(3) When the property or things are in the possession of any person with the intent to use them as a means of committing a public offense, or in the possession of another to whom that person may have delivered them for the purpose of concealing them or preventing them from being discovered.

(4) When the property or things to be seized consist of an item or constitute evidence that tends to show a felony has been committed, or tends to show that a particular person has committed a felony.

(5) When the property or things to be seized consist of evidence that tends to show that sexual exploitation of a child, in violation of Section 311.3, or possession of matter depicting sexual conduct of a person under 18 years of age, in violation of Section 311.11, has occurred or is occurring.

(6) When there is a warrant to arrest a person.

(7) When a provider of electronic communication service or remote computing service has records or evidence, as specified in Section 1524.3, showing that property was stolen or embezzled constituting a misdemeanor, or that property or things are in the possession of any person with the intent to use them as a means of committing a misdemeanor public offense, or in the possession of another to whom that person may have delivered them for the purpose of concealing them or preventing their discovery.

(8) When the property or things to be seized include an item or evidence that tends to show a violation of Section 3700.5 of the Labor Code, or tends to show that a particular person has violated Section 3700.5 of the Labor Code.

(9) When the property or things to be seized include a firearm or other deadly weapon at the scene of, or at the premises occupied or under the control of the person arrested in connection with, a domestic violence incident involving a threat to human life or a physical assault as provided in Section 18250. This section does not affect warrantless seizures otherwise authorized by Section 18250.

(10) When the property or things to be seized include a firearm or other deadly weapon that is owned by, or in the possession of, or in the custody

or control of, a person described in subdivision (a) of Section 8102 of the Welfare and Institutions Code.

(11) When the property or things to be seized include a firearm that is owned by, or in the possession of, or in the custody or control of, a person who is subject to the prohibitions regarding firearms pursuant to Section 6389 of the Family Code, if a prohibited firearm is possessed, owned, in the custody of, or controlled by a person against whom a protective order has been issued pursuant to Section 6218 of the Family Code, the person has been lawfully served with that order, and the person has failed to relinquish the firearm as required by law.

(12) When the information to be received from the use of a tracking device constitutes evidence that tends to show that either a felony, a misdemeanor violation of the Fish and Game Code, or a misdemeanor violation of the Public Resources Code has been committed or is being committed, tends to show that a particular person has committed a felony, a misdemeanor violation of the Fish and Game Code, or a misdemeanor violation of the Public Resources Code, or is committing a felony, a misdemeanor violation of the Fish and Game Code, or a misdemeanor violation of the Public Resources Code, or will assist in locating an individual who has committed or is committing a felony, a misdemeanor violation of the Fish and Game Code, or a misdemeanor violation of the Public Resources Code. A tracking device search warrant issued pursuant to this paragraph shall be executed in a manner meeting the requirements specified in subdivision (b) of Section 1534.

(13) When a sample of the blood of a person constitutes evidence that tends to show a violation of Section 23140, 23152, or 23153 of the Vehicle Code and the person from whom the sample is being sought has refused an officer's request to submit to, or has failed to complete, a blood test as required by Section 23612 of the Vehicle Code, and the sample will be drawn from the person in a reasonable, medically approved manner. This paragraph is not intended to abrogate a court's mandate to determine the propriety of the issuance of a search warrant on a case-by-case basis.

(14) Beginning January 1, 2016, the property or things to be seized are firearms or ammunition or both that are owned by, in the possession of, or in the custody or control of a person who is the subject of a gun violence restraining order that has been issued pursuant to Division 3.2 (commencing with Section 18100) of Title 2 of Part 6, if a prohibited firearm or ammunition or both is possessed, owned, in the custody of, or controlled by a person against whom a gun violence restraining order has been issued, the person has been lawfully served with that order, and the person has failed to relinquish the firearm as required by law.

