Eric A. Grover (SBN 136080)
eagrover@kellergrover.com
Rachael G. Jung (SBN 239323)
rjung@kellergrover.com
**KELLER GROVER LLP**
1965 Market Street
San Francisco, California 94103
Telephone: (415) 543-1305
Facsimile: (415) 543-7861

Scot Bernstein (SBN 94915)
swampadero@sbernsteinlaw.com
**LAW OFFICES OF SCOT D. BERNSTEIN, A PROFESSIONAL CORPORATION**
101 Parkshore Drive, Suite 100
Folsom, California 95630
Telephone: (916) 447-0100
Facsimile: (916) 933-5533

*Attorneys for Plaintiffs*
Saber Khamooshi, Ryan Wu, and Brian Carolus

Timothy D. Cohelan (SBN 60827)
tcohelan@ckslaw.com
Isam C. Khoury (SBN 58759)
ikhoury@ckslaw.com
**COHELAN KHOURY & SINGER**
605 C Street, Suite 200
San Diego, California 92101
Telephone: (619) 595-3001
Facsimile: (619) 595-3000

Patrick N. Keegan (SBN 167698)
pkeegan@keeganbaker.com
**KEEGAN & BAKER, LLP**
2292 Faraday Avenue, Suite 100
Carlsbad, California 92008
Telephone: (760) 929-9303
Facsimile: (760) 929-9260

*Attorneys for Plaintiff*
John Deddeh

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

SABER KHAMOOSHI, RYAN WU, BRIAN CAROLUS, and JOHN DEDDEH, individually and on behalf of a class of similarly situated individuals,

Plaintiffs,

v.

POLITICO LLC;

Defendant.

Case No: 3:24-cv-07836-SK

Assigned for All Purposes to:
Hon. Sallie Kim

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED CONSOLIDATED COMPLAINT**

Date: October 20, 2025
Time: 9:30 a.m.
Courtroom: C – 15th Floor

Action Filed: September 26, 2024
Removed: November 8, 2024
Consolidated: January 27, 2025
FCC Filed: February 14, 2025
FACC Filed: June 3, 2025

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 10

II. PLAINTIFFS HAVE ALLEGED CONCRETE HARM FOR STANDING ..... 10

III. PLAINTIFFS HAVE PLEADED EACH OF THEIR CLAIMS SUFFICIENTLY ..... 13

A. Politico's Use of Pen Register Trackers on its Website to Share Users' Personal Data Secretly with Unknown Third Parties Violated CIPA. ..... 13

1. The violation of Plaintiffs' substantive privacy rights confers standing. ..... 14

2. Politico initiated and caused the unauthorized disclosure of its website users' personal information to undisclosed third parties. ..... 15

3. The third-party trackers that Politico installed are pen registers that capture outgoing information from users' browsers. ..... 17

a. Pen registers record addressing information, including IP addresses. ..... 17

b. Penal Code § 638.51 is not limited to telephone-tracking technology. ..... 20

4. The additional collection of the contents of users' communications does not preclude the trackers from being pen registers. ..... 22

5. Politico's surreptitious disclosure of personal information to third parties does not fall within any statutory exception for ECS providers. ..... 23

B. Politico's Surreptitious Installation of Third-Party Tracker Cookies on Website Users' Browsers and Unauthorized Taking of Users' Data Violated the CDAFA. ..... 26

1. Plaintiffs' CDAFA claims are not subject to Rule 9(b) pleading standards ..... 26

2. A CDAFA violation does not require overcoming technical barriers ..... 26

3. Plaintiffs allege economic harm sufficient to confer CDAFA standing. ..... 29

C. Politico's Unauthorized Disclosure of Personal Information without Consent is Highly Offensive Conduct and a Serious Invasion of Privacy. ..... 30

D. Plaintiffs Are Entitled to Politico's Unjustly-Earned Profits. ..... 32

E. Plaintiffs Adequately Allege Their UCL Claims. ..... 32

IV. CONCLUSION ..... 35

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*A.B. v. Google LLC*,
737 F. Supp. 3d 869 (N.D. Cal. June 18, 2024) ... 33

*Astiana v. Hain Celestial Grp., Inc.*,
783 F.3d 753 (9th Cir. 2015) ... 32

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ... 28, 29

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) ... 11, 12, 29, 33

*Brown v. Google LLC*,
2021 WL 6064009 (N.D. Cal. Dec. 22, 2021) ... 33

*Bui-Ford v. Tesla, Inc.*,
2024 U.S. Dist. LEXIS 28767 (N.D. Cal. Feb. 20, 2024) ... 26

*Calhoun v. Google, LLC*,
2024 WL 3869446 (9th Cir. Aug. 20, 2024) ... 28, 33

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) ... 28

*Campbell v. Facebook, Inc.*,
951 F.3d 1106 (9th Cir. 2020) ... 11, 12

*Carolus v. Nexstar Media Inc.*,
2025 WL 1338193 (N.D. Cal. Apr. 9, 2025) ... 11

*Carroll v. Progressive Casualty Insurance Company*,
2023 WL 3526137 (C.D. Cal., 2023) ... 34

*Casillas v. Cypress Ins. Co.*,
770 Fed. Appx. 329 (9th Cir. 2019) ... 24

*Cherkin v. PowerSchool Holdings, Inc.*,
2025 U.S. Dist. LEXIS 48424 (N.D. Cal. Mar. 17, 2025) ... 14

*Cottle v. Plaid Inc.*,
536 F. Supp. 3d 461 (N.D. Cal. 2021) ... 24, 29

*Crowley v. CyberSource Corp.*,
166 F. Supp. 2d 1263 (N.D. Cal. 2001) .......... 24

*Cti III, LLC v. Devine*,
2022 U.S. Dist. LEXIS 94820 (E.D. Cal. May 25, 2022).......... 26, 27

*DocMagic. Inc. v. Ellie Mae, Inc.*,
745 F. Supp. 2d 1119 (N.D. Cal. 2010) .......... 27

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) .......... 21

*ESG Capital Partners, LP v. Stratos*,
828 F.3d 1023 (9th Cir. 2016) .......... 32

*Facebook, Inc. v. ConnectU LLC*,
489 F. Supp. 2d 1087 (N.D. Cal. 2007) .......... 26, 27

*Fraley v. Facebook, Inc.*,
830 F. Supp. 2d 785 (N.D. Cal. 2011) .......... 33

*Frasco v. Flo Health, Inc.*,
2024 WL 4280933 (N.D. Cal. Sept. 23, 2024) .......... 29

*Gonzalez v. Busby*,
2012 U.S. Dist. LEXIS 99940 (N.D. Cal. 2012) .......... 17

*Greenley v. Kochava*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023).......... *passim*

*Gutierrez v. Converse, Inc.*,
2023 WL 8939221 (C.D. Cal. Oct. 27, 2023).......... 27

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) .......... 31

*In re Anthem Inc. Data Breach Litig.*,
2016 WL 3029783 (N.D. Cal. May 17, 2016) .......... 33

*In re Broadcast.com, Inc.*,
2001 WL 36050382 (E.D. Tex. Dec. 12, 2001).......... 25

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) .......... 21, 27, 29, 30

*In re DoubleClick Inc. Privacy Litig.*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001).......... 24

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

*In re Eureka Casino Breach Litig.*,
2024 U.S. Dist. LEXIS 169803 (Nev. Sept. 19, 2024) ........ 34

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ........ *passim*

*In re Facebook, Inc., Consumer Privacy User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ........ 11, 31

*In re Google Assistant Privacy Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) ........ 28

*In re Google Inc. Gmail Litig.*,
2013 U.S. Dist. LEXIS 172784 (N.D. Cal. 2013) ........ 14

*In re Google Inc. Placement Consumer Priv. Litig*,
934 F.3d 316 (3d Cir. 2019) ........ 11

*In re Google Referrer Header Privacy Litig.*,
465 F. Supp. 3d 999 (N.D. Cal. 2020) ........ 11

*In re Google RTB Consumer Privacy Litig.*,
606 F. Supp. 3d 946 (N.D. Cal. 2022) ........ 12, 15, 31

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ........ 24

*In re Meta Pixel Tax Filing Cases*,
724 F. Supp. 3d 987 (N.D. Cal. 2024) ........ 33

*In re Meta Pixel Tax Filing Cases*,
2025 U.S. Dist. LEXIS 152615 (2025) ........ 22, 23

*In re Yahoo! Inc. Cust. Data Sec. Breach Litig.*,
2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) ........ 33

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014) ........ 19

*James v. UMG Recordings*,
2011 U.S. Dist. LEXIS 126221 (N.D. Cal. Nov. 1, 2011) ........ 34

*Javier v. Assurance IQ, LLC*,
2021 WL 940319 (N.D. Cal. Mar. 9, 2021) ........ 28

*Jeong v. Nexo Fin. LLC*,
2022 WL 174236 (N.D. Cal. 2022) ........ 34

*Klein v. Facebook, Inc.*,
580 F. Supp. 3d 743 (N.D. Cal. 2022) ........................................................ 33

*Lee v. City of Los Angeles*,
250 F.3d 668 (9th Cir. 2001) ........................................................ 16

*Lineberry v. AddShopper, Inc.*,
2025 WL 551864 (N.D. Cal. Feb. 19, 2025) ........................................................ 29

*Lopez v. Apple, Inc.*,
519 F. Supp. 3d 672 (N.D. Cal. 2021) ........................................................ 11, 24

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021)........................................................ 32

*Mastel v. Miniclip SA*,
2021 WL 2983198 (E.D. Cal. July 15, 2021) ........................................................ 11

*Matera v. Google Inc.*,
2016 U.S. Dist. LEXIS 107918 (N.D. Cal. Aug. 12, 2016)........................................................ 14

*McClung v. AddShopper, Inc.*,
2024 WL 189006 (N.D. Cal. Jan. 17, 2024) ........................................................ 27, 28

*Mirmalek v. L.A. Times Communs. LLC*,
2024 U.S. Dist. LEXIS 227378 (N.D. Cal. Dec. 12, 2024) .............................. 11, 12, 18, 20

*Moody v. C2 Educ. Systems, Inc.*,
2024 WL 3561367 (C.D. Cal. July 25, 2024)........................................................ *passim*

*Moore v. Mars Petcare US, Inc.*,
966 F.3d 1007 (9th Cir. 2020) ........................................................ 34

*Nowak v. Xapo, Inc.*,
2020 U.S. Dist. LEXIS 219575 (N.D. Cal. Nov. 20, 2020)........................................................ 26

*Polo v. Innovations Int'l, LLC*,
833 F.3d 1193 (9th Cir. 2016) ........................................................ 13

*Popa v. Microsoft Corp.*,
2025 WL 2448824 (9th Cir. 2025) ........................................................11

*Pruchnicki v. Envision Healthcare Corp.*,
845 Fed. Appx. 613 (9th Cir. 2021)........................................................ 33

*Quon v. Arch Wireless Operating Co., Inc.*,
529 F.3d 892 (9th Cir. 2008) ........................................................ 24

