DANIELLE KAYS (*PRO HAC VICE*)
E-Mail: dkays@fisherphillips.com
**FISHER & PHILLIPS LLP**
10 South Wacker Drive, Suite 3450
Chicago, IL 60606
Telephone: (312) 260-4751

USAMA KAHF (SBN 266443)
E-Mail: ukahf@fisherphillips.com
**FISHER & PHILLIPS LLP**
2050 Main Street, Suite 1000
Irvine, California 92614
Telephone: (949) 851-2424
Facsimile: (949) 851-0152

CATHERINE M. CONTINO (*PRO HAC VICE*)
E-Mail: ccontino@fisherphillips.com
**FISHER & PHILLIPS LLP**
Two Logan Square, 12th Floor
100 N. 18th Street
Philadelphia, PA 19103
Telephone: (610) 230-2150
Facsimile: (610) 230-2151

Attorneys for Defendant
POLITICO LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

SABER KHAMOOSHI, RYAN WU, and BRIAN CAROLUS, individually and on behalf of a class of similarly situated individuals,

Plaintiffs,

v.

POLITICO LLC, and DOES 1 through 100, inclusive,

Defendants.

Case No: 3:24-cv-07836-SK

(Removed from San Francisco Superior Court, Case No. CGC-24-618459)

**CLASS ACTION**

**DEFENDANT POLITICO LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED CONSOLIDATED COMPLAINT**

**DATE:** **OCTOBER 20, 2025**
**TIME:** **9:30 A.M.**

Action Filed: September 26, 2024
Trial Date: None set

Page

## TABLE OF CONTENTS

I. INTRODUCTION ..... 1
II. ARGUMENT ..... 1
A. Plaintiffs cannot establish Article III standing ..... 1
1. *Plaintiffs' claims fundamentally lack concrete injury.* ..... 1
2. *Plaintiffs' cited cases are factually distinguishable.* ..... 3
3. *Plaintiffs fail to assert a tangible harm sufficient to confer Article III standing.* ..... 4
B. Plaintiffs cannot sustain a claim under CIPA Section 638.51. ..... 5
1. *Plaintiffs have no expectation of privacy in the data allegedly collected.* ..... 5
2. *Plaintiffs' contradictory allegations bar their claims.* ..... 6
3. *Plaintiffs do not allege POLITICO used a pen register.* ..... 7
4. *Plaintiffs' allegations directly conflict with the definition of what a pen register captures.* ..... 8
5. *POLITICO's conduct is expressly permitted by the statutory exception.* ..... 9
C. Plaintiffs' CDAFA claim fails. ..... 9
D. Plaintiffs' common law invasion of privacy claim fails. ..... 11
1. *Plaintiffs have no legally protected interest in routine internet use data.* ..... 11
2. *Plaintiffs' claim under the California Constitution fails.* ..... 12
E. Plaintiffs' unjust enrichment claim fails. ..... 13
F. Plaintiffs fail to allege a UCL claim. ..... 13
III. CONCLUSION ..... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.B. by & Through Turner v. Google LLC*,
737 F.Supp.3d 869 (N.D. Cal. 2024) ....................15

*In re Anthem, Inc. Data Breach Litig.*,
No. 15-MD-02617-LHK, 2016 WL 3029783 (N.D. Cal. May 27, 2016) ....................14

*Astiana v. Hain Celestial Grp., Inc.*,
783 F.3d 753 (9th Cir. 2015) ....................13

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) ....................3, 6, 14

*Bui-Ford v. Tesla, Inc.*,
No. 4:23-CV-02321, 2024 WL 694485 (N.D. Cal. Feb. 20, 2024) ....................10

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) ....................14

*California Federal Bank v. Matreyek*,
8 Cal. App. 4th 125 (1992) ....................13

*Carolus et al. v. Nexstar Media Inc.*
(N.D. Cal. Nov. 7, 2024), ECF No. 15 ....................5

*Carolus v. Nexstar Media Inc.*,
No. 24-CV-07790-VC, 2025 WL 1338193 (N.D. Cal. Apr. 9, 2025) ....................3

*Casillas v. BOP LLC*,
24STCV15581 (Cal. Super. Ct. L.A. Cty. June 18, 2025) ....................9

*Casillas v. Transitions Optical, Inc.*,
No. 23STCV30742, 2024 WL 4873370 (Cal. Super. Sep. 9, 2024) ....................9

*Cottle v. Plaid Inc.*,
536 F. Supp. 3d 461 (N.D. Cal. 2021) ....................11

*DocMagic, Inc. v. Ellie Mae, Inc.*,
745 F. Supp. 2d 1119 (N.D. Cal. 2010) ....................10

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) ....................11

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) ....................2

*In re Eureka Casino Breach Litig.*,
2024 WL 4253198 (D. Nev. Sept. 19, 2024) ....15

*In re Facebook Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ....2, 5

*In re Facebook Priv. Litig.*,
791 F. Supp. 2d 705 (N.D. Cal. 2011), aff'd, 572 F. App'x 494 (9th Cir. 2014) ....13

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ....12, 13

*Facebook, Inc. v. ConnectU LLC*,
489 F. Supp. 2d 1087 (N.D. Cal. 2007) ....10

*Ferry v. Porsche Cars N. Am., Inc.*,
2022 WL 1769120 (C.D. Cal. Mar. 11, 2022) ....15

*Folgelstrom v. Lamps Plus, Inc.*,
195 Cal. App. 4th 986 (2011) ....12

*Gabrielli v. Insider, Inc.*,
No. 24-CV-01566 (ER), 2025 WL 522515 (S.D.N.Y. Feb. 18, 2025) ....4, 5

*In re: Gannett Co. Internet Tracking Litigation*,
Case No. 3:24-cv-05150-MMC (N.D. Cal. Aug. 14, 2024), ECF. No. 53 ....5

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) ....6, 10, 12

*Gutierrez v. Converse, Inc.*,
No. 2:23-cv-06547-RGK-MAR, 2023 WL 8939221 (C.D. Cal. Oct. 27, 2023) ....11

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ....12

*Heiting v. HP Inc.*,
No. 24STCV29634 (Cal. Super. Ct. L.A. Cty. August 1, 2025) ....7