(15) Beginning January 1, 2018, the property or things to be seized include a firearm that is owned by, or in the possession of, or in the custody or control of, a person who is subject to the prohibitions regarding firearms pursuant to Section 29800 or 29805, and the court has made a finding pursuant to subdivision (c) of Section 29810 that the person has failed to relinquish the firearm as required by law.

(16) When the property or things to be seized are controlled substances or a device, contrivance, instrument, or paraphernalia used for unlawfully using or administering a controlled substance pursuant to the authority described in Section 11472 of the Health and Safety Code.

(17) (A) When all of the following apply:

(i) A sample of the blood of a person constitutes evidence that tends to show a violation of subdivision (b), (c), (d), (e), or (f) of Section 655 of the Harbors and Navigation Code.

(ii) The person from whom the sample is being sought has refused an officer's request to submit to, or has failed to complete, a blood test as required by Section 655.1 of the Harbors and Navigation Code.

(iii) The sample will be drawn from the person in a reasonable, medically approved manner.

(B) This paragraph is not intended to abrogate a court's mandate to determine the propriety of the issuance of a search warrant on a case-by-case basis.

(18) When the property or things to be seized consists of evidence that tends to show that a violation of paragraph (1), (2), or (3) of subdivision (j) of Section 647 has occurred or is occurring.

(19) (A) When the property or things to be seized are data, from a recording device installed by the manufacturer of a motor vehicle, that constitutes evidence that tends to show the commission of a felony or misdemeanor offense involving a motor vehicle, resulting in death or serious bodily injury to any person. The data accessed by a warrant pursuant to this paragraph shall not exceed the scope of the data that is directly related to the offense for which the warrant is issued.

(B) For the purposes of this paragraph, "recording device" has the same meaning as defined in subdivision (b) of Section 9951 of the Vehicle Code. The scope of the data accessible by a warrant issued pursuant to this paragraph shall be limited to the information described in subdivision (b) of Section 9951 of the Vehicle Code.

(C) For the purposes of this paragraph, "serious bodily injury" has the same meaning as defined in paragraph (4) of subdivision (f) of Section 243 of the Penal Code.

(20) When the property or things to be seized consists of evidence that tends to show that a violation of Section 647.9 has occurred or is occurring. Evidence to be seized pursuant to this paragraph shall be limited to evidence of a violation of Section 647.9 and shall not include evidence of a violation of a departmental rule or guideline that is not a public offense under California law.

(b) The property, things, person, or persons described in subdivision (a) may be taken on the warrant from any place, or from any person in whose possession the property or things may be.

(c) Notwithstanding subdivision (a) or (b), a search warrant shall not be issued for any documentary evidence in the possession or under the control of any person who is a lawyer as defined in Section 950 of the Evidence Code, a physician as defined in Section 990 of the Evidence Code, a

psychotherapist as defined in Section 1010 of the Evidence Code, or a member of the clergy as defined in Section 1030 of the Evidence Code, and who is not reasonably suspected of engaging or having engaged in criminal activity related to the documentary evidence for which a warrant is requested unless the following procedure has been complied with:

(1) At the time of the issuance of the warrant, the court shall appoint a special master in accordance with subdivision (d) to accompany the person who will serve the warrant. Upon service of the warrant, the special master shall inform the party served of the specific items being sought and that the party shall have the opportunity to provide the items requested. If the party, in the judgment of the special master, fails to provide the items requested, the special master shall conduct a search for the items in the areas indicated in the search warrant.

(2) (A) If the party who has been served states that an item or items should not be disclosed, they shall be sealed by the special master and taken to court for a hearing.

(B) At the hearing, the party searched shall be entitled to raise any issues that may be raised pursuant to Section 1538.5 as well as a claim that the item or items are privileged, as provided by law. The hearing shall be held in the superior court. The court shall provide sufficient time for the parties to obtain counsel and make motions or present evidence. The hearing shall be held within three days of the service of the warrant unless the court makes a finding that the expedited hearing is impracticable. In that case, the matter shall be heard at the earliest possible time.