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019)........................................................ 31

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

*Rodriguez v. Autotrader.com, Inc.*,
2025 U.S. Dist. LEXIS 7139 (C.D. Cal. Jan. 8, 2025) ........................................ 20

*Rodriguez v. Google LLC*,
2025 U.S. Dist. LEXIS 3238 (N.D. Cal. Jan. 7, 2025) ........................................ 29

*Rodriguez v. Google LLC*,
2024 WL 38302 (N.D. Cal. Jan. 3, 2024) ........................................ 29

*Rubio v. Capital One Bank,*
613 F.3d 1205 (9th Cir. 2010) ........................................ 34

*Shah v. Fandom, Inc.*,
2024 U.S. Dist. LEXIS 193032 (N.D. Cal. Oct. 21, 2024)........................................ *passim*

*Smith v. Maryland*,
442 U.S. 735 (1979)........................................ 18

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) ........................................ 34

*Stasi v. Inmediata Health Grp. Corp.*,
501 F. Supp. 3d 898 (S.D. Cal. 2020)........................................ 12

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)........................................ 10, 11

*U.S. v. LSL Biotechnologies*,
379 F.3d 672 (9th Cir. 2004) ........................................ 16

*United States v. Christensen*,
828 F.3d 763 (9th Cir. 2015) ........................................ 26, 27

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008) ........................................ 15, 19

*United States v. Soybel*,
13 F.4th 584 (7th Cir. 2021) ........................................ 19

*West v. Ronquillo-Morgan*,
526 F. Supp. 3d 737 (C.D. Cal. 2020) ........................................ 27

*Williams v. Facebook, Inc.*,
498 F. Supp. 3d 1189 (N.D. Cal. 2019) ........................................ 30

*Yoon v. Lululemon USA, Inc*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ........................................ 19

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

*Zaria v. Hwareh.com, Inc.*,
2025 WL 486317 (S.D. Cal. Feb. 13, 2025) .......... 23

**STATE CASES**

*Apple Inc. v. Superior Court*,
56 Cal. 4th 128 (2013) .......... 13

*California Federal Bank v. Matreyek*,
8 Cal. App. 4th 125 (1992) .......... 32

*CTC Real Estate Servs. v. Lepe*,
140 Cal. App. 4th 856 (2006) .......... 32

*Flanagan v. Flanagan*,
27 Cal. 4th 766 (2002) .......... 13

*Folgelstrom v. Lamps Plus, Inc.*,
195 Cal. App. 4th 986 (2011) .......... 31

*Friddle v. Epstein*,
16 Cal. App. 4th 1649 (1993) .......... 12

*Heiting v. Taylor Fresh Foods, Inc.*,
2024 WL 3833296 (Cal. Super. Ct. L.A. Cty. July 31, 2024) .......... 15, 20, 22, 25

*Kearney v. Salomon Smith Barney, Inc.*,
39 Cal. 4th 95 (2006) .......... 14

*Klein v. Chevron U.S.A., Inc.*,
202 Cal. App. 4th 1342 (2012) .......... 34

*Kwikset Corp. v. Superior Court*,
51 Cal. 4th 310 (2011) .......... 33

*Lectrodryer v. SeoulBank*,
77 Cal. App. 4th 723 (2000) .......... 32

*Levings v. Choice Hotels Int'l, Inc.*,
2024 WL 1481189 (Cal. Super. Ct. L.A. Cty. April 3, 2024) .......... 15, 20, 22

*Licea v. Hickory Farms LLC*,
2024 WL 1698147 (Cal. Super. March 13, 2024) .......... 19

*People v. Ault*,
33 Cal. 4th 1250 (2004) .......... 15

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

*Saunders v. Sup. Ct.*,
27 Cal. App. 4th 832 (1994) ........ 34

*Smith v. State Farm Mutual Automobile Ins. Co.*,
93 Cal. App. 4th 700 (2001) ........ 34

**STATE CONSTITUTIONAL PROVISIONS**

California Constituition Article 1
§ 1........ 10

**FEDERAL STATUTES**

United States Code, Title 18
§ 2701........ 24

United States Code, Title 28
§ 1447........ 13

**FEDERAL REGULATIONS**

Code of Federal Regulations, Title 45
§ 164.514........ 12

**FEDERAL RULES**

Federal Rules of Civil Procedure
Rule 9 ........ 26
Rule 12 ........ 10, 16

**STATE STATUTES**

California Business & Professions Code
§ 17200........ 10
§ 17203........ 34
§ 17204........ 32
§ 17208........ 34

California Civil Code
§ 1798.140 ........ 12

California Penal Code
§ 502 ........ *passim*
§ 630........ 10
§ 638.50........ 18, 19, 20, 21
§ 638.51........ 20, 23, 25
§ 1546........ 12, 24
§ 1546.1........ 12

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Politico's motion to dismiss Plaintiffs' First Amended Consolidated Complaint ("FACC")[1] understates the privacy rights at issue and misconstrues the relevant statutes. The motion also repeatedly (1) conflates first-party website operations with unauthorized disclosure to third parties; (2) ignores detailed and specific allegations of personal and identifying information, including unique persistent identifiers, geolocation data, and online browsing activity, that Politico enabled third parties surreptitiously to collect and use for behavioral profiling, dossier building, and targeted advertising; and (3) minimizes the concrete invasion-of-privacy harm and economic loss that Plaintiffs suffered as a result of ***Politico's unconsented sale of their personal information.***

## II. PLAINTIFFS HAVE ALLEGED CONCRETE HARM FOR STANDING

Without website users' knowledge or consent, Politico (1) installs third-party tracker cookies on its users' browsers and (2) causes disclosure of and sells users' personal data to those third parties for pervasive surveillance of its users across the internet. The violation of Politico website users' substantive privacy rights and resulting injuries are neither hypothetical nor vague.

Politico's Rule 12(b)(1) argument, which challenges only the "injury in fact" requirement, is improper and without merit. First, Article III standing is claim- and relief-specific and cannot be "dispensed in gross."[2] Sweeping assertions of lack of harm are insufficient; instead, standing for each claim must be evaluated separately.

Second, Politico's argument ignores the full scope of its alleged unauthorized disclosure of users' personal information, which goes beyond just the sharing of IP addresses. Plaintiffs allege that the trackers installed by Politico use hidden third-party code to enable undisclosed parties to collect information about Politico website users. That captured information includes browsing activity, addressing and geolocation information, and device data such as device/browser type and ***unique***

---

[1] The FACC addresses Politico's unlawful practice of embedding and using various third-party trackers on its website, www.Politico.com. It alleges five causes of action for violations of (1) the California Computer Data Access and Fraud Act, Cal. Penal Code § 502 ("CDAFA"); (2) the California Invasion of Privacy Act, Cal. Penal Code §§ 630, *et seq.* ("CIPA"); (3) the right to privacy under Article 1, § 1, of the California Constitution; (4) unjust enrichment; and (5) the Unfair Competition Law, California Business & Professions Code §§ 17200, *et seq.* ("UCL").

[2] *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

***and persistent identifiers*** ("device fingerprints").[3] Disclosure of private information and intrusions upon seclusion have long been recognized as one of the traditional harms giving rise to standing,[4] including online privacy violations.[5]

Plaintiffs further allege that the additional data points disclosed to third parties without consent are used to (a) ***identify users*** uniquely across sessions and devices, (b) ***track users*** across the internet, which allows for cross-site tracking, digital surveillance, and behavior profiling of those individuals, and (c) serve targeted advertisements to users based on their profiles and geolocation data.[6] "History and tradition reinforce that a concrete injury for Article III standing purposes occurs when…any [] third party [] tracks a person's internet browser activity without authorization."[7] Plaintiffs' "invasion-of-privacy" allegations are sufficient to confer standing.[8]

Under Ninth Circuit case law, privacy invasion harm is an injury in fact that can establish Article III standing.[9] "[V]iolations of the right to privacy have long been actionable at common

---

[3] *See* FACC, ¶¶ 1, 7-8, 72-73, 82, 86, 88, 91-92, 179, 198. In contrast to *Carolus v. Nexstar Media Inc.*, 2025 WL 1338193 (N.D. Cal. Apr. 9, 2025), the FACC allegations are more robust regarding the additional data collected by the trackers that, in combination with unique cookie identifiers, device fingerprints, geolocation data, and browsing history, allow for comprehensive dossier building and significant tracking and surveillance. The Ninth's Circuit recent decision in *Popa v. Microsoft Corporation* does not change this outcome. That case involved "session replay" technology and not the kind of invasive "tracking and collection practices" at issue in this case. *Popa v. Microsoft Corp.*, No. 24-14, 2025 WL 2448824 (9th Cir. Aug. 26, 2025).

[4] *See, e.g., TransUnion LLC*, 594 U.S. at 425 (recognizing that "various intangible harms can also be concrete [including]…disclosure of private information").

[5] *See, e.g., Lopez v. Apple, Inc.*, 519 F.Supp.3d 672, 681 (N.D. Cal. 2021) (violation of substantive privacy rights "gives rise to a concrete injury sufficient to confer standing"), quoting *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020) ("*Facebook Tracking*").

[6] FACC, ¶¶ 6, 8, 32, 72, 74, 89, 92, 155. Crucially, "information need not be personally identifying to be private." *In re Google Referrer Header Privacy Litig*., 465 F.Supp.3d 999, 1008-1010 (N.D. Cal. 2020) (rejecting argument that privacy harm occurs only when a website user's identity is disclosed).

[7] *In re Google Inc. Placement Consumer Priv. Litig*, 934 F.3d 316, 325 (3d Cir. 2019). *See also Facebook Tracking*, 956 F.3d at 598 (standing established where the plaintiffs' ***browsing histories were tracked, compiled, and sold to advertisers***).

[8] *See, e.g., Mastel v. Miniclip SA*, 2021 WL 2983198, at *6 (E.D. Cal. July 15, 2021) (collection of personal information without consent involved a sufficiently concrete injury); *In re Facebook, Inc., Consumer Privacy User Profile Litig*., 402 F.Supp.3d 767, 784 (N.D. Cal. 2019).