*Hill v. Nat'l Collegiate Athletic Ass'n*,
7 Cal. 4th 1 (1994) ....12

*James v. UMG Recordings, Inc.*,
2011 WL 5192476 (N.D. Cal. Nov. 1, 2011) ....15

*Javier v. Assurance IQ, LLC*,
No. 21-16351, 2022 WL 1744107 (9th Cir. May 31, 2022) ....6

*Jeong v. Nexo Fin. LLC*,
2022 WL 174236 (N.D. Cal. Jan. 19, 2022) ....15

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) ....................14

*Khamooshi v. POLITICO LLC*,
No. 24-CV-07836-SK, 2025 WL 1408896 (N.D. Cal. May 13, 2025) ....................2

*Kishnani v. Royal Caribbean Cruises Ltd.*,
No. 25-CV-01473-NW, 2025 WL 1745726 (N.D. Cal. June 24, 2025)....................2, 5, 6, 8

*Klein v. Chevron U.S.A., Inc.*,
202 Cal.App.4th 1342 (2012) ....................15

*Klein v. Facebook, Inc.*,
580 F.Supp.3d 743 (N.D. Cal. 2022) ....................15

*Lazy Y Ranch Ltd. v. Behrens*,
546 F.3d 580 (9th Cir. 2008) ....................6

*Mastel v. Miniclip*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021)....................12

*Matera v. Google Inc.*,
No. 15-CV-04062-LHK, 2016 WL 8200619 (N.D. Cal. Aug. 12, 2016)....................6

*McClung v. AddShopper, Inc.*,
No. 23-CV-01996-VC, 2024 WL 189006 (N.D. Cal. Jan. 17, 2024) ....................10

*Mirmalek v. Los Angeles Times Commc'ns LLC*,
No. 24-CV-01797-CRB, 2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) ....................3, 6

*Mitchener v. CuriosityStream, Inc.*,
No. 25-CV-01471-NW, 2025 WL 2272413 (N.D. Cal. Aug. 6, 2025) ....................2, 5, 6, 8

*Moody v. C2 Educ. Sys. Inc.*,
742 F. Supp. 3d 1072 (C.D. Cal. July 25, 2024)....................3, 6

*Mort v. United States*,
86 F.3d 890 (9th Cir. 1996) ....................13

*Nacarino v. KSF Acq. Corp*.,
642 F. Supp. 3d 1074 (N.D. Cal. 2022) ....................13

*Nowak v. Xapo, Inc.*,
No. 5:20-CV-03643-BLF, 2020 WL 6822888 (N.D. Cal. Nov. 20, 2020)....................9

*Palacios v. Fandom*,
24STCV11264 (Cal. Super. Ct. L.A. Cty. March 27, 2025) ....................7

*Price v. Headspace, Inc.*,
No. 24STCV19921, 2025 WL 1237977 (Cal. Super. Apr. 1, 2025) ....................8, 9

*Pruchnicki v. Envision Healthcare Corp.*,
845 Fed. App'x. 613 (9th Cir. 2021) ....................14

*Rodriguez v. Autotrader.com, Inc.*,
No. 2:24-CV-08735-RGK-JC, 2025 WL 1085787 (C.D. Cal. Apr. 4, 2025)....................3, 5

*Roe v. Amgen, Inc.*,
No. 2:23-cv-07448-MCS-SSC, 2024 WL 2873482 (C.D. Cal. June 5, 2024)....................11

*Rubio v. Capital One Bank*,
613 F.3d 1195 (9th Cir. 2010) ....................15

*Shah v. Fandom, Inc.*,
No. 24-CV-01062-RFL, 2024 WL 4539577 (N.D. Cal. Oct. 21, 2024)....................3, 6, 12

*Smith v. State Farm Mut. Auto. Ins. Co.*,
93 Cal.App.4th 700 (2001) ....................15

*United States v. Acevedo-Lemus*,
No. SACR 15-00137-CJC, 2016 WL 4208436 (C.D. Cal. Aug. 8, 2016), aff'd,
800 F. App'x 571 (9th Cir. 2020) ....................11

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008) ....................11

*Wesch v. Yodlee*,
No. 20-cv-05991-SK, 2021 WL 1399291 (N.D. Cal. February 16, 2021) ....................11

*Williams v. Facebook, Inc.*,
384 F. Supp. 3d 1043 (N.D. Cal. 2018) ....................11

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
No. 16-MD-02752-LHK, 2017 WL 3727318 (N.D. Cal. Aug. 30, 2017)....................14

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ....................6

*Zarif v. Hwareh.com, Inc.*,
No. 23-CV-0565-BAS-DEB, 2025 WL 486317 (S.D. Cal. Feb. 13, 2025) ....................10

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014) ....................6

**Statutes**

Cal. Civ. Code §§ 1798.110, 1798.115, 1798.120....................4

Cal. Code Regs. tit. 11, § 7012(e)....................4

Cal. Penal Code § 502(c)(1)....................9

# I. INTRODUCTION

Plaintiffs' Opposition cannot cure their continued lack of standing and inability to plead a cause of action. Indeed, Plaintiffs lack standing because they do not—and cannot—allege a concrete injury. The recent, controlling Ninth Circuit decision in *Popa v. Microsoft Corp.* made clear that collection of a user address and behavior on a website was not a concrete injury to confer standing. *See* No. 24-14, 2025 WL 2448824, at *4 (9th Cir. Aug. 26, 2025). Applied here, Plaintiffs cannot establish standing, and their claims must be dismissed with prejudice. And on the merits, Plaintiffs rely on conclusory and vague allegations meant to distract the court rather than pleading facts sufficient to state actionable claims.

# II. ARGUMENT

## A. Plaintiffs cannot establish Article III standing.

### 1. *Plaintiffs' claims fundamentally lack concrete injury.*

The Ninth Circuit has made clear that Plaintiffs lack standing in a case just like this. *Popa*, 2025 WL 2448824, at *2, 5. Relying on *TransUnion,* the Court rejected generalized invasion of privacy harms as sufficient to establish Article III standing. *Id.* at *5 (a standing inquiry [must be] particularized to a plaintiff's circumstances and benchmarked to a specific tort"). In *Popa*, the Ninth Circuit further affirmed dismissal of claims for lack of standing, where the defendant's tracking software captured non-sensitive, non-private information, such as products browsed, mouse movement, clicks, and her mailing address. *Id*. at *2, 5. The Ninth Circuit described such tracking to a store clerk observing customer behavior to identify popular aisles or spot potential sales issues—conduct far removed from the "highly offensive" interferences or disclosures actionable at common law. *Id*. at *5.