(C) If an item or items are taken to court for a hearing, any limitations of time prescribed in Chapter 2 (commencing with Section 799) of Title 3 of Part 2 shall be tolled from the time of the seizure until the final conclusion of the hearing, including any associated writ or appellate proceedings.

(3) The warrant shall, whenever practicable, be served during normal business hours. In addition, the warrant shall be served upon a party who appears to have possession or control of the items sought. If, after reasonable efforts, the party serving the warrant is unable to locate the person, the special master shall seal and return to the court, for determination by the court, any item that appears to be privileged as provided by law.

(d) (1) As used in this section, a "special master" is an attorney who is a member in good standing of the California State Bar and who has been selected from a list of qualified attorneys that is maintained by the State Bar particularly for the purposes of conducting the searches described in this section. These attorneys shall serve without compensation. A special master shall be considered a public employee, and the governmental entity that caused the search warrant to be issued shall be considered the employer of the special master and the applicable public entity, for purposes of Division 3.6 (commencing with Section 810) of Title 1 of the Government Code, relating to claims and actions against public entities and public employees. In selecting the special master, the court shall make every reasonable effort to ensure that the person selected has no relationship with any of the parties involved in the pending matter. Information obtained by the special master

shall be confidential and may not be divulged except in direct response to inquiry by the court.

(2) In any case in which the magistrate determines that, after reasonable efforts have been made to obtain a special master, a special master is not available and would not be available within a reasonable period of time, the magistrate may direct the party seeking the order to conduct the search in the manner described in this section in lieu of the special master.

(e) Any search conducted pursuant to this section by a special master may be conducted in a manner that permits the party serving the warrant or that party's designee to accompany the special master as the special master conducts the search. However, that party or that party's designee may not participate in the search nor shall they examine any of the items being searched by the special master except upon agreement of the party upon whom the warrant has been served.

(f) As used in this section, "documentary evidence" includes, but is not limited to, writings, documents, blueprints, drawings, photographs, computer printouts, microfilms, x-rays, files, diagrams, ledgers, books, tapes, audio and video recordings, films, and papers of any type or description.

(g) No warrant shall issue for any item or items described in Section 1070 of the Evidence Code.

(h) No warrant shall issue for any item or items that pertain to an investigation into a prohibited violation, as defined in Section 629.51.

(i) Notwithstanding any other law, no claim of attorney work product as described in Chapter 4 (commencing with Section 2018.010) of Title 4 of Part 4 of the Code of Civil Procedure shall be sustained where there is probable cause to believe that the lawyer is engaging or has engaged in criminal activity related to the documentary evidence for which a warrant is requested unless it is established at the hearing with respect to the documentary evidence seized under the warrant that the services of the lawyer were not sought or obtained to enable or aid anyone to commit or plan to commit a crime or a fraud.

(j) Nothing in this section is intended to limit an attorney's ability to request an in-camera hearing pursuant to the holding of the Supreme Court of California in People v. Superior Court (Laff) (2001) 25 Cal.4th 703.

(k) In addition to any other circumstance permitting a magistrate to issue a warrant for a person or property in another county, when the property or things to be seized consist of any item or constitute evidence that tends to show a violation of Section 530.5, the magistrate may issue a warrant to search a person or property located in another county if the person whose identifying information was taken or used resides in the same county as the issuing court.

(*l*) This section shall not be construed to create a cause of action against any foreign or California corporation, its officers, employees, agents, or other specified persons for providing location information.

SEC. 8. Section 1524.2 of the Penal Code is amended to read:

1524.2. (a) As used in this section, the following terms have the following meanings:

(1) The terms "electronic communication services" and "remote computing services" shall be construed in accordance with the Electronic Communications Privacy Act of 1986 in Chapter 121 (commencing with Section 2701) of Part I of Title 18 of the United States Code. This section does not apply to corporations that do not provide those services to the general public.