[9] *See e.g., Facebook Tracking*, 956 F.3d at 598 (***CIPA standing established because the plaintiffs "adequately alleged that Facebook's tracking and collection practices would cause harm or a material risk of harm to their interest in controlling their personal information***"), citing *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1117-18 (9th Cir. 2020); *Mirmalek v. L.A. Times Communs. LLC*, 2024 U.S. Dist. LEXIS 227378, at *12 (N.D. Cal. Dec. 12, 2024) (CIPA standing established where the defendant caused the "Plaintiff's IP address to be disclosed to unconsented-to third parties" (emphasis added)); *Shah v. Fandom, Inc.*, 2024 U.S. Dist. LEXIS 193032, at *15-17 (N.D. Cal. Oct. 21, 2024) (similar); *Brown v. Google LLC*, 685 F.Supp.3d 909, 923 (N.D. Cal. 2023) (privacy harm

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

law."[10] "[T]he Ninth Circuit has found, in near uniformity, that intangible injuries based on alleged violations of privacy-related statutes are sufficiently concrete."[11] "[T]he legislative history and statutory text demonstrate that Congress and the California legislature intended to protect these historical privacy rights when they passed" CIPA, which "thus codifies a substantive right to privacy, the violation of which gives rise to a concrete injury sufficient to confer standing."[12]

The Ninth Circuit also has found the collection of "anonymized and aggregated" data sufficient to constitute injury in fact for a CIPA claim.[13] The privacy injury – the capture of personal information without a user's consent – "occurs when the personal information is obtained in the first instance," "irrespective of whether the misappropriated data is anonymized."[14] "[I]n terms of standing, the loss of control over one's personal information is the 'concrete' harm." *Id*. at 580. Invasions of privacy are actionable injuries.[15]

Third, Politico relies on non-binding cases from other states to argue wrongly that IP addresses are no more than "basic contact information." But those cases fail to consider the statutory protections afforded to IP addresses in various federal and California law contexts.[16] Further, courts in this district have found injury-in-fact when the disclosed information included IP addresses.[17]

---

allegations based on disclosure of anonymized browsing data to unauthorized third parties established standing for CIPA and invasion-of-privacy claims).

[10] *Facebook Tracking*, 956 F.3d at 598.

[11] *Stasi v. Inmediata Health Grp. Corp.*, 501 F.Supp.3d 898, 909 (S.D. Cal. 2020).

[12] *Facebook Tracking*, 956 F.3d at 598. Indeed, "any invasion of privacy involves an affront to human dignity." *Friddle v. Epstein*, 16 Cal.App.4th 1649, 1660-1661 (1993).

[13] *Campbell*, 951 F.3d at 1119; *Brown III*, 685 F. Supp. 3d at 923-25 (finding that the plaintiffs suffered a concrete privacy harm and had standing for their CIPA claims where the defendant disclosed their IP addresses and personal browsing even though it was anonymized).

[14] *Frasco v. Flo Health, Inc.*, 349 F.R.D. 557, 579 (N.D. Cal. May 19, 2025).

[15] *See Moody v. C2 Educ. Systems, Inc.*, 2024 WL 3561367, at *6 (C.D. Cal. July 25, 2024) ("*Moody*"), citing *Facebook Tracking*, 956 F.3d at 598.

[16] *See e.g.*, 45 C.F.R. § 164.514(b)(2)(i)(O) (IP address is a personal identifier subject to HIPAA protection); Cal. Civ. Code § 1798.140(v)(1)(A) (identifiers such as an IP address may constitute a consumer's personal information if linked to a particular individual or household); Cal. Pen. Code §§ 1546(d) and (h), 1546.1(a)(1) and (b) (precluding the government from compelling ISPs to provide a user's IP address without a warrant); *In re Google RTB Consumer Privacy Litig.*, 606 F.Supp.3d 935, 946-947 (N.D. Cal. 2022) ("*Google RTB*") (combination of information, including but not limited to IP address, geolocation data, and web-browsing information, is personal information under California law).

[17] *See Mirmalek*, 2024 U.S. Dist. LEXIS 227378, at *12-13 (finding CIPA § 638.51 standing when the defendant's embedded trackers disclosed the plaintiff's IP address to unauthorized third parties without her consent); *Shah*, 2024 U.S. Dist. LEXIS 193032, at *15-17; *see also*, *Brown III*, 685

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

Those courts recognized that CIPA § 638.51 "reflects the Legislature's judgment that an individual's consent is required before others may track certain addressing information in their electronic communications for non-law-enforcement purposes."[18]

Fourth, while the invasion-of-privacy harm alone establishes Plaintiffs' standing as to all claims, Plaintiffs also allege that their information carries financial value and that Politico misappropriated ***and sold*** that valuable data without users' consent.[19] Politico's authorities are inapposite. Here, the FACC includes specific allegations regarding both the economic value of the information disclosed by Politico and Politico's unjust enrichment based on the ***monetization and sale*** of that user data. That is tangible, economic harm that Plaintiffs have suffered.[20]

Based on allegations of intrusive surveillance enabled by Politico's privacy invasions, which are analogous to the common law tort of intrusion upon seclusion, and the concrete economic harm suffered, Plaintiffs have established Article III standing for each of their claims.[21]

## III. PLAINTIFFS HAVE PLEADED EACH OF THEIR CLAIMS SUFFICIENTLY

### A. Politico's Use of Pen Register Trackers on its Website to Share Users' Personal Data Secretly with Unknown Third Parties Violated CIPA.

The California Supreme Court regularly reads statutes to apply to new technologies where such a reading would not conflict with the statutory scheme.[22] In the CIPA context, the California Supreme Court repeatedly has found that the California Legislature intended CIPA to establish strong privacy protections and has instructed other courts to interpret CIPA in a manner that "fulfills the legislative purpose of [CIPA] by giving greater protection to privacy interests."[23] Numerous

---

F.Supp.3d at 919-20, 923-25; *Moody,* 2024 U.S. Dist. LEXIS 132614, at *9-11 (finding CIPA standing where plaintiffs alleged that the defendant, via tracking software, secretly disclosed their device and browsing data to third parties without their consent).

[18] *See, e.g., Shah*, 2024 U.S. Dist. LEXIS 193032, at *17.

[19] FACC, ¶¶ 6, 8, 31-32, 44-45, 74, 89, 91, 156, 187-188, 198.

[20] "This stake in unjustly earned profits exists regardless of whether an individual planned to sell his or her data or whether the individual's data is made less valuable." *Facebook Tracking*, 956 F.3d at 600 (plaintiffs could state an economic injury for their misappropriated data).

[21] Politico argues that remand to state court would be "futile." This request for the Court to find lack of subject matter jurisdiction yet also adjudicate standing under California law is improper. 28 U.S.C. § 1447(c); *see also Polo v. Innovations Int'l*, LLC, 833 F.3d 1193, 1196 (9th Cir. 2016). California standing is not governed by Article III and should not be prematurely decided.

[22] *See Apple Inc. v. Superior Court*, 56 Cal.4th 128, 137 (2013) (holding that even the non-existence of a technology at the time of a statute's enactment does not necessarily preclude the application of the statute to that technology). *Id*. at 139-141.

[23] *Flanagan v. Flanagan*, 27 Cal.4th 766, 775 (2002).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

district courts have applied CIPA to new technologies.[24] The Ninth Circuit and other district courts also have determined that CIPA, including the pen register statute, applies to internet communications and regularly have applied CIPA to computer-based internet wiretapping.[25]

**1. The violation of Plaintiffs' substantive privacy rights confers standing.**

As discussed in detail above, Politico wrongly argues that Plaintiffs lack standing because there is no privacy interest in the IP addresses and other identifying information disclosed and sold without permission by Politico to unauthorized third parties.[26] An IP address[27] and personal data are private information, disclosure of which has long been recognized as one of the traditional harms for standing. In *Kearney v. Salomon Smith Barney, Inc.*[28], the California Supreme Court held that California's explicit constitutional privacy provision was enacted in part specifically to ***protect Californians from overly intrusive business practices that were seen to pose a significant and increasing threat to personal privacy***."[29] The FACC addresses this exact issue.

Here, Plaintiffs allege that "when IP addresses are collected by third-party trackers and are ***combined with unique cookie identifiers, device fingerprints, geolocation data, and browsing history***," – *i.e.* the data collected by the trackers that Politico installed – that collection and use of such data allows for "sustained and intrusive surveillance" through comprehensive behavior profiling and dossier building, cookie syncing, and real-time bidding.[30] Further, knowing a website

---

[24] *Matera v. Google Inc.*, 2016 U.S. Dist. LEXIS 107918 at *61, 67 (N.D. Cal. Aug. 12, 2016) (applying CIPA to emails); *In re Google Inc. Gmail Litig.*, 2013 U.S. Dist. LEXIS 172784, at *20-21 (N.D. Cal. 2013) (CIPA applies to "electronic communications").

[25] *Javier Assurance IQ, LLC*, 2022 WL 1744107, at *1 (9th Cir. 2022) (CIPA applies to internet communications). *See also Greenley v. Kochava*, 684 F.Supp.3d 1024, 1050 (S.D. Cal. 2023) (tracking software was a "pen register"); *Moody*, 2024 WL 3561367, at *2-3 (software embedded on the website falls within the scope of §§ 638.50 and 638.51); *Shah*, 2024 U.S. Dis. LEXIS 193032, at *13 (tracking software could plausibly constitute a pen register***)***.

[26] *See* footnotes 10 and 17, *supra*, discussing personal information and CIPA standing.

[27] FACC, ¶¶ 65-72. *See also* Danao, Monique, *What Can Someone Do With Your IP Address?*, Forbes Advisor, https://www.forbes.com/advisor/business/what-can-someone-do-with-ip-address/ (IP addresses can be used to determine geographical location, gather insights about a user's online behavior and activity, and enable hackers to launch cyberattacks and scams).

[28] 39 Cal.4th 95, 124-125 (2006) (California Legislature "repeatedly has enacted new legislation in related areas in an effort to increase the protection of California consumers' privacy").

[29] *Id.* at 124-125 (emphasis added).

[30] FACC, ¶ 72 (emphasis added). See also ¶¶ 6, 8, 32, 89, 91-92. *See Cherkin v. PowerSchool Holdings, Inc.*, 2025 U.S. Dist. LEXIS 48424, at *10 (N.D. Cal. Mar. 17, 2025) (recognizing that "with the ever-rapid progression of technology and data processing," ***heightened privacy interests are implicated by the aggregation of data to build detailed profiles about individuals***).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

user's IP address and device fingerprints allows advertisers to target specific households and particular individuals with ads relevant to their interests and enables third parties to track and surveil users across the internet for unconsented purposes.[31]

Individuals maintain a reasonable expectation of privacy in their personal information.[32] Although the Court previously relied on *United States v. Forrester,*[33] ***Forrester no longer applies.***[34] The FACC now alleges that the trackers "unlawfully have collected browsing activity and interaction data, browser and device/operating system data for fingerprinting, and identifying and addressing information about Plaintiffs and Class members, including their IP addresses and geolocation information."[35] ***Thus, the factual landscape has changed.***

Politico attempts to bolster its position by citing to first-party website operator cases and asserting erroneously that its conduct is a "basic function of browsing websites." But this case does not involve information "voluntarily" conveyed to a website operator. ***Rather, it involves identifying information disclosed and/or sold to third parties without notice or consent.*** Politico does not argue, nor can it, that this third-party collection of personal data, which goes beyond the sharing of IP addresses, is necessary to operate the internet or its website. It cannot hide behind the guise of necessity in any form.[36] Plaintiffs' claims clearly fall within the zone of interests protected by the statute and establish statutory standing under CIPA.[37]

**2. Politico initiated and caused the unauthorized disclosure of its website users' personal information to undisclosed third parties.**

Politico next argues for dismissal by improperly contradicting Plaintiffs' allegations and

---

[31] *See* FACC, ¶¶ 67-72 and cited references discussing IP targeted advertising and geomarketing.
[32] *See Google RTB,* 606 F.Supp.3d at 946-947 (selling of "sensitive personal information such as plaintiff's IP address" without consent supported a reasonable expectation of privacy).
[33] *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008).
[34] *People v. Ault*, 33 Cal.4th 1250, 1268 n. 10 (2004) (it is "axiomatic that cases are not authority for propositions not considered"). Politico's California authorities also are unpersuasive.
[35] FACC, ¶ 73.
[36] *See* section III.A.5, *infra*.
[37] *See also Moody*, 2024 WL 3561367, at *2-4 (holding that "Plaintiff's allegations that the TikTok Software is embedded in the Website and collects information from visitors plausibly fall within the scope of §§ 638.50 and 638.51"); *Heiting v. Taylor Fresh Foods, Inc.*, No. 24STCV1289, 2024 WL 3833296, at *3 (Cal. Super. Ct. L.A. Cty. July 31, 2024) (overruling demurrer involving similar allegations"); *Levings v. Choice Hotels Int'l, Inc.*, No. 23STCV28359, 2024 WL 1481189, at *1-2 (Cal. Super. Ct. L.A. Cty. April 3, 2024).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

misinterpreting the figures contained in the FACC to assert that Politico made no disclosures to third parties. Politico's flawed argument should be rejected for multiple reasons.