Plaintiffs incorrectly claim *Popa* is distinguishable because that case involved session-replay technology as opposed to third-party cookies at issue here. But the specific method of collection is immaterial; rather, the type of information allegedly collected and resulting lack of harm are the focus of the standing analysis. *Popa* is entirely controlling because there, the software allegedly tracked plaintiff's browser type, operating system, location, mouse movements, text input, and scrolling activity. *Id*. at *2. Similarly, Plaintiffs here allege that third-party trackers captured "IP addresses,

browser and/or device/operating system data, browsing activity, geolocation information, and/or other personal data." Dkt. 49, ¶ 115. Just as in *Popa*, Plaintiffs have not identified any specific harms ***they actually experienced*** related to their interaction with the POLITICO website that could render such tracking "highly offensive to a reasonable person." *Id*. at *5. Indeed, Plaintiffs believe a generalized "invasion of privacy" is all they need. *See* Dkt. 65, p. 13 ("invasion-of-privacy harm alone establishes Plaintiffs' standing as to all claims").

Furthermore, Plaintiffs' reliance on *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020) ("*In re Facebook*") to claim violation of the statute is enough to confer standing misstates and ignores the Ninth Circuit's directive regarding that decision. *Popa* expressly recognizes that *In re Facebook* predated *TransUnion* and "finds no support in *TransUnion*," which made "no distinction between 'procedural' and 'substantive' statutory provisions," unlike the Ninth Circuit's earlier decisions in *In re Facebook* and *Eichenberger v. ESPN, Inc.*, 876 F.3d 979 (9th Cir. 2017). *Popa*, 2025 WL 24488824, at *7. Furthermore, contrary to Plaintiffs' assertions, the Ninth Circuit in *Popa* made clear it did not re-affirm and "would not revisit *Eichenberger* and *In re Facebook*," noting those cases turned on their specific facts and different statutes, and held that *Popa* still failed to allege standing, affirming dismissal. *Id*. at * 8. The same result follows here. Plaintiffs merely assert that third-party cookies collected browsing activity, device fingerprints, geolocation, IP addresses, and other generalized information. Dkt. 49, ¶ 91. But, as in *Popa*, Plaintiffs never allege that their data was actually misused, nor do they identify any protectable information that was collected. Absent a concrete injury tethered to a common-law tort, their claims fail.

District courts within this Circuit have reached the same conclusion. *See, e.g., Mitchener v. CuriosityStream, Inc.*, No. 25-CV-01471-NW, 2025 WL 2272413, at *5 (N.D. Cal. Aug. 6, 2025) (dismissing claims based on hypothetical harms without concrete harm); *Khamooshi v. POLITICO LLC*, No. 24-CV-07836-SK, 2025 WL 1408896, at *2 (N.D. Cal. May 13, 2025) (plaintiff must identify "specific personal information" that implicates a protectable privacy interest) (quoting *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 864 (S.D. Cal. 2023)); *Kishnani v. Royal Caribbean Cruises Ltd.*, No. 25-CV-01473-NW, 2025 WL 1745726, at *3 (N.D. Cal. June 24, 2025) (no standing where plaintiff alleged only that defendant collected unspecified "data" or "information" without

permission); *see also Rodriguez v. Autotrader.com, Inc.*, No. 2:24-CV-08735-RGK-JC, 2025 WL 1085787, at *1 (C.D. Cal. Apr. 4, 2025)(dismissing tester plaintiff's case for lack of standing). Even if Plaintiffs could plausibly allege some injury, which they cannot, the routine collection of basic contact information of website visitors is not an invasion of a legally protected privacy right. *See Carolus v. Nexstar Media Inc.*, No. 24-CV-07790-VC, 2025 WL 1338193, at *1 (N.D. Cal. Apr. 9, 2025) (finding no injury in fact when the same plaintiff as in this case alleged that defendant tracked "browser and device data" and "other identifying information."). Plaintiffs fail to allege any concrete, particularized injury comparable to reputational harm, disclosure of private facts, or intrusion upon seclusion--harms that *TransUnion* recognizes as sufficient.

2. *Plaintiffs' cited cases are factually distinguishable.*

Plaintiffs' reliance on *Mirmalek* and *Shah* is misplaced. Both cases involve allegations that the defendant tracked plaintiff "across multiple visits for marketing and advertising purposes." *See Mirmalek v. Los Angeles Times Commc'ns LLC*, No. 24-CV-01797-CRB, 2024 WL 5102709, at *4 (N.D. Cal. Dec. 12, 2024); *Shah v. Fandom, Inc.*, No. 24-CV-01062-RFL, 2024 WL 4539577, at *5 (N.D. Cal. Oct. 21, 2024). Here, Plaintiffs have not alleged defendant tracked individual movements across the Internet. Plaintiffs do not allege in their Complaint that Defendant identified, tracked, or targeted them. The Complaint concludes what trackers might do, but do not assert facts regarding Defendant or describe facts that apply to Plaintiffs' experiences. *See, e.g.,* Dkt. 49, ¶¶ 54, 55, 76, 102. Plaintiffs' other cited cases are similarly inapposite as they involve allegations not alleged here. *See Brown v. Google LLC*, 685 F. Supp. 3d 909, 919 (N.D. Cal. 2023) (defendant assured users it would not collect data during private browsing but nevertheless collected, aggregated, and sold that information without consent); *Moody v. C2 Educ. Sys. Inc.*, 742 F. Supp. 3d 1072, 1078 (C.D. Cal. July 25, 2024) (defendant allegedly uncovered visitor identities and captured user-inputted data, including name, date of birth, and address). These cases are inapplicable.