(2) An "adverse result" occurs when notification of the existence of a search warrant results in:

(A) Danger to the life or physical safety of an individual.

(B) A flight from prosecution.

(C) The destruction of or tampering with evidence.

(D) The intimidation of potential witnesses.

(E) Serious jeopardy to an investigation or undue delay of a trial.

(3) "Applicant" refers to the peace officer to whom a search warrant is issued pursuant to subdivision (a) of Section 1528.

(4) "California corporation" refers to any corporation or other entity that is subject to Section 102 of the Corporations Code, excluding foreign corporations.

(5) "Foreign corporation" refers to any corporation that is qualified to do business in this state pursuant to Section 2105 of the Corporations Code.

(6) "Properly served" means that a search warrant has been delivered by hand, or in a manner reasonably allowing for proof of delivery if delivered by United States mail, overnight delivery service, or facsimile to a person or entity listed in Section 2110 of the Corporations Code, or any other means specified by the recipient of the search warrant, including email or submission via an internet web portal that the recipient has designated for the purpose of service of process.

(b) The following provisions apply to any search warrant issued pursuant to this chapter allowing a search for records that are in the actual or constructive possession of a foreign corporation that provides electronic communication services or remote computing services to the general public, where those records would reveal the identity of the customers using those services, data stored by, or on behalf of, the customer, the customer's usage of those services, the recipient or destination of communications sent to or from those customers, or the content of those communications.

(1) When properly served with a search warrant issued by the California court, a foreign corporation subject to this section shall provide to the applicant, all records sought pursuant to that warrant within five business days of receipt, including those records maintained or located outside this state.

(2) If the applicant makes a showing and the magistrate finds that failure to produce records within less than five business days would cause an adverse result, the warrant may require production of records within less than five business days. A court may reasonably extend the time required for production of the records upon finding that the foreign corporation has shown good cause for that extension and that an extension of time would not cause an adverse result.

(3) A foreign corporation seeking to quash the warrant must seek relief from the court that issued the warrant within the time required for production of records pursuant to this section. The issuing court shall hear and decide that motion no later than five court days after the motion is filed.

(4) The foreign corporation shall verify the authenticity of records that it produces by providing an affidavit that complies with the requirements set forth in Section 1561 of the Evidence Code. Those records shall be admissible in evidence as set forth in Section 1562 of the Evidence Code.

(c) (1) A California corporation that provides electronic communication services or remote computing services to the general public, when served with a warrant issued by another state to produce records that would reveal the identity of the customers using those services, data stored by, or on behalf of, the customer, the customer's usage of those services, the recipient or destination of communications sent to or from those customers, or the content of those communications, shall produce those records as if that warrant had been issued by a California court, but shall not produce records when the corporation knows or should know that the warrant relates to an investigation into, or enforcement of, a prohibited violation, as defined in Section 629.51.

(2) A California corporation shall not comply with subdivision (c) unless the warrant includes, or is accompanied by, an attestation that the evidence sought is not related to an investigation into, or enforcement of, a prohibited violation, as defined in Section 629.51.

(3) A California corporation served with a warrant described in paragraph (1) is entitled to rely on the representations made in an attestation described in paragraph (2) in determining whether the warrant relates to an investigation into, or enforcement of, a prohibited violation, as defined in Section 629.51.

(d) A cause of action shall not lie against any foreign or California corporation subject to this section, its officers, employees, agents, or other specified persons for providing records, information, facilities, or assistance in accordance with the terms of a warrant issued pursuant to this chapter.

SEC. 9. Section 1546.5 is added to the Penal Code, to read:

1546.5. (a) A California corporation or a corporation whose principal executive offices are located in California that provides electronic communications services shall not, in California, provide records, information, facilities, or assistance in accordance with the terms of a warrant, court order, subpoena, wiretap order, pen register trap and trace order, or other legal process issued by, or pursuant to, the procedures of another state or a political subdivision thereof that relates to an investigation into or enforcement of a prohibited violation, as defined in Section 629.51.