First, Politico's argument violates the well-established rule that the Court "is required to presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the non-moving party."[38] "***Indeed, factual challenges to a plaintiff's complaint have no bearing on the legal sufficiency of the allegations under Rule 12(b)(6)***."[39]

Second, Politico flatly misinterprets the allegations in FACC Paragraphs 75-76, 82, 86, and 88. Plaintiffs do ***not*** allege that IP addresses were transmitted in the HTTP request sent from Politico to third parties. Rather, when a user enters the Politico website, the website server responds with instructions to load the webpage content and also sends additional instructions to the user that "cause[s] the three trackers to be installed on the user's browser. ***The trackers, in turn, instruct the user's browser to send the third parties the user's identifying and addressing information***..." Plaintiffs further allege that each tracker installs and stores its own persistent website cookie on the user's browser and "***uses that third-party tracker cookie to collect and share*** that user's browsing activity (*e.g.* domains and webpages visited), browser and device/operating system data, and addressing information, including IP addresses."[40] Politico clearly initiates and causes that disclosure of information to third parties.

Third, Politico misunderstands the process reflected in Figures 1, 3, and 5. Politico first asserts that the left side "Request" reflects the user's request to Politico's website, and the right side "Response" reflects Politico's response to the user. Thus, the communications presumably are between the website user and Politico. But in the very next sentence, Politico argues that the figures show "only that the third party responded to Politico's request," thus reflecting communications between Politico and the third-party trackers. ***Both*** interpretations are incorrect.

Figures 1, 3, and 5 reflect the communications occurring between a Politico website user's browser and the third-party trackers' servers ("hosts").[41] The "host" listed in each figure is the server

---

[38] *U.S. v. LSL Biotechnologies*, 379 F.3d 672, 698 (9th Cir. 2004).
[39] *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). *See also* Fed. R. Civ. Proc. 12(d).
[40] FACC, ¶¶ 75-76, 78, 82-84, 86, 88-89.
[41] FACC, ¶¶ 75-76, 82, 86, 88.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

for one of the three trackers – TripleLift, CasaleMedia, or Adnxs. As can be seen from the figures, www.politico.com is listed as the "**Referrer**" or "Access-Control-Allow-**Origin**" (Figure 5). The presence of Politico's website domain as the "referrer" in Figures 1 and 3 indicates the requests to these hosts originated from a user visiting Politico's website. This occurs because Politico embedded tracking code that causes visitors' browsers to automatically contact these third-party hosts. The presence of Politico's website domain as the "Access-Control-Allow-Origin" in the "Response" payload in Figure 5 indicates that the trackers are responding to requests that originated from users' browsers on Politico's website, not that they are responding to Politico directly.

Further, based on the code programmed within the host cookies specifying what information to collect, the left side "Request" shows the user's browser sending that data to the "host" tracker's server, and the right side "Response" shows information being sent from the tracker's server back to the user's browser. The figures are merely snapshots of the user-tracker communications and do not show all data being sent back and forth. That the IP address is not visible in the "Request" payload and instead is visible only in the "Response" side is not dispositive. Moreover, Figures 2, 4, and 6 highlight additional user information being captured by each tracker. Thus, contrary to Politico's assertion, the figures do ***not*** reflect any "Request" at all sent to third parties from Politico.

In sum, Politico's attempt to use a motion to dismiss to present unsupported "evidence" and/or to argue the factual merits of the case is improper.[42]

**3. The third-party trackers that Politico installed are pen registers that capture outgoing information from users' browsers.**

In misinterpreting what a "pen register" captures, Politico erroneously argues that Plaintiffs' § 638.51 claim fails because pen registers do not collect or protect IP addresses and instead apply only to telephone-tracking technology. The plain language of the statutes and their legislative history do not support Politico's narrow interpretation.

**a. Pen registers record addressing information, including IP addresses.**

Politico first asserts that IP addresses are not protected because pen registers collect the

[42] *Gonzalez v. Busby*, 2012 U.S. Dist. LEXIS 99940, at *4-5 (N.D. Cal. 2012).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

destination of an outgoing communication. But Politico's reliance on *Smith v. Maryland*[43] is misplaced because modern pen registers are not limited to "telecommunication technology." First, the definitions under § 638.50 do not state any such requirement or limitation. Rather, they simply refer to "a device ***or process***" that records or captures certain information from a "wire or electronic communication."[44] There is no mention of telephones or telephone-specific technology. Numerous decisions have confirmed that tracking software, like the third-party trackers used here, can constitute a "pen register" under §§ 638.50 and 683.51.[45]

Second, a "pen register" is a "device or process" that records ***outgoing*** information from the source, *i.e.* information "transmitted ***by*** an instrument ***from*** which a wire or electronic communication is transmitted."[46] Here, the relevant information is ***outbound*** information from website users' browsers, which includes browsing activity, browser/device data, and persistent identifiers as well as IP addresses, sent to the Politico website, and also sent surreptitiously to and recorded by the third-party trackers used and installed by Politico.

Third, the statute specifies that a pen register captures "***dialing, routing, addressing or signaling information***." Nothing states that the information relates only to the destination, versus the source.[47] Moreover, even if Politico's interpretation were correct, that simply would mean that the trackers are "trap and trace" devices because they collect "electronic or other impulses that identify the ***originating number*** or other dialing, routing, ***addressing***, or signaling information

---

[43] *Smith v. Maryland*, 442 U.S. 735, 745 (1979). *Smith* is an outdated case that relied upon an older definition of "pen register" that later was modified by the enactment of the Electronic Communication Privacy Act of 1986 ("ECPA") and further modified by the Patriot Act. Significantly, the ECPA omitted language limiting the types of information that a pen register could acquire and broadened its scope to encompass electronic communications. The Patriot Act further modified the "pen register" definition to cover software processes that collect information. *Forrester* also is unavailing because it relied on *Smith* and did not consider either amendment.

[44] Pen. Code §§ 638.50(b)-(c) [emphasis added].

[45] *See Kochava*, 684 F.Supp.3d at 1050 (tracking software was a "pen register"); *Moody*, 2024 WL 3561367, at *2-3 (software embedded on the website falls within the scope of §§ 638.50 and 638.51); *Shah*, 2024 U.S. Dist. LEXIS 193032, at *6 and *13 (***trackers operate as a "process" that records IP addressing information and can plausibly constitute a pen register);*** *Mirmalek*, 2024 U.S. Dist. LEXIS 227378, at *6-10 (trackers are a "device or process" under § 638.50 and record addressing information in the form of IP addresses as required by CIPA).

[46] Pen. Code § 638.50(b) (emphasis added). Compare Pen. Code § 638.50(c) defining a "trap and trace device" that records ***incoming*** information.

[47] *See Shah*, 2024 U.S. Dis. LEXIS 193032, at *9-10 ("By the plain meaning of § 638.50(b), collection of the recipient phone number or IP address is not a required element").

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

reasonably likely to identify the source of a wire or electronic communication."[48]

Further, IP addresses constitute ***addressing information***.[49] The FACC clearly alleges the unauthorized collection and use of IP addresses, *i.e.* addressing information, sent from Plaintiffs' and Class members' browsers. Thus, Politico's installation and use of the third-party trackers clearly fall within the scope of § 638.51 and CIPA prohibitions regarding pen registers.

Politico again attempts to bolster its position by asserting that its conduct is a part of "basic internet functionality" and "necessary for normal website use." ***But this case does not involve information conveyed to a first-party website operator. Rather, it involves personal information sent to third parties without consent.*** Politico's surreptitious disclosure to the third-party trackers is not "necessary" to the function or operation of the Politico website.[50] Any narrow consent given by website users to use their IP addresses was limited to communicating with Politico's website.[51]

Politico's reliance on *Licea v. Hickory Farms LLC*[52] is misplaced. There, the plaintiff did not allege that the defendant installed a pen register that disclosed plaintiff's information *to a third party.* Rather, that case involved sending information to the website-operator defendant. The court reasoned that there was "consent under the guise of visiting a website" because the defendant could not otherwise host a website. *Id.* at *4. Politico's reliance on similar superior court cases also is unavailing because here, in contrast, the unauthorized conduct is Politico's disclosure of Plaintiffs' and Class members' personal information ***to unidentified third parties.***

Lastly, Politico's attempt to distinguish *Greenley v. Kochava, Inc.* fails.[53] With similar

---

[48] Pen. Code § 638.50(c). Pen registers and trap-and-trace devices almost always are used together. Thus, courts generally discuss them as one. *See, e.g., United States v. Soybel*, 13 F.4th 584, 586 n. 2 (7th Cir. 2021).

[49] *See Shah*, 2024 U.S. Dis. LEXIS 193032, at *6-8 (finding that trackers record addressing information), citing *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1108 (9th Cir. 2014). ***Even the Forrester case cited by Politico supports this characterization.*** *Forrester*, 512 F.3d at 510 (holding that "email to/from addresses and IP addresses constitute addressing information").

[50] *See Shah*, 2024 U.S. Dis. LEXIS 193032, at *14-15 ("A user who consents to disclose their IP address [ ] as part of accessing [a] website does not necessarily consent to disclose their IP address to the third parties operating the Trackers").

[51] *See, e.g., Yoon v. Lululemon USA, Inc*, 549 F.Supp.3d 1073, 1080-1081 (C.D. Cal. 2021) (plaintiff sufficiently pleaded lack of consent to third party software provider's participation in website conversation despite website operator's reliance on its online privacy disclosure).

[52] *Licea v. Hickory Farms LLC*, 2024 WL 1698147 (Cal. Super. March 13, 2024).

[53] In lengthy footnotes, Politico also tries unsuccessfully to distinguish *Moody*, *Shah*, and *Mirmalek.*

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

allegations – hidden code installed by a defendant allowing for the improper collection and use of user information for marketing, advertising or data analytics purposes – *Kochava* is directly analogous. Third-party code does not appear on the Politico website by accident. It must be installed on the website affirmatively by Politico. The *Kochava* court recognized that "[t]oday, pen registers take the form of software" and, for this reason, "***the California Legislature does not limit its prohibition on installing pen registers to law enforcement.***" In finding that "courts should focus less on the form of the data collector and more on the results," the court held that "[a] process can take many forms. Surely among them is software that identifies consumers, gathers data, and correlates that data through unique 'fingerprinting.'"[54] Other courts are in accord.[55]

**b. Penal Code § 638.51 is not limited to telephone-tracking technology.**

Politico further argues that the § 638.51 claim fails because a pen register applies only to telephone-tracking technology. That argument is wrong. First, the statutory provisions do not limit the prohibitions of § 638.51 to telephones.[56] Section 638.50 defines a "pen register" as "a device ***or process*** that records or decodes dialing, routing, addressing or signaling information transmitted by an instrument or facility from which a wire ***or electronic communication*** is transmitted, but not the contents of a communication."[57] There is no mention of telephones. The portion of Assembly Bill 929's introductory language cited by Politico does not change the pen register definition, nor does it limit the definition to telephone-tracking technology.[58]

---

The various asserted arguments already have been addressed within this Opposition. None of Politico's arguments is persuasive. Those cases are directly on point and instructive.

[54] *Kochava*, 684 F.Supp.3d at 1050.

[55] *See also Moody*, 2024 WL 3561367, at *2-4; *Heiting v. Taylor Fresh Foods, Inc.*, 2024 WL 3833296, at *3; *Levings v. Choice Hotels Int'l, Inc.*, 2024 WL 1481189, at *1-2; *Shah*, 2024 U.S. Dis. LEXIS 193032, at *6; *Mirmalek*, 2024 U.S. Dist. LEXIS 227378, at *6-10. Politico cites several recent California Superior Court decisions for the opposite holding. But, as recognized in a recent district court decision, "that a California Superior Court concluded differently, while persuasive, is not binding and does not foreclose the possibility that software may qualify as a pen register or trap and trace device under California law, at least at the pleading stage." *Rodriguez v. Autotrader.com, Inc.*, 2025 U.S. Dist. LEXIS 7139, at *13 (C.D. Cal. Jan. 8, 2025).

[56] *See Shah*, 2024 U.S. Dis. LEXIS 193032, at *9 ("Nothing in the statutory definition limits pen registers to those that operate the same way as traditional phone pen registers.").

[57] Pen. Code § 638.50(b) [emphasis added].

[58] As the cited introduction states, the bill was intended to "prohibit a person, other than a provider of electronic or wire communication service for specified purposes, from installing or using a pen register or trap and trace device, ***as defined***." [Emphasis added.]

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

Further, use of the term "process" in the disjunctive negates the argument that a device must be attached to a telephone. Indeed, multiple courts have found that software qualifies as a "device."[59] Politico also ignores the Legislature's intent to define broadly the meaning of "electronic communication." As defined in § 629.51(a)(2), "electronic communication" means "any transfer of signs, signals, ***writing, images, sounds, data, or intelligence of any nature*** in whole or in part by a wire, radio, electromagnetic, or photoelectric or photo-optical system…." While Politico may be correct that AB 1242 did not "expand the scope of the definition of a pen register," the 2022 amendment ***also did not alter the definition of "electronic communication,"*** which includes writings, images, and data, none of which are related to telephones.

Second, Politico focuses on inapplicable § 638.52. As recognized in *Shah*, § 638.52 merely lists the procedures that ***law enforcement officers*** must follow when applying for a pen register; it does not alter the pen register definition. The *Shah* court also held that the definition of a pen register is "not limited to the type most often utilized by law enforcement." While recognizing that telephone-based pen registers are among the "variety of electronic tools" used by law enforcement, the court also found that ***nowhere*** in the legislative materials "did the Legislature state an intent to add a statutory requirement limiting pen registers to those traditional forms."[60] Law enforcement's use of a pen register has no bearing on what constitutes a pen register for § 638.51 purposes.

Third, pen registers are not limited to devices attached to telephones. The *Moody* court rejected that exact limitation, holding that "[t]hough § 638.52 refers to pen registers and trap and trace devices as physically attached to telephone lines, the definitions under § 638.50 do not state any such requirement."[61] Instead, they refer only to 'device[s] or process[es]' that record or capture certain information" and include reference to "'a wire or electronic communication,'"[62] Citing the *Kochava* decision, the *Moody* court held that tracking software plausibly could constitute a "pen

[59] *See Doe v. Meta Platforms, Inc.*, 690 F.Supp.3d 1064, 1080 (N.D. Cal. 2023) (finding Pixel software to be a device under § 632(a)); *In re Carrier IQ, Inc.*, 78 F.Supp.3d 1051, 1084 (N.D. Cal. 2015) (holding that plaintiffs sufficiently have alleged that the Carrier IQ software is a "device" for purposes of the Wiretap Act).

[60] *Shah*, 2024 U.S. Dis. LEXIS 193032, at *10 and *18 fn. 2.

[61] *Moody*, 2024 WL 3561367, at *2.

[62] *Id.*, citing Pen. Code §§ 638.50(b)-(c).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

register" under §§ 638.50 and 638.51.[63] Defendant's arguments are without merit.[64]

**4. The additional collection of the contents of users' communications does not preclude the trackers from being pen registers.**

Politico next claims that dismissal is warranted because the trackers also collect the contents of communications ***in addition to*** "routing, addressing, or signaling information." For most of its motion, Politico minimizes the privacy interests at stake and ignores the vast amount of personal information disclosed to the trackers installed by Politico. Now, it argues that Plaintiffs have pleaded themselves out of a pen register claim because such data must have been collected to accomplish the unauthorized uses alleged in the FACC. Politico cannot have it both ways.

"Given CIPA's purpose to protect Californian's privacy, it is highly unlikely that the Legislature intended to permit the installation and use of pen registers so long as those devices also record the contents of a third party's communications."[65] The recent decision in *In re Meta Pixel Tax Filing Cases* is highly instructive. There, the court found the relevant statutory language ambiguous and proposed two interpretations.

> On the one hand, that language could be interpreted, as Meta contends, to define a pen register as a device that records ***only*** 'dialing, routing, addressing, or signaling information" and that does not record 'the contents of a communication.' ***On the other hand, it could be interpreted to define a pen register as any device that records 'dialing, routing, addressing, or signaling information' while clarifying that a device that records only 'the contents of a communication' is not a pen register, and is instead subject solely to CIPA's wiretap provisions.***"[66]

The court noted that, under Meta's interpretation of the statute, "an entity could escape liability under CIPA's pen register provisions by combining the functionality of a wiretap with that of a pen register."[67] It also "would allow an unauthorized pen register to circumvent judicial

---

[63] *Id.*, citing *Kochava*, 684 F.Supp.3d at 1050.
[64] *See also Heiting*, 2024 WL 3833296, at *3 (overruling demurrer involving similar allegations and holding that ***a "plain reading of the modern definitions [of "pen register" and "trap and trace device"] shows that they are not limited to physical devices attached to telephone lines"***); *Levings,*, 2024 WL 1481189, at *1-2; *Lesh v. Cable News Network, Inc.*, 2025 WL 563358, at *3-5 (S.D.N.Y. Feb. 20, 2025) (trackers are "pen registers" under § 638.51 and finding that "the plain text of Section 638.50 ***clearly does not limit*** the application of pen registers to telephones").
[65] *See In re Meta Pixel Tax Filing Cases*, 2025 U.S. Dist. LEXIS 152615, at * 16 (N.D. Cal. Aug. 6, 2025).
[66] *Id.*, at * 14-15 (emphasis added).
[67] *Id.*, at * 16.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

oversight so long as that device included a modicum of nonessential wiretapping technology."[68] Thus, "[g]iven CIPA's purpose to protect Californians against the privacy intrusions that can result from either wiretaps or pen registers, the better interpretation of Section 638.51 is that it defines a pen register as ***any device that 'records dialing, routing, addressing, or signaling information*** transmitted by an instrument or facility from which a wire or electronic communication is transmitted,' ***but not a device that records only 'the contents of communications***.'"[69]

"In contravention of the California Legislature's intent in enacting CIPA, [Politico's] proposed loophole would allow any entity to avoid CIPA's pen register provisions simply by employing more intrusive forms of technology."[70] Its self-serving interpretation should be rejected.

**5. Politico's surreptitious disclosure of personal information to third parties does not fall within any statutory exception for ECS providers.**

Given the clear application of § 638.51(a), Politico asserts that its installation of third-party pen register trackers is permitted under the § 638.51(b)(1) and (5) exceptions to the statute. Politico's conclusory arguments are without support.

Politico first argues that *its* consent as the "user" of the tracking technology was sufficient for the collection of website users' personal information.[71] That twisted reading of the statute undermines the entire concept of ***personal*** privacy. Assuming that Politico is the relevant "user," its argument could be valid only if the third-party trackers were providers of electronic communication services ("ECS"). They plainly are not.

While CIPA does not specifically define "electronic communications service provider," California's Electronic Communications Privacy Act does define the relevant terms "electronic communication service" and "service provider" as follows:

> "Electronic communication service" means a service that provides to its subscribers or users ***the ability to send or receive electronic communications***, including any service that acts as an ***intermediary in the transmission of electronic communications***, or stores

[68] *Id.*, at * 19. The court further noted that "[b]ecause recognizing such a loophole would significantly limit the privacy protections offered by CIPA's pen register provisions, it is unsurprising that courts regularly allow both wiretap and pen register claims to proceed." *Id.*, citing *Zaria v. Hwareh.com, Inc.*, 2025 WL486317 (S.D. Cal. Feb. 13, 2025); *Kochava*, 684 F.Supp.3d 1072, and *Moody*, 742 F.Supp.3d 1072,

[69] *Id.*, at * 19 (emphasis added).

[70] *Id.*, at * 17.

[71] A "***provider of electronic or wire communication service*** may use a pen register or trap and trace device" "if the consent of the user has been obtained." Cal. Pen. Code § 638.51(b)(5).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

> electronic communication information.
>
> "Service provider" means a person or entity offering an electronic communication service.[72]

These definitions plainly refer to companies that provide access to the internet, including companies that provide internet-based services for email, wireless cellular telephone communications, and text messaging.[73] "[U]ncontroversial examples of facilities that provide electronic communications services" include "the computer systems of an email provider, a bulletin board system, or an ISP."[74] TripleLift, Index Exchange, and Xandr provide marketing and advertising services.[75] They clearly do not provide the ***ability*** to send or receive electronic communications. And they do not fall into any of these internet provider categories.

Further, that "an entity communicates electronically with its customers does not mean that it 'provides an [ECS].'"[76] Many courts have held that companies that provide traditional products and services over the internet, as opposed to internet access itself, are not ECS providers.[77] Courts also have rejected construing ECS broadly to cover merely "sending information to servers" "because it would expand 'electronic communication service' to all online services and thus render the term meaningless."[78] Because the third-party trackers are not providers of ECS and do not fall within the § 638.51(b) exception, Politico's consent to their conduct is irrelevant.

Politico's reliance on *In re DoubleClick Inc. Privacy Litig.*[79] is misplaced. First, ***that New York case involved the federal ECPA, not CIPA.*** The case also contains no analysis of § 638.51 or of the "user consent" exception that Politico is trying to assert. Moreover, the ECPA and the CIPA are not analogous. The exception under 18 U.S.C. § 2701(c)(2) permits access to a communication

---

[72] Cal. Pen. Code §§ 1546(e) and (j) (emphasis added).

[73] *See Casillas v. Cypress Ins. Co.*, 770 Fed.Appx. 329, 330 (9th Cir. 2019) ("websites and services that permit users to communicate directly with one another are considered ECS providers"); *Quon v. Arch Wireless Operating Co., Inc.*, 529 F.3d 892, 902-903 (9th Cir. 2008) (wireless communications provider of text messaging pager services and provider of e-mail services are ECS providers); *Lopez*, 519 F.Supp.3d at 686 (facilities that *provide* an electronic communication service include "an email provider's servers or an ISP").

[74] *In re iPhone Application Litig.*, 844 F.Supp.2d 1040, 1057 (N.D. Cal. 2012).

[75] FACC, ¶¶ 81-88.

[76] *Cottle v. Plaid Inc.*, 536 F.Supp.3d 461, 490 (N.D. Cal. 2021).

[77] *See Crowley v. CyberSource Corp.*, 166 F.Supp.2d 1263, 1270 (N.D. Cal. 2001) (Amazon does not qualify as an ECS); *Wesch v. Yodlee, Inci*, 2021 WL 6206644, at * 3 (N.D. Cal. July 19, 2021).

[78] *Lopez*, 519 F.Supp.3d at 687.

[79] *In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp.2d 497 (S.D.N.Y. 2001).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

if it is authorized by the authors or intended recipients of that communication. No such exception exists under § 638.51(b), which allows *only* the "***provider***" of an "electronic communications service" to install or use a pen register with a user's consent. Because neither Politico nor the third-party trackers are ECS providers, the exception under § 638.51(b)(5) does not shield their conduct.

In a lengthy footnote, Politico also argues that its installation of third-party trackers is allowed because its website is an ECS and thus it is permitted to use a pen register to operate and maintain its website.[80] But first and foremost, ***Politico is a digital newspaper company and not an ECS provider.***[81] It does not "provide ***the ability*** to send or receive electronic communications," nor does it act as "an intermediary in the transmission of electronic communications."

Moreover, Politico's surreptitious disclosure to third parties is not "necessary" to the function, operation, or maintenance of the Politico website. Politico again attempts to obscure the issue by arguing that the pen register statute does not prevent a website operator from obtaining IP addresses from "ordinary user access." That argument is a red herring. The issue here is not the disclosure of IP addresses to Politico or the collection of that and other user data for the Politico website's use. ***Rather, Plaintiffs allege that (1) Politico, without authorization, installed three "pen registers" (i.e,. the third-party trackers) on Politico website users' browsers, and (2) doing so enabled the secret collection of users' personal information by unknown third parties.***[82]

In overruling similar motions, courts have found that "the allegations here suggest that the [] software tracks data beyond that which is necessary for the proper functioning of a website."[83] Politico does not argue that the collection of the additional data is necessary to operate or maintain its website. Nor does Politico argue that the collection of any data by a third party is necessary. The statutory exceptions under § 638.51(b)(1) and (5) simply do not apply.

---

[80] Cal. Pen. Code § 638.51(b)(1) provides that a "***<u>provider</u> of electronic or wire communication service*** may use a pen register or trap and trace device…to operate, maintain, and test a wire or electronic communication service."

[81] *See In re Broadcast.com, Inc.*, 2001 WL 36050382, at *3 (E.D. Tex. Dec. 12, 2001) (finding that "Broadcast.com ***operates a website and, in doing so, does not provide internet access to the public. It uses it."*** [emphasis added.]).

[82] FACC, ¶¶ 1, 7-9, 73-80, 82, 86, 88-89, 179-180.

[83] *Heiting v. Taylor Fresh Foods*, 2024 WL 3833296, at * 4. *See also Shah*, 2024 U.S. Dist. LEXIS 193032, at *14-15 (finding no consent to disclose IP address to the third parties).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

### B. Politico's Surreptitious Installation of Third-Party Tracker Cookies on Website Users' Browsers and Unauthorized Taking of Users' Data Violated the CDAFA.

By enacting the CDAFA, the California Legislature declared its intent to "expand the degree of protection afforded to individuals…from tampering, interference, damage, and unauthorized access to lawfully created computer data and computer systems."[84] A person who "[k]nowingly accesses and without permission takes, copies or makes use of any data from a computer, computer system, or computer network…" violates the CDAFA.[85]

#### 1. Plaintiffs' CDAFA claims are not subject to Rule 9(b) pleading standards. *Fraud is not an element of a CDAFA claim*.[86]

The CDAFA simply says "knowingly accesses and without permission."[87] Politico's reliance on *Nowak v. Xapo, Inc.*[88] is misplaced. There, the court's analysis focused on whether the defendants had the requisite *fraudulent intent* under the federal Computer Fraud and Abuse Act ("CFAA"). While CFAA and CDAFA are similar in *some* respects, violating the CDAFA does ***not*** require unauthorized access; instead, it requires only ***knowing access***.[89]

Here, the FACC alleges that (1) Plaintiffs owned the computers and data at issue; (2) Politico installed data (the third-party trackers) on Politico website users' browsers without authorization; (3) the trackers surreptitiously collected and used data without those users' consent; (4) Politico was unjustly enriched by accessing, taking, and using website users' data for Politico's own financial benefit; and (5) Politico website users incurred increased energy and device costs resulting from the trackers being installed on those users' browsers.[90]

#### 2. A CDAFA violation does not require overcoming technical barriers.

---

[84] Cal. Pen. Code § 502(a).
[85] Cal. Pen. Code § 502(c)(2).
[86] *See, e.g., Kochava,* 684 F.Supp.3d at 1047-1049 (analyzing CDAFA claims under plausibility standard); *Cti III, LLC v. Devine*, 2022 U.S. Dist. LEXIS 94820, at *9-13 (E.D. Cal. May 25, 2022); *Bui-Ford v. Tesla, Inc.*, 2024 U.S. Dist. LEXIS 28767, at *12-16 (N.D. Cal. Feb. 20, 2024).
[87] *See generally* Pen. Code § 502(c). *See also Facebook, Inc. v. ConnectU LLC*, 489 F.Supp.2d 1087, 1090-1091 (N.D. Cal. 2007) (rejecting argument that another phrase referenced in the CDAFA's title should overrule what the statute's provisions actually set forth).
[88] *Nowak v. Xapo, Inc.*, 2020 U.S. Dist. LEXIS 219575, at *13 (N.D. Cal. Nov. 20, 2020).
[89] *See Cti III,* 2022 U.S. Dist. LEXIS 94820, at *12 (distinguishing the CDAFA's prohibition on ***unauthorized use*** from the CFAA's prohibition on ***unauthorized access***), citing *United States v. Christensen*, 828 F.3d 763, 789 (9th Cir. 2015) (holding that the CDAFA differs from the CFAA and is interpreted differently). ***No "intent to defraud" language appears in the CDAFA.***
[90] FACC, ¶¶ 146-159.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

First, Politico misconstrues Plaintiffs' CDAFA allegations. Plaintiffs do not allege unauthorized access by Politico to its own website. Rather, the FACC alleges that by Politico's (1) unauthorized installation of third-party tracker cookies ***on users' browsers*** and (2) surreptitious disclosure of Plaintiffs' personal information to unknown third parties, Politico knowingly accessed ***Plaintiffs' computer systems*** and without permission took and used ***Plaintiffs'*** data.[91]

Second, the statute does not suggest that "overcoming technical or code-based barriers" is a requirement. The statute broadly defines "access" to mean "gain entry to, instruct, cause input to, cause output from, cause data processing with, or communicate with…."[92] Subsection (c) detailing what constitutes a violation also does not use such "overcoming" or "hacking" language and instead refers only to "***knowingly accesses and without permission***."[93] Further, Politico's erroneous argument already has been rejected by the Ninth Circuit in *U.S. v. Christensen*.[94]

Third, case law establishes clearly that Plaintiffs need not allege that Politico overcame any technical barriers.[95] Indeed, a defendant's having bypassed a technical barrier is not the only way to prove that the defendant acted "without permission."[96] Here, the FACC alleges that Politico knowingly accessed website users' browsers and that, through its surreptitious installation and use

---

[91] FACC, ¶¶ 1, 7-9, 73-80, 82, 86, 88-89, 146-152. Politico's access to its own website is irrelevant and its reliance on *Gutierrez* misplaced. *Gutierrez v. Converse, Inc.*, 2023 WL 8939221 (C.D. Cal. Oct. 27, 2023) (involving a defendant's redirection of live chat communications ***on its own website*** to a third party, not action taken on a ***user's*** web browser or computer system).
[92] Cal. Pen. Code § 502(b)(1).
[93] Cal. Pen. Code §§ 502(c)(1)-(7).
[94] *Christensen*, 828 F.3d at 789-790 (9th Cir. 2015) (affirming convictions under CDAFA of individuals who accessed databases with the authority to do so, without circumventing any technical or code-based barriers); *see McClung v. AddShopper, Inc.*, 2024 WL 189006, at *4 (N.D. Cal. Jan. 17, 2024).
[95] *See. Kochava,* 684 F.Supp.3d at 1049 (the "plain meaning of 'without permission' does not require the circumvention of computer barriers" and thus even "code hidden in embedded software may plausibly use or take computer data 'without permission'"); *West v. Ronquillo-Morgan*, 526 F.Supp.3d 737, 746 (C.D. Cal. 2020) ("[c]ircumventing technical barriers may be sufficient to show that a person acted 'without permission,' ***but that does not mean it is necessary for a person to circumvent technical barriers to act 'without permission'***").
[96] *See In re Carrier IQ, Inc.*, 78 F.Supp.3d at 1099-1101 (hidden software that transmitted data without notice and without providing an opportunity to opt out of its functionality was sufficient for a CDAFA claim). *See also DocMagic. Inc. v. Ellie Mae, Inc.*, 745 F.Supp.2d 1119, 1151 (N.D. Cal. 2010) (use of a third-party's log-in credentials, even with consent, to access servers and remove information was sufficient to state a CDAFA claim), citing *ConnectU LLC*, 489 F.Supp.2d at 1091; *Cti III, LLC*, 2022 U.S. Dist. LEXIS 94820, at *12 (logging into a database with a valid password and subsequently taking or using the information improperly violates the CDAFA).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

of third-party trackers, it added and used data without permission.[97]

Further, each of the third-party trackers embedded on Politico's website ***automatically and without permission re-installs its tracker cookies every time a user visits*** the Politico website.[98] That persistent and repeated reinstallation is sufficient to demonstrate "overcoming a technical barrier" and usurping users' choices.[99]

Fourth, liability under § 502(c) turns on whether Politico had "permission" to engage in the complained of acts. While Politico may have had permission to access users' browsers to load its webpage content and interact with users (*i.e.*, "normal internet function"), it did not have permission or users' consent to install the third-party trackers that usurp a device's normal operations or to misappropriate users' personal information and sell that data for its own profit.[100] Consent is "generally limited to the specific conduct authorized."[101]

Further, Politico has the burden of proving a consent defense.[102] Here, Plaintiffs could not have consented to the installation of third-party trackers on their web browsers because they were unaware that Politico had embedded those trackers.[103] Moreover, Politico's Privacy Policy is buried at the bottom of the webpage, and is seen, if at all, long after the trackers have been installed. No pop-up window or other notice asks for users' authorization or consent.[104] That complete lack of notice defeats any claim that Plaintiffs gave permission to Politico to access their computers, install third-party trackers, and allow those third parties to collect and use their personal information.

---

[97] FACC, ¶¶ 146-150.
[98] FACC, ¶¶ 78, 90.
[99] *See Brown*, 525 F.Supp.3d at 1075 (finding that plaintiffs stated a CDAFA claim where defendant's technology "would render ineffective any barrier that plaintiffs implemented").
[100] FACC, ¶¶ 1, 7-8, 31, 73, 77, 80, 89, 103-108, 151, 172, 180-181.
[101] *Kochava*, 684 F.Supp.3d at 1048, quoting *Javier v. Assurance IQ, LLC*, 2021 WL 940319 at *2 (N.D. Cal. Mar. 9, 2021). *See also Campbell v. Facebook Inc.*, 77 F.Supp.3d 836, 847 (N.D. Cal. 2014) (no consent to data being used for advertising where users consented to use for "data analytics"); *In re Google Assistant Privacy Litig.*, 457 F.Supp.3d 797, 824 (N.D. Cal. 2020) (***consent to data collection does not extend to data disclosure***).
[102] *Calhoun v. Google, LLC*, 2024 WL 3869446, at *5 (9th Cir. Aug. 20, 2024); *Brown*, 525 F.Supp.3d at 1063.
[103] FACC, ¶¶ 1, 7, 31, 89, 104, 151 ; *see McClung*, 2024 WL 189006 at *3, citing *Javier v. Assurance IQ, LLC*, 2022 WL 1744107 at *2 (9th Cir. 2022) [unpublished].
[104] FACC, ¶¶ 103, 105-106, 151.

Plaintiffs' allegations sufficiently state a CDAFA claim.[105]

**3. Plaintiffs allege economic harm sufficient to confer CDAFA standing.**

Politico's no cognizable damages argument ignores Plaintiffs' allegations of economic loss resulting from (1) unjust enrichment to Politico from the misappropriation ***and unauthorized sale*** of website users' data to third parties and (2) the ***increased monetary costs to users*** from the additional consumption of energy and device resources caused by the trackers. That tangible, economic harm satisfies the CDAFA "damage or loss" requirement.[106]

The CDAFA sets no monetary threshold for "damage or loss."[107] Under the plain language of the statute, *any* amount of damage or loss due to a CDAFA violation is cognizable.[108] Here, Plaintiffs allege that Politico was able to monetize website users' personal information, including IP addresses, device fingerprints, and browsing activity, and sell advertising space and earn additional revenue.[109] The FACC further alleges that Plaintiffs suffered economic harm because Politico took their valuable data without permission, failed to pay them for their misappropriated data despite there being a market for it, and then exploited that personal data ***by selling it for profit***.[110]

Politico further argues that Plaintiffs lack standing because they did not articulate the "actual value" of their misappropriated data. That assertion again ignores the allegations in the FACC providing examples of browsing history and online data values.[111] Moreover, "California law recognizes a right to disgorgement of profits resulting from unjust enrichment, even where an

---

[105] *In re Carrier IQ*, 78 F.Supp.3d at 1101; *Brown v. Google LLC*, 525 F.Supp.3d 1049, 1075 (N.D. Cal. 2021). *See also Esparza v. Kohl's, Inc.*, 2024 WL 1152732 at * 7-8 (C.D. Cal. Mar. 18, 2024) (denying motion to dismiss where CDAFA claim was predicated on website's tracking cookie accessing plaintiff's IP address to de-anonymize and extract personal information).

[106] Pen. Code § 502(e)(1); *Brown III*, 685 F.Supp.3d at 939-940 (holding that ***plaintiffs satisfied the CDAFA's damage or loss requirement because they had "a stake in the value of their misappropriated data***"). *See also Rodriguez v. Google LLC*, 2025 U.S. Dist. LEXIS 3238, at *34 (N.D. Cal. Jan. 7, 2025) ("a reasonable juror could find that Plaintiffs suffered damage or loss because Google profited from the misappropriation of their data").

[107] *Cottle v. Plaid Inc.*, 536 F.Supp.3d 461, 487 (N.D. Cal. 2021).

[108] *See* Cal. Pen. Code § 502(e)(1); *Lineberry v. AddShopper, Inc.*, 2025 WL 551864 at *2 (N.D. Cal. Feb. 19, 2025).

[109] FACC ¶¶ 6, 8, 31-32, 74, 89, 91, 155-156, 187-188, 198.

[110] *Id. See Frasco v. Flo Health, Inc.*, 2024 WL 4280933, at *3 (N.D. Cal. Sept. 23, 2024) (misappropriated information carried financial value sufficient to establish CDAFA damages); *Rodriguez v. Google LLC*, 2024 WL 38302, at *6 (N.D. Cal. Jan. 3, 2024) (certifying CDAFA class based on evidence of data's financial value and defendants' profits).

[111] FACC, ¶¶ 44-45, 155.



KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

individual has not suffered a corresponding loss." That stake in unjustly earned profits exists regardless of whether an individual planned to sell her data.[112] Here, Plaintiffs allege that their data carries financial value, including for real-time bidding, IP targeted advertising, and geomarketing, and that Politico profited by ***selling that valuable data*** without users' consent to the third-party trackers.[113] Plaintiffs' allegations are sufficient at the pleading stage.

Further, the FACC plausibly alleges that the unauthorized installation of the third-party trackers consumed additional energy resources and depleted users' battery and bandwidth, causing increased costs and economic damage.[114] Courts have recognized depletion of battery and computing resources as acceptable forms of damage or loss for purposes of a CDAFA claim.[115]

Politico's verification argument likewise fails. Politico erroneously suggests that Plaintiffs are required to "undertake an investigation" to confirm data alteration, damage, or deletion. While the CDAFA allows recovery of compensatory damages for costs incurred in verifying system integrity, the statute does ***not*** make that a required element.[116] Plaintiffs have pleaded economic harm sufficient to establish standing to bring their CDAFA claims.

### C. Politico's Unauthorized Disclosure of Personal Information Without Consent is Highly Offensive Conduct and a Serious Invasion of Privacy.

Plaintiffs properly have pleaded a Constitutional privacy claim.[117] Politico responds by again mischaracterizing the unauthorized disclosure and sale of personal information ***to third parties*** for online profiling and surveillance as "required for proper user interaction." Transmitting information ***to Politico*** while viewing its website or reading articles is not the issue.

Politico next asserts that there is no reasonable expectation of privacy in users' IP addresses which have only "generalized location" data. That is incorrect. An IP address "contains geographical location information from which the state, city, and zip code of a specific device can be

---

[112] *Facebook Tracking*, 956 F.3d at 599, 600.
[113] FACC, ¶¶ 6, 8, 31-32, 44-45, 74, 89, 91, 155-156187-188, 198.
[114] FACC, ¶ 79, 157-158.
[115] *In re Carrier IQ, Inc.*, 78 F.Supp.3d 1051, 1065 (N.D. Cal. 2015); *Williams v. Facebook, Inc.*, 498 F.Supp.3d 1189, 1199 (N.D. Cal. 2019).
[116] Cal. Pen. Code § 502(e)(1).
[117] *See* FACC, ¶¶ 178 (protected privacy interest), 179 (reasonable expectation of privacy), and 181(serious invasion of privacy).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

determined."[118] Indeed, various services can use databases to map IP addresses to physical locations, including providing the approximate latitude and longitude coordinates of a specific device. *Id.*

The Ninth Circuit has recognized that "both the common law and the literal understanding of privacy encompass the individual's control of information concerning his or her person."[119] A privacy interest exists because IP addresses constitute personally identifying information that is protected by numerous statutes.[120] Courts also have found that a defendant's selling and sharing of "sensitive personal information ***such as plaintiff's IP address***" without consent violates a reasonable expectation of privacy.[121] Further, although an IP address may be necessary to load and view a webpage, "the fact that the privacy one expects in a given setting is not complete or absolute does not render the expectation unreasonable as a matter of law."[122]

Moreover, in addition to IP addresses, the FACC alleges that Politico surreptitiously allows third parties to collect users' browser/device data and other unique, persistent information that reveal users' identities and browsing habits, including data points that allow for cross-site tracking, behavioral profiling, and pervasive online surveillance.[123] That tracking goes far beyond the use of Politico's website. A jury could find that intrusion to be a highly offensive breach of norms.[124]

Tellingly, ***Politico ignores the controlling Facebook Tracking opinion***, which has similar allegations to the present case. That opinion held that the plaintiffs had stated a claim for invasion of privacy when Facebook tracked and then compiled and sold users' browsing histories without notice or consent.[125] Politico's cited authorities are unpersuasive.[126] Further, questions of whether

---

[118] FACC, ¶ 65.
[119] *Facebook Tracking*, 956 F.3d at 598; *Kochava*, 684 F.Supp.3d at 1047.
[120] FACC, ¶ 66. *See also*, fn. 17, *supra*.
[121] *See, e.g., In re Google RTB Consumer Privacy Litig.*, 606 F.Supp.3d at 946-947 (an IP address "is personal information under California law" and is expected to remain private); *Shah*, 2024 U.S. Dist. LEXIS 193032, at *1-2, 16-17 (addressing a CIPA § 638.51 claim ***and finding that the plaintiffs reasonably expected that their IP addresses would not be shared with third parties***).
[122] *See In re Facebook Consumer Privacy User Profile Litig.*, 402 F.Supp.3d 767, 782-783 (N.D. Cal. Sept. 9, 2019).
[123] FACC, ¶¶ 1, 7-8, 72-73, 82, 86, 88-89, 91-92, 179, 198.
[124] *See Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019); *In re Facebook, Inc., Consumer Privacy User Profile Litigation*, 2019 WL 4261048, at *17.
[125] *Facebook Tracking,* 956 F.3d at 599. Like here, "Facebook gained a cradle-to-grave profile."
[126] *See, e.g., Folgelstrom v. Lamps Plus, Inc.*, 195 Cal.App.4th 986, 992 (2011) ***(sending coupons to an address obtained without consent is a world apart from the persistent, secret taking of***

conduct violates social norms "tend by their very nature to be subjective" and "these questions are typically more appropriately resolved by a jury."[127] Indeed, the Ninth Circuit has held that "the ultimate question of whether tracking and collection practices could highly offend a reasonable individual is an issue that cannot be resolved at the pleading stage."[128]

**D. Plaintiffs Are Entitled to Politico's Unjustly-Earned Profits.**

Contrary to Politico's assertion, courts recognize an independent cause of action for unjust enrichment.[129] Restitution is available if one is unjustly enriched at the expense of another.[130] "California law requires the disgorgement of unjustly earned profits ***regardless*** of … whether a defendant's actions directly caused the plaintiff's property to become less valuable."[131] Here, the FACC alleges that Politico was unjustly enriched by taking, using, and ***selling*** Plaintiffs' and Class members' data to third parties without consent "for Defendant's own financial benefit."[132]

Plaintiffs have a privacy interest in their IP addresses, geolocation data, online identifiers, and browsing histories. Plaintiffs have alleged that such information carries financial value and that a market exists for that personal data, including for the real-time bidding process, IP targeted advertising, and geomarketing. Politico also received substantial monetary compensation for allowing the third-party trackers surreptitiously to collect and use Plaintiffs' and Class members' personal information. Plaintiffs are entitled to those unjustly earned and retained profits.

**E. Plaintiffs Adequately Allege Their UCL Claims.**

Plaintiffs undeniably have a property interest in their sensitive personal data and have asserted that they "lost money or property as a result of the unfair competition."[133] As alleged in the

---

***personal data each time a user visits the Politico website);*** *Hammerling v. Google LLC*, 615 F.Supp.3d 1069, 1090 (N.D. Cal. 2022) (involving data collection regarding only the frequency of use or duration of downloaded third-party apps, not users' personal information).

[127] *Mastel v. Miniclip SA*, 549 F.Supp.3d 1129, 1139 (E.D. Cal. 2021).

[128] *Facebook Tracking*, 956 F.3d at 606.

[129] *See ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016) (holding that unjust enrichment can state a claim for relief as an independent cause of action or as a quasi-contract claim for restitution), citing *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (same). *See also Lectrodryer v. SeoulBank*, 77 Cal.App.4th 723, 726 (2000).

[130] *California Federal Bank v. Matreyek*, 8 Cal.App.4th 125, 131 (1992).

[131] *Facebook Tracking*, 956 F.3d at 599-600, citing *CTC Real Estate Servs. v. Lepe*, 140 Cal.App.4th 856, 860-861 (2006).

[132] FACC, ¶¶ 6, 8, 31-32, 74, 89, 91, 155-156, 187-188, 198.

[133] Cal. Bus. & Prof. Code § 17204.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

FACC, Plaintiffs suffered a loss of money or property because their browser/device data and personally identifying and addressing information, ***which have tangible monetary value***, were collected by the three trackers embedded on the Politico website and were disseminated and/or sold by Politico to third parties without notice or consent."[134] These allegations of unauthorized disclosure and misuse ***without just compensation*** establish an economic injury under the UCL.[135] Politico's authorities, which lack allegations of economic loss, are inapposite.

Moreover, Plaintiffs' UCL claims are not barred by Plaintiffs not having paid for Politico's services.[136] Any time users transact with a business or other entity and the users' expectations regarding personal data are not met as a result of conduct alleged to violate the UCL, the users can establish UCL standing by showing that they had to "surrender...more, or acquire...less" than they otherwise would have.[137] "[A] party who has provided goods or services in a transaction and has not been paid the fair value of those goods or services has suffered an economic injury....The same logic would apply to parties...who have provided valuable data... and have received *no* money in return."[138] Numerous courts have recognized that plaintiffs who have lost personal information have suffered economic injury.[139] The same is true here.

---

134 FACC, ¶¶ 6, 8, 31-32, 44-45, 74, 89, 91, 155-156, 187-188, 198

135 *See Calhoun*, 526 F.Supp.3d at 636 (finding that "plaintiffs who suffered a loss of their personal information suffered economic injury and had [UCL statutory] standing"); *Brown,* 685 F.Supp.3d at 942; *In re Yahoo! Inc. Cust. Data Sec. Breach Litig.*, 2017 WL 3727318, at *13 (N.D. Cal. Aug. 30, 2017) (plaintiffs adequately alleged injury in fact based on the loss of value of their personal information); *In re Anthem Inc. Data Breach Litig.*, 2016 WL 3029783, at *14 (N.D. Cal. May 17, 2016) (approving allegations of damage from the loss of value of personal information).

136 *See Fraley v. Facebook, Inc.*, 830 F.Supp.2d 785, 811 (N.D. Cal. 2011) (allegations that Facebook used plaintiffs' Facebook profiles to endorse third-party products and services, without compensation, sufficed even though the plaintiffs did not pay for Facebook's services).

137 *In re Meta Pixel Tax Filing Cases*, 724 F.Supp.3d 987, 1024 (N.D. Cal. 2024) ("*Meta Tax*"), citing *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 323 (2011). Notably, the reasoning and holding in Politico's authority, *Pruchnicki v. Envision Healthcare Corp.*, 845 Fed. App'x. 613, 614 (9th Cir. 2021), specifically were rejected by the Meta Tax court. *Id.* at 1013.

138 *Brown v. Google LLC*, 2021 WL 6064009, at *17 (N.D. Cal. Dec. 22, 2021); *Meta Tax*, 724 F.Supp.3d at 1013 (noting that privacy harms can constitute economic injury to confer UCL standing under three theories: unfair benefit-of-the-bargain to businesses that violate user expectations about how their data will be used; diminished value of personal information; and reduced right or ability to exclude others from accessing personal data).

139 *See Klein v. Facebook, Inc.*, 580 F.Supp.3d 743, 803 (N.D. Cal. 2022) (collecting cases) and *A.B. v. Google LLC*, 737 F.Supp.3d 869, 881-882 (N.D. Cal. June 18, 2024) (agreeing with the rationale of *Calhoun* and *Brown* and concluding that plaintiffs had adequately pleaded the economic injury needed to establish UCL standing).

Further, Plaintiffs have pleaded facts sufficient to establish a UCL claim. First, the "unlawful" prong of the UCL permits a cause of action to be brought if a practice violates some other law.[140] Virtually any law or regulation can serve as a predicate for a § 17200 "unlawful" violation.[141] The FACC pleads a claim for relief under the "unlawful" prong of the UCL by alleging violations of the CDAFA, CIPA, and the Cal. Constitution (¶¶ 128-160, 162-174, 176-184).

Under the balancing test[142], the FACC also has stated an "unfair" claim by alleging facts showing that the "gravity of the harm caused by Defendant secretly collecting, disclosing, and otherwise misusing Plaintiffs' and Class members' personal information and data is significant."[143] Presented with similar privacy allegations, district courts in this circuit consistently have found that plaintiffs had sufficiently alleged an "unfair" claim under the balancing test.[144]

Based on Politico's unlawful and unfair business practices, Plaintiffs seek restitution, restoration of all ill-gotten money, and injunctive relief.[145] Politico argues that Plaintiffs' claim should be dismissed because they do not lack an adequate remedy at law, citing *Sonner v. Premier Nutrition Corp*.[146] Courts have found that *Sonner* has limited applicability at the pleading stage.[147] Further, "questions about the appropriateness of specific remedies are premature at this stage of the litigation," and it is well established that "plaintiffs are permitted to plead facts and seek remedies in the alternative."[148] Moreover, the remedies under § 17200 are "cumulative," such that a plaintiff may seek both restitution and injunctive relief.[149]

---

140 *See Saunders v. Sup. Ct.*, 27 Cal.App.4th 832, 838-839 (1994).
141 *Klein v. Chevron U.S.A., Inc*., 202 Cal.App.4th 1342, 1383 (2012).
142 The balancing test "involves an examination of [that practice's] impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer." *Smith v. State Farm Mutual Automobile Ins. Co.,* 93 Cal.App.4th 700, 718-719 (2001).
143 FACC, ¶¶ 6, 8, 32, 72, 74, 89, 92, 155.
144 *In re Eureka Casino Breach Litig*., 2024 U.S. Dist. LEXIS 169803, *33-35 (Nev. Sept. 19, 2024) (finding balance test met because "the harm to the plaintiffs of having their PII stolen is potentially far greater."); *Rubio*, 613 F.3d at 1205 (holding that the harm to the consumer from Capital One's solicitation may outweigh the solicitation's utility).
145 Cal. Bus. & Prof. Code §§ 17203 and 17208; FACC, ¶¶ 201-202.
146 *Sonner v. Premier Nutrition Corp*., 971 F.3d 834 (9th Cir. 2020).
147 *Jeong v. Nexo Fin. LLC*, 2022 WL 174236, at *27 (N.D. Cal. 2022); *Carroll v. Progressive Casualty Insurance Company*, 2023 WL 3526137, at *6 (C.D. Cal., 2023).
148 *James v. UMG Recordings*, 2011 U.S. Dist. LEXIS 126221 at *17 n.3 (N.D. Cal. Nov. 1, 2011).
149 *Moore v. Mars Petcare US, Inc*., 966 F.3d 1007 (9th Cir. 2020). The rulings in *Moore* and *Sonner* as-issued are clearly in conflict and, in that setting, a district court must follow the earlier-issued

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

## IV. CONCLUSION

Politico's motion should be denied in its entirety. If the Court is inclined to grant any part of the motion, Plaintiffs request leave to amend any perceived defects.

Respectfully submitted,

Dated: September 2, 2025

**KELLER GROVER LLP**

By: /s/ *Eric A. Grover*
ERIC A. GROVER
*Attorneys for Plaintiffs*
Saber Khamooshi, Ryan Wu, and Brian Carolus

**COHELAN KHOURY & SINGER**

By: /s/ *Isam C. Khoury*
Isam C. Khoury, Esq.
*Attorneys for Plaintiff* John Deddeh

**KEEGAN & BAKER, LLP**

By: /s/ *Patrick N. Keegan*
Patrick N. Keegan, Esq.
*Attorneys for Plaintiff* John Deddeh

---

*Moore* decision. *See*, *Ferry v. Porsche Cars North America, Inc.*, 2022 WL 1769120, at *5 fn. 6 (C.D. Cal., 2022).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

**CIVIL LOCAL RULE 5-1(i)(3) ATTESTATION**

Pursuant to L.R.5-1, the filer of this document, Eric Grover, hereby attests that all other signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized this filing.

Dated: September 2, 2025

**KELLER GROVER LLP**

By: *\/S/ Eric A. Grover*
ERIC A. GROVER
*Attorneys for Plaintiffs*
Saber Khamooshi, Ryan Wu, and Brian Carolus