Plaintiffs claim that both federal and California state law have afforded certain protections to IP addresses, browsing data, and device data, but that claim lacks important context. For example, in *In re Google*, the defendant allegedly provided "highly specific information," including "unique identifiers, device identifiers, geolocation, IP address, cookie match, and other information" and

"specific content of account holders' internet communications and highly detailed personal profile information about peoples' interests, race, religion, sexual orientation, and health status." 606 F.Supp.3d 935, 939 (N.D. Cal. 2022). Likewise, Plaintiffs' invocation of the California Consumer Privacy Act ("CCPA") ignores that the CCPA does not prohibit collection or disclosure of IP addresses; instead, it allows business to obtain consent under an "opt-out" framework, meaning there is no requirement to obtain opt-in consent prior to collection. *See* Cal. Code Regs. tit. 11, § 7012(e) (regulating contents of consumer notice); Cal. Civ. Code §§ 1798.110, 1798.115, 1798.120 (providing right to "opt-out" of data collection). Thus, Plaintiffs' suggested interpretation of Section 638.51 would improperly override and supplant the detailed statutory framework in the CCPA. Finally, Plaintiffs' reference to the Health Insurance Portability and Accountability Act ("HIPAA") is completely irrelevant. POLITICO is not a HIPAA-covered entity, and HIPAA therefore has no application to this case.

The law is clear that a statutory privacy right under the California Invasion of Privacy Act ("CIPA") does not constitute an injury in fact. Plaintiffs conveniently ignore *Popa*'s interpretation of post-*TransUnion* authority which "requires a plaintiff to demonstrate more than just a statutory violation when evaluating whether a plaintiff has alleged a concrete injury." *Popa*, 2025 WL 2448824, at *7. Plaintiffs' reliance on case law decided prior to *TransUnion* should be disregarded. Yet, even if a bare statutory violation could establish a concrete injury, it is certainly insufficient for CIPA claims. *See Gabrielli v. Insider, Inc.*, No. 24-CV-01566 (ER), 2025 WL 522515, at *8 (S.D.N.Y. Feb. 18, 2025) (Section 638.51 of CIPA "does not codify a substantive privacy right that bears a close relationship to a traditionally recognized harm" because the statute only limits the *manner* in which a person can collect information). Plaintiffs cannot satisfy Article III standing by simply alleging a violation of CIPA. Plaintiffs' bare assertion of a statutory violation, untethered from any concrete harm, cannot establish Article III standing.

3. *Plaintiffs fail to assert a tangible harm sufficient to confer Article III standing.*

Plaintiffs' allegations related to the economic value of their data are purely speculative. Plaintiffs have not alleged any economic harm or monetary loss; thus, Plaintiffs have not incurred a tangible harm. Courts evaluating the same arguments with the same facts consistently hold a plaintiff

does not have standing by merely alleging a party profited off another; rather, a court must evaluate whether a plaintiff has suffered "any observable loss[.]" *See Gabrielli v. Insider, Inc.*, No. 24-CV-01566 (ER), 2025 WL 522515, at *7 (S.D.N.Y. Feb. 18, 2025) (court must review whether "disclosure of plaintiffs' highly personalized information to third-parties resulted in multiple violations of their legally protected privacy interests," not just whether "defendant profited off information associated with plaintiffs[.]"). Again, *Popa* distinguished *In re Facebook*, but the case also is inapplicable here because Facebook itself allegedly tracked its users "continued to capture information after a user logged out of Facebook and visited other websites[,]" which is not alleged here. *In re Facebook*, 956 F.3d at 596. Plaintiffs have not alleged (and cannot allege) monetary loss and lack Article III standing.

**B. <u>Plaintiffs cannot sustain a claim under CIPA Section 638.51.</u>**

1. *Plaintiffs have no expectation of privacy in the data allegedly collected.*

Plaintiffs' inclusion in the Amended Complaint of additional information allegedly collected still does not state a CIPA claim: Plaintiffs voluntarily visited[1] POLITICO's website and shared no personally identifiable information. Plaintiffs allege that "their IP addresses, browser and/or device/operating system data, browsing activity, geolocation information, and/or other personal data" were "collected by and/or disclosed to the third-party trackers embedded in the Politico website." Dkt. 49, ¶ 115. But recent decisions from this District make clear that collecting the "metadata" of the communication is not an invasion of privacy under CIPA because a person "has no expectation s to that type of data (e.g., his IP address or general geographic location)." *Mitchener*, 2025 WL 2272413, at *5; *Kishnani*, 2025 WL 1745726, at *5. In each case, the plaintiffs alleged collection of the same type of information at issue here—device and browser information, geographic information, referral tracking, and URL tracking, and device fingerprinting—and the courts dismissed plaintiffs' Section

[1] *See Rodriguez*, 2025 WL 1085787, at *1. The court held that because a tester "actively seeks out privacy violations," plaintiff "had no expectation of privacy when she visited defendant's website and, therefore, lacked an injury in fact sufficient to establish standing." *Id*. (internal quotations omitted). Here, the same Plaintiffs represented by the same Plaintiffs' counsel filed identical claims alleging the same legal theories against two other media businesses besides POLITICO, one filed shortly before the present case and the other filed after this case. *See* RJN, Ex. A [*In re: Gannett Co. Internet Tracking Litigation*, Case No. 3:24-cv-05150-MMC (N.D. Cal. Aug. 14, 2024), ECF. No. 53); RJN, Ex. B [*Carolus et al. v. Nexstar Media Inc.* (N.D. Cal. Nov. 7, 2024), ECF No. 15]. Based on Plaintiffs' present complaint [Dkt. 49] and Plaintiffs' allegations in the two other CIPA lawsuits they filed, the Court should find that Plaintiffs are "testers" and had no expectation of privacy when visiting POLITICO's website.

638.51 claim. *Mitchener*, 2025 WL 2272413, at *1; *Kishnani*, 2025 WL 1745726, at *1. This case must face the same result.

Plaintiffs' cited authorities fail to save their CIPA claims. First, *Javier v. Assurance IQ, LLC* and *Materia v. Google, Inc.* only interpreted CIPA Section 631(a), which addresses wiretapping, not pen registers. *Javier v. Assurance IQ, LLC*, No. 21-16351, 2022 WL 1744107, at *2 (9th Cir. May 31, 2022); *Matera v. Google Inc.,* No. 15-CV-04062-LHK, 2016 WL 8200619, at *1 (N.D. Cal. Aug. 12, 2016). Second, the plaintiff in *Deivaprakash v. Conde Nast Digital* alleged that third party cookies shared information related to users' incomes and other characteristics allowing advertisers to "identify users as they browse the internet" and "hinder users' ability to remain anonymous." No. 25-CV-04021-RFL, 2025 WL 2541952, at *4 (N.D. Cal. Sept. 4, 2025). That is not the case here. The other cases cited should be similarly disregarded, as they allege different facts, collection, and information. *See Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024 (S.D. Cal. 2023) (alleging collection of specific in-app communications, usernames, emails, customer IDs, search terms, and user activities); *Mirmalek*, 2024 WL 5102709, at *4 (alleging tracking of users "across multiple visits for marketing and advertising purposes"); *Shah*, 2024 WL 4539577, at *5 (same); *Brown*, 685 F. Supp. 3d at 919 (Google allegedly collected, aggregated and sold private browsing data on third party websites despite promises otherwise); *Moody*, 742 F. Supp. 3d at 1078 (alleged collection of name, date of birth, and address, and other user-inputted sensitive data).

Courts make clear that routine technical and transactional data, such as names, email addresses, IP addresses, device identifiers, browsing history, and session information, are not the type of sensitive, substance-bearing communications CIPA protects. *See Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082-83 (C.D. Cal. 2021); *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106-09 (9th Cir. 2014). For these reasons, Plaintiffs' Section 638.51 claim must be dismissed.

2. *Plaintiffs' contradictory allegations bar their claims.*

Plaintiffs cannot defend their own allegations that show POLITICO did not send IP addresses to third parties. Contrary to Plaintiffs' suggestions otherwise, a court evaluating a motion to dismiss should consider Plaintiffs' contradictory allegations contained in their Complaint. *See Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008) (a court need not accept contradicting documents

referenced in the complaint as true when adjudicating motion to dismiss). Plaintiffs' Figures 1, 3, and 5 confirms that each HTTP request POLITICO allegedly sent to third parties contained IP addresses. Plaintiffs' Opposition reflects their counsel's misunderstanding of what their own Figures show. The "Request" in each Figure shows the user's request to POLITICO's website, and the "Response" shows POLITICO's response. Dkt. 49, ¶¶ 82, 86, 88. The "Response" shows that that ***a third party responded to POLITICO's request to the website visitor with an IP address***, but that is it—the Figures ***do not show that POLITICO transmitted the IP address to the third party*** because the IP address is not displayed on the Request side of each Figure. This completely defeats, and contradicts, the whole basis of their claims. To argue that POLITICO has introduced "unsupported evidence" into its Motion when it is merely relying only on the allegations contained in Plaintiffs' Complaint is nothing more than an attempt to distract the court from Plaintiffs' own contradictions.

3. *Plaintiffs do not allege POLITICO used a pen register.*

Plaintiffs fail to allege that POLITICO's conduct amounts to use of a pen register or trap and trace device because they do not assert the information collected reflects the destination of communications coming from the user's device or incoming communications coming to the user's device. To the contrary, Plaintiffs admit that the third-party cookies only collect information about visitors ***to a website***, not information about all of those website visitors. Dkt. 49, ¶¶ 48, 52, 57, 73. Traditionally, a pen register installed on a phone line records phone numbers for the user's outgoing communications, and a trap and trace device records caller phone numbers coming from a user's phone line. Plaintiffs argue that by using third party trackers, POLITICO operated a pen register or a trap and trace device and obtained their IP addresses and other unspecified information. But Plaintiffs cannot identify which device POLITICO allegedly used, demonstrating how Section 638.51 is inapplicable to the conduct alleged. Two cases clearly illustrate the fatal flaws in Plaintiffs' pleading. In *Heiting v. HP, Inc.* and *Palacios v. Fandom, Inc.*, the courts dismissed Section 638.51 claims because plaintiffs failed to allege that defendants used a device to track "incoming data that identifies who is contacting the target." RJN, Ex. C [*Palacios v. Fandom*, 24STCV11264 (Cal. Super. Ct. L.A. Cty. March 27, 2025) at *6]; RJN, Ex. D [*Heiting v. HP Inc.*, No. 24STCV29634 (Cal. Super. Ct. L.A. Cty. August 1, 2025) at *4] ("Plaintiff makes no allegation, however, that Defendant's website puts any sort of

wiretap or tracker on Plaintiff that allows Defendant to monitor who else contacts Plaintiff"). The same conclusion is warranted here because Plaintiffs have not alleged that POLITICO's website installed any tracker capable of identifying the external websites they visited. Plaintiffs' argument makes no sense in the context of the Internet, as the cookies neither collect communications coming in or going out. Rather, the cookies only collect data on the device itself. Thus, Section 638.51 does not apply.

Plaintiffs further insist that Section 638.51 is not limited to telephones, but they ignore the statute's explicitly stated purpose: to "clarify that any location information obtained by a pen register or a track [sic] and trace device is limited to the information that can be determined from the telephone number." Dkt. 64, p. 13. Moreover, internet cookies were widely used in 2015 when Section 638.51 was enacted; certainly, if the Legislature's intended purpose in enacting Section 638.51 was to apply it to devices other than telephones, it would have stated so. *See Apple Inc*, 56 Cal. 4th at 137 ("The Legislature is deemed to be aware of existing laws and judicial decisions in effect at the time legislation is enacted and to have enacted and amended statutes in the light of such decisions as have a direct bearing upon them.") (internal quotations omitted). In short, the legislative history, statutory framework, and subsequent case law of CIPA does not support the expansion of Section 638.51 to include technology that collects IP addresses. Dkt. 64, p. 14.

4. *Plaintiffs' allegations directly conflict with the definition of what a pen register captures.*

Plaintiffs' allegations regarding the information collected by third-party cookies are facially contradictory. Plaintiffs claim the information collected is so detailed and personal that it enables companies to conduct sustained and intrusive surveillance through comprehensive behavior profiling and dossier building, amounting to an invasion of privacy. At the same time, plaintiffs argue that the data is not so detailed to constitute "contents" under Section 638.50(c). Plaintiffs cannot have it both ways, as it is their burden—not POLITICO's—to sufficiently allege a violation of the statute. Courts in this District and in California have held that contents of a communication apply to a higher level of personal information—i.e., a "fingerprint" revealing "biological information." *Kishanni*, 2025 WL 1745726, at *4; *Mitchener*, 2025 WL 2272413, at *5; *Price v. Headspace, Inc.*, No. 24STCV19921,

2025 WL 1237977, at *3 (Cal. Super. Apr. 1, 2025). The type of information Plaintiff alleges POLITICO collected constitutes "contents of a communication" which is expressly excluded from the definition of a pen register. *See Price*, 2025 WL 1237977, at *3 ("the crucial distinction from other devices is that [a pen register is] designed to capture information <u>about the communication,</u> but <u>not the content of the communication</u> itself."). Therefore, the allegations directly conflict with the statutory definition of a pen register device; if the device is capturing the "content of the communication," is, by definition, not a pen register.

5. *POLITICO's conduct is expressly permitted by the statutory exception.*

Plaintiffs argue that "TripleLift, Index Exchange, and Xandr provide marketing and advertising services," but none of those entities are defendants here. The only named Defendant, POLITICO, qualifies as an electronic communications service. At least two California state courts have held, in the context of CIPA pen register claims involving third-party cookies, websites are electronic service providers as defined by statute. *See Casillas v. Transitions Optical, Inc.*, No. 23STCV30742, 2024 WL 4873370, at *4 (Cal. Super. Sep. 9, 2024) ("The broad definition of "electronic communications" reasonably indicates that an electronic communications service provider includes website operators."); RJN, Ex. E [*Casillas v. BOP LLC*, 24STCV15581, at *4 (Cal. Super. Ct. L.A. Cty. June 18, 2025)]. POLITICO's conduct falls under the statutory exception, and Plaintiffs cite no authority on point.

**C. <u>Plaintiffs' CDAFA claim fails.</u>**

Plaintiffs' CDAFA claim fails at the outset because it indisputably is grounded in fraud and does not satisfy Rule 9(b)'s heightened pleading standard. Plaintiffs shockingly assert that "fraud" is not an element of a CDAFA claim. Beyond the fact that the statute's full title is the California Computer Data Access and **<u>Fraud</u>** Act, the statute clearly criminalizes certain conduct intended to "devise or execute any scheme or artifice to ***defraud***, deceive, or extort[.]" Cal. Penal Code § 502(c)(1) (emphasis added). Plaintiffs also mischaracterize *Nowak v. Xapo*. In that case, ***the court did in fact evaluate plaintiff's claims under the CDAFA*** (as well as the Computer Fraud and Abuse Act ("CFAA")) and subjected plaintiff's allegations to the heightened pleading standards under Rule 9(b). *Nowak v. Xapo, Inc.*, No. 5:20-CV-03643-BLF, 2020 WL 6822888, at *5 (N.D. Cal. Nov. 20, 2020) (applied heightened pleading standard of Rule 9(b) because "Plaintiff's **CDAFA** claim "sound[s] in

fraud). The court ultimately dismissed the claim, holding that the plaintiff "fail[ed] to allege that Defendant was involved in the hacking itself, directly or indirectly," and "that Defendant had the requisite knowledge to impose liability for assisting the hacking." *Id*.

Second, Plaintiffs must plead that POLITICO overcame technical barriers. Plaintiffs cite *Bui-Ford* and *McClung*, which relied on *U.S. v. Christensen*, arguing that Section 502 "does not require unauthorized access to information, but rather the unauthorized taking and using of such information." *McClung v. AddShopper, Inc.*, No. 23-CV-01996-VC, 2024 WL 189006, at *4 (N.D. Cal. Jan. 17, 2024). But Plaintiffs ignore that in *Bui-Ford*, the court explicitly stated that *Christensen* "did not displace case law requiring a defendant to 'circumvent[ ] technical or code based barriers' to access a computer 'without permission.'" *Bui-Ford v. Tesla, Inc.*, No. 4:23-CV-02321, 2024 WL 694485, at *5 (N.D. Cal. Feb. 20, 2024) (citing *Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1053–54 (N.D. Cal. 2014) and *Facebook, Inc. v. Power Ventures, Inc.*, 844 F. Supp. 2d 1025, 1036 (N.D. Cal. 2012)).

The additional cases Plaintiffs cite in support of their CDAFA claim are factually distinguishable. Plaintiffs' allegations center on POLITICO's alleged interception of IP addresses, browser and device data, browsing history, and geolocation information. Yet the cases cited by Plaintiffs involve allegations of defendants collecting information beyond what is automatically disclosed by a user's device when visiting a website. *See*, *e.g., Greenley*, 684 F. Supp. 3d at 1035 (communications from plaintiff's phone); *DocMagic, Inc. v. Ellie Mae, Inc.*, 745 F. Supp. 2d 1119 (N.D. Cal. 2010) (login credentials and software keys); *Facebook, Inc. v. ConnectU LLC*, 489 F. Supp. 2d 1087 (N.D. Cal. 2007) (login information). Moreover, the allegations here are not like those in *In re Carrier IQ, Inc.*, where defendant allegedly installed "deeply hidden" software on plaintiffs' devices that purposely designed to run "in the background" without user knowledge or the ability to disable it, and without any opportunity to opt in or out. 78 F. Supp. 3d 1051, 1061-62 (N.D. Cal. 2015). Thus, CDAFA's application to the facts of this case fail as a matter of law.

Lastly, Plaintiffs fail to allege any damages or losses associated with their alleged visits to POLITICO's website. Plaintiffs have not alleged that their data, associated with their identity in particular, has been misappropriated or sold. *See Zarif v. Hwareh.com, Inc.*, No. 23-CV-0565-BAS-DEB, 2025 WL 486317, at *13 (S.D. Cal. Feb. 13, 2025) (dismissing CDAFA claim involving third-

party tracker present on website because plaintiff failed to allege her data was sold or defendant was unjustly enriched); *Roe v. Amgen, Inc.*, No. 2:23-cv-07448-MCS-SSC, 2024 WL 2873482 at *7 (C.D. Cal. June 5, 2024) (same). Second, courts have held that this category of damages is not compensable under CDAFA. *See*, *e.g., Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 488 (N.D. Cal. 2021) (dismissing CDAFA claim because loss of control over data, loss of data value, and the loss of data protection are not compensable under statute); *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1082 (N.D. Cal. 2023) ( "diminished value of information" sufficient to support CDAFA claim).

Plaintiffs' claim that costs from additional energy and resources caused by trackers also fails because Plaintiffs do not allege that they actually experienced increased costs after visiting POLITICO's website. Courts regularly dismiss CDAFA claims where plaintiffs fail to identify any injury to themselves. *See*, *e.g., Wesch v. Yodlee*, No. 20-cv-05991-SK, 2021 WL 1399291, at *7 (N.D. Cal. February 16, 2021); *Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1049 (N.D. Cal. 2018); *Gutierrez v. Converse, Inc.*, No. 2:23-cv-06547-RGK-MAR, 2023 WL 8939221, at *4 (C.D. Cal. Oct. 27, 2023). Because Plaintiffs plead no facts showing that they personally incurred any economic loss or damages, their CDAFA claim must be dismissed.

**D. Plaintiffs' common law invasion of privacy claim fails.**

1. *Plaintiffs have no legally protected interest in routine internet use data.*

Plaintiffs' invasion of privacy theory fails because the data allegedly collected—IP addresses, device fingerprints, geolocation information, and browsing activity (Dkt. 49, ¶ 178)—is not highly sensitive or personal information that California law protects. Courts repeatedly hold that no reasonable expectation of privacy exists in information routinely disclosed to third parties through ordinary internet use in the invasion of privacy context. *See United States v. Acevedo-Lemus*, No. SACR 15-00137-CJC, 2016 WL 4208436, at *4 (C.D. Cal. Aug. 8, 2016), aff'd, 800 F. App'x 571 (9th Cir. 2020) (no expectation of privacy over IP address because defendant regularly disclosed it to third parties); *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008) ("Internet users have no expectation of privacy in the . . . IP addresses of the websites they visit because they should know that this information is provided to and used by Internet service providers for the specific purpose of directing the routing information.").

The cases on which Plaintiffs rely are inapposite. Critically, *Shah* did not involve an invasion of privacy claim. *Shah*, 2024 WL 4539577, at *5. Plaintiffs also mischaracterize *Google RTB*, which involved disclosure of highly sensitive information, including search terms and details about race, religion, sexual orientation, and health. 606 F. Supp. 3d at 947. Similarly, in *Greenley v. Kochava,* plaintiffs alleged the compilation of "rich personal data" capable of revealing religious affiliation, sexual orientation, and medical conditions. *Greenley*, 684 F. Supp. 3d at 1047. No comparable allegations are made here.

Plaintiffs' reliance on *Mastel v. Miniclip* also is misplaced. While *Mastel* noted that offensiveness may sometimes be a factual question, the court dismissed the invasion of privacy claim at the pleading stage where plaintiff failed to allege use of his information for any purpose or the disclosure of sensitive content. *Mastel v. Miniclip*, 549 F. Supp. 3d 1129, 1140-42 (E.D. Cal. 2021). Likewise, *Revitch v. New Moosejaw, LLC* plaintiff alleged that defendant's code actively scanned plaintiff's computer files, thereby revealing his identity and browsing habits. No. 18-CV-06827-VC, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019). By contrast, the paragraphs (Dkt. 49, ¶¶ 1, 7-8, 72-73, 82, 86, 88-89, 91-92, 179, 198) cited by Plaintiff merely allege the presence of third-party trackers embedded on POLITICO's website, not the surreptitious scanning of a user's files.

2. *Plaintiffs' claim under the California Constitution fails.*

Even apart from the lack of a cognizable privacy interest, Plaintiffs' claim fails because they cannot show an "egregious breach of social norms." *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 37 (1994). Plaintiffs here do not allege that POLITICO collected "confidential" or "highly sensitive" information, nor do they plead facts establishing conduct that could be reasonably deemed "highly offensive." Courts have consistently dismissed similar claims involving routine data collection and marketing practices. See *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1090 (N.D. Cal. 2022) (contrasting dismissed claims with *In re Facebook Internet Tracking Litig.*,, 956 F.3d at 606 & n.8, which involved surreptitious collection of sensitive information even after users logged off); *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992-93 (2011) (holding that obtaining a customer's ZIP code under false pretenses for marketing purposes was not highly offensive). Plaintiffs' reliance on *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767

(N.D. Cal. 2019) is misplaced. The court did not recognize a privacy interest in IP addresses—indeed, IP addresses were not in the substantive privacy analysis. *Id*. at 782-783, 796-797. Instead, the court sustained the invasion of privacy claim because Facebook allegedly disclosed users' sensitive personal information to app developers and business partners on a widespread basis. *Id*. at 797. Plaintiffs here allege nothing of the sort.

Because Plaintiffs have failed to allege either a legally protected privacy interest or an egregious breach of social norms, their constitutional invasion of privacy claim cannot stand. The Court should dismiss the claim with prejudice.

**E. <u>Plaintiffs' unjust enrichment claim fails.</u>**

Plaintiffs incorrectly claim California recognizes unjust enrichment as an "independent cause of action." *Lectrodryer* cited by Plaintiff did not address that question, and the Ninth Circuit squarely rejected the proposition in the very case on which Plaintiffs rely. *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (holding that "in California, there is not a standalone cause of action for 'unjust enrichment'").

Even if Plaintiffs could assert an unjust enrichment claim (though they cannot), Plaintiffs fail to allege they lack an adequate remedy at law necessary for equitable remedies. *See Mort v. United States*, 86 F.3d 890, 892 (9th Cir. 1996) ("It is a basic doctrine of equity jurisprudence that courts of equity should not act . . . when the moving party has an adequate remedy at law." (ellipsis in original) (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992)). The court in *Matreyek*, cited by Plaintiffs, dismissed plaintiff's unjust enrichment claim without leave to amend, holding that a plaintiff's mistaken belief about the facts underlying a transaction does not entitle the plaintiff to restitution for unjust enrichment. *California Federal Bank v. Matreyek*, 8 Cal. App. 4th 125, 134 (1992); *see also Nacarino v. KSF Acq. Corp*., 642 F. Supp. 3d 1074, 1087 (N.D. Cal. 2022) (dismissing unjust enrichment claim where plaintiff failed to plausibly allege a lack of adequate remedy of law). Accordingly, the Court should dismiss Plaintiffs' unjust enrichment claim.

**F. <u>Plaintiffs fail to allege a UCL claim.</u>**

Plaintiffs UCL claim is improper because "personal information does not constitute property for purposes of a UCL claim." *In re Facebook Priv. Litig*., 791 F. Supp. 2d 705, 714 (N.D. Cal. 2011),

aff'd, 572 F. App'x 494 (9th Cir. 2014). Courts in this district consistently agree "the 'mere misappropriation of personal information' does not establish compensable damages" for a UCL claim. *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 943 (N.D. Cal. 2023) (quoting *Pruchnicki v. Envision Healthcare Corp.*, 845 F. App'x 613, 615 (9th Cir. 2021)). Because Plaintiffs have not alleged any specific monetary or economic loss, their UCL claim must be dismissed.

Plaintiffs mistakenly rely on *Calhoun v. Google* and *Brown v. Google*, both of which are incongruous to this case. In both cases, plaintiffs alleged that Google made certain representations to them about the use of their data that were inaccurate or misleading. *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 636 (N.D. Cal. 2021) (alleging that Google indicated they would not collect users' personal data unless a function was turned on, but nevertheless collected data anyway); *Brown*, 685 F. Supp. 3d at 919 (alleging Google collected data while using private browsing mode). Plaintiffs make no such allegations of misleading statements or promises. Furthermore, both cases, involved Google's collection of extensive personal data in addition to device information (*Calhoun*, 526 F. Supp. at 613; *Brown*, 685 F. Supp. at 919), whereas Plaintiffs here alleged only limited device-related information.

The data breach cases Plaintiffs cite involved the theft of sensitive and identifiable personal information, which Plaintiffs do not allege here. *See In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2016 WL 3029783, at *30 (N.D. Cal. May 27, 2016) (cyber attackers stole massive amounts of highly sensitive information, including names, dates of birth, Social Security numbers, health care ID numbers, home addresses, email addresses, and employment information, income data and "individually identifiable health information."); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2017 WL 3727318, at *20 (N.D. Cal. Aug. 30, 2017) (account credentials, date of birth, hashed passwords, cell phone numbers, and zip codes were stolen and sold on the dark web, leading to out-of-pocket expenses and risk of identity theft.).

Plaintiffs' other cases do not support their position either. The court in *In re Meta Pixel Tax Filing Cases* in fact dismissed the UCL claim and specifically distinguished cases involving disclosure of sensitive financial data. 724 F.Supp.3d 987, 999 (N.D. Cal. 2024) ("*Meta Tax*"). In addition, the *Meta Tax* only addressed *Pruchnicki v. Envision Healthcare Corp.*, 845 Fed. App'x. 613, 614 (9th Cir.

2021) in the context of the Illinois Consumer Fraud and Deceptive Business Practices Act claim, not UCL. *Id*. at 1013. The *Klein* case involved specific allegations of monetary benefit to Facebook from plaintiffs' information. *Klein v. Facebook, Inc.*, 580 F.Supp.3d 743, 803 (N.D. Cal. 2022). Plaintiffs here allege no such benefit. The *A.B.* case referenced an alleged $200 valuation of an individual's data. *A.B. by & Through Turner v. Google LLC*, 737 F.Supp.3d 869, 882 (N.D. Cal. 2024). Plaintiffs here provide no comparable valuation.

Even if Plaintiffs attempted to proceed under the "unlawful" prong, Plaintiffs' CDAFA, CIPA, and constitutional privacy claims all fail; therefore, the "unlawful" prong claim fails as well. *See Klein v. Chevron U.S.A., Inc*., 202 Cal.App.4th 1342, 1383-84 (2012). The "unfair" prong also fails. Courts apply a balancing test that asks whether the practice is "is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Smith v. State Farm Mut. Auto. Ins. Co.,* 93 Cal.App.4th 700, 719 (2001). Plaintiffs' allegations do not approach this standard. Cases Plaintiffs cite—such as *In re Eureka Casino Breach Litig.*, 2024 WL 4253198 (D. Nev. Sept. 19, 2024), which involved theft of sensitive personal data by cybercriminals, and *Rubio v. Capital One Bank*, 613 F.3d 1195, 1204-05 (9th Cir. 2010), which involved deceptive loan solicitations—bear no resemblance to the routine data collection practices alleged here. Likewise, *Jeong v. Nexo Fin. LLC*, 2022 WL 174236 (N.D. Cal. Jan. 19, 2022), concerned financial activity on a cryptocurrency platform, and *James v. UMG Recordings, Inc.*, 2011 WL 5192476 (N.D. Cal. Nov. 1, 2011), involved failure to account for royalties. Neither case has any bearing on Plaintiffs' allegations. Finally, Plaintiffs' citation to *Ferry v. Porsche Cars N. Am., Inc.*, 2022 WL 1769120 (C.D. Cal. Mar. 11, 2022), is unavailing. That decision did not resolve the issue Plaintiffs cite, but merely recited plaintiffs' position on cumulative remedies under Section 17200.

Because Plaintiffs have not alleged any economic injury, predicate statutory violation, or unfair practice that rises to the level required by the UCL, their claim fails as a matter of law and must be dismissed.

## III. <u>CONCLUSION</u>

For the reasons set forth above and in POLITICO's Motion, POLITICO respectfully requests that the Court dismiss all claims in First Amended Consolidated Complaint with prejudice.

Dated: September 17, 2025

Respectfully submitted,
FISHER & PHILLIPS LLP

By: */s/ Danielle M. Kays*
USAMA KAHF
DANIELLE KAYS (*pro hac vice*)
CATHERINE M. CONTINO (*pro hac vice*)
Attorneys for Defendant
POLITICO LLC