(b) The Attorney General may commence a civil action to compel any California corporation or a corporation whose principal executive offices are located in California that provides electronic communications services to comply with the provisions of this section.

(c) A California corporation or a corporation whose principal executive offices are located in California, and its officers, employees, and agents,

are not subject to any cause of action for providing records, information, facilities, or assistance in accordance with the terms of a warrant, court order, subpoena, wiretap order, pen register trap and trace order, or other legal process issued by, or pursuant to, the procedures of another state or a political subdivision thereof, except where the corporation knew or should have known that the warrant, court order, subpoena, wiretap order, pen register trap and trace order, or other legal process relates to an investigation into or enforcement of a prohibited violation, as defined in Section 629.51.

SEC. 10. Section 1551 of the Penal Code is amended to read:

1551. (a) Whenever any person within this State is charged by a verified complaint before any magistrate of this State with the commission of any crime in any other State, or, with having been convicted of a crime in that State and having escaped from confinement, or having violated the terms of their bail, probation or parole or whenever complaint is made before any magistrate in this State setting forth on the affidavit of any credible person in another State that a crime has been committed in such other State and that the accused has been charged in such State with the commission of the crime, or that the accused has been convicted of a crime in that State and has escaped from bail, probation or parole and is believed to be in this State; then the magistrate shall issue a warrant directed to any peace officer commanding the officer to apprehend the person named therein, wherever the individual may be found in this State, and to bring them before the same or any other magistrate who is available in or convenient of access to the place where the arrest is made. A certified copy of the sworn charge or complaint and affidavit upon which the warrant is issued shall be attached to the warrant.

(b) Within 24 hours of the filing of any verified complaint pursuant to this section, the filing agency shall transmit electronically to the Attorney General a complete copy of the verified complaint, the out-of-state indictment, information, complaint, or judgment, out-of-state warrant, and the affidavit upon which the out-of-state warrant was issued.

SEC. 11. Section 13778.2 is added to the Penal Code, to read:

13778.2. (a) A state or local law enforcement agency or officer shall not knowingly arrest or knowingly participate in the arrest of any person for performing, supporting, or aiding in the performance of an abortion in this state, or obtaining an abortion in this state, if the abortion is lawful under the laws of this state.

(b) A state or local public agency, or any employee thereof acting in their official capacity, shall not cooperate with or provide information to any individual or agency or department from another state or, to the extent permitted by federal law, to a federal law enforcement agency regarding an abortion that is lawful under the laws of this state and that is performed in this state.

(c) (1) A law of another state that authorizes the imposition of civil or criminal penalties related to an individual performing, supporting, or aiding in the performance of an abortion in this state, or an individual obtaining

an abortion in this state, if the abortion is lawful under the laws of this state, is against the public policy of this state.

(2) No state court, judicial officer, or court employee or clerk, or authorized attorney shall issue a subpoena pursuant to any state law in connection with a proceeding in another state regarding an individual performing, supporting, or aiding in the performance of an abortion in this state, or an individual obtaining an abortion in this state, if the abortion is lawful under the laws of this state.

(d) This section does not prohibit the investigation of any criminal activity in this state that may involve the performance of an abortion, provided that information relating to any medical procedure performed on a specific individual is not shared with an agency or individual from another state for the purpose of enforcing another state's abortion law.

SEC. 12. The provisions of this measure are severable. If any provision of this measure or its application is held invalid, that invalidity shall not affect other provisions or applications that can be given effect without the invalid provision or application.

SEC. 13. This act is an urgency statute necessary for the immediate preservation of the public peace, health, or safety within the meaning of Article IV of the California Constitution and shall go into immediate effect. The facts constituting the necessity are:

The impending United States Supreme Court decision overturning Roe v. Wade makes it necessary to protect California's health care providers and those seeking reproductive health care in California at the earliest time possible.